`Case 3:17-cv-01054-TJC-JRK   Document 1   Filed 09/06/17   Page 1 of 9 PageID 1`

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC.,
a Florida corporation,

    Plaintiff,

v.

DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Georgia
trust,

    Defendants,
_____/

3:17-cv-1054-J-32JRK

FILED — 2017 SEP -6 PM 2:23 — CLERK, US DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE

## COMPLAINT

Foodonics International, Inc., a Florida corporation ("Foodonics" or "Plaintiff") sues Defendant, Dina Klempf Srochi ("Trustee" or "Defendant"), as Trustee of the Laura Jean Klempf Revocable Trust ("Trust") and alleges:

### I. JURISDICTION AND VENUE

1. This is an action for damages and declaratory relief pursuant to 28 USC 2201 and Rule 57 Federal Rules of Civil Procedure.

2. This Court has jurisdiction pursuant to 28 USC 1332(a) as between citizens of different states and the amount in controversy exceeds $75,000.00.

3. Venue is proper before this Court pursuant to 28 USC 1391(b)(2) in that the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

4. Foodonics is a Florida corporation with its principal place of business at 5139 Edgewood Court, Jacksonville, Florida 32254.

5. Defendant is an individual citizen and resident of the State of Georgia who has served as Trustee of the Trust at all times material to this action.

## II. GENERAL ALLEGATIONS

### A. FOODONICS AND THE KLEMPF FAMILY HISTORY

6. Foodonics, through its predecessor Dixie Egg Company, was founded in 1948, and until December, 2015, was a closely held family corporation which produced, processed and distributed shell eggs in the southeastern United States and Puerto Rico.

7. Edward Klempf, who founded Foodonics, and his wife Laura Jean Klempf ("Mrs. Klempf") had three (3) children: Kevin Jacques Klempf ("Jacques"), Dina Klempf Srochi ("Dina"), and Marc Klempf ("Marc").

8. Other than minor amounts of stock associated with an employee stock option incentive plan, stock ownership of Foodonics has been held historically by the above-referenced Klempf family members, or through various family trusts for their benefit.

9. Edward Klempf served as President and Chief Executive Officer of Foodonics until his death on October 18, 2002 after which Jacques, who had worked for Foodonics in all facets from an early age, became President and Chief Executive Officer.

10. Although Mrs. Klempf worked at Foodonics in a clerical role for a short time after formation of the business, she had not worked in the business for many years prior to December, 2015. Dina and Marc Klempf never held any significant employment or managerial roles in Foodonics.

11. In 2006, Jacques acquired the Foodonics stock owned or controlled by his siblings, Dina and Marc, leaving Jacques and Mrs. Klempf, as well as some trusts associated with or controlled by Jacques and Mrs. Klempf including the Trust at issue in this case, as the

only owners of Foodonics stock except for insignificant employee incentive stock options ("2006 Transaction").

12. Following the 2006 Transaction, Jacques owned approximately 53.6% of the Foodonics stock, while his mother, Mrs. Klempf, owned approximately 45.6% of the Foodonics stock.

13. Foodonics is a subchapter S corporation under Internal Revenue Code § 1361. As a result, income tax responsibility for Foodonics' income passes through to, and is allocated to, and the taxes are ultimately paid by, the individual shareholders.

14. Following the 2006 Transaction, Foodonics made estimated income tax payments to the Internal Revenue Service ("IRS") on behalf of Jacques and Mrs. Klempf in amounts equal to their anticipated annual income tax liabilities resulting from the inclusion in their personal income of their relative share of Foodonics' income.

15. Sections 6654, 6621 and 6662 of the Internal Revenue Code impose on individual taxpayers an accuracy-related penalty for underpayment of annual taxes prior to the end of the current tax year.

16. Foodonics' income is calculated and reported to the IRS after the end of the relevant tax year. As a result, the estimated tax payments were paid to IRS on behalf of Jacques and Mrs. Klempf, before the end of each taxable year, based on estimates of Foodonics' eventual taxable income.

17. To avoid imposition of IRS penalties against Jacques and Mrs. Klempf for underpayment of estimated tax payments, Foodonics had to err on the side of caution when making the estimated tax payments.

18. As a result, for tax year 2015, Foodonics paid estimated taxes on behalf of its shareholders, Jacques and Mrs. Klempf. Because the precise amount of tax liability could not be known at the time of estimated payments, Foodonics intentionally overpaid the estimated taxes for Jacques and Mrs. Klempf to the IRS to avoid imposition of penalties and interest. No additional distribution was authorized by the shareholders and in the event of a substantial overpayment of taxes, Foodonics was to be repaid the amount of such overpayment.

