UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC., )
a Florida corporation,
)
      Plaintiff,
)
v.                                   Case No. 3:17-cv-1054-J-32JRK
)
DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF      )
REVOCABLE TRUST, a Georgia trust,
)
      Defendant.
)

## MOTION TO DISMISS

Defendant, Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust (the "Trust"), moves the Court to dismiss each count of the complaint filed by plaintiff, Foodonics International, Inc. ("Foodonics") (the "Complaint"; Doc. No. 1), and in support says:

### Introduction

This action arises out of a redemption agreement among Foodonics, Jacques Klempf ("Jacques"), Laura Jean Klempf ("Jean Klempf"), the Trust, and other members of the Klempf family and their related trusts to settle disputes among the Klempf family regarding Jacques' management of Foodonics.

As the Complaint alleges, Foodonics was a family owned corporation that was founded by Jean Klempf and her late husband, Edward Klempf ("Mr. Klempf").[1] Complaint, paras 1 – 9. Over time, one of Mr. and Mrs. Klempf's sons, Jacques, acquired his siblings' stock in Foodonics, and by 2006, Jean Klempf, Jacques, and trusts associated with or controlled by them were, for all practical purposes, the only shareholders of Foodonics. Complaint, para. 11. Jean Klempf owned 45.6% of Foodonics' stock and Jacques owned 53.6%. Complaint, para. 12.[2]

On December 15, 2015, to resolve ongoing corporate governance disputes, Foodonics, Jean Klempf, Jacques, the Trust, and other family members and associated family trusts entered into the Settlement and Redemption Agreement attached as Exhibit A to the Complaint (the "Redemption Agreement"). Complaint, para. 20 and Exhibit A, page 1. Under the terms of the Redemption Agreement, Foodonics redeemed all of the shares held by Jean Klempf and the Trust. Complaint, para. 18.

Relevant to Counts I – III of the Complaint, Section 12(b) of the Redemption Agreement required Foodonics to make a payment to the Internal Revenue Service on behalf of Jean Klempf to satisfy Jean Klempf's anticipated 2015 tax liability arising out of her ownership of Foodonics. Complaint, Exhibit A, page 13. Although the Complaint alleges the Trust had an obligation to pay to Foodonics any tax refunds resulting from an overpayment of Jean Klempf's estimated tax liability, that

---

[1] Foodonics, originally known as Dixie Egg Company, produced, processed, and distributed shell eggs in the Southeastern United States and Puerto Rico.

[2] The remaining shares were held by employees who had acquired them through employee stock option incentive plans. Complaint, paras. 8 and 10.

obligation is *not* contained in the Redemption Agreement. That fact is evidenced by Foodonics' failure to allege any contractual basis for the Trust's alleged agreement to pay the refund to Foodonics.

Beginning in 2016, Foodonics made several requests that Jean Klempf pay the 2015 Refund to Foodonics, which Jean Klempf refused to do. Complaint, paras. 30 and 31.

Jean Klempf passed away on July 19, 2017. Complaint, para. 27. On September 6, 2017, less than two months after Jacques' mother passed away, Jacques caused Foodonics to commence this action and sue the Trust (i) to recover the 2015 Refund under theories of breach of contract (Count I), unjust enrichment (Count II), and conversion (Count III), and (ii) to seek a preemptive declaratory judgment on claims the Trust had threatened to bring against Foodonics (Count IV).

The Court should dismiss each count of the Complaint as follows:

1. Counts I, II and III of the Complaint (breach of contract, unjust enrichment and conversion):

    a. each of these counts fail to state a claim for relief because neither Jean Klempf nor the Trust was obligated under the terms of the Redemption Agreement to pay any tax refund to Foodonics; and

    b. these claims, which are dependent on the alleged individual liability of Jean Klempf, cannot be brought against the Trust pursuant to § 736.104(1), Florida Statutes.

    2.    Count IV (declaratory judgment):

        a.    The declaratory judgment claim does not satisfy minimum pleading requirements; and

        b.    the Court should exercise its discretion not to exercise jurisdiction over the declaratory judgment claim because (i) the alleged misconduct has already occurred, (ii) the alleged damages have already been incurred, and (iii) Foodonics improperly filed its declaratory judgment claim to gain a procedural advantage over the Trust.

