IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL,               Jacksonville, Florida
INC., a Florida corporation,
                                       Case No. 3:17-cv-1054-J-32JRK
      Plaintiff,
                                       October 2, 2018
vs.
                                       10:34 a.m.
DINA KLEMPF SROCHI, as
Trustee of the Laura Jean              Courtroom No. 5D
Klempf Revocable Trust, a
Florida Trust,

      Defendant.
_____

DIGITALLY RECORDED DISCOVERY STATUS HEARING
BEFORE THE HONORABLE JAMES R. KLINDT
UNITED STATES MAGISTRATE JUDGE

COURT REPORTER:

        Shannon M. Bishop, RDR, CRR, CRC
        221 North Hogan Street, #150
        Jacksonville, Florida  32202
        Telephone:  (904)549-1307
        dsmabishop@yahoo.com

    (Proceedings reported by mechanical stenography;
transcript produced by computer.)

A P P E A R A N C E S

PLAINTIFF'S COUNSEL:

       **SAMUEL GRIER WELLS, ESQ.**
       GrayRobinson, PA
       50 North Laura Street, Suite 1100
       Jacksonville, FL  32202

DEFENSE COUNSEL:

       **JAMES H. POST, ESQ.**
       **R. CHRISTOPHER DIX, ESQ.**
       Smith, Hulsey & Busey
       One Independent Drive
       Suite 3300
       Jacksonville, FL  32202-3315

ALSO PRESENT:

       David Hancock (via telephone)

1                    P R O C E E D I N G S

2    October 2, 2018                              10:34 a.m.

3                          - - -

4              COURT SECURITY OFFICER:  All rise.  This Honorable

5    Court is now in session.  The Honorable James R. Klindt

6    presiding.

7              Please be seated.

8              THE COURT:  This is Foodonics International, Inc.,

9    against Dina Klempf Srochi, as Trustee of the Laura Jean Klempf

10   Revocable Trust, Case No. 3:17-cv-1054-J-32JRK.

11             On behalf of the Plaintiff is Grier Wells.

12             Good morning.

13             MR. WELLS:  Good morning, Your Honor.

14             THE COURT:  And David Hancock is on the telephone.

15             Is that right, Mr. Hancock?

16             MR. HANCOCK:  Yes, sir.

17             THE COURT:  All right.  Thank you.  Good morning.

18             James Post and Christopher Dix are here on behalf of

19   the Defendant.

20             Good morning.

21             MR. POST:  Good morning, sir.

22             THE COURT:  And I should say Counter Plaintiffs also.

23             MR. POST:  Yes, sir.

24             THE COURT:  Yes.  All right.  Well, good morning to

25   you-all.  I appreciate the notice that you filed,

1  document No. 60, on October 1st that sets out what the issues

2  are that you want to discuss.

3         So, Mr. Post, should I start with you?

4         MR. POST:  Yes, sir.  And I would like -- Mr. Dix is

5  going to -- my partner, Mr. Dix, will handle this hearing.

6         THE COURT:  All right.  Well, that's just fine.

7         MR. POST:  Thank you.

8         MR. DIX:  May it please the Court?

9         THE COURT:  Yes.

10         MR. DIX:  Your Honor, the last status conference we

11  had in this case was September 16th -- I'm sorry, August 16th.

12  Shortly after that status conference you entered a discovery

13  order, on August 22nd.

14         What we want to do today is bring it forward -- from

15  that discovery forward, to where we are today, with the

16  production by the various parties that were addressed in that

17  discovery order.

18         THE COURT:  I think we set -- we set this off until

19  now because it's after some deadline that was set in that

20  order, right?

21         MR. DIX:  That's right.  The last deadline for

22  production was the trust deadline.  That's our deadline.  Our

23  clients were producing documents.  That was on Sunday,

24  September 30th.

25         THE COURT:  Yes.

1    MR. DIX:  So we've now passed all of the deadlines

2  for production.

3    THE COURT:  All right.

4    MR. DIX:  But we prepared a chart, Your Honor, that

5  we think is helpful in understanding where we are --

6    THE COURT:  Yes.

7    MR. DIX:  -- if I can approach and hand this up?

8    THE COURT:  Yes.  Thank you.

9    Mr. Wells, do you have a copy?

10    MR. WELLS:  Not yet, Your Honor.

11    THE COURT:  All right.

12    MR. DIX:  Your Honor, the chart, from reading from

13  left to right -- on the left-hand side is the producing party.

14  Moving to the right, the date due, pursuant to your August 22nd

15  order.  Moving further to the right, the date that that

16  production was received, if at all.  And then comments on the

17  far right-hand side.

18    So beginning at the top, GrayRobinson was the first

19  production that we've got on this chart.  The date of

20  production, pursuant to your discovery order, was August 30th.

21  And as we stand here today, we have not received the first

22  single document from GrayRobinson related to this case.

