UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC., )
a Florida corporation,
)
     Plaintiff,
)
v.                          Case No. 3:17-cv-1054-J-32JRK
)
DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF )
REVOCABLE TRUST, a Georgia trust,
)
     Defendant.
)

DINA KLEMPF SROCHI, as Trustee )
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Florida trust, )
and DENNIS L. BLACKBURN, as
Assistant Trustee of the JEAN KLEMPF )
TRUST,
)
     Counterclaim Plaintiffs,
)
v.
)
FOODONICS INTERNATIONAL, INC.,
a Florida corporation, and KEVIN )
JACQUES KLEMPF,
)
     Counterclaim Defendants.
)


**MOTION FOR SANCTIONS FOR SLUGGISH
DISCOVERY, FAILURE TO OBEY PRETRIAL
ORDERS AND OTHER DISCOVERY ABUSE**

Counterclaim plaintiffs, Dina Klempf Srochi, as Trustee of the Laura Jean Klempf

Revocable Trust, and Dennis Blackburn, as Assistant Trustee of the Jean Klempf Trust (the

"Trust"), move the Court pursuant to Rule 16(f) and Rule 26(g), Federal Rules of Civil Procedure, and 28 U.S.C. § 1927, for the entry of an order sanctioning plaintiff/counterclaim defendants, Foodonics International, Inc. ("Foodonics"), and Jacques Klempf, and their attorneys at GrayRobinson, P.A. ("GrayRobinson"), and awarding the Trust attorneys' fees and costs incurred as a result of the sluggish discovery and other discovery abuses described below, and in support say:

## I.    Summary of Relief Requested

The Trust seeks sanctions against Foodonics and Jacques Klempf (collectively, the "Foodonics Parties") and GrayRobinson pursuant to Rule 16(f) and Rule 26(g), Federal Rules of Civil Procedure, and 28 U.S.C. § 1927, for delaying and increasing the cost of the discovery phase of this case for more than a year, including:

a.  failing to identify and collect ESI from key sources;

b.  failing to preserve text messages;

c.  failing to comply with production deadlines in the Court's discovery orders;

d.  producing encrypted and indecipherable files;

e.  negotiating search terms in bad faith;

f.  after months of inexcusable delay, producing a "dump" of approximately 80,000 unreviewed documents; and

g.  failing to produce non-privileged communications with non-parties that were improperly listed on privilege logs.

A non-exhaustive list of categories of actions required to be taken by the Trust's attorneys as a result of the sluggish discovery and other discovery abuses by the Foodonics Parties and GrayRobinson is set forth in Section IV. D. of this motion (page 23).

The pattern of behavior exhibited by the Foodonics Parties and GrayRobinson in this case violates the mandate of Rule 1, Federal Rules of Civil Procedure, that parties secure the just, speedy and inexpensive determination of every action. The Trust seeks sanctions in the form of an award for attorneys' fees and costs incurred by the Trust as a result of the sluggish discovery and other discovery abuses caused by the Foodonics Parties and GrayRobinson.

## II.    <u>Case Background and Procedural History</u>

On June 23, 2017, the Trust's attorneys transmitted a litigation hold notice to Jacques Klempf advising him of his duty to preserve documents and ESI related to potential litigation between the parties. (A. 1). [1] On September 6, 2017, Foodonics commenced this action by filing a complaint against the Trust. (A. 2; Doc. No. 1).

On January 12, 2018, the Trust served a request for production on Foodonics and a subpoena on Jacques Klempf.[2] (A. 4 and 5). On February 6, 2018, Jacques Klempf served objections to the Trust's subpoena. (A. 6). On February 12, 2018, Foodonics served objections to the Trust's request for production. (A. 7). The objections included general and boilerplate objections that appeared to be copied from an old law firm "form file" and did not satisfy the specificity requirements of Rule 34, Federal Rules of Civil Procedure.

On February 16, 2018, Foodonics served its Initial Rule 26(a) Disclosures on the Trust. (A. 9). On March 29, 2018, Foodonics and Jacques Klempf served Supplemental Rule 26 Disclosures of Foodonics International, Inc. and Jacques Klempf. (A. 16).

---

[1]  ("A. ___") refers to the Appendix and tab number which accompanies (i) this Motion for Sanctions, (ii) the Trust's Motion to Compel Foodonics to Produce Non-Privileged Communications and (iii) the Trust's Motion to Compel GrayRobinson to Produce Non-Privileged Communications, each filed herein on May 20, 2019.

[2] At the time the subpoena was served, Jacques Klempf had not yet been added as a party in this action. Mr. Klempf later became a party when the Trust served its Answer to the Complaint, Affirmative Defenses and Counterclaim on March 16, 2018.

On March 2, 2018, the Trust served a subpoena for documents on GrayRobinson, which is counsel for the Foodonics Parties. (A. 10). On March 16, 2018, GrayRobinson served objections and responses to the Trust's subpoena. (A. 13). GrayRobinson's objections contained many of the same general objections and boilerplate objections that were asserted by the Foodonics Parties.

On March 15, 2018, at the Trust's request, this Court entered an Order Governing ESI Issues (A. 11; Doc. No. 27), which addressed (i) preservation of electronically stored information ("ESI"), (ii) designation of e-discovery liaisons by the parties, (iii) identification of sources and formats of ESI, (iv) pre-motion dispute resolution procedures, (v) procedures regarding methods used to search for ESI, (vi) phasing of ESI production and (vii) formats for ESI production.

In May of 2018, the parties' e-discovery liaisons began discussing search terms that would be used to search for ESI responsive to the parties' discovery requests. (A. 18 and 19). On May 16, 2018, the e-discovery liaison for the Foodonics Parties (Michael Santana) sent the Trust's e-discovery liaison (Chris Dix) a list confirming the search terms that the Foodonics Parties agreed to use to search for ESI responsive to the Trust's discovery requests. (A. 20).

Between June 5, 2018 and October 25, 2018, at the request of the Trust's counsel, this Court held six status conferences regarding discovery problems caused by the Foodonics Parties and GrayRobinson. Copies of the transcripts of those status conferences and the Court's Orders entered after each of those conferences are included in the Appendix accompanying this motion. (A. 22-23, 26-27, 29-31, 37-38 and 58-59; Doc. Nos. 45, 49, 57, 62, 70, and 81-86).

