**TAB 1**

**From:** James H. Post
**Sent:** Friday, June 23, 2017 2:46 PM
**To:** 'james.nolan@gray-robinson.com' <james.nolan@gray-robinson.com>
**Subject:** Laura Jean Klempf Trust

Jim,

I left you a voicemail message earlier today.

We understand that you and our client, Dennis Blackburn, as Special Trustee of the Laura Jean Klempf Trust dated April 1, 1992 (the "Trust"), had a telephone conversation this morning regarding the claims the Trust has against Foodonics and Jacques Klempf. It was our intention to deliver the attached letter, with enclosures, today to Jacques Klempf and Foodonics regarding those claims, and to deliver a courtesy copy to you.

Upon your confirmation that your firm is authorized to accept delivery of our letter on behalf of Mr. Klempf and Foodonics, we will also deliver their copy of the letter to you.

Please advise.

Thank you,
Jim

James H. Post, Esq.
SMITH HULSEY & BUSEY
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7783 (direct)
jpost@smithhulsey.com

JAMES H. POST
DIRECT 904.359.7783
JPOST@SMITHHULSEY.COM

**Privileged Confidential
Settlement Communication**

June 23, 2017

Mr. Jacques Klempf
530 Ponte Vedra Boulevard
Ponte Vedra Beach, Florida 32082

  Re: Laura Jean Klempf Trust dated April 1, 1992 v. Jacques Klempf and
     Foodonics International, Inc.

Dear Mr. Klempf:

  We represent Dennis L. Blackburn, as Special Trustee of the Laura Jean
Klempf Trust dated April 1, 1992 in connection with the Trust's claims against you
and Foodonics International, Inc. ("Foodonics"). The nature of the Special Trustee's
claims are set forth in the accompanying preliminary complaint and discovery
requests.

  The purpose of this letter is to determine your interest in reaching an amicable
resolution of the claims against you and Foodonics short of protracted litigation. As
set forth in the complaint and discovery papers, the Special Trustee will seek in
excess of $23,200,000 in damages. If we litigate, this figure will likely go higher
because we anticipate that the discovery we will pursue against the individuals and
entities set forth in the attached chart will reveal facts consistent with what has
already been discovered.

  Our client would prefer to settle this matter, if possible, based on what he
views are relatively modest terms. Although the Special Trustee is required to
discharge his duties without regard to existing family dynamics, it is not his intent or
desire to complicate those dynamics further in the context of litigation.

Please let us know if you are willing to meet with the Special Trustee within the next ten (10) days to discuss a resolution.

Please also confer with your attorneys regarding your duty to Preserve Documents and Electronic Evidence (see attached).

Very truly yours,

James H. Post

JHP/da/964601.3
Enclosures
cc:    James A. Nolan, III, Esq.

## <u>Notice of Duty to Preserve Documents and Electronic Evidence</u>

With respect to claims against you and Foodonics as described in the accompanying preliminary complaint and discovery requests, you are given notice that you and Foodonics, and each of your respective representatives, has a duty to preserve all potentially relevant documents and electronically stored information ("ESI") regarding this matter. Accordingly:

1.     We demand that you and Foodonics, and your respective affiliates, partners, contractors, employees, managers, owners, subsidiaries, parents, or related companies, agents, assigns, attorneys, accountants, and other persons with access to or possession of your documents or ESI immediately preserve all such documents and ESI until further notice.

2.     If there is any question whether documents or ESI are relevant, you must opt to preserve such documents and ESI.

3.     Relevant paper documents include correspondence, handwritten notes, memoranda, contracts, telephone logs, calendars, and other business records.

4.     We also demand that you take affirmative steps to preserve, and suspend any deletion, overwriting, modification or other destruction of all relevant electronic data under your control. ESI includes correspondence, telephone logs and other business records, such as emails, voicemails, text messages, instant messages, calendars, Outlook PST or other email archive files, and word processing files, spreadsheets, PDFs, JPEGs, PowerPoint presentations, databases, cloud-based storage, temporary internet files, cookies, .ZIP files and all other forms of electronic information, wherever it resides, including the internet. It is imperative that you preserve this information in its current form, without changing any related metadata (for example, a document's creation or last access date).

5.     These preservation obligations also extend to the preservation of relevant data on external media, including hard drives, DVDs, CDs, flash drives, personal home computers, laptops and mobile devices, including PDAs, cell phones and tablets.

6.     Do not initiate any procedures which would alter any active, deleted, or fragmented files. Such procedures may include, but are not limited to, storing (saving) newly created files to existing drives and diskettes, loading new software such as application programs, running data compression and disk defragmentation (optimization) routines, or the use of utility programs to permanently wipe files, disks or drives.

7.    Stop any rotation, alteration and/or destruction of electronic media that may result in the alteration or loss of any electronic data. Back up tapes and disks should be pulled from their rotation cues and replaced with new tapes and disks.

8.    Do not alter and/or erase active, deleted files or file fragments on any electronic media that may have any relation to this matter.

9.    Do not dispose of any electronic media storage devices replaced due to failure and/or upgrade that may contain electronic data having any relation to this matter.

10.    The failure to preserve the above-described documents and ESI may result in legal penalties and sanctions if relevant evidence is deleted or otherwise disposed of.

965517

# TAB 1

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.

| | |
|---|---|
| DENNIS L. BLACKBURN, as Special Trustee of the Laura Jean Klempf Trust, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| K. JACQUES KLEMPF and FOODONICS INTERNATIONAL, INC., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## COMPLAINT

Plaintiff, Dennis L. Blackburn, as Special Trustee of the Laura Jean Klempf Trust dated April 1, 1992, sues defendants K. Jacques Klempf and Foodonics International, Inc., and alleges:

## The Parties

1.     Dennis L. Blackburn is the Special Trustee of the Laura Jean Klempf Trust dated April 1, 1992 (the "Jean Klempf Trust" or the "Trust"). The Trust has its principal place of administration in Duval County, Florida.

2.     Defendant K. Jacques Klempf ("Jacques Klempf"), a resident of St. Johns County, Florida, was at all times relevant to this complaint the President of Foodonics International, Inc. and the Chairman of its Board of Directors.

3.     Defendant Foodonics International, Inc. ("Foodonics" or the "Company") is a Florida corporation with its principal place of business in Duval County, Florida.

4.     Cal-Maine Foods, Inc. ("Cal-Maine") is a Delaware corporation doing business across the United States, including the State of Florida. Cal-Maine is the largest producer and marketer of shelled eggs in the United States. Cal-Maine is not, at this time, a named defendant.

5.     Adolphus B. Baker ("Dolph Baker") is the President, Chief Executive Officer and Chairman of the Board of Cal-Maine. Dolph Baker is not, at this time, a named defendant.

## General Allegations

6.     In 1948, Jean Klempf and her husband, Edward Klempf, started the Dixie Egg Company in Jacksonville, Florida. The operation grew over the years, from a small buyer and seller of eggs, to a large scale operation with facilities spreading over three states utilizing the latest technologies to maximize production. Through a corporate restructure, Dixie Egg ultimately became the marketing arm for its holding company, Foodonics.

7.     Edward Klempf, with the continuous support and assistance of Jean Klempf, provided the leadership and direction for the Company until his death in October, 2002. By this time, the Company had become one of the preeminent egg producers in the United States, possessing several operating companies, feed mills and high-tech processing plants.

8.     Edward Klempf was married 48 years and is survived by his wife Jean Klempf, sons Marc Edward Klempf, Jacques Klempf and their daughter Dina Klempf Srochi.

9.    Following Edward's death, all of the Class A Voting Shares and the Class

B Non-Voting Shares of Foodonics were owned directly by or for the benefit of Edward

Klempf's widow, Jean Klempf, and their children and grandchildren as follows:

| Shareholder | Class A Voting Shares | Class B Non-Voting Shares |
|---|---|---|
| K. Jacques Klempf | 738,930 | 756,112 |
| Marc Klempf | 738,930 | 756,112 |
| Dina Klempf Srochi | 738,930 | 756,112 |
| Laura Jeanne Klempf, as Trustee of the Laura Klempf Rev. Trust | 900,000 | 728,180 |
| Laura Jeanne Klempf and K. Jacques Klempf, as Trustees of the Marital Trust | 691,177 | 659,251 |
| Laura Jeanne Klempf and K. Jacques Klempf, as Trustees of the Family Trust | 422,033 | 402,539 |
| Kevin Jacques Klempf, as Trustee of the Julianne M. Klempf Irrevocable Trust | 0 | 17,182 |
| Kevin Jacques Klempf, as Trustee of the Alexandria R. Klempf Irrevocable Trust | 0 | 17,182 |
| Kevin Jacques Klempf, as Trustee of the Heather J. Klempf Irrevocable Trust | 0 | 17,182 |
| Marc Klempf, as Trustee of the Nicholas B. Klempf Irrevocable Trust | 0 | 17,182 |
| Marc Klempf, as Trustee of the Zachary E. Klempf Irrevocable Trust | 0 | 17,182 |
| Dina Srochi, as Trustee of the Sara L. Srochi Irrevocable Trust | 0 | 17,182 |
| Dina Srochi, as Trustee of the Alan J. Srochi Irrevocable Trust | 0 | 17,182 |
| **Total** | **4,230,000** | **4,178,580** |

10.    At all times material to this complaint, Jean Klempf was a member of the

Board of Directors of Foodonics. After Edward passed away, and due to Jean Klempf's

health and advancing years, Jacques Klempf exercised wide latitude in operating the

Company as President.

3

11.     Between 2002 and 2015, Jacques Klempf was the President of Foodonics, chairman of the Foodonics Board of Directors and a shareholder of the family-owned company.

12.     Jacques Klempf took advantage of his position at the Company to leverage himself into an active role in the Egg Industry Association and to obtain positions on several egg industry boards. He also took advantage of his position at Foodonics to make business connections and friendships in the egg industry – which was a small fraternity – including a strong business and personal friendship with the President of Cal-Maine, Dolph Baker. The Jacques Klempf and Dolph Baker families often socialized at industry meetings and took family vacations together to Europe and elsewhere.

13.     While President of Foodonics, Jacques Klempf began a systematic acquisition of Foodonics stock from his siblings and family trusts. By June 5, 2014, Jacques Klempf had completed the maneuvers necessary to make himself the majority owner of Foodonics' stock (53.6%) leaving the Jean Klempf Trust as a minority shareholder (45.6%):

| Ownership | | | | |
|---|---|---|---|---|
| **Shareholder** | **Class A Voting** | **Class B Non-Voting** | **Total Shares** | **% of Total** |
| Laura Jean Klempf Rev. Trust | 1,591,177 | 1,387,431 | 2,978,608 | 45.6266% |
| K. Jacques Klempf | 2,216,790 | 1,281,278 | 3,498,068 | 53.5838% |
| Alexandria R. Klempf Irrev. Trust | - | 17,182 | 17,182 | 0.2632% |
| Julianne M. Klempf Irrev. Trust | - | 17,182 | 17,182 | 0.2632% |
| Heather J. Klempf Irrev. Trust | - | 17,182 | 17,182 | 0.2632% |
| **Total Shares** | **3,807,967** | **2,720,255** | **6,528,222** | **100.00%** |

## Jacques Klempf's Redemption
## Proposal to Jean Klempf

14.    In 2008, after Jacques Klempf had completed the purchase of the Foodonics shares of stock owned by his siblings and other family trusts, he began his efforts to buy out the shares of stock owned by his mother through the Jean Klempf Trust. Jacques Klempf was informed, however, that his mother was not interested in selling her shares at that time and, instead, intended to remain a shareholder and an active member of the Foodonics' Board of Directors.

15.    From 2006 to December 2015, Jacques Klempf was in dominant control of Foodonics as President and a 53.5838% owner of the Company. As a result, the Jean Klempf Trust, as a minority shareholder, could not receive distributions (other than each year's allocable tax liability) without Jacques Klempf's approval. Jean Klempf was therefore at Jacques Klempf's mercy in order for her Trust to realize any return on its investment. The control and actions taken by Jacques Klempf as President of Foodonics during this period, including the lack of distributions to shareholders, caused Jean Klempf continued concern and discomfort as a director and shareholder of the Company.

16.    Beginning in 2014, Jacques Klempf renewed his efforts to persuade his mother to sell the stock owned by her Trust through a proposed redemption transaction with Foodonics. Jacques Klempf knew that his redemption proposal, if successful, would make him the sole owner of more than 98% of the Foodonics stock.

17.    In response to Jacques Klempf's efforts to persuade his mother to agree to a redemption transaction, Jean Klempf made it clear to her son that she was not willing to proceed with the redemption transaction if he was contemplating a sale of the Company or its assets after the redemption. Jacques Klempf knew his mother did not want to sell

5

her stock back to the Company if he intended to sell the Company or its assets -- or was even considering the possibility of such a sale to a third-party after the redemption -- because she knew Jacques Klempf would unfairly personally benefit at the expense of Jean Klempf and her Trust.

18.     Between December 31, 2014 and December 31, 2015, to induce his mother and her Trust to proceed with the redemption transaction, Jacques Klempf represented to his mother and her representatives that he would not be seeking to sell the company for "a good amount of years":

> I have not had any offers to purchase the company, nor are there any offers presently in play, nor am I seeking to sell the company at this time.
>
> I actually enjoy the day to day and farm life that this business allows me and hopeful I have a good amount of years left to create value so that I can take care of my family in the future.
>
>> Email from Jacques Klempf dated December 31, 2014.

19.     On December 21, 2015, in reliance on (i) Jacques Klempf's representations that he would not be seeking to sell the Company for "a good amount of years" and (ii) his duty to provide full and current disclosures of all matters concerning Foodonics (including in particular, the redemption transaction), the Jean Klempf Trust entered into a Settlement and Redemption Agreement (the "Settlement and Redemption Agreement"), by which all of the Foodonics stock owned by the Jean Klempf Trust was to be "redeemed" by Foodonics for the purchase price of $9,418,500, or approximately $3.07 per share.

20. On December 31, 2015, a closing was held on the Settlement and Redemption Agreement by which all of the Foodonics stock owned by the Jean Klempf Trust was "redeemed" by Foodonics (the "Redemption Sale"). As a result of the Redemption Sale, Jacques Klempf became the owner of 98.55% of all issued Foodonics' stock.

21. On April 20, 2016, less than four months after Jacques Klempf completed the redemption transaction with his mother, Foodonics and Cal-Maine executed a non-disclosure agreement which ultimately resulted in the sale of substantially all of Foodonics' operating assets to Cal-Maine. Upon information and belief, there were additional prior and non-disclosed related understandings or agreements between Cal-Maine and Foodonics.

22. On October 16, 2016, only 10 months after the Redemption Sale, Cal-Maine purchased substantially all of Foodonics' operating assets for the sum of $68,900,000 or $10.66 per share (the "Cal-Maine Sale").[1]

23. As a result of the Redemption Sale and the Cal-Maine Sale, Jacques Klempf and Foodonics realized the objective of their scheme -- Foodonics had purchased the stock of the Jean Klempf Trust at the price of $3.07 and sold the company's assets less than a year later for an equivalent price of $10.97 per share of Foodonics' stock. Had Jacques Klempf and Foodonics paid the Jean Klempf Trust for its stock at the same price per share as Jacques Klempf realized from the sale of assets to Cal-Maine, the Trust

---

[1] Because the Cal-Maine transaction was an asset sale, Foodonics remained responsible for the payment of certain Company debts. At the time of the Cal-Maine Sale, however, the value of the assets owned by Foodonics that were not part of the Cal-Maine Sale exceeded the amount which would have been necessary to have paid off all such debts and to redeem the stock owned by the Jean Klempf Trust on December 31, 2015.

would have been paid $32,675,329 -- $23,200,000 more than the Jean Klempf Trust was paid at the Redemption Sale.

## Jacques Klempf's Fraudulent Representations and Omissions

24.     Foodonics and Jacques Klempf, as the President and Chairman of the Board of Directors of Foodonics, had a fiduciary duty to disclose all information that Jean Klempf and the Trust might have found material in making the decision whether to allow the redemption of the Trust's stock at the time of redemption including, in particular, all information which could affect the value of stock in the Redemption Sale. Jacques Klempf and Foodonics also had the fiduciary duties of loyalty and fair dealing with Jean Klempf and the Trust in all matters concerning Foodonics and the Trust's ownership interest in Foodonics. Jean Klempf and the Trust relied on the faithful performance of these duties by Jacques Klempf and Foodonics which, as set forth below, were breached.

25.     Jean Klempf and the Trust executed the Settlement and Redemption Agreement and closed on the Redemption Sale (i) believing that Jacques Klempf had no intention, strategy or plan to sell Foodonics for a "good amount of years," and (ii) relying on Jacques Klempf's faithful performance of his fiduciary duties to Jean Klempf and the Trust.

26.     Unknown to Jean Klempf and the Trust, however, Jacques Klempf had considered and decided well in advance of the Redemption Sale to unfairly enrich himself by acting upon the business opportunity to sell the Foodonics' assets to Cal-Maine -- a known ready, willing and able buyer -- after Jacques Klempf induced his mother to surrender her shares for a reduced price through the redemption transaction.

8

As a result, Foodonics and Jacques Klempf enriched themselves, at the expense of the Jean Klempf Trust, by collecting additional sale proceeds of approximately $23,200,000 that would have been payable to the Jean Klempf Trust had the Redemption Sale not occurred.

27. On numerous business and social occasions between 2009 and 2015, Dolph Baker informed Jacques Klempf that Cal-Maine wanted to buy Foodonics whenever Jacques Klempf was ready to sell. As a result of these communications, Foodonics and Jacques Klempf knew prior to the Redemption Sale date -- but intentionally failed to disclose -- that Cal-Maine was a ready, willing and able buyer of Foodonics. Therefore, during the time that Jacques Klempf and Foodonics owed the highest duties of loyalty and disclosure to Jacques' mother and the Trust (i.e. during the negotiations and ultimate consummation of the Settlement and Redemption Agreement), he and Foodonics intentionally failed to disclose that Cal-Maine was a ready, willing and able buyer of Foodonics and that his long intended sale of the Company to Cal-Maine could go forward -- without further ado -- as soon as Foodonics effected the Redemption Sale -- all for a much higher per share value than he had represented as fair to his mother and the Trust in the Settlement and Redemption Agreement.

28. Contrary to Jacques Klempf's prior representations that "he was not seeking to sell the company" and further evidencing his hidden strategy to squeeze Jean Klempf and the Trust out of the Company before the Cal-Maine Sale, Jacques Klempf admitted in a newspaper interview after the Cal-Maine Sale that he had known "the Cal-Maine team" for "a long time" and that Cal-Maine "had made it known it wanted to be

involved if Klempf ever wanted to sell" the Company and that Jacques Klempf had "reached out" to his friend, Dolph Baker, to initiate a sales transaction:

> With the egg industry a small fraternity, Klempf said he had known the Cal-Maine Foods team a long time. The company had made it known it wanted to be involved if Klempf ever wanted to sell Dixie Egg.
>
> . . .
>
> That time had come, Klempf said, because he did not have a succession plan . . .
>
> . . .
>
> So he reached out to Cal-Maine Foods, led by friend Dolph Baker, the CEO.
>
> > Daily Record, November 8, 2016; Jacques Klempf on the Sale of Dixie Egg: "*I just think the time is right.*"

This is an example of the type of information which Jacques Klempf should have disclosed pursuant to his fiduciary duty to Jean Klempf and the Trust prior to the Redemption Sale so that Jean Klempf could have made an informed decision as to whether to allow the redemption of the Trust's stock upon the terms being proposed by Jacques Klempf and Foodonics. Jacques Klempf failed to honor that duty to his mother and her Trust.

29. In the Settlement and Redemption Agreement, Foodonics and Jacques Klempf made the following so-called "representations and warranties" to Jean Klempf and the Trust regarding the prospective sale of the Company after the Redemption Closing:

> 10. **Representations and Warranties.**
> . . .
> (b) **From the Foodonics Parties. . . .**
> . . .

(iii) The Foodonics Parties hereby jointly and severally represent and warrant to the Seller that as of the Closing Date: (i) **there are no current offers pending nor ongoing discussions: (A) for the sale of all or substantially all of the assets of the Company;** (B) for the sale by Jacques of his stock in the Company or (C) to effect a merger, stock exchange **or other transaction which would have the effect of either Jacques no longer holding a majority of the outstanding shares of stock of the Company or the Company no longer owning substantially all of the assets that it currently owns** (collectively referred to as a "Realization Event"); (ii) the Foodonics Parties have not received any written offers to effect a Realization Event within the twelve (12) months prior to the date of this Agreement.

The representation that there were no "ongoing discussions" regarding the sale of the Company was false -- Jacques Klempf and the President and CEO of Cal-Maine, Dolph Baker were, in fact, having "ongoing discussions" with each other regarding the possible sale of Foodonics to Cal-Maine. It was from these discussions that Jacques Klempf knew that Cal-Maine was a ready, willing and able buyer of Foodonics as soon as Jacques Klempf "wanted to sell."

30. Moreover, Jacques Klempf admitted in an email dated January 6, 2017, that "[i]n April 2015, I contacted Cal-Maine to see if they had an interest [in purchasing Foodonics]" . . . 9 months before the Redemption Sale.

31. In addition, these "representations and warranties" were fraudulently misleading because they were, at best, only deceptive "half-truths" -- a full disclosure of the facts regarding the prospective sale of Foodonics' assets would have disclosed all material information which included: (i) Jacques Klempf had considered and decided to sell the Company before the Redemption Sale; (ii) Jacques Klempf had a ready, willing and able buyer of the Foodonics' assets waiting on standby; (iii) Jacques Klempf had continuous discussions with Dolph Baker between 2009 and 2015 regarding a

prospective sale of Foodonics to Cal-Maine which were not disclosed to Jean Klempf; and (iv) Jacques Klempf had "reached out" to Cal-Maine before the Redemption Closing to discuss the Cal-Maine Sale which was ultimately consummated on October 16, 2016.

32.     Moreover, and in any event, these "representations and warranties" cannot cure Jacques Klempf and Foodonics' failure to disclose the foregoing material information which was omitted in connection with the Redemption Sale.  Instead, the defendants had a duty to disclose these facts not only because they were necessary to render other disclosures not misleading, but also because of the fiduciary duties of loyalty and disclosure which they owed to the Trust particularly when, as here, a "closed corporation" is redeeming its own stock.  Had the defendants disclosed this omitted material information, Jean Klempf and the Trust would not have agreed to the redemption of the stock owned by the Jean Klempf Trust upon the terms proposed by Jacques Klempf and Foodonics.

33.     In addition to the foregoing, Jacques Klempf and Foodonics failed to disclose material information in connection with the Redemption Sale relating to the Company's valuation that was subsequently disclosed by them to Cal-Maine in connection with the Cal-Maine Sale.  As reflected in Cal-Maine's Form 10-Q filed with the United States Securities and Exchange Commission, Cal-Maine determined the value of Foodonics' assets to be $71,643,000 "based on significant input that are not observable in the markets":

> [T]he following table presents the preliminary fair value of the assets acquired and liabilities assumed (in thousands):

| | |
|---|---|
| Inventory | $ 7,669 |
| Property, plant and equipment | 38,683 |
| Intangible assets | 24,000 |

12

| | |
|---|---|
| Liabilities assumed | (2,005) |
| Total identifiable net assets | 68,347 |
| Goodwill | 3,296 |
| Purchase price | 71,643 |
| Deferred purchase price | (3,000) |
| Cash consideration paid | $ 68,643 |

These fair value measurements were primarily based on significant input that are not observable in the markets.

> Cal-Maine Foods, Inc., Quarterly Report (Form 10-Q), at 9-10 (Dec. 22, 2016).

The "significant input" Cal-Maine received regarding the "fair value measurement" of Foodonics' assets was provided, in large part, from Jacques Klempf and Foodonics which constituted material information which should have also been provided, but was not, to Jean Klempf or her Trust in connection with the Redemption Sale. As a result of the fraud and misconduct of Jacques Klempf and Foodonics, the Jean Klempf Trust agreed to the redemption of its stock at an inopportune time and for far less than it was worth.

## Count One
### (Violation of Florida Securities Act)

34.     This is an action against Jacques Klempf and Foodonics for damages based upon Sections 517.301 and 517.241, Florida Statutes, Florida's Securities and Investor Protection Act (the "Florida Securities Act").

35.     The Jean Klempf Trust realleges and incorporates by reference the allegations set forth in paragraphs 1 through 33 of this complaint.

36.     Section 517.301 of the Florida Securities Act provides that any person (person is defined to include individuals or companies) who offers to buy or buys a

security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, is liable to the person selling the security to him.

37.     The Foodonics' stock held by the Jean Klempf Trust were securities within the meaning of the Florida Securities Act.

38.     Foodonics' redemption of the stock owned by the Jean Klempf Trust was an offer to purchase and a purchase of that stock covered by the Florida Securities Act.

39.     As alleged above, Jacques Klempf and Foodonics violated Section 517.301 of the Florida Statutes in that, in connection with the offer, sale, or purchase of any investment or security, they: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in practices or courses of business which operated or would operate as a fraud or deceit upon any person, in connection with the sale or redemption of securities by the Trust.

40.     As alleged above, the statements or omissions of Jacques Klempf and Foodonics were untrue or misleading or omitted to state material facts necessary to make previously statements made, in light of the circumstances under which they were made, not misleading.  But for those misrepresentations and omissions, the Jean Klempf Trust would not have allowed its stock to be redeemed on the terms and conditions offered by Jacques Klempf and Foodonics.

41.     As alleged above, Jacques Klempf and Foodonics acted at all times with scienter based on an intent to deceive, manipulate or defraud or, at a minimum, negligence.  This scienter was evidenced by, among other things, Foodonics and Jacques Klempf's breaches of fiduciary duty in withholding material information to which the Trust was entitled.

42.     The omitted or misrepresented facts, statements, presentations and communications as alleged herein were material in that there was a substantial likelihood that a reasonable shareholder would consider these facts, statements or documents important in making decisions regarding the redemption or sale of the stock owned by the Jean Klempf Trust.

43.     The Jean Klempf Trust, in ignorance of the false and misleading statements set forth herein and the deceptive and manipulative devices and contrivances employed by Jacques Klempf and Foodonics, relied to its detriment on such misleading statements and omissions.

44.     As a result of Defendants' untrue statements and omissions to state material facts, the Jean Klempf Trust has been damaged in an amount exceeding $23,200,000, exclusive of interests, fees, and other costs.

45.     The Jean Klempf Trust was required to hire the undersigned attorneys to prosecute this action.  The Florida Securities Act provides that the Jean Klempf Trust may recover its reasonable attorneys' fees from the defendants.

46.     Jacques Klempf was President of Foodonics, Chairman of its Board of Directors and owned over 53% of the outstanding stock during the period relevant to this action and is or was a control person under the Florida Securities Act who had

fiduciary duties to the Trust and is jointly and severally liable with Foodonics for the acts and omissions described above.

47.     Jacques Klempf also materially aided Foodonics, as the buyer of the Trust's securities, in acquiring the Trust's securities with an intent to deceive or defraud or with reckless disregard for the truth or law, and is jointly and severally liable as if he was the buyer of the Trust's securities.

48.     Pursuant to Section 517.211 of the Florida Statutes, every member, officer, partner, or agent of Foodonics which personally participated or aided in making the sale or purchase, is jointly and severally liable to Jean Klempf and the Trust in an action for rescission or for damages.

49.     Accordingly, Jacques Klempf is jointly and severally liable to the Jean Klempf Trust for his participation or aiding in the purchase or sale of securities in violation of Section 517.301, Florida Statutes.

WHEREFORE, the Jean Klempf Trust demands judgment against Jacques Klempf and Foodonics, jointly and severally, in an amount exceeding $23,200,000, together with interest, costs and attorneys' fees.

### Count Two
### (Violation of § 10(b) of the Securities Exchange Act and Rule 10b-5)

50.     This is an action against Jacques Klempf and Foodonics for damages pursuant to 15 U.S.C. §78j and 17 C.F.R. § 240, 10b-5 (the "Federal Securities Act").

51.     The Jean Klempf Trust realleges and incorporates by reference the allegations set forth in paragraphs 1 through 33 of this complaint.

52.    The Foodonics' stock held by the Jean Klempf Trust were securities within the meaning of the Federal Securities Act.

53.    Foodonics' redemption of the stock owned by the Jean Klempf Trust was an offer to purchase and a purchase of that stock covered by the Federal Securities Act.

54.    As alleged above, Jacques Klempf and Foodonics violated the Federal Securities Act in that, in connection with the offer, sale, or purchase of any investment or security, they: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in practices or courses of business which operated or would operate as a fraud or deceit upon any person, in connection with the sale or redemption of securities by the Trust.

55.    As alleged above, the statements and omissions of Jacques Klempf and Foodonics were untrue or misleading or omitted to state material facts necessary to make previously statements made, in light of the circumstances under which they were made, not misleading. But for those misrepresentations and omissions, the Jean Klempf Trust would not have allowed its stock to be redeemed on the terms and conditions offered by Jacques Klempf and Foodonics.

56.    As alleged above, Jacques Klempf and Foodonics acted at all times with scienter based on an intent to deceive, manipulate or defraud. This scienter was evidenced by, among other things, Foodonics and Jacques Klempf's breaches of fiduciary duty in withholding material information to which the Trust was entitled.

17

57.     The omitted or misrepresented facts, statements, presentations and communications as alleged herein were material in that there was a substantial likelihood that a reasonable shareholder would consider these facts, statements or documents important in making decisions regarding the redemption or sale of the stock owned by the Jean Klempf Trust.

58.     The Jean Klempf Trust, in ignorance of the false and misleading statements set forth herein and the deceptive and manipulative devices and contrivances employed by Jacques Klempf and Foodonics, relied to its detriment on such misleading statements and omissions.

59.     The Jean Klempf Trust was required to hire the undersigned attorneys to prosecute this action. The Federal Securities Act provides that the Jean Klempf Trust may recover its reasonable attorneys' fees from defendants.

60.     As a direct and proximate result of Jacques Klempf's wrongful conduct, including violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, plaintiff suffered economic losses and damages in connection with the investment of their funds in an amount exceeding $23,200,000, exclusive of interest, attorneys' fees, and other costs.

WHEREFORE, the Jean Klempf Trust demands judgment against Jacques Klempf and Foodonics, jointly and severally, in an amount exceeding $23,200,000, together with interest, costs and attorneys' fees.

## Count Three
### (Control Person Liability - § 20(a) of Securities Exchange Act)

61.     This is an action against Jacques Klempf for damages pursuant to Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).

62.     The Jean Klempf Trust realleges and incorporates by reference the allegations set forth in paragraphs 1 through 33 and 52 through 59 of this complaint.

63.     Jacques Klempf acted as a control person within the meaning of Section 20(a) of the Securities Exchange Act of 1934, of Foodonics by virtue of his position as President of Foodonics and Chairman of its Board of Directors.

64.     Jacques Klempf influenced, directed and controlled the actions, misrepresentations, and omissions set forth herein.

65.     By virtue of his position of authority, responsibility and control, Jacques Klempf had the ability to direct the Redemption Sale and to prevent the actions, misrepresentations and omissions set forth in this complaint.

66.     Moreover, Jacques Klempf profited directly or indirectly from the unwarranted and deceptive methods by which the Redemption Sale was conducted.

