**TAB 31**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FOODONICS INTERNATIONAL, INC.,
a Florida corporation,

                            Plaintiff,

vs.                                             Case No.  3:17-cv-1054-J-32JRK

DINA KLEMPF SROCHI,
as Trustee of the Laura Jean Klempf
Revocable Trust, a Florida Trust,

                            Defendant.

_____

DINA KLEMPF SROCHI,
as Trustee of the Laura Jean Klempf
Revocable Trust, a Florida Trust, et al.,

                            Counterclaim Plaintiffs,

vs.

FOODONICS INTERNATIONAL, INC.,
a Florida corporation, et al.,

                            Counterclaim Defendants.

_____/

## O R D E R

    This cause came before the Court on August 16, 2018 for a discovery status hearing,

the record of which is incorporated herein.  After due consideration, it is

    **ORDERED:**

    1.    Foodonics International, Inc. shall produce to the trustee(s) all electronically-

stored documents for which search terms were being contemplated (in the agreed-upon

format, excluding junk mail and privileged documents), from both Foodonics and

GrayRobinson, no later than **August 30, 2018**. Text messages from Kevin Jacques Klempf shall be produced no later than **September 7, 2018**.

2.      The trustee(s) shall produce responsive, non-privileged, electronically-stored documents to Foodonics and Mr. Klempf no later than **September 30, 2018**.

3.      No depositions shall be taken until after the electronically-stored documents are produced.

4.      The parties dispute whether Ms. Srochi, the trustee, must answer the contention interrogatories (the "First Set of Interrogatories to Dina Klempf Srochi") that were served by Foodonics and Mr. Klempf.  These interrogatories ask Ms. Srochi to "state with particularity all facts known by you which support or relate to the allegations in [fourteen different paragraphs] of the Counterclaim [she] filed herein and identify all witnesses or documents which support or relate to such allegations."

On this limited record,[1] Foodonics and Mr. Klempf have not made a sufficient showing that the counterclaims may be subject to early dismissal or resolution, or that the claims and contentions are so unclear that they need to be narrowed.[2]  Accordingly, Ms. Srochi need

---

[1]      The issue has not been briefed, but the parties generally argued the matter and provided authority to the Court during the August 16, 2018 status hearing.

[2]

      Interrogatories that generally require the responding party to state the basis of particular claims, defenses, or contentions in pleadings or other documents should be used sparingly and, if used, should be designed (1) to target claims, defenses, or contentions that the propounding attorney reasonably suspects may be the proper subject of early dismissal or resolution or (2) to identify and narrow the scope of unclear claims, defenses, and contentions. Interrogatories that purport to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive.

Middle District Discovery (2015) at 17; see, e.g., In re Engle Cases, No. 3:09-cv-10000-J-32JBT, 2013 WL 12156250, at *2 (M.D. Fla. June 25, 2013); Oliver v. City of Orlando, No. 6:06-cv-1671-Orl-31DAB, 2007 WL 3232227, at *4 (M.D. Fla. Sept. 21, 2007).

not respond to the contention interrogatories anymore than she already has.  If Foodonics and Mr. Klempf seek further consideration of the issue, they are free to file a motion to compel with more fully developed argument.

5.      The undersigned will hold another discovery status hearing on **Tuesday, October 2, 2018 at 10:30 a.m.** in Courtroom 5D, Fifth Floor.  David Hancock, who is assisting counsel for Foodonics with technology issues, may appear telephonically by calling the Court's teleconferencing service at 1-888-684-8852 at least five minutes before the hearing is scheduled to begin. The access code is 2745123; the security code is 1002. **No later than 5:00 p.m. on Monday, October 1, 2018**, the parties shall file a joint notice advising the Court of the matters they wish to address during the status hearing.

**DONE AND ORDERED** at Jacksonville, Florida on August 22, 2018.

James R. Klindt
**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:
Counsel of Record

-3-

**TAB 32**

| | |
|---|---|
| **From:** | David A. Hancock, CEDS <David.Hancock@gray-robinson.com> |
| **Sent:** | Thursday, September 13, 2018 11:54 AM |
| **To:** | Chris Dix; Grier Wells |
| **Cc:** | Michael R. Santana; James H. Post |
| **Subject:** | RE: Jean Klempf - Production |

Chris,

Grier asked me to respond to you about your item Number 3 below. It is my understanding that he will be responding to some or all of your other items in a separate email.

As to Jacques Klempf's texts, after having spoken with our vendor (which is your vendor too), we believe we will be able to get to you, by COB tomorrow, the text messages from Jacques Klempf's cellphone.

Dave

**David A. Hancock, CEDS | Manager of Litigation Support and eDiscovery Services**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
T: 813-273-5000 | F: 813-273-5145 | D: 813-273-5150
E-mail | Website | vCard

**Facebook | LinkedIn | Twitter**

**From:** Chris Dix [mailto:cdix@smithhulsey.com]
**Sent:** Friday, September 07, 2018 4:33 PM
**To:** Grier Wells
**Cc:** David A. Hancock, CEDS; Michael R. Santana; James H. Post
**Subject:** RE: Jean Klempf - Production

Grier,

After the discovery status conference on August 16, 2018, the Court entered an order (Doc. No. 57) which required (i) Foodonics and GrayRobinson to produce ESI no later than August 30, 2018 and (ii) Jacques Klempf's text messages to be produced no later than September 7, 2018. Although we received the partial production you made on August 30, 2018, we have the following questions and concerns:

1. Your email below identified a group of "Personal" documents that you were continuing to review. Although you have not explained what "Personal" means, please produce those additional documents by next Friday, September 14, 2018.

2. During our telephone call on August 28, 2018, you stated that GrayRobinson's production of non-privileged, non-duplicative ESI would not be made on August 30, 2018, contrary to the Court's order. We have received no further information from you regarding GrayRobinson's delinquent production of ESI. Please produce all of GrayRobinson's documents by next Friday, September 14, 2018.

3. Will you be timely producing Jacques Klempf's text messages today?

**EXHIBIT**
25
PENGAD 800-631-6989

4. We have not received any privilege log related to last week's initial production. By next Friday, September 14, 2018, please produce a privilege log in the form below for each document or item of ESI you withheld due to privilege:

**Pages**   **Date**   **Author/Sender**   **Recipients**   **Description**   **Privilege**

5. We do not understand the statements made in the last paragraph of your email below regarding the designation of certain documents as confidential. If you intend for certain documents to be designated as "Confidential Discovery Materials" or "Highly Confidential Discovery Materials," please identify those documents by Bates range. We will assume you are not asserting confidentiality regarding any documents that you do not identify by Bates range.

Thanks,

## Chris Dix



SMITH HULSEY & BUSEY

225 Water Street | Suite 1800 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7730
cdix@smithhulsey.com | www.smithhulsey.com

*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.*

**From:** Grier Wells [mailto:Grier.Wells@gray-robinson.com]
**Sent:** Thursday, August 30, 2018 4:49 PM
**To:** Chris Dix <cdix@smithhulsey.com>
**Cc:** James H. Post <jpost@smithhulsey.com>
**Subject:** FW: Jean Klempf - Production

Chris:

You will find the link to Foodonics ESI data base below.

For encrypted or password protected documents, you may use the password                    .

As we advised on Tuesday, there is a small category of documents designated "Personal" I am reviewing for final confirmation.

As to designation of documents as confidential, we previously designated certain documents as confidential pursuant to the initial order. To the extent the documents produced through the link below contain any of the previously designated Confidential Discovery materials or Highly Confidential Discovery
Materials, they should retain such designation. Otherwise, we are not asserting confidentiality.