19. By 2015, a number of disputes had arisen between Jacques and Mrs. Klempf, including the repayment to Foodonics of an overpayment of estimated taxes for the 2014 taxable year.

20. On December 31, 2015, Jacques became the sole shareholder of Foodonics as a result of the company's redemption of all of the stock previously held by Mrs. Klempf or the Trust ("Stock Redemption") pursuant to a Settlement and Redemption Agreement, a copy of which without exhibits is attached hereto as Exhibit 'A' and made a part hereof.

21. The Settlement and Redemption Agreement settles and contains mutual releases addressing numerous specified and unspecified claims by each of Jacques, Mrs. Klempf, and Foodonics, including the release of the obligation of Mrs. Klempf to repay the 2014 estimated tax overpayment.

22. For various reasons, Foodonics' 2015 income was substantially higher in the first three quarters of the year than corresponding periods for 2014, resulting in a large payment of estimated taxes for Jacques and Mrs. Klempf.

23. Foodonics' payment of estimated tax payments on behalf of Jacques and Mrs. Klempf resulted in an overpayment of taxes relative to Foodonics' subsequently-determined income. As a result, both Jacques and Mrs. Klempf received a refund from the IRS.

24. The most significant asset of Foodonics was the business of producing, processing and distributing shell eggs under the names Dixie Egg, Eggland's Best (in certain territories) and United Egg Marketing (the "Dixie Egg Business").

25. In November, 2016, Foodonics sold the assets of the Dixie Egg Business to Cal-Maine Foods, Inc. (the "Dixie Egg Sale").

26. The Trust was established in April 1992, with Mrs. Klempf as grantor and initial Trustee. In the event Mrs. Klempf was unable to serve, through death, incapacity or otherwise, successor trustees were, in order, her husband, Edward Klempf, and then Jacques, followed by Defendant Dina, and then Marc. Dina has served as Trustee of the Trust for some time, and in that capacity is the Defendant herein. On information and belief, the Trust was amended after 1992 by Mrs. Klempf to appoint Defendant as Trustee. Defendant has represented herself as Trustee of the Trust, and has acted as such.

27. Mrs. Klempf passed away on July 19, 2017.

**B.    THE CLAIMS**

28. Although the precise amount of any tax refund paid to Mrs. Klempf and the Trust was initially unknown to Foodonics, such a refund was in fact paid for tax years 2014 and 2015.

29. Foodonics' right to repayment of Mrs. Klempf's 2014 estimated tax overpayment and resulting tax refund was released under the mutual release language in the Settlement and Redemption Agreement.

30. However, beginning in 2016, Foodonics requested on several occasions that Mrs. Klempf repay the amount of the 2015 estimated tax overpayment and resulting income tax refund (the "2015 Refund") to Foodonics ("Refund Claim"). Such requests were made directly to Mrs. Klempf and to her attorney or her accountant with no response.

31. Instead, on June 23, 2017, through counsel, the Trust delivered correspondence to Jacques, together with various attachments, asserting claims on behalf of the Trust related to the Stock Redemption and the subsequent Dixie Egg Sale (the "Notice Letter").

32. The attachments to the Notice Letter included a 27 page form of Complaint alleging, *inter alia*, fraud, breach of fiduciary duties and securities violations, against Jacques and Foodonics, based primarily on the Trustee's belief in the existence of a secret and undisclosed agreement between Foodonics and Cal-Maine arising prior to the Stock Redemption, and the failure of Foodonics or Jacques to disclose the existence of such secret agreement prior to the closing of the Stock Redemption (collectively, the "Fraud Claims"). The form of Complaint and items of discovery attached to the Notice Letter are as yet unfiled.

33. Counsel for Foodonics and Jacques met with counsel for the Trust to discuss the Fraud Claims. Following Foodonics' and Jacques' rejection of the Trust's Fraud Claims, the Trust unilaterally and without authority claimed that the 2015 Refund, purportedly in the amount of $1,312,342.82 and delivered to the Trust by check dated March 29, 2017, would be retained by the Trust as a set-off against the Fraud Claims.

34. The Settlement and Redemption Agreement provides for an award of attorneys' fees in the event of litigation to enforce the Settlement and Redemption Agreement. It has been necessary for Plaintiff to hire the undersigned law firm to represent it in this matter and is Plaintiff obligated to pay such firm a reasonable fee.