    3.    All counts should be dismissed because it affirmatively appears from the face of the Complaint that Foodonics failed to join as an indispensable party Dennis Blackburn, as Special Trustee of the Laura Jean Trust.

## As to Count I

**I. Foodonics does not and cannot allege a cause of action for breach of contract in Count I.**

A Rule 12(b)(6) motion to dismiss is considered in light of all of "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

    **A.    Foodonics does not allege a plausible breach of contract claim against the Trust.**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009)).

Count I does not allege a plausible breach of contract claim against the Trust because Foodonics does not allege the basis of the Trust's alleged contractual obligation to pay the 2015 Refund to Foodonics.  *See Radenbaugh v. State Farm Lloyds*, 4:13-CV-339-A, 2013 WL 4442024, at *4 (N.D. Tex. Aug. 16, 2013) ("No plausible cause of action for breach of contract can be stated unless there is an allegation as to the exact nature of the contract, including a statement as to defendant's obligations under the contract, how defendant failed to comply with its contractual obligations, and how that damaged plaintiff. Plaintiff's pleading fails to include a statement of any of those facts.").

> **B.     Foodonics cannot plead a cause of action for breach of contract against the Trust because the Trust was not contractually obligated to pay the 2015 Refund.**

Foodonics does not allege what contractual obligation the Trust had to pay the amount of the 2015 Refund to Foodonics because the Redemption Agreement contains no such requirement.  Section 12(b) of the Redemption Agreement contains the entirety of the parties' obligations with respect to the 2015 tax liabilities, and it says nothing about the Trust or Jean Klempf paying future tax refunds to Foodonics.

Because the Trust does not owe Foodonics a contractual duty to pay the 2015 Refund, Foodonics cannot, as a matter of law, state a cause of action for breach of

5

contract against the Trust. *See Vittitow v. Bank of Am.*, 2:CV-14-0230-SMJ, 2014 WL 5147565, at *4 (E.D. Wash. Oct. 10, 2014) ("A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damages to the claimant."); *Atl. Holdings, Ltd. v. Apollo Metals, Ltd.*, CV 16-6247, 2017 WL 2957810, at *3 (E.D. Pa. July 11, 2017) ("'A critical element of every claim for breach of contract requires a showing of a breach of some duty owed.' … Consequently, in order for there to be a breach of a contract, it must first be determined: was there any duty to be breached?") (quoting *Smithkline Beecham Corp. v. Continental Ins. Co.*, No. Civ. A. 04-2252, 2004 WL 1773713, at *1 (E.D. Pa. Aug. 4, 2004)).

## As to Count II

**II. The Redemption Agreement precludes Foodonics from suing the Trust for unjust enrichment.**

Under Florida law, "[i]t is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." *Kovtan v. Frederiksen*, 449 So. 2d 1, 1 (Fla. 2d DCA 1984). Because the Redemption Agreement addresses the parties' mutual obligations with respect to the payment of the Trust's 2015 taxes, Foodonics cannot resort to unjust enrichment as a remedy for its failure to address in the Redemption Agreement what was a readily foreseeable event.[3]

---

[3] Foodonics admits that it purposely overestimated Jean Klempf's 2015 tax liability. Complaint, para. 18.

## As to Count III

**III.     Foodonics cannot sue the Trust for conversion of the 2015 Refund.**

Under Florida law, to sue the Trust for conversion Foodonics would need to have an ownership interest in the 2015 Refund. *See DePrince v. Starboard Cruise Services, Inc.*, 163 So. 3d 586, 597 (Fla. 3d DCA 2015) ("The essence of the tort of conversion is the exercise of wrongful dominion or control over property to the detriment of the rights of the actual owner."). Because Foodonics does not allege— and does not have—an ownership interest in the 2015 Refund, Foodonics cannot state a cause of action against the Trust for conversion of the 2015 Refund.