23    We're 33 days past due the production deadline.  We

24  had a call with Mr. Wells last week where he told us, along

25  with Mr. Hancock, that there were potentially 10,000 documents

1  that they needed to review, and that -- that they were in the

2  process of identifying who the privileged parties were.

3          So it didn't sound to us like they were very far

4  along in that process.  And they could not provide for us an

5  ETA regarding when we could expect the production of those

6  documents or a privilege log, which would presumably be

7  accompanying it.  Obviously GrayRobinson is going to have

8  communications that are privileged with their client.

9          And so with respect to GrayRobinson, Your Honor, we

10 would ask, coming out of today's hearing, that you would do two

11 things, that you provide a date certain by which GrayRobinson

12 needs to complete their production.

13          We think, given the deadline and the extended delay

14 here, that they should be required to produce it within seven

15 days, finish their production within seven days.  That would

16 include production of documents and a privilege log.

17          And if they don't do that, then we would ask the

18 Court to appoint a special master in this case, someone to come

19 in, neutral, at their expense, to come and take over the

20 process to get this process finished.

21          It's holding up the entire case that we haven't

22 gotten these documents yet.  And we think that that would be an

23 appropriate remedy, given the number of delays that we've

24 experienced.

25          THE COURT:  You know, I'm not sure that I have the

1    authority to do that.  That may be something that

2    Judge Corrigan may have to do, if you ask for it and he thinks

3    it's appropriate.

4         MR. DIX:  That -- Your Honor, we hope that -- in

5    short order, that -- that all of this production can be

6    finished and we don't have to get to that point.

7         THE COURT:  All right.

8         MR. DIX:  But that would be what we think is the next

9    step that's appropriate in the -- in the ability of the Court

10   to reconcile these deficiencies.

11        The second category of producing parties is

12   Foodonics.  Their date -- as with GrayRobinson, their date was

13   August 30th to make the production.

14        We did receive a production from Foodonics on

15   August 30th.  They produced 44,763 documents.  It wasn't a

16   difficult production, because they, as you recall from the last

17   hearing, made -- decided not to review those documents.  They

18   simply turned them over.  And we agreed to that.

19        The problem that came up with those documents, Your

20   Honor -- we got about an hour or two into a very cursory review

21   of the documents and we came across a couple of documents which

22   were pretty clear that they had been inadvertently produced.

23        So we provided notice to Mr. Wells.  The discovery

24   agreement and claw-back agreements that we have in this case

25   provide for how those situations are to be addressed.

1    We're going through that process now.  It's still not

2    complete, that -- two of the three documents, there's no

3    dispute that they are privileged documents.

4    There is one document -- we provided notice to the

5    Court last week regarding a document that we do not think that

6    a privilege should apply to.

7    Mr. Wells, I believe, has until later this week to

8    file his response.  Maybe we work that out.  Maybe we don't.

9    There's not anything with respect to those three documents or

10   that one document that we need to do today, Your Honor.

11   But what we did propose to Mr. Wells last week, and

12   he has agreed, is to modify the process for our review of these

13   44,000 documents.

14   Ordinarily -- as soon as we come across a document

15   that looks potentially inadvertently produced, we've got to

16   promptly notify Mr. Wells.

17   The modification here, since these documents haven't

18   been reviewed -- it's likely that we're going to come across

19   some more potentially inadvertently produced documents.

20   We'll put those documents aside as we come across

21   them, we'll remove them from our document review tool so that

22   we can't see them anymore, but we don't have to provide notice

23   each time we come across a document, not until the completion

24   of our review.

25   So when we finish our review of these 44,000

1  documents, at one single time we'll provide the notice to

2  Mr. Wells of all of the documents, if any, that -- that are

3  potentially inadvertently produced.

4        In the meantime, if Mr. Wells and his team identify

5  documents that they believe are inadvertently produced, they

6  certainly are free to search their own documents and identify

7  any documents that are inadvertently produced, notwithstanding

8  what our procedure would be.

9        So we --

10       THE COURT:  I'm sorry to interrupt.  But are you

11  going to want to -- to amend the discovery agreement to that

12  effect?  Or do you have a clear understanding with each other

13  and you don't need to do that?

14       MR. DIX:  We've done that by stipulation, Your Honor.

15  I provided in an e-mail to Mr. Wells the exact language that

16  would modify our existing agreement.  And he's agreed to that.

17  Is that --

18       MR. WELLS:  That's correct.  I (unintelligible) -- I

19  don't have to do a formal amendment, but we have no problem if

20  the Court wishes to do that.

21       THE COURT:  All right.  If you-all -- if you-all

22  agreed to it and you don't have a problem, I don't think I need

23  to get -- get in the middle of it, so -- and then if you do at

24  some point have a problem with it, then -- then we can take it

25  up at what probably will be another status conference or two,

1   or you can file something.

2          Now, let me just ask you so I don't forget.

3          MR. DIX:  Sure.

4          THE COURT:  With regard to this one notice that you

5   filed that's document 59, on September 27th, Mr. Wells will

6   respond to that.