On July 3, 2018 and again on October 4, 2018, the Court granted the Trust's motions to extend the case management deadlines for this case based on ongoing delayed discovery by the Foodonics Parties and GrayRobinson. (A. 28 and 39; Doc. Nos. 50 and 63).

On November 9, 2018, the Trust served a Request for Production to Jacques Klempf seeking information about Mr. Klempf's compliance with his discovery obligations. (A. 64). Also on November 9, 2018, the Trust filed a Motion to Shorten Time for Production of Documents (A. 65; Doc. No. 78), which would have required Mr. Klempf to produce documents in advance of his deposition scheduled on November 28, 2018. Mr. Klempf opposed the Trust's motion as "unnecessary in light of Mr. Klempf's agreement to provide information in his possession or which can be obtained prior to his scheduled deposition." (A. 66; Doc. No. 79). Although this Court denied the Trust's motion, Mr. Klempf did not produce any documents or ESI prior to his deposition on November 28, 2018, and Mr. Klempf testified during his deposition that "I didn't know I was supposed to bring - - bring them today." (A. 70, p. 26, lines 3 – 4). Mr. Klempf did not complete his production of information requested by the Trust until 79 days *after* his deposition (February 15, 2019).

On November 28, 2018, the Trust deposed Jacques Klempf, and on November 29, 2018, the Trust deposed David Hancock as the designated representative of Foodonics. (A. 67, 68, 70 and 72). The Trust continued the deposition of Foodonics because Foodonics had not yet completed production of documents and ESI to the Trust. (A. 74).

On January 28, 2019, the Trust took the continued deposition of Mr. Hancock. (A. 83 and 87). The Trust again continued the deposition because (i) Foodonics had still not completed the production of documents and ESI to the Trust and (ii) Mr. Wells and Mr. Hancock stated on the record that only Jacques Klempf had personal knowledge regarding some of the remaining areas of inquiry. (A. 87, p. 5, lines 5 – 8; p. 9, line 21 – p. 10, line 11; and p. 13, lines 11 – 18).

On February 7, 2019, Jacques Klempf produced Apple data and Cellebrite reports describing iTunes backups of Mr. Klempf's mobile devices. (A. 90). On February 15, 2019, Jacques Klempf produced AT&T records related to his mobile phone.

On March 26, 2019, the Trust filed a Notice of Continued Deposition of Jacques Klempf for April 24, 2019 (A. 91), but counsel for the Foodonics Parties said that Jacques Klempf refused to attend the deposition. The Trust subsequently cancelled the continued deposition (A. 94) after this Court entered its Order on April 11, 2019, directing that all motions to compel, motions regarding privilege log deficiencies, motions for sanctions and motions for appointment of a special master or forensic expert be filed no later than May 20, 2019. (A. 93; Doc. No. 91).

### III.   The Foodonics Parties and GrayRobinson engaged in discovery abuse at every stage of the discovery process.

Early in this case, it appeared that the Foodonics Parties and GrayRobinson were going to comply with their obligations under the Federal Rules of Civil Procedure. A review of the actions by the Foodonics Parties and GrayRobinson over the last year, however, demonstrates intentional or reckless behavior throughout the entire discovery process leading to inexcusable deficiencies and delays.

#### a.    Jacques Klempf failed to preserve text messages on his iPhone.

Jacques Klempf testified during his deposition that he received the Trust's June 23, 2017 litigation hold notice and "that is when we started protecting everything." (A. 70, p. 76, lines 12 – 16). Jacques Klempf also testified that he took affirmative steps to preserve the ESI under his control, including text messages and mobile devices, but later in the same deposition admitted that he did not do anything affirmative to preserve ESI, and instead relied on his counsel to assist him. (A. 70, p. 79, lines 12 – 20 and p. 80, line 6 – p. 81, line 13). Although GrayRobinson also received the June 23, 2017 litigation hold notice, the firm did not have any discussions regarding the

preservation of ESI with Jacques Klempf or Foodonics until 5 or 6 months later. (A. 72, p. 14, line 15 – p. 15, line 9).

Because Jacques Klempf and Foodonics failed to take any affirmative steps to preserve ESI, as instructed by the litigation hold notice, Mr. Klempf subsequently destroyed the text messages and other ESI on his iPhone 7 when he replaced his iPhone 7 with an iPhone X in January 2018. Mr. Klempf testified that he believed that "all the data and everything was transferred over" to the new phone before he instructed an Apple Store employee to wipe all data from the iPhone 7. (A. 70, p. 16, lines 13 – 16). Rather than keeping and preserving his iPhone 7 after it was replaced, however, Mr. Klempf admitted that he had his iPhone 7 wiped clean and gave it to a professional golfer—thereby further destroying the likelihood of retrieving any ESI from the iPhone 7. (A. 70, p. 16, line 17 – p. 17, line 3). Mr. Klempf had no documentation to substantiate his self-serving testimony and, instead, produced only a simple receipt for his purchase of a new phone in January 2018. (A. 84 and 85).

Jacques Klempf further claimed in his deposition that he had only recently discovered that back in January 2015 his new wife, Tracy, deleted text messages on his iPhone 7 by changing the retention settings from "Keep Messages – Forever" to "Keep Messages — 30 days" without Jacques Klempf's knowledge. (A. 70, p. 14, lines 16-18). At the time of Mr. Klempf's deposition in November 2018, however, his phone's text message retention setting had been inexplicably changed back to "Keep Messages — Forever." (A. 70, p. 90, line 15 – p. 91, line 9). Mr. Klempf's testimony on November 28, 2018 that he changed the text message retention setting back to forever "two months ago" was, however, false because on the date of his deposition, Mr. Klempf's iPhone X had text messages he exchanged with Dolph Baker dating back to May 14, 2018. (A. 70, p. 21, line 21 – p. 23, line 4). If Mr. Klempf's phone had, in fact, been set to only retain text messages

for 30 days, then the messages Klempf exchanged with Dolph Baker on May 14, 2018, would not have been retained past June 13, 2018, and would no longer have appeared on Mr. Klempf's phone during his deposition more than five months later on November 28, 2018.

Mr. Hancock's testimony on November 29, 2018, raised further concerns about Mr. Klempf's failure to preserve text messages because Mr. Hancock testified  (i) there was no evidence to suggest that the retention settings on Mr. Klempf's phone were changed *before* Mr. Klempf's duty to preserve arose, and (ii) the message retention settings could have been changed *after* Mr. Klempf's duty to preserve arose.  (A. 72, p. 17, line 18 – p. 18, line 3).