67.     As a direct and proximate result of Jacques Klempf's wrongful conduct, including violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, the Jean Klempf Trust suffered economic losses and damages in connection with the investment of their funds in an amount exceeding $23,200,000, exclusive of interest, attorneys' fees, and other costs.

WHEREFORE, plaintiff demands judgment against Jacques Klempf in an amount exceeding $23,200,000, together with interest, costs and attorneys' fees.

## Count Four
### (Fraud)

68.     This is an action for damages against Jacques Klempf and Foodonics for fraud.

69.     The Jean Klempf Trust realleges and incorporates by reference the allegations set forth in paragraphs 1 through 33 of this complaint.

70.     As alleged herein, Jacques Klempf and Foodonics engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, practices, and courses of business which operated as a fraud and deceit upon the Jean Klempf Trust by misrepresentations and failing to disclose all information and material facts necessary to make a fully informed decision in regard to the value of the Foodonics' stock in connection with the negotiation and consummation of the Settlement and Redemption Agreement.

71.     The purpose and effect of this scheme, plan, and unlawful course of conduct was, among other things, to misrepresent facts and conceal important information affecting the value of the Company's stock in order to induce the Jean Klempf Trust to enter into the Settlement and Redemption Agreement with Jacques Klempf and Foodonics.

72.     Jacques Klempf and Foodonics, pursuant to this scheme, plan, and unlawful course of conduct, knowingly and recklessly issued, caused to be issued, or

participated in the preparation, issuance and distribution of deceptive and materially false and misleading written and oral statements to the Jean Klempf Trust.

73.     In addition, Jacques Klempf and Foodonics, pursuant to this scheme, plan, and unlawful course of conduct, knowingly and recklessly withheld and failed to disclose information material to the Redemption Sale.

74.     The omitted or misrepresented facts, statements, presentations and communications alleged in this complaint were material in that there is a substantial likelihood that a reasonable investor would consider these omitted facts and statements, and all related documents, important in the decision by the Jean Klempf Trust to sell its shares to the defendants pursuant to the Settlement and Redemption Agreement.

75.     The Jean Klempf Trust, in ignorance of the false and misleading statements set forth herein and the deceptive and manipulative devices and contrivances employed by Jacques Klempf and Foodonics counter, relied to its detriment on such misleading statements and omissions.

76.     The Jean Klempf Trust has been damaged as a result of the wrongful actions of the defendants in an amount exceeding $23,200,000, exclusive of interest, fees and other costs.

WHEREFORE, the Jean Klempf Trust demands judgment against Jacques Klempf and Foodonics, jointly and severally, in an amount exceeding $23,200,000, together with interest, costs and attorneys' fees.

## Count Five
### (Negligent Misrepresentation)

77. This is an action for damages against Jacques Klempf and Foodonics for negligent misrepresentation.

78. The Jean Klempf Trust realleges and incorporates by reference the allegations set forth in paragraphs 1 through 33 and 70 through 75 of this complaint.

79. Jacques Klempf and Foodonics made false and material misrepresentations and omissions or caused false and material misrepresentations or omissions to be made to the Jean Klempf Trust in connection with the Redemption Sale.

80. Jacques Klempf and Foodonics knew or had reason to know that (i) the representations were false at the time they were made, or (ii) failed to make reasonable inquiry into the truth or accuracy of the representations to the Jean Klempf Trust or the omissions were material.

81. The misrepresentations and omissions were material and were made for the purpose of inducing the Jean Klempf Trust to allow the redemption of its stock by Foodonics.

82. The misrepresentations and omissions induced the Trust to allow the redemption of its securities and the Trust reasonably relied on the misrepresentations and omissions to its detriment and would not have agreed to the redemption but for these misrepresentations and omissions.

83. As a result of these actions and omissions of Jacques Klempf and Foodonics, the Jean Klempf Trust has been damaged.

WHEREFORE, the Jean Klempf Trust demands judgment against Jacques Klempf and Foodonics, jointly and severally, in an amount exceeding $23,200,000, together with interest, costs and attorneys' fees.

## Count Six
### (Breach of Fiduciary Duty of Disclosure)

84.     This is an action against Jacques Klempf and Foodonics for damages based on the breach of fiduciary duty of disclosure.

85.     The Jean Klempf Trust realleges and incorporates by reference the allegations set forth in paragraphs 1 through 33, 70 through 75 and 79 through 83 of this complaint.

86.     Jacques Klempf acted as a control person of Foodonics by virtue of his position as President and Chairman of the Board of Foodonics.

87.     Jacques Klempf influenced, directed and controlled the actions, misrepresentations, and omissions set forth herein.

88.     By virtue of his position of authority, responsibility and control, Jacques Klempf had the ability to direct the purchase or redemption of securities by Foodonics and to prevent the actions, misrepresentations and omissions set forth in this complaint.

89.     Moreover, Jacques Klempf profited directly or indirectly from the unwarranted and deceptive methods by which Foodonics purchased securities from the Jean Klempf Trust, including withholding of important information affecting the value of the Company's stock.

90.     Jacques Klempf and Foodonics had actual knowledge of the omissions of material fact set forth herein, or acted with disregard for the truth in that they failed to disclose true facts, even though such facts were known to them.

91.     Jacques Klempf and Foodonics' misrepresentations and omissions were made for the purpose of enriching themselves at the expense of the Jean Klempf Trust.

92.     The Jean Klempf Trust justifiably relied upon the representations and omissions of Jacques Klempf and Foodonics in its decision to sell its shares of Foodonics' stock pursuant to the Settlement and Redemption Agreement.

93.     The Jean Klempf Trust would not have sold its shares of Foodonics' stock pursuant to the Settlement and Redemption Agreement but for the misrepresentations and omissions of Jacques Klempf and Foodonics, which proximately caused the Jean Klempf Trust's damages.

94.     Because Jacques Klempf and Foodonics owed the Jean Klempf Trust fiduciary duties, a presumption of unfairness attaches to the redemption -- a presumption which cannot be overcome unless the defendants show that (i) the transaction in question was fair and equitable to the Trust; (ii) the defendants made reasonable use of the confidence placed in them by the Trust; (iii) the defendants acted in the utmost good faith and exercised the most scrupulous honesty toward the Trust; (iv) the defendants placed the Trust's interest before theirs and did not use the advantage of their position to gain any benefit for themselves at the Trust's expense; (v) the defendants did not place themselves in any position in which their self-interest might conflict with their

obligations to the Trust as fiduciaries; and (vi) the defendants fully and fairly disclosed all important information to the Trust concerning the redemption.

95. As a direct and proximate result of the wrongful conduct of Jacques Klempf and Foodonics, the Jean Klempf Trust suffered economic losses and damages in connection with the investment of their funds in an amount exceeding $23,200,000, exclusive of interest, attorneys' fees, and other costs.

WHEREFORE, the Jean Klempf Trust demands judgment against Jacques Klempf and Foodonics, jointly and severally, in an amount exceeding $23,200,000, together with interest, costs and attorneys' fees.

### Count Seven
### (Breach of Fiduciary Duty of Loyalty)

96. This is an action against Jacques Klempf and Foodonics for damages based upon breach of the fiduciary duty of loyalty.

97. The Jean Klempf Trust realleges and incorporates by reference the allegations set forth in paragraph 1 through 33, 70 through 75, and 79 through 83 of this complaint.

98. Jacques Klempf acted as a control person of Foodonics by virtue of his position as President and Chairman of the Board of Foodonics.

99. Jacques Klempf influenced, directed and controlled the actions, misrepresentations, and omissions set forth herein.

100. By virtue of his position of authority, responsibility and control, Jacques Klempf had the ability to direct the purchase or redemption of securities by

Foodonics and to prevent the actions, misrepresentations and omissions set forth in this complaint.

101. Moreover, Jacques Klempf profited directly or indirectly from the unwarranted and deceptive methods by which Foodonics purchased securities from the Jean Klempf Trust, including withholding of important information affecting the value of the Company's stock.

102. Jacques Klempf and Foodonics had actual knowledge of the omissions of material fact set forth herein, or acted with disregard for the truth in that they failed to disclose true facts, even though such facts were known to them.

103. Jacques Klempf and Foodonics' misrepresentations and omissions were made for the purpose of enriching themselves at the expense of the Jean Klempf Trust.

104. The Jean Klempf Trust justifiably relied upon the representations and omissions of Jacques Klempf and Foodonics in its decision to sell its shares of Foodonics' stock pursuant to the Settlement and Redemption Agreement.

105. The Jean Klempf Trust would not have sold its shares of Foodonics' stock pursuant to the Settlement and Redemption Agreement but for the misrepresentations and omissions of Jacques Klempf and Foodonics, which proximately caused the Jean Klempf Trust's damages.

106. Because Jacques Klempf and Foodonics owed the Jean Klempf Trust fiduciary duties, a presumption of unfairness attaches to the redemption -- a presumption which cannot be overcome unless the defendants show that (i) the transaction in question was fair and equitable to the Trust; (ii) the defendants made

reasonable use of the confidence placed in them by the Trust; (iii) the defendants acted in the utmost good faith and exercised the most scrupulous honesty toward the Trust; (iv) the defendants placed the Trust's interest before theirs and did not use the advantage of their position to gain any benefit for themselves at the Trust's expense; (v) the defendants did not place themselves in any position in which their self-interest might conflict with their obligations to the Trust as fiduciaries; and (vi) the defendants fully and fairly disclosed all important information to the Trust concerning the redemption.

107.    As a direct and proximate result of the wrongful conduct of Jacques Klempf and Foodonics, the Jean Klempf Trust suffered economic losses and damages in connection with the investment of their funds in an amount exceeding $23,200,000, exclusive of interest, attorneys' fees, and other costs.

WHEREFORE, the Jean Klempf Trust demands judgment against Jacques Klempf and Foodonics, jointly and severally, in an amount exceeding $23,200,000, together with interest, costs and attorneys' fees.

## Demand for Jury Trial

Plaintiff demands a trial by jury as to all facts and issues so triable.

SMITH HULSEY & BUSEY

By:    */s/ James H. Post*
       James H. Post

Florida Bar Number 175460
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com
khettinger@smithhulsey.com

Attorneys for Dennis L. Blackburn, as
    Special Trustee of the Klempf Trust

964547.3

28

# TAB 2

# Klempf Trust v. Jacques Klempf/Foodonics

## Schedule of Requests for Production/Subpoenas Duces Tecum

| 1. | Jacques Klempf | Jacksonville |
|---|---|---|
| 2. | Foodonics International, Inc. | Jacksonville |
| 3.. | Cal-Maine Foods, Inc. - (Fla. Registered Agent) | Plantation, FL (RA) |
| 4. | Adolphus B. Baker | Jackson, Mississippi |
| 5. | Paul Stevenson | Jacksonville |
| 6. | John Reece | Jacksonville |
| 7. | Andy Bowers | Jacksonville |
| 8. | Dick Still | Jacksonville |
| 9 | GrayRobinson, P.A. | Orlando |
| 10. | Stevens, Powell & Company, P.A. | Jacksonville |
| 11. | John P. Stevens | Jacksonville |
| 12. | Sheldrick, McGehee & Kohler, LLC | Jacksonville |
| 13. | Jess W. Wright | Jacksonville |
| 14. | GlassRatner Advisory & Capital Group, LLC – (Fla. Registered Agent) | Palm Beach Gardens (RA) |
| 15. | Ian Ratner | Atlanta, GA |
| 16. | First Florida Capital Corporation | Jacksonville |
| 17. | Robert Monsky | Ponte Vedra Beach |
| 18. | BAM Investment Group, LLC | Jacksonville |
| 19. | BAM Commercial Holdings, LLC | Jacksonville |
| 20. | BAM Residential Holdings, LLC | Jacksonville |

963180

**TAB 3**

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.

DENNIS L. BLACKBURN, as Special )
Trustee of the Laura Jean Klempf Trust,
)
Plaintiff,
)
v.
)
K. JACQUES KLEMPF and
FOODONICS INTERNATIONAL, INC., )

Defendants. )

_____ )

## PLAINTIFF'S REQUEST FOR PRODUCTION
## TO DEFENDANT K. JACQUES KLEMPF

Plaintiff, Dennis L. Blackburn, as Special Trustee of the Laura Jean Klempf Trust

dated April 1, 1992 (the "Laura Jean Klempf Trust" or the "Trust"), pursuant to Rule

1.350, Florida Rules of Civil Procedure, requests that defendant, K. Jacques Klempf

("Jacques") produce for inspection and copying the documents and electronically stored

information described below at the law offices of Smith Hulsey & Busey, 225 Water

Street, Suite 1800, Jacksonville, Florida 32202, within 30 days of the date of service of

this request.

### Definitions

As used herein:

1.      "Cal-Maine" refers to Cal-Maine Foods, Inc., its officers, directors,
affiliates, subsidiaries, employees, agents, attorneys, and representatives.

2.     The "Cal-Maine Sale" refers to the sale of the Assets of Foodonics to Cal-Maine on or about October 16, 2016.

3.     "Document(s)" shall mean anything other than ESI that may be considered to be a document or tangible thing within the meaning of Florida Rule of Civil Procedure 1.350, including all written, typed, printed, recorded, or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in any form, now or formerly in the possession, custody, or control of you, its officers, agents, employees, and attorneys, or any of them, including, but not limited to letters, correspondence, telegrams, memoranda, agreements, intra- and inter-office communications, purchase orders, requisitions, plans, studies, summaries, analyses, result of investigations, reviews, bulletins, proposals, estimates, appraisals, recommendations, critiques, trip records, engineering calculations, bills of materials, drawings, sketches, blueprints, charts, notices, diaries, books, desk calendars, appointment books, messages, instructions, work assignments, notes, notebooks, drafts, data sheets, specifications, statistical records, tapes, tape recordings, partial or complete reports of telephone conversations, photographs, slides, public statements, newspaper or other media releases, public and governmental filings, opinions, and any other writings, drawings, or recordings. If any document was, but is no longer in plaintiff's possession or subject to its control, identify the document.

4.     "Dolph Baker" refers to Adolphus B. Baker, Chairman, Chief Executive Officer and President of Cal-Maine Foods, Inc., his employees, agents, entities, affiliates, attorneys, and representatives.

5.     "ESI" means electronically stored information in all forms in which it is stored and communicated, and has the same meaning as in Rule 1.280(b)(3), Florida Rules of Civil Procedure. ESI specifically includes emails, word processing files, electronic documents, spreadsheets, presentations, databases, images, movies, audio files, voicemails, text messages, and any other information stored on any computer, laptop, tablet, cell phone, smartphone, external hard drive USB drive, cd drive, dvd drive, backup drive, SharePoint site, file server, or in any remote or "cloud"-based system or location, including Dropbox. ESI specifically includes all of the following electronic file types: *.msg, *.pst, *.eml, *.jpg, *.tif, *.gif, *.mov, *.mpg, *.mpeg, *.wmv, *.avi, *.wav, *.mp3, *.doc, *.docx, *.wpd, *.xls, *.xlsx, *.ppt, *.pptx, *.mdb and *.pdf. ESI also includes social media data, including information stored by you or communicated by you through Facebook, Twitter, LinkedIn, Skype and blogs. ESI also includes business or personal email accounts such as Yahoo Mail, Gmail, Hotmail, Outlook.com, AOL mail and other web-based email services.

6.     "Financial Statement" shall refer to any record of the financial activities of a business, person, or other entity, including, but not limited to, income statements, balance sheets, statements of financial positions, profit and loss reports, statements of revenue and expense, cash flow statements, audited financial statements, and compilations of financial information.

7.    "Foodonics" refers to Defendant Foodonics International, Inc. doing business as Dixie Egg Co., its officers, directors, affiliates, subsidiaries, employees, agents, attorneys, and representatives.

8.    "Foodonics' Assets" or "Assets" shall refer to any or all of the assets of Foodonics in existence between January 1, 2009 and December 31, 2016 including, but not limited to, (i) the egg production assets of Foodonics and its related entities and/or (ii) Foodonics' interest in American Egg Products, LLC and the Egg-Land's Best franchise with licensing rights for portions of certain markets in Alabama, Florida, and Georgia as well as Puerto Rico, Bahamas and Cuba.

9.    "Foodonics' Stock" or "Stock" refers to all Class A Voting Shares and Class B Non-Voting Shares of Foodonics in existence between January 1, 2009 and December 31, 2016.

10.    "Laura Jean Klempf" refers to Laura Jean Klempf, her employees, agents, entities, affiliates, attorneys and representatives.

11.    "Marc Klempf" refers to Marc E. Klempf, his employees, agents, entities, affiliates, attorneys, and representatives.

12.    The "Redemption Sale" refers to the redemption transaction on the Settlement and Redemption Agreement which was closed on December 31, 2015.

13.    "Relate to" and "relating to" mean to make a statement about, refer to, discuss, describe, reflect, contain, comprise, identify, or in any way to pertain to, in whole or in part, or otherwise to be used, considered, or reviewed in any way in connection with, the specified subject. Thus, documents that "relate to" a subject also include those which were specifically rejected and those which were not relied or acted upon.

14.    The "Settlement and Redemption Agreement" refers to the Settlement and Redemption Agreement entered into as of December 21, 2005 by and among Foodonics; Jacques Klempf; Laura Jean Klempf, individually; Laura Jean Klempf, in her capacity as Trustee of, and on behalf of, the Laura Jean Klempf Revocable Trust dated April 1, 1992, as Amended (the "Seller"); Jacques Klempf and Laura Jean Klempf as Trustees of the Family Trust under the Edward Klempf Revocable Trust Agreement dated April 1, 1992; Dina Klempf Srochi; and Marc Klempf.

15.    "Trust" or "Plaintiff" refers to Dennis L. Blackburn, as Special Trustee of the Laura Jean Klempf Trust dated April 1, 1992.

16.    "You" or "Your" refers to Defendant K. Jacques Klempf, his employees, agents, entities, affiliates, attorneys, and representatives.

17.     Unless otherwise specified, the requests contained in this request for production of documents are limited to documents authored, created, received, revised or sent from January 1, 2009 until the date that this request for production of documents was served.

## Instructions

1.      These discovery requests are continuing in nature so as to require You to file supplementary responses if You obtain new or different information up to and including the time of trial of this action.

2.      Pursuant to Rule 1.280(b)(6) of the Florida Rules of Civil Procedure, in the event that any document called for by a request is withheld by You on the basis of claim of privilege, please identify that document by stating: (a) any addressor or addressee, (b) matter, number of pages, and attachments or appendices, (c) all persons to whom the document was distributed, shown or explained, (d) its present custodian, and (e) the nature of the privilege asserted.

3.      If any responsive document is no longer in existence, cannot be located, or is not in Your possession, custody, or control, identify it, describe its subject matter, and describe its disposition, including, without limitation, identifying the person having knowledge of the disposition.

4.      In each of Your responses to these discovery requests, You are requested to provide not only such information as is in Your possession, but all information as is reasonably available.  In the event that You are able to provide only part of the information called for by any document request, please provide all of the information You are able to provide and state the reason for Your inability to provide the remainder.

5.      Produce ESI in native or near-native format, and do not convert ESI to an imaged format (e.g., *.TIF or *.PDF).  Native format requires production in the same format in which the ESI was customarily created, used and stored by you.  Near-native format requires production of native format ESI so that the content and metadata are electronically accessible.  If the native or near-native format is not compatible with a Microsoft Office Suite software program or application, you should provide a description of a software program or application that may be used to access and view the ESI.

6.      Documents should be produced in searchable *.PDF format with logical unitization and family relationships preserved.

7.      No potentially discoverable information contained on your computer systems should be deleted or modified and procedures that may affect such data should not be performed unless all potentially discoverable data has been copied and preserved. The data to be preserved includes not just active data, but archival, backup and residual data.

8.      All drafts or versions of documents and ESI should be produced in addition to the final document or ESI.  All documents and ESI containing written notations, comments, edits or marginalia, or which are in any way different from the original should be produced in addition to the original.

9.     In response to this request, You are required to furnish all information and documents in Your possession, custody or control, or in the possession, custody or control of Your past or present agents, attorneys, accountants, advisors, employees, or any other persons acting on Your behalf.

## Documents and ESI Requested

1.     All Documents and ESI exchanged, sent or delivered between You and/or Foodonics, on the one hand, and Dolph Baker and/or Cal-Maine, on the other hand, including, but not limited to:

> a.     All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker relating to the Cal-Maine Sale.
>
> b.     All documents or ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker referring or relating to the Settlement and Redemption Agreement.
>
> c.     All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker referring or relating to Laura Jean Klempf or the Trust.
>
> d.     All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker relating to the value of Foodonics' Assets or Foodonics' Stock.
>
> e.     All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker relating to the sale of Foodonics' Assets or Foodonics' Stock.
>
> f.     All Documents and ESI constituting any Foodonics' financial information provided by or on behalf of You and/or Foodonics to Cal-Maine and/or any of its representatives, agents, officers or directors.

2.     Any and all closing documents and other agreements relating to the Cal-Maine Sale.

3.     All Documents and ESI in the possession of You or Foodonics relating to or containing any representations or estimates made by You or Foodonics to any person

or entity regarding the value of Foodonics' Stock or Foodonics' Assets from January 1, 2009 through the date of production.

4.    All Documents and ESI in the possession of You or Foodonics to any person or entity relating to the value of Foodonics' Stock from January 1, 2009 through the date of production.

5.    All Documents and ESI relating to any proposals, offers or discussions You or Foodonics had with any person or entity regarding any possible purchase or sale of Foodonics' Assets or Foodonics' Stock.

6.    All Documents and ESI that You or Foodonics sent to or received from Marc Klempf relating to Cal-Maine or Dolph Baker.

7.    All Documents and ESI that You or Foodonics sent to or received from Marc Klempf relating to the value of Foodonics' Assets or Foodonics' Stock.

8.    All Documents and ESI that You or Foodonics sent to or received from Marc Klempf relating to the sale of Foodonics' Assets or Foodonics' Stock.

9.    All Documents or ESI You or Foodonics sent to or received from Marc Klempf referring or relating to the Settlement and Redemption Agreement.

10.    All Documents or ESI You or Foodonics sent to or received from Marc Klempf referring or relating to Laura Jean Klempf from September 1, 2008 to date.

11.    All Documents and ESI You or Foodonics sent to or received from Marc Klempf referring or relating to the Cal-Maine Sale.

12.    All Documents and ESI that You or Foodonics sent to or received from Laura Jean Klempf or the Trust relating to Cal-Maine or Dolph Baker.

13.     All Documents and ESI that You or Foodonics sent to or received from Laura Jean Klempf or the Trust relating to the value of Foodonics' Assets or Foodonics' Stock.

14.     All Documents and ESI that You or Foodonics sent to or received from Laura Jean Klempf or the Trust relating to the sale of Foodonics' Assets or Foodonics' Stock.

15.     All Documents or ESI that You or Foodonics sent to or received from Laura Jean Klempf or the Trust referring or relating to the Settlement and Redemption Agreement.

16.     All Documents or ESI You or Foodonics sent to or received from Laura Jean Klempf or the Trust referring or relating to the Cal-Maine Sale.

17.     All Documents or ESI You or Foodonics sent to Laura Jean Klempf from September 1, 2008 to date.

18.     All Documents and ESI that You or Foodonics sent to or received from Ian Ratner relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

19.     All Documents and ESI that You or Foodonics sent to or received from GlassRatner Advisory & Capital Group, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

20.     All Documents and ESI that You or Foodonics sent to or received from Jess W. Wright relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

21. All Documents and ESI that You or Foodonics sent to or received from Sheldrick, McGehee & Kohler, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

22. All Documents and ESI that You or Foodonics sent to or received from John P. Stevens relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

23. All Documents and ESI that You or Foodonics sent to or received from Stevens, Powell & Company, P.A. relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

24. All Documents and ESI that You or Foodonics sent to or received from Robert Monsky relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

25. All Documents and ESI that You or Foodonics sent to or received from First Florida Capital Corporation relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

26. All Documents and ESI that You or Foodonics sent to or received from GrayRobinson, P.A. relating or referring to (i) the Settlement and Redemption Agreement, (ii) Laura Jean Klempf or the Trust, (iii) Cal-Maine or Dolph Baker (iv) the Cal-Maine Sale, (v) the value of Foodonics' Assets or Foodonics' Stock, or (vi) any potential sale of Foodonics' Assets or Foodonics' Stock.

27.     All Documents and ESI constituting, referring or relating to any Financial Statement prepared by or for You and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like, during the period January 1, 2012 through January 1, 2017.

28.     All Documents and ESI constituting, referring or relating to any personal Financial Statement prepared by or for Foodonics and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like, during the period January 1, 2012 through January 1, 2017.

29.     All Documents and ESI constituting any Financial Statement prepared by or for You and/or Foodonics where such Financial Statement identifies, refers or relates to the value of Foodonics' Stock of Foodonics' Assets.

30.     All Documents and ESI referring or relating to the transfer of any Foodonics' Assets to (i) BAM Residential Holdings, LLC; (ii) BAM Commercial Holdings, LLC; and/or (iii) BAM Investment Group, LLC.

31.     All general ledgers for Foodonics for the years 2012 through the date of production.

32.     All corporate minutes for Foodonics for the years 2012 through the date of production.

SMITH HULSEY & BUSEY

By: _/s/ James H. Post_
    James H. Post

Florida Bar Number 175460
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com

Attorneys for Dennis L. Blackburn, as
    Special Trustee of the Klempf Trust

958328

11

# TAB 4

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.

DENNIS L. BLACKBURN, as Special )
Trustee of the Laura Jean Klempf Trust,
)
      Plaintiff,
)
v.
)
K. JACQUES KLEMPF and
FOODONICS INTERNATIONAL, INC.,  )

      Defendants.  )

_____ )

## PLAINTIFF'S REQUEST FOR PRODUCTION
## TO DEFENDANT FOODONICS INTERNATIONAL, INC.

Plaintiff, Dennis L. Blackburn, as Special Trustee of the Laura Jean Klempf Trust

dated April 1, 1992 (the "Laura Jean Klempf Trust" or the "Trust"), pursuant to Rule

1.350, Florida Rules of Civil Procedure, requests that defendant, Foodonics International,

Inc. ("Foodonics") produce for inspection and copying the documents and electronically

stored information described below at the law offices of Smith Hulsey & Busey, 225

Water Street, Suite 1800, Jacksonville, Florida 32202, within 30 days of the date of

service of this request.

## Definitions

As used herein:

1. "Cal-Maine" refers to Cal-Maine Foods, Inc., its officers, directors, affiliates, subsidiaries, employees, agents, attorneys, and representatives.

2. The "Cal-Maine Sale" refers to the sale of the Assets of Foodonics to Cal-Maine on or about October 16, 2016.

3. "Document(s)" shall mean anything other than ESI that may be considered to be a document or tangible thing within the meaning of Florida Rule of Civil Procedure 1.350, including all written, typed, printed, recorded, or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in any form, now or formerly in the possession, custody, or control of you, its officers, agents, employees, and attorneys, or any of them, including, but not limited to letters, correspondence, telegrams, memoranda, agreements, intra- and inter-office communications, purchase orders, requisitions, plans, studies, summaries, analyses, result of investigations, reviews, bulletins, proposals, estimates, appraisals, recommendations, critiques, trip records, engineering calculations, bills of materials, drawings, sketches, blueprints, charts, notices, diaries, books, desk calendars, appointment books, messages, instructions, work assignments, notes, notebooks, drafts, data sheets, specifications, statistical records, tapes, tape recordings, partial or complete reports of telephone conversations, photographs, slides, public statements, newspaper or other media releases, public and governmental filings, opinions, and any other writings, drawings, or recordings. If any document was, but is no longer in plaintiff's possession or subject to its control, identify the document.

4. "Dolph Baker" refers to Adolphus B. Baker, Chairman, Chief Executive Officer and President of Cal-Maine Foods, Inc., his employees, agents, entities, affiliates, attorneys, and representatives.

5. "ESI" means electronically stored information in all forms in which it is stored and communicated, and has the same meaning as in Rule 1.280(b)(3), Florida Rules of Civil Procedure. ESI specifically includes emails, word processing files, electronic documents, spreadsheets, presentations, databases, images, movies, audio files, voicemails, text messages, and any other information stored on any computer, laptop, tablet, cell phone, smartphone, external hard drive USB drive, cd drive, dvd drive, backup drive, SharePoint site, file server, or in any remote or "cloud"-based system or location, including Dropbox. ESI specifically includes all of the following electronic file types: *.msg, *.pst, *.eml, *.jpg, *.tif, *.gif, *.mov, *.mpg, *.mpeg, *.wmv, *.avi, *.wav, *.mp3, *.doc, *.docx, *.wpd, *.xls, *.xlsx, *.ppt, *.pptx, *.mdb and *.pdf. ESI also includes social media data, including information stored by you or communicated by you through Facebook, Twitter, LinkedIn, Skype and blogs. ESI also includes business or

personal email accounts such as Yahoo Mail, Gmail, Hotmail, Outlook.com, AOL mail and other web-based email services.

6. "Financial Statement" shall refer to any record of the financial activities of a business, person, or other entity, including, but not limited to, income statements, balance sheets, statements of financial positions, profit and loss reports, statements of revenue and expense, cash flow statements, audited financial statements, and compilations of financial information.

7. "Foodonics' Assets" or "Assets" shall refer to any or all of the assets of Foodonics in existence between January 1, 2009 and December 31, 2016 including, but not limited to, (i) the egg production assets of Foodonics and its related entities and/or (ii) Foodonics' interest in American Egg Products, LLC and the Egg-Land's Best franchise with licensing rights for portions of certain markets in Alabama, Florida, and Georgia as well as Puerto Rico, Bahamas and Cuba.

8. "Foodonics' Stock" or "Stock" refers to all Class A Voting Shares and Class B Non-Voting Shares of Foodonics in existence between January 1, 2009 and December 31, 2016.

9. "Jacques Klempf" refers to Defendant K. Jacques Klempf, his employees, agents, entities, affiliates, attorneys, and representatives.

10. "Laura Jean Klempf" refers to Laura Jean Klempf, her employees, agents, entities, affiliates, attorneys and representatives.

11. "Marc Klempf" refers to Marc E. Klempf, his employees, agents, entities, affiliates, attorneys, and representatives.

12. The "Redemption Sale" refers to the redemption transaction on the Settlement and Redemption Agreement which was closed on December 31, 2015.

13. "Relate to" and "relating to" mean to make a statement about, refer to, discuss, describe, reflect, contain, comprise, identify, or in any way to pertain to, in whole or in part, or otherwise to be used, considered, or reviewed in any way in connection with, the specified subject. Thus, documents that "relate to" a subject also include those which were specifically rejected and those which were not relied or acted upon.

14. The "Settlement and Redemption Agreement" refers to the Settlement and Redemption Agreement entered into as of December 21, 2005 by and among Foodonics; Jacques Klempf; Laura Jean Klempf, individually; Laura Jean Klempf, in her capacity as Trustee of, and on behalf of, the Laura Jean Klempf Revocable Trust dated April 1, 1992, as Amended (the "Seller"); Jacques Klempf and Laura Jean Klempf as Trustees of the

Family Trust under the Edward Klempf Revocable Trust Agreement dated April 1, 1992; Dina Klempf Srochi; and Marc Klempf.