**Grier Wells | Complex Commercial, Employment and Construction Litigation**
**The Florida Bar Board Certified in Civil Trial Law**
**G R A Y | R O B I N S O N**

50 North Laura Street, Suite 1100 | Jacksonville, Florida 32202
**T:** 904-598-9929 | **F:** 904-598-9109 | **D:** 904-632-8478
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**From:** Donna Messina [mailto:Donna.Messina@kldiscovery.com]
**Sent:** Thursday, August 30, 2018 11:45 AM
**To:** David A. Hancock, CEDS
**Subject:** Jean Klempf - Production

Files attached to this message

| Filename | Size | Checksum (SHA1) |
|---|---|---|
| Klempf_VOL001.zip | 3.81 GB | |

Please click on the following link to download the attachments:
https://filetransfer.renewdata.com/message/

This email or download link can be forwarded to anyone.

The attachments are available until: **Saturday, 29 September.**

Message ID: Abb49XmK

LiquidFiles Appliance: https://filetransfer.renewdata.com
Confidentiality Notice: This electronic communication contained in this e-mail from NebulaTechQ (including any attachments) may contain privileged and/or confidential information. This communication is intended only for the use of indicated e-mail addressees. Please be advised that any disclosure, dissemination, distribution, copying, or other use of this communication or any attached document other than for the purpose intended by the sender is strictly prohibited. If you have received this communication in error, please notify the sender immediately by reply e-mail and promptly

3

destroy all electronic and printed copies of this communication and any attached document. Thank you in advance for your cooperation.

**TAB 33**

**Chris Dix**

| | |
|---|---|
| **From:** | files@sendthisfile.com |
| **Sent:** | Friday, September 14, 2018 2:48 PM |
| **To:** | Chris Dix |
| **Subject:** | Secure File Transfer |



**Sender:** david.hancock@gray-robinson.com
**Upload Date:** 2018-09-14 13:47:33.0
**Message:** We are hereby Producing text messages from Jacques Klempf's cellphone. They are being produced natively for the same reason we produced approx 45,000 documents to you without reviewing them; namely to cut down on the already extensive costs Mr. Klempf is incurring because of this litigation. Grier is stuck in an all-day mediation but will respond to your Sept. 7 emails as soon as possible.

Click the following link to download your file(s).

Click to Retrieve File(s)

iMessage +19048851926.7z
iMessage kjkeggs@aol.com.7z

If the above link is not clickable, copy and paste the following URL into your browser.

https://www.sendthisfile.com/ehYjMXnOBp2DY8iJjfpeeOP0

Note: These files will expire in 14 days from the time this email was generated.

Powered by www.SendThisFile.com



EXHIBIT
26
FENGAD 800-631-6989

1

**TAB 34**

| | |
|---|---|
| **From:** | Grier Wells <Grier.Wells@gray-robinson.com> |
| **Sent:** | Monday, October 1, 2018 10:52 AM |
| **To:** | James H. Post; Chris Dix |
| **Cc:** | David A. Hancock, CEDS; John M. "Jay" Brennan; Michael R. Santana |
| **Subject:** | Foodonics Privilege Log |
| **Attachments:** | 2018-10-01 Klempf Privilege Log.xlsx |

Jim and Chris:

The privilege log for Foodonics documents previously produced is attached.

We should have the "Personal" documents to send later today as well.

**Grier Wells | Complex Commercial, Employment and Construction Litigation**
**The Florida Bar Board Certified in Civil Trial Law**
**G R A Y | R O B I N S O N**

50 North Laura Street, Suite 1100 | Jacksonville, Florida 32202
**T:** 904-598-9929 | **F:** 904-598-9109 | **D:** 904-632-8478
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**TAB 35**

## Chris Dix

| | |
|---|---|
| **From:** | Grier Wells <Grier.Wells@gray-robinson.com> |
| **Sent:** | Monday, October 1, 2018 4:08 PM |
| **To:** | James H. Post; Chris Dix |
| **Cc:** | David A. Hancock, CEDS |
| **Subject:** | FW: Jean Klempf Trust - Supplemental Review (of the docs from your review of Potentially Personal Docs) |
| **Attachments:** | Klempf Production Vol. 002 |

**Grier Wells | Complex Commercial, Employment and Construction Litigation**
**The Florida Bar Board Certified in Civil Trial Law**
**G R A Y | R O B I N S O N**

50 North Laura Street, Suite 1100 | Jacksonville, Florida 32202
**T:** 904-598-9929 | **F:** 904-598-9109 | **D:** 904-632-8478
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**From:** David A. Hancock, CEDS
**Sent:** Monday, October 01, 2018 4:01 PM
**To:** Grier Wells
**Subject:** Jean Klempf Trust - Supplemental Review (of the docs from your review of Potentially Personal Docs)

Grier,

Here's our Supplemental Review.

You can copy and paste the link to the Production and provide it to Post/Dix.

The password is 2i0vUuEFWPbu.

Dave



**TAB 36**

| | |
|---|---|
| **From:** | Chris Dix |
| **Sent:** | Tuesday, October 2, 2018 5:43 PM |
| **To:** | Grier Wells |
| **Cc:** | David A. Hancock, CEDS; John M. "Jay" Brennan; Michael R. Santana; James H. Post |
| **Subject:** | RE: Foodonics Privilege Log |

Grier,

As noted during the hearing earlier today, the privilege log produced yesterday contains communications which do not appear to be privileged, including communications with the following:

Dennis Blackburn (dlb@blackburnco.org)
Dina Klempf (dinaklempf@gmail.com)
Dolph Baker (dbaker@cmfoods.com) and other Cal-Maine employees with emails @cmfoods.com
Steve Brust (sebrust@sgrlaw.com)
Dan Edelman (dan.edelman@dhgllp.com) and Mathew Edelman (matthew.edelman@dhgllp.com)
Todd Bishop, Matthew Turner and other employees of BB&T (emails @bbandt.com and @bbtscottstringfellow.com)
Fraser Burns (fburns@forkingamazingrestaurants.com and fburns@ocenture.com) and other employees of Forking Amazing Restaurants (emails @forkingamazingrestaurants.com)
Cecil Gibson (cecil.gibson@amerisbank.com), Lou Vaccaro (Lou.Vaccaro@amerisbank.com), Sean Magee (Sean.Magee@amerisbank.com) and other employees of Ameris Bank (emails @amerisbank.com)
Mac Holley (mholley@heritagecapitalgroup.com)
Mark Frisch (mfrisch@seabest.com)
Scott Parker (sparker@elkinsllc.com) and Rob Crowe (rob@elkinsconstructors.com)
Steven Jones (sjones@gatehospitality.com)
Mail Delivery Subsystem mailer-daemon@googlemail.com
Mail Delivery Subsystem MAILER-DAEMON@mx0a-001d4d01.pphosted.com
Nancy Ferdman (nferdman@bamjax.com) and any other employees of BAM (emails @bamjax.com)
Marita Mauriello (maritamauriello@gmail.com)
Susan Miller (susan@boldcitybrewery.com)
Colin Edwards (cedwards@burlockandbarrel.com)
Roger Bagalacsa (roger.m.bagalacsa@irs.gov)
Russell Beard (rbeard@brinkmere.com)
Sean Allen (sallen@glassratner.com)
Keith Goldfaden (kg@naihallmarkpartners.com), Alex Coley (ac@naihallmarkpartners.com) and Jeff Conn (jc@naihallmarkpartners.com)
Patrick McKinley (patrickmckinley@regencycenters.com)
Robert Monsky (hrmonsky@firstfloridacapital.com)
Reggie Dalton (rdalton11@tampabay.rr.com)

The foregoing list is not comprehensive. As directed by the Court, your firm should review, identify and produce all non-privileged documents with respect to any and all persons including, but not limited to, those identified in the foregoing list.

Thanks,

Chris Dix

SMITH HULSEY & BUSEY

225 Water Street | Suite 1800 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7730
cdix@smithhulsey.com | www.smithhulsey.com



YEARS
OF PRACTICE
EXCELLENCE

*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.*

**From:** Grier Wells [mailto:Grier.Wells@gray-robinson.com]
**Sent:** Monday, October 1, 2018 10:52 AM
**To:** James H. Post <jpost@smithhulsey.com>; Chris Dix <cdix@smithhulsey.com>
**Cc:** David A. Hancock, CEDS <David.Hancock@gray-robinson.com>; John M. "Jay" Brennan <Jay.Brennan@gray-robinson.com>; Michael R. Santana <Michael.Santana@gray-robinson.com>
**Subject:** Foodonics Privilege Log

Jim and Chris:

The privilege log for Foodonics documents previously produced is attached.