## COUNT I
## BREACH OF CONTRACT

35. Foodonics realleges and incorporates paragraphs 1 – 34 above as if set forth herein.

36. The Trust has breached the Settlement and Redemption Agreement by failing to pay the 2015 Refund to Foodonics.

37. As a direct result of such breach, Foodonics has been damaged in the amount of $1,312,342.82.

WHEREFORE, Foodonics demands judgment for damages, interest, reasonable attorneys' fees and costs, and for all other and further relief as is just and equitable.

## COUNT II
## UNJUST ENRICHMENT

37. Foodonics realleges and incorporates paragraphs 1 through 34 as if set forth herein.

38. By virtue of the entire 2015 Refund having been paid to the Trust, a benefit has been conferred upon the Trust.

39. The Trust has voluntarily accepted the benefit of the 2015 Refund.

40. The Trust has both appreciated and benefited from the 2015 Refund.

41. As alleged herein above, the retention of the 2015 Refund under the circumstances as alleged herein make it inequitable for the Trust to retain the 2015 Refund without paying for the value thereof.

WHEREFORE, Foodonics demands judgment against the Trust for the value of the benefit conferred upon the Trust by virtue of the 2015 Refund, interest, reasonable attorneys' fees and costs.

## COUNT III
## CONVERSION

42. Foodonics realleges and incorporates paragraphs 1-34 above as if set forth herein.

43. Foodonics has made multiple demands for payment of the value of, or an endorsement of, the 2015 Refund.

44. By wrongfully retaining the 2015 Refund after multiple demands for its return, the Trust is exercising wrongful dominion or control over the 2015 Refund to the detriment of the actual owner, Foodonics.

45. According to the 2015 Agreement, Foodonics is the rightful owner of the 2015 Refund.

WHEREFORE, Foodonics demands judgment against the Trust for the value of the 2015 Refund, interest, reasonable attorneys' fees and costs.

## COUNT IV
### DECLARATORY JUDGMENT AS TO FRAUD ALLEGATIONS MADE BY DEFENDANT IN AN UNFILED COMPLAINT AGAINST PLAINTIFF

46. This is an action for declaratory judgment, brought pursuant to Rule 57, Fed. R. Civ. P. and 28 U.S.C. § 2201, in which Plaintiff seeks a declaration of the respective rights and obligations of Plaintiff and Defendant in connection with the Settlement and Redemption Agreement and those Fraud Claims made by Defendant against Plaintiff contained in the form of Complaint.

47. Plaintiff realleges and incorporates paragraphs 1 – 34 above as if set forth herein.

48. Following inquiries and demands for the value of the 2015 Refund, Defendant presented to Plaintiff the form of complaint as alleged hereinabove, styled DENNIS BLACKBURN, as Special Trustee of the Laura Jean Klempf Trust v. K. JACQUES KLEMPF and FOODONICS INTERNATIONAL, INC. in which the Fraud Claims are asserted.

49. A substantial, concrete, and actual controversy exists among Plaintiff and Defendant, and this Court can provide specific relief through a judicial determination of the rights of such parties.

50. Plaintiff requests this Court provide declaratory judgment on the counts alleged in the Fraud Complaint, which are: (1) Violation of Florida Securities Act § 517.301; (2) Violation of § 10(b) of the Securities Exchange Act and Rule 10b-5; (3) Control Person Liability - § 20(a) of the Securities Exchange Act; (4) Fraud; (5) Negligent Misrepresentation; (6) Breach of Fiduciary Duty of Disclosure; and (7) Breach of Fiduciary Duty of Loyalty.

51. This Court is a proper venue to determine the rights of the parties under the Fraud Claims, as a determination of rights will require a review of the Settlement and Redemption Agreement and other issues which are material to this Complaint.

WHEREFORE, Plaintiff seeks a declaration of the respective rights and obligations of Plaintiff and Defendant in connection with the Settlement and Redemption Agreement and those Fraud Claims made by Defendant against Plaintiff contained in the form Complaint.

GRAYROBINSON, P.A.

/s/S. Grier Wells
S. GRIER WELLS, ESQ.
Florida Bar No.: 203238
grier.wells@gray-robinson.com
elizabeth.irvine@gray-robinson.com
50 North Laura Street, Suite 1100
Jacksonville, Florida 32202
Phone: (904)-598-9929
Fax: (904)-598-9109

*Attorney for Plaintiff*