## As to Counts I, II and III

Pursuant to the Florida Trust Code, Foodonics' claims in Count I (breach of contract), Count II (unjust enrichment) and Count III (conversion) are barred because, after the death of a settlor (Jean Klempf), no action may be brought against a trust that is dependent on the alleged individual liability of the settlor. Section 736.104(1), Fla. Stat. Such claims must be first presented and enforced against the Settlor's estate. *See Ziino v. Baker*, 5:07-cv-217-Oc-10GRJ, 2007 WL 2433902, at *2 (M.D. Fla. Aug. 22, 2007) (holding that the Trust was not a proper party because the alleged actions were dependent upon the individual liability of the Settlor); *Estate of Read v. A.D.K. Properties*, 766 So. 2d 393 (Fla. 2d DCA 2000) (holding that the plaintiff did not

have a cause of action because the alleged contractual obligation did not appear from the record to be a debt of the Trust).[4]

In this case, the income tax liability for 2015 was not a Trust liability, it was Jean Klempf's individual income tax liability. The 2015 Refund from the IRS was issued to Jean Klempf in her individual name based on her personal 1040. Complaint, para. 23. The Trust did not file tax returns and did not pay taxes. Foodonics is suing the wrong party because the refund did not belong to the Trust. The Trust had nothing to do with the tax liability for 2015, it had nothing to do with the payment of the Distribution Amount and it had nothing to do with the receipt of the refund from the IRS. The Trust was simply the recipient of an asset transfer by Jean Klempf in her individual capacity as the Grantor of the Trust.

Paragraph 12(b) of the Redemption Agreement pertains to covenants between the Trust (which was the "Seller") and the Company. While Jean Klempf made certain representations and warranties in her individual capacity and had obligations in her individual capacity as a "5K Seller," her obligations in an individual capacity were limited. Jean Klempf had no obligation under the Redemption Agreement to return any portion of the income tax refunds.

---

[4] *See also, Becklund v. Fleming,* 869 So. 2d 1, at fn. 2 (Fla. 2d DCA 2003) (holding that Florida law prohibits a creditor from filing, after the death of the grantor, a direct action against a revocable trust based on a claim that is dependent on the individual liability of the grantor); *Tobin v. Damian*, 723 So. 2d 396 (Fla. 4th DCA 1999) (holding that a plaintiff could not assert claims directly against a trust because the claims were not yet enforceable); *Klingman Furniture Co., Inc. v. Leslie E. Tassell Trust*, 07-002130-CK, 2009 WL 350871 (Ct. of Appeal, Michigan, Feb. 12, 2009) (apply Florida law and holding that the "plain language" of the Florida Statutes barred claims against the Trust because it had to brought against the decedent's estate).

The Redemption Agreement attached to the Foodonics' Complaint defines "Seller" as the Trust. It identifies Jean Klempf separately in her individual capacity as "Jean." Jean Klempf is not referred to in her individual capacity as a "Party." The Redemption Agreement included specific references to Jean Klempf in her individual capacity but she was not referred to in her individual capacity as the "Seller."

As alleged in paragraph 30 of the Complaint, the communications from Foodonics and Jacques to Jean Klempf regarding the refund check were addressed directly to Jean Klempf (not to the Trust). The Complaint does not allege that Foodonics ever attempted to recover the 2015 Refund from the Trust.

Accordingly, the claims asserted by Foodonics in Counts I, II and III of the Complaint against the Trust are barred by the Florida Trust Code.

### As to Count IV

**IV.     Count IV does not state a cause of action for declaratory judgment.**

To survive a motion to dismiss, "[a] party seeking declaratory judgment first is required to file an 'appropriate pleading' that complies with the requirements of Rule 8." *United States v. DeKalb County*, 1:10-CV-4039-WSD, 2011 WL 6369569, at *11 (N.D. Ga. Oct. 11, 2011).

In support of its claim for a declaratory judgment, Foodonics alleges the following facts:

> 31.    Instead, on June 23, 2017, through counsel, the Trust delivered correspondence to Jacques, together with various attachments, asserting claims on behalf of the Trust related to the Stock Redemption and the subsequent Dixie Egg Sale (the "Notice Letter").

9

32. The attachments to the Notice Letter included a 27 page form of Complaint alleging, *inter alia*, fraud, breach of fiduciary duties and securities violations, against Jacques and Foodonics, based primarily on the Trustee's belief in the existence of a secret and undisclosed agreement between Foodonics and Cal-Maine arising prior to the Stock Redemption, and the failure of Foodonics or Jacques to disclose the existence of such secret agreement prior to the closing of the Stock Redemption (collectively, the "Fraud Claims"). The form of Complaint and items of discovery attached to the Notice Letter are as yet unfiled.