7          And then if there still is a dispute as to that

8   document, I suppose I'm going to have to have that document

9   submitted and I'll take a look at it and -- and resolve the

10  challenge.

11         Is that -- is that how you would anticipate that

12  happening, both of you?

13         MR. DIX:  That's our understanding, Your Honor.

14         MR. WELLS:  Yes, sir.

15         THE COURT:  All right.  And then -- and then,

16  Mr. Wells, you would be the one to submit that to me?

17         MR. DIX:  We'd no longer --

18         THE COURT:  Because they don't have it then.

19         MR. DIX:  We've removed it from our collection.

20         THE COURT:  Right.  So if you -- if there is -- in

21  other words, if you-all don't work that out, you file a -- a

22  response to this objection, with that response I would think

23  you would submit, just directly to chambers, the -- the

24  document that's at issue.

25         MR. WELLS:  Yes, sir.

1        THE COURT:  All right.  All right.  Sorry for the

2  interruption.  Go ahead.

3        MR. DIX:  That's okay, Your Honor.  The reason we

4  mentioned all of that is the discovery agreement that we

5  entered into is incorporated by reference into the 502(d)

6  order.

7        THE COURT:  Yes.

8        MR. DIX:  I want to make sure you were aware of what

9  we were doing.

10       THE COURT:  Yes.  Thank you.

11       MR. DIX:  Hopefully it won't be an issue.

12       The next issue with respect to the Foodonics

13  production, Your Honor -- we received yesterday an Excel

14  spreadsheet from Mr. Wells containing a privilege log, which we

15  were happy to see.  We've been asking for that and we were glad

16  to receive it.

17       Unfortunately, it wasn't -- the third line on the

18  first page of a 5,000-line document -- when we got to an

19  e-mail, which was an e-mail from Mr. Klempf to Dennis

20  Blackburn, who's an adverse party in this case.

21       And the two e-mails after that are e-mails exchanged

22  between Mr. Klempf and Dennis Blackburn.  We did a search.  It

23  looks like there's more than just three.

24       We also did a search for our other client Dina

25  Klempf.  And there are e-mails on this privilege log between

1  Mr. Klempf and his sister, an adverse party.  So we even took

2  it a step further.  And it looks like there's about 90 to 100

3  e-mails involving Cal-Maine.

4         So with very little investigation, Your Honor, it

5  looks obvious to us that this privilege log is deficient, that

6  there are documents on here that are clearly not privileged.

7         And so with respect to the privilege log, we would

8  ask two things, one that -- that the privilege log be

9  amended -- reviewed and amended to remove any non-privileged

10 items.

11        And with respect to the items that we removed, we

12 would ask that those be produced.  We think that could be done

13 in short order.  We think the same seven-day time frame we

14 proposed for the GrayRobinson production would apply here.

15        Seven days should provide enough time for them to

16 review their privilege log, eliminate the non-privileged items,

17 produce those non-privileged items to us.

18        The last issue with respect to Foodonics, Your Honor,

19 was a series of documents that Mr. Wells described as

20 Mr. Klempf's personal documents.

21        They were withheld from the production on

22 August 30th.  Even though that was the deadline, they were

23 withheld -- approximately 775 documents that --

24        THE COURT:  How many?

25        MR. DIX:  775 documents Mr. Wells individually

1   reviewed.  It took him 32 days to do that.  And just yesterday

2   at about 5 p.m., we received an e-mail with a link to download

3   those documents.

4           We've sent that to our eDiscovery vendor.  And we

5   haven't had a chance really to look at those documents at all

6   since 5 o'clock yesterday.

7           So we -- we note that there was a production that was

8   made, that it was past due.  And we don't know at this time

9   whether we're going to have any issues.

10          So we do think for reasons such as this that there is

11  going to need to be at least one more status conference after

12  we've had an opportunity -- after the documents are fully

13  completed and produced, and after we've had an opportunity to

14  review those documents, we think we're going to need at least

15  one more status conference to resolve any issues that come up.

16          The next party on the list is Jacques Klempf, his

17  text messages.  Those were due to be produced on September 7th,

18  pursuant to your order.  They were produced a week later, on

19  September 14th.

20          We have received that production, but we haven't

21  taken a close look at that yet.  So that production falls in

22  that same kind of category as the personal documents we just

23  talked about.

24          We haven't really had a chance to kick the tires and

25  make sure that that production was done in a manner that we

believe was correct.  And so we're going to need to come back

and address those potentially at -- at a future status

conference.

          The next producing party is Cal-Maine Foods.  No

production.  By their own production date that they set,

pursuant to the stipulation that we entered into them -- with

them, they agreed that they were going to produce one

custodian's documents by September -- I'm sorry, August 30th,

2018.

          That production came 26 days late, on September 25th.

We found (unintelligible) last week of those documents.  And

what we understand those -- there are about 1,000 documents

that were produced by Cal-Maine.

          As we -- as we sent them to our eDiscovery vendor,

Your Honor, we learned that the documents have all been

converted into PDF form.