Casting further doubt on Mr. Klempf's testimony about his mobile devices is Mr. Klempf's false testimony that he owned an iPhone 7 when he got married in January of 2015:

> ***My iPhone 7 - - when I got married in January 2015*** - - I'm much like a lot of people here that don't know how to do all of the nuances of an iPhone.  My wife, however, is.  So we got married in January 2015, and I was whining or complaining about something, and she said, well, let me fix your iPhone.  ***This is the iPhone 7 that I had.***

> A. 70, p. 14, lines 8 – 14.

Mr. Klempf could not have owned an iPhone 7 in January of 2015 because the iPhone 7 was not released and made available to the public until almost two years later (in late 2016).[3]  Mr. Klempf's testimony that he never obtained a new phone in 2017 (A. 70,  p. 116, lines 10 – 11) is also false based on Mr. Klempf's own Apple data, which shows that Mr. Klempf had an iPhone 5 in 2015, an iPhone 6 in 2016 – 2017, and did not obtain the iPhone 7 (which he claims he had in January 2015) until March 27, 2017.[4]

---

[3] https://en.wikipedia.org/wiki/IPhone_7.

[4] During Mr. Klempf's deposition on November 28, 2018, Mr. Wells described Mr. Klempf's Apple data as "indecipherable."  (A. 70, p. 25, lines 9 – 12).  A cursory review of the Apple data, however, makes this description, at best, incorrect.

The mystery surrounding Mr. Klempf's text messages from his iPhone 7 (or other available sources) remains unsolved due to Mr. Klempf's intentional destruction of evidence after his duty to preserve it arose, and also because of false or misleading testimony regarding the manner and timing in which the text messages and other phone data were destroyed.[5]

Although assertions of privilege make it unclear as to what GrayRobinson knew about Mr. Klempf's destruction of evidence and when, there is no question that the destruction of evidence was not made known to the Trust until October 15, 2018 (A. 43), which was seven months after the Foodonics Parties and their counsel certified in discovery responses (A. 6 and 7) and Rule 26 disclosures (A. 9 and 16) that they had made a reasonable effort to assure that their client provided them all of the information and documents that were responsive to the Trust's discovery demands. Because the Foodonics Parties and their counsel did not meet their duty to respond properly and promptly to the discovery requests, the Trust incurred significant unnecessary cost and delay in attempting to determine the existence and location of Mr. Klempf's text messages and other phone data.

**b.    The Foodonics Parties failed to identify multiple significant sources of ESI when responding to the Trust's discovery requests.**

The initial disclosure requirements under Rule 26(a)(1)(A)(ii), Federal Rules of Civil Procedure, require parties to provide to the other parties "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or

---

[5] Jacques Klempf's AT&T records demonstrate (i) 20 phone calls and text messages exchanged between Jacques Klempf and Cal-Maine's CEO, Dolph Baker, in 2015 (the year of Jacques Klempf's redemption of his mother's shares of Foodonics) and (ii) 53 phone calls and text messages exchanged between Jacques Klempf, Dolph Baker and Cal-Maine's Chief Operating Officer, Sherman Miller, in 2016 (the year Cal-Maine acquired Foodonics' assets). Only some of the text messages in 2015, 2016 and other relevant years have been produced to the Trust. The Trust reserves the right to seek additional sanctions against Foodonics and Jacques Klempf for spoliation of evidence after additional pending discovery, including Cal-Maine's production of ESI, is complete.

defenses, unless the use would be solely for impeachment." On February 16, 2018 and March 29, 2018, the Foodonics Parties failed to comply with Rule 26(g) by falsely certifying that Rule 26(a)(1)(A)(ii) disclosures were complete and correct at a time when, in fact, no "reasonable inquiry" had been made into the sources of ESI available.

In addition to Rule 26 obligations, paragraph 3 of the Order Governing ESI Issues (A. 11; Doc. No. 27) required Foodonics and Jacques Klempf to disclose to the Trust the specific locations and types of potentially discoverable information. On March 26, 2018, the Foodonics Parties disclosed *some* locations of potentially discoverable information (A. 15), but the Foodonics Parties failed to identify the following *additional* potential sources of ESI, leading to further delay and expense for the Trust:

1. Jacques Klempf and Foodonics failed to identify former employees and family members as potential sources of ESI. Mr. Klempf instead retained GrayRobinson to oppose the Trust's efforts to obtain ESI subpoenaed from those former employees and family members. (A. 14; Doc. No. 30).

2. Jacques Klempf failed to identify five iTunes backups (created between 2015 – 2017) as potential sources of text messages and other ESI from Jacques Klempf's mobile devices. These backups were not identified until December 7, 2018, *after* the depositions of Jacques Klempf and Foodonics' 30(b)(6) representative. (A. 75). Mr. Hancock's explanation for failing to identify this source any sooner was that "I'll be candid, I didn't know that an iTunes backup was an option for a data source." (A. 87, p. 39, lines 16 – 18).

3. Foodonics failed to identify 130,000 emails (37,000 of which contained one or more agreed search terms) from DixieEgg.com email accounts of Foodonics employees other than Jacques Klempf. (A. 50). The responsive documents were not identified until October 22,

2018, and only after prior erroneous representations were made by counsel for Foodonics that (i) no DixieEgg.com emails were available for anyone except for Jacques Klempf[6] and (ii) the contents of the DixieEgg.com email accounts were copied from the DixieEgg.com domain to some other source when the employees transitioned employment to Cal-Maine Foods.[7]

4.      GrayRobinson failed to identify approximately 20,000 files dated prior to May of 2015, which were stored in a separate location on GrayRobinson's system.   These additional files were not identified until a Court-ordered meeting among counsel for the parties on November 1, 2018, and only after the Trust's counsel brought the deficiency of GrayRobinson's initial production to their attention.  (A. 53).

5.      Jacques Klempf failed to identify approximately 2,400 iChat files stored on Jacques Klempf's computer.  These files were not identified until December 6, 2018, *after* the depositions of Jacques Klempf and Foodonics' 30(b)(6) representative, and only after inquiries by the Trust caused counsel for Jacques Klempf to undertake a more careful and complete search of the ESI collected from Mr. Klempf's computers.  (A. 75).

6.      Jacques Klempf failed to identify an iPad in his possession until his deposition on November 28, 2018, and only in response to questions from the Trust's counsel at the deposition.  (A. 70, p. 134, line 25 – p. 135, line 7).