15.     "Trust" or "Plaintiff" refers to Dennis L. Blackburn, as Special Trustee of the Laura Jean Klempf Trust dated April 1, 1992.

16.     "You," "Your" or "Foodonics" refers to Defendant Foodonics International, Inc. doing business as Dixie Egg Co., its officers, directors, affiliates, subsidiaries, employees, agents, attorneys, and representatives.

17.     Unless otherwise specified, the requests contained in this request for production of documents are limited to documents authored, created, received, revised or sent from January 1, 2009 until the date that this request for production of documents was served.

## Instructions

1.      These discovery requests are continuing in nature so as to require You to file supplementary responses if You obtain new or different information up to and including the time of trial of this action.

2.      Pursuant to Rule 1.280(b)(6) of the Florida Rules of Civil Procedure, in the event that any document called for by a request is withheld by You on the basis of claim of privilege, please identify that document by stating: (a) any addressor or addressee, (b) matter, number of pages, and attachments or appendices, (c) all persons to whom the document was distributed, shown or explained, (d) its present custodian, and (e) the nature of the privilege asserted.

3.      If any responsive document is no longer in existence, cannot be located, or is not in Your possession, custody, or control, identify it, describe its subject matter, and describe its disposition, including, without limitation, identifying the person having knowledge of the disposition.

4.      In each of Your responses to these discovery requests, You are requested to provide not only such information as is in Your possession, but all information as is reasonably available.  In the event that You are able to provide only part of the information called for by any document request, please provide all of the information You are able to provide and state the reason for Your inability to provide the remainder.

5.      Produce ESI in native or near-native format, and do not convert ESI to an imaged format (e.g., *.TIF or *.PDF).  Native format requires production in the same format in which the ESI was customarily created, used and stored by you.  Near-native format requires production of native format ESI so that the content and metadata are electronically accessible.  If the native or near-native format is not compatible with a Microsoft Office Suite software program or application, you should provide a description of a software program or application that may be used to access and view the ESI.

6.      Documents should be produced in searchable *.PDF format with logical unitization and family relationships preserved.

7.      No potentially discoverable information contained on your computer systems should be deleted or modified and procedures that may affect such data should not be performed unless all potentially discoverable data has been copied and preserved. The data to be preserved includes not just active data, but archival, backup and residual data.

8.      All drafts or versions of documents and ESI should be produced in addition to the final document or ESI.  All documents and ESI containing written notations, comments, edits or marginalia, or which are in any way different from the original should be produced in addition to the original.

9.     In response to this request, You are required to furnish all information and documents in Your possession, custody or control, or in the possession, custody or control of Your past or present agents, attorneys, accountants, advisors, employees, or any other persons acting on Your behalf.

## Documents and ESI Requested

1.     All Documents and ESI exchanged, sent or delivered between You and/or Jacques Klempf, on the one hand, and Dolph Baker and/or Cal-Maine, on the other hand, including, but not limited to:

    a.     All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker relating to the Cal-Maine Sale.

    b.     All documents or ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker referring or relating to the Settlement and Redemption Agreement.

    c.     All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker referring or relating to Laura Jean Klempf or the Trust.

    d.     All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker relating to the value of Foodonics' Assets or Foodonics' Stock.

    e.     All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker relating to the sale of Foodonics' Assets or Foodonics' Stock.

    f.     All Documents and ESI constituting any Foodonics' financial information provided by or on behalf of You and/or Jacques Klempf to Cal-Maine and/or any of its representatives, agents, officers or directors.

2.     Any and all closing documents and other agreements relating to the Cal-Maine Sale.

3.     All Documents and ESI in the possession of You or Jacques Klempf relating to or containing any representations or estimates made by You or Jacques Klempf to any person or entity regarding the value of Foodonics' Stock or Foodonics' Assets from January 1, 2009 through the date of production.

4.     All Documents and ESI in the possession of You or Jacques Klempf to any person or entity relating to the value of Foodonics' Stock from January 1, 2009 through the date of production.

5.     All Documents and ESI relating to any proposals, offers or discussions You or Jacques Klempf had with any person or entity regarding any possible purchase or sale of Foodonics' Assets or Foodonics' Stock.

6.     All Documents and ESI that You or Jacques Klempf sent to or received from Marc Klempf relating to Cal-Maine or Dolph Baker.

7.     All Documents and ESI that You or Jacques Klempf sent to or received from Marc Klempf relating to the value of Foodonics' Assets or Foodonics' Stock.

8.     All Documents and ESI that You or Jacques Klempf sent to or received from Marc Klempf relating to the sale of Foodonics' Assets or Foodonics' Stock.

9.     All Documents or ESI You or Jacques Klempf sent to or received from Marc Klempf referring or relating to the Settlement and Redemption Agreement.

10.     All Documents or ESI You or Jacques Klempf sent to or received from Marc Klempf referring or relating to Laura Jean Klempf from September 1, 2008 to date.

11.     All Documents and ESI You or Jacques Klempf sent to or received from Marc Klempf referring or relating to the Cal-Maine Sale.

12.     All Documents and ESI that You or Jacques Klempf sent to or received from Laura Jean Klempf or the Trust relating to Cal-Maine or Dolph Baker.

13.     All Documents and ESI that You or Jacques Klempf sent to or received from Laura Jean Klempf or the Trust relating to the value of Foodonics' Assets or Foodonics' Stock.

14.     All Documents and ESI that You or Jacques Klempf sent to or received from Laura Jean Klempf or the Trust relating to the sale of Foodonics' Assets or Foodonics' Stock.

15.     All Documents or ESI that You or Jacques Klempf sent to or received from Laura Jean Klempf or the Trust referring or relating to the Settlement and Redemption Agreement.

16.     All Documents or ESI You or Jacques Klempf sent to or received from Laura Jean Klempf or the Trust referring or relating to the Cal-Maine Sale.

17.     All Documents or ESI You or Jacques Klempf sent to Laura Jean Klempf from September 1, 2008 to date.

18.     All Documents and ESI that You or Jacques Klempf sent to or received from Ian Ratner relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

19.     All Documents and ESI that You or Jacques Klempf sent to or received from GlassRatner Advisory & Capital Group, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

20.     All Documents and ESI that You or Jacques Klempf sent to or received from Jess W. Wright relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

21.     All Documents and ESI that You or Jacques Klempf sent to or received from Sheldrick, McGehee & Kohler, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

22.     All Documents and ESI that You or Jacques Klempf sent to or received from John P. Stevens relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

23.     All Documents and ESI that You or Jacques Klempf sent to or received from Stevens, Powell & Company, P.A. relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

24.     All Documents and ESI that You or Jacques Klempf sent to or received from Robert Monsky relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

25.     All Documents and ESI that You or Jacques Klempf sent to or received from First Florida Capital Corporation relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

26.     All Documents and ESI that You or Jacques Klempf sent to or received from GrayRobinson, P.A. relating or referring to (i) the Settlement and Redemption

Agreement, (ii) Laura Jean Klempf or the Trust, (iii) Cal-Maine or Dolph Baker (iv) the Cal-Maine Sale, (v) the value of Foodonics' Assets or Foodonics' Stock, or (vi) any potential sale of Foodonics' Assets or Foodonics' Stock.

27.     All Documents and ESI constituting, referring or relating to any Financial Statement prepared by or for You and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like, during the period January 1, 2012 through January 1, 2017.

28.     All Documents and ESI constituting, referring or relating to any personal Financial Statement prepared by or for Jacques Klempf and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like, during the period January 1, 2012 through January 1, 2017.

29.     All Documents and ESI constituting any Financial Statement prepared by or for You and/or Jacques Klempf where such Financial Statement identifies, refers or relates to the value of Foodonics' Stock of Foodonics' Assets.

30.     All Documents and ESI referring or relating to the transfer of any Foodonics' Assets to (i) BAM Residential Holdings, LLC; (ii) BAM Commercial Holdings, LLC; and/or (iii) BAM Investment Group, LLC.

31.     All general ledgers for Foodonics for the years 2012 through the date of production.

32.     All corporate minutes for Foodonics for the years 2012 through the date of production.

SMITH HULSEY & BUSEY

By: _/s/ James H. Post_
       James H. Post

Florida Bar Number 175460
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com

Attorneys for Dennis L. Blackburn, as
   Special Trustee of the Klempf Trust

963200.2

11

# TAB 5

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA

CASE NO.

DENNIS L. BLACKBURN, as Special  )
Trustee of the Laura Jean Klempf Trust,

                              )

        Plaintiff,          )

v.                              )

K. JACQUES KLEMPF and      )
FOODONICS INTERNATIONAL, INC.,  )

        Defendants.       )

_____ )

## NOTICE OF TAKING VIDEOTAPED DEPOSITION
## DUCES TECUM OF CAL-MAINE FOODS, INC.

Please take notice that at 9:00 a.m. on _____, 2017, at the offices of _____

_____, plaintiff, Dennis L.

Blackburn, as Special Trustee of the Laura Jean Klempf Trust, will take the videotaped

deposition of Cal-Maine Foods, Inc. ("Cal-Maine"), pursuant to the attached Subpoena

Duces Tecum, beginning before an officer authorized by law to administer oaths and take

depositions. The deposition will be videotaped by _____

_____. A subpoena duces tecum will be served on the

deponent for the production of those materials set forth in Exhibit A to the attached

subpoena upon the date and time designated in the subpoena. This deposition is being

taken for discovery purposes, for use at trial or hearing, or both and will continue from

day to day until completed.

Pursuant to Rule 1.310(b)(6), Florida Rules of Civil Procedure, Cal-Maine is required to designate one or more officers, directors, managing agents, or other persons who consent to do so, to testify on its behalf concerning the areas of inquiry listed in Exhibit B to the attached subpoena.

SMITH HULSEY & BUSEY

By: _/s/ James H. Post_____
    James H. Post

Florida Bar Number 175460
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com

Attorneys for Dennis L. Blackburn, as
Special Trustee of the Klempf Trust

IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA

CASE NO.

DENNIS L. BLACKBURN, as Special Trustee of the Laura Jean Klempf Trust,

        Plaintiff,

v.

K. JACQUES KLEMPF and FOODONICS INTERNATIONAL, INC.,

        Defendants.

)
)
)
)
)
)
)
)
)

## SUBPOENA FOR DEPOSITION DUCES TECUM

**THE STATE OF FLORIDA**

TO:    Cal-Maine Foods, Inc.
c/o C T Corporation System, Registered Agent
1200 South Pine Island Road
Plantation, Florida 33324

**YOU ARE COMMANDED** to appear at the offices of _____

_____, at 9:00 a.m. on _____, 2017, for the taking of

your videotaped deposition. If you fail to appear, you may be in contempt of court.

You are further commanded to produce and permit inspection and copying of the

documents set forth on Exhibit A at the following place, date and time:

Place:

Date and Time:

If you fail to produce the documents requested by this subpoena, you may be in contempt of court.

Pursuant to Rule 1.310(b)(6), Florida Rules of Civil Procedure, for this deposition, you are required to designate one or more officers, directors, managing agents, or other representatives who consent to do so, to testify with particularity on your behalf concerning the matters described in the attached Exhibit B. If you fail to appear or to produce the documents requested, you may be in contempt of court.

You are subpoenaed by the attorneys whose names appear on this subpoena and unless excused from this subpoena by these attorneys or the Court, you shall respond to this subpoena as directed.

Dated this _____ day of _____, 2017.


_____
James H. Post
For the Court

James H. Post, Esq.
Florida Bar Number 175460
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)


Individuals with disabilities needing a reasonable accommodation to participate in this proceeding should contact Smith Hulsey & Busey not later than seven (7) days prior to the proceeding at the offices of Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202. If notice to the individual of this proceeding is less than seven (7) days, then the individual should contact Smith Hulsey & Busey as soon as possible after receiving this notice. Telephone (904) 359-7700; or if hearing impaired, 1-800-955-8771 (TDD); or 1-800-955-8770 (v), via Florida Relay Services.

## Exhibit A

### Definitions

As used herein:

1.    The "Cal-Maine Sale" refers to the sale of the Assets of Foodonics to Cal-Maine on or about October 16, 2016.

2.    "Document(s)" shall mean anything other than ESI that may be considered to be a document or tangible thing within the meaning of Florida Rule of Civil Procedure 1.350, including all written, typed, printed, recorded, or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in any form, now or formerly in the possession, custody, or control of you, its officers, agents, employees, and attorneys, or any of them, including, but not limited to letters, correspondence, telegrams, memoranda, agreements, intra- and inter-office communications, purchase orders, requisitions, plans, studies, summaries, analyses, result of investigations, reviews, bulletins, proposals, estimates, appraisals, recommendations, critiques, trip records, engineering calculations, bills of materials, drawings, sketches, blueprints, charts, notices, diaries, books, desk calendars, appointment books, messages, instructions, work assignments, notes, notebooks, drafts, data sheets, specifications, statistical records, tapes, tape recordings, partial or complete reports of telephone conversations, photographs, slides, public statements, newspaper or other media releases, public and governmental filings, opinions, and any other writings, drawings, or recordings. If any document was, but is no longer in plaintiff's possession or subject to its control, identify the document.

3.    "Dolph Baker" refers to Adolphus B. Baker, Chairman, Chief Executive Officer and President of Cal-Maine Foods, Inc., his employees, agents, entities, affiliates, attorneys, and representatives.

4.    "ESI" means electronically stored information in all forms in which it is stored and communicated, and has the same meaning as in Rule 1.280(b)(3), Florida Rules of Civil Procedure. ESI specifically includes emails, word processing files, electronic documents, spreadsheets, presentations, databases, images, movies, audio files, voicemails, text messages, and any other information stored on any computer, laptop, tablet, cell phone, smartphone, external hard drive USB drive, cd drive, dvd drive, backup drive, SharePoint site, file server, or in any remote or "cloud"-based system or location, including Dropbox. ESI specifically includes all of the following electronic file types: *.msg, *.pst, *.eml, *.jpg, *.tif, *.gif, *.mov, *.mpg, *.mpeg, *.wmv, *.avi, *.wav, *.mp3, *.doc, *.docx, *.wpd, *.xls, *.xlsx, *.ppt, *.pptx, *.mdb and *.pdf. ESI also includes social media data, including information stored by you or communicated by you through Facebook, Twitter, LinkedIn, Skype and blogs. ESI also includes business or

personal email accounts such as Yahoo Mail, Gmail, Hotmail, Outlook.com, AOL mail and other web-based email services.

5. "Financial Statement" shall refer to any record of the financial activities of a business, person, or other entity, including, but not limited to, income statements, balance sheets, statements of financial positions, profit and loss reports, statements of revenue and expense, cash flow statements, audited financial statements, and compilations of financial information.

6. "Foodonics" refers to Defendant Foodonics International, Inc. doing business as Dixie Egg Co., its officers, directors, affiliates, subsidiaries, employees, agents, attorneys, and representatives.

7. "Foodonics' Assets" or "Assets" shall refer to any or all of the assets of Foodonics in existence between January 1, 2009 and December 31, 2016 including, but not limited to, (i) the egg production assets of Foodonics and its related entities and/or (ii) Foodonics' interest in American Egg Products, LLC and the Egg-Land's Best franchise with licensing rights for portions of certain markets in Alabama, Florida, and Georgia as well as Puerto Rico, Bahamas and Cuba.

8. "Foodonics' Stock" or "Stock" refers to all Class A Voting Shares and Class B Non-Voting Shares of Foodonics in existence between January 1, 2009 and December 31, 2016.

9. "Jacques Klempf" refers to Defendant K. Jacques Klempf, his employees, agents, entities, affiliates, attorneys, and representatives.

10. "Laura Jean Klempf" refers to Laura Jean Klempf, her employees, agents, entities, affiliates, attorneys and representatives.

11. "Marc Klempf" refers to Marc E. Klempf, his employees, agents, entities, affiliates, attorneys, and representatives.

12. The "Redemption Sale" refers to the redemption transaction on the Settlement and Redemption Agreement which was closed on December 31, 2015.

13. "Relate to" and "relating to" mean to make a statement about, refer to, discuss, describe, reflect, contain, comprise, identify, or in any way to pertain to, in whole or in part, or otherwise to be used, considered, or reviewed in any way in connection with, the specified subject. Thus, documents that "relate to" a subject also include those which were specifically rejected and those which were not relied or acted upon.

14. The "Settlement and Redemption Agreement" refers to the Settlement and Redemption Agreement entered into as of December 21, 2005 by and among Foodonics;

Jacques Klempf; Laura Jean Klempf, individually; Laura Jean Klempf, in her capacity as Trustee of, and on behalf of, the Laura Jean Klempf Revocable Trust dated April 1, 1992, as Amended (the "Seller"); Jacques Klempf and Laura Jean Klempf as Trustees of the Family Trust under the Edward Klempf Revocable Trust Agreement dated April 1, 1992; Dina Klempf Srochi; and Marc Klempf.

15.     "Trust" or "Plaintiff" refers to Dennis L. Blackburn, as Special Trustee of the Laura Jean Klempf Trust dated April 1, 1992.

16.     "You," "Your" or "Cal-Maine" refers to Cal-Maine Foods, Inc., its officers, directors, affiliates, subsidiaries, employees, agents, attorneys, and representatives.

17.     Unless otherwise specified, the requests contained in this request for production of documents are limited to documents authored, created, received, revised or sent from January 1, 2009 until the date that this request for production of documents was served.

## Instructions

1.     Pursuant to Rule 1.280(b)(6) of the Florida Rules of Civil Procedure, in the event that any document called for by a request is withheld by You on the basis of claim of privilege, please identify that document by stating: (a) any addressor or addressee, (b) matter, number of pages, and attachments or appendices, (c) all persons to whom the document was distributed, shown or explained, (d) its present custodian, and (e) the nature of the privilege asserted.

2.     If any responsive document is no longer in existence, cannot be located, or is not in Your possession, custody, or control, identify it, describe its subject matter, and describe its disposition, including, without limitation, identifying the person having knowledge of the disposition.

3.     In each of Your responses to these discovery requests, You are requested to provide not only such information as is in Your possession, but all information as is reasonably available. In the event that You are able to provide only part of the information called for by any document request, please provide all of the information You are able to provide and state the reason for Your inability to provide the remainder.

4.     Produce ESI in native or near-native format, and do not convert ESI to an imaged format (e.g., *.TIF or *.PDF). Native format requires production in the same format in which the ESI was customarily created, used and stored by you. Near-native format requires production of native format ESI so that the content and metadata are electronically accessible. If the native or near-native format is not compatible with a Microsoft Office Suite software program or application, you should provide a description of a software program or application that may be used to access and view the ESI.

5.     Documents should be produced in searchable *.PDF format with logical unitization and family relationships preserved.

6.     No potentially discoverable information contained on your computer systems should be deleted or modified and procedures that may affect such data should not be performed unless all potentially discoverable data has been copied and preserved. The data to be preserved includes not just active data, but archival, backup and residual data.

7.     All drafts or versions of documents and ESI should be produced in addition to the final document or ESI. All documents and ESI containing written notations, comments, edits or marginalia, or which are in any way different from the original should be produced in addition to the original.

8.     In response to this request, You are required to furnish all information and documents in Your possession, custody or control, or in the possession, custody or

control of Your past or present agents, attorneys, accountants, advisors, employees, or any other persons acting on Your behalf.

## Documents and ESI Requested

1.    All Documents and ESI exchanged, sent or delivered between You and/or Dolph Baker, on the one hand, and Jacques Klempf and/or Foodonics, on the other hand, including, but not limited to:

      a.     All Documents and ESI that You or Dolph Baker sent to or received from Jacques Klempf or Foodonics relating to the Cal-Maine Sale.

      b.     All documents or ESI that You or Dolph Baker sent to or received from Jacques Klempf or Foodonics referring or relating to the Settlement and Redemption Agreement.

      c.     All Documents and ESI that You or Dolph Baker sent to or received from Jacques Klempf or Foodonics referring or relating to Laura Jean Klempf or the Trust.

      d.     All Documents and ESI that You or Dolph Baker sent to or received from Jacques Klempf of Foodonics relating to the value of Foodonics' Assets or Foodonics' Stock.

      e.     All Documents and ESI that You or Dolph Baker sent to or received from Jacques Klempf or Foodonics relating to the sale of Foodonics' Assets or Foodonics' Stock.

      f.     All Documents and ESI constituting any Foodonics' financial information provided to You and/or Dolph Baker by Jacques Klempf or Foodonics and/or any of its representatives, agents, officers or directors.

2.    Any and all closing documents and other agreements relating to the Cal-Maine Sale.

3.    All Documents and ESI in the possession of You or Dolph Baker relating to the value of Foodonics' Stock or Foodonics' Assets from January 1, 2009 through the date of production.

4. All Documents and ESI that You or Dolph Baker sent to or received from Marc Klempf relating to the value of Foodonics' Assets or Foodonics' Stock.

5. All Documents and ESI that You or Dolph Baker sent to or received from Marc Klempf relating to the sale of Foodonics' Assets or Foodonics' Stock.

6. All Documents or ESI You or Dolph Baker sent to or received from Marc Klempf referring or relating to the Settlement and Redemption Agreement.

7. All Documents or ESI You or Dolph Baker sent to or received from Marc Klempf referring or relating to Laura Jean Klempf from September 1, 2008 to date.

8. All Documents and ESI You or Dolph Baker sent to or received from Marc Klempf referring or relating to the Cal-Maine Sale.

9. All Documents and ESI that You or Dolph Baker sent to or received from Laura Jean Klempf or the Trust relating to Jacques Klempf or Foodonics.

10. All Documents and ESI that You or Dolph Baker sent to or received from Laura Jean Klempf or the Trust relating to the value of Foodonics' Assets or Foodonics' Stock.

11. All Documents and ESI that You or Dolph Baker sent to or received from Laura Jean Klempf or the Trust relating to the sale of Foodonics' Assets or Foodonics' Stock.

12. All Documents or ESI that You or Dolph Baker sent to or received from Laura Jean Klempf or the Trust referring or relating to the Settlement and Redemption Agreement.

13. All Documents or ESI You or Dolph Baker sent to or received from Laura Jean Klempf or the Trust referring or relating to the Cal-Maine Sale.

14.     All Documents or ESI You or Dolph Baker sent to Laura Jean Klempf from September 1, 2008 to date.

15.     All Documents and ESI that You or Dolph Baker sent to or received from Ian Ratner relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

16.     All Documents and ESI that You or Dolph Baker sent to or received from GlassRatner Advisory & Capital Group, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

17.     All Documents and ESI that You or Dolph Baker sent to or received from Jess W. Wright relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

18.     All Documents and ESI that You or Dolph Baker sent to or received from Sheldrick, McGehee & Kohler, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

19.     All Documents and ESI that You or Dolph Baker sent to or received from John P. Stevens relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

20.     All Documents and ESI that You or Dolph Baker sent to or received from Stevens, Powell & Company, P.A. relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

21.     All Documents and ESI that You or Dolph Baker sent to or received from Robert Monsky relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

22.     All Documents and ESI that You or Dolph Baker sent to or received from First Florida Capital Corporation relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

23.     All Documents and ESI that You or Dolph Baker sent to or received from GrayRobinson, P.A. relating or referring to (i) the Settlement and Redemption Agreement, (ii) Laura Jean Klempf or the Trust, (iii) Jacques Klempf or Foodonics, (iv) the Cal-Maine Sale, (v) the value of Foodonics' Assets or Foodonics' Stock, or (vi) any potential sale of Foodonics' Assets or Foodonics' Stock.

24.     All Documents and ESI constituting any Financial Statement prepared by or for You and/or Dolph Baker where such Financial Statement identifies, refers or relates to the value of Foodonics' Stock of Foodonics' Assets.

25.     All Documents and ESI referring or relating to the transfer of any Foodonics' Assets to (i) BAM Residential Holdings, LLC; (ii) BAM Commercial Holdings, LLC; and/or (iii) BAM Investment Group, LLC.

## Exhibit B

## Areas of Inquiry

Pursuant to Rule 1.310(b)(6), Florida Rules of Civil Procedure, You are required to designate one or more officers, directors, managing agents, or other persons who consent to do so, to testify with particularity on Your behalf concerning the following matters:

1.    All facts, events, circumstances, Documents and ESI exchanged, sent or delivered between You and/or Dolph Baker, on the one hand, and Jacques Klempf and/or Foodonics, on the other hand, including, but not limited to:

        a.    All Documents and ESI that You or Dolph Baker sent to or received from Jacques Klempf or Foodonics relating to the Cal-Maine Sale.

        b.    All documents or ESI that You or Dolph Baker sent to or received from Jacques Klempf or Foodonics referring or relating to the Settlement and Redemption Agreement.

        c.    All Documents and ESI that You or Dolph Baker sent to or received from Jacques Klempf or Foodonics referring or relating to Laura Jean Klempf or the Trust.

        d.    All Documents and ESI that You or Dolph Baker sent to or received from Jacques Klempf of Foodonics relating to the value of Foodonics' Assets or Foodonics' Stock.

        e.    All Documents and ESI that You or Dolph Baker sent to or received from Jacques Klempf or Foodonics relating to the sale of Foodonics' Assets or Foodonics' Stock.

        f.    All Documents and ESI constituting any Foodonics' financial information provided You and/or Dolph Baker by Jacques Klempf or Foodonics and/or any of its representatives, agents, officers or directors.

2.      All facts, events, circumstances relating to any and all closing documents and other agreements relating to the Cal-Maine Sale.

3.      All facts, events, circumstances, Documents and ESI in the possession of You or Dolph Baker relating to the value of Foodonics' Stock or Foodonics' Assets from January 1, 2009 through the date of production.

4.      All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from Marc Klempf relating to the value of Foodonics' Assets or Foodonics' Stock.

5.      All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from Marc Klempf relating to the sale of Foodonics' Assets or Foodonics' Stock.

6.      All facts, events, circumstances, Documents or ESI You or Dolph Baker sent to or received from Marc Klempf referring or relating to the Settlement and Redemption Agreement.

7.      All facts, events, circumstances, Documents or ESI You or Dolph Baker sent to or received from Marc Klempf referring or relating to Laura Jean Klempf from September 1, 2008 to date.

8.      All facts, events, circumstances, Documents and ESI You or Dolph Baker sent to or received from Marc Klempf referring or relating to the Cal-Maine Sale.

9.      All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from Laura Jean Klempf or the Trust relating to Jacques Klempf or Foodonics.

10.     All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from Laura Jean Klempf or the Trust relating to the value of Foodonics' Assets or Foodonics' Stock.

11.     All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from Laura Jean Klempf or the Trust relating to the sale of Foodonics' Assets or Foodonics' Stock.

12.     All facts, events, circumstances, Documents or ESI that You or Dolph Baker sent to or received from Laura Jean Klempf or the Trust referring or relating to the Settlement and Redemption Agreement.

13.     All facts, events, circumstances, Documents or ESI You or Dolph Baker sent to or received from Laura Jean Klempf or the Trust referring or relating to the Cal-Maine Sale.

14.     All facts, events, circumstances, Documents or ESI You or Dolph Baker sent to Laura Jean Klempf from September 1, 2008 to date.

15.     All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from Ian Ratner relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

16.     All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from GlassRatner Advisory & Capital Group, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

17.     All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from Jess W. Wright relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

18.     All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from Sheldrick, McGehee & Kohler, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

19.     All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from John P. Stevens relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

20.     All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from Stevens, Powell & Company, P.A. relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

21.     All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from Robert Monsky relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

22.     All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from First Florida Capital Corporation relating or referring to (i)

the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

23.     All facts, events, circumstances, Documents and ESI that You or Dolph Baker sent to or received from GrayRobinson, P.A. relating or referring to (i) the Settlement and Redemption Agreement, (ii) Laura Jean Klempf or the Trust, (iii) Jacques Klempf or Foodonics, (iv) the Cal-Maine Sale, (v) the value of Foodonics' Assets or Foodonics' Stock, or (vi) any potential sale of Foodonics' Assets or Foodonics' Stock.

24.     All facts, events, circumstances, Documents and ESI constituting any Financial Statement prepared by or for You and/or Dolph Baker where such Financial Statement identifies, refers or relates to the value of Foodonics' Stock of Foodonics' Assets.

25.     All facts, events, circumstances, Documents and ESI referring or relating to the transfer of any Foodonics' Assets to (i) BAM Residential Holdings, LLC; (ii) BAM Commercial Holdings, LLC; and/or (iii) BAM Investment Group, LLC.

963982

# TAB 6

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.

DENNIS L. BLACKBURN, as Special )
Trustee of the Laura Jean Klempf Trust,
)
      Plaintiff,
)
v.
)
K. JACQUES KLEMPF and
FOODONICS INTERNATIONAL, INC., )

      Defendants. )

_____ )

## NOTICE OF TAKING VIDEOTAPED DEPOSITION
## DUCES TECUM OF ADOLPHUS B. BAKER

    Please take notice that at 9:00 a.m. on _____, 2017, at the offices of _____

_____, plaintiff, Dennis L.

Blackburn, as Special Trustee of the Laura Jean Klempf Trust, will take the videotaped

deposition of Adolphus B. Baker, pursuant to the attached Subpoena Duces Tecum,

beginning before an officer authorized by law to administer oaths and take depositions.

The deposition will be videotaped by _____

_____. A subpoena duces tecum will be served on the deponent

for the production of those materials set forth in Exhibit A to the attached subpoena upon

the date and time designated in the subpoena. This deposition is being taken for

discovery purposes, for use at trial or hearing, or both and will continue from day to day

until completed.

SMITH HULSEY & BUSEY


By: _/s/ James H. Post_____
       James H. Post

Florida Bar Number 175460
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com

Attorneys for Dennis L. Blackburn, as
    Special Trustee of the Klempf Trust

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NO.

DENNIS L. BLACKBURN, as Special )
Trustee of the Laura Jean Klempf Trust,
                                     )
          Plaintiff,
                                     )
v.
                                     )
K. JACQUES KLEMPF and
FOODONICS INTERNATIONAL, INC.,       )

          Defendants.                )

_____    )

## SUBPOENA FOR DEPOSITION DUCES TECUM

**THE STATE OF MISSISSIPPI**

TO:     Adolphus B. Baker
        3320 West Woodrow Wilson Drive
        Jackson, Mississippi 39209

        **YOU ARE COMMANDED** to appear at the offices of _____

_____, at 9:00 a.m. on _____, 2017, for the taking of

your videotaped deposition. If you fail to appear, you may be in contempt of court.

        You are further commanded to produce and permit inspection and copying of the

documents set forth on Exhibit A at the following place, date and time:

        Place:

Date and Time:

If you fail to produce the documents requested by this subpoena, you may be in contempt of court.

You are subpoenaed by the attorneys whose names appear on this subpoena and unless excused from this subpoena by these attorneys or the Court, you shall respond to this subpoena as directed.

Dated this _____ day of _____, 2017.


_____
Clerk of Court

<u>Exhibit A</u>

<u>Definitions</u>

As used herein:

1.     "Cal-Maine" refers to Cal-Maine Foods, Inc., its officers, directors, affiliates, subsidiaries, employees, agents, attorneys, and representatives.