We should have the "Personal" documents to send later today as well.

**Grier Wells | Complex Commercial, Employment and Construction Litigation**
**The Florida Bar Board Certified in Civil Trial Law**
**G R A Y | R O B I N S O N**

50 North Laura Street, Suite 1100 | Jacksonville, Florida 32202
**T: 904-598-9929 | F: 904-598-9109 | D: 904-632-8478**
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

# TAB 37

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL,            Jacksonville, Florida
INC., a Florida corporation,
                                    Case No. 3:17-cv-1054-J-32JRK
     Plaintiff,

vs.                                 October 2, 2018

                                    10:34 a.m.
DINA KLEMPF SROCHI, as
Trustee of the Laura Jean           Courtroom No. 5D
Klempf Revocable Trust, a
Florida Trust,

     Defendant.
_____


DIGITALLY RECORDED DISCOVERY STATUS HEARING
BEFORE THE HONORABLE JAMES R. KLINDT
UNITED STATES MAGISTRATE JUDGE


COURT REPORTER:

          Shannon M. Bishop, RDR, CRR, CRC
          221 North Hogan Street, #150
          Jacksonville, Florida  32202
          Telephone:  (904)549-1307
          dsmabishop@yahoo.com

     (Proceedings reported by mechanical stenography;
transcript produced by computer.)

A P P E A R A N C E S

PLAINTIFF'S COUNSEL:

        **SAMUEL GRIER WELLS, ESQ.**
        GrayRobinson, PA
        50 North Laura Street, Suite 1100
        Jacksonville, FL  32202

DEFENSE COUNSEL:

        **JAMES H. POST, ESQ.**
        **R. CHRISTOPHER DIX, ESQ.**
        Smith, Hulsey & Busey
        One Independent Drive
        Suite 3300
        Jacksonville, FL  32202-3315

ALSO PRESENT:

        David Hancock (via telephone)

1               P R O C E E D I N G S

2    October 2, 2018                              10:34 a.m.

3                        - - -

4               COURT SECURITY OFFICER:  All rise.  This Honorable

5    Court is now in session.  The Honorable James R. Klindt

6    presiding.

7               Please be seated.

8               THE COURT:  This is Foodonics International, Inc.,

9    against Dina Klempf Srochi, as Trustee of the Laura Jean Klempf

10   Revocable Trust, Case No. 3:17-cv-1054-J-32JRK.

11              On behalf of the Plaintiff is Grier Wells.

12              Good morning.

13              MR. WELLS:  Good morning, Your Honor.

14              THE COURT:  And David Hancock is on the telephone.

15              Is that right, Mr. Hancock?

16              MR. HANCOCK:  Yes, sir.

17              THE COURT:  All right.  Thank you.  Good morning.

18              James Post and Christopher Dix are here on behalf of

19   the Defendant.

20              Good morning.

21              MR. POST:  Good morning, sir.

22              THE COURT:  And I should say Counter Plaintiffs also.

23              MR. POST:  Yes, sir.

24              THE COURT:  Yes.  All right.  Well, good morning to

25   you-all.  I appreciate the notice that you filed,

1   document No. 60, on October 1st that sets out what the issues

2   are that you want to discuss.

3          So, Mr. Post, should I start with you?

4          MR. POST:  Yes, sir.  And I would like -- Mr. Dix is

5   going to -- my partner, Mr. Dix, will handle this hearing.

6          THE COURT:  All right.  Well, that's just fine.

7          MR. POST:  Thank you.

8          MR. DIX:  May it please the Court?

9          THE COURT:  Yes.

10          MR. DIX:  Your Honor, the last status conference we

11   had in this case was September 16th -- I'm sorry, August 16th.

12   Shortly after that status conference you entered a discovery

13   order, on August 22nd.

14          What we want to do today is bring it forward -- from

15   that discovery forward, to where we are today, with the

16   production by the various parties that were addressed in that

17   discovery order.

18          THE COURT:  I think we set -- we set this off until

19   now because it's after some deadline that was set in that

20   order, right?

21          MR. DIX:  That's right.  The last deadline for

22   production was the trust deadline.  That's our deadline.  Our

23   clients were producing documents.  That was on Sunday,

24   September 30th.

25          THE COURT:  Yes.

1          MR. DIX:  So we've now passed all of the deadlines

2     for production.

3          THE COURT:  All right.

4          MR. DIX:  But we prepared a chart, Your Honor, that

5     we think is helpful in understanding where we are --

6          THE COURT:  Yes.

7          MR. DIX:  -- if I can approach and hand this up?

8          THE COURT:  Yes.  Thank you.

9          Mr. Wells, do you have a copy?

10         MR. WELLS:  Not yet, Your Honor.

11         THE COURT:  All right.

12         MR. DIX:  Your Honor, the chart, from reading from

13    left to right -- on the left-hand side is the producing party.

14    Moving to the right, the date due, pursuant to your August 22nd

15    order.  Moving further to the right, the date that that

16    production was received, if at all.  And then comments on the

17    far right-hand side.

18         So beginning at the top, GrayRobinson was the first

19    production that we've got on this chart.  The date of

20    production, pursuant to your discovery order, was August 30th.

21    And as we stand here today, we have not received the first

22    single document from GrayRobinson related to this case.

23         We're 33 days past due the production deadline.  We

24    had a call with Mr. Wells last week where he told us, along

25    with Mr. Hancock, that there were potentially 10,000 documents

1  that they needed to review, and that -- that they were in the

2  process of identifying who the privileged parties were.

3          So it didn't sound to us like they were very far

4  along in that process. And they could not provide for us an

5  ETA regarding when we could expect the production of those

6  documents or a privilege log, which would presumably be

7  accompanying it. Obviously GrayRobinson is going to have

8  communications that are privileged with their client.

9          And so with respect to GrayRobinson, Your Honor, we

10  would ask, coming out of today's hearing, that you would do two

11  things, that you provide a date certain by which GrayRobinson

12  needs to complete their production.

13          We think, given the deadline and the extended delay

14  here, that they should be required to produce it within seven

15  days, finish their production within seven days. That would

16  include production of documents and a privilege log.

17          And if they don't do that, then we would ask the

18  Court to appoint a special master in this case, someone to come

19  in, neutral, at their expense, to come and take over the

20  process to get this process finished.

21          It's holding up the entire case that we haven't

22  gotten these documents yet. And we think that that would be an

23  appropriate remedy, given the number of delays that we've

24  experienced.

25          THE COURT: You know, I'm not sure that I have the

1    authority to do that.  That may be something that

2    Judge Corrigan may have to do, if you ask for it and he thinks

3    it's appropriate.

4              MR. DIX:  That -- Your Honor, we hope that -- in

5    short order, that -- that all of this production can be

6    finished and we don't have to get to that point.

7              THE COURT:  All right.

8              MR. DIX:  But that would be what we think is the next

9    step that's appropriate in the -- in the ability of the Court

10   to reconcile these deficiencies.

11             The second category of producing parties is

12   Foodonics.  Their date -- as with GrayRobinson, their date was

13   August 30th to make the production.

14             We did receive a production from Foodonics on

15   August 30th.  They produced 44,763 documents.  It wasn't a

16   difficult production, because they, as you recall from the last

17   hearing, made -- decided not to review those documents.  They

18   simply turned them over.  And we agreed to that.

19             The problem that came up with those documents, Your

20   Honor -- we got about an hour or two into a very cursory review

21   of the documents and we came across a couple of documents which

22   were pretty clear that they had been inadvertently produced.

23             So we provided notice to Mr. Wells.  The discovery

24   agreement and claw-back agreements that we have in this case

25   provide for how those situations are to be addressed.

1        We're going through that process now.  It's still not

2    complete, that -- two of the three documents, there's no

3    dispute that they are privileged documents.