*** 

48. Following inquiries and demands for the value of the 2015 Refund, Defendant presented to Plaintiff the form of complaint as alleged hereinabove, styled DENNIS BLACKBURN, as Special Trustee of the Laura Jean Klempf Trust v. K. JACQUES KLEMPF and FOODONICS INTERNATIONAL, INC. in which the Fraud Claims are asserted.

49. A substantial, concrete, and actual controversy exists among Plaintiff and Defendant, and this Court can provide specific relief through a judicial determination of the rights of such parties.

50. Plaintiff requests this Court provide declaratory judgment on the counts alleged in the Fraud Complaint, which are: (1) Violation of the Florida Securities Act § 517.301; (2) Violation of § 10(b) of the Securities Exchange Act and Rule 10b-5; (3) Control Person Liability - § 20(a) of the Securities Exchange Act; (4) Fraud; (5) Negligent Misrepresentation; (6) Breach of Fiduciary Duty of Disclosure; and (7) Breach of Fiduciary Duty of Loyalty.

The above allegations do not satisfy Rule 8 because they do not allege sufficient facts upon which declaratory relief can be granted.  *Foodonics does not even attach the complaint upon which it seeks a declaratory judgment*.

Because Count IV does not allege *any* facts upon which a court could determine whether Foodonics violated state or federal securities laws, committed fraud, made negligent misrepresentations to the Trust or breached its fiduciary duties to the Trust, Foodonics has failed to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009)).

And to the extent Foodonics seeks a declaratory judgment on the fraud claim the Trust is yet to assert, Foodonics is required to allege the fraud on which it seeks a declaratory judgment with the specificity required by Rule 9(b).  *See Sun Life Assurance Co. of Canada (U.S.) v. Imperial Holdings, Inc.*, 13-80385-CIV, 2014 WL 12452450, at *8 (S.D. Fla. June 26, 2014) ("The Court agrees with Imperial that Sun Life's claim for declaratory judgment fails because, as discussed supra, the underlying allegations of fraud are not stated with the particularity required by Rule 9(b)") (citing *Mata v. Citimortgage, Inc.*, No. 10-9167-DSF, 2011 WL 4542723, at *1–2 (C.D. Cal. Sept. 26, 2011) (dismissing portion of claim for declaratory relief premised on fraudulent conduct for failure to satisfy the requirements of Rule 9(b)).

**V.     In any event, the Court should decline to exercise over Foodonics' declaratory judgment claim.**

The Supreme Court has held that "[t]he Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Associates, Inc. v. Rickover*, 369 U.S. 111, 112 (1962).

The discretion which the district courts have in determining to exercise jurisdiction over a declaratory action is broad and is reviewed deferentially for abuse of discretion:

> Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear. . . . The Supreme Court has also made it clear that this broad discretion is reviewed deferentially, for abuse of discretion.
>
> *Dow Jones & Co., Inc. v. Harrods Limited,* 346 F.3d 357, 359 (2d Cir. 2003).

For the reasons set forth below, this Court should exercise its discretion to dismiss the declaratory judgment action filed by Foodonics.

**A.     The alleged misconduct in this case has already occurred.**

The purpose behind the declaratory judgment act is to afford relief to parties *before* disputes have ripened into violations of law or a breach of contract:

> "The purpose behind the Declaratory Judgment Act is to afford a[ ] form of relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Casualty Indem. Exch. v. High Croft Enter.*, 714 F.Supp. 1190, 1193 (S.D.Fla.1989). The Declaratory Judgment Act "permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty." *See* 10B C. Wright & A. Miller, *Federal Practice & Procedure*, Civil 3d § 2751 (2004).
>
> *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp.2d 1213, 1230 (S.D. Fla. 2009).