          Ordinarily on a small collection that wouldn't be a

big deal.  In this case, having converted all the PDF --

documents to PDF prevents us from sorting them and putting them

in chronological order, putting them along with the other

documents that we've received in the collection.

          So we need to go back to Cal-Maine.  We're hopeful

when we go back to Cal-Maine that they'll agree to produce a

load file, they call it, which has all the metadata that would

complete that production.  We're hopeful that that's not going

1    to be an issue.

2        But we did at least note it for the record that we've

3    gotten documents, but they're not in the format that we asked

4    for and not in the format that we expected, and they're not in

5    a format that makes it very easy for us to review and deal with

6    them.

7        THE COURT:  So if you don't resolve that with

8    Cal-Maine, we'll invite Cal-Maine to the next status.

9        MR. DIX:  If they choose to participate.  If you

10   recall, they opted out of participating at some point several

11   conferences ago.  So we certainly would invite them.  Hopefully

12   we can work that issue out.

13       THE COURT:  That's why I used the word "invite."

14       MR. DIX:  Yeah.  And if not, we can -- we can -- they

15   can file a motion and we can file a motion.

16       THE COURT:  All right.

17       MR. DIX:  Hopefully it doesn't come to that.

18       THE COURT:  All right.

19       MR. DIX:  The last party, Your Honor, is our party,

20   our production.  It was due on September 30th and we produced

21   them on September 30th.

22       So we're not aware of any issues with that

23   production.  We recognize that it was just made a couple of

24   days ago.  We produced all the non- -- non-privileged

25   responsive ESI that the Court required us to produce.  We made

1   that production.

2       THE COURT:  All right.  So the main two things, then,

3   to focus on today -- and I appreciate the update on everything

4   else -- though, is the -- is the -- is the GrayRobinson

5   production and the -- and the privilege log.

6       MR. DIX:  From Foodonics.

7       THE COURT:  Yes.  Those are the two main issues,

8   then, that we might be able to make some progress with today.

9       MR. DIX:  There are two -- two other issues, if I

10  may, Your Honor --

11      THE COURT:  Yes.

12      MR. DIX:  -- very quickly?  We think we should

13  schedule an additional status conference sometime later down

14  the road.  That shouldn't be terribly difficult to do.

15      And then, lastly, we filed a motion, unopposed, to

16  amend the case management deadlines, Your Honor.

17      THE COURT:  Yes.

18      MR. DIX:  And so based on the delays in the document

19  production and the discovery that we've had, we filed that

20  motion.  And we'd ask that the Court -- if today is the

21  appropriate time, to address that, to -- to extend those

22  deadlines as well.

23      THE COURT:  We can address that.  The -- just in

24  looking at the age of the case and the trial term that you've

25  asked to set this on, I think -- I think that -- probably at

1  this point, when these things are considered in the future,

2  it's going to be much more difficult to get an extension.

3      Because I'm sure -- Judge Corrigan has authorized me

4  to go ahead and deal with this today.  But I'm thinking if --

5  if history is any type of teacher, that -- that this -- it will

6  be much more difficult to get any type of relief in the future.

7      But I -- I think that -- I think this will be fine,

8  in terms of what you-all have proposed, since -- since you

9  agree to it at this point.  And I think it is warranted based

10  on the challenges that -- that you-all have had with discovery.

11      So we'll go ahead and get to that by the end of the

12  hearing.

13      MR. DIX:  Thank you, Your Honor.

14      THE COURT:  All right.  Thank you.

15      Mr. Wells?

16      MR. WELLS:  Thank you, Your Honor.

17      May it please the Court?

18      THE COURT:  Yes.

19      MR. WELLS:  With respect to the GrayRobinson

20  documents that Mr. Dix is concerned about, we have -- we have,

21  in fact, identified that there are at least about 10,000

22  documents between GrayRobinson and the clients, or other

23  privileged parties, such as the accountant and so forth.

24      We've had some difficulty in identifying all of the

25  attorneys within the firm who have had those communications,

because there have been multiparous, but we've done that.

Mr. Hancock is on the line. I think that we will be able to produce documents well within the seven days that Mr. Dix has requested.

Part of the problem is not just the documents, but -- as the Court may be aware, a subpoena directed to a law firm necessarily is going to involve an awful lot of privileged communications. And our trying to identify those has been the bulk of the problem. But we should have that completed very shortly.

I think, again, well within the seven days. And we have been communicating with counsel about that as it has progressed.

On the Foodonics privilege log, I got that yesterday from the vendor. We went through roughly the 44,700 documents and prepared a -- the privilege log itself, Your Honor, is over 200 Excel sheet pages long.

I apologize. I was not aware that there were errors. We certainly can clean those up. It was not -- not any attempt to be misleading to the Court or to counsel in any way.

If there are issues, we can clean that up. And I -- Mr. Hancock, how long do you think it would take to go back on the privilege log?