7.      Jacques Klempf's Apple data demonstrates that he owned an iPhone 5 in 2015 and an iPhone 6 in 2016 – 2017.  The existence of these devices—or their present location— were never disclosed to the Trust.

---

[6] Mr. Santana stated in an email on May 24, 2018 that "It was my understanding that the Dixie Egg emails were transferred as part of the Asset Purchase Agreement or they were terminated.  I'm told Mr. Klempf paid out of his own pocket to keep his Dixie Egg email account."  (A. 21).

[7] Mr. Hancock stated during the June 5, 2018 discovery status conference that "We've not located them yet.  It was our understanding that those - - the contents of those e-mail accounts went with the employees when they transitioned from Foodonics to Cal-Maine."  (A. 22, p. 28, lines 22 – 25).

8.      Jacques Klempf failed to identify his iCloud as a potential source of ESI until Mr. Klempf's counsel revealed during a call with the Trust's counsel on October 10, 2018, in response to Mr. Klempf's initial deficient production of text messages, that Mr. Klempf's text messages were collected from an iCloud backup.  (A. 43).

**c.      The Foodonics Parties delayed, failed to collect or improperly collected ESI from key custodians.**

The Foodonics Parties delayed, failed to collect, or improperly collected ESI from the following key custodians:

1.      Jacques Klempf failed to collect any ESI directly from his iPhone 7 or iPhone X.  (A. 72, p. 10, lines 22 – 24).  The only collection of ESI from Mr. Klempf's iPhones that has ever occurred was conducted by Mr. Klempf himself (who has no experience or training in forensic collection) by initiating a backup of some portion of data from his iPhone X to his iCloud in April of 2018.  (A. 72, p. 10, lines 1 – 21).  The data from the iCloud backup, however, did not include any text messages during the time period relevant to this case.

2.      Foodonics and Jacques Klempf failed to identify or collect ESI from former employees and family members who used personal email accounts and personal computers and mobile devices to communicate regarding matters relevant to the claims and defenses of the parties in this case (A. 70, p. 112, lines 12 – 16).

3.      Jacques Klempf failed to collect phone records from AT&T and Apple until after the depositions of Mr. Klempf and the 30(b)(6) representative of Foodonics in November of 2018.  Because of delays in collecting this information, the AT&T phone records and Apple data were not produced to the Trust until February of 2019.  (A. 90).

4.      GrayRobinson relied on Jacques Klempf to collect ESI from multiple sources (including the DixieEgg.com emails and text messages from Jacques Klempf's iPhone X)

even though Mr. Klempf, by his own admission, lacks any training or expertise to ensure that the collection was done properly and completely.  (A. 49, 50, 52 and 70, p. 70, lines 11 – 16).

### d. The Foodonics Parties ignored their obligation to decrypt or unlock password-protected files.

Paragraph 7.H. of the Order Governing ESI Issues requires a producing party, upon reasonable request by the requesting party, to take reasonable steps to decrypt or use known passwords to provide a requesting party a means to gain access to the encrypted and password-protected files.  In response to the Trust's request that Foodonics decrypt and provide passwords for ESI produced by Foodonics, GrayRobinson decided instead to "kick the can down the street" on accessing files with passwords that were known or readily available to Jacques Klempf.  (A. 44).  Upon further request by the Trust, GrayRobinson claimed they "DO NOT know what the passwords are." (A. 60-63).  GrayRobinson later provided passwords for some password-protected files, but only after the Trust's attorneys demonstrated to GrayRobinson that passwords could be easily ascertained by speaking to Jacques Klempf or by reviewing other ESI related to the password-protected files.  (A. 71).

### e. GrayRobinson produced indecipherable files on its Privilege Log.

On April 5, 2019, GrayRobinson produced a supplemental privilege log (A. 92) that contained several items that were indecipherable, including the following:

| Document ID | From/Author | From | To | Cc |
|---|---|---|---|---|
| DOC-0001226524 | ç‰‡æ⁣â⁣¥æ…™æ⁣® <ä¼¯äœ½â⁣'å¡…ä¡fä⁣® ä•‡ä¼¯ãµ•ä¥†å⁣'â⁣"ä '⁣ä¥⁣ä¥Žå'"ä…'ä¥"ä•— äœ ä½'å⁣•ä Œ¯ãµŽä•' ä¥fä¥⁣ä¹…â⁣"äŒ¯ãµŽ å¥‡ä¹•> | ç‰‡æ⁣â⁣¥æ…™æ⁣® <ä¼¯äœ½â⁣'å¡…ä¡ fä⁣®ä•‡ä¼¯ãµ•ä¥†å⁣' â⁣"ä'⁣ä¥⁣ä¥Žå'"ä…'ä ¥"ä•— äœ ä½'å⁣•ä Œ¯ãµŽä• 'ä¥fä¥⁣ä¹…â⁣"äŒ¯ãµ Žå¥‡ä¹•> | æ¬§æªæ⁣¥ç⁣§æ… €æ±¯æŒ¯æµ¯ <æ© «æ•« æ•§ä•³æ½ ¡â¹ æ½£>; "ç‰²â•¹â ¹•ä¯ æ½¯æ•² <æ•"ç‰²â¹¹â¹²ç‰¯ä ⁣¥ç‰§ç¥¡ç^æ‰¯æ¹ ©æ½³â¹®æ½£>; | ç‰‡æ•©â⁣²æ•— æ±¬ <ç‰‡æ• ©â¹²æ•—æ±¯æŒ¯æ‰¯ä¹ æ½£>; "ç‰²â•¹â¹¹â ¹•ä¯ æ½¯æ•²; ç‰²â ¹¹â¹²ç‰¯ä", æ¹â¹®æ¹⁣æ⁣±¡æ…¦ æ¥² <æ…⁣ç¥²æ…Šæ •®åŒ®æ…£æ™^ç‰¡ ä⁣®©ç‰§ç¥¡ç^æ‰ ¯æ¹®ç‰²â¹®æ½£> |