2.     The "Cal-Maine Sale" refers to the sale of the Assets of Foodonics to Cal-Maine on or about October 16, 2016.

3.     "Document(s)" shall mean anything other than ESI that may be considered to be a document or tangible thing within the meaning of Florida Rule of Civil Procedure 1.350, including all written, typed, printed, recorded, or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made, in any form, now or formerly in the possession, custody, or control of you, its officers, agents, employees, and attorneys, or any of them, including, but not limited to letters, correspondence, telegrams, memoranda, agreements, intra- and inter-office communications, purchase orders, requisitions, plans, studies, summaries, analyses, result of investigations, reviews, bulletins, proposals, estimates, appraisals, recommendations, critiques, trip records, engineering calculations, bills of materials, drawings, sketches, blueprints, charts, notices, diaries, books, desk calendars, appointment books, messages, instructions, work assignments, notes, notebooks, drafts, data sheets, specifications, statistical records, tapes, tape recordings, partial or complete reports of telephone conversations, photographs, slides, public statements, newspaper or other media releases, public and governmental filings, opinions, and any other writings, drawings, or recordings. If any document was, but is no longer in plaintiff's possession or subject to its control, identify the document.

4.     "ESI" means electronically stored information in all forms in which it is stored and communicated, and has the same meaning as in Rule 1.280(b)(3), Florida Rules of Civil Procedure. ESI specifically includes emails, word processing files, electronic documents, spreadsheets, presentations, databases, images, movies, audio files, voicemails, text messages, and any other information stored on any computer, laptop, tablet, cell phone, smartphone, external hard drive USB drive, cd drive, dvd drive, backup drive, SharePoint site, file server, or in any remote or "cloud"-based system or location, including Dropbox. ESI specifically includes all of the following electronic file types: *.msg, *.pst, *.eml, *.jpg, *.tif, *.gif, *.mov, *.mpg, *.mpeg, *.wmv, *.avi, *.wav, *.mp3, *.doc, *.docx, *.wpd, *.xls, *.xlsx, *.ppt, *.pptx, *.mdb and *.pdf. ESI also includes social media data, including information stored by you or communicated by you through Facebook, Twitter, LinkedIn, Skype and blogs. ESI also includes business or personal email accounts such as Yahoo Mail, Gmail, Hotmail, Outlook.com, AOL mail and other web-based email services.

5. "Financial Statement" shall refer to any record of the financial activities of a business, person, or other entity, including, but not limited to, income statements, balance sheets, statements of financial positions, profit and loss reports, statements of revenue and expense, cash flow statements, audited financial statements, and compilations of financial information.

6. "Foodonics" refers to Defendant Foodonics International, Inc. doing business as Dixie Egg Co., its officers, directors, affiliates, subsidiaries, employees, agents, attorneys, and representatives.

7. "Foodonics' Assets" or "Assets" shall refer to any or all of the assets of Foodonics in existence between January 1, 2009 and December 31, 2016 including, but not limited to, (i) the egg production assets of Foodonics and its related entities and/or (ii) Foodonics' interest in American Egg Products, LLC and the Egg-Land's Best franchise with licensing rights for portions of certain markets in Alabama, Florida, and Georgia as well as Puerto Rico, Bahamas and Cuba.

8. "Foodonics' Stock" or "Stock" refers to all Class A Voting Shares and Class B Non-Voting Shares of Foodonics in existence between January 1, 2009 and December 31, 2016.

9. "Jacques Klempf" refers to Defendant K. Jacques Klempf, his employees, agents, entities, affiliates, attorneys, and representatives.

10. "Laura Jean Klempf" refers to Laura Jean Klempf, her employees, agents, entities, affiliates, attorneys and representatives.

11. "Marc Klempf" refers to Marc E. Klempf, his employees, agents, entities, affiliates, attorneys, and representatives.

12. The "Redemption Sale" refers to the redemption transaction on the Settlement and Redemption Agreement which was closed on December 31, 2015.

13. "Relate to" and "relating to" mean to make a statement about, refer to, discuss, describe, reflect, contain, comprise, identify, or in any way to pertain to, in whole or in part, or otherwise to be used, considered, or reviewed in any way in connection with, the specified subject. Thus, documents that "relate to" a subject also include those which were specifically rejected and those which were not relied or acted upon.

14. The "Settlement and Redemption Agreement" refers to the Settlement and Redemption Agreement entered into as of December 21, 2005 by and among Foodonics; Jacques Klempf; Laura Jean Klempf, individually; Laura Jean Klempf, in her capacity as Trustee of, and on behalf of, the Laura Jean Klempf Revocable Trust dated April 1, 1992,

as Amended (the "Seller"); Jacques Klempf and Laura Jean Klempf as Trustees of the Family Trust under the Edward Klempf Revocable Trust Agreement dated April 1, 1992; Dina Klempf Srochi; and Marc Klempf.

15.    "Trust" or "Plaintiff" refers to Dennis L. Blackburn, as Special Trustee of the Laura Jean Klempf Trust dated April 1, 1992.

16.    "You," "Your" or "Dolph Baker" refers to Adolphus B. Baker, Chairman, Chief Executive Officer and President of Cal-Maine Foods, Inc., his employees, agents, entities, affiliates, attorneys, and representatives.

17.    Unless otherwise specified, the requests contained in this request for production of documents are limited to documents authored, created, received, revised or sent from January 1, 2009 until the date that this request for production of documents was served.

## Instructions

1.      Pursuant to Rule 1.280(b)(6) of the Florida Rules of Civil Procedure, in the event that any document called for by a request is withheld by You on the basis of claim of privilege, please identify that document by stating: (a) any addressor or addressee, (b) matter, number of pages, and attachments or appendices, (c) all persons to whom the document was distributed, shown or explained, (d) its present custodian, and (e) the nature of the privilege asserted.

2.      If any responsive document is no longer in existence, cannot be located, or is not in Your possession, custody, or control, identify it, describe its subject matter, and describe its disposition, including, without limitation, identifying the person having knowledge of the disposition.

3.      In each of Your responses to these discovery requests, You are requested to provide not only such information as is in Your possession, but all information as is reasonably available. In the event that You are able to provide only part of the information called for by any document request, please provide all of the information You are able to provide and state the reason for Your inability to provide the remainder.

4.      Produce ESI in native or near-native format, and do not convert ESI to an imaged format (e.g., *.TIF or *.PDF). Native format requires production in the same format in which the ESI was customarily created, used and stored by you. Near-native format requires production of native format ESI so that the content and metadata are electronically accessible. If the native or near-native format is not compatible with a Microsoft Office Suite software program or application, you should provide a description of a software program or application that may be used to access and view the ESI.

5.      Documents should be produced in searchable *.PDF format with logical unitization and family relationships preserved.

6.      No potentially discoverable information contained on your computer systems should be deleted or modified and procedures that may affect such data should not be performed unless all potentially discoverable data has been copied and preserved. The data to be preserved includes not just active data, but archival, backup and residual data.

7.      All drafts or versions of documents and ESI should be produced in addition to the final document or ESI. All documents and ESI containing written notations, comments, edits or marginalia, or which are in any way different from the original should be produced in addition to the original.

8.      In response to this request, You are required to furnish all information and documents in Your possession, custody or control, or in the possession, custody or

control of Your past or present agents, attorneys, accountants, advisors, employees, or any other persons acting on Your behalf.

## Documents and ESI Requested

1.      All Documents and ESI exchanged, sent or delivered between You and/or

Cal-Maine, on the one hand, and Jacques Klempf and/or Foodonics, on the other hand,

including, but not limited to:

      a.      All Documents and ESI that You or Cal-Maine sent to or received from Jacques Klempf or Foodonics relating to the Cal-Maine Sale.

      b.      All documents or ESI that You or Cal-Maine sent to or received from Jacques Klempf or Foodonics referring or relating to the Settlement and Redemption Agreement.

      c.      All Documents and ESI that You or Cal-Maine sent to or received from Jacques Klempf or Foodonics referring or relating to Laura Jean Klempf or the Trust.

      d.      All Documents and ESI that You or Cal-Maine sent to or received from Jacques Klempf of Foodonics relating to the value of Foodonics' Assets or Foodonics' Stock.

      e.      All Documents and ESI that You or Cal-Maine sent to or received from Jacques Klempf or Foodonics relating to the sale of Foodonics' Assets or Foodonics' Stock.

      f.      All Documents and ESI constituting any Foodonics' financial information provided to You and/or Cal-Maine by Jacques Klempf or Foodonics and/or any of its representatives, agents, officers or directors.

2.      Any and all closing documents and other agreements relating to the Cal-

Maine Sale.

3.      All Documents and ESI in the possession of You or Cal-Maine relating to

the value of Foodonics' Stock or Foodonics' Assets from January 1, 2009 through the

date of production.

4.      All Documents and ESI that You or Cal-Maine sent to or received from Marc Klempf relating to the value of Foodonics' Assets or Foodonics' Stock.

5.      All Documents and ESI that You or Cal-Maine sent to or received from Marc Klempf relating to the sale of Foodonics' Assets or Foodonics' Stock.

6.      All Documents or ESI You or Cal-Maine sent to or received from Marc Klempf referring or relating to the Settlement and Redemption Agreement.

7.      All Documents or ESI You or Cal-Maine sent to or received from Marc Klempf referring or relating to Laura Jean Klempf from September 1, 2008 to date.

8.      All Documents and ESI You or Cal-Maine sent to or received from Marc Klempf referring or relating to the Cal-Maine Sale.

9.      All Documents and ESI that You or Cal-Maine sent to or received from Laura Jean Klempf or the Trust relating to Jacques Klempf or Foodonics.

10.      All Documents and ESI that You or Cal-Maine sent to or received from Laura Jean Klempf or the Trust relating to the value of Foodonics' Assets or Foodonics' Stock.

11.      All Documents and ESI that You or Cal-Maine sent to or received from Laura Jean Klempf or the Trust relating to the sale of Foodonics' Assets or Foodonics' Stock.

12.      All Documents or ESI that You or Cal-Maine sent to or received from Laura Jean Klempf or the Trust referring or relating to the Settlement and Redemption Agreement.

13.      All Documents or ESI You or Cal-Maine sent to or received from Laura Jean Klempf or the Trust referring or relating to the Cal-Maine Sale.

14. All Documents or ESI You or Cal-Maine sent to Laura Jean Klempf from September 1, 2008 to date.

15. All Documents and ESI that You or Cal-Maine sent to or received from Ian Ratner relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

16. All Documents and ESI that You or Cal-Maine sent to or received from GlassRatner Advisory & Capital Group, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

17. All Documents and ESI that You or Cal-Maine sent to or received from Jess W. Wright relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

18. All Documents and ESI that You or Cal-Maine sent to or received from Sheldrick, McGehee & Kohler, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

19. All Documents and ESI that You or Cal-Maine sent to or received from John P. Stevens relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

20. All Documents and ESI that You or Cal-Maine sent to or received from Stevens, Powell & Company, P.A. relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

21.  All Documents and ESI that You or Cal-Maine sent to or received from Robert Monsky relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

22.  All Documents and ESI that You or Cal-Maine sent to or received from First Florida Capital Corporation relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

23.  All Documents and ESI that You or Cal-Maine sent to or received from GrayRobinson, P.A. relating or referring to (i) the Settlement and Redemption Agreement, (ii) Laura Jean Klempf or the Trust, (iii) Jacques Klempf or Foodonics, (iv) the Cal-Maine Sale, (v) the value of Foodonics' Assets or Foodonics' Stock, or (vi) any potential sale of Foodonics' Assets or Foodonics' Stock.

24.  All Documents and ESI constituting any Financial Statement prepared by or for You and/or Cal-Maine where such Financial Statement identifies, refers or relates to the value of Foodonics' Stock of Foodonics' Assets.

25.  All Documents and ESI referring or relating to the transfer of any Foodonics' Assets to (i) BAM Residential Holdings, LLC; (ii) BAM Commercial Holdings, LLC; and/or (iii) BAM Investment Group, LLC.

963942

**8**

**TAB 2**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC.,
a Florida corporation,

      Plaintiff,

v.

3:17-cv-1054-J-32ORK

DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Georgia
trust,

      Defendants.

_____/

## COMPLAINT

Foodonics International, Inc., a Florida corporation ("Foodonics" or "Plaintiff") sues Defendant, Dina Klempf Srochi ("Trustee" or "Defendant"), as Trustee of the Laura Jean Klempf Revocable Trust ("Trust") and alleges:

### I. JURISDICTION AND VENUE

1.    This is an action for damages and declaratory relief pursuant to 28 USC 2201 and Rule 57 Federal Rules of Civil Procedure.

2.    This Court has jurisdiction pursuant to 28 USC 1332(a) as between citizens of different states and the amount in controversy exceeds $75,000.00.

3.    Venue is proper before this Court pursuant to 28 USC 1391(b)(2) in that the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

4.    Foodonics is a Florida corporation with its principal place of business at 5139 Edgewood Court, Jacksonville, Florida 32254.

5.     Defendant is an individual citizen and resident of the State of Georgia who has served as Trustee of the Trust at all times material to this action.

## II. GENERAL ALLEGATIONS

### A.     FOODONICS AND THE KLEMPF FAMILY HISTORY

6.     Foodonics, through its predecessor Dixie Egg Company, was founded in 1948, and until December, 2015, was a closely held family corporation which produced, processed and distributed shell eggs in the southeastern United States and Puerto Rico.

7.     Edward Klempf, who founded Foodonics, and his wife Laura Jean Klempf ("Mrs. Klempf") had three (3) children: Kevin Jacques Klempf ("Jacques"), Dina Klempf Srochi ("Dina"), and Marc Klempf ("Marc").

8.     Other than minor amounts of stock associated with an employee stock option incentive plan, stock ownership of Foodonics has been held historically by the above-referenced Klempf family members, or through various family trusts for their benefit.

9.     Edward Klempf served as President and Chief Executive Officer of Foodonics until his death on October 18, 2002 after which Jacques, who had worked for Foodonics in all facets from an early age, became President and Chief Executive Officer.

10.     Although Mrs. Klempf worked at Foodonics in a clerical role for a short time after formation of the business, she had not worked in the business for many years prior to December, 2015. Dina and Marc Klempf never held any significant employment or managerial roles in Foodonics.

11.     In 2006, Jacques acquired the Foodonics stock owned or controlled by his siblings, Dina and Marc, leaving Jacques and Mrs. Klempf, as well as some trusts associated with or controlled by Jacques and Mrs. Klempf including the Trust at issue in this case, as the

only owners of Foodonics stock except for insignificant employee incentive stock options ("2006 Transaction").

12.    Following the 2006 Transaction, Jacques owned approximately 53.6% of the Foodonics stock, while his mother, Mrs. Klempf, owned approximately 45.6% of the Foodonics stock.

13.    Foodonics is a subchapter S corporation under Internal Revenue Code § 1361. As a result, income tax responsibility for Foodonics' income passes through to, and is allocated to, and the taxes are ultimately paid by, the individual shareholders.

14.    Following the 2006 Transaction, Foodonics made estimated income tax payments to the Internal Revenue Service ("IRS") on behalf of Jacques and Mrs. Klempf in amounts equal to their anticipated annual income tax liabilities resulting from the inclusion in their personal income of their relative share of Foodonics' income.

15.    Sections 6654, 6621 and 6662 of the Internal Revenue Code impose on individual taxpayers an accuracy-related penalty for underpayment of annual taxes prior to the end of the current tax year.

16.    Foodonics' income is calculated and reported to the IRS after the end of the relevant tax year. As a result, the estimated tax payments were paid to IRS on behalf of Jacques and Mrs. Klempf, before the end of each taxable year, based on estimates of Foodonics' eventual taxable income.

17.    To avoid imposition of IRS penalties against Jacques and Mrs. Klempf for underpayment of estimated tax payments, Foodonics had to err on the side of caution when making the estimated tax payments.

18.     As a result, for tax year 2015, Foodonics paid estimated taxes on behalf of its shareholders, Jacques and Mrs. Klempf.  Because the precise amount of tax liability could not be known at the time of estimated payments, Foodonics intentionally overpaid the estimated taxes for Jacques and Mrs. Klempf to the IRS to avoid imposition of penalties and interest.   No additional distribution was authorized by the shareholders and in the event of a substantial overpayment of taxes, Foodonics was to be repaid the amount of such overpayment.

19.     By 2015, a number of disputes had arisen between Jacques and Mrs. Klempf, including the repayment to Foodonics of an overpayment of estimated taxes for the 2014 taxable year.

20.     On December 31, 2015, Jacques became the sole shareholder of Foodonics as a result of the company's redemption of all of the stock previously held by Mrs. Klempf or the Trust ("Stock Redemption") pursuant to a Settlement and Redemption Agreement, a copy of which without exhibits is attached hereto as Exhibit 'A' and made a part hereof.

21.     The Settlement and Redemption Agreement settles and contains mutual releases addressing numerous specified and unspecified claims by each of Jacques, Mrs. Klempf, and Foodonics, including the release of the obligation of Mrs. Klempf to repay the 2014 estimated tax overpayment.

22.     For various reasons, Foodonics' 2015 income was substantially higher in the first three quarters of the year than corresponding periods for 2014, resulting in a large payment of estimated taxes for Jacques and Mrs. Klempf.

23.     Foodonics' payment of estimated tax payments on behalf of Jacques and Mrs. Klempf resulted in an overpayment of taxes relative to Foodonics' subsequently-determined income.  As a result, both Jacques and Mrs. Klempf received a refund from the IRS.

24.     The most significant asset of Foodonics was the business of producing, processing and distributing shell eggs under the names Dixie Egg, Eggland's Best (in certain territories) and United Egg Marketing (the "Dixie Egg Business").

25.     In November, 2016, Foodonics sold the assets of the Dixie Egg Business to Cal-Maine Foods, Inc. (the "Dixie Egg Sale").

26.     The Trust was established in April 1992, with Mrs. Klempf as grantor and initial Trustee. In the event Mrs. Klempf was unable to serve, through death, incapacity or otherwise, successor trustees were, in order, her husband, Edward Klempf, and then Jacques, followed by Defendant Dina, and then Marc. Dina has served as Trustee of the Trust for some time, and in that capacity is the Defendant herein. On information and belief, the Trust was amended after 1992 by Mrs. Klempf to appoint Defendant as Trustee. Defendant has represented herself as Trustee of the Trust, and has acted as such.

27.     Mrs. Klempf passed away on July 19, 2017.

B.     THE CLAIMS

28.     Although the precise amount of any tax refund paid to Mrs. Klempf and the Trust was initially unknown to Foodonics, such a refund was in fact paid for tax years 2014 and 2015.

29.     Foodonics' right to repayment of Mrs. Klempf's 2014 estimated tax overpayment and resulting tax refund was released under the mutual release language in the Settlement and Redemption Agreement.

30.     However, beginning in 2016, Foodonics requested on several occasions that Mrs. Klempf repay the amount of the 2015 estimated tax overpayment and resulting income tax refund (the "2015 Refund") to Foodonics ("Refund Claim"). Such requests were made directly to Mrs. Klempf and to her attorney or her accountant with no response.

31.    Instead, on June 23, 2017, through counsel, the Trust delivered correspondence to Jacques, together with various attachments, asserting claims on behalf of the Trust related to the Stock Redemption and the subsequent Dixie Egg Sale (the "Notice Letter").

32.    The attachments to the Notice Letter included a 27 page form of Complaint alleging, *inter alia*, fraud, breach of fiduciary duties and securities violations, against Jacques and Foodonics, based primarily on the Trustee's belief in the existence of a secret and undisclosed agreement between Foodonics and Cal-Maine arising prior to the Stock Redemption, and the failure of Foodonics or Jacques to disclose the existence of such secret agreement prior to the closing of the Stock Redemption (collectively, the "Fraud Claims"). The form of Complaint and items of discovery attached to the Notice Letter are as yet unfiled.

33.    Counsel for Foodonics and Jacques met with counsel for the Trust to discuss the Fraud Claims. Following Foodonics' and Jacques' rejection of the Trust's Fraud Claims, the Trust unilaterally and without authority claimed that the 2015 Refund, purportedly in the amount of $1,312,342.82 and delivered to the Trust by check dated March 29, 2017, would be retained by the Trust as a set-off against the Fraud Claims.

34.    The Settlement and Redemption Agreement provides for an award of attorneys' fees in the event of litigation to enforce the Settlement and Redemption Agreement. It has been necessary for Plaintiff to hire the undersigned law firm to represent it in this matter and is Plaintiff obligated to pay such firm a reasonable fee.

### COUNT I
### BREACH OF CONTRACT

35.    Foodonics realleges and incorporates paragraphs 1 – 34 above as if set forth herein.

36.    The Trust has breached the Settlement and Redemption Agreement by failing to pay the 2015 Refund to Foodonics.

37.    As a direct result of such breach, Foodonics has been damaged in the amount of $1,312,342.82.

WHEREFORE, Foodonics demands judgment for damages, interest, reasonable attorneys' fees and costs, and for all other and further relief as is just and equitable.

### COUNT II
### UNJUST ENRICHMENT

37.    Foodonics realleges and incorporates paragraphs 1 through 34 as if set forth herein.

38.    By virtue of the entire 2015 Refund having been paid to the Trust, a benefit has been conferred upon the Trust.

39.    The Trust has voluntarily accepted the benefit of the 2015 Refund.

40.    The Trust has both appreciated and benefited from the 2015 Refund.

41.    As alleged herein above, the retention of the 2015 Refund under the circumstances as alleged herein make it inequitable for the Trust to retain the 2015 Refund without paying for the value thereof.

WHEREFORE, Foodonics demands judgment against the Trust for the value of the benefit conferred upon the Trust by virtue of the 2015 Refund, interest, reasonable attorneys' fees and costs.

### COUNT III
### CONVERSION

42.    Foodonics realleges and incorporates paragraphs 1-34 above as if set forth herein.

43.     Foodonics has made multiple demands for payment of the value of, or an endorsement of, the 2015 Refund.

44.     By wrongfully retaining the 2015 Refund after multiple demands for its return, the Trust is exercising wrongful dominion or control over the 2015 Refund to the detriment of the actual owner, Foodonics.

45.     According to the 2015 Agreement, Foodonics is the rightful owner of the 2015 Refund.

WHEREFORE, Foodonics demands judgment against the Trust for the value of the 2015 Refund, interest, reasonable attorneys' fees and costs.

## COUNT IV
## DECLARATORY JUDGMENT AS TO FRAUD ALLEGATIONS MADE BY DEFENDANT IN AN UNFILED COMPLAINT AGAINST PLAINTIFF

46.     This is an action for declaratory judgment, brought pursuant to Rule 57, Fed. R. Civ. P. and 28 U.S.C. § 2201, in which Plaintiff seeks a declaration of the respective rights and obligations of Plaintiff and Defendant in connection with the Settlement and Redemption Agreement and those Fraud Claims made by Defendant against Plaintiff contained in the form of Complaint.

47.     Plaintiff realleges and incorporates paragraphs 1 – 34 above as if set forth herein.

48.     Following inquiries and demands for the value of the 2015 Refund, Defendant presented to Plaintiff the form of complaint as alleged hereinabove, styled DENNIS BLACKBURN, as Special Trustee of the Laura Jean Klempf Trust v. K. JACQUES KLEMPF and FOODONICS INTERNATIONAL, INC. in which the Fraud Claims are asserted.

49.     A substantial, concrete, and actual controversy exists among Plaintiff and Defendant, and this Court can provide specific relief through a judicial determination of the rights of such parties.

50.     Plaintiff requests this Court provide declaratory judgment on the counts alleged in the Fraud Complaint, which are: (1) Violation of Florida Securities Act § 517.301; (2) Violation of § 10(b) of the Securities Exchange Act and Rule 10b-5; (3) Control Person Liability - § 20(a) of the Securities Exchange Act; (4) Fraud; (5) Negligent Misrepresentation; (6) Breach of Fiduciary Duty of Disclosure; and (7) Breach of Fiduciary Duty of Loyalty.

51.     This Court is a proper venue to determine the rights of the parties under the Fraud Claims, as a determination of rights will require a review of the Settlement and Redemption Agreement and other issues which are material to this Complaint.

WHEREFORE, Plaintiff seeks a declaration of the respective rights and obligations of Plaintiff and Defendant in connection with the Settlement and Redemption Agreement and those Fraud Claims made by Defendant against Plaintiff contained in the form Complaint.

GRAYROBINSON, P.A.

/s/S. Grier Wells
S. GRIER WELLS, ESQ.
Florida Bar No.: 203238
grier.wells@gray-robinson.com
elizabeth.irvine@gray-robinson.com
50 North Laura Street, Suite 1100
Jacksonville, Florida 32202
Phone: (904)-598-9929
Fax: (904)-598-9109

*Attorney for Plaintiff*

# EXHIBIT 'A'

## SETTLEMENT AND REDEMPTION AGREEMENT

THIS SETTLEMENT AND REDEMPTION AGREEMENT (this "**Agreement**") is entered into as of December 21, 2015 by and among FOODONICS INTERNATIONAL, INC., a Florida corporation (the "**Company**"); K. JACQUES KLEMPF, an individual ("**Jacques**"); LAURA JEAN KLEMPF ("**Jean**"), individually; LAURA JEAN KLEMPF, in her capacity as Trustee of, and on behalf of, the LAURA JEAN KLEMPF REVOCABLE TRUST dated April 1, 1992, as Amended (the "**Seller**"); JACQUES and JEAN as Trustees of the Family Trust under the Edward Klempf Revocable Trust Agreement dated April 1, 1992 (the "**Family Trust**"); DINA KLEMPF SROCHI, an individual ("**Dina**"); and MARC E. KLEMPF, an individual ("**Marc**"). Jean, Dina and Marc shall sometimes be collectively referred to herein as the "**5K Sellers**." The Company and Jacques shall sometimes collectively be referred to herein as the "**Foodonics Parties**." Jean and Jacques in their capacities as Co-Trustees of the Family Trust are sometimes referred to herein as the "**Family Trust Trustees**." Jacques, Marc and Dina are sometimes collectively referred to as the "**Policy Owners**." The Foodonics Parties, the 5K Sellers, the Family Trust Trustees and the Seller shall sometimes be referred to herein as the "**Parties**," and each, a "**Party**".

### Background Recitals

A.    Jean is the mother of Jacques, Marc and Dina. The Company was begun by Jean's husband, and the children's father, Edward Klempf. Following his death on October 18, 2002, Jean and Jacques became the primary shareholders of the Company.    In 2006, various of the Parties and some third parties to this Agreement entered into a number of transactions, including the execution of a shareholder agreement among the Company's shareholders (the "**2006 S/H Agreement**").    The 2006 S/H Agreement restricts Jean's ability to sell her shares of Company stock, and requires that at her death, her estate must sell her shares of Company stock to Jacques for consideration computed by a formula, with the purchase price to be paid over an eight year period. That formula price is based in part on an appraisal of the Company's shares of stock conducted by Sheldrick, McGehee & Kohler of Jacksonville, Florida ("SMK").

Disputes have arisen concerning the corporate governance of the Company, the lack of distributions to shareholders, over and above income tax distributions, and related matters (collectively, "Disputed Matters"). As a result Jean has threatened to file a lawsuit concerning those Disputed Matters and has incurred significant legal and accounting expenses in investigating and asserting those claims. Recognizing the legal and accounting fees the Parties have already incurred and that litigation would be very costly and disruptive, and desiring to avoid further family conflict, and expensive legal fees, the Parties desire to resolve the Disputed Matters. This Agreement affords the Parties the opportunity to accomplish these aims as well as allowing them to separate completely their joint business interests.

After extensive, protracted and costly adversarial negotiations that have occurred for more than two (2) years among the Parties and their legal, accounting and tax

1

advisors, the Parties are now motivated, in part, to enter into this Agreement to secure for Jean and her eventual beneficiaries, the adequate and full consideration for her shares of Company stock based upon an appraisal fairly conducted according to usual and customary valuation practices.

B.      The Seller owns 1,591,177 of the Company's issued and outstanding Class A Voting Shares (collectively referred to as the "**Class A Shares**").

C.      The Seller owns 1,387,431 of the Company's issued and outstanding Class B Non-Voting Shares (collectively referred to as the "**Class B Shares**").   (The Seller's Class A Shares and the Seller's Class B Shares are sometimes referred to herein collectively as the "**Seller's Shares**").

D.      The Seller and Jacques each own a one-half undivided interest in that certain real property located at 5139 Edgewood Court, Jacksonville, Florida 32254 (the "**Edgewood Court Property**").

E.      Jean owns an undivided forty percent (40%) interest ("**Jean's 5K Interest**") as a partner in 5K's General Partnership ("**5K Partnership**").

F.      Marc owns an undivided twenty percent (20%) interest ("**Marc's 5K Interest**") as a partner in 5K Partnership.

G.      Dina owns an undivided twenty percent (20%) interest ("**Dina's 5K Interest**") as a partner in 5K Partnership.

H.      The sole material asset of 5K Partnership is a parcel of real property owned by the 5K Sellers and Jacques.  That real property is more particularly described as set forth on Exhibit A attached hereto (the "**5K Property**").

I.      The Company owes the Family Trust $489,207.29 as of December 31, 2015, pursuant to that certain Promissory Note dated June 30, 2006 (the "**2006 Promissory Note**"), which indebtedness is secured, pursuant to that certain Stock Pledge Agreement of even date therewith (the "**2006 Stock Pledge**"), by a pledge of 422,033 shares of Class A Voting Common Stock, par value $0.003, and a pledge of 402,539 shares of Class B Non-Voting Common Stock, par value $0.003.  Collectively, the 2006 Promissory Note and the 2006 Stock Pledge are referred to as the "**2006 Documents**".

J.      The Seller, as a shareholder of the Company, on behalf of Jean individually, have threatened litigation against the Foodonics Parties concerning the Disputed Matters. This Agreement is intended, among other things, to settle absolutely and forever all known and unknown bases for such threatened litigation.

K.      The Policy Owners own that certain life insurance policy issued by Massachusetts Mutual Life Insurance Company or its affiliate (the "**Insurance Company**"), policy number 15,587,790, with a specified face amount of Two Million

2

*L J K*

Dollars ($2,000,000), together with internal fund value and cash surrender value (the "**Insurance Policy**").

     L.    SMK has performed an appraisal of the Seller's Shares, as set forth in a valuation report dated December, 2015 (the "**2015 SMK Valuation Report**"). Moody Appraisal Group has performed an appraisal of (i) the 5Ks Seller's interests in the 5K Property, and (ii) Jean's interest in the Edgewood Court Property dated October, 2015 (the "**Moody Appraisals**"). These appraisals have been used to determine adequate and full consideration and to allocate the purchase price in Section 8 below.

     M.    The Parties desire to accomplish the following transactions, on terms as more specifically described within this Agreement:

     1.    In full and complete settlement of all threatened litigation, the Company desires to redeem from the Seller, and Seller desires to have redeemed, all of the Seller's Shares (the "**Stock Redemption**");

     2.    The 5K Sellers desire to sell to Jacques, and Jacques desires to acquire from the 5K Sellers, all of the 5K Sellers' respective interests in 5K Partnership and the 5K Property;

     3.    Jean desires to sell to Jacques, and Jacques desires to acquire from Jean, all of her interest in the Edgewood Court Property;

     4.    Jean, Jacques, Marc and Dina as beneficiaries of the Family Trust, and the Family Trust Trustees, desire to terminate and distribute the corpus of the Family Trust for the benefit of Jean (as to the value of her income interest), and the remainder to Jacques, Marc and Dina equally.