4        There is one document -- we provided notice to the

5    Court last week regarding a document that we do not think that

6    a privilege should apply to.

7        Mr. Wells, I believe, has until later this week to

8    file his response.  Maybe we work that out.  Maybe we don't.

9    There's not anything with respect to those three documents or

10   that one document that we need to do today, Your Honor.

11       But what we did propose to Mr. Wells last week, and

12   he has agreed, is to modify the process for our review of these

13   44,000 documents.

14       Ordinarily -- as soon as we come across a document

15   that looks potentially inadvertently produced, we've got to

16   promptly notify Mr. Wells.

17       The modification here, since these documents haven't

18   been reviewed -- it's likely that we're going to come across

19   some more potentially inadvertently produced documents.

20       We'll put those documents aside as we come across

21   them, we'll remove them from our document review tool so that

22   we can't see them anymore, but we don't have to provide notice

23   each time we come across a document, not until the completion

24   of our review.

25       So when we finish our review of these 44,000

1  documents, at one single time we'll provide the notice to

2  Mr. Wells of all of the documents, if any, that -- that are

3  potentially inadvertently produced.

4       In the meantime, if Mr. Wells and his team identify

5  documents that they believe are inadvertently produced, they

6  certainly are free to search their own documents and identify

7  any documents that are inadvertently produced, notwithstanding

8  what our procedure would be.

9       So we --

10      THE COURT:  I'm sorry to interrupt.  But are you

11 going to want to -- to amend the discovery agreement to that

12 effect?  Or do you have a clear understanding with each other

13 and you don't need to do that?

14      MR. DIX:  We've done that by stipulation, Your Honor.

15 I provided in an e-mail to Mr. Wells the exact language that

16 would modify our existing agreement.  And he's agreed to that.

17 Is that --

18      MR. WELLS:  That's correct.  I (unintelligible) -- I

19 don't have to do a formal amendment, but we have no problem if

20 the Court wishes to do that.

21      THE COURT:  All right.  If you-all -- if you-all

22 agreed to it and you don't have a problem, I don't think I need

23 to get -- get in the middle of it, so -- and then if you do at

24 some point have a problem with it, then -- then we can take it

25 up at what probably will be another status conference or two,

1    or you can file something.

2              Now, let me just ask you so I don't forget.

3              MR. DIX:  Sure.

4              THE COURT:  With regard to this one notice that you

5    filed that's document 59, on September 27th, Mr. Wells will

6    respond to that.

7              And then if there still is a dispute as to that

8    document, I suppose I'm going to have to have that document

9    submitted and I'll take a look at it and -- and resolve the

10   challenge.

11             Is that -- is that how you would anticipate that

12   happening, both of you?

13             MR. DIX:  That's our understanding, Your Honor.

14             MR. WELLS:  Yes, sir.

15             THE COURT:  All right.  And then -- and then,

16   Mr. Wells, you would be the one to submit that to me?

17             MR. DIX:  We'd no longer --

18             THE COURT:  Because they don't have it then.

19             MR. DIX:  We've removed it from our collection.

20             THE COURT:  Right.  So if you -- if there is -- in

21   other words, if you-all don't work that out, you file a -- a

22   response to this objection, with that response I would think

23   you would submit, just directly to chambers, the -- the

24   document that's at issue.

25             MR. WELLS:  Yes, sir.

1        THE COURT:  All right.  All right.  Sorry for the

2   interruption.  Go ahead.

3        MR. DIX:  That's okay, Your Honor.  The reason we

4   mentioned all of that is the discovery agreement that we

5   entered into is incorporated by reference into the 502(d)

6   order.

7        THE COURT:  Yes.

8        MR. DIX:  I want to make sure you were aware of what

9   we were doing.

10        THE COURT:  Yes.  Thank you.

11        MR. DIX:  Hopefully it won't be an issue.

12        The next issue with respect to the Foodonics

13   production, Your Honor -- we received yesterday an Excel

14   spreadsheet from Mr. Wells containing a privilege log, which we

15   were happy to see.  We've been asking for that and we were glad

16   to receive it.

17        Unfortunately, it wasn't -- the third line on the

18   first page of a 5,000-line document -- when we got to an

19   e-mail, which was an e-mail from Mr. Klempf to Dennis

20   Blackburn, who's an adverse party in this case.

21        And the two e-mails after that are e-mails exchanged

22   between Mr. Klempf and Dennis Blackburn.  We did a search.  It

23   looks like there's more than just three.

24        We also did a search for our other client Dina

25   Klempf.  And there are e-mails on this privilege log between

1    Mr. Klempf and his sister, an adverse party.  So we even took

2    it a step further.  And it looks like there's about 90 to 100

3    e-mails involving Cal-Maine.

4              So with very little investigation, Your Honor, it

5    looks obvious to us that this privilege log is deficient, that

6    there are documents on here that are clearly not privileged.

7              And so with respect to the privilege log, we would

8    ask two things, one that -- that the privilege log be

9    amended -- reviewed and amended to remove any non-privileged

10   items.

11             And with respect to the items that we removed, we

12   would ask that those be produced.  We think that could be done

13   in short order.  We think the same seven-day time frame we

14   proposed for the GrayRobinson production would apply here.

15             Seven days should provide enough time for them to

16   review their privilege log, eliminate the non-privileged items,

17   produce those non-privileged items to us.

18             The last issue with respect to Foodonics, Your Honor,

19   was a series of documents that Mr. Wells described as

20   Mr. Klempf's personal documents.

21             They were withheld from the production on

22   August 30th.  Even though that was the deadline, they were

23   withheld -- approximately 775 documents that --

24             THE COURT:  How many?

25             MR. DIX:  775 documents Mr. Wells individually

1   reviewed.  It took him 32 days to do that.  And just yesterday

2   at about 5 p.m., we received an e-mail with a link to download

3   those documents.

4          We've sent that to our eDiscovery vendor.  And we

5   haven't had a chance really to look at those documents at all

6   since 5 o'clock yesterday.

7          So we -- we note that there was a production that was

8   made, that it was past due.  And we don't know at this time

9   whether we're going to have any issues.

10          So we do think for reasons such as this that there is

11   going to need to be at least one more status conference after

12   we've had an opportunity -- after the documents are fully

13   completed and produced, and after we've had an opportunity to

14   review those documents, we think we're going to need at least

15   one more status conference to resolve any issues that come up.

16          The next party on the list is Jacques Klempf, his

17   text messages.  Those were due to be produced on September 7th,

18   pursuant to your order.  They were produced a week later, on

19   September 14th.

20          We have received that production, but we haven't

21   taken a close look at that yet.  So that production falls in

22   that same kind of category as the personal documents we just

23   talked about.

24          We haven't really had a chance to kick the tires and

25   make sure that that production was done in a manner that we

1    believe was correct.  And so we're going to need to come back

2    and address those potentially at -- at a future status

3    conference.

4            The next producing party is Cal-Maine Foods.  No

5    production.  By their own production date that they set,

6    pursuant to the stipulation that we entered into them -- with

7    them, they agreed that they were going to produce one

8    custodian's documents by September -- I'm sorry, August 30th,

9    2018.

10           That production came 26 days late, on September 25th.

11   We found (unintelligible) last week of those documents.  And

12   what we understand those -- there are about 1,000 documents

13   that were produced by Cal-Maine.

14           As we -- as we sent them to our eDiscovery vendor,

15   Your Honor, we learned that the documents have all been

16   converted into PDF form.

17           Ordinarily on a small collection that wouldn't be a

18   big deal.  In this case, having converted all the PDF --

19   documents to PDF prevents us from sorting them and putting them

20   in chronological order, putting them along with the other

21   documents that we've received in the collection.

22           So we need to go back to Cal-Maine.  We're hopeful

23   when we go back to Cal-Maine that they'll agree to produce a

24   load file, they call it, which has all the metadata that would

25   complete that production.  We're hopeful that that's not going

1    to be an issue.

2            But we did at least note it for the record that we've

3    gotten documents, but they're not in the format that we asked

4    for and not in the format that we expected, and they're not in

5    a format that makes it very easy for us to review and deal with

6    them.