Accordingly, the Eleventh Circuit and other courts have held that a declaratory judgment is inappropriate when a party seeks the adjudication of past conduct:

> [C]ourts have held that "declaratory judgment is inappropriate solely to adjudicate past conduct." *Gruntal & Co. v. Steinberg*, 837 F.Supp. 85, 89 (D.N.J. 1993); *see also Beazer Homes Corp. v. VMIF/Anden Southbridge Venture, LPI*, 235 F.Supp.2d 485, 494 (E.D.Va. 2002) (a declaration that involves the adjudication of past conduct serves no useful purpose).
>
> *Id.* at 1230.

In this case, the Complaint alleges that on June 23, 2017, the Trust provided a letter and draft complaint to the attorneys for Foodonics and Jacques which identified the Trust's claims against Jacques and Foodonics for securities law violations, fraud and breach of fiduciary in connection with the 2015 redemption of stock held by the Trust as a minority shareholder. Complaint, paras 31 and 32.

It therefore affirmatively appears from the face of the Complaint that Count IV for declaratory relief is based upon alleged past conduct.  Declaratory relief is not available in situations where the claims and rights have fully matured and the alleged wrongs have already been committed:

> [D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation. . . .  In other words, "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity." . . .  Here, because Hipage has already repudiated the Service Agreement, there is no guidance that this Court can offer to steer Hipage's conduct away from a breach of contract. . . .  ("[A] declaratory judgment is unavailable in situations where . . . claims and rights asserted have fully matured, and the alleged wrongs have already been committed.").
>
> *The Hipage Co., Inc. v. Access2Go, Inc.,* 589 F.Supp.2d 602, 615 (E.D. Va. 2008).

Accordingly, Count IV for declaratory judgment should be dismissed because the alleged wrongs have already been committed and the declaratory relief requested is contrary to the purposes of the Declaratory Judgment Act.

### B. The damages alleged to have been suffered have already occurred.

Similarly, the Eleventh Circuit has held that declaratory relief is inappropriate when damages have already occurred:

> Injury in the past, however, does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment.
>
> *Malowney v. Federal Collection Deposit Group,* 193 F.3d 1342, 1348 (11th Cir. 1999).

14

As noted above, it affirmatively appears from the face of the Complaint that the damages the Trust has incurred as a result of the business dealings between Foodonics and the Trust accrued prior to the filing of the Complaint.  Moreover, it affirmatively appears from the face of the Complaint that Foodonics decided ***prior*** to the filing of the Complaint that it was not going to pay any damages to the Trust.

Accordingly, the declaratory relief being requested by Foodonics in this action was not "to prevent the accrual of avoidable damages." *Hoagy Wrecker,* 776 F.Supp. at 1359.  To the contrary, this declaratory judgment action was filed improperly and seeks "pure legal rulings" from this Court as to the past conduct of Foodonics.  *Sierra Equity*, 650 F.Supp. at 1231.

Accordingly, Count IV for declaratory judgment should be dismissed because the alleged damages arising from the parties' business dealings have already accrued and the declaratory relief requested is contrary to the purposes of the Declaratory Judgment Act.

### C. Declaratory relief is inappropriate when the action was brought to gain a procedural advantage.

Courts have also properly declined jurisdiction over declaratory jurisdiction actions when it appears that the plaintiff filed the action to gain a procedural advantage and preempt the forum choice of the defendants:

> The Declaratory Judgment Act was not designed to countenance such procedural manipulation of forums and actions.  In fact, the misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action

> militates in favor of dismissing the declaratory judgment action.
>
> *Federal Ins. Co. v. May Dep't Stores Co.*, 808 F.Supp. 347, 350 (S.D. NY 1992).
>
> When a party files a declaratory judgment action for purposes of "procedural fencing," a court should exercise its discretion and dismiss the case. . . . Procedural fencing exists when a party in filing a declaratory action accomplishes something that the party could not do through removal. . . . The purpose behind the Declaratory Judgment Act is to afford a new form of relief from uncertainty and insecurity with respect to rights, status, and other legal relations. . . . The Act's remedy should not be utilized for the purpose of anticipating the trial of an issue in a court of coordinate jurisdiction. . . . A declaratory judgment is not a mechanism to furnish a new choice of tribunals or to draw into federal courts the adjudication of causes properly cognizable by the courts of the states. . . . Moreover, the declaratory remedy is not a tactical device whereby a party who would be a defendant in a coercive action may choose to be a plaintiff if he can beat the other party to the courthouse. . . .
>
> With this understanding, the court believes the plaintiff here has engaged in a type of procedural fencing.
>
> *Casualty Indemn. Exch. v. High Croft Enter., Inc.*, 714 F.Supp. 1190, 1193 (S.D. Fla. 1989) (citations omitted).
>
> Additionally, and most importantly to the case at bar, "[t]he anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse." *Hanes Corp. v. Millard*, 531 F.2d 585, 592-93 (D.C. Cir. 1976). A district court may properly consider the inequity of permitting a declaratory plaintiff to gain precedence in time and forum by filing a declaratory action which is *merely anticipatory* of a parallel state