MR. HANCOCK: I think that can be done within seven days. As to the prior item, I would ask if we could do ten

1  business days, if that's possible.  I think I might have

2  mentioned I'm getting married on Friday.  So I'm not going to

3  be back in the office until next Wednesday.

4          MR. WELLS:  What's your point?

5          THE COURT:  All right.

6          MR. WELLS:  Chis, are y'all okay with that?

7          MR. DIX:  Yes.  That's ten business days, right?

8          THE COURT:  Yes.  Is that all right with you?

9          MR. DIX:  Yes.

10          THE COURT:  But we're still going to do seven

11  business days on the privilege log --

12          MR. HANCOCK:  Yes, sir.

13          MR. WELLS:  Yes.  Yes, sir.

14          THE COURT:  -- for Foodonics?

15          MR. WELLS:  And, again, we certainly did not

16  include -- intend to include non-privileged documents on the

17  privilege log.  And to the extent there are non-privileged

18  documents, they will be produced.  It should not be a problem.

19          To put things in a little bit of perspective, Your

20  Honor, the complaints about the timing -- the Court is aware

21  from prior status conferences that we've been dealing with an

22  awful lot of documents.  And the cost involved in that is

23  pretty monumental.

24          The documents produced by the trust on Sunday, it

25  appears that there are approximately 5,000 documents, as

1   compared to the 44,000 from Foodonics and over 10,000 from

2   GrayRobinson.

3           So I think perhaps the context of that needs to be

4   considered.  But we certainly have no --

5           MR. HANCOCK:  Actually that number is 892.

6           MR. WELLS:  Which number is that, from the Klempf

7   trust?

8           MR. HANCOCK:  The production from the trust.

9           MR. WELLS:  I apologize.  I had 5,000 from some --

10  some other source.  I apologize.

11          We have no problem with the motion to extend the case

12  management conference, as Mr. Dix alluded to.  That's certainly

13  up to the discretion of the Court.

14          But we should have both -- the GrayRobinson documents

15  produced within the ten days and the cleanup of the privilege

16  log within seven.

17          THE COURT:  And then in terms of your -- your

18  response to this objection -- or the challenge as to the

19  privilege claim on the claw-back, when is that due?  I think

20  you have -- what is it, five days?

21          MR. WELLS:  Five business day from the date of the

22  challenge.

23          THE COURT:  Yes.

24          MR. WELLS:  We got the challenge late Thursday of

25  last week, I think.  So technically by tomorrow a response will

1  be due.

2          THE COURT:  Is that doable for you or...

3          MR. WELLS:  I would request if we could do it by the

4  end of the week, Friday.

5          THE COURT:  Is there any objection to that, Mr. Dix?

6          MR. DIX:  No.

7          THE COURT:  All right.  So we'll -- we'll extend that

8  to Friday.  And then if you -- if you-all don't work that out,

9  you'll file a response and then submit the document that's at

10  issue -- a copy of it to chambers?

11          MR. WELLS:  That's correct.

12          THE COURT:  All right.  All right.  Thank you.

13          MR. WELLS:  Yes, sir.

14          There were a couple of things, Your Honor, that we

15  had listed on paragraph 5 --

16          THE COURT:  Oh, yes.

17          MR. WELLS:  -- of the notice.

18          THE COURT:  Sorry.  I was thinking we were done.

19          All right.

20          MR. WELLS:  The first one is the status of the

21  collection and production of e-mails from the DixieEgg.com

22  domain --

23          THE COURT:  Yes.

24          MR. WELLS:  -- former employees of Dixie Egg, other

25  than Mr. Klempf.  Mr. Klempf has reactivated.  And he's here,

1  though I don't anticipate him responding.

2       But he reactivated the DixieEgg.com account.  And

3  Mr. Klempf, through his own -- I'm going to use the word

4  equipment, can see that.  But we have been unable to through

5  either Mr. Hancock or through a remote vendor.

6       So in order to do that it's going to require the

7  vendor to come to Jacksonville and look at the source that

8  Mr. Klempf has access to.

9       I would suggest, if I may, that since we have

10 produced 44,700 documents from Foodonics, as well as text

11 messages from Mr. Klempf, that those documents be reviewed

12 first.  And they would have included anything Mr. Klempf sent

13 on his DixieEgg.com domain.

14      And so let's see if there's anything within those

15 documents.  And if there's something that gives rise to

16 concern, then we can take the next step to have the vendor come

17 look at the DixieEgg.com of other employees.  We have no

18 control over them.  It would have to be through -- through

19 Mr. Klempf's own personal devices.

20      You know, we -- we will be producing the GrayRobinson

21 documents.  We've already produced Foodonics documents.

22      And, by the way, the personal documents that Mr. Dix

23 referred to -- I assure the Court that I didn't spend 32 days

24 looking at those documents.  They were looked at within a

25 fairly short period of time, compressed time.  And we have

1  produced those, yesterday.

2         THE COURT:  Okay.  Well, I'll ask Mr. Dix about that

3  moving up -- or having the review take place the way you

4  suggested, to see what he says about that.