| | | | |
|---|---|---|---|
| DOC-0001228389 | ç‰‡æ⊡¡â⊡¥æ…™æ⊡® <ä¼¯äœ½â⊡’å¡…ä¡fâ¹⊡ä•‡ä¼¯ãµ•ä¥†å⊡’â⊡”ä ’â⊡ä¥⊡ä¥Žå‘‘ä…’ä¥”ä•— äœæ ä½’å⊡•äŒ¯ãµŽä•’ ä¥fä¥⊡ä¹…å⊡”äŒ¯ãµŽ å¥‡ä¹•> | ç‰‡æ⊡¡â⊡¥æ…™æ⊡® <ä¼¯äœ½â⊡’å¡…ä¡fâ¹ ⊡ä•‡ä¼¯ãµ•ä¥†å⊡’â⊡ ”ä’⊡ä¥⊡ä¥Žå‘‘ä…’ä¥” ä•—äœæ ä½’å⊡•äŒ ¯ãµŽä•’ä¥fä¥⊡ä¹…å⊡” äŒ¯ãµŽå¥‡ä¹•> | æ…•ç¥²ä¨ æ¹¡â⊡¥æ⊡” æ±¡æ…¦æ¥² <æ…⊡ç¥²æ…Šæ•®åŒ ®æ…£æ™¬ç‰o¡ä•©ç ‰o§ç¥¡ç^- æ‰o¯æ¹©æ½³â¹®æ½£ >; | æ•“ç‰o²â¹â¹•ä° ç•¡â€ ¬å‰o† <æ•⊡æ•´â⊡²æ…Œä⊡·ç ‰o§ç¥¡ç^- æ‰o¯æ¹©æ½³â¹®æ½£ >; |
| DOC-0001232985 | æ¥—æ±¬æ…©â• â¹⊡äˆ ç¥¯æ•¬ <ä¼¯äœ½â⊡’å¡…ä¡fâ¹⊡ä•‡ä¼¯ãµ•ä¥†å⊡’â⊡”ä ’â⊡ä¥⊡ä¥Žä…’ä¥”ä•— äœæ ä½’å⊡•äŒ¯ãµŽä•’ ä¥fä¥⊡ä¹…å⊡”äŒ¯ãµŽ ä‰—å¥⊡ä•Œ> | æ¥—æ±¬æ…©â• â¹⊡äˆ ç¥¯æ•¬ <ä¼¯äœ½â⊡’å¡…ä¡fâ¹ ⊡ä•‡ä¼¯ãµ•ä¥†å⊡’â⊡ ”ä’⊡ä¥⊡ä¥Žå‘‘ä…’ä¥” ä•—äœæ ä½’å⊡•äŒ ¯ãµŽä•’ä¥fä¥⊡ä¹…å⊡” äŒ¯ãµ Žä‰—å¥⊡ä•Œ> | æ•®æ•´â⊡²â¹¡ä°ç•¡â€ ¬å‰o† <æ•⊡æ•´â¹²æ…Œä⊡·ç ‰o§ç¥¡ç^- æ‰o¯æ¹©æ½³â¹®æ½£ >; | |
| DOC-0001233168 | ç‰‡æ⊡¡â⊡¥æ…™æ⊡® <ä¼¯äœ½â⊡’å¡…ä¡fâ¹⊡ä•‡ä¼¯ãµ•ä¥†å⊡’â⊡”ä ’â⊡ä¥⊡ä¥Žä…’ä¥”ä•— äœæ ä½’å⊡•äŒ¯ãµŽä•’ ä¥fä¥⊡ä¹…å⊡”äŒ¯ãµŽ å¥‡ä¹•> | ç‰‡æ⊡¡â⊡¥æ…™æ⊡® <ä¼¯äœ½â⊡’å¡…ä¡fâ¹ ⊡ä•‡ä¼¯ãµ•ä¥†å⊡’â⊡ ”ä’⊡ä¥⊡ä¥Žå‘‘ä…’ä¥” ä•— äœæ ä½’å⊡•äŒ¯ãµŽä•’ ä¥fä¥⊡ä¹…å⊡”äŒ¯ãµ Žå¥‡ä¹•> | æ•§æ- ª⊡æ¥çⓧ§æ…€æ±¯æŒ ®æµ¯ <æⓒ•æ•«æ•§ä• ³æ½¡â¹®æ½£>; | æ•“ç‰o²â¹•â¹•ä°ä¯ æ¹¡⊡ æ•² <æ•“ç‰o²â¹¹æ½ ⊡ç‰o¯ä⊡¥ç‰o§ç¥¡ç^- æ‰o¯æ¹©æ½³â¹®æ½ £>; æ…•ç¥²ä¨ æ¹¡â⊡ ¥æ⊡”æ±¡æ…¦æ¥² <æ…⊡ç¥²æ… Šæ• ®åŒ®æ…£æ™¬ç‰o¡ä ä⊡©ç‰o§ç¥¡ç^æ‰o¯æ¹ ©æ½³â¹®æ½£>; |
| DOC-0001233455 | ç‰‡æ•©â⊡²æ•— æ±¬ <ä¼¯äœ½â⊡’å¡… ä¡fâ¹⊡ä•‡ä¼¯ãµ•ä¥†å ⊡’â⊡”ä’⊡ä¥⊡ä¥Žå‘‘ä…’ ä¥”ä•—äœæ ä½’å⊡•äŒ ¯ãµŽä•’ä¥fä¥⊡ä¹…å⊡”ä Œ¯ãµŽå⊡‡ä±…å⊡Œ> | ç‰‡æ•©â⊡²æ•— æ±¬ <ä¼¯äœ½â⊡’å¡…ä¡fâ¹ ⊡ä•‡ä¼¯ãµ•ä¥†å⊡’â⊡ ”ä’⊡ä¥⊡ä¥Žå‘‘ä…’ä ¥”ä•—äœæ ä½’å⊡•ä ŒŒ¯ãµŽä•’ä¥fä¥⊡ä¹…å⊡” äŒ¯ãµŽå⊡‡ä±…å⊡Œ > | æ½⊡Šä„ æ¹¹åŒ æ¥æ¡´ <æ½¡Šæ¹¡â¹¹®æµ”ç’©ä ⊡”ç‰o§ç¥¡ç^- æ‰o¯æ¹©æ½³â¹®æ½£ >; | |
| DOC-0001237604 | ç‰‡æ•©â⊡²æ•— æ±¬ <ä¼¯äœ½â⊡’å¡…ä¡fâ¹⊡ä•‡ä¼¯ãµ•ä¥†å⊡’â⊡”ä ’â⊡ä¥⊡ä¥Žä…’ä¥”ä•— äœæ ä½’å⊡•äŒ¯ãµŽä•’ ä¥fä¥⊡ä¹…å⊡”äŒ¯ãµŽ å⊡‡ä±…å⊡Œ> | ç‰‡æ•©â⊡²æ•— æ±¬ <ä¼¯äœ½â⊡’å¡…ä¡fâ¹ ⊡ä•‡ä¼¯ãµ•ä¥†å⊡’â⊡ ”ä’⊡ä¥⊡ä¥Žå‘‘ä…’ä ¥”ä•—äœæ ä½’å⊡• äŒ¯ãµŽä•’ä¥fä¥•ä¹ …å⊡”äŒ¯ãµŽå⊡‡ä±… å⊡Œ> | æ½⊡Šä„ æ¹¹åŒ æ¥æ¡´ <æ½¡Šæ¹¡â¹¹®â¹•æµ”ç’©ä ⊡”ç‰o§ç¥¡ç^- æ‰o¯æ¹©æ½³â¹®æ½£ >; | |