     5.    Jacques, Marc and Dina desire to create a new partnership whereby the Insurance Policy will be held by the partnership, the terms of which will allow one or more of the Policy Owners to contribute funds to the partnership from time to time, and to provide for the repayment of those contributions upon the event of Jean's death, the liquidation of the partnership at that time, and the disbursement of the partnership's remaining assets to the partners;

     6.    The Company and Jean wish to provide for the payment of income taxes attributable to the taxable income of the Company for any period of time in which the Seller was an owner of the Company; and

     7.    On the various terms and conditions set forth below, the Parties desire to settle any legal claims or disputes, including without limitation the Disputed Matters, that they may have against each other concerning the Company, its shares of stock, outstanding promissory notes, the Edgewood Court Property, the 5Ks Property, and the threatened litigation.

NOW THEREFORE, in consideration of the mutual agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties do hereby agree as follows:

1. **Incorporation of Background Recitals.** The foregoing background recitals are true and correct and are hereby incorporated as part of this Agreement.

2. **Redemption of Seller's Shares.** At Closing (as defined in Section 9 below), the Seller shall sell, assign, transfer, convey, and deliver to the Company all of the Seller's rights, title and interest in and to the Seller's Shares and all of Seller's rights as a stockholder of the Company in exchange for the payment to Seller of the Redemption Purchase Price, as defined in Section 7 below. Following the Closing, the Seller will no longer have any ownership or equity interest in the Company, and will not participate in or receive any subsequent distributions of the Company.

3. **Sale of 5K Interests.** At Closing, Jean, Dina and Marc shall sell, assign and convey to Jacques, their 5K Partnerhip interests and their interests in the 5K Property by Special Warranty Deed (in the form attached as Exhibit B) in exchange for the 5K Purchase Price as set forth in Section 5 below.

4. **Edgewood Court Property.** At Closing, Seller shall sell, assign and convey to the Company by Special Warranty Deed (in the form attached as Exhibit C), Seller's interest in the Edgewood Court Property in exchange for the Edgewood Court Purchase Price as set forth in Section 8 below.

5. **Life Insurance Policy.** The Policy Owners will form the Klempf Family, LLC (the "**Insurance Partnership**") and enter into an operating agreement substantially in the form of Exhibit D, and execute such assignments, change of ownership forms, and change of beneficiary documents at Closing and thereafter, as are required or requested by the insurer to transfer ownership of the Insurance Policy to the Insurance Partnership, and to cause the beneficiary of the Insurance Policy to be the Insurance Partnership.

6. **Family Trust.** The Family Trust Trustees, together with Jacques, Jean, Marc and Dina, will take all steps reasonably necessary to terminate and distribute the corpus of the Family Trust to Jean to the extent of her income interest, and the remainder to Jacques, Dina and Marc immediately following the Closing.

7. **Mutual Releases.**

(a) As partial consideration for payment of the aggregate Purchase Price by the Foodonics Parties to the Seller and the 5K Sellers as described in Section 8 below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each of the Seller, each 5K Seller, the Family Trust Trustees, as well as Jean both individually and in her capacity as trustee of any trust under the Edward Klempf Revocable Trust dated April 1, 1982 (collectively, the "**Releasing Parties**"), effective as of the Closing Date hereby release and waive any and all claims, causes of action, suits, rights or

4

damages each has or may have, and represents, warrants and agrees that it has no colorable claims against, any of the Foodonics Parties or any of their affiliates, including any arising under the 2006 Documents, except:

(i)    with respect to any rights and obligations under that certain Agreement Regarding Condominium Use between the Company, Jacques, Dina and Mark dated in September 2006 (the "**Condo Agreement**") pertaining to condominium Unit 615, located at Surf Villas Condominiums, 615 Summer Place, Ponte Vedra Beach, Florida 32082, including without limitation the purchase option set forth in the Condo Agreement; and

(ii)    the rights and obligations of the parties set forth in this Agreement and related documents.

(iii)    the rights and obligations under the 2006 Documents as modified in accordance with this Agreement.

Without limiting the foregoing, each of the Releasing Parties hereby forever waives, releases and terminates, and shall treat as fully performed, all agreements, obligations and understandings each may have with Jacques or the Company not specifically set forth in this Agreement or in the Condo Agreement.

(b)    For good and valuable consideration, the Seller, Jean and the Family Trust Trustees (i) hereby waive and release the Company and all other Parties from any default or breach which may otherwise occur under the 2006 Documents as a result of the transactions contemplated by this Agreement as a "Change in Control Transaction," as such term is referred to in the 2006 Documents, and (ii) hereby represent, warrant and agree that no such breach or default exists, and no set of facts exist that would, with the passage of time or otherwise, constitute a default, under the 2006 Documents, and (iii) agree that the 2006 Documents are hereby deemed terminated to permit the transactions contemplated hereby.

(c)    For good and valuable consideration, the Foodonics Parties hereby release Jean in her individual capacity or any other capacity, from any and all claims, causes of action, suits, rights or damages that the Foodonics Parties have or may have against her, and each of the Foodonics Parties represents, warrants and agrees that it has no coloarable claims against Jean, except the rights and obligations of the parties set forth in this Agreement and related transactions. Without limiting the foregoing, each of the Foodonics Parties waives, releases and terminates, and shall treat as fully performed, all agreements and understandings each may have with Jean not specifically set forth in this Agreement.

5

8. **Purchase Price and Financial Transactions.** The various amounts to be paid by the Company and Jacques in connection with this Agreement are referred to as the "**Purchase Price**" and are set forth below:

(a) The consideration to be paid by the Company to Seller in connection with the Stock Redemption (the "**Redemption Purchase Price**") shall be the sum of Nine Million Four Hundred Eighteen Thousand Five Hundred Dollars ($9,418,500), which shall to be paid by the Company by wire transfer at the Closing.

(b) The Company shall transfer to Jean, ownership of the two (2) Lexis vehicles that are and have long been in Jean's possession or control (the "**Vehicles**") (or such other person that Jean directs in writing prior to the Closing) which Vehicles are described as:

| Year: | VIN: |
|---|---|
| 2002 Lexus | JTHBF30G820052757 |
| 2004 Lexus | JTHBN36F240138974 |

The Company shall be responsible for sales tax and transfer costs associated with the transfer of the Vehicles. The agreed value for the Vehicles stated above shall be reflected in any bill of sale or other transfer documents regarding the Vehicles.

(c) The Company shall pay the balance of the 2006 Promissory Note to the Family Trust by delivery of the sum of Four-hundred eighty-nine thousand two hundred seven dollars and twenty-nine cents ($489,207.29) at Closing by wire transfer.

(d) The consideration to be paid by Jacques to Jean for her interest in the Edgewood Court Property shall be the sum of Two Hundred Twenty-One Thousand Five Hundred Dollars ($221,500) ("**Edgewood Court Purchase Price**"), payable at Closing by wire transfer.

(e) The consideration to be paid by Jacques to the 5K Sellers for their interests in 5K Partnership and the 5K Property shall be the sum of  Three Hundred Sixty Thousand Dollars ($360,000) ("**5K Purchase Price**"), payable at Closing in cash or immediately available funds to be paid against delivery of the assignment of the interests of the 5K Seller's in 5K Partnership and the conveyance of their interests in the 5K Property. The 5K Purchase Price shall be allocated $180,000.00 to Marc, $90,000 to Marc, and $90,000 to Dina.

(f) From the proceeds of the 5K Purchase Price allocated to Dina, the sum of $12,500 shall be withheld and delivered to the Insurance Company for premium payments she has failed to make.

6

9.      **Transactions to be Effected at Closing.**

(a)     Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place at the offices of GrayRobinson, P.A., 50 North Laura Street, Suite 1100, Jacksonville, Florida 32202, at 10:00 a.m. on December 15, 2015, or at such other time, date or place as the Parties may mutually agree upon in writing. The date on which the Closing is to occur is herein referred to as the "**Closing Date.**"

(b)     At the Closing, Seller shall deliver the following to Company:

(i)     Stock powers duly endorsed by Seller transferring Seller's Shares to the Company;

(ii)    Duly executed resignations of Jean and all designees of the Seller on the Board of Directors of the Company and as an officer of the Company;

(iii)   One or more duly executed written amendments to the Foodonics International, Inc. Shareholders Agreement dated September 15, 2006, in form and substance acceptable to the Company excepting the Stock Redemption and related transactions described herein from the restrictions of the Shareholders Agreement (the "**Shareholders Agreement Amendment**");

(iv)    Instructions to the escrow agent holding the original stock certificates in connection with the 2006 Documents to the Company; and

(v)     Such other documents as the Foodonics Parties or their counsel may reasonably request to effect the transactions described in this Agreement.

(c)     At the Closing, the Foodonics Parties shall do the following:

(i)     Pay the Redemption Purchase Price to Seller;

(ii)    Pay the Edgewood Court Property Purchase Price to Jean;

(iii)   Pay the 5K Purchase Price to Jean, Dina and Marc in the amounts set forth on paragraph 8(f) above, withholding $12,500 from Dina's portion, which amounts will instead be forwarded to the Insurance Company as set forth in Sections 8(f) above;

(iv)    Deliver the duly executed certificates of title and general bill of sale to transfer ownership of the Vehicles to Jean;

7

(v)     Deliver the $489,207.29 balance of the 2006 Promissory Note to the Family Trust Trustees; and

(vi)    Deliver such other documents as the Seller or Seller's counsel may reasonably request to effect the transactions described in this Agreement.

(d)     At the Closing, Jean and the 5K Sellers shall deliver or cause to be delivered to Jacques the following:

(i)     Duly executed Assignment Separate From Certificate in form and substance acceptable to Jacques, assigning each of the 5K Sellers' interests in the 5K Partnership to Jacques;

(ii)    Duly executed special warranty deeds in form and substance acceptable to Jacques, conveying each of the 5K Sellers' ownership interest in the 5K Property to Jacques; and

(iii)   Duly executed special warranty deed in form and substance acceptable to Jacques, conveying Jean's ownership interest in the Edgewood Court Property to Jacques.

(e)     At the Closing, the Family Trust Trustees shall deliver or cause to be delivered to the Company, the following:

(i)     Original 2006 Promissory Note.

(ii)    Such other documents reasonably requested by the Foodonics Parties to evidence the full and complete payment of the 2006 Promissory Note and the release of any collateral associated with the 2006 Stock Pledge, and the satisfaction and performance by the Company of all conditions and requirements contained in the 2006 Documents.

10.    **Representations and Warranties.**

(a)    **From Jean and the Seller.** Jean and the Seller, jointly and severally, represent and warrant to the Foodonics Parties that the statements in this Section 10(a) are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement throughout this Section 10(a)):

(i)     Seller is the record and beneficial owner of, and has good and marketable title to, the Seller's Shares, free and clear of any liens, encumbrances, restrictions on transfer or claims (with the exception of any restrictions on transfer set forth in the Foodonics International, Inc. Shareholders Agreement dated September 15, 2006, which shareholders agreement is being amended pursuant to the Shareholders Agreement

8

Amendment to remove all such restrictions), and shall convey such good and marketable title to the Seller's Shares at the Closing.  The Seller's Shares constitute all of the Seller's ownership interest in the Company. Prior to the date of this Agreement, all shares of stock in the Company formerly owned by the Edward Klempf Marital Trust have been assigned to Seller, and those shares are being completely redeemed as a portion of Seller's Shares hereunder.

(ii)    The execution, delivery and performance of this Agreement and the other documents and agreements contemplated hereby, and the consummation of the transactions contemplated hereby and thereby, will not result in any violation on the part of the Seller or be in conflict with, or constitute (with or without the passage of time and giving of notice) a default on the part of the Seller under: (i) any material contract, agreement, mortgage, note, bond, indenture or lease to which Seller is a party; or (ii) any law, rule, regulation, instrument, contract, judgment, order, writ, or decree to which the Seller is a party or by which the Seller's Shares are bound; or (iii) result in the acceleration of any indebtedness or in the creation of any encumbrance upon Seller's assets.

(iii)    The Seller has the right, power, and authority to enter into and perform Seller's obligations under this Agreement and the other documents and agreements contemplated hereby.  The Seller has duly executed and delivered this Agreement, and this Agreement is, and each of such other documents and agreements contemplated hereby when executed will be, a valid and binding agreement of the Seller, enforceable against the Seller in accordance with its terms, except as such enforcement may be subject to bankruptcy, insolvency, reorganization, moratorium, or other similar laws now or hereafter in effect relating to creditor's rights and general principles of equity.

(iv)    Jean will take over responsibility for paying her Medicare supplement health insurance following the Closing Date.

(b)    **From the Foodonics Parties.**  The Foodonics Parties hereby jointly and severally represent and warrant to the Seller and the 5K Sellers that the statements in this Section 10(b) are correct and complete as of the date of this Agreement (except as expressly noted herein) and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement throughout this Section 10(b)):

(i)    The execution, delivery and performance of this Agreement and the other documents and agreements contemplated hereby, and the consummation of the transactions contemplated hereby and thereby, will not result in any violation on the part of any of the Foodonics Parties or be in conflict with, or constitute (with or without the passage of time and

9

giving of notice) a default on the part of any of the Foodonics Parties under: (i) the organizational documents of such Foodonics Party; (ii) any material contract, agreement, mortgage, note, bond, indenture or lease to which such Foodonics Party is a party; or (iii) any law, rule, regulation, instrument, contract, judgment, order, writ, or decree to which any of the Foodonics Parties is a party, or (iv) result in the acceleration of any indebtedness or in the creation of any encumbrance upon such Foodonics Party's assets.

(ii)    Each of the Foodonics Parties has the right, power, and authority to enter into and perform its obligations under this Agreement and the other documents and agreements contemplated hereby.  Each of the Foodonics Parties has duly authorized, executed and delivered this Agreement, and this Agreement is, and each of such other documents and agreements contemplated hereby when executed will be, a valid and binding agreement of each of the Foodonics Parties, enforceable against each of the Foodonics Parties in accordance with its terms, except as such enforcement may be subject to bankruptcy, insolvency, reorganization, moratorium, or other similar laws now or hereafter in effect relating to creditor's rights and general principles of equity.

(iii)    The Foodonics Parties hereby jointly and severally represent and warrant to the Seller that as of the Closing Date: (i) there are no current offers pending nor ongoing discussions: (A) for the sale of all or substantially all of the assets of the Company; (B) for the sale by Jacques of his stock in the Company or (C) to effect a merger, stock exchange or other transaction which would have the effect of either Jacques no longer holding a majority of the outstanding shares of stock of the Company or the Company no longer owning substantially all of the assets that it currently owns (collectively referred to as a "Realization Event"); (ii) the Foodonics Parties have not received any written offers to effect a Realization Event within the twelve (12) months prior to the date of this Agreement.

(c)    **From the 5K Sellers.** Each of the 5K Sellers, severally and solely as to themselves, represent and warrant to the Foodonics Parties that the statements in this Section 10(c) are correct and complete as of the date of this Agreement and will be correct and complete as of the Closing Date (as though made then and as though the Closing Date were substituted for the date of this Agreement throughout this Section 10(c)):

(i)    Each 5K Seller is the record and beneficial owner of their respective interest in 5K Partnership, free and clear of any liens, encumbrances, restrictions on transfer or claims, and shall convey all ownership rights and entitlements associated with that interest to Jacques at Closing.  Jean's 5K Interest, Dina's 5K Interest and Marc's 5K Interest collectively constitute all of the 5K Sellers' ownership interests in 5K

Partnership. Following Closing, Jacques will own 100% of the interests in the 5K Partnership and in the 5K Property. The 5K Sellers are not owed any amounts, and have received all amounts due with respect to the 5K Partnership and 5K Property.

(ii)     The execution, delivery and performance of this Agreement and the other documents and agreements contemplated hereby, and the consummation of the transactions contemplated hereby and thereby, will not result in any violation on the part of the 5K Sellers or be in conflict with, or constitute (with or without the passage of time and giving of notice) a default on the part of any 5K Seller under: (i) any material contract, agreement, mortgage, note, bond, indenture or lease to which such 5K Seller is a party; or (ii) any law, rule, regulation, instrument, contract, judgment, order, writ, or decree to which any of the 5K Sellers are a party or by which the 5K Sellers' membership interests are bound; or (iii) result in the acceleration of any indebtedness or in the creation of any encumbrance upon the 5K Sellers' assets. By execution of the documents described in this Agreement, the Parties are deemed to have waived any restrictions on transfer or other provisions related to such transfer that might otherwise exist or apply under the agreement of general partnership or any other organizational document applicable to 5K Partnership.

(iii)     The 5K Sellers have the absolute and unrestricted right, power, and authority to enter into and perform the 5K Sellers' obligations under this Agreement and the other documents and agreements contemplated hereby. The 5K Sellers have duly executed and delivered this Agreement, and this Agreement is, and each of such other documents and agreements contemplated hereby when executed will be, a valid and binding agreement of the 5K Sellers, enforceable against the 5K Sellers in accordance with its terms, except as such enforcement may be subject to bankruptcy, insolvency, reorganization, moratorium, or other similar laws now or hereafter in effect relating to creditor's rights and general principles of equity.

(d)     **From the Policy Owners.** Each of the Policy Owners represents and warrants to the other Policy Owners that the following statements are true and correct as of the Closing Date:

(i)     Jacques and Marc have paid one-third of all premium payments due under the Insurance Policy. After payment of the amounts described in Section 8(f) above, Dina will have paid one-third of all premium payments under the Insurance Policy as well. Upon transfer of the Insurance Policy to the Partnership, each of the Policy Owners will have an equal basis in the Insurance Policy.

11

(ii)    The Policy Owners will take all steps necessary to vest ownership of the Insurance Policy in, and to provide that the beneficiary of the Insurance Policy is, the Insurance Partnership.

11.   **Indemnification.**

(a)    **Survival of Representations, Warranties and Covenants.**  The respective representations, warranties and covenants of the Parties contained in this Agreement shall survive the consummation of the transactions contemplated hereby.

(b)    **Indemnification by Seller.**  Seller shall indemnify the Foodonics Parties against and hold them harmless from all damages, losses, expenses, claims, demands, suits, causes of action, proceedings, judgments and liabilities, including reasonable attorneys' fees and court costs (collectively, "**Indemnified Damages**"), assessed, incurred, threatened, alleged or sustained by or against the Foodonics Parties with respect to or arising out of (i) the failure of any representation or warranty made by Seller in this Agreement to be true and correct in all material respects as of the date of this Agreement and as of the Closing Date, (ii) the failure of Seller to fulfill any of Seller's covenants or agreements hereunder.

(c)    **Indemnification by Foodonics Parties.**  Each of the Foodonics Parties, jointly and severally, shall indemnify Seller against and hold Seller harmless from all Indemnified Damages, assessed, incurred, threatened, alleged or sustained by or against Seller with respect to or arising out of (i) the failure of any representation or warranty made by a Foodonics Party in this Agreement to be true and correct in all material respects as of the date of this Agreement and as of the Closing Date and (ii) the failure of a Foodonics Party to fulfill any of its covenants or agreements set forth in this Agreement or the documents contemplated hereunder.  In the event the Internal Revenue Service audits the Company for any period that results in an increase in the amount of taxable income of the Company for any taxable year ending on or prior to the Closing, the Company shall indemnify Seller for all additional income taxes (including interest and penalties thereon) owed by Seller and resulting from such increase. Furthermore, the Foodonics Parties will satisfy, and indemnify the 5K Sellers for any obligations arising in connection with the BB&T Loan secured by the 5K Property.

(d)    **Indemnification by the 5K Sellers.**  Each of the 5K Sellers, severally, shall indemnify Jacques against and hold Jacques harmless from all Indemnified Damages, assessed, incurred, threatened, alleged or sustained by or against any of the Foodonics Parties with respect to or arising out of (i) the failure of any representation or warranty made by a 5K Seller in this Agreement to be true and correct in all material respects as of the date of this Agreement and as of the Closing Date; (ii) the failure of a 5K Seller to fulfill any of its covenants or agreements set forth in this Agreement or the documents

12

contemplated hereunder; and (iii) any Indemnified Damages to the extent the same relates to a period of time or action or inaction prior to the Closing Date.

(e)     **Notice.** Each Party hereto shall give the indemnifying party prompt written notice of any claim, assertion, event or proceeding by or in respect of a third Party of which it has knowledge concerning any liability or damage as to which it may request indemnification hereunder. The Party providing indemnification shall have the obligation, if requested by the indemnified Party, at all times to defend any such claim or proceeding, including advancement of any costs of defense.

(f)     **Time for Payment.** All indemnification payments required to be made pursuant to this Article shall be made promptly after demand for payment has been made by the indemnified Party upon the indemnifying Party.

12.     **Taxes.**

(a)     **S Corporation.** Upon the Closing, the Foodonics Parties and the Seller agree to elect to allocate the taxable income of the Company for the taxable year ending December 31, 2015, as if the taxable year consisted of two (2) taxable years, as provided in Section 1377(a)(2) of the Code.

(b)     **Income Taxes.** The Company shall distribute to Seller or pay to the Internal Revenue Service on behalf of Seller an amount (the "**Distribution Amount**") equal to the income tax liability of Seller for the year ending on the Closing Date, in the same manner as made for prior periods. The Distribution Amount payable to or on behalf of Seller under this Section 12(b) are in addition to the amounts payable to Seller pursuant to Section 8(a) of this Agreement. The Company shall pay the Distribution Amount in a timely manner consistent with prior years to avoid assessment of penalties or interest against the Seller for underpayment of estimated income taxes for her 2015 tax year. Other than as expressly set forth in this Section 12(b), the Parties shall each be responsible for reporting and paying his, her or its income taxes.

13.     **Assignment.** Each of the Parties hereby agrees that it will not assign any of its rights or interests under this Agreement or any related documents referred to herein to any other person or entity without the prior written consent of all of the other Parties.

14.     **No Actions Inconsistent.** Each of the Parties hereby agrees that it will take no action that is inconsistent with any of the provisions or requirements of this Agreement.

15.     **Expenses.** Each party shall bear and pay its own costs and expenses (including without limitation legal fees and expenses incurred by Seller) incurred in connection with the preparation and negotiation of this Agreement and in connection with the transactions and other documents contemplated hereby. In the event of any litigation to construe or enforce this Agreement (or the agreements contemplated

13

herein), the prevailing Party shall be entitled to recover the prevailing Party's reasonable attorney's fees and costs from the non-prevailing Party, whether at trial or on appeal.

16.    **Miscellaneous.**

(a)    Each of the Parties hereby agrees to execute such other documents and perform such other acts as may be necessary or desirable to effectuate the intent of this Agreement. Without limiting the foregoing, Jean and Seller shall sign any cancellation of the 2006 Note and any stock certificate representing any of the Seller's Shares or any shares serving as collateral for the 2006 Documents.

(b)    This Agreement shall be governed by and construed in accordance with the laws of the State of Florida (without giving effect to the choice of law rules thereof), and shall be binding upon and inure to the benefit of the Parties.

(c)    Any legal action, suit or proceeding in equity or law arising out of or relating to this Agreement, shall be instituted in any state or federal court in Duval County, Florida, and each Party agrees not to assert, by way of motion, as a defense, or otherwise, in any such action, suit or proceeding, any claim that such Party is not subject to the jurisdiction of such court, that its property is exempt or immune from attachment or execution, that the action, suit or proceeding is brought in an inconvenient forum, that the venue of the action, suit or proceeding is improper, or that its Agreement or the subject matter hereof may not be enforced in or by such court. Each Party further irrevocably submits to the jurisdiction of any such court in any such action, suit or proceeding.

(d)    This Agreement and the other writings referred to herein contain the entire understanding of the Parties with respect to its subject matter. This Agreement supersedes all prior agreements and understandings among the Parties with respect to its subject matter.

(e)    This Agreement may be amended only by a written instrument duly executed by the Parties hereto. This Agreement (including without limitation this Section 16(e)) may not be amended by oral agreement, waiver or course of dealing among the Parties.

(f)    This Agreement may be executed in multiple counterparts, all of which shall be but one and the same instrument, binding on all parties when all separately executed copies have been fully delivered.

(g)    No failure by either Party to take action on account of any default by the other shall constitute a waiver of such Party's right to take action on such default or any future similar default, or of the performance required of the other of all of the provisions hereunder.

14

(h)     The descriptive headings of this Agreement are intended for reference only and shall not affect the construction or interpretation of this Agreement.

(i)     The Parties have participated jointly in the negotiation and drafting of this Agreement.  In addition, all Parties have been represented by their own legal counsel in the negotiation and preparation of this Agreement.  Each Party has had the opportunity to consult counsel prior to executing this Agreement.  In the event an ambiguity or question of intent or interpretation arises, no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

(j)     The Parties agree that time is of the essence to each of the provisions of this Agreement.

(k)     All notices, requests, demands and other communications required or permitted to be given or made under this Agreement shall be in writing and will be deemed to have been duly given if personally delivered or if sent by United States mail, certified, return receipt requested, postage pre-paid or upon delivery to any nationally recognized over-night courier service, in each case, addressed as follows or to such other person or entity as the Parties may designate by notice to the Parties in accordance herewith:

**To the Foodonics Parties:**
5139 Edgewood Court
Jacksonville, FL 32254
Attention: K. Jacques Klempf

With copy to:
Grier Wells, Esq.
GrayRobinson, P.A.
50 North Laura Street, Suite 1100
Jacksonville, FL 32202

**To Jean, Seller and 5K Sellers:**
6730 Epping Forest Way N., #108
Jacksonville, FL 32217
Attention:   Laura Jean Klempf

With copy to:
Dennis L. Blackburn, Esq.
Blackburn and Co.
5150 Belfort Road, Building 500
Jacksonville, FL 32256-6030

*LJK*

15

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement as of the first date written above.

**FOODONICS INTERNATIONAL, INC.**

By:_____
Name: K. Jacques Klempf
Title:  President


_____
K. Jacques Klempf, individually


**LAURA JEAN KLEMPF REVOCABLE TRUST** dated
April 1, 1992, as Amended

By: *Laura Jean Klempf*
Laura Jean Klempf, Trustee

*Laura Jean Klempf*
LAURA JEAN KLEMPF


_____
DINA KLEMPF SROCHI

*Marc E. Klempf* 12/28/15
MARC E. KLEMPF

*Laura Jean Klempf*
LAURA JEAN KLEMPF, as Trustee of the Family
Trust under the Edward Klempf Revocable Trust
dated April 1, 1992


_____
K. JACQUES KLEMPF, as Trustee of the Family
Trust under the Edward Klempf Revocable Trust
dated April 1, 1992

16

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement as of the first date written above.

FOODONICS INTERNATIONAL, INC.

By:_____
Name: K. Jacques Klempf
Title:  President


_____
K. Jacques Klempf, individually


**LAURA JEAN KLEMPF REVOCABLE TRUST** dated April 1, 1992, as Amended


By:_____
Laura Jean Klempf, Trustee


_____
LAURA JEAN KLEMPF


_____
DINA KLEMPF SROCHI


_____
MARC E. KLEMPF


_____
LAURA JEAN KLEMPF, as Trustee of the Family Trust under the Edward Klempf Revocable Trust dated April 1, 1992


_____
K. JACQUES KLEMPF, as Trustee of the Family Trust under the Edward Klempf Revocable Trust dated April 1, 1992

16

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement as of the first date written above.

**FOODONICS INTERNATIONAL, INC.**

By: _____

Name: K. Jacques Klempf

Title:  President

_____

K. Jacques Klempf, individually

**LAURA JEAN KLEMPF REVOCABLE TRUST** dated April 1, 1992, as Amended

By: _____

Laura Jean Klempf, Trustee

_____

LAURA JEAN KLEMPF

_____

DINA KLEMPF SROCHI

_____

MARC E. KLEMPF

_____

LAURA JEAN KLEMPF, as Trustee of the Family Trust under the Edward Klempf Revocable Trust dated April 1, 1992

_____

K. JACQUES KLEMPF, as Trustee of the Family Trust under the Edward Klempf Revocable Trust dated April 1, 1992

**TAB 3**

JAMES H. POST
DIRECT 904.359.7783
JPOST@SMITHHULSEY.COM

December 22, 2017

Grier Wells, Esq.
GrayRobinson P.A.
50 North Laura Street, Suite 1100
Jacksonville, Florida 32202

Re: Foodonics International, Inc. v. Dina Klempf Srochi, As Trustee of the Laura Jean Klempf Revocable Trust; United States District Court, Middle District of Florida, Jacksonville Division; Case No. 3:17-cv1054-J-32JRK

Dear Grier:

This letter addresses several issues pertinent to the Rule 26(f) conference in this case scheduled on January 10, 2018.

Attachment 1 is a Checklist for Rule 26(f) Conference Regarding Electronically Stored Information (the "ESI Checklist"), which was recently adopted by the United States District Court for the Southern District of Florida for use by parties with cases pending in that District. Although the Middle District of Florida has not yet approved a similar checklist, we believe this ESI Checklist serves as a useful roadmap for the issues that we would need to discuss at the upcoming conference on January 10, 2018.

In order to expedite and facilitate our discussions regarding ESI matters, we ask that you designate and bring to the Rule 26(f) Conference an E-Discovery Liaison who will be knowledgeable about and responsible for the ESI of Foodonics International, Inc. and Mr. Jacques Klempf.[1] Our designated E-Discovery Liaison will be Chris Dix, who has attained the CEDS (Certified E-Discovery Specialist) designation, and who has experience in both state and Federal cases involving large volumes of ESI.

---

[1] Designation of an E-Discovery Liaison is discussed in Article II of the attached ESI Checklist.

On June 23, 2017, we wrote a letter to Jacques Klempf that included a draft complaint and document requests that we anticipated filing in the event that the disputes between the parties could not be resolved amicably. Attachments 2 and 3 to this letter are the relevant portions of the document requests that we previously sent to Mr. Klempf. You should assume that Foodonics and Jacques Klempf will be served with and required to respond to similar requests for production in connection with the pending action. In order to avoid unnecessary delays in the discovery process, please review and be prepared to discuss these discovery requests at the Rule 26(f) Conference along with the other items included in the attached ESI Checklist.

We look forward to discussing this case in greater detail with you on January 10, 2018. Please let us know if there are any issues that you or your designated E-Discovery Liaison wish to address prior to that time.

Very truly yours,

James H. Post

00982033

Checklist for Rule 26(f) Conference
Regarding Electronically Stored Information ("ESI")

In connection with the Federal Rule of Civil Procedure 26(f) conference and in preparing the Local Rule 16.1(b)(2) conference report, the Court encourages the use of the following checklist. The usefulness of any particular topic may depend on the nature and complexity of the matter.

## I.   Preservation

- The ranges of creation or receipt dates for any ESI to be preserved.
- The description of ESI from sources that are not reasonably accessible because of undue burden or cost and that will not be reviewed for responsiveness or produced, but that will be preserved in accordance with Federal Rule of Civil Procedure 26(b)(2)(B).
- The description of ESI from sources that: (a) the party believes could contain relevant information; but (b) has determined, under the proportionality factors, is not discoverable and should not be preserved.
- Whether to continue any interdiction of any document-destruction program, such as ongoing erasures of e-mails, voicemails, and other electronically recorded material.
- The number and names or general job titles or descriptions of custodians for whom ESI will be preserved (e.g., "HR head," "scientist," "marketing manager").
- The list of systems, if any, that contain ESI not associated with individual custodians and that will be preserved, such as enterprise databases.
- Any disputes related to scope or manner of preservation.