7            THE COURT:  So if you don't resolve that with

8    Cal-Maine, we'll invite Cal-Maine to the next status.

9            MR. DIX:  If they choose to participate.  If you

10   recall, they opted out of participating at some point several

11   conferences ago.  So we certainly would invite them.  Hopefully

12   we can work that issue out.

13           THE COURT:  That's why I used the word "invite."

14           MR. DIX:  Yeah.  And if not, we can -- we can -- they

15   can file a motion and we can file a motion.

16           THE COURT:  All right.

17           MR. DIX:  Hopefully it doesn't come to that.

18           THE COURT:  All right.

19           MR. DIX:  The last party, Your Honor, is our party,

20   our production.  It was due on September 30th and we produced

21   them on September 30th.

22           So we're not aware of any issues with that

23   production.  We recognize that it was just made a couple of

24   days ago.  We produced all the non- -- non-privileged

25   responsive ESI that the Court required us to produce.  We made

1    that production.

2           THE COURT:  All right.  So the main two things, then,

3    to focus on today -- and I appreciate the update on everything

4    else -- though, is the -- is the -- is the GrayRobinson

5    production and the -- and the privilege log.

6           MR. DIX:  From Foodonics.

7           THE COURT:  Yes.  Those are the two main issues,

8    then, that we might be able to make some progress with today.

9           MR. DIX:  There are two -- two other issues, if I

10   may, Your Honor --

11          THE COURT:  Yes.

12          MR. DIX:  -- very quickly?  We think we should

13   schedule an additional status conference sometime later down

14   the road.  That shouldn't be terribly difficult to do.

15          And then, lastly, we filed a motion, unopposed, to

16   amend the case management deadlines, Your Honor.

17          THE COURT:  Yes.

18          MR. DIX:  And so based on the delays in the document

19   production and the discovery that we've had, we filed that

20   motion.  And we'd ask that the Court -- if today is the

21   appropriate time, to address that, to -- to extend those

22   deadlines as well.

23          THE COURT:  We can address that.  The -- just in

24   looking at the age of the case and the trial term that you've

25   asked to set this on, I think -- I think that -- probably at

1  this point, when these things are considered in the future,

2  it's going to be much more difficult to get an extension.

3      Because I'm sure -- Judge Corrigan has authorized me

4  to go ahead and deal with this today.  But I'm thinking if --

5  if history is any type of teacher, that -- that this -- it will

6  be much more difficult to get any type of relief in the future.

7      But I -- I think that -- I think this will be fine,

8  in terms of what you-all have proposed, since -- since you

9  agree to it at this point.  And I think it is warranted based

10  on the challenges that -- that you-all have had with discovery.

11      So we'll go ahead and get to that by the end of the

12  hearing.

13      MR. DIX:  Thank you, Your Honor.

14      THE COURT:  All right.  Thank you.

15      Mr. Wells?

16      MR. WELLS:  Thank you, Your Honor.

17      May it please the Court?

18      THE COURT:  Yes.

19      MR. WELLS:  With respect to the GrayRobinson

20  documents that Mr. Dix is concerned about, we have -- we have,

21  in fact, identified that there are at least about 10,000

22  documents between GrayRobinson and the clients, or other

23  privileged parties, such as the accountant and so forth.

24      We've had some difficulty in identifying all of the

25  attorneys within the firm who have had those communications,

1  because there have been multiparous, but we've done that.

2          Mr. Hancock is on the line.  I think that we will be

3  able to produce documents well within the seven days that

4  Mr. Dix has requested.

5          Part of the problem is not just the documents, but --

6  as the Court may be aware, a subpoena directed to a law firm

7  necessarily is going to involve an awful lot of privileged

8  communications.  And our trying to identify those has been the

9  bulk of the problem.  But we should have that completed very

10 shortly.

11         I think, again, well within the seven days.  And we

12 have been communicating with counsel about that as it has

13 progressed.

14         On the Foodonics privilege log, I got that yesterday

15 from the vendor.  We went through roughly the 44,700 documents

16 and prepared a -- the privilege log itself, Your Honor, is over

17 200 Excel sheet pages long.

18         I apologize.  I was not aware that there were errors.

19 We certainly can clean those up.  It was not -- not any attempt

20 to be misleading to the Court or to counsel in any way.

21         If there are issues, we can clean that up.  And I --

22 Mr. Hancock, how long do you think it would take to go back on

23 the privilege log?

24         MR. HANCOCK:  I think that can be done within seven

25 days.  As to the prior item, I would ask if we could do ten

 1  business days, if that's possible.  I think I might have

 2  mentioned I'm getting married on Friday.  So I'm not going to

 3  be back in the office until next Wednesday.

 4          MR. WELLS:  What's your point?

 5          THE COURT:  All right.

 6          MR. WELLS:  Chis, are y'all okay with that?

 7          MR. DIX:  Yes.  That's ten business days, right?

 8          THE COURT:  Yes.  Is that all right with you?

 9          MR. DIX:  Yes.

10          THE COURT:  But we're still going to do seven

11  business days on the privilege log --

12          MR. HANCOCK:  Yes, sir.

13          MR. WELLS:  Yes.  Yes, sir.

14          THE COURT:  -- for Foodonics?

15          MR. WELLS:  And, again, we certainly did not

16  include -- intend to include non-privileged documents on the

17  privilege log.  And to the extent there are non-privileged

18  documents, they will be produced.  It should not be a problem.

19          To put things in a little bit of perspective, Your

20  Honor, the complaints about the timing -- the Court is aware

21  from prior status conferences that we've been dealing with an

22  awful lot of documents.  And the cost involved in that is

23  pretty monumental.

24          The documents produced by the trust on Sunday, it

25  appears that there are approximately 5,000 documents, as

1  compared to the 44,000 from Foodonics and over 10,000 from

2  GrayRobinson.

3       So I think perhaps the context of that needs to be

4  considered.  But we certainly have no --

5       MR. HANCOCK:  Actually that number is 892.

6       MR. WELLS:  Which number is that, from the Klempf

7  trust?

8       MR. HANCOCK:  The production from the trust.

9       MR. WELLS:  I apologize.  I had 5,000 from some --

10  some other source.  I apologize.

11       We have no problem with the motion to extend the case

12  management conference, as Mr. Dix alluded to.  That's certainly

13  up to the discretion of the Court.

14       But we should have both -- the GrayRobinson documents

15  produced within the ten days and the cleanup of the privilege

16  log within seven.

17       THE COURT:  And then in terms of your -- your

18  response to this objection -- or the challenge as to the

19  privilege claim on the claw-back, when is that due?  I think

20  you have -- what is it, five days?

21       MR. WELLS:  Five business day from the date of the

22  challenge.

23       THE COURT:  Yes.

24       MR. WELLS:  We got the challenge late Thursday of

25  last week, I think.  So technically by tomorrow a response will

1    be due.

2             THE COURT:  Is that doable for you or...

3             MR. WELLS:  I would request if we could do it by the

4    end of the week, Friday.

5             THE COURT:  Is there any objection to that, Mr. Dix?

6             MR. DIX:  No.

7             THE COURT:  All right.  So we'll -- we'll extend that

8    to Friday.  And then if you -- if you-all don't work that out,

9    you'll file a response and then submit the document that's at

10   issue -- a copy of it to chambers?

11            MR. WELLS:  That's correct.

12            THE COURT:  All right.  All right.  Thank you.

13            MR. WELLS:  Yes, sir.

14            There were a couple of things, Your Honor, that we

15   had listed on paragraph 5 --

16            THE COURT:  Oh, yes.

17            MR. WELLS:  -- of the notice.

18            THE COURT:  Sorry.  I was thinking we were done.

19            All right.

20            MR. WELLS:  The first one is the status of the

21   collection and production of e-mails from the DixieEgg.com

22   domain --

23            THE COURT:  Yes.

24            MR. WELLS:  -- former employees of Dixie Egg, other

25   than Mr. Klempf.  Mr. Klempf has reactivated.  And he's here,

1    though I don't anticipate him responding.