16

> action. *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 & n. 3 (5th Cir. 1983) (anticipatory suits are disfavored; affirmed dismissal of declaratory action).
>
> *State Farm Fire & Casualty Co. v. Taylor*, 118 F.R.D. 426, 429-30 (M.D. N.C. 1988).

In this case, Foodonics misused the Declaratory Judgment Act by filing this action to gain a procedural advantage and preempt the forum choice of the defendants. This improper purpose is apparent from the allegations of the Complaint.

Based on the foregoing, the declaratory judgment action filed by Foodonics in this case has the undeniable mark of a party that has used the Declaratory Judgment Act "as procedural fencing," i.e., "a tactical device in a race to the courthouse."

Moreover, there is no requirement that there be a parallel proceeding pending in state court before a district court decides to decline jurisdiction over a declaratory judgment action:

> There is no requirement that a parallel proceeding be pending in state court before a federal court should decline to exercise jurisdiction over a declaratory judgment action. Rather, as the district court states, "[t]he existence or nonexistence of a state court action is simply one consideration relevant to whether to grant declaratory relief."
> . . .
> [E]ven in the absence of a state court proceeding, the criteria outlined in *Quarles*, as well as the considerations of federalism, efficiency, comity, and procedural "fencing," continue to be factors which the district court

should balance when determining whether to assert jurisdiction over a declaratory judgment action.

> *Aetna Cas. & Surety Co. v. Ind-Com Elec. Co.,* 139 F.3d 419, 423 (4th Cir. 1998).

Accordingly, the Court should dismiss this action because Foodonics has engaged in procedural fencing and raced to the courthouse for tactical advantage.

### As to All Counts

Under Florida law, an indispensable party is one whose interest in the subject matter is such that if he is not joined, a complete and efficient determination of the equities and rights of the other parties is not possible. *See, Grammer v. Roman,* 174 So. 2d 433 (Fla. 2d DCA 1965).

In this case, it affirmatively appears from the face of the Complaint that Foodonics is seeking a declaratory judgment as to a complaint it received from "DENNIS BLACKBURN, As Special Trustee of the Laura Jean Klempf Trust." Complaint at para. 48. It is obvious that Dennis Blackburn, as Special Trustee, is an indispensable party to determine since he is the plaintiff of the very complaint as to which Foodonics is seeking a declaratory order. In addition, under Florida law the general rule is that Trustees are indispensable parties to litigation involving all actions affecting the assets of a Trust. *First Nat'l Bank of Hollywood v. Broward Nat'l Bank of Fort Lauderdale*, 265 So.3d 377, 378 (Fla. 4th DCA 1972)

## **Conclusion**

WHEREFORE, based on the foregoing, the Trust respectfully requests that this Court dismiss the Complaint.

                    SMITH HULSEY & BUSEY

                    By:  /s/ *James H. Post*
                         James H. Post

                    Florida Bar Number 0175460
                    225 Water Street, Suite 1800
                    Jacksonville, Florida  32202
                    (904) 359-7700
                    (904) 359-7708 (facsimile)
                    jpost@smithhulsey.com

                    Attorneys for Defendant Dina Klempf
                       Srochi, as Trustee of the Laura Jean
                       Klempf Revocable Trust

Certificate of Service

I certify that on this 27th day of October, 2017, I electronically filed the foregoing with the Clerk of Court through the Court's CM/ECF electronic notification system, which will send a Notice of Electronic Filing to all CM/ECF participants in this case. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: none.



/s/ *James H. Post*
Attorney

977129