5         MR. WELLS:  The other issue, paragraph 5, would be

6  the status and production.  That really has been addressed.  I

7  just wanted to let the Court know that we've not had a chance

8  to review it.

9         We got it Sunday evening.  And it is a fairly small

10  number.  But we would reserve the right to raise any concerns

11  we may have in the future about that.

12         THE COURT:  Yes.  Of course.

13         MR. WELLS:  Thank you.

14         THE COURT:  Thank you.

15         All right.  Mr. Dix, what do you say to Mr. Wells'

16  proposal?

17         MR. DIX:  Your Honor, we have lost faith that this is

18  going to go anywhere anytime soon.  We would ask that some kind

19  of report be produced from a vendor.

20         We have the same vendor.  We'd like some kind of hard

21  evidence of -- of what is going on, other than Mr. Wells kind

22  of trying to explain it.

23         We don't think that -- I don't have any confidence

24  that this is ever going to get done correctly.  And so this

25  would be part of why we would think that a special master needs

1  to be appointed to come in and take control of this thing, and

2  have somebody that's neutral tell us what's really going on and

3  what's -- what can be accomplished.

4  THE COURT:  Well, you're -- you mentioned the special

5  master at the outset with respect to the first issue related to

6  GrayRobinson.  And according to Mr. Wells, those documents are

7  going to be produced in ten days.

8  MR. DIX:  Sure.

9  THE COURT:  Do you have faith and confidence in that?

10  MR. DIX:  No.  The deadline for producing everything

11  was August 30th.

12  THE COURT:  Well, I understand.  I --

13  MR. DIX:  And we asked for these documents in

14  January.  It's now October.  And the idea that we're just now

15  figuring out what might be able to be done and maybe having a

16  vendor come on site to --

17  THE COURT:  No.  I'm taking these one step at a time.

18  MR. DIX:  Okay.

19  THE COURT:  Because -- because I didn't hear you say

20  anything about a vendor related to these other things

21  earlier -- I mean, a special master.  I thought you were aiming

22  the special master at the GrayRobinson situation.  But you're

23  aiming that at the overall situation?

24  MR. DIX:  We didn't even know about what we just

25  heard until right now.  We were assuming that because the

1   production deadline was August 30th that -- that those -- those

2   issues had already been resolved, and were not something that

3   needed to now be addressed 33 days after the production.

4         So I don't have confidence that this is going to get

5   done.  If it does get done, I don't have confidence that it's

6   going to get done correctly.

7         And I think that the quickest and easiest way to get

8   through this is to have somebody neutral take control of the

9   situation and -- and tell us what's really going on and then --

10   and get to the end result.

11         THE COURT:  Well, you can file that motion.  I don't

12   think it would be one that I would handle, as I said earlier.

13   I think Judge Corrigan will.

14         We're still going through these -- these status

15   conferences.  If Mr. Wells believes, and Mr. Hancock believes,

16   that they can produce these -- these 10,000 documents, or

17   whatever it is, from GrayRobinson within ten days, or by ten

18   days, and if -- if you get the production from Foodonics in

19   seven days, as has been represented -- I mean, I can order it.

20   But my orders don't seem to be having much effect.  I mean, I

21   order it by a certain date and it's not done.

22         I don't know -- I don't know what else to do at this

23   point.  I think what we're coming down to is motion practice

24   and -- and -- and the potential of having to deal with this

25   some other way than coming in here and working it out.  And

1  then the same with the special master situation.

2        Because if -- if there isn't any progress, these

3  status conferences have been and will continue to be a waste of

4  time.  And I don't really want to waste your time, your

5  client's money, and my time, if this isn't getting us anywhere.

6        So, I mean, it seems to me there's been some

7  progress.  I hope that -- that there has been.  But I think

8  what my intention would be at this point is -- is to go ahead

9  and accept these representations on these dates, and then --

10  then either set a very quick status conference again, or part

11  of my order will be that if the documents aren't produced,

12  then -- then you can file a motion to compel, you can ask for

13  whatever sanctions you think are appropriate, and -- and then

14  if -- if -- if the -- Mr. Wells can respond and go that route.

15        Because at this point I don't think on my own I'd be

16  inclined to -- to try to impose sanctions on the -- the dates

17  that I've set.  I basically have set those because you-all have

18  agreed to them.

19        And the whole purpose of these status conferences has

20  been to avoid essentially motion practice and to try to move

21  this along.  I think we've made some progress.

22        If you get these documents from GrayRobinson in ten

23  days and you get these -- the documents from Foodonics in seven

24  days, then we're down to this one -- at least at this point

25  down to this last issue that -- that -- that Mr. Wells raised

1 about the -- the DixieEgg.com, which was -- which was on his

2 list, not yours.

3       So I was really -- I was -- I was aiming -- I was

4 aiming my comments at that last proposal that he made.  And I

5 know your view on that may be affected by what happens in the

6 next seven to ten days.