DOC-0001237579

| | | | |
|---|---|---|---|
| ç‰‡æ£ï¡â—¥æ…™æ‰® <ä¼¯äœ½â—’â¡…ä¡fä¹ ä•‡ä¼¯âµ•ä¥†â—’â—’ä '—ä¥—ä¥Žä¥Žä¥Žä¥Žä¥Ž''ä…'ä¥"ä•— äœ ä½'å—•äŒ¯â—µŽä•' ä¥fä¥—ä¹…â—'äŒ¯â—µŽ å¥‡ä¹•> | ç‰‡æ£ï¡â—¥æ…™æ—® <ä¼¯äœ½â—’â¡…ä¡fä¹ â—ä•‡ä¼¯âµ•ä¥†â—’â—’ä "ä—®ä¥—ä¥Ž''ä…'ä¥" ä•— äœ ä½'å—•äŒ¯â—µŽä•' 'ä¥fä¥—ä¹…â—'äŒ¯â—µ Žå¥‡ä¹•> | æ•"ç‰²â•¹â¹•ä´ æ½¯ æ•² <æ•"ç‰²â¹¹æ½—ç‰¯ä â¥ç‰§ç¥ç— æ‰—æ¹©æ½¹³â¹®æ½£ >; æ—§æ- ªæ—¥ç—§æ...€æ±¯æŒ ®æµ¯ <æ©«æ•«æ• §ä•³æ½¡¹¬æ½£>; | ç‰‡æ•©â—²æ•— æ±¬ <ç‰‡æ•©â—²æ•— æ±—ä—¯³ç‰§ç¥ç— æ‰—æ¹©æ½¹³â¹®æ½£ >; |

A. 95

This is yet another example of the failure of the Foodonics Parties and GrayRobinson to meet their duty to respond to discovery requests completely and properly.

### f.   The Foodonics Parties and GrayRobinson negotiated search terms in bad faith or negligently.

Attorneys for the Foodonics Parties negotiated search terms in bad faith, or negligently, by proposing untested search terms that would have eliminated relevant ESI from their productions. For example, GrayRobinson proposed adding the search term "Foodonics" to other search criteria which would have omitted hundreds of responsive documents because Jaques Klempf and others commonly referred to Foodonics only as "Dixie Egg Company."  GrayRobinson's failure to test their proposed search terms, or failure to disclose the results of any testing that was performed, suggests that Gray Robinson was unaware of, or willfully ignoring, the adverse impact the additional search terms posed to the Trust.

### g.   The Foodonics Parties and GrayRobinson performed a "data dump" of approximately 80,000 files without reviewing for relevance.

The e-discovery liaisons of the parties agreed upon a procedure for using search terms to determine an initial data set, followed by attorney review of the search term "hits" for relevance and privilege.  Although the search terms were agreed to by the parties on May 16, 2018, the Foodonics Parties refused to review their ESI for relevance or negotiate additional limiting search

terms in good faith.  Instead, on August 30, 2018 and again on November 1, 2018, after several Court supervised discovery status conferences and numerous failures to comply with this Court's deadlines and orders, the Foodonics Parties and GrayRobinson performed a "data dump" totaling approximately 80,000 documents which were not reviewed by the Foodonics Parties or their attorneys.  As a result, counsel for the Trust had to expend a significant amount of time reviewing documents which had no relevance to the issues in this case.

### h.     The Foodonics Parties and GrayRobinson failed to produce non-privileged documents improperly listed on privilege logs.

As described in greater detail in separate motions filed concurrently with this Motion, despite six discovery status conferences and their failure to comply with the Court deadlines and directives resulting therefrom, the Foodonics Parties and GrayRobinson have still failed to produce non-privileged communications with non-parties which are still improperly categorized as privileged on privilege logs produced by Foodonics.[8]

### i.     Jacques Klempf produced irrelevant text messages.

On September 14, 2018, Jacques Klempf produced 90 text messages to the Trust. (A. 33). Because all of the text messages produced were outside the relevant date range, none of them were responsive to any of the Trust's discovery requests.  On December 28, 2018, only after the Trust took the discovery depositions of Jacques Klempf and Foodonics and identified inconsistencies and gaps which caused counsel for the Foodonics Parties to undertake a more complete search of the ESI collected by and from Mr. Klempf, a small and incomplete quantity of Jacques Klempf's text messages in the relevant date range were ultimately produced.  (A. 40).

---

[8] See Counterclaim Plaintiffs' Motion to Compel Foodonics to Produce Non-Privileged Communications (Doc. No. 96) and Counterclaim Plaintiffs' Motion to Compel GrayRobinson to Produce Non-Privileged Communications (Doc. No. 97).

### j. Foodonics produced duplicate ESI from other sources.

On August 30, 2018, Foodonics produced to the Trust the same ESI that the Trust had previously produced to Foodonics from third parties responding to the Trust's subpoenas. Foodonics produced to the Trust 598 documents from non-party Robert Monsky and 135 documents from non-party Sheldrick, McGehee & Kohler. It was only after the Trust's counsel performed a review of the ESI and identified the issue on October 8, 2018 that counsel for Foodonics said they had made an inadvertent production. (A. 41).

### k. Discovery delays by the Foodonics Parties and GrayRobinson have delayed the trial and other deadlines in this case.

The discovery delays by the Foodonics Parties and GrayRobinson required the Trust to seek two scheduling orders extending the discovery cutoff deadline and other case deadlines. (A. 28 and 39; Doc. Nos. 50 and 63). The trial date in this case has already been delayed by 11 months (from May 2019 until April 2020) because of the discovery delays by the Foodonics Parties. Due to these discovery delays, the Trust was required to file a motion to extend the pretrial deadlines and trial in this case (Doc. No. 95). The motion was not opposed. The Trust does not anticipate filing any further motions to extend the trial date in this case.