## II.   Liaison

- The identity of each party's e-discovery liaison, who will be knowledgeable about and responsible for each party's ESI.

## III.   Informal Discovery About Location and Types of Systems

- Identification of systems from which discovery will be prioritized (e.g., e-mail, finance, HR systems).
- Descriptions and location of systems in which potentially discoverable information is stored.
- How potentially discoverable information is stored.
- How discoverable information can be collected from systems and media in which it is stored.

## IV.   Proportionality and Costs

- The amount and nature of the claims being made by either party.
- The nature and scope of burdens associated with the proposed preservation and discovery of ESI.
- The likely benefit of the proposed discovery.

- Costs that the parties will share to reduce overall discovery expenses, such as the use of a common electronic-discovery vendor or a shared document repository, or other cost-saving measures.
- Limits on the scope of preservation or other cost-saving measures.
- Whether there is relevant ESI that will not be preserved in accordance with Federal Rule of Civil Procedure 26(b)(1), requiring discovery to be proportionate to the needs of the case.

## V.  Search

- The search method(s), including specific words or phrases or other methodology, that will be used to identify discoverable ESI and filter out ESI that is not subject to discovery.
- The quality-control method(s) the producing party will use to evaluate whether a production is missing relevant ESI or contains substantial amounts of irrelevant ESI.

## VI.  Phasing

- Whether it is appropriate to conduct discovery of ESI in phases.
- Sources of ESI most likely to contain discoverable information and that will be included in the first phases of Federal Rule of Civil Procedure 34 document discovery.
- Sources of ESI less likely to contain discoverable information from which discovery will be postponed or not reviewed.
- Custodians (by name or role) most likely to have discoverable information and whose ESI will be included in the first phases of document discovery.
- Custodians (by name or role) less likely to have discoverable information from whom discovery of ESI will be postponed or avoided.
- The time period during which discoverable information was most likely to have been created or received.

## VII.  Production

- The formats in which structured ESI (database, collaboration sites, etc.) will be produced.
- The formats in which unstructured ESI (e-mail, presentations, word processing, etc.) will be produced.
- The extent, if any, to which metadata will be produced and the fields of metadata to be produced.
- The production format(s) that ensure(s) that any inherent searchability of ESI is not degraded when produced.

## VIII.  Privilege

- How any production of privileged or work-product protected information will be handled.
- Whether the parties can agree on alternative ways to identify documents withheld on the grounds of privilege or work product to reduce the burdens of such identification.
- Whether the parties will enter into a Federal Rule of Evidence 502(d) stipulation and order that addresses inadvertent or agreed production.

9. In response to this request, You are required to furnish all information and documents in Your possession, custody or control, or in the possession, custody or control of Your past or present agents, attorneys, accountants, advisors, employees, or any other persons acting on Your behalf.

## Documents and ESI Requested

1. All Documents and ESI exchanged, sent or delivered between You and/or Foodonics, on the one hand, and Dolph Baker and/or Cal-Maine, on the other hand, including, but not limited to:

    a. All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker relating to the Cal-Maine Sale.

    b. All documents or ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker referring or relating to the Settlement and Redemption Agreement.

    c. All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker referring or relating to Laura Jean Klempf or the Trust.

    d. All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker relating to the value of Foodonics' Assets or Foodonics' Stock.

    e. All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker relating to the sale of Foodonics' Assets or Foodonics' Stock.

    f. All Documents and ESI constituting any Foodonics' financial information provided by or on behalf of You and/or Foodonics to Cal-Maine and/or any of its representatives, agents, officers or directors.

2. Any and all closing documents and other agreements relating to the Cal-Maine Sale.

3. All Documents and ESI in the possession of You or Foodonics relating to or containing any representations or estimates made by You or Foodonics to any person

or entity regarding the value of Foodonics' Stock or Foodonics' Assets from January 1, 2009 through the date of production.

4.      All Documents and ESI in the possession of You or Foodonics to any person or entity relating to the value of Foodonics' Stock from January 1, 2009 through the date of production.

5.      All Documents and ESI relating to any proposals, offers or discussions You or Foodonics had with any person or entity regarding any possible purchase or sale of Foodonics' Assets or Foodonics' Stock.

6.      All Documents and ESI that You or Foodonics sent to or received from Marc Klempf relating to Cal-Maine or Dolph Baker.

7.      All Documents and ESI that You or Foodonics sent to or received from Marc Klempf relating to the value of Foodonics' Assets or Foodonics' Stock.

8.      All Documents and ESI that You or Foodonics sent to or received from Marc Klempf relating to the sale of Foodonics' Assets or Foodonics' Stock.

9.      All Documents or ESI You or Foodonics sent to or received from Marc Klempf referring or relating to the Settlement and Redemption Agreement.

10.      All Documents or ESI You or Foodonics sent to or received from Marc Klempf referring or relating to Laura Jean Klempf from September 1, 2008 to date.

11.      All Documents and ESI You or Foodonics sent to or received from Marc Klempf referring or relating to the Cal-Maine Sale.

12.      All Documents and ESI that You or Foodonics sent to or received from Laura Jean Klempf or the Trust relating to Cal-Maine or Dolph Baker.

13. All Documents and ESI that You or Foodonics sent to or received from Laura Jean Klempf or the Trust relating to the value of Foodonics' Assets or Foodonics' Stock.

14. All Documents and ESI that You or Foodonics sent to or received from Laura Jean Klempf or the Trust relating to the sale of Foodonics' Assets or Foodonics' Stock.

15. All Documents or ESI that You or Foodonics sent to or received from Laura Jean Klempf or the Trust referring or relating to the Settlement and Redemption Agreement.

16. All Documents or ESI You or Foodonics sent to or received from Laura Jean Klempf or the Trust referring or relating to the Cal-Maine Sale.

17. All Documents or ESI You or Foodonics sent to Laura Jean Klempf from September 1, 2008 to date.

18. All Documents and ESI that You or Foodonics sent to or received from Ian Ratner relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

19. All Documents and ESI that You or Foodonics sent to or received from GlassRatner Advisory & Capital Group, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

20. All Documents and ESI that You or Foodonics sent to or received from Jess W. Wright relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

21. All Documents and ESI that You or Foodonics sent to or received from Sheldrick, McGehee & Kohler, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

22. All Documents and ESI that You or Foodonics sent to or received from John P. Stevens relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

23. All Documents and ESI that You or Foodonics sent to or received from Stevens, Powell & Company, P.A. relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

24. All Documents and ESI that You or Foodonics sent to or received from Robert Monsky relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

25. All Documents and ESI that You or Foodonics sent to or received from First Florida Capital Corporation relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

26. All Documents and ESI that You or Foodonics sent to or received from GrayRobinson, P.A. relating or referring to (i) the Settlement and Redemption Agreement, (ii) Laura Jean Klempf or the Trust, (iii) Cal-Maine or Dolph Baker (iv) the Cal-Maine Sale, (v) the value of Foodonics' Assets or Foodonics' Stock, or (vi) any potential sale of Foodonics' Assets or Foodonics' Stock.

27. All Documents and ESI constituting, referring or relating to any Financial Statement prepared by or for You and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like, during the period January 1, 2012 through January 1, 2017.

28. All Documents and ESI constituting, referring or relating to any personal Financial Statement prepared by or for Foodonics and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like, during the period January 1, 2012 through January 1, 2017.

29. All Documents and ESI constituting any Financial Statement prepared by or for You and/or Foodonics where such Financial Statement identifies, refers or relates to the value of Foodonics' Stock of Foodonics' Assets.

30. All Documents and ESI referring or relating to the transfer of any Foodonics' Assets to (i) BAM Residential Holdings, LLC; (ii) BAM Commercial Holdings, LLC; and/or (iii) BAM Investment Group, LLC.

31. All general ledgers for Foodonics for the years 2012 through the date of production.

32. All corporate minutes for Foodonics for the years 2012 through the date of production.

9.     In response to this request, You are required to furnish all information and documents in Your possession, custody or control, or in the possession, custody or control of Your past or present agents, attorneys, accountants, advisors, employees, or any other persons acting on Your behalf.

## Documents and ESI Requested

1.     All Documents and ESI exchanged, sent or delivered between You and/or

Jacques Klempf, on the one hand, and Dolph Baker and/or Cal-Maine, on the other hand,

including, but not limited to:

     a.     All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker relating to the Cal-Maine Sale.

     b.     All documents or ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker referring or relating to the Settlement and Redemption Agreement.

     c.     All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker referring or relating to Laura Jean Klempf or the Trust.

     d.     All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker relating to the value of Foodonics' Assets or Foodonics' Stock.

     e.     All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker relating to the sale of Foodonics' Assets or Foodonics' Stock.

     f.     All Documents and ESI constituting any Foodonics' financial information provided by or on behalf of You and/or Jacques Klempf to Cal-Maine and/or any of its representatives, agents, officers or directors.

2.     Any and all closing documents and other agreements relating to the Cal-

Maine Sale.

3. All Documents and ESI in the possession of You or Jacques Klempf relating to or containing any representations or estimates made by You or Jacques Klempf to any person or entity regarding the value of Foodonics' Stock or Foodonics' Assets from January 1, 2009 through the date of production.

4. All Documents and ESI in the possession of You or Jacques Klempf to any person or entity relating to the value of Foodonics' Stock from January 1, 2009 through the date of production.

5. All Documents and ESI relating to any proposals, offers or discussions You or Jacques Klempf had with any person or entity regarding any possible purchase or sale of Foodonics' Assets or Foodonics' Stock.

6. All Documents and ESI that You or Jacques Klempf sent to or received from Marc Klempf relating to Cal-Maine or Dolph Baker.

7. All Documents and ESI that You or Jacques Klempf sent to or received from Marc Klempf relating to the value of Foodonics' Assets or Foodonics' Stock.

8. All Documents and ESI that You or Jacques Klempf sent to or received from Marc Klempf relating to the sale of Foodonics' Assets or Foodonics' Stock.

9. All Documents or ESI You or Jacques Klempf sent to or received from Marc Klempf referring or relating to the Settlement and Redemption Agreement.

10. All Documents or ESI You or Jacques Klempf sent to or received from Marc Klempf referring or relating to Laura Jean Klempf from September 1, 2008 to date.

11. All Documents and ESI You or Jacques Klempf sent to or received from Marc Klempf referring or relating to the Cal-Maine Sale.

12. All Documents and ESI that You or Jacques Klempf sent to or received from Laura Jean Klempf or the Trust relating to Cal-Maine or Dolph Baker.

13. All Documents and ESI that You or Jacques Klempf sent to or received from Laura Jean Klempf or the Trust relating to the value of Foodonics' Assets or Foodonics' Stock.

14. All Documents and ESI that You or Jacques Klempf sent to or received from Laura Jean Klempf or the Trust relating to the sale of Foodonics' Assets or Foodonics' Stock.

15. All Documents or ESI that You or Jacques Klempf sent to or received from Laura Jean Klempf or the Trust referring or relating to the Settlement and Redemption Agreement.

16. All Documents or ESI You or Jacques Klempf sent to or received from Laura Jean Klempf or the Trust referring or relating to the Cal-Maine Sale.

17. All Documents or ESI You or Jacques Klempf sent to Laura Jean Klempf from September 1, 2008 to date.

18. All Documents and ESI that You or Jacques Klempf sent to or received from Ian Ratner relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

19. All Documents and ESI that You or Jacques Klempf sent to or received from GlassRatner Advisory & Capital Group, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

20. All Documents and ESI that You or Jacques Klempf sent to or received from Jess W. Wright relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

21. All Documents and ESI that You or Jacques Klempf sent to or received from Sheldrick, McGehee & Kohler, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

22. All Documents and ESI that You or Jacques Klempf sent to or received from John P. Stevens relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

23. All Documents and ESI that You or Jacques Klempf sent to or received from Stevens, Powell & Company, P.A. relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

24. All Documents and ESI that You or Jacques Klempf sent to or received from Robert Monsky relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

25. All Documents and ESI that You or Jacques Klempf sent to or received from First Florida Capital Corporation relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

26. All Documents and ESI that You or Jacques Klempf sent to or received from GrayRobinson, P.A. relating or referring to (i) the Settlement and Redemption

Agreement, (ii) Laura Jean Klempf or the Trust, (iii) Cal-Maine or Dolph Baker (iv) the Cal-Maine Sale, (v) the value of Foodonics' Assets or Foodonics' Stock, or (vi) any potential sale of Foodonics' Assets or Foodonics' Stock.

27.     All Documents and ESI constituting, referring or relating to any Financial Statement prepared by or for You and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like, during the period January 1, 2012 through January 1, 2017.

28.     All Documents and ESI constituting, referring or relating to any personal Financial Statement prepared by or for Jacques Klempf and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like, during the period January 1, 2012 through January 1, 2017.

29.     All Documents and ESI constituting any Financial Statement prepared by or for You and/or Jacques Klempf where such Financial Statement identifies, refers or relates to the value of Foodonics' Stock of Foodonics' Assets.

30.     All Documents and ESI referring or relating to the transfer of any Foodonics' Assets to (i) BAM Residential Holdings, LLC; (ii) BAM Commercial Holdings, LLC; and/or (iii) BAM Investment Group, LLC.

31.     All general ledgers for Foodonics for the years 2012 through the date of production.

32.     All corporate minutes for Foodonics for the years 2012 through the date of production.

**TAB 4**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC., )
a Florida corporation,
                                )
          Plaintiff,
                                )
v.                                             Case No. 3:17-cv-1054-J-32JRK
                                )
DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF         )
REVOCABLE TRUST, a Georgia trust,
                                )
          Defendant.
_____ )

## DEFENDANT'S REQUEST FOR PRODUCTION
## TO PLAINTIFF FOODONICS INTERNATIONAL, INC.

Defendant, Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Trust

dated April 1, 1992 (the "Laura Jean Klempf Trust" or the "Trust"), pursuant to Rule

34, Federal Rules of Civil Procedure, requests that plaintiff, Foodonics International,

Inc. produce for inspection and copying the documents and electronically stored

information described below at the law offices of Smith Hulsey & Busey, 225 Water

Street, Suite 1800, Jacksonville, Florida 32202, within 30 days of the date of service

of this request.

## Definitions

As used herein:

1.     "Cal-Maine" refers to Cal-Maine Foods, Inc., its officers, directors, affiliates, subsidiaries, employees, agents, attorneys, and representatives.

2.     The "Cal-Maine Sale" refers to the sale of the Assets of Foodonics to Cal-Maine on or about October 16, 2016.

3.     "Document(s)" shall have the same meaning as in Rule 34, Federal Rules of Civil Procedure and shall include, without limiting the generality of the foregoing, correspondence, contracts, agreements, leases, memoranda, notes, calendar and diary entries, memoranda or notes of conversations and of meetings, studies, reports, offers, inquiries, bulletins, summaries, newsletters, compilations, charts, graphs, photographs, film, microfilm, articles, announcements, books, books of account, ledgers, vouchers, canceled checks, invoices, bills, opinions, certificates, transcripts and all other tangible things upon which any handwriting, typing, printing, drawings, representation, magnetic or electrical impulses or other form of communication is recorded, now or at any time in your possession, custody or control, including but not limited to the originals (or any copy when originals are not available) and drafts of documents and all copies that are different in any way from the original.

4.     "Dolph Baker" refers to Adolphus B. Baker, Chairman, Chief Executive Officer and President of Cal-Maine Foods, Inc., his employees, agents, entities, affiliates, attorneys, and representatives.

5.     "ESI" means electronically stored information in all forms in which it is stored and communicated, and has the same meaning as in Rule 34, Federal Rules of Civil Procedure. ESI specifically includes emails, word processing files, electronic documents, spreadsheets, presentations, databases, images, movies, audio files, voicemails, text messages, and any other information stored on any computer, laptop, tablet, cell phone, smartphone, external hard drive USB drive, cd drive, dvd drive, backup drive, SharePoint site, file server, or in any remote or "cloud"-based system or location, including Dropbox. ESI specifically includes all of the following electronic file types: *.msg, *.pst, *.eml, *.jpg, *.tif, *.gif, *.mov, *.mpg, *.mpeg, *.wmv, *.avi, *.wav, *.mp3, *.doc, *.docx, *.wpd, *.xls, *.xlsx, *.ppt, *.pptx, *.mdb and *.pdf. ESI also includes social media data, including information stored by you or communicated by you through Facebook, Twitter, LinkedIn, Skype and blogs. ESI also includes business or personal email accounts such as Yahoo Mail, Gmail, Hotmail, Outlook.com, AOL mail and other web-based email services.

6. "Financial Information" shall refer to any record of the financial activities of a business, person, or other entity, including, but not limited to, income statements, balance sheets, statements of financial positions, profit and loss reports, statements of revenue and expense, cash flow statements, audited financial statements, and compilations of financial information.

7. "Foodonics' Assets" or "Assets" shall refer to any or all of the assets of Foodonics in existence between September 1, 2008 and December 31, 2016 including, but not limited to, (i) the egg production assets of Foodonics and its related entities and/or (ii) Foodonics' interest in American Egg Products, LLC and the Egg-Land's Best franchise with licensing rights for portions of certain markets in Alabama, Florida, and Georgia as well as Puerto Rico, Bahamas and Cuba.

8. "Foodonics Complaint" means the complaint filed by Foodonics in the referenced action on September 6, 2017, and any amendments thereto.

9. "Foodonics' Stock" or "Stock" refers to all Class A Voting Shares and Class B Non-Voting Shares of Foodonics in existence between September 1, 2008 and December 31, 2016.

10. "Jacques Klempf" refers to K. Jacques Klempf, his employees, agents, entities, affiliates, attorneys, and representatives.

11. "Laura Jean Klempf" refers to Laura Jean Klempf, her employees, agents, entities, affiliates, attorneys and representatives.

12. "Marc Klempf" refers to Marc E. Klempf, his employees, agents, entities, affiliates, attorneys, and representatives.

13. The "Redemption Sale" refers to the redemption transaction on the Settlement and Redemption Agreement which was closed on December 31, 2015.

14. "Relate to" and "relating to" mean to make a statement about, refer to, discuss, describe, reflect, contain, comprise, identify, or in any way to pertain to, in whole or in part, or otherwise to be used, considered, or reviewed in any way in connection with, the specified subject. Thus, documents or information that "relate to" a subject also include those which were specifically rejected and those which were not relied or acted upon.

15. The "Settlement and Redemption Agreement" refers to the Settlement and Redemption Agreement entered into as of December 21, 2005 by and among Foodonics; Jacques Klempf; Laura Jean Klempf, individually; Laura Jean Klempf, in her capacity as Trustee of, and on behalf of, the Laura Jean Klempf Revocable Trust dated April 1, 1992, as Amended (the "Seller"); Jacques Klempf and Laura Jean

Klempf as Trustees of the Family Trust under the Edward Klempf Revocable Trust Agreement dated April 1, 1992; Dina Klempf Srochi; and Marc Klempf.

16. "Trust" or "Defendant" refers to Dina Klempf Srochi, including but not limited to in her capacity as Trustee of the Laura Jean Klempf Trust dated April 1, 1992.

17. "You," "Your" or "Foodonics" refers to Plaintiff, Foodonics International, Inc. doing business as Dixie Egg Co., its officers, directors, affiliates, subsidiaries, employees, agents, attorneys, and representatives.

18. Unless otherwise specified, the requests contained in this request for production are limited to documents and ESI authored, created, received, revised or sent from September 1, 2008 until the date that this request for production was served.

**Instructions**

1.       These discovery requests are continuing in nature so as to require You to file supplementary responses if You obtain new or different information up to and including the time of trial of this action.

2.       Pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure, in the event that any document or ESI called for by a request is withheld by You on the basis of claim of privilege, please identify that document or ESI by stating: (a) any addressor or addressee, (b) matter, number of pages, and attachments or appendices, (c) all persons to whom the document or ESI was distributed, shown or explained, (d) its present custodian, and (e) the nature of the privilege asserted.

3.       If any responsive document or ESI is no longer in existence, cannot be located, or is not in Your possession, custody, or control, identify it, describe its subject matter, and describe its disposition, including, without limitation, identifying the person having knowledge of the disposition.

4.       In each of Your responses to these discovery requests, You are requested to provide not only such information as is in Your possession, but all information as is reasonably available.  In the event that You are able to provide only part of the information called for by any discovery request, please provide all of the information You are able to provide and state the reason for Your inability to provide the remainder.

5.       Produce ESI in native or near-native format, and do not convert ESI to an imaged format (e.g., *.TIF or *.PDF).  Native format requires production in the same format in which the ESI was customarily created, used and stored by you.  Near-native format requires production of native format ESI so that the content and metadata are electronically accessible.  If the native or near-native format is not compatible with a Microsoft Office Suite software program or application, you should provide a description of a software program or application that may be used to access and view the ESI.

6.       Documents should be produced in searchable *.PDF format with logical unitization and family relationships preserved.

7.       No potentially discoverable information contained on your computer systems should be deleted or modified and procedures that may affect such data should not be performed unless all potentially discoverable data has been copied and preserved.  The data to be preserved includes not just active data, but archival, backup and residual data.

8.     All drafts or versions of documents and ESI should be produced in addition to the final document or ESI.  All documents and ESI containing written notations, comments, edits or marginalia, or which are in any way different from the original should be produced in addition to the original.

9.     In response to this request, You are required to furnish all information and documents in Your possession, custody or control, or in the possession, custody or control of Your past or present agents, attorneys, accountants, advisors, employees, or any other persons acting on Your behalf.

## Documents and ESI Requested

1.     All Documents and ESI exchanged, sent or delivered between You and/or Jacques Klempf, on the one hand, and Dolph Baker and/or Cal-Maine, on the other hand, including, but not limited to:

a.    All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker relating to the Cal-Maine Sale.

b.    All documents or ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker referring or relating to the Settlement and Redemption Agreement.

c.    All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker referring or relating to Laura Jean Klempf or the Trust.

d.    All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker relating to the value of Foodonics' Assets or Foodonics' Stock.

e.    All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker relating to the sale of Foodonics' Assets or Foodonics' Stock.

f.    All Documents and ESI constituting any Foodonics' financial information provided by or on behalf of You and/or Jacques Klempf to Cal-Maine and/or any of its representatives, agents, officers or directors.

2.    Any and all closing documents and other agreements relating to the Cal-Maine Sale.

3.    All Documents and ESI in the possession of You or Jacques Klempf relating to or containing any representations or estimates made by You or Jacques Klempf to any person or entity regarding the value of Foodonics' Stock or Foodonics' Assets from September 1, 2008 through the date of production.

4.    All Documents and ESI in the possession of You or Jacques Klempf to any person or entity relating to the value of Foodonics' Stock from September 1, 2008 through the date of production.

5.    All Documents and ESI relating to any proposals, offers or discussions You or Jacques Klempf had with any person or entity regarding any possible purchase or sale of Foodonics' Assets or Foodonics' Stock.

6.    All Documents and ESI that You or Jacques Klempf sent to or received from Marc Klempf referring or relating to:

        a.    Cal-Maine or Dolph Baker;

        b.    the value of Foodonics' Assets or Foodonics' Stock;

        c.    the sale of Foodonics' Assets or Foodonics' Stock;

        d.    the Settlement and Redemption Agreement;

        e.    the Cal-Maine-Sale; or

        f.    Laura Jean Klempf.

7.    All Documents and ESI that You or Jacques Klempf sent to or received from Dina Klempf Srochi referring or relating to:

       a.     Cal-Maine or Dolph Baker;

       b.     the value of Foodonics' Assets or Foodonics' Stock;

       c.     the sale of Foodonics' Assets or Foodonics' Stock;

       d.     the Settlement and Redemption Agreement;

       e.     the Cal-Maine-Sale; or

       f.     Laura Jean Klempf.

8.     All Documents and ESI that You or Jacques Klempf sent to or received from Steven Brust referring or relating to:

       a.     Cal-Maine or Dolph Baker;

       b.     the value of Foodonics' Assets or Foodonics' Stock;

       c.     the sale of Foodonics' Assets or Foodonics' Stock;

       d.     the Settlement and Redemption Agreement;

       e.     the Cal-Maine-Sale; or

       f.     Laura Jean Klempf.

9.     All Documents and ESI that You or Jacques Klempf sent to or received from Dennis L. Blackburn referring or relating to:

       a.     Cal-Maine or Dolph Baker;

       b.     the value of Foodonics' Assets or Foodonics' Stock;

       c.     the sale of Foodonics' Assets or Foodonics' Stock;

       d.     the Settlement and Redemption Agreement;

       e.     the Cal-Maine-Sale; or

       f.     Laura Jean Klempf.

10.     All Documents or ESI You or Jacques Klempf sent to Laura Jean Klempf including, without limitation, all documents and ESI referring or relating to:

        a.      Cal-Maine or Dolph Baker;

        b.      the value of Foodonics' Assets or Foodonics' Stock;

        c.      the sale of Foodonics' Assets or Foodonics' Stock;

        d.      the Settlement and Redemption Agreement; or

        e.      the Cal-Maine-Sale.

11.     All Documents and ESI that You or Jacques Klempf sent to or received from Ian Ratner relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

12.     All Documents and ESI that You or Jacques Klempf sent to or received from GlassRatner Advisory & Capital Group, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

13.     All Documents and ESI that You or Jacques Klempf sent to or received from Jess W. Wright relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

14.     All Documents and ESI that You or Jacques Klempf sent to or received from Sheldrick, McGehee & Kohler, LLC relating or referring to (i) the value of

Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

15.    All Documents and ESI that You or Jacques Klempf sent to or received from John P. Stevens relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

16.    All Documents and ESI that You or Jacques Klempf sent to or received from Stevens, Powell & Company, P.A. relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

17.    All Documents and ESI that You or Jacques Klempf sent to or received from Robert Monsky relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

18.    All Documents and ESI that You or Jacques Klempf sent to or received from First Florida Capital Corporation relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

19.    All Documents and ESI that You or Jacques Klempf sent to or received from GrayRobinson, P.A. relating or referring to (i) the Settlement and Redemption Agreement, (ii) Laura Jean Klempf or the Trust, (iii) Cal-Maine or Dolph Baker (iv)

the Cal-Maine Sale, (v) the value of Foodonics' Assets or Foodonics' Stock, or (vi) any potential sale of Foodonics' Assets or Foodonics' Stock.

20. All Documents and ESI constituting, referring or relating to any Financial Information prepared by or for You and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like, during the period January 1, 2012 through January 1, 2017.

21. All Documents and ESI constituting, referring or relating to any personal Financial Statement prepared by or for Jacques Klempf and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like, during the period January 1, 2012 through January 1, 2017.

22. All Documents and ESI constituting any Financial Information prepared by or for You and/or Jacques Klempf where such Financial Information identifies, refers or relates to the value of Foodonics' Stock of Foodonics' Assets.

23. All Documents and ESI referring or relating to the transfer of any Foodonics' Assets to (i) BAM Residential Holdings, LLC; (ii) BAM Commercial Holdings, LLC; and/or (iii) BAM Investment Group, LLC.

24. All general ledgers for Foodonics for the years 2012 through the date of production.

25. All corporate minutes for Foodonics for the years 2012 through the date of production.

26. All corporate tax returns for Foodonics for the years 2006 through the date of production.

27.   All Documents and ESI which refer or relate to the distributions or dividends made to each shareholder for the years 2006 through the date of production including, without limitation, all cancelled checks, wire transfers, general ledgers or related correspondence.

28.   All Documents and ESI which refer or relate to estimated tax payments made by Foodonics on behalf of each shareholder for the years 2006 through the date of production including, without limitation, all cancelled checks, wire transfers, general ledgers or related correspondence.

29.   All documents and ESI relating or referring to the allegations in paragraph 14 of the Foodonics Complaint that "[f]ollowing the 2006 Transaction, Foodonics made estimated income tax payments to the Internal Revenue Service ("IRS") on behalf of Jacques and Mrs. Klempf in amounts equal to their anticipated annual income tax liabilities resulting from the inclusion in their personal income of their relative share of Foodonics' income" for the years 2006 through the date of production.

30.   All documents and ESI relating or referring to the allegations in paragraph 16 of the Foodonics Complaint that "Foodonics' income is calculated and reported to the IRS after the end of the relevant tax year. As a result, the estimated tax payments were paid to IRS on behalf of Jacques Klempf, before the end of each taxable year, based on estimates of Foodonics' eventual taxable income."

31.   All documents and ESI relating or referring to the allegations in paragraph 18 of the Foodonics Complaint that "for tax year 2015, Foodonics paid estimated taxes on behalf of its shareholders, Jacques and Mrs. Klempf. Because the precise amount of tax liability could not be known at the time of estimated payments, Foodonics

12

intentionally overpaid the estimated taxes for Jacques and Mrs. Klempf to the IRS to avoid imposition of penalties and interest. No additional distribution was authorized by the shareholders and in the event of a substantial overpayment of taxes, Foodonics was to be repaid the amount of such overpayment."

32. All documents and ESI relating or referring to the allegations in paragraph 23 of the Foodonics Complaint that "Foodonics' payment of estimated tax payments on behalf of Jacques and Mrs. Klempf resulted in an overpayment of taxes relative to Foodonics' subsequently-determined income. As a result, both Jacques and Mrs. Klempf received a refund from the IRS."

SMITH HULSEY & BUSEY

By:  /s/ *James H. Post*
    James H. Post
    Michael E. Demont
    R. Christopher Dix

Florida Bar Number 0175460
Florida Bar Number 0364088
Florida Bar Number 0036988
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com
mdemont@smithhulsey.com
cdix@smithhulsey.com

Attorneys for Dina Klempf Srochi, as
    Trustee of the Laura Jean Klempf
    Revocable Trust

## Certificate of Service

I certify that on January 12, 2018, a copy of this document has been furnished by email to:

> S. Grier Wells, Esq.
> GrayRobinson, P.A.
> 50 North Laura Street, Suite 1100
> Jacksonville, Florida 32202
> grier.wells@gray-robinson.com
> elizabeth.irvine@gray-robinson.com

*/s/ James H. Post*
Attorney

982153.4

**TAB 5**

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | |
|---|---|
| FOODONICS INTERNATIONAL, INC., | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 3:17-cv-1054-J-32JRK |
| DINA KLEMPF SROCHI, as Trustee of the LAURA | ) |
| JEAN KLEMPF REVOCABLE TRUST, a Georgia tr | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
JACQUES KLEMPF

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Exhibit A

You may comply with this Subpoena by providing legible copies of the items to be produced to the Attorney whose name appears on this Subpoena on or before the scheduled date of production. You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation. You may mail or deliver the copies to the Attorney whose name appears on this Subpoena and thereby <u>eliminate</u> your appearance at the time and place specified below.

| Place: Smith Hulsey & Busey | Date and Time: |
|---|---|
| 225 Water Street, Suite 1800 | |
| Jacksonville, FL 32202 | February 12, 2018 at 10:00 a.m. |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 1/12/2018

| CLERK OF COURT | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust , who issues or requests this subpoena, are:

James H. Post, Esq., Smith Hulsey & Busey, 225 Water St., Ste 1800, Jacksonville, FL 32202, jpost@smithhulsey.com, (904) 359-7700

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 3:17-cv-1054-J-32JRK

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

◻ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

◻ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____ _____

Server's signature

Printed name and title

_____

Server's address

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

# EXHIBIT A

## Definitions

As used herein:

1.     "Cal-Maine" refers to Cal-Maine Foods, Inc., its officers, directors, affiliates, subsidiaries, employees, agents, attorneys, and representatives.