2          But he reactivated the DixieEgg.com account.  And

3    Mr. Klempf, through his own -- I'm going to use the word

4    equipment, can see that.  But we have been unable to through

5    either Mr. Hancock or through a remote vendor.

6          So in order to do that it's going to require the

7    vendor to come to Jacksonville and look at the source that

8    Mr. Klempf has access to.

9          I would suggest, if I may, that since we have

10   produced 44,700 documents from Foodonics, as well as text

11   messages from Mr. Klempf, that those documents be reviewed

12   first.  And they would have included anything Mr. Klempf sent

13   on his DixieEgg.com domain.

14         And so let's see if there's anything within those

15   documents.  And if there's something that gives rise to

16   concern, then we can take the next step to have the vendor come

17   look at the DixieEgg.com of other employees.  We have no

18   control over them.  It would have to be through -- through

19   Mr. Klempf's own personal devices.

20         You know, we -- we will be producing the GrayRobinson

21   documents.  We've already produced Foodonics documents.

22         And, by the way, the personal documents that Mr. Dix

23   referred to -- I assure the Court that I didn't spend 32 days

24   looking at those documents.  They were looked at within a

25   fairly short period of time, compressed time.  And we have

1  produced those, yesterday.

2  　　　　THE COURT:  Okay.  Well, I'll ask Mr. Dix about that

3  moving up -- or having the review take place the way you

4  suggested, to see what he says about that.

5  　　　　MR. WELLS:  The other issue, paragraph 5, would be

6  the status and production.  That really has been addressed.  I

7  just wanted to let the Court know that we've not had a chance

8  to review it.

9  　　　　We got it Sunday evening.  And it is a fairly small

10  number.  But we would reserve the right to raise any concerns

11  we may have in the future about that.

12  　　　　THE COURT:  Yes.  Of course.

13  　　　　MR. WELLS:  Thank you.

14  　　　　THE COURT:  Thank you.

15  　　　　All right.  Mr. Dix, what do you say to Mr. Wells'

16  proposal?

17  　　　　MR. DIX:  Your Honor, we have lost faith that this is

18  going to go anywhere anytime soon.  We would ask that some kind

19  of report be produced from a vendor.

20  　　　　We have the same vendor.  We'd like some kind of hard

21  evidence of -- of what is going on, other than Mr. Wells kind

22  of trying to explain it.

23  　　　　We don't think that -- I don't have any confidence

24  that this is ever going to get done correctly.  And so this

25  would be part of why we would think that a special master needs

1   to be appointed to come in and take control of this thing, and

2   have somebody that's neutral tell us what's really going on and

3   what's -- what can be accomplished.

4           THE COURT:  Well, you're -- you mentioned the special

5   master at the outset with respect to the first issue related to

6   GrayRobinson.  And according to Mr. Wells, those documents are

7   going to be produced in ten days.

8           MR. DIX:  Sure.

9           THE COURT:  Do you have faith and confidence in that?

10          MR. DIX:  No.  The deadline for producing everything

11  was August 30th.

12          THE COURT:  Well, I understand.  I --

13          MR. DIX:  And we asked for these documents in

14  January.  It's now October.  And the idea that we're just now

15  figuring out what might be able to be done and maybe having a

16  vendor come on site to --

17          THE COURT:  No.  I'm taking these one step at a time.

18          MR. DIX:  Okay.

19          THE COURT:  Because -- because I didn't hear you say

20  anything about a vendor related to these other things

21  earlier -- I mean, a special master.  I thought you were aiming

22  the special master at the GrayRobinson situation.  But you're

23  aiming that at the overall situation?

24          MR. DIX:  We didn't even know about what we just

25  heard until right now.  We were assuming that because the

1    production deadline was August 30th that -- that those -- those

2    issues had already been resolved, and were not something that

3    needed to now be addressed 33 days after the production.

4           So I don't have confidence that this is going to get

5    done.  If it does get done, I don't have confidence that it's

6    going to get done correctly.

7           And I think that the quickest and easiest way to get

8    through this is to have somebody neutral take control of the

9    situation and -- and tell us what's really going on and then --

10   and get to the end result.

11          THE COURT:  Well, you can file that motion.  I don't

12   think it would be one that I would handle, as I said earlier.

13   I think Judge Corrigan will.

14          We're still going through these -- these status

15   conferences.  If Mr. Wells believes, and Mr. Hancock believes,

16   that they can produce these -- these 10,000 documents, or

17   whatever it is, from GrayRobinson within ten days, or by ten

18   days, and if -- if you get the production from Foodonics in

19   seven days, as has been represented -- I mean, I can order it.

20   But my orders don't seem to be having much effect.  I mean, I

21   order it by a certain date and it's not done.

22          I don't know -- I don't know what else to do at this

23   point.  I think what we're coming down to is motion practice

24   and -- and -- and the potential of having to deal with this

25   some other way than coming in here and working it out.  And

1   then the same with the special master situation.

2          Because if -- if there isn't any progress, these

3   status conferences have been and will continue to be a waste of

4   time.  And I don't really want to waste your time, your

5   client's money, and my time, if this isn't getting us anywhere.

6          So, I mean, it seems to me there's been some

7   progress.  I hope that -- that there has been.  But I think

8   what my intention would be at this point is -- is to go ahead

9   and accept these representations on these dates, and then --

10  then either set a very quick status conference again, or part

11  of my order will be that if the documents aren't produced,

12  then -- then you can file a motion to compel, you can ask for

13  whatever sanctions you think are appropriate, and -- and then

14  if -- if -- if the -- Mr. Wells can respond and go that route.

15         Because at this point I don't think on my own I'd be

16  inclined to -- to try to impose sanctions on the -- the dates

17  that I've set.  I basically have set those because you-all have

18  agreed to them.

19         And the whole purpose of these status conferences has

20  been to avoid essentially motion practice and to try to move

21  this along.  I think we've made some progress.

22         If you get these documents from GrayRobinson in ten

23  days and you get these -- the documents from Foodonics in seven

24  days, then we're down to this one -- at least at this point

25  down to this last issue that -- that -- that Mr. Wells raised

1  about the -- the DixieEgg.com, which was -- which was on his

2  list, not yours.

3          So I was really -- I was -- I was aiming -- I was

4  aiming my comments at that last proposal that he made.  And I

5  know your view on that may be affected by what happens in the

6  next seven to ten days.

7          Because if you get what you believe is a good faith

8  response and -- and a true effort to get the GrayRobinson

9  documents and the Foodonics documents, then you might be in a

10  better mood, and you might -- you might -- you might decide

11  that you will look at those, or you would be willing to look at

12  the -- review the Dixie Egg situation in the way Mr. Wells

13  proposed.

14          MR. DIX:  Your Honor, if I could clarify.  What will

15  we be getting and when will we be getting it with respect to

16  the Dixie Egg issue?

17          MR. WELLS:  What I have proposed to the Court is that

18  we defer further investigation into the DixieEgg.com until

19  we've had a chance to review the documents that have been

20  produced by Foodonics that will be produced by GrayRobinson,

21  even the Cal-Maine documents, all of which arguably will have

22  DixieEgg.com communications in them.

23          You've already got the DixieEgg.com communications

24  from Foodonics, from Cal-Maine.  You will get them from

25  GrayRobinson.

1          And to take the next step, to go to an account that

2     had to be reactivated after the sale to Cal-Maine -- it seems

3     to me to be a waste of time at this point.  If you find that

4     there are documents within what has been produced that would

5     suggest otherwise, then we can address it.

6          THE COURT:  Well, here's my suggestion on it, is

7     that -- that you -- you somehow get a price on what it's going

8     to cost to have that -- to do what you say needs to be done.

9          And then in the next status conference that we're

10    going to have in about two weeks, we can take up the issue

11    again.

12         And if the cost is -- if you document the cost and

13    balancing the cost with -- with what might be a duplicative

14    production of discovery, then we'll see what we do with that.