7       Because if you get what you believe is a good faith

8 response and -- and a true effort to get the GrayRobinson

9 documents and the Foodonics documents, then you might be in a

10 better mood, and you might -- you might -- you might decide

11 that you will look at those, or you would be willing to look at

12 the -- review the Dixie Egg situation in the way Mr. Wells

13 proposed.

14       MR. DIX:  Your Honor, if I could clarify.  What will

15 we be getting and when will we be getting it with respect to

16 the Dixie Egg issue?

17       MR. WELLS:  What I have proposed to the Court is that

18 we defer further investigation into the DixieEgg.com until

19 we've had a chance to review the documents that have been

20 produced by Foodonics that will be produced by GrayRobinson,

21 even the Cal-Maine documents, all of which arguably will have

22 DixieEgg.com communications in them.

23       You've already got the DixieEgg.com communications

24 from Foodonics, from Cal-Maine.  You will get them from

25 GrayRobinson.

1    And to take the next step, to go to an account that

2 had to be reactivated after the sale to Cal-Maine -- it seems

3 to me to be a waste of time at this point.  If you find that

4 there are documents within what has been produced that would

5 suggest otherwise, then we can address it.

6    THE COURT:  Well, here's my suggestion on it, is

7 that -- that you -- you somehow get a price on what it's going

8 to cost to have that -- to do what you say needs to be done.

9    And then in the next status conference that we're

10 going to have in about two weeks, we can take up the issue

11 again.

12    And if the cost is -- if you document the cost and

13 balancing the cost with -- with what might be a duplicative

14 production of discovery, then we'll see what we do with that.

15    So why don't we handle it that way and see where we

16 go.  Because this extra five months you're going to get is

17 going to go by like the snap of fingers.

18    And so -- so I think that that's -- I think that

19 that's the best way to handle it.  And we'll come back in 14

20 days or so.  We'll see where everything is.

21    That will be past the ten-day new deadline for the

22 GrayRobinson documents.  It will be past the deadline for

23 Foodonics.

24    And then -- and if we're still having a problem

25 then -- you can file your motion to ask Judge Corrigan to

appoint a special master anytime you want.

But I think that -- that what happens -- what happens in 14 days is going to be telling. And -- and then you can either move for a special master and ask Judge Corrigan to order -- to order them to pay for it or you can -- I'll give you deadlines for filing motions to compel and you can move to compel and ask for whatever sanctions you think are appropriate, and Mr. Wells can respond. And he can file his motions if he thinks he should file it.

But I'm -- I -- I don't really know what's going on behind the scenes on some of these things, because you-all know better than I do.

But, you know, I -- I know you, Mr. Dix, and I know Mr. Post, and I know Mr. Wells -- I know you-all from seeing you in court and I know you-all by way of your reputation.

So if -- if there are challenges here, I -- I'm not thinking it's because you-all aren't doing what you can do and what you think is -- is appropriate.

But if it doesn't get done, that is, if the documents aren't produced, then the Court has to get to the bottom of it somehow.

And -- and, you know, it often -- it often takes some bidding. And oftentimes lawyers are in a tough position because of -- of various situations.

Like the GrayRobinson situation, I can see why that's

1    a challenge.  You know, but -- but at some point, you know,

2    there comes a time when stuff has to happen.  And we've kind of

3    all been trying to get it done without -- without unnecessary

4    litigation.  But it may be necessary.

5         So that's what I -- let's look at our calendars and

6    we'll -- we'll -- we'll come back in about -- about two weeks.

7         Let's see.  What is -- today is the 2nd -- or is it

8    the 3rd?  Today is the 2nd.  Seven, eight, nine -- the tenth

9    business day from today is the 17th, isn't it?

10        No, the 18th, if you don't count today, because

11    Monday, the 8th, is Columbus Day.

12        The 17th.

13        MR. DIX:  The 17th.

14        THE COURT:  Yes, the 17th.  So the 17th is the due

15    date for the -- for the GrayRobinson production and the

16    Foodonics production.  The Foodonics -- not production, but

17    the -- the amended privilege log would be the 12th.

18        Is that right?

19        Yes.  The due date would be the 12th.

20        So I say we set it on -- on Thursday, the 18th, set a

21    status conference.

22        MR. DIX:  My only hesitation with that, Your Honor,

23    is that if we don't get production until the 17th --

24        THE COURT:  Until the 17th?

25        MR. DIX:  Right.  If it comes in on the last day,

1  which is typically what has been happening, not after, then

2  we're not going to have time to -- to evaluate what's been done

3  before we come see you the next day, or less than 24 hours.

4         THE COURT:  All right.  Well, let's do it this way.

5  Let's do it this way.  Let's set it off for the next week.  But

6  what I'm going to do is -- is require that a notice be filed

7  on -- on October 12th stating that the docket -- that the

8  privilege log has been amended or it hasn't been amended,

9  because I want to know on the 12th.

10        And then on the 17th, there will be a notice filed

11  that the GrayRobinson documents have been produced or they have

12  not been produced.