### l. The Foodonics Parties and GrayRobinson failed to comply with numerous Court-ordered deadlines.

If the Foodonics Parties had responded promptly and properly to the Trust's discovery requests without the necessity of Court involvement, their document production would have begun by June 20, 2018 and finished by the end of July 2018. (A. 3, 17, 24 and 25).

Similarly, had GrayRobinson responded promptly and properly to the Trust's subpoena in this case, their document production would have begun contemporaneously with Foodonics and also finished by the end of July 2018. (A. 3, 17, 24 and 25).

Instead, the Trust had to initiate and prosecute six discovery status conferences which resulted in numerous Court-ordered directives and deadlines, many of which were violated by the Foodonics Parties and GrayRobinson, including the following:

| Discovery Order | Items to be Produced | Days Past Due |
|---|---|---|
| Order dated 6/6/2018 (A. 23; Doc. No. 45) | Transaction closing documents, along with any ESI that can reasonably be retrieved and to which there is no objection | ESI: None produced<br>Closing docs: 2 days late |
| Order dated 8/22/2018 (A. 31; Doc. No. 57) | All ESI for which search terms were being contemplated (in the agreed-upon format, excluding junk mail and privileged documents), from both Foodonics and GrayRobinson | Foodonics: 148 days late[9]<br><br>GrayRobinson: 218 days late[10] |
| Order dated 8/22/2018 (A. 31; Doc. No. 57) | Jacques Klempf text messages | 110 days late[11] |
| Order dated 10/4/2018 (A. 38; Doc. No. 62) | Amended privilege log and any additional unprivileged documents from Foodonics | 105 days late[12] |
| Order dated 10/4/2018 (A. 38; Doc. No. 62) | Notice of compliance regarding privilege log and unprivileged documents | 3 days late |
| Order dated 10/4/2018 (A. 38; Doc. No. 62) | Notice of compliance regarding GrayRobinson ESI | 5 days late |
| Order dated 10/4/2018 (A. 38; Doc. No. 62) | ESI from GrayRobinson | 170 days late[13] |

---

[9] Foodonics did not complete its production of non-privileged ESI until January 25, 2019.

[10] GrayRobinson did not complete its production of non-privileged ESI until April 5, 2019.

[11] Jacques Klempf's initial production was 7 days past due, but only contained irrelevant messages from an irrelevant time period. Additional text messages during the relevant time period were not produced by Jacques Klempf until December 28, 2018.

[12] An initial privilege log was produced 5 days late. A second amended privilege log was not produced until January 25, 2019.

[13] GrayRobinson's final production on April 5, 2019 came more than a year after the subpoena was served.

## IV.     Memorandum of Law

### A.     The Foodonics Parties should be sanctioned under Rule 16(f).

Rule 1, Federal Rules of Civil Procedure, states that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  The sluggish production of ESI by the Foodonics Parties in this case violates the mandate of Rule 1.  Chief Justice Roberts had this to say about the addition of the underlined language to Rule 1 in 2015:

> The underscored words make express the obligation of judges and lawyers to work cooperatively in controlling the expense and time demands of litigation—an obligation given effect in the amendments that follow.
>
> * * *
>
> But [the 2015 amendments] will achieve the goal of Rule 1—"the just, speedy, and inexpensive determination of every action and proceeding"—only if the entire legal community, including the bench, bar, and legal academy, step up to the challenge of making real change.
>
> * * *
>
> As for the lawyers, most will readily agree—in the abstract—that they have an obligation to their clients, and to the justice system, to avoid antagonistic tactics, wasteful procedural maneuvers, and teetering brinksmanship.
>
> Chief Justice's 2015 Year-End Report on the Federal Judiciary, pp. 6, 9, 11, available at https://www. supremecourt.gov/publicinfo/ year-end/2015year-endreport.pdf.

This Court has broad discretion to sanction parties for violating discovery orders. *Butterworth v. Lab. Corp. of America Holdings*, No. 3:08-cv-411-J-34JRK, 2012 WL 12864185 (M.D. Fla. Apr. 23, 2012) (citing *U.S. v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126

F.3d 1314, 1317 (11th Cir. 1997)).  When a party fails to obey a scheduling order, Rule 16(f)(1), Federal Rules of Civil Procedure, permits a court to issue any sanctions available under Rule 37. In addition to any other sanctions, Rule 16(f)(2) states that a court "must order payment of reasonable expenses, including attorneys' fees, unless the non-compliance was substantially justified or other circumstances make an award of expenses unjust."  To impose monetary sanctions, a court need not find that the sanctioned party acted in bad faith.  *Id.* at *24.

As detailed in Section III. above, the Foodonics Parties and their counsel repeatedly violated this Court's discovery orders.  This Court noted the failure of the Foodonics Parties to comply with this Court's orders during the status conference on October 25, 2018, when the Court said "[the Trust] pointed out last time that my orders seem to mean nothing [to the Foodonics Parties] and — and I have to say that what has happened, I guess, confirms to some degree what you said."  (A. 58, p. 8, lines 17 – 19).

The testimony of Jacques Klempf and the corporate representative of Foodonics (who is an employee of GrayRobinson) in the discovery depositions taken in this case provided further evidence that the sluggish discovery in this case was not substantially justified.  (A. 70, 72 and 87).

Accordingly, this Court should award sanctions in the form of attorneys' fees and costs incurred by the Trust in response to the sluggish discovery of the Foodonics Parties.

**B.     The Foodonics Parties and GrayRobinson also should be sanctioned under Rule 26(g).**

Under Rule 26(g), Federal Rules of Civil Procedure, every disclosure made under Rule 26(a)(1) and every discovery response served must be signed by at least one attorney.  By signing, an attorney certifies that a disclosure is complete and correct at the time it is made, to the best of the attorney's knowledge, information and belief formed after a reasonable inquiry.  The Advisory

Committee notes to Rule 26(g) provide that "the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." A failure to comply with Rule 26(g) may result in sanctions against the attorney and the client when they abdicate their responsibilities in responding to discovery:

> As plaintiff's counsel has an affirmative duty to assure that their client responds completely and promptly to discovery requests. Their inaction seriously frustrated the defense of this case. The record here demonstrates a casualness at best and a recklessness at worst in plaintiff's counsel's treatment of their discovery duties. I agree with defense counsel that the attorneys abdicated their responsibilities while representing that they had not. If all counsel operated at this level of disinterest as to discovery obligations, chaos would ensue and the orderliness of the discovery process among counsel in federal courts, which is exquisitely dependent on honorable attorney self-regulation, would be lost.