2.     The "Cal-Maine Sale" refers to the sale of the Assets of Foodonics to Cal-Maine on or about October 16, 2016.

3.     "Document(s)" shall have the same meaning as in Rule 34, Federal Rules of Civil Procedure and shall include, without limiting the generality of the foregoing, correspondence, contracts, agreements, leases, memoranda, notes, calendar and diary entries, memoranda or notes of conversations and of meetings, studies, reports, offers, inquiries, bulletins, summaries, newsletters, compilations, charts, graphs, photographs, film, microfilm, articles, announcements, books, books of account, ledgers, vouchers, canceled checks, invoices, bills, opinions, certificates, transcripts and all other tangible things upon which any handwriting, typing, printing, drawings, representation, magnetic or electrical impulses or other form of communication is recorded, now or at any time in your possession, custody or control, including but not limited to the originals (or any copy when originals are not available) and drafts of documents and all copies that are different in any way from the original.

4.     "Dolph Baker" refers to Adolphus B. Baker, Chairman, Chief Executive Officer and President of Cal-Maine Foods, Inc., his employees, agents, entities, affiliates, attorneys, and representatives.

5.     "ESI" means electronically stored information in all forms in which it is stored and communicated, and has the same meaning as in Rule 34, Federal Rules of Civil Procedure.  ESI specifically includes emails, word processing files, electronic documents, spreadsheets, presentations, databases, images, movies, audio files, voicemails, text messages, and any other information stored on any computer, laptop, tablet, cell phone, smartphone, external hard drive USB drive, cd drive, dvd drive, backup drive, SharePoint site, file server, or in any remote or "cloud"-based system or location, including Dropbox.  ESI specifically includes all of the following electronic file types: *.msg, *.pst, *.eml, *.jpg, *.tif, *.gif, *.mov, *.mpg, *.mpeg, *.wmv, *.avi, *.wav, *.mp3, *.doc, *.docx, *.wpd, *.xls, *.xlsx, *.ppt, *.pptx, *.mdb and *.pdf.  ESI also includes social media data, including information stored by you or communicated by you through Facebook, Twitter, LinkedIn, Skype and blogs.  ESI also includes business or personal email accounts such as Yahoo Mail, Gmail, Hotmail, Outlook.com, AOL mail and other web-based email services.

6. "Financial Information" shall refer to any record of the financial activities of a business, person, or other entity, including, but not limited to, income statements, balance sheets, statements of financial positions, profit and loss reports, statements of revenue and expense, cash flow statements, audited financial statements, and compilations of financial information.

7. "Foodonics" refers to Plaintiff, Foodonics International, Inc. doing business as Dixie Egg Co., its officers, directors, affiliates, subsidiaries, employees, agents, attorneys, and representatives.

8. "Foodonics' Assets" or "Assets" shall refer to any or all of the assets of Foodonics in existence between September 1, 2008 and December 31, 2016 including, but not limited to, (i) the egg production assets of Foodonics and its related entities and/or (ii) Foodonics' interest in American Egg Products, LLC and the Egg-Land's Best franchise with licensing rights for portions of certain markets in Alabama, Florida, and Georgia as well as Puerto Rico, Bahamas and Cuba.

9. "Foodonics Complaint" means the complaint filed by Foodonics in the referenced action on September 6, 2017, and any amendments thereto.

10. "Foodonics' Stock" or "Stock" refers to all Class A Voting Shares and Class B Non-Voting Shares of Foodonics in existence between September 1, 2008 and December 31, 2016.

11. "Laura Jean Klempf" refers to Laura Jean Klempf, her employees, agents, entities, affiliates, attorneys and representatives.

12. "Marc Klempf" refers to Marc E. Klempf, his employees, agents, entities, affiliates, attorneys, and representatives.

13. The "Redemption Sale" refers to the redemption transaction on the Settlement and Redemption Agreement which was closed on December 31, 2015.

14. "Relate to" and "relating to" mean to make a statement about, refer to, discuss, describe, reflect, contain, comprise, identify, or in any way to pertain to, in whole or in part, or otherwise to be used, considered, or reviewed in any way in connection with, the specified subject. Thus, documents or information that "relate to" a subject also include those which were specifically rejected and those which were not relied or acted upon.

15. The "Settlement and Redemption Agreement" refers to the Settlement and Redemption Agreement entered into as of December 21, 2005 by and among Foodonics; Jacques Klempf; Laura Jean Klempf, individually; Laura Jean Klempf, in her capacity as Trustee of, and on behalf of, the Laura Jean Klempf Revocable Trust

2

dated April 1, 1992, as Amended (the "Seller"); Jacques Klempf and Laura Jean Klempf as Trustees of the Family Trust under the Edward Klempf Revocable Trust Agreement dated April 1, 1992; Dina Klempf Srochi; and Marc Klempf.

16.     "Trust" or "Defendant" refers to Dina Klempf Srochi, including but not limited to in her capacity as Trustee of the Laura Jean Klempf Trust dated April 1, 1992.

17.     "You" or "Your" refers to K. Jacques Klempf, his employees, agents, entities, affiliates, attorneys, and representatives.

18.     Unless otherwise specified, the requests contained in this request for production are limited to documents and ESI authored, created, received, revised or sent from September 1, 2008 until the date that this request for production was served.

## Instructions

1.     These discovery requests are continuing in nature so as to require You to file supplementary responses if You obtain new or different information up to and including the time of trial of this action.

2.     Pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure, in the event that any document or ESI called for by a request is withheld by You on the basis of claim of privilege, please identify that document or ESI by stating: (a) any addressor or addressee, (b) matter, number of pages, and attachments or appendices, (c) all persons to whom the document or ESI was distributed, shown or explained, (d) its present custodian, and (e) the nature of the privilege asserted.

3.     If any responsive document or ESI is no longer in existence, cannot be located, or is not in Your possession, custody, or control, identify it, describe its subject matter, and describe its disposition, including, without limitation, identifying the person having knowledge of the disposition.

4.     In each of Your responses to these discovery requests, You are requested to provide not only such information as is in Your possession, but all information as is reasonably available.   In the event that You are able to provide only part of the information called for by any discovery request, please provide all of the information You are able to provide and state the reason for Your inability to provide the remainder.

5.     Produce ESI in native or near-native format, and do not convert ESI to an imaged format (e.g., *.TIF or *.PDF). Native format requires production in the same format in which the ESI was customarily created, used and stored by you.  Near-native format requires production of native format ESI so that the content and metadata are

electronically accessible. If the native or near-native format is not compatible with a Microsoft Office Suite software program or application, you should provide a description of a software program or application that may be used to access and view the ESI.

6.     Documents should be produced in searchable *.PDF format with logical unitization and family relationships preserved.

7.     No potentially discoverable information contained on your computer systems should be deleted or modified and procedures that may affect such data should not be performed unless all potentially discoverable data has been copied and preserved. The data to be preserved includes not just active data, but archival, backup and residual data.

8.     All drafts or versions of documents and ESI should be produced in addition to the final document or ESI. All documents and ESI containing written notations, comments, edits or marginalia, or which are in any way different from the original should be produced in addition to the original.

9.     In response to this request, You are required to furnish all information and documents in Your possession, custody or control, or in the possession, custody or control of Your past or present agents, attorneys, accountants, advisors, employees, or any other persons acting on Your behalf.

### Documents and ESI Requested

1.     All Documents and ESI exchanged, sent or delivered between You

and/or Foodonics, on the one hand, and Dolph Baker and/or Cal-Maine, on the other

hand, including, but not limited to:

> a.     All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker relating to the Cal-Maine Sale.
>
> b.     All documents or ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker referring or relating to the Settlement and Redemption Agreement.
>
> c.     All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker referring or relating to Laura Jean Klempf or the Trust.

4

d. All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker relating to the value of Foodonics' Assets or Foodonics' Stock.

e. All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker relating to the sale of Foodonics' Assets or Foodonics' Stock.

f. All Documents and ESI constituting any Foodonics' financial information provided by or on behalf of You and/or Foodonics to Cal-Maine and/or any of its representatives, agents, officers or directors.

2. Any and all closing documents and other agreements relating to the Cal-Maine Sale.

3. All Documents and ESI in the possession of You or Foodonics relating to or containing any representations or estimates made by You or Foodonics to any person or entity regarding the value of Foodonics' Stock or Foodonics' Assets from September 1, 2008 through the date of production.

4. All Documents and ESI in the possession of You or Foodonics to any person or entity relating to the value of Foodonics' Stock from September 1, 2008 through the date of production.

5. All Documents and ESI relating to any proposals, offers or discussions You or Foodonics had with any person or entity regarding any possible purchase or sale of Foodonics' Assets or Foodonics' Stock.

6. All Documents and ESI that You or Foodonics sent to or received from Marc Klempf referring or relating to:

a. Cal-Maine or Dolph Baker;

b. the value of Foodonics' Assets or Foodonics' Stock;

5

        c.     the sale of Foodonics' Assets or Foodonics' Stock;

        d.     the Settlement and Redemption Agreement;

        e.     the Cal-Maine-Sale; or

        f.     Laura Jean Klempf.

7.     All Documents and ESI that You or Foodonics sent to or received from Dina Klempf Srochi referring or relating to:

        a.     Cal-Maine or Dolph Baker;

        b.     the value of Foodonics' Assets or Foodonics' Stock;

        c.     the sale of Foodonics' Assets or Foodonics' Stock;

        d.     the Settlement and Redemption Agreement;

        e.     the Cal-Maine-Sale; or

        f.     Laura Jean Klempf.

8.     All Documents and ESI that You or Foodonics sent to or received from Steven Brust referring or relating to:

        a.     Cal-Maine or Dolph Baker;

        b.     the value of Foodonics' Assets or Foodonics' Stock;

        c.     the sale of Foodonics' Assets or Foodonics' Stock;

        d.     the Settlement and Redemption Agreement;

        e.     the Cal-Maine-Sale; or

        f.     Laura Jean Klempf.

9.     All Documents and ESI that You or Foodonics sent to or received from Dennis L. Blackburn referring or relating to:

        a.      Cal-Maine or Dolph Baker;

        b.      the value of Foodonics' Assets or Foodonics' Stock;

        c.      the sale of Foodonics' Assets or Foodonics' Stock;

        d.      the Settlement and Redemption Agreement;

        e.      the Cal-Maine-Sale; or

        f.      Laura Jean Klempf.

10.    All Documents or ESI You or Foodonics sent to Laura Jean Klempf including, without limitation, all documents and ESI referring or relating to:

        a.      Cal-Maine or Dolph Baker;

        b.      the value of Foodonics' Assets or Foodonics' Stock;

        c.      the sale of Foodonics' Assets or Foodonics' Stock;

        d.      the Settlement and Redemption Agreement; or

        e.      the Cal-Maine-Sale.

11.    All Documents and ESI that You or Foodonics sent to or received from Ian Ratner relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

12.    All Documents and ESI that You or Foodonics sent to or received from GlassRatner Advisory & Capital Group, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

13. All Documents and ESI that You or Foodonics sent to or received from Jess W. Wright relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

14. All Documents and ESI that You or Foodonics sent to or received from Sheldrick, McGehee & Kohler, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

15. All Documents and ESI that You or Foodonics sent to or received from John P. Stevens relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

16. All Documents and ESI that You or Foodonics sent to or received from Stevens, Powell & Company, P.A. relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

17. All Documents and ESI that You or Foodonics sent to or received from Robert Monsky relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

18. All Documents and ESI that You or Foodonics sent to or received from First Florida Capital Corporation relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

19.     All Documents and ESI that You or Foodonics sent to or received from GrayRobinson, P.A. relating or referring to (i) the Settlement and Redemption Agreement, (ii) Laura Jean Klempf or the Trust, (iii) Cal-Maine or Dolph Baker (iv) the Cal-Maine Sale, (v) the value of Foodonics' Assets or Foodonics' Stock, or (vi) any potential sale of Foodonics' Assets or Foodonics' Stock.

20.     All Documents and ESI constituting, referring or relating to any Financial Information prepared by or for You and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like, during the period January 1, 2012 through January 1, 2017.

21.     All Documents and ESI constituting, referring or relating to any personal Financial Information prepared by or for Foodonics and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like, during the period January 1, 2012 through January 1, 2017.

22.     All Documents and ESI constituting any Financial Information prepared by or for You and/or Foodonics where such Financial Information identifies, refers or relates to the value of Foodonics' Stock of Foodonics' Assets.

23.     All Documents and ESI referring or relating to the transfer of any Foodonics' Assets to (i) BAM Residential Holdings, LLC; (ii) BAM Commercial Holdings, LLC; and/or (iii) BAM Investment Group, LLC.

24.     All general ledgers for Foodonics for the years 2012 through the date of production.

25.     All corporate minutes for Foodonics for the years 2012 through the date of production.

26.     All corporate tax returns for Foodonics for the years 2006 through the date of production.

27.     All Documents and ESI which refer or relate to the distributions or dividends made to each shareholder for the years 2006 through the date of production including, without limitation, all cancelled checks, wire transfers, general ledgers or related correspondence.

28.     All Documents and ESI which refer or relate to estimated tax payments made by Foodonics on behalf of each shareholder for the years 2006 through the date of production including, without limitation, all cancelled checks, wire transfers, general ledgers or related correspondence.

29.     All documents and ESI relating or referring to the allegations in paragraph 14 of the Foodonics Complaint that "[f]ollowing the 2006 Transaction, Foodonics made estimated income tax payments to the Internal Revenue Service ("IRS") on behalf of Jacques and Mrs. Klempf in amounts equal to their anticipated annual income tax liabilities resulting from the inclusion in their personal income of their relative share of Foodonics' income" for the years 2006 through the date of production.

30.     All documents and ESI relating or referring to the allegations in paragraph 16 of the Foodonics Complaint that "Foodonics' income is calculated and reported to the IRS after the end of the relevant tax year. As a result, the estimated tax payments were paid to IRS on behalf of Jacques Klempf, before the end of each taxable year, based on estimates of Foodonics' eventual taxable income."

31.     All documents and ESI relating or referring to the allegations in paragraph 18 of the Foodonics Complaint that "for tax year 2015, Foodonics paid estimated taxes on behalf of its shareholders, Jacques and Mrs. Klempf.  Because the precise amount of tax liability could not be known at the time of estimated payments, Foodonics intentionally overpaid the estimated taxes for Jacques and Mrs. Klempf to the IRS to avoid imposition of penalties and interest.  No additional distribution was authorized by the shareholders and in the event of a substantial overpayment of taxes, Foodonics was to be repaid the amount of such overpayment."

32.     All documents and ESI relating or referring to the allegations in paragraph 23 of the Foodonics Complaint that "Foodonics' payment of estimated tax payments on behalf of Jacques and Mrs. Klempf resulted in an overpayment of taxes relative to Foodonics' subsequently-determined income.  As a result, both Jacques and Mrs. Klempf received a refund from the IRS."

982886

11

**TAB 6**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC.,
a Florida corporation,

       Plaintiff,                   Case No.: 3:17-cv-1054-J-32JRK

v.

DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Georgia
trust,

       Defendant,

_____/

## OBJECTIONS TO DEFENDANT'S
## SUBPOENA OF NONPARTY JACQUES KLEMPF

Nonparty JACQUES KLEMPF ("**Mr. Klempf**") submits these objections ("**Objections**")
to Defendant's ("**Defendant**") Subpoena of Jacques Klempf to Produce Documents, Information,
or Objects or to Permit Inspection of Premises in a Civil Action (the "**Subpoena**") served herein
on January 19, 2018.

## PRELIMINARY STATEMENT

1.     Mr. Klempf was President and Chief Executive Officer of Foodonics for all
relevant time periods in this litigation, and remains in that role currently. However, the
Subpoena was directed to Mr. Klempf in his individual capacity.

2.     As of the date of these Objections, Plaintiff has filed a Complaint in this Court
claiming damages related to a 2015 tax refund and declaratory relief based on a draft complaint
presented on behalf of Defendant to Plaintiff alleging it committed fraud in redeeming shares of
Foodonics stock from the Laura Jean Klempf Revocable Trust prior to a sale of Plaintiff's assets

to Cal-Maine Foods, Inc. ("Defendant's Threatened Complaint"). Plaintiff's Complaint seeks a declaratory judgment concerning the allegations in Defendant's Threatened Complaint.

3.      The Settlement and Redemption Agreement entered into as of December 21, 2015 (the "Settlement and Redemption Agreement") and referred to in the Complaint contains representations that "the Foodonics Parties have not received any written offers to effect a Realization Event [e.g. a sale of the assets or stock of Foodonics] within the twelve (12) months prior to the date of this Agreement."

4.      The majority of the documents requested in the Subpoena are related to the Defendant's Threatened Complaint which is at present only the subject of Plaintiff's claim for declaratory relief and is not yet a claim for affirmative relief.

5.      Defendant's Threatened Complaint does not contain any factual basis or evidence for its allegations of fraud. There is therefore no basis for Defendant's Subpoena except for a fishing expedition.

6.      The Definitions in the Subpoena include multiple parties within the specification of one party, individual, or entity – thereby necessitating responses on behalf of parties, individuals, or entities which are not the sole party subject to the Subpoena, Mr. Klempf.

7.      By objecting to this Subpoena, Mr. Klempf does not waive or intend to waive: (a) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose, of any documents or information produced in response to the Subpoena; (b) the right to object on any ground to the use of the documents or information produced in response to the Subpoena at any hearing, trial, or other point during the litigation; (c) the right to object on any ground at any time to a demand for further response to the Subpoena;

or (d) the right at any time to revise, correct, add to, supplement, or clarify any of the responses to the Subpoena consistent with the applicable rules.

8.      The information and objections asserted herein are for use in this litigation and for no other purposes or litigation.

9.      No objection made herein, or lack thereof, is an admission by Mr. Klempf as to the existence or non-existence of any information.

10.     Mr. Klempf will produce Documents and ESI, subject to these Objections, to the extent they are in his possession.

## GENERAL OBJECTIONS

1.      Mr. Klempf expressly incorporates all of the General Objections below into the specific objections to each of the enumerated Subpoena requests. Any specific objections provided below are made in addition to these General Objections, and the failure to reiterate a General Objection below does not constitute a waiver of that or any other objection.

2.      The Subpoena is overbroad, unduly burdensome, and not proportional to the needs or issues of the case in that its enumerated requests are not relevant to any claim or defense presented in the Complaint. The Subpoena and each enumerated request is not sufficiently limited in scope or subject matter, with the only limiting factor being certain time periods which themselves are excessive, unreasonable, overbroad, unduly burdensome, and not proportional to the needs or issues of the case.

3.      The Requests are overbroad, unduly burdensome, and not proportional to the needs or issues of the case in that they seek information regarding confidential, trade secret, commercially sensitive, and/or other proprietary or competitively sensitive information concerning Mr. Klempf's business activities or operations, the disclosure or dissemination of which could cause Mr. Klempf harm or prejudice, and otherwise fail to provide a mechanism for

documents containing commercially sensitive and confidential information to be designated as confidential pursuant to a protective order.

4.    The Subpoena seeks information not proportional to the needs or issues of the case considering (a) the marginal importance of the materials to the claims and defenses in this litigation and (b) the probable substantial cost to identify responsive materials balanced against the amount in controversy.

5.    The Subpoena is overbroad, unduly burdensome, and not proportional to the needs or issues of the case.  The Subpoena seeks documents from Mr. Klempf in his individual capacity which may contain proprietary information of Foodonics or other non-parties.

6.    Mr. Klempf objects to each request in the Subpoena to the extent that it purports to seek information protected by the attorney–client privilege or any other applicable privileges and protections.

7.    Mr. Klempf objects to each request in the Subpoena to the extent that Defendant has made the same request to the named Plaintiff in this litigation.  It is more appropriate for such requests to be made to Foodonics.

8.    Mr. Klempf objects to each request in the Subpoena to the extent that it seeks information that Mr. Klempf licensed or obtained from third parties and/or cannot disclose without prior approval of the third parties.

9.    Mr. Klempf objects to Defendant's "Definitions" and "Instructions" in the Subpoena and to the Subpoena requests themselves to the extent they expand upon, alter, or are inconsistent with Mr. Klempf's obligations under the Federal Rules of Civil Procedure or the Local Rules of this Court.

10.    Mr. Klempf objects to each Definition and/or request in the Subpoena as overbroad, unduly burdensome, and interposed for an improper purpose to the extent the definition and/or request purports to require Mr. Klempf to produce documents or information held or controlled by parties other than Mr. Klempf.

11.    Mr. Klempf objects to the definition of "documents" as set forth in Definition No. 3 to the extent it attempts to expand upon or is inconsistent with his obligations under the Federal Rules of Civil Procedure and the Local Rules of this District.

12.    Mr. Klempf objects to the definition of "ESI" as set forth in Definition No. 5 as overbroad and unduly burdensome in that it seeks to compel Mr. Klempf to engage in the collection, processing and review of a virtually unlimited scope of ESI without narrowing the terms, subject matter, or dates of the ESI – such failure to limit the scope does not comply with Fed. R. Civ. P. 45 and the Middle District of Florida's Handbook on Civil Discovery Section VIII(C), and attempts to unnecessarily add substantially to the burden and expense imposed on Mr. Klempf.

13.    Mr. Klempf objects to the definition of "Financial Information" as set forth in Definition No. 6 as overbroad, vague, and unduly burdensome.

14.    Mr. Klempf objects to the definitions of "You" and "Your" as set forth in Definition No. 17 as vague, overly broad, unduly burdensome, incorrect and improper. Mr. Klempf will interpret the terms "You" and "Your" to mean only Jacques Klempf, unless otherwise explicitly stated by Mr. Klempf.

15.    Mr. Klempf objects to the time period described in Definition No. 18, particularly the start date, as overbroad, unduly burdensome, and not relevant to the claims or defenses in this case in that it seeks to establish a relevant time period of September 1, 2008 to January 19, 2018.

The claim for the 2015 tax refund concerns calendar year 2015. The sale of assets from Foodonics to Cal-Maine referenced in Defendant's Threatened Complaint occurred on October 16, 2016. The purchase of stock from the Laura Jean Klempf Revocable Trust by Foodonics occurred on December 31, 2015 with a "look back" of one year. Documents prior to December 2014 are not reasonably calculated to lead to the discovery of admissible evidence nor relevant to any party's claim or defense, and would require Mr. Klempf, a nonparty, to undertake an unnecessary and expensive burden which exceeds the scope of permissible discovery to a nonparty. Even a request for preservation of documents created prior to December 1, 2014 would be objectionable for the same reasons provided hereinabove.

16.     Mr. Klempf objects to Instruction No. 1 regarding the discovery requests being "continuing in nature" to the extent that he is a non-party to which such obligation is not required.

17.     Mr. Klempf objects to Instruction No. 2 regarding identification of a privileged document or ESI to the extent that it attempts to expand upon or is inconsistent with his obligations under the Federal Rules of Civil Procedure and the Local Rules of this District.

18.     Mr. Klempf objects to Instruction No. 3 to the extent that it attempts to expand upon, or is inconsistent with, his obligations under the Federal Rules of Civil Procedure and the Local Rules of this District.

19.     Mr. Klempf objects to Instruction No. 4 to the extent that it attempts to expand upon, or is inconsistent with, his obligations under the Federal Rules of Civil Procedure and the Local Rules of this District.

## DOCUMENT REQUESTS

Subject to its foregoing General Objections, and without waiving and expressly preserving all such objections, which are hereby incorporated into the response to each Request,

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce Documents and ESI in his possession, if any, for the specified topics delivered or received from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale.

**Request for Production No. 4:** All Documents and ESI in the possession of You or Foodonics to any person or entity relating to the value of Foodonics Stock from September 1, 2008 through the date of production.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce Documents and ESI in his possession, if any, for the specified topics delivered or received from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale.

**Request for Production No. 5:** All Documents and ESI relating to any proposals, offers or discussions You or Foodonics had with any person or entity regarding any possible purchase or sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce Documents and ESI in his possession, if any, for the specified topics delivered or received from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale.

**Request for Production No. 6:** All Documents and ESI that you or Foodonics sent to or received from Marc Klempf referring or relating to:

a.  Cal-Maine or Dolph Baker;

b.  the value of Foodonics' Assets or Foodonics' Stock;

c.  the sale of Foodonics' Assets or Foodonics' Stock;

d.  the Settlement and Redemption Agreement;

e.  the Cal-Maine Sale; or

f.  Laura Jean Klempf.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce Documents and ESI in his possession, if any, delivered to or received from Marc Klempf from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale.

**Request for Production No. 7:** All Documents and ESI that You or Foodonics sent to or received from Dina Klempf Srochi referring or relating to:

Mr. Klempf responds to the Requests as follows:

**Request For Production No. 1:** All Documents and ESI that You and/or Foodonics, on the one hand, and Dolph Baker and/or Cal-Maine, on the other hand, including, but not limited to:

a. All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker relating to the Cal-Maine Sale.

b. All documents or ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker refereeing or related to the Settlement and Redemption Agreement.

c. All Documents and ESI that You or Foodonics sent or received from Cal-Maine or Dolph Baker referring or relating to Laura Jean Klempf or the Trust.

d. All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker relating to the value of Foodonics' Assets or Foodonics' Stock.

e. All Documents and ESI that You or Foodonics sent to or received from Cal-Maine or Dolph Baker relating to the sale of Foodonics' Assets or Foodonics' Stock.

f. All Documents and ESI constituting any Foodonics' financial information provided by or on behalf of You and/or Foodonics to Cal-Maine and/or any of its representatives, agents, officers or directors.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce Documents and ESI in his possession, if any, for the specified topics delivered to or received from Dolph Baker from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement, if any, and the Cal-Maine Sale.

**Request for Production No. 2:** Any and all closing documents and other agreements relating to the Cal-Maine sale.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce closing documents and other agreements in his possession, if any, relating to the Cal-Maine sale, though Mr. Klempf believes such documents and agreements are under the possession and control of Foodonics.

**Request for Production No. 3:** All Documents and ESI in the possession of You or Foodonics relating to or containing any representations or estimates made by You or Foodonics to any person or entity regarding the value of Foodonics' Stock or Foodonics' Assets from September 1, 2008 through date of production.

a. Cal-Maine or Dolph Baker;

b. the value of Foodonics' Assets or Foodonics' Stock;

c. the sale of Foodonics' Assets or Foodonics' Stock;

d. the Settlement and Redemption Agreement;

e. the Cal-Maine Sale; or

f. Laura Jean Klempf.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce Documents and ESI in his possession, if any, delivered to or received from Dina Klempf Srochi from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale.

**Request for Production No. 8:** All Documents and ESI that You or Foodonics sent to or received from Steven Brust referring or relating to:

a. Cal-Maine or Dolph Baker;

b. the value of Foodonics' Assets or Foodonics' Stock;

c. the sale of Foodonics' Assets or Foodonics' Stock;

d. the Settlement and Redemption Agreement;

e. the Cal-Maine Sale; or

f. Laura Jean Klempf.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce Documents and ESI in his possession, if any, delivered to or received from Steven Brust from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale.

**Request for Production No. 9:** All Documents and ESI that You or Foodonics sent to or received from Dennis L. Blackburn referring or relating to:

a. Cal-Maine or Dolph Baker;

b. the value of Foodonics' Assets or Foodonics' Stock;

c. the sale of Foodonics' Assets or Foodonics' Stock;

d.     the Settlement and Redemption Agreement;

e.     the Cal-Maine Sale; or

f.     Laura Jean Klempf.

**Response:**    Subject to the foregoing General Objections, Mr. Klempf will produce Documents and ESI in his possession, if any, delivered to or received from Dennis L. Blackburn from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale.

**Request for Production No. 10:**    All Documents or ESI You or Foodonics sent to Laura Jean Klempf including, without limitation, all Documents and ESI referring or relating to:

a.     Cal-Maine or Dolph Baker;

b.     the value of Foodonics' Assets or Foodonics' Stock;

c.     the sale of Foodonics' Assets or Foodonics' Stock;

d.     the Settlement and Redemption Agreement;

e.     the Cal-Maine Sale; or

f.     Laura Jean Klempf.

**Response:**    Subject to the foregoing General Objections, Mr. Klempf will produce Documents and ESI in his possession, if any, delivered to or received from Laura Jean Klempf from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale.

**Request for Production No. 11:**    All Documents and ESI that You or Foodonics sent to or received from Ian Ratner relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:**    Subject to the foregoing General Objections, Mr. Klempf will produce the requested Documents and ESI delivered to and received from Ian Ratner in his possession, if any, related to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018.

**Request for Production No. 12:**    All Documents and ESI that You or Foodonics sent to or received from GlassRatner Advisory & Capital Group, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce the requested Documents and ESI delivered to and received from GlassRatner Advisory & Capital Group, LLC in his possession, if any, related to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018.

**Request for Production No. 13:** All Documents and ESI that You or Foodonics sent to or received from Jess W. Wright relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce the requested Documents and ESI delivered to and received from Jess W. Wright in his possession, if any, related to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018.

**Request for Production No. 14:** All Documents and ESI that You or Foodonics sent to or received from Sheldrick, McGehee & Kohler, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce the requested Documents and ESI delivered to and received from Sheldrick, McGehee & Kohler, LLC in his possession, if any, related to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018.

**Request for Production No. 15:** All Documents and ESI that You or Foodonics sent to or received from John P. Stevens relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce the requested Documents and ESI delivered to and received from John P. Stevens in his possession, if any, related to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018.

**Request for Production No. 16:** All Documents and ESI the You or Foodonics sent to or received from Stevens, Powell & Company, P.A. relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce the requested Documents and ESI delivered to and received from Stevens, Powell & Company, P.A. in his possession, if any, related to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018.

**Request for Production No. 17:** All Documents and ESI that You or Foodonics sent to or received from Robert Monsky relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce the requested Documents and ESI delivered to and received from Robert Monsky in his possession, if any, related to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018.

**Request for Production No. 18:** All Documents and ESI that You or Foodonics sent to or received from First Florida Capital Corporation relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce the requested Documents and ESI delivered to and received from First Florida Capital Corporation in his possession, if any, related to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018.

**Request for Production No. 19:** All Documents and ESI that You or Foodonics sent to or received from GrayRobinson, P.A. relating or referring to (i) the Settlement and Redemption Agreement, (ii) Laura Jean Klempf or the Trust, (iii) Cal-Maine or Dolph Baker, (iv) the Cal-Main Sale, (v) the value of Foodonics' Assets or Foodonics' Stock and/or (vi) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Pursuant to the foregoing General Objections, specifically as to the attorney-client privilege and proprietary and confidentiality privileges, Mr. Klempf objects to this request.

**Request for Production No. 20:** All Documents and ESI constituting, referring or relating to any Financial Information prepared by You and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like during the period January 1, 2012 through January 1, 2017.