15         So why don't we handle it that way and see where we

16    go.  Because this extra five months you're going to get is

17    going to go by like the snap of fingers.

18         And so -- so I think that that's -- I think that

19    that's the best way to handle it.  And we'll come back in 14

20    days or so.  We'll see where everything is.

21         That will be past the ten-day new deadline for the

22    GrayRobinson documents.  It will be past the deadline for

23    Foodonics.

24         And then -- and if we're still having a problem

25    then -- you can file your motion to ask Judge Corrigan to

1    appoint a special master anytime you want.

2         But I think that -- that what happens -- what happens

3    in 14 days is going to be telling.  And -- and then you can

4    either move for a special master and ask Judge Corrigan to

5    order -- to order them to pay for it or you can -- I'll give

6    you deadlines for filing motions to compel and you can move to

7    compel and ask for whatever sanctions you think are

8    appropriate, and Mr. Wells can respond.  And he can file his

9    motions if he thinks he should file it.

10        But I'm -- I -- I don't really know what's going on

11   behind the scenes on some of these things, because you-all know

12   better than I do.

13        But, you know, I -- I know you, Mr. Dix, and I know

14   Mr. Post, and I know Mr. Wells -- I know you-all from seeing

15   you in court and I know you-all by way of your reputation.

16        So if -- if there are challenges here, I -- I'm not

17   thinking it's because you-all aren't doing what you can do and

18   what you think is -- is appropriate.

19        But if it doesn't get done, that is, if the documents

20   aren't produced, then the Court has to get to the bottom of it

21   somehow.

22        And -- and, you know, it often -- it often takes some

23   bidding.  And oftentimes lawyers are in a tough position

24   because of -- of various situations.

25        Like the GrayRobinson situation, I can see why that's

1   a challenge.  You know, but -- but at some point, you know,

2   there comes a time when stuff has to happen.  And we've kind of

3   all been trying to get it done without -- without unnecessary

4   litigation.  But it may be necessary.

5           So that's what I -- let's look at our calendars and

6   we'll -- we'll -- we'll come back in about -- about two weeks.

7           Let's see.  What is -- today is the 2nd -- or is it

8   the 3rd?  Today is the 2nd.  Seven, eight, nine -- the tenth

9   business day from today is the 17th, isn't it?

10          No, the 18th, if you don't count today, because

11  Monday, the 8th, is Columbus Day.

12          The 17th.

13          MR. DIX:  The 17th.

14          THE COURT:  Yes, the 17th.  So the 17th is the due

15  date for the -- for the GrayRobinson production and the

16  Foodonics production.  The Foodonics -- not production, but

17  the -- the amended privilege log would be the 12th.

18          Is that right?

19          Yes.  The due date would be the 12th.

20          So I say we set it on -- on Thursday, the 18th, set a

21  status conference.

22          MR. DIX:  My only hesitation with that, Your Honor,

23  is that if we don't get production until the 17th --

24          THE COURT:  Until the 17th?

25          MR. DIX:  Right.  If it comes in on the last day,

1   which is typically what has been happening, not after, then

2   we're not going to have time to -- to evaluate what's been done

3   before we come see you the next day, or less than 24 hours.

4          THE COURT:  All right.  Well, let's do it this way.

5   Let's do it this way.  Let's set it off for the next week.  But

6   what I'm going to do is -- is require that a notice be filed

7   on -- on October 12th stating that the docket -- that the

8   privilege log has been amended or it hasn't been amended,

9   because I want to know on the 12th.

10          And then on the 17th, there will be a notice filed

11  that the GrayRobinson documents have been produced or they have

12  not been produced.

13          Then that way I'll know.  Because I want to -- I want

14  to have an idea of where we are.  And then I can set this over

15  for the following week, sometime the week of the 22nd, if

16  you-all are available, like maybe the 25th, October 25th.

17          MR. DIX:  That works for me, Your Honor.

18          THE COURT:  Mr. Wells, does that work for you, the

19  25th?

20          MR. WELLS:  I believe it does, Your Honor.

21          THE COURT:  Mr. Post?

22          MR. POST:  Yes, sir.  It does.

23          THE COURT:  All right.  Why don't we set it that

24  date?  Can we set it at 10:30?

25          MR. DIX:  Yes.

1    THE COURT:  And, you know, at this point I'm not

2  going to -- I'm not going to rail and, you know, "You better

3  produce those documents."  I'm not going to do that.

4    You know, this -- this -- this is an effort to try to

5  get this done without having to do those kind of things.  And I

6  know there were some serious challenges here.  But at the same

7  time, as Mr. Dix points out, the -- the clock has been ticking,

8  and continues to tick.

9    So I think -- I think -- I think -- I think by the

10  end of October we're either going to be in full file-motions

11  mode and litigate it that way or -- or we're going to -- we're

12  going to have made the type of progress that we have to make to

13  meet the -- what will be the new schedule.

14    Yes?

15    MR. DIX:  One last request, Your Honor.  With respect

16  to Mr. Wells filing his response to our notice on the one

17  document where there's an issue about the privilege --

18    THE COURT:  Yes.

19    MR. DIX:  -- our -- our filing was very cursory.  We

20  challenge the designation of that as privileged.  There's not

21  much in terms of advocacy there.  We'd like an opportunity to

22  respond to whatever Mr. Wells files.

23    THE COURT:  Well, let's do this.  Why don't we --

24  let's do this.  He'll -- you'll -- he'll file his objections.

25  Let me look at the document.

1      If he -- or he'll file his response to your

2  objection.  Then let me look at the document and -- and then --

3  and then let me just see what it -- what it is before we start

4  filing too many things.

5      And then if I need help with it or -- or it -- it

6  looks to me like there's a problem, then we can take that up --

7  we can take that up at the next status.

8      MR. DIX:  Okay.

9      MR. WELLS:  Your Honor, I realize the Court has

10  discretion on those matters, but I would note that the

11  challenge to the document that is asserted to be privileged, as

12  Mr. Dix pointed out -- minuscule.  Let me say that.  It's just

13  simply a challenge, with no assertion of any sort whatsoever.

14      And we think that our response will address the

15  actual asserted privilege for the related document.  I don't --

16  we do not see a need for any response to that.

17      THE COURT:  All right.  Well -- and I'll take a look

18  at it and can.

19      So let's recap.  The -- the motion to extend the

20  deadlines -- let me see what number that is.  Unopposed motion

21  to extend case management deadlines, document 58, filed on

22  September 20th, 2018, is granted.

23      Then the -- the Foodonics -- the review of the

24  Foodonics privilege -- privilege log and any amended privilege

25  log shall be accomplished -- or the amendment of any privilege

1   log shall be accomplished within seven days.  And that is

2   October 12th, 2018.

3           And if there are documents that should have been

4   produced because they are non-privileged and they -- and they

5   shall be produced on October 12th, then October 17th will be

6   the deadline for the production of the GrayRobinson documents.

7   And we will have a -- another status conference on October

8   25th, at 10:30.

9           I think that -- I think that covers -- oh, and

10  then -- and then Friday, this Friday, the -- the 5th of October

11  will be the date by which, Mr. Wells, you'll file the response

12  to the objection, the claw-back issue.

13          I think that -- I think that -- I think that covers

14  everything.

15          Mr. Post?

16          MR. POST:  I think you were also going to have

17  GrayRobinson file a notice when they file the production?

18          THE COURT:  Yes.  They're going to file their notices

19  on those dates, on the two dates, on the 5th and the -- excuse

20  me, the 12th and the 17th.

21          I'll put all this in a little -- a brief order that I

22  hope I'll get out later today or first thing tomorrow.

23          Does that cover everything, Mr. Dix?

24          MR. DIX:  Yes, Your Honor.

25          THE COURT:  Mr. Post?

1          MR. POST:  Yes, sir.  Thank you.

2          THE COURT:  Mr. Wells?

3          MR. WELLS:  Yes, sir.

4          THE COURT:  All right.  Thank you-all.  We're in

5   recess.