13        Then that way I'll know.  Because I want to -- I want

14  to have an idea of where we are.  And then I can set this over

15  for the following week, sometime the week of the 22nd, if

16  you-all are available, like maybe the 25th, October 25th.

17        MR. DIX:  That works for me, Your Honor.

18        THE COURT:  Mr. Wells, does that work for you, the

19  25th?

20        MR. WELLS:  I believe it does, Your Honor.

21        THE COURT:  Mr. Post?

22        MR. POST:  Yes, sir.  It does.

23        THE COURT:  All right.  Why don't we set it that

24  date?  Can we set it at 10:30?

25        MR. DIX:  Yes.

1    THE COURT:  And, you know, at this point I'm not

2  going to -- I'm not going to rail and, you know, "You better

3  produce those documents."  I'm not going to do that.

4    You know, this -- this -- this is an effort to try to

5  get this done without having to do those kind of things.  And I

6  know there were some serious challenges here.  But at the same

7  time, as Mr. Dix points out, the -- the clock has been ticking,

8  and continues to tick.

9    So I think -- I think -- I think -- I think by the

10  end of October we're either going to be in full file-motions

11  mode and litigate it that way or -- or we're going to -- we're

12  going to have made the type of progress that we have to make to

13  meet the -- what will be the new schedule.

14    Yes?

15    MR. DIX:  One last request, Your Honor.  With respect

16  to Mr. Wells filing his response to our notice on the one

17  document where there's an issue about the privilege --

18    THE COURT:  Yes.

19    MR. DIX:  -- our -- our filing was very cursory.  We

20  challenge the designation of that as privileged.  There's not

21  much in terms of advocacy there.  We'd like an opportunity to

22  respond to whatever Mr. Wells files.

23    THE COURT:  Well, let's do this.  Why don't we --

24  let's do this.  He'll -- you'll -- he'll file his objections.

25  Let me look at the document.

1    If he -- or he'll file his response to your

2  objection.  Then let me look at the document and -- and then --

3  and then let me just see what it -- what it is before we start

4  filing too many things.

5    And then if I need help with it or -- or it -- it

6  looks to me like there's a problem, then we can take that up --

7  we can take that up at the next status.

8    MR. DIX:  Okay.

9    MR. WELLS:  Your Honor, I realize the Court has

10  discretion on those matters, but I would note that the

11  challenge to the document that is asserted to be privileged, as

12  Mr. Dix pointed out -- minuscule.  Let me say that.  It's just

13  simply a challenge, with no assertion of any sort whatsoever.

14    And we think that our response will address the

15  actual asserted privilege for the related document.  I don't --

16  we do not see a need for any response to that.

17    THE COURT:  All right.  Well -- and I'll take a look

18  at it and can.

19    So let's recap.  The -- the motion to extend the

20  deadlines -- let me see what number that is.  Unopposed motion

21  to extend case management deadlines, document 58, filed on

22  September 20th, 2018, is granted.

23    Then the -- the Foodonics -- the review of the

24  Foodonics privilege -- privilege log and any amended privilege

25  log shall be accomplished -- or the amendment of any privilege

1    log shall be accomplished within seven days.  And that is

2    October 12th, 2018.

3            And if there are documents that should have been

4    produced because they are non-privileged and they -- and they

5    shall be produced on October 12th, then October 17th will be

6    the deadline for the production of the GrayRobinson documents.

7    And we will have a -- another status conference on October

8    25th, at 10:30.

9            I think that -- I think that covers -- oh, and

10    then -- and then Friday, this Friday, the -- the 5th of October

11    will be the date by which, Mr. Wells, you'll file the response

12    to the objection, the claw-back issue.

13            I think that -- I think that -- I think that covers

14    everything.

15            Mr. Post?

16            MR. POST:  I think you were also going to have

17    GrayRobinson file a notice when they file the production?

18            THE COURT:  Yes.  They're going to file their notices

19    on those dates, on the two dates, on the 5th and the -- excuse

20    me, the 12th and the 17th.

21            I'll put all this in a little -- a brief order that I

22    hope I'll get out later today or first thing tomorrow.

23            Does that cover everything, Mr. Dix?

24            MR. DIX:  Yes, Your Honor.

25            THE COURT:  Mr. Post?

1          MR. POST:  Yes, sir.  Thank you.

2          THE COURT:  Mr. Wells?

3          MR. WELLS:  Yes, sir.

4          THE COURT:  All right.  Thank you-all.  We're in

5    recess.

6          COURT SECURITY OFFICER:  All rise.

7       (The digitally recorded proceedings concluded at

8    11:18 a.m.)

9                              - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **CERTIFICATE**

UNITED STATES DISTRICT COURT    )
                                )
MIDDLE DISTRICT OF FLORIDA      )


        I hereby certify that the foregoing transcript is a

true and correct computer-aided transcription from the official

electronic sound recording of the proceedings in the

above-entitled matter.


        DATED this 19th day of November, 2018.



            s/Shannon M. Bishop

            Shannon M. Bishop, RDR, CRR, CRC