> *Branhaven, LLC v. Beeftek, Inc.*, 288 F.R.D. 386, 392 – 93 (D. Md. 2013).

In this case, the GrayRobinson attorney that signed the responses to the Trust's discovery requests, as well as the Rule 26(a)(1) disclosures for Foodonics and Jacques Klempf certified—incorrectly—that a reasonable inquiry had been conducted prior to serving the responses and disclosures. To the contrary, the depositions of Jacques Klempf and the corporate representative of Foodonics (who is employed by GrayRobinson) confirmed that no *reasonable* inquiry had been made—if any—until after the attorney signed the Rule 26(a)(1) disclosures and the Foodonics Parties' responses to the Trust's discovery requests in February and March of 2018. Although the Foodonics Parties and GrayRobinson acknowledge receipt of the Trust's proposed complaint in June of 2017 and Foodonics filed this action in October of 2017, the invoices from e-discovery vendor KLDiscovery produced by the Foodonics Parties demonstrate that the Foodonics Parties

and GrayRobinson did not *begin* to preserve, collect, process, search or review any ESI until April 2018.

In this case, GrayRobinson violated Rule 26(g) by (i) failing to make a reasonable effort at the appropriate time to assure that Mr. Klempf had provided all the information and documents responsive to the Trust's discovery requests and (ii) misleading the Trust and the Court in those Rule 26(g) certifications. Because these violations were without substantial justification, this Court should impose an appropriate sanction to reimburse the Trust for the discovery-related attorneys' fees and costs incurred after the improper certifications were made.

      **C.**      <u>**GrayRobinson also should be sanctioned under 28 U.S.C. § 1927.**</u>

Pursuant to 28 U.S.C. § 1927, if an attorney unreasonably and vexatiously multiplies the proceedings in a case, the Court may order the attorney to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of the attorney's conduct. Objectively reckless conduct is sufficient to award sanctions under Section 1927, even if the attorney does not act knowingly and malevolently with the specific purpose or intent to multiply the proceedings. *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2007). In this case, the actions of GrayRobinson unreasonably and vexatiously multiplied the proceedings in this case, as demonstrated by the voluminous communications between counsel regarding the deficiency of the discovery responses from the Foodonics Parties, the six discovery status conferences, the discovery depositions of Jacques Klempf and the corporate representative of Foodonics, and the resultant need to continuously reschedule the trial date and case management deadlines in this case.

**D.** **Categories of actions for which attorneys' fees should be awarded as sanctions.**

The following is a non-exhaustive list of categories of actions required to be taken by the Trust's attorneys as a result of the sluggish discovery and other discovery abuses by the Foodonics Parties and GrayRobinson described above:

1. Responding to boilerplate objections asserted by the Foodonics Parties and GrayRobinson in response to the Trust's discovery requests;

2. Communications with GrayRobinson regarding their demand that the Trust substantially limit the relevant date range for discovery;

3. Communications with GrayRobinson regarding their inactions and failure to negotiate ESI search terms in good faith;

4. Communications with GrayRobinson regarding failure to preserve or produce emails from Foodonics employees (@dixieegg.com), including Dick Still;

5. Preparing for and attending six separate discovery status conferences to address deficiencies in productions by the Foodonics Parties and GrayRobinson;

6. Review of thousands of irrelevant documents resulting from the document dump of 80,000 documents by the Foodonics Parties on August 30 and November 1, 2018;

7. Communications with KLDiscovery regarding the deficiencies in ESI productions from the Foodonics Parties and GrayRobinson;

8. Review of the deficient privilege logs produced by the Foodonics Parties and Gray Robinson and correspondence and communications with GrayRobinson thereon;

9. Preparation of motions to extend the deadlines in the case, and communications with GrayRobinson regarding same;

10. Preparation for and attendance at the discovery depositions of Jacques Klempf and David Hancock, as the corporate representative of Foodonics, regarding the deficient ESI productions;

11. Review of the irrelevant text messages produced by Jacques Klempf and correspondence and communications with GrayRobinson regarding those text messages and their duty to identify additional sources of ESI that may contain text messages from Jacques Klempf's mobile phones; and

12. Communications with GrayRobinson regarding Jacques Klempf's failure to preserve his iPhone 7 and the text messages and other ESI stored on that phone.

The Court should enter an order awarding the Trust's attorneys' fees for the activities described above and related activities.

## Conclusion

Rather than comply with their obligations under the Federal Rules of Civil Procedure, related case law and the orders entered by this Court, Jacques Klempf, Foodonics and GrayRobinson engaged in a systemic strategy of denial and delay and only belatedly attempted to comply after the Trust and this Court expended extraordinary time and resources policing and exposing the misconduct of Jacques Klempf, Foodonics and GrayRobinson. The Trust requests that this Court sanction the Foodonics Parties and GrayRobinson pursuant to Rule 16(f), Rule 26(g) and 28 U.S.C. § 1927 and enter an award in the form of the Trust's attorneys' fees and costs incurred as a result of the Foodonics Parties' and GrayRobinson's sluggish discovery, failure to obey pretrial orders, improper certifications and other discovery abuses that have delayed and increased the cost of the discovery phase of this case.

## Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), counsel for the Trust certifies that he has met and conferred in good faith with counsel for Foodonics on multiple occasions without success regarding the discovery disputes set forth in this motion for sanctions.

SMITH HULSEY & BUSEY


By:   /s/ *James H. Post*
        James H. Post
        Michael E. Demont
        R. Christopher Dix

Florida Bar Number 175460
Florida Bar Number 364088
Florida Bar Number 036988
One Independent Drive, Suite 3300
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com
mdemont@smithhulsey.com
cdix@smithhulsey.com

Attorneys for Dina Klempf Srochi, as
   Trustee, and Dennis L. Blackburn, as
   Assistant Trustee, of the Laura Jean
   Klempf Revocable Trust

Certificate of Service

I certify that on this 20th day of May, 2019, I electronically filed the foregoing with the Clerk of Court through the Court's CM/ECF electronic notification system, which will send a Notice of Electronic Filing to all CM/ECF participants in this case.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:  none.

_____ /s/ *James H. Post*_____
Attorney

1032692.8