**Response:** Subject to the foregoing General Objections, specifically as they relate to the vague, overbroad, and ambiguous definition of Financial Information, including use of the phrase "or the like", Mr. Klempf will produce the requested Documents and ESI in his possession, if any, related to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018.

**Request for Production No. 21:** All Documents and ESI constituting, referring or relating to any personal Financial Information prepared by or for Foodonics and delivered to, financial institutions, potential purchasers of Foodonics or the like during the period January 1, 2012 through January 1, 2017.

**Response:** In addition to the foregoing General Objections, specifically as they relate to the vague, overbroad, and ambiguous definition of Financial Information, Mr. Klempf further objects to the vague and ambiguous phrases "personal Financial Information" and "or the like"

found in this Request. Additionally, Mr. Klempf objects to this request as it seeks documents controlled and possessed by Foodonics.

**Request for Production No. 22:** All Documents and ESI constituting any Financial Information prepared by or for You and/or Foodonics where such Financial Information identifies, refers or relates to the value of Foodonics' Stock and Foodonics' Assets.

**Response:** Subject to the foregoing General Objections, Mr. Klempf will produce the requested Documents and ESI in his possession related to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018.

**Request for Production No. 23:** All Documents and ESI referring or relating to the transfer of any Foodonics' Assets to (i) BAM Residential Holdings, LLC; (ii) BAM Commercial Holdings, LLC; and/or (III) BAM Investment Group, LLC.

**Response:** In addition to the foregoing General Objections, Mr. Klempf objects to this request as it seeks Documents and ESI controlled and possessed by Foodonics.

**Request for Production No. 24:** All general ledgers for Foodonics for the years 2012 through the date of production.

**Response:** In addition to the foregoing General Objections, Mr. Klempf objects to this request as it seeks documents controlled and possessed by Foodonics.

**Request for Production No. 25:** All corporate minutes for Foodonics for the years 2012 through the date of production.

**Response:** In addition to the foregoing General Objections, Mr. Klempf objects to this request as it seeks documents controlled and possessed by Foodonics.

**Request for Production No. 26:** All corporate tax returns for Foodonics for the years 2006 through the date of production.

**Response:** In addition to the foregoing General Objections, Mr. Klempf objects to this request as it seeks documents controlled and possessed by Foodonics.

**Request for Production No. 27:** All Documents and ESI which refer or relate to the distributions or dividends made to each shareholder for the years 2006 through the date of production including, without limitation, all cancelled checks, wire transfers, general ledgers or related correspondence.

**Response:** In addition to the foregoing General Objections, Mr. Klempf objects to this request as it seeks Documents and ESI controlled and possessed by Foodonics.

**Request for Production No. 28:** All Documents and ESI which refer or relate to estimated tax payments made by Foodonics on behalf of each shareholder for the years 2006

through the date of production including, without limitation, all cancelled checks, wire transfers, general ledgers or related correspondence.

**Response:** In addition to the foregoing General Objections, Mr. Klempf objects to this request as it seeks Documents and ESI controlled and possessed by Foodonics.

**Request for Production No. 29:** All Documents and ESI relating or referring to the allegations in paragraph 14 of Foodonics Complaint that "[f]ollowing the 2006 Transaction, Foodonics made estimated income tax payments to the Internal Revenue Service ("IRS") on behalf of Jacques and Mrs. Klempf in amount equal to their anticipated annual income tax liabilities resulting from the inclusion in their personal income of their relative share of Foodonics' income" for the years 2006 through the date of production.

**Response:** In addition to the foregoing General Objections, Mr. Klempf objects to this request to the extent it seeks documents controlled and possessed by Foodonics. Furthermore, this request's specified time period is overbroad and unduly burdensome, and seeks Documents and ESI protected by the attorney-client privilege. Subject to the foregoing, Mr. Klempf will produce Documents and ESI in his possession related to the 2015 tax refund at issue.

**Request for Production No. 30:** All Documents and ESI relating or referring to the allegations in paragraph 16 of the Foodonics Complaint that "Foodonics' income is calculated and reported to the IRS after the end of the relevant tax year. As a result, the estimated tax payments were paid to the IRS on behalf of Jacques Klempf, before the end of each taxable year, based on estimates of Foodonics' eventual taxable income."

**Response:** In addition to the foregoing General Objections, Mr. Klempf objects to this request to the extent it seeks Documents and ESI controlled and possessed by Foodonics. Furthermore, this Request seeks Documents and ESI protected by the attorney-client privilege. Subject to the foregoing, Mr. Klempf will produce Documents and ESI in his possession related to the 2015 tax refund at issue.

**Request for Production No. 31:** All Documents and ESI relating or referring to the allegations in paragraph 18 of the Foodonics Complaint that "for tax year 2015, Foodonics paid estimated taxes on behalf of its shareholders, Jacques and Mrs. Klempf. Because the precise amount of tax liability could not be known at the time of estimated payments, Foodonics intentionally overpaid the estimated taxes for Jacques and Mrs. Klempf to the IRS to avoid imposition of penalties and interest. No additional distribution was authorized by the shareholders and in the event of a substantial overpayment of taxes, Foodonics was to be repaid the amount of such overpayment."

**Response:** In addition to the foregoing General Objections, Mr. Klempf objects to this request to the extent it seeks Documents and ESI controlled and possessed by Foodonics. Further, Mr. Klempf objects to the request to the extent it seeks Documents and ESI protected by the attorney-client privilege. Subject to the foregoing, Mr. Klempf will produce Documents and ESI in his possession related to the 2015 tax refund at issue.

**Request for Production No. 32:**     All Documents and ESI relating or referring to the allegations in paragraph 23 of the Foodonics Complaint that "Foodonics' payment of estimated tax payments on behalf of Jacques and Mrs. Klempf resulted in an overpayment of taxes relative to Foodonics' subsequently-determined income.  As a result, both Jacques and Mrs. Klempf received a refund from the IRS."

**Response:**     In addition to the foregoing General Objections, Mr. Klempf objects to this request to the extent it seeks Documents and ESI controlled and possessed by Foodonics. Further, Mr. Klempf objects to the request to the extent it seeks Documents and ESI protected by the attorney-client privilege.  Subject to the foregoing, Mr. Klempf will produce Documents and ESI in his possession related to the 2015 tax refund at issue.

GRAYROBINSON, P.A.

/s/S. Grier Wells
S. GRIER WELLS, ESQ.
Florida Bar No.: 203238
grier.wells@gray-robinson.com
elizabeth.irvine@gray-robinson.com
50 North Laura Street, Suite 1100
Jacksonville, Florida 32202
Phone: (904)-598-9929
Fax: (904)-598-9109

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed and served electronically on this 6th day of February, 2018 through the Florida E-Portal on James H. Post, Esq., counsel for Plaintiff at jpost@smithhulsey.com.

/s/ S. Grier Wells, Esq.
Attorney

**TAB 7**

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC.,
a Florida corporation,

        Plaintiff,                Case No.: 3:17-cv-1054-J-32JRK

v.

DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Georgia
trust,

        Defendant,

_____/

## OBJECTIONS TO DEFENDANT'S
## REQUEST FOR PRODUCTION TO PLAINTIFF

        Plaintiff FOODONICS INTERNATIONAL, INC. ("**Foodonics**") submits these objections

("**Objections**") to Defendant's ("**Defendant**") Request for production to Plaintiff Foodonics

International, Inc. (the "**Request**") served herein on January 12, 2018.

### PRELIMINARY STATEMENT

        1.      The majority of requests in this REQUEST are addressed both to Foodonics and to

non-party Jacques Klempf ("**Mr. Klempf**"). On January 19, 2018, Mr. Klempf was served a

Subpoena with nearly identical definitions, instructions, and requests; Mr. Klempf delivered his

response to the Subpoena prior to Foodonics delivering this response to this REQUEST FOR

PRODUCTION. Requests for Documents and ESI held or controlled by Mr. Klempf are addressed

in the Subpoena. Mr. Klempf was President and Chief Executive Officer of Foodonics for all

relevant time periods in this litigation, and remains in that role currently. However, this REQUEST



was directed to Foodonics, and thus the following Objections and other assertions are made only by Foodonics, in its corporate capacity.

2.      As of the date of these Objections, Plaintiff has filed a Complaint in this Court claiming damages related to a 2015 tax refund and declaratory relief based on a draft complaint presented on behalf of Defendant to Plaintiff alleging it committed fraud in redeeming shares of Foodonics stock from the Laura Jean Klempf Revocable Trust prior to a sale of Plaintiff's assets to Cal-Maine Foods, Inc. ("**Defendant's Threatened Complaint**"). Plaintiff's Complaint seeks a declaratory judgment concerning the allegations in Defendant's Threatened Complaint. To date, no defenses have been asserted to Plaintiff's Complaint.

3.      The Settlement and Redemption Agreement entered into as of December 21, 2015 (the "**Settlement and Redemption Agreement**") and referred to in the Complaint contains representations that "the Foodonics Parties have not received any written offers to effect a Realization Event [e.g. a sale of the assets or stock of Foodonics] within the twelve (12) months prior to the date of this Agreement."

4.      The majority of the documents requested in the REQUEST are related to the Defendant's Threatened Complaint which is at present only the subject of Plaintiff's claim for declaratory relief and is not yet a claim for affirmative relief. As noted, no defenses to Plaintiff's claims have been asserted.

5.      Defendant's Threatened Complaint does not contain any factual basis or evidence for its allegations of fraud. There is therefore no basis for Defendant's REQUEST except for a fishing expedition.

6. The Definitions in the REQUEST include multiple parties within the specification of one party, individual, or entity – thereby necessitating responses on behalf of parties, individuals, or entities which are not the sole party subject to the REQUEST, Foodonics.

7. By objecting to this REQUEST, Foodonics does not waive or intend to waive: (a) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose, of any documents or information produced in response to the REQUEST; (b) the right to object on any ground to the use of the documents or information produced in response to the REQUEST at any hearing, trial, or other point during the litigation; (c) the right to object on any ground at any time to a demand for further response to the REQUEST; or (d) the right at any time to revise, correct, add to, supplement, or clarify any of the responses to the REQUEST consistent with the applicable rules.

8. The information and objections asserted herein are for use in this litigation and for no other purposes or litigation.

9. No objection made herein, or lack thereof, is an admission by Foodonics as to the existence or non-existence of any information.

10. Foodonics will produce Documents and ESI, subject to these Objections, to the extent they are in its possession or control.

11. Pursuant to the sale of assets of Foodonics to Cal-Maine on or about October 16, 2016 (the "**Cal-Maine Sale**"), Foodonics delivered possession and control of an AS 400 Computer (the "**Server**") to Cal-Maine. The vast majority of documents produced or received by Foodonics that may be relevant to this litigation and REQUEST are stored on the Server (such documents are referred to herein as "**Server Files**"). Foodonics has been and continues to diligently attempt to obtain possession or control of the Server Files. As of the date of these Objections, Foodonics does

not have possession or control of the Server Files.  Therefore, all responses to this REQUEST are subject to and contingent on Foodonics obtaining possession or access to the Server Files.

## GENERAL OBJECTIONS

1.     Foodonics expressly incorporates all of the General Objections below into the specific objections to each of the enumerated requests.  Any specific objections provided below are made in addition to these General Objections, and the failure to reiterate a General Objection below does not constitute a waiver of that or any other objection.

2.     The REQUEST is overbroad, unduly burdensome, and not proportional to the needs of the case in that its enumerated requests are not relevant to any claim or defense presented in the Complaint.  The REQUEST and each enumerated request is not sufficiently limited in scope or subject matter, with the only limiting factor being certain time periods which themselves are excessive, unreasonable, overbroad, unduly burdensome, and not proportional to the needs or issues of the case.

3.     The requests are overbroad, unduly burdensome, and not proportional to the needs of the case in that they seek information regarding confidential, trade secret, commercially sensitive, and/or other proprietary or competitively sensitive information concerning Foodonics' business activities or operations, the disclosure or dissemination of which could cause Foodonics harm or prejudice, and otherwise fail to provide a mechanism for documents containing commercially sensitive and confidential information to be designated as confidential pursuant to a protective order.

4.     The REQUEST seeks information not proportional to the needs of the case considering (a) the marginal importance of the materials to the claims and defenses in this litigation and (b) the probable substantial cost to identify responsive materials balanced against the amount in controversy.

5.      The REQUEST is overbroad, unduly burdensome, and not proportional to the needs of the case, in that the REQUEST seeks documents from Foodonics in its corporate capacity which may contain proprietary or otherwise confidential information of Mr. Klempf or other non-parties.

6.      Foodonics objects to each request in the REQUEST to the extent that it purports to seek information protected by the attorney–client privilege or any other applicable privileges and protections.

7.      Foodonics objects to each request in the REQUEST to the extent that Defendant has made the same request to Mr. Klempf in this litigation. Requests which are more appropriately directed to Mr. Klempf were objected and responded to in the response to the Subpoena; requests which are more appropriately directed to Foodonics are objected and responded to in this response to the REQUEST.

8.      Foodonics objects to each request in the REQUEST to the extent that it seeks information that Foodonics licensed or obtained from third parties and/or cannot disclose without prior approval of the third parties.

9.      Foodonics objects to Defendant's "Definitions" and "Instructions" in the REQUEST and to the requests themselves to the extent they expand upon, alter, or are inconsistent with Foodonics' obligations under the Federal Rules of Civil Procedure or the Local Rules of this Court.

10.     Foodonics objects to each Definition and/or request in the REQUEST as overbroad, unduly burdensome, and interposed for an improper purpose to the extent the definition and/or request purports to require Foodonics to produce documents or information that is held or controlled by individuals or entities other than Foodonics.

11.     Foodonics objects to the definition of "Documents" as set forth in Definition No. 3 to the extent it attempts to expand upon or is inconsistent with its obligations under the Federal Rules of Civil Procedure and the Local Rules of this District.

12.     Foodonics objects to the definition of "ESI" as set forth in Definition No. 5 as overbroad and unduly burdensome in that it seeks to compel Foodonics to engage in the collection, processing and review of a virtually unlimited scope of ESI without narrowing the terms, subject matter, or dates of the ESI – such failure to limit the scope does not comply with Fed. R. Civ. P. 45 and the Middle District of Florida's Handbook on Civil Discovery Section VIII(C), and attempts to unnecessarily add substantially to the burden and expense imposed on Foodonics.

13.     Foodonics objects to the definition of "Financial Information" as set forth in Definition No. 6 as overbroad, vague, and unduly burdensome.

14.     Foodonics objects to the definitions of "You" and "Your" as set forth in Definition No. 17 as vague, overly broad, unduly burdensome, incorrect and improper.  Foodonics will interpret the terms "You" and "Your" to mean only Foodonics, unless otherwise explicitly stated by Foodonics.

15.     Foodonics objects to the time period described in Definition No. 18, particularly the start date, as overbroad, unduly burdensome, and not relevant to the claims or defenses in this case in that it seeks to establish a relevant time period of September 1, 2008 to January 19, 2018. The claim for the 2015 tax refund concerns calendar year 2015.  The sale of assets from Foodonics to Cal-Maine referenced in Defendant's Threatened Complaint occurred on October 16, 2016.  The purchase of stock from the Laura Jean Klempf Revocable Trust by Foodonics occurred on December 31, 2015 with a "look back" of one year.  Documents prior to December 2014 are not reasonably calculated to lead to the discovery of admissible evidence nor relevant to any party's

claim or defense, and would require Foodonics to undertake an unnecessary and expensive burden which exceeds the scope of permissible discovery. Even a request for preservation of documents created prior to December 1, 2014 would be objectionable for the same reasons provided hereinabove.

16.     Foodonics objects to Instruction No. 2 regarding identification of a privileged document or ESI to the extent that it attempts to expand upon or is inconsistent with its obligations under the Federal Rules of Civil Procedure and the Local Rules of this District.

17.     Foodonics objects to Instruction No. 3 to the extent that it attempts to expand upon, or is inconsistent with, its obligations under the Federal Rules of Civil Procedure and the Local Rules of this District.

18.     Foodonics objects to Instruction No. 4 to the extent that it attempts to expand upon, or is inconsistent with, its obligations under the Federal Rules of Civil Procedure and the Local Rules of this District.

## DOCUMENT REQUESTS

Subject to its foregoing General Objections, and without waiving and expressly preserving all such objections, which are hereby incorporated into the response to each request, Foodonics responds to the requests as follows:

**Request for production No. 1:**     All Documents and ESI that You and/or Jacques Klempf, on the one hand, and Dolph Baker and/or Cal-Maine, on the other hand, including, but not limited to:

a.     All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker relating to the Cal-Maine Sale.

b.     All documents or ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker refereeing or related to the Settlement and Redemption Agreement.

c.     All Documents and ESI that You or Jacques Klempf sent or received from Cal-Maine or Dolph Baker referring or relating to Laura Jean Klempf or the Trust.

d.    All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker relating to the value of Foodonics' Assets or Foodonics' Stock.

e.    All Documents and ESI that You or Jacques Klempf sent to or received from Cal-Maine or Dolph Baker relating to the sale of Foodonics' Assets or Foodonics' Stock.

f.    All Documents and ESI constituting any Foodonics' financial information provided by or on behalf of You and/or Jacques Klempf to Cal-Maine and/or any of its representatives, agents, officers or directors.

**Response:**    Subject to the foregoing General Objections, specifically General Objection Number 5, Foodonics will produce Documents and ESI in its possession, if any, for the specified topics delivered to or received from Dolph Baker from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement, if any, and the Cal-Maine Sale. Foodonics objects to delivering any Documents or ESI that it may have, if any, to the extent that such Documents or ESI held in its corporate capacity may contain proprietary or otherwise confidential information of Mr. Klempf or other non-parties.

**Request for production No. 2:**    Any and all closing documents and other agreements relating to the Cal-Maine sale.

**Response:**    Subject to the foregoing General Objections, specifically General Objection Number 5, Foodonics will produce closing documents and other agreements in its possession, if any, relating to the Cal-Maine sale. Foodonics objects to delivering any Documents or ESI that it may have, if any, to the extent that such Documents or ESI held in its corporate capacity may contain proprietary or otherwise confidential information of Mr. Klempf or other non-parties. Foodonics also objects to this request to the extent it is duplicative to request number 1.

**Request for production No. 3:**    All Documents and ESI in the possession of You or Jacques Klempf relating to or containing any representations or estimates made by You or Jacques Klempf to any person or entity regarding the value of Foodonics' Stock or Foodonics' Assets from September 1, 2008 through date of production.

**Response:**    Subject to the foregoing General Objections, Foodonics will produce Documents and ESI in its possession, if any, for the specified topics delivered or received from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 and 2.

**Request for production No. 4:**    All Documents and ESI in the possession of You or Jacques Klempf to any person or entity relating to the value of Foodonics Stock from September 1, 2008 through the date of production.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI in its possession, if any, for the specified topics delivered or received from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale. Foodonics also objects to this request to the extent it is duplicative to request numbers 1, 2, and 3.

**Request for production No. 5:** All Documents and ESI relating to any proposals, offers or discussions You or Jacques Klempf had with any person or entity regarding any possible purchase or sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI in its possession, if any, for the specified topics delivered or received from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale. Foodonics also objects to this request to the extent it is duplicative to request numbers 1, 2, 3, and 4.

**Request for production No. 6:** All Documents and ESI that you or Jacques Klempf sent to or received from Marc Klempf referring or relating to:

    a.      Cal-Maine or Dolph Baker;

    b.      the value of Foodonics' Assets or Foodonics' Stock;

    c.      the sale of Foodonics' Assets or Foodonics' Stock;

    d.      the Settlement and Redemption Agreement;

    e.      the Cal-Maine Sale; or

    f.      Laura Jean Klempf.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI in its possession, if any, delivered to or received from Marc Klempf from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 7:** All Documents and ESI that You or Jacques Klempf sent to or received from Dina Klempf Srochi referring or relating to:

    a.      Cal-Maine or Dolph Baker;

    b.      the value of Foodonics' Assets or Foodonics' Stock;

    c.      the sale of Foodonics' Assets or Foodonics' Stock;

    d.      the Settlement and Redemption Agreement;

    e.      the Cal-Maine Sale; or

    f.      Laura Jean Klempf.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI in its possession, if any, delivered to or received from Dina Klempf Srochi from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 8:** All Documents and ESI that You or Jacques Klempf sent to or received from Steven Brust referring or relating to:

    a.      Cal-Maine or Dolph Baker;

    b.      the value of Foodonics' Assets or Foodonics' Stock;

    c.      the sale of Foodonics' Assets or Foodonics' Stock;

    d.      the Settlement and Redemption Agreement;

    e.      the Cal-Maine Sale; or

    f.      Laura Jean Klempf.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI in its possession, if any, delivered to or received from Steven Brust from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 9:** All Documents and ESI that You or Jacques Klempf sent to or received from Dennis L. Blackburn referring or relating to:

    a.      Cal-Maine or Dolph Baker;

    b.      the value of Foodonics' Assets or Foodonics' Stock;

    c.      the sale of Foodonics' Assets or Foodonics' Stock;

    d.      the Settlement and Redemption Agreement;

    e.      the Cal-Maine Sale; or

    f.      Laura Jean Klempf.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI in its possession, if any, delivered to or received from Dennis L. Blackburn from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 10:** All Documents or ESI You or Jacques Klempf sent to Laura Jean Klempf including, without limitation, all Documents and ESI referring or relating to:

    a.      Cal-Maine or Dolph Baker;

    b.      the value of Foodonics' Assets or Foodonics' Stock;

    c.      the sale of Foodonics' Assets or Foodonics' Stock;

    d.      the Settlement and Redemption Agreement;

    e.      the Cal-Maine Sale; or

    f.      Laura Jean Klempf.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI in its possession, if any, delivered to or received from Laura Jean Klempf from December 1, 2014 through January 19, 2018 related to the Settlement and Redemption Agreement and the Cal-Maine Sale. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 11:** All Documents and ESI that You or Jacques Klempf sent to or received from Ian Ratner relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI delivered to and received from Ian Ratner in its possession, if any, related or referring to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 12:** All Documents and ESI that You or Jacques Klempf sent to or received from GlassRatner Advisory & Capital Group, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI delivered to and received from GlassRatner Advisory & Capital Group, LLC in its possession, if any, related or referring to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 13:** All Documents and ESI that You or Jacques Klempf sent to or received from Jess W. Wright relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI delivered to and received from Jess W. Wright in its possession, if any, related or referring to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 14:** All Documents and ESI that You or Jacques Klempf sent to or received from Sheldrick, McGehee & Kohler, LLC relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI delivered to and received from Sheldrick, McGehee & Kohler, LLC in its possession, if any, related or referring to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 15:** All Documents and ESI that You or Jacques Klempf sent to or received from John P. Stevens relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI delivered to and received from John P. Stevens in its possession, if any, related or referring to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 16:** All Documents and ESI the You or Jacques Klempf sent to or received from Stevens, Powell & Company, P.A. relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI delivered to and received from Stevens, Powell & Company, P.A. in its possession, if any, related or referring to the Settlement and Redemption Agreement and the Cal-

Maine Sale between December 1, 2014 and January 19, 2018. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 17:** All Documents and ESI that You or Jacques Klempf sent to or received from Robert Monsky relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI delivered to and received from Robert Monsky in its possession, if any, related or referring to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 18:** All Documents and ESI that You or Jacques Klempf sent to or received from First Florida Capital Corporation relating or referring to (i) the value of Foodonics' Assets or Foodonics' Stock and/or (ii) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Subject to the foregoing General Objections, Foodonics will produce Documents and ESI delivered to and received from First Florida Capital Corporation in its possession, if any, related or referring to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 19:** All Documents and ESI that You or Jacques Klempf sent to or received from GrayRobinson, P.A. relating or referring to (i) the Settlement and Redemption Agreement, (ii) Laura Jean Klempf or the Trust, (iii) Cal-Maine or Dolph Baker, (iv) the Cal-Main Sale, (v) the value of Foodonics' Assets or Foodonics' Stock and/or (vi) any potential sale of Foodonics' Assets or Foodonics' Stock.

**Response:** Pursuant to the foregoing General Objections, specifically as to the attorney-client privilege and proprietary and confidentiality privileges, Foodonics objects to this request. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 20:** All Documents and ESI constituting, referring or relating to any Financial Information prepared by You and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like during the period January 1, 2012 through January 1, 2017.

**Response:** Subject to the foregoing General Objections, specifically as they relate to the vague, overbroad, and ambiguous definition of Financial Information, including use of the phrase "or the like", Foodonics will produce Documents and ESI in its possession, if any, related or referring to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018.

13

**Request for production No. 21:**     All Documents and ESI constituting, referring or relating to any personal Financial Information prepared by or for Jacques Klempf and delivered to any third party including, but not limited to, financial institutions, potential purchasers of Foodonics or the like during the period January 1, 2012 through January 1, 2017.

**Response:**     In addition to the foregoing General Objections, specifically as they relate to the vague, overbroad, and ambiguous definition of Financial Information, Foodonics further objects to the vague and ambiguous phrases "personal Financial Information" and "or the like" found in this request. Additionally, Foodonics objects to this request to the extent that it seeks "personal Financial Information" of non-party Jacques Klempf.

**Request for production No. 22:**     All Documents and ESI constituting any Financial Information prepared by or for You and/or Jacques Klempf where such Financial Information identifies, refers or relates to the value of Foodonics' Stock and Foodonics' Assets.

**Response:**     Subject to the foregoing General Objections, Foodonics will produce Documents and ESI in its possession related or referring to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018. Additionally, Foodonics objects to this request to the extent that it seeks "personal Financial Information" of non-party Jacques Klempf. Foodonics also objects to this request to the extent it is duplicative to request numbers 1 through 5.

**Request for production No. 23:**     All Documents and ESI referring or relating to the transfer of any Foodonics' Assets to (i) BAM Residential Holdings, LLC; (ii) BAM Commercial Holdings, LLC; and/or (III) BAM Investment Group, LLC.

**Response:**     Subject to the foregoing General Objections, Foodonics will produce Documents and ESI in its possession, if any, related or referring to the Settlement and Redemption Agreement and the Cal-Maine Sale between December 1, 2014 and January 19, 2018.

**Request for production No. 24:**     All general ledgers for Foodonics for the years 2012 through the date of production.

**Response:**     Subject to the foregoing General Objections and Foodonics' objection to the vague and ambiguous phrase "general ledgers", Foodonics will produce general ledgers in its possession, if any, produced between December 1, 2014 and January 19, 2018.

**Request for production No. 25:**     All corporate minutes for Foodonics for the years 2012 through the date of production.

**Response:**     Subject to the foregoing General Objections and Foodonics' objection to the vague and ambiguous phrase "corporate minutes", Foodonics will produce corporate minutes in its possession, if any, produced between December 1, 2014 and January 19, 2018.

**Request for production No. 26:**     All corporate tax returns for Foodonics for the years 2006 through the date of production.

**Response:** Subject to the foregoing General Objections, Foodonics will produce its corporate tax returns in its possession for the years ending December 1, 2014 and subsequently.

**Request for production No. 27:** All Documents and ESI which refer or relate to the distributions or dividends made to each shareholder for the years 2006 through the date of production including, without limitation, all cancelled checks, wire transfers, general ledgers or related correspondence.

**Response:** Subject to the foregoing General Objections, Foodonics will produce the requested Documents and ESI in its possession, if any, produced between December 1, 2014 and January 19, 2018.

**Request for production No. 28:** All Documents and ESI which refer or relate to estimated tax payments made by Foodonics on behalf of each shareholder for the years 2006 through the date of production including, without limitation, all cancelled checks, wire transfers, general ledgers or related correspondence.

**Response:** Subject to the foregoing General Objections, Foodonics will produce the requested Documents and ESI in its possession, if any, produced between December 1, 2014 and January 19, 2018.

**Request for production No. 29:** All Documents and ESI relating or referring to the allegations in paragraph 14 of Foodonics Complaint that "[f]ollowing the 2006 Transaction, Foodonics made estimated income tax payments to the Internal Revenue Service ("IRS") on behalf of Jacques and Mrs. Klempf in amount equal to their anticipated annual income tax liabilities resulting from the inclusion in their personal income of their relative share of Foodonics' income" for the years 2006 through the date of production.

**Response:** In addition to the foregoing General Objections, Foodonics objects to this request's specified time period as it is overbroad and unduly burdensome, and objects to this request to the extent that it seeks Documents and ESI protected by the attorney-client privilege. Subject to the foregoing, Foodonics will produce non-privileged Documents and ESI in its possession, if any, related to the 2015 tax refund at issue.

**Request for production No. 30:** All Documents and ESI relating or referring to the allegations in paragraph 16 of the Foodonics Complaint that "Foodonics' income is calculated and reported to the IRS after the end of the relevant tax year. As a result, the estimated tax payments were paid to the IRS on behalf of Jacques Klempf, before the end of each taxable year, based on estimates of Foodonics' eventual taxable income."

**Response:** In addition to the foregoing General Objections, Foodonics objects to this request to the extent that it seeks Deocuments and ESI protected by the attorney-client privilege. Subject to the foregoing, Foodonics will produce non-privileged Documents and ESI in its possession related to the 2015 tax refund at issue.

**Request for production No. 31:**    All Documents and ESI relating or referring to the allegations in paragraph 18 of the Foodonics Complaint that "for tax year 2015, Foodonics paid estimated taxes on behalf of its shareholders, Jacques and Mrs. Klempf. Because the precise amount of tax liability could not be known at the time of estimated payments, Foodonics intentionally overpaid the estimated taxes for Jacques and Mrs. Klempf to the IRS to avoid imposition of penalties and interest. No additional distribution was authorized by the shareholders and in the event of a substantial overpayment of taxes, Foodonics was to be repaid the amount of such overpayment."

**Response:**    In addition to the foregoing General Objections, Foodonics objects to this request to the extent that it seeks Deocuments and ESI protected by the attorney-client privilege. Subject to the foregoing, Foodonics will produce non-privileged Documents and ESI in its possession related to the 2015 tax refund at issue.

**Request for production No. 32:**    All Documents and ESI relating or referring to the allegations in paragraph 23 of the Foodonics Complaint that "Foodonics' payment of estimated tax payments on behalf of Jacques and Mrs. Klempf resulted in an overpayment of taxes relative to Foodonics' subsequently-determined income. As a result, both Jacques and Mrs. Klempf received a refund from the IRS."

**Response:**    In addition to the foregoing General Objections, Foodonics objects to this request to the extent that it seeks Deocuments and ESI protected by the attorney-client privilege. Subject to the foregoing, Foodonics will produce non-privileged Documents and ESI in its possession related to the 2015 tax refund at issue.

GRAYROBINSON, P.A.

/s/S. Grier Wells
S. GRIER WELLS, ESQ.
Florida Bar No.: 203238
grier.wells@gray-robinson.com
elizabeth.irvine@gray-robinson.com
50 North Laura Street, Suite 1100
Jacksonville, Florida 32202
Phone: (904)-598-9929
Fax: (904)-598-9109

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed and served electronically on this 12th day of February, 2018 through the Florida E-Portal on James H. Post, Esq., counsel for Plaintiff at jpost@smithhulsey.com.

<u>  /s/ S. Grier Wells, Esq.    </u>
Attorney