6          COURT SECURITY OFFICER:  All rise.

7      (The digitally recorded proceedings concluded at

8   11:18 a.m.)

9                              - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **CERTIFICATE**

UNITED STATES DISTRICT COURT      )
                                  )
MIDDLE DISTRICT OF FLORIDA        )


        I hereby certify that the foregoing transcript is a

true and correct computer-aided transcription from the official

electronic sound recording of the proceedings in the

above-entitled matter.


        DATED this 19th day of November, 2018.



            s/Shannon M. Bishop

            Shannon M. Bishop, RDR, CRR, CRC

**TAB 38**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FOODONICS INTERNATIONAL, INC.,
a Florida corporation,

                Plaintiff,

vs.                                  Case No.  3:17-cv-1054-J-32JRK

DINA KLEMPF SROCHI,
as Trustee of the Laura Jean Klempf
Revocable Trust, a Florida Trust,

                Defendant.

_____

DINA KLEMPF SROCHI,
as Trustee of the Laura Jean Klempf
Revocable Trust, a Florida Trust, et al.,

                Counterclaim Plaintiffs,

vs.

FOODONICS INTERNATIONAL, INC.,
a Florida corporation, et al.,

                Counterclaim Defendants.

_____/

# O R D E R

      This cause came before the Court on October 2, 2018 for a discovery status hearing,

the record of which is incorporated herein.  After due consideration, it is

      **ORDERED:**

      1.      Foodonics International, Inc. ("Foodonics") shall produce to the Trustee(s) an

amended privilege log and any additional unprivileged documents no later than **October 12,**

**2018.**  A notice of compliance must be filed with the Court by this date as well.

2.     The GrayRobinson, PA documents shall be provided to the Trustees no later than **October 17, 2018.** A notice of compliance must be filed with the Court by this date as well.

3.     Foodonics shall respond to the Trust's Notice of Challenge to Foodonics' Privilege Claim to Clawback Document (Doc. No. 59) no later than **October 5, 2018**. By this same date, Foodonics shall provide the document directly to the chambers of the undersigned for in camera review (in the event that the privileged nature of it is still disputed).

4.     The Unopposed Motion to Extend Case Management Deadlines (Doc. No. 58), filed September 20, 2018, is **GRANTED**. A Second Amended Case Management and Scheduling Order will enter separately.

5.     The undersigned will hold another discovery status hearing on **Thursday, October 25, 2018 at 10:30 a.m.** in Courtroom 5D, Fifth Floor.  David Hancock, who is assisting counsel for Foodonics with technology issues, may appear telephonically by calling the Court's teleconferencing service at 1-888-684-8852 at least five minutes before the hearing is scheduled to begin. The access code is 2745123; the security code is 1025. **No later than 5:00 p.m. on Wednesday, October 24, 2018**, the parties shall file a joint notice advising the Court of the matters they wish to address during the status hearing.

**DONE AND ORDERED** at Jacksonville, Florida on October 4, 2018.

James R. Klindt
**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:
Counsel of Record

**TAB 39**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FOODONICS INTERNATIONAL, INC.,
a Florida corporation,

                Plaintiff,

vs.                                    Case No.  3:17-cv-1054-J-32JRK

DINA KLEMPF SROCHI,
as Trustee of the Laura Jean Klempf
Revocable Trust, a Florida Trust,

                Defendant.

_____

DINA KLEMPF SROCHI,
as Trustee of the Laura Jean Klempf
Revocable Trust, a Florida Trust, <u>et al.</u>,

                Counterclaim Plaintiffs,

vs.

FOODONICS INTERNATIONAL, INC.,
a Florida corporation, <u>et al.</u>,

                Counterclaim Defendants.
_____/

## <u>SECOND AMENDED CASE MANAGEMENT AND SCHEDULING ORDER</u>

      The Court, having granted the Unopposed Motion to Extend Case Management

Deadlines (Doc. Nos. 58, 62), now imposes the following deadlines and settings:

| | | |
|---|---|---|
| Motions to Add Parties or to Amend Pleadings | | May 31, 2019 |
| Disclosure of Expert Reports | Initial: <br> Rebuttal: | June 28, 2019 <br> August 12, 2019 |
| Discovery Deadline | | September 30, 2019 |

| | |
|---|---|
| Dispositive and <u>Daubert</u> Motions<br>(Responsedue 21 days after service unless otherwise ordered) | October 30, 2019 |
| All Other Motions Including Motions <u>In</u> <u>Limine</u> | March 19, 2020 |
| Joint Final Pretrial Statement | March 19, 2020 |
| Final Pretrial Conference            Date:<br>Time:<br>Judge: | March 25, 2020<br>10:00 a.m.<br>Hon. Timothy J. Corrigan |
| Trial            Term beginning:<br>Time:<br>Judge:<br>Courtroom:<br>Type/Estimated Length: | April 6, 2020<br>9:00 a.m.<br>Hon. Timothy J. Corrigan<br>10D<br>Jury/10 days |

In addition to the above deadlines and settings, the parties shall be governed by all other terms set forth in the Case Management and Scheduling Order (Doc. No. 17), entered February 2, 2018.

**DONE AND ORDERED** at Jacksonville, Florida on October 4, 2018.

*James R. Klindt*

**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:
Courtroom Deputy to Hon. Timothy J. Corrigan
Counsel of Record

**TAB 40**

**From:** James H. Post
**Sent:** Friday, October 5, 2018 12:12 PM
**To:** grier.wells@gray-robinson.com
**Cc:** david.hancock@gray-robinson.com; 'michael.santana@gray-robinson.com'; Chris Dix
**Subject:** Foodonics v. Klempf Trust - Deficient Production re: Telephone Text Messages of Jacques Klempf

Grier,

      We have reviewed the telephone text messages of Jacques Klempf which were produced by your firm on September 14, 2018. Of the 467 documents received on that date, there were only 90 documents containing text messages and those messages were limited by date to March and April of 2018.

      As you know, the date range that applies to our discovery requests is September 1, 2008 and January 19, 2018. Obviously, this production is deficient and requires explanation by your firm.

      We would like to have a meet and confer regarding this matter by telephone on Monday, October 8, 2018. We will want to know, among other things, the following:

1. Who was involved in the collection of Jacques Klempf's telephone text messages?

2. What was done? When?

3. The make and model of each of Jacques Klempf's mobile devices.

4. The location of any backups of data from Jacques Klempf's mobile devices (iCloud, iTunes, VerizonCloud/ATT Locker, laptop or desktop computer backups, etc.).

5. The date ranges and total number of text messages from Jacques Klempf's mobile devices that were preserved, and the dates on which the preservation occurred.

6. The dates on which the text messages were collected from Jacques Klempf's mobile devices and the names of the KLDiscovery technicians that collected the text messages.

      Please let me know today what time on Monday you will be available for this meet and confer.

Thank you,
Jim

James H. Post

S M I T H   H U L S E Y   &   B U S E Y

225 Water Street | Suite 1800 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

**From:** files@sendthisfile.com
**Date:** September 14, 2018 at 7:48:05 PM GMT+1
**To:** cdix@smithhulsey.com
**Subject: Secure File Transfer**
**Reply-To:** "david.hancock@gray-robinson.com" <david.hancock@gray-robinson.com>



**Sender:** david.hancock@gray-robinson.com
**Upload Date:** 2018-09-14 13:47:33.0
**Message:** We are hereby Producing text messages from Jacques Klempf's cellphone. They are being produced natively for the same reason we produced approx 45,000 documents to you without reviewing them; namely to cut down on the already extensive costs Mr. Klempf is incurring because of this litigation. Grier is stuck in an all-day mediation but will respond to your Sept. 7 emails as soon as possible.

Click the following link to download your file(s).

Click to Retrieve File(s)

iMessage +19048851926.7z
iMessage kjkeggs@aol.com.7z

If the above link is not clickable, copy and paste the following URL into your browser.

https://www.sendthisfile.com/ehYjMXnOBp2DY8lJjfpeeOP0

Note: These files will expire in 14 days from the time this email was generated.

Powered by www.SendThisFile.com