**TAB 51**

| | |
|---|---|
| **From:** | James H. Post |
| **Sent:** | Tuesday, October 23, 2018 3:48 PM |
| **To:** | grier.wells@gray-robinson.com |
| **Cc:** | david.hancock@gray-robinson.com; 'James.Nolan@gray-robinson.com'; |
| | 'Jay.Brennan@gray-robinson.com'; 'michael.santana@gray-robinson.com'; Chris Dix |
| **Subject:** | RE: Dixie Emails |

Grier,

Who presently has possession of Mr. Klempf's damaged phone? Will you consent to the appointment of a neutral forensic examiner (not KLDiscovery) to inspect all of Jacques Klempf's phones (past and present) to determine whether any additional ESI is available to be produced?

We would like a response to this request by 4:00 p.m. tomorrow.

Thank you,
Jim

James H. Post

SMITH HULSEY & BUSEY

Please note we have moved our office to the Wells Fargo Building on October 22, 2018. Please update your records with our new address:
One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

---

**From:** Grier Wells [mailto:Grier.Wells@gray-robinson.com]
**Sent:** Monday, October 22, 2018 5:35 PM
**To:** James H. Post <jpost@smithhulsey.com>; Chris Dix <cdix@smithhulsey.com>
**Cc:** David A. Hancock, CEDS <David.Hancock@gray-robinson.com>; James Nolan <James.Nolan@gray-robinson.com>; John M. "Jay" Brennan <Jay.Brennan@gray-robinson.com>; Michael R. Santana <Michael.Santana@gray-robinson.com>
**Subject:** FW: Dixie Emails

Jim and Chris:

Please see Dave Hancock's e-mail and attachment.

The dixieegg.com e-mails totaling approximately 130,000 have been collected as to all but two Foodonics employees. After applying search terms and other filters, the number has been reduced to 37,000. The vast majority of those are employees who would not be involved in any management activities in any way. We would suggest we send the e-mails from Dennis Hughes account which total about 4100. We are happy to share the names, job titles and total e-mails for each but it is likely Dennis will be the only who would have anything of a management nature.

The accounts for Dick Still and John Reese were not in the files. Neither we nor Jacques know why and we are contacting Microsoft to explore further. However, in the collections of others, and other devices, you should have most of them anyway.

As to text messages, Jacques had to replace a cell phone which was damaged. He thought the data on the phone had been retained but it apparently was not.

**Grier Wells | Complex Commercial, Employment and Construction Litigation**
**The Florida Bar Board Certified in Civil Trial Law**
G R A Y | R O B I N S O N

50 North Laura Street, Suite 1100 | Jacksonville, Florida 32202
T: 904-598-9929 | F: 904-598-9109 | D: 904-632-8478
E-mail | Website | Bio | vCard

Facebook | LinkedIn | Twitter

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

-----Original Message-----
From: David A. Hancock, CEDS
Sent: Monday, October 22, 2018 5:13 PM
To: Grier Wells
Subject: RE: Dixie Emails

Attached is the corrected load file with the metadata.

Dave

**TAB 52**

**James H. Post**

| | |
|---|---|
| **From:** | James H. Post |
| **Sent:** | Tuesday, October 23, 2018 5:10 PM |
| **To:** | grier.wells@gray-robinson.com |
| **Cc:** | david.hancock@gray-robinson.com; 'James.Nolan@gray-robinson.com'; |
| | 'Jay.Brennan@gray-robinson.com'; 'michael.santana@gray-robinson.com'; Chris Dix |
| **Subject:** | RE: Dixie Emails |

Grier,

Please tell us the "search terms and other filters" that you applied to reduce the DixieEgg.com email collection from approximately 130,000 down to 37,000. Please also provide the names and job titles for each of the employees whose accounts were included in the 130,000 collection.

In regard to the 37,000 DixieEgg.com emails, we request that you take the steps necessary to de-duplicate identical ESI within and across custodians, including ESI previously produced by Foodonics (as required by Court order), and produce them by October 31, 2018.

We further request the accounts for Dick Still and John Reese be located and included in the October 31 production.

In addition, we request that you collect and produce responsive ESI for the alternate email accounts and personal devices of Dick Still, including his mobile devices for the applicable time period (September 1, 2008 through January 19, 2018).

We would like your consent to the foregoing by 4:00 p.m. tomorrow.

Please advise,
Jim

James H. Post

SMITH  HULSEY  &  BUSEY

Please note we have moved our office to the Wells Fargo Building on
October 22, 2018. Please update your records with our new address:
One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com


YEARS
OF PRACTICE
EXCELLENCE

*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

**From:** James H. Post
**Sent:** Tuesday, October 23, 2018 3:48 PM
**To:** grier.wells@gray-robinson.com
**Cc:** david.hancock@gray-robinson.com; 'James.Nolan@gray-robinson.com' <James.Nolan@gray-robinson.com>;
'Jay.Brennan@gray-robinson.com' <Jay.Brennan@gray-robinson.com>; 'michael.santana@gray-robinson.com'
<michael.santana@gray-robinson.com>; Chris Dix <cdix@smithhulsey.com>
**Subject:** RE: Dixie Emails

Grier,

Who presently has possession of Mr. Klempf's damaged phone? Will you consent to the appointment of a neutral forensic examiner (not KLDiscovery) to inspect all of Jacques Klempf's phones (past and present) to determine whether any additional ESI is available to be produced?

We would like a response to this request by 4:00 p.m. tomorrow.

Thank you,
Jim

James H. Post

SMITH HULSEY & BUSEY

Please note we have moved our office to the Wells Fargo Building on
October 22, 2018. Please update your records with our new address:
One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

**From:** Grier Wells [mailto:Grier.Wells@gray-robinson.com]
**Sent:** Monday, October 22, 2018 5:35 PM
**To:** James H. Post <jpost@smithhulsey.com>; Chris Dix <cdix@smithhulsey.com>
**Cc:** David A. Hancock, CEDS <David.Hancock@gray-robinson.com>; James Nolan <James.Nolan@gray-robinson.com>;
John M. "Jay" Brennan <Jay.Brennan@gray-robinson.com>; Michael R. Santana <Michael.Santana@gray-robinson.com>
**Subject:** FW: Dixie Emails

Jim and Chris:

Please see Dave Hancock's e-mail and attachment.

The dixieegg.com e-mails totaling approximately 130,000 have been collected as to all but two Foodonics employees. After applying search terms and other filters, the number has been reduced to 37,000. The vast majority of those are employees who would not be involved in any management activities in any way. We

2

would suggest we send the e-mails from Dennis Hughes account which total about 4100. We are happy to share the names, job titles and total e-mails for each but it is likely Dennis will be the only who would have anything of a management nature.

The accounts for Dick Still and John Reese were not in the files. Neither we nor Jacques know why and we are contacting Microsoft to explore further. However, in the collections of others, and other devices, you should have most of them anyway.

As to text messages, Jacques had to replace a cell phone which was damaged. He thought the data on the phone had been retained but it apparently was not.

**Grier Wells | Complex Commercial, Employment and Construction Litigation**
**The Florida Bar Board Certified in Civil Trial Law**
**G R A Y | R O B I N S O N**

50 North Laura Street, Suite 1100 | Jacksonville, Florida 32202
**T: 904-598-9929 | F: 904-598-9109 | D: 904-632-8478**
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

-----Original Message-----
From: David A. Hancock, CEDS
Sent: Monday, October 22, 2018 5:13 PM
To: Grier Wells
Subject: RE: Dixie Emails

Attached is the corrected load file with the metadata.

Dave

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| FOODONICS INTERNATIONAL, INC., a Florida corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-1054-J-32JRK |
| | ) | |
| DINA KLEMPF SROCHI, as Trustee of the LAURA JEAN KLEMPF REVOCABLE TRUST, a Georgia trust, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |
| DINA KLEMPF SROCHI, as Trustee of the LAURA JEAN KLEMPF REVOCABLE TRUST, a Florida trust, and DENNIS L. BLACKBURN, as Assistant Trustee of the JEAN KLEMPF TRUST, | ) ) ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FOODONICS INTERNATIONAL, INC., a Florida corporation, and KEVIN JACQUES KLEMPF, | ) ) | |
| | ) | |
| Counterclaim Defendants. | ) | |
| ———————————————— | ) | |

## NOTICE RE: OCTOBER 25, 2018
## DISCOVERY STATUS HEARING

As required by the Court's August 22, 2018 Order (Doc. No. 57), the parties jointly write to inform Your Honor of the matters they would like to address during the status hearing on October 25, 2018.

I.    The Trust would like to discuss:

1.    The ongoing issues with the deficient production of ESI from Jacques Klempf and Foodonics (the "Jacques Klempf Parties"), including:

    a.    the failure to produce Jacques Klempf's mobile phone data;

    b.    the failure to produce any ESI from the DixieEgg.com email accounts for the former officers of Foodonics, including the Chief Financial Officer of Foodonics, Richard S. Still, and the General Manager of Florida Operations, John Reece;

    c.    the failure of the Jacques Klempf Parties to make reasonable efforts to de-duplicate identical ESI within and across custodians; and

    d.    the production of a privilege log for the Jacques Klempf Parties which identifies non-privileged ESI and documents which have been improperly withheld from production because they were disclosed or shared with non-parties;

    e.    the production of documents that are password protected without furnishing the necessary passwords.

2.    The ongoing issues with the deficient production of ESI from GrayRobinson, including:

    a.    the failure to produce any GrayRobinson ESI and documents prior to May 22, 2015; and

    b.    the production of a privilege log from GrayRobinson which:

<ol type="i">
<li>(i)     identifies non-privileged ESI and documents which have been improperly withheld from production because they were disclosed to or shared with non-parties; and</li>
<li>(ii)    fails to identify any responsive ESI and documents between September 1, 2008 through May 20, 2015 which were withheld as allegedly privileged.</li>
</ol>

3.     For the reasons set forth above, and to identify the facts necessary to assist the Court in determining whether the orders and procedures it adopted for managing discovery in this case have been followed by the Foodonics Parties, the Trust requests authorization to take the Rule 30(b)(6) depositions of Foodonics, GrayRobinson and Jacques Klempf regarding their compliance with the discovery requests and Court orders entered in this case. The proposed 30(b)(6) notice of deposition for Foodonics is attached as Exhibit A.

4.     In addition, we request that the Court appoint a neutral forensic examiner as a special master to investigate and report on the issues related to Jacques Klempf's mobile devices.

II.     The Jacques Klempf Parties would like to discuss [insert]

The parties look forward to discussing the above with Your Honor tomorrow.

SMITH HULSEY & BUSEY

By: /s/ *James H. Post*
    James H. Post
    Michael E. Demont
    R. Christopher Dix

Florida Bar Number 0175460
One Independent Drive, Suite 3300
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com
mdemont@smithhulsey.com
cdix@smithhulsey.com

Attorneys for Defendant/Counterclaim
    Plaintiffs, Dina Klempf Srochi, as
    Trustee of the Laura Jean Klempf
    Revocable Trust, and Dennis L.
    Blackburn, as Assistant Trustee of the
    Jean Klempf Trust

GRAYROBINSON, P.A.

By: /s/ *S. Grier Wells*
    S. Grier Wells

Florida Bar Number 203238
50 North Laura Street, Suite 1100
Jacksonville, Florida 32202
(904) 598-9929
(904) 598-9109 (facsimile)
grier.wells@gray-robinson.com

GRAYROBINSON, P.A.
John M. Brennan
Michael R. Santana
Florida Bar Number 297951
Florida Bar Number 42124
301 East Pine Street, Suite 1400
Orlando, Florida 32802
(407) 843-8880
(407) 244-5690 (facsimile)
jay.brennan@gray-robinson.com
michael.santana@gray-robinson.com

Attorneys for Plaintiff/Counterclaim
    Defendants, Foodonics International,
    Inc. and Kevin Jacques Klempf

<u>Certificate of Service</u>

I certify that on this _____ day of October, 2018, I electronically filed the foregoing with the Clerk of Court through the Court's CM/ECF electronic notification system, which will send a Notice of Electronic Filing to all CM/ECF participants in this case. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:  none.

_____ <u>/s/ <em>James H. Post</em></u>
Attorney

1016459

**TAB 53**

**James H. Post**

| | |
|---|---|
| **From:** | James H. Post |
| **Sent:** | Wednesday, October 24, 2018 12:24 PM |
| **To:** | 'Grier Wells' |
| **Cc:** | David A. Hancock, CEDS; James Nolan; Chris Dix |
| **Subject:** | RE: GR Production |

Grier,

Neither the GrayRobinson ESI production nor the GrayRobinson Privilege log appear to contain any ESI prior to May 2015.

Please explain why no ESI was produced or identified prior to that date.

Jim

James H. Post

SMITH HULSEY & BUSEY

Please note we are moving to our new office in the Wells Fargo Building on October 22, 2018. Please update your records with our new address:
1 Independent Drive, Suite 3300, Jacksonville, FL 32202.
225 Water Street | Suite 1800 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

**From:** Grier Wells [mailto:Grier.Wells@gray-robinson.com]
**Sent:** Friday, October 19, 2018 5:54 PM
**To:** James H. Post <jpost@smithhulsey.com>; Chris Dix <cdix@smithhulsey.com>
**Cc:** David A. Hancock, CEDS <David.Hancock@gray-robinson.com>; James Nolan <James.Nolan@gray-robinson.com>
**Subject:** FW: GR Production

Jim:

Dave Hancock and I have tried to call you several times this afternoon. I understand Smith Hulsey has have been moving this week and communications may be affected.

We were getting ready to send the GrayRobinson documents and privilege log when a last-minute check revealed some errors. Essentially, we discovered our documents to be produced included additional privileged materials and documents totally unrelated to Foodonics or Jacques but to other client s of Gray Robinson. We are cleaning it up and hopefully will have it to you over the weekend.

I will be here only a short while longer but you can reach me on my cell if you like. 716-7370.

**Grier Wells | Complex Commercial, Employment and Construction Litigation**
**The Florida Bar Board Certified in Civil Trial Law**
**G R A Y | R O B I N S O N**

50 North Laura Street, Suite 1100 | Jacksonville, Florida 32202
**T:** 904-598-9929 | **F:** 904-598-9109 | **D:** 904-632-8478
E-mail | Website | Bio | vCard

**Facebook** | **LinkedIn** | **Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**From:** Grier Wells
**Sent:** Friday, October 19, 2018 4:11 PM
**To:** James H. Post (jpost@smithhulsey.com); Chris Dix (cdix@smithhulsey.com)
**Cc:** David A. Hancock, CEDS; James Nolan
**Subject:** GR Production

Can one of you give me a call?

632-8478

**TAB 54**

## James H. Post

| | |
|---|---|
| **From:** | James H. Post |
| **Sent:** | Wednesday, October 24, 2018 3:14 PM |
| **To:** | grier.wells@gray-robinson.com |
| **Cc:** | david.hancock@gray-robinson.com; 'Jay.Brennan@gray-robinson.com'; 'michael.santana@gray-robinson.com'; Chris Dix |
| **Subject:** | RE: Foodonics Privilege Log |

Grier,

We sent you the email below on October 2, 2018, identifying non-parties whose communications did not appear to be privileged. We did not receive any response to our email.

The amended privilege log produced by Foodonics on October 17, 2018 still contained communications with the following non-parties:

Cal-Maine employees with emails @cmfoods.com
BB&T employees with emails @bbandt.com or @bbtscottstringfellow.com
Fraser Burns (fburns@forkingamazingrestaurants.com and fburns@ocenture.com)
Other Forking Amazing Restaurants employees with emails @forkingamazingrestaurants.com
Lou Vaccaro (lou.vaccaro@amerisbank.com)
Sean Magee (sean.magee@amerisbank.com)
Other Ameris Bank employees with emails @amerisbank.com
Mark Frisch (mfrisch@seabest.com)
Mail Delivery Subsystem (mailer-daemon@googlemail.com)
Mail Delivery Subsystem (MAILER-DAEMON@mx0a-001d4d01.pphosted.com)
Nancy Ferdman (nferdman@bamjax.com)
Other BAM employees with emails @bamjax.com
Susan Miller (susan@boldcitybrewery.com)
Colin Edwards (cedwards@burlockandbarrel.com)
Roger Bagalacsa (roger.m.bagalacsa@irs.gov)
Russell Beard (rbeard@brinkmere.com)
Robert Monsky (hrmonsky@firstfloridacapital.com)
Reggie Dalton (rdalton11@tampabay.rr.com)


The amended privilege log produced on October 17 also contained non-privileged communications with the following additional non-parties:

Isaura Costa (icosta@cmfoods.com)
Jeff Hardin (jhardin@cmfoods.com)
Patrice Long (plong@cmfoods.com)
Matt Mannick (mmannick@forkingamazingrestaurants.com)
Lauren Cate (lcate@forkingamazingrestaurants.com)
Alexandria Klemf (aklempf@forkingamazingrestaurants.com and aklempf@bamjax.com)
Amy Williamson (amy.williamson@amerisbank.com)
Kendall Spencer (kendall.spencer@amerisbank.com)
Nicole White (nwhite@bamjax.com)

Billy Morrow (bmorrow@bdo.com)
Heather Klempf (hklempf6@gmail.com)
Mack Craft (mackcraft@yahoo.com)
Mark Carden (mcarden@bankunited.com)
Mark Klempf (mklempf@gmail.com)
Jim Mattera (james.mattera@cbiz.com)
Mike Robinette (mrobinette@cbiz.com)
Nina Medina (nmedina@bdo.com)
Patrick Wallace (pwallace@bdo.com)
Sam Jacobson (sam@jacobsonwright.com)
Sam Oosterhoudt (sam@lcmg.info)
Sarah Louviere (slouviere@bdo.com)
Scott Hall (scott.hall@amerisbank.com)
aklempf@gmail.com
aixcater@bistrox.com
chad@ovinte.com
chad@wineloungeconcepts.com
cmunsey@vingevity.com
dgdorsey@bb&t.com
Ggilley@BBandT.com
Pkay@BBandT.com

     The amended privilege log is, therefore, still deficient -- it still reflects a multitude of non-privileged communications with third-parties.

     We therefore request that your firm (i) prepare and produce a further second amended privilege log which removes communications with the non-parties identified above and (ii) produce all non-privileged communications with those persons by October 31, 2018.

     Please confirm by reply email today that you will comply with this request by October 31, 2018.

Thank you,
Jim

James H. Post

S M I T H   H U L S E Y   &   B U S E Y

Please note we have moved our office to the Wells Fargo Building on
October 22, 2018. Please update your records with our new address:
One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

**From:** Chris Dix
**Sent:** Tuesday, October 2, 2018 5:43 PM
**To:** Grier Wells <Grier.Wells@gray-robinson.com>
**Cc:** David A. Hancock, CEDS <David.Hancock@gray-robinson.com>; John M. "Jay" Brennan <Jay.Brennan@gray-robinson.com>; Michael R. Santana <Michael.Santana@gray-robinson.com>; James H. Post <jpost@smithhulsey.com>
**Subject:** RE: Foodonics Privilege Log

Grier,

As noted during the hearing earlier today, the privilege log produced yesterday contains communications which do not appear to be privileged, including communications with the following:

Dennis Blackburn (dlb@blackburnco.org)
Dina Klempf (dinaklempf@gmail.com)
Dolph Baker (dbaker@cmfoods.com) and other Cal-Maine employees with emails @cmfoods.com
Steve Brust (sebrust@sgrlaw.com)
Dan Edelman (dan.edelman@dhgllp.com) and Mathew Edelman (matthew.edelman@dhgllp.com)
Todd Bishop, Matthew Turner and other employees of BB&T (emails @bbandt.com and @bbtscottstringfellow.com)
Fraser Burns (fburns@forkingamazingrestaurants.com and fburns@ocenture.com) and other employees of Forking Amazing Restaurants (emails @forkingamazingrestaurants.com)
Cecil Gibson (cecil.gibson@amerisbank.com), Lou Vaccaro (Lou.Vaccaro@amerisbank.com), Sean Magee (Sean.Magee@amerisbank.com) and other employees of Ameris Bank (emails @amerisbank.com)
Mac Holley (mholley@heritagecapitalgroup.com)
Mark Frisch (mfrisch@seabest.com)
Scott Parker (sparker@elkinsllc.com) and Rob Crowe (rob@elkinsconstructors.com)
Steven Jones (sjones@gatehospitality.com)
Mail Delivery Subsystem mailer-daemon@googlemail.com
Mail Delivery Subsystem MAILER-DAEMON@mx0a-001d4d01.pphosted.com
Nancy Ferdman (nferdman@bamjax.com) and any other employees of BAM (emails @bamjax.com)
Marita Mauriello (maritamauriello@gmail.com)
Susan Miller (susan@boldcitybrewery.com)
Colin Edwards (cedwards@burlockandbarrel.com)
Roger Bagalacsa (roger.m.bagalacsa@irs.gov)
Russell Beard (rbeard@brinkmere.com)
Sean Allen (sallen@glassratner.com)
Keith Goldfaden (kg@naihallmarkpartners.com), Alex Coley (ac@naihallmarkpartners.com) and Jeff Conn (jc@naihallmarkpartners.com)
Patrick McKinley (patrickmckinley@regencycenters.com)
Robert Monsky (hrmonsky@firstfloridacapital.com)
Reggie Dalton (rdalton11@tampabay.rr.com)

The foregoing list is not comprehensive. As directed by the Court, your firm should review, identify and produce all non-privileged documents with respect to any and all persons including, but not limited to, those identified in the foregoing list.

Thanks,

Chris Dix

SMITH HULSEY & BUSEY

225 Water Street | Suite 1800 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7730

3

cdix@smithhulsey.com | www.smithhulsey.com



*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.*

**From:** Grier Wells [mailto:Grier.Wells@gray-robinson.com]
**Sent:** Monday, October 1, 2018 10:52 AM
**To:** James H. Post <jpost@smithhulsey.com>; Chris Dix <cdix@smithhulsey.com>
**Cc:** David A. Hancock, CEDS <David.Hancock@gray-robinson.com>; John M. "Jay" Brennan <Jay.Brennan@gray-robinson.com>; Michael R. Santana <Michael.Santana@gray-robinson.com>
**Subject:** Foodonics Privilege Log

Jim and Chris:

The privilege log for Foodonics documents previously produced is attached.

We should have the "Personal" documents to send later today as well.

**Grier Wells | Complex Commercial, Employment and Construction Litigation**
**The Florida Bar Board Certified in Civil Trial Law**
**G R A Y | R O B I N S O N**

50 North Laura Street, Suite 1100 | Jacksonville, Florida 32202
**T: 904-598-9929 | F: 904-598-9109 | D: 904-632-8478**
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**TAB 55**

# James H. Post

| | |
|---|---|
| **From:** | James H. Post |
| **Sent:** | Wednesday, October 24, 2018 3:17 PM |
| **To:** | grier.wells@gray-robinson.com |
| **Cc:** | david.hancock@gray-robinson.com; 'Jay.Brennan@gray-robinson.com'; 'michael.santana@gray-robinson.com'; Chris Dix |
| **Subject:** | RE: Jean Klempf Trust - GrayRobinson Prod VOL001  Privilege Log |

Grier,

On Saturday, October 20, 2018 you provided us a privilege log for the GrayRobinson production.  A cursory review of the privilege log reflects communications shared with non-parties, resulting in the waiver of any privilege.  These non-parties include, but are not limited to, the following people and email addresses:

Cal-Maine employees with emails @cmfoods.com
BAM employees with emails @bamjax.com
Forking Amazing Restaurants employees with emails @forkingamazingrestaurants.com
Colin Edwards (cedwards@burlockandbarrel.com)
Fraser Burns (fburns@forkingamazingrestaurants.com and fburns@ocenture.com)
Nancy Ferdman (nferdman@bamjax.com)
Alexandria Klempf (aklempf@forkingamazingrestaurants.com and aklempf@bamjax.com)
Bill Dias (bdias@smki.net)
Dorothy Merrick (dmerrick@hq1.com)
Ian Haensly (ihaensly@burlockandbarrel.com)
Jess Wright (jwright@smki.net)
Joe Indriolo' (jindriolo@pinestreetrps.com)
Karen Koch (kkoch@smki.net)
Lauren Cate (lcate@forkingamazingrestaurants.com)
Lisa Smith (lsmith@smki.net)
Marc Klempf (mklempf@gmail.com)
Mark Frisch (mfrisch@seabest.com)
Mary Kimbrough (mkimbrough@cmfoods.com)
Matt Mannick (mmannick@forkingamazingrestaurants.com)
Nicole White (nwhite@bamjax.com)
Rob Holladay (rholladay@cmfoods.com)
Scott Moore (focused2be@gmail.com)
Steve Rosenbloom (srosenbloom@smki.net)
Ty Taylor (ttaylor@smki.net)
Zim (zim@oesjax.com)
ac@hallmarkpartners.com
aida_osmanovic@yahoo.com
gattwood@adf.com
kg@hallmarkpartners.com

This privilege log is, therefore, deficient.

We request that your firm (i) prepare and produce an amended privilege log which removes communications with the non-parties identified above and (ii) produce all non-privileged communications with these persons by October 31, 2018.

Please confirm that you will comply with this request by October 31, 2018.

Thank you,
Jim

James H. Post

S M I T H   H U L S E Y   &   B U S E Y

Please note we have moved our office to the Wells Fargo Building on
October 22, 2018. Please update your records with our new address:
One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the
intended recipient, please immediately advise the sender by reply email that this message has been inadvertently
transmitted to you and delete this email from your system. Thank you for your cooperation.*

**From:** David A. Hancock, CEDS [mailto:David.Hancock@gray-robinson.com]
**Sent:** Saturday, October 20, 2018 1:46 AM
**To:** James H. Post <jpost@smithhulsey.com>; Chris Dix <cdix@smithhulsey.com>
**Cc:** Grier Wells <Grier.Wells@gray-robinson.com>
**Subject:** Jean Klempf Trust - GrayRobinson Prod VOL001 Privilege Log

Gentlemen,

As Grier mentioned in his email and the voicemails he left on Friday, we had some unforeseen issues/anomalies with our
Production and Privilege Log which caused us to delay sending them to you.

Because the Production is too large to attach to an email, it will be sent separately via GrayRobinson's Large File Transfer
utility.

Attached is the Privilege Log.

The password for both .zip files is KLDisco2018!

Dave


**David A. Hancock, CEDS | Manager of Litigation Support and eDiscovery Services**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145 | **D:** 813-273-5150
E-mail | Website | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**TAB 56**

# James H. Post

| | |
|---|---|
| **From:** | James H. Post |
| **Sent:** | Wednesday, October 24, 2018 4:38 PM |
| **To:** | grier.wells@gray-robinson.com |
| **Cc:** | david.hancock@gray-robinson.com; 'James.Nolan@gray-robinson.com'; 'Jay.Brennan@gray-robinson.com'; 'michael.santana@gray-robinson.com'; Chris Dix |
| **Subject:** | Dixie Emails |
| **Attachments:** | Notice of 30(b)(6) deposition of Foodonics.pdf; Notice of 30(b)(6) deposition of GrayRobinson.pdf; Notice of Deposition of Jacques Klempf.pdf |

Grier,

Due to the multitude of errors, deficiencies and delays in the ESI production by Foodonics, Jacques Klempf and GrayRobinson, we have determined that limited discovery regarding the production of ESI by your clients and your firm is necessary and appropriate.

Accordingly, attached are proposed deposition notices for Foodonics, Jacques Klempf and your firm. These depositions will be limited to the discovery issues in this case and will not address the merits of the claims or defenses of the parties.

The tentative dates for these depositions are November 7, 8 and 9. (We will, of course, attempt to accommodate the schedules of the witnesses and counsel as reasonably necessary).

Please confirm by reply email today that your clients and your firm will consent to these depositions.

Thank you,
Jim

James H. Post

SMITH HULSEY & BUSEY

Please note we have moved our office to the Wells Fargo Building on October 22, 2018. Please update your records with our new address:
One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

**From:** James H. Post
**Sent:** Tuesday, October 23, 2018 5:10 PM
**To:** grier.wells@gray-robinson.com

1

**Cc:** david.hancock@gray-robinson.com; 'James.Nolan@gray-robinson.com' <James.Nolan@gray-robinson.com>;
'Jay.Brennan@gray-robinson.com' <Jay.Brennan@gray-robinson.com>; 'michael.santana@gray-robinson.com'
<michael.santana@gray-robinson.com>; Chris Dix <cdix@smithhulsey.com>
**Subject:** RE: Dixie Emails

Grier,

Please tell us the "search terms and other filters" that you applied to reduce the DixieEgg.com email collection from approximately 130,000 down to 37,000. Please also provide the names and job titles for each of the employees whose accounts were included in the 130,000 collection.

In regard to the 37,000 DixieEgg.com emails, we request that you take the steps necessary to de-duplicate identical ESI within and across custodians, including ESI previously produced by Foodonics (as required by Court order), and produce them by October 31, 2018.

We further request the accounts for Dick Still and John Reese be located and included in the October 31 production.

In addition, we request that you collect and produce responsive ESI for the alternate email accounts and personal devices of Dick Still, including his mobile devices for the applicable time period (September 1, 2008 through January 19, 2018).

We would like your consent to the foregoing by 4:00 p.m. tomorrow.

Please advise,
Jim

James H. Post

SMITH HULSEY & BUSEY

Please note we have moved our office to the Wells Fargo Building on
October 22, 2018. Please update your records with our new address:
One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

**From:** James H. Post
**Sent:** Tuesday, October 23, 2018 3:48 PM
**To:** grier.wells@gray-robinson.com
**Cc:** david.hancock@gray-robinson.com; 'James.Nolan@gray-robinson.com' <James.Nolan@gray-robinson.com>;
'Jay.Brennan@gray-robinson.com' <Jay.Brennan@gray-robinson.com>; 'michael.santana@gray-robinson.com'

<michael.santana@gray-robinson.com>; Chris Dix <cdix@smithhulsey.com>
**Subject:** RE: Dixie Emails

Grier,

Who presently has possession of Mr. Klempf's damaged phone? Will you consent to the appointment of a neutral forensic examiner (not KLDiscovery) to inspect all of Jacques Klempf's phones (past and present) to determine whether any additional ESI is available to be produced?

We would like a response to this request by 4:00 p.m. tomorrow.

Thank you,
Jim

James H. Post

SMITH HULSEY & BUSEY

Please note we have moved our office to the Wells Fargo Building on October 22, 2018. Please update your records with our new address:
One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

**From:** Grier Wells [mailto:Grier.Wells@gray-robinson.com]
**Sent:** Monday, October 22, 2018 5:35 PM
**To:** James H. Post <jpost@smithhulsey.com>; Chris Dix <cdix@smithhulsey.com>
**Cc:** David A. Hancock, CEDS <David.Hancock@gray-robinson.com>; James Nolan <James.Nolan@gray-robinson.com>; John M. "Jay" Brennan <Jay.Brennan@gray-robinson.com>; Michael R. Santana <Michael.Santana@gray-robinson.com>
**Subject:** FW: Dixie Emails

Jim and Chris:

Please see Dave Hancock's e-mail and attachment.

The dixieegg.com e-mails totaling approximately 130,000 have been collected as to all but two Foodonics employees. After applying search terms and other filters, the number has been reduced to 37,000. The vast majority of those are employees who would not be involved in any management activities in any way. We would suggest we send the e-mails from Dennis Hughes account which total about 4100. We are happy to share the names, job titles and total e-mails for each but it is likely Dennis will be the only who would have anything of a management nature.

The accounts for Dick Still and John Reese were not in the files. Neither we nor Jacques know why and we are

3

contacting Microsoft to explore further. However, in the collections of others, and other devices, you should have most of them anyway.

As to text messages, Jacques had to replace a cell phone which was damaged. He thought the data on the phone had been retained but it apparently was not.

**Grier Wells | Complex Commercial, Employment and Construction Litigation**
**The Florida Bar Board Certified in Civil Trial Law**
**G R A Y | R O B I N S O N**

50 North Laura Street, Suite 1100 | Jacksonville, Florida 32202
**T:** 904-598-9929 | **F:** 904-598-9109 | **D:** 904-632-8478
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

-----Original Message-----
From: David A. Hancock, CEDS
Sent: Monday, October 22, 2018 5:13 PM
To: Grier Wells
Subject: RE: Dixie Emails

Attached is the corrected load file with the metadata.

Dave

**TAB 57**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| FOODONICS INTERNATIONAL, INC., a Florida corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-1054-J-32JRK |
| | ) | |
| DINA KLEMPF SROCHI, as Trustee of the LAURA JEAN KLEMPF REVOCABLE TRUST, a Georgia trust, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| DINA KLEMPF SROCHI, as Trustee of the LAURA JEAN KLEMPF REVOCABLE TRUST, a Florida trust, and DENNIS L. BLACKBURN, as Assistant Trustee of the JEAN KLEMPF TRUST, | ) ) ) ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FOODONICS INTERNATIONAL, INC., a Florida corporation, and KEVIN JACQUES KLEMPF, | ) ) | |
| | ) | |
| Counterclaim Defendants. | ) | |
| | ) | |

**NOTICE RE: OCTOBER 25, 2018**
**<u>DISCOVERY STATUS HEARING</u>**

As required by the Court's August 22, 2018 Order (Doc. No. 57), the Trust writes

to inform Your Honor of the matters it would like to address during the status hearing on

October 25, 2018.

I.      The Trust would like to discuss:

1.      The ongoing issues with the deficient production of ESI from Jacques Klempf and Foodonics (the "Jacques Klempf Parties"), including:

        a.      the failure to produce Jacques Klempf's mobile phone data;

        b.      the failure to produce any ESI from the DixieEgg.com email accounts for the former officers and employees of Foodonics, including the Chief Financial Officer of Foodonics, Richard S. Still, and the General Manager of Florida Operations, John Reece;

        c.      the production of a privilege log for the Jacques Klempf Parties which identifies non-privileged ESI and documents which have been improperly withheld from production because they were disclosed to or shared with non-parties; and

        d.      the production of documents that are password protected without furnishing the necessary passwords.

2.      The ongoing issues with the deficient production of ESI from GrayRobinson, including:

        a.      the failure to produce any GrayRobinson ESI and documents prior to May 22, 2015; and

        b.      the production of a privilege log from GrayRobinson which:

            (i)      identifies non-privileged ESI and documents which have been improperly withheld from production because they were disclosed to or shared with non-parties; and

(ii)     fails to identify any responsive ESI and documents between September 1, 2008 through May 20, 2015 which were withheld as purportedly privileged.

3.      For the reasons set forth above, and to identify the facts necessary to assist in the determination as to whether the orders and procedures adopted by this Court for managing discovery in this case have been followed by the Foodonics Parties, the Trust requests authorization to take the Rule 30(b)(6) depositions of Foodonics, GrayRobinson and Jacques Klempf regarding their compliance with the discovery requests and Court orders entered in this case.  The proposed 30(b)(6) notice of deposition for Foodonics is attached as Exhibit A.[1 and 2]

4.      In addition, we request that the Court appoint a neutral forensic examiner as a special master to investigate and report on the issues related to Jacques Klempf's mobile devices.

II.    The Trust received no input from GrayRobinson regarding the matters, if any, the Jacques Klempf Parties would like to discuss.

The parties look forward to discussing the above with Your Honor tomorrow.

---

[1] The deposition notices for Jacques Klempf and GrayRobinson will be almost identical to the deposition notice for Foodonics.

[2] The Trust requests leave of Court to seek permission to exclude these three depositions from the 10 deposition limit per party under Rule 30(a)(2), Federal Rules of Civil Procedure.

SMITH HULSEY & BUSEY


By: _____/s/ *James H. Post*_____
       James H. Post
       Michael E. Demont
       R. Christopher Dix

Florida Bar Number 0175460
One Independent Drive, Suite 3300
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com
mdemont@smithhulsey.com
cdix@smithhulsey.com

Attorneys for Defendant/Counterclaim
   Plaintiffs, Dina Klempf Srochi, as
   Trustee of the Laura Jean Klempf
   Revocable Trust, and Dennis L.
   Blackburn, as Assistant Trustee of the
   Jean Klempf Trust

<u>Certificate of Service</u>

I certify that on this 24th day of October, 2018, I electronically filed the foregoing with the Clerk of Court through the Court's CM/ECF electronic notification system, which will send a Notice of Electronic Filing to all CM/ECF participants in this case.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:  none.



/s/ *James H. Post*

Attorney

1016459

**TAB 58**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL,        Jacksonville, Florida
INC., a Florida corporation,
                                Case No. 3:17-cv-1054-J-32JRK
        Plaintiff,
                                October 25, 2018
vs.
                                10:25 a.m.
DINA KLEMPF SROCHI, as
Trustee of the Laura Jean       Courtroom No. 5D
Klempf Revocable Trust, a
Florida Trust,

        Defendant.
_____


DIGITALLY RECORDED DISCOVERY STATUS HEARING
BEFORE THE HONORABLE JAMES R. KLINDT
UNITED STATES MAGISTRATE JUDGE


COURT REPORTER:

        Shannon M. Bishop, RDR, CRR, CRC
        221 North Hogan Street, #150
        Jacksonville, Florida  32202
        Telephone:  (904)549-1307
        dsmabishop@yahoo.com

    (Proceedings reported by mechanical stenography;
transcript produced by computer.)

A P P E A R A N C E S

PLAINTIFF'S COUNSEL:

**SAMUEL GRIER WELLS, ESQ.**
GrayRobinson, PA
50 North Laura Street, Suite 1100
Jacksonville, FL  32202

DEFENSE COUNSEL:

**JAMES H. POST, ESQ.**
**R. CHRISTOPHER DIX, ESQ.**
Smith, Hulsey & Busey
One Independent Drive
Suite 3300
Jacksonville, FL  32202-3315

ALSO PRESENT:

David Hancock (via telephone)

1          P R O C E E D I N G S

2     October 25, 2018                          10:25 a.m.

3                        - - -

4          COURT SECURITY OFFICER:  ...Court in and for the

5     Middle District of Florida is now in session.  The Honorable

6     James R. Klindt presiding.

7          Please be seated.

8          THE COURT:  All right.  Good morning.

9          MR. WELLS:  Good morning, Your Honor.

10         MR. POST:  Good morning.

11         THE COURT:  This is *Foodonics International, Inc.,*

12    *against Dina Klempf Srochi, as Trustee of the Laura Jean Klempf*

13    *Revocable Trust*, Case No. 3:17-cv-1054-J-32JRK.

14         If you-all would announce your appearances, please,

15    starting with the Plaintiff.

16         MR. WELLS:  Good morning, Your Honor.  Grier Wells on

17    behalf of the Plaintiff, Foodonics.  And I think Mr. Hancock is

18    on the phone as well.

19         THE COURT:  All right.  Good morning.

20         MR. POST:  Good morning, Your Honor.  May it please

21    the Court?

22         James Post and Chris Dix are from Smith Hulsey &

23    Busey, on behalf of the Laura Jean Trust.

24         THE COURT:  All right.  Thank you.

25         We're set for a status regarding discovery.  I

 1   think -- I think this is the third one we've had.  And I might

 2   be wrong.  It could be the fourth.  I stopped counting at some

 3   point.

 4          I did receive a notice yesterday, document 68, and

 5   it's -- it was filed ex parte.  And I -- I assumed it was filed

 6   ex parte because the Trust received no input from GrayRobinson

 7   regarding these matters.

 8          Was that the basis of that, Mr. Post?

 9          MR. POST:  That's correct, Your Honor.

10          THE COURT:  All right.  The one challenge that we

11   have with the electronic filing system -- as soon as something

12   is labeled "ex parte," then it's really filed under seal, and

13   so it's not part of the public docket.

14          So I understand why you filed it ex parte, but I

15   think, unless there's an objection, I'll just direct the clerk

16   to file it on the public record.

17          MR. POST:  No objection, Your Honor.

18          And this morning, when I got in the office, I noticed

19   that that might have been part of the issues.  So I resent it

20   this morning to GrayRobinson.

21          THE COURT:  All right.  Thank you.

22          And you did get it, Mr. Wells?

23          MR. WELLS:  Yes, sir.  We actually got it last

24   evening, about the time it was filed.  If I may respond to the

25   comment about GrayRobinson not having responded?

1          THE COURT:  You can now or later.

2          MR. WELLS:  Okay.  I'll do it later.

3          THE COURT:  Yeah, yeah.  Everybody will get a chance.

4   Let me just make a couple of comments, though, about this.

5   Because when you-all are addressing these various issues, you

6   can address some of the things that I've noticed or that -- if

7   you choose to.

8          In paragraph I -- Roman numeral I(1), it states, "The

9   ongoing issues with the deficient production of ESI" -- and

10  then it -- it says, "Including, (a), the failure to provide

11  Jacques Klempf's mobile phone data."

12         And I wasn't clear what that -- that was meant to --

13  to be.  In other words, what is the phone data?

14         I did previously order that the -- that the -- that

15  the text messages be produced, but I didn't go beyond that in

16  the order.

17         So if mobile phone data is meant -- meant to be text

18  message, then -- then we can talk about that.  If it goes

19  beyond that, then it may be something that I haven't ordered be

20  produced.

21         So that's -- that's one thing that I noticed.  And I

22  think I ordered that in the -- I ordered that the text messages

23  be produced no later than September 7th, 2018.

24         That was in the August 22nd, 2018 order.

25         And then as to (b), "the failure to produce any ESI

1  from DixieEgg.com e-mail accounts," I was trying to recall the

2  discussion we had last time, but it -- and I don't have a great

3  recollection of it.

4  But it seemed to me that Mr. Wells was asking that --

5  that some of this information -- or a search for this

6  information be delayed until it could be determined if other

7  items produced actually covered these matters.

8  So I don't -- I don't think there was any order -- I

9  don't think I ordered that -- that what is in (b) regarding

10  DixieEgg.com be produced.  It seemed to me that was something

11  we were working toward a resolution of that without an order

12  having been entered.

13  And then as to (c), "the production of a privilege

14  log for the Jacques Klempf Parties which identifies

15  non-privileged ESI," I was -- again, my recollection was

16  that -- that Mr. Wells was going to re-evaluate the privilege

17  log in that regard and -- and possibly submit a revised one.

18  So those -- those are the comments I wanted to make

19  about that.

20  And then as to -- as to paragraph (4), requesting the

21  appointment of a special master, again, that's going to have to

22  be done by way of a motion for Judge Corrigan to consider,

23  so -- and I'm going to set a motion deadline today to deal with

24  a number of these issues, because I think that -- I think it's

25  going to be necessary to do that.

1    So, anyway, Mr. Post, you or Mr. Dix -- who's going

2  to address these matters?

3        MR. POST:  Thank you.  Mr. Dix will address them.

4        THE COURT:  All right.  Thank you.

5        MR. DIX:  May it please the Court?

6        THE COURT:  Yes.

7        MR. DIX:  Your Honor, at our last status conference

8  on October 2nd, we did identify and address several issues

9  related to the production of ESI by Foodonics and Jacques

10  Klempf and the attorneys at GrayRobinson.

11    What we have identified in our notice for today is a

12  combination of issues that have previously been addressed, as

13  well as issues that have either developed or come to light as a

14  result of events that have transpired subsequent to the

15  October 2nd status conference.

16    And so in some respects you're right that the issues

17  we've identified in our notice don't directly correspond to

18  previous orders that you entered, but they're as the result of

19  new information that we have.

20        THE COURT:  Okay.

21        MR. DIX:  Before we get into all the details, I do

22  want to provide a very high-level summary of what we're asking

23  for today.  Two things, Your Honor.

24    One, that you continue to direct Foodonics, Jacques

25  Klempf, and GrayRobinson to comply with their discovery

1    obligations in this case.

2           That includes the specific things that you've

3    directed them to do in previous case management orders, but

4    also their general obligations and general duties of discovery

5    that apply under the federal rules in any case.

6           THE COURT:  Well, let me just say this.  You know --

7    and I've never been known for a great deal of patience anyway,

8    but I'm kind of running out of patience with -- with the whole

9    situation.

10          And I say -- by way of example, Foodonics was

11   required to produce an amended privilege log and any additional

12   unprivileged documents no later than October 12, 2018.

13          "A notice of compliance must be filed with the Court

14   by that date as well."

15          The notice was filed on October 15th.  And in the

16   notice they hadn't produced everything by October 12th.

17          You pointed out last time that my orders seem to mean

18   nothing and -- and I have to say that what has happened, I

19   guess, confirms to some degree what you said.

20          On -- GrayRobinson was supposed to provide to the

21   trustees no later than October 17th certain documents.  A

22   notice of compliance was to be filed by that date.

23          The compliance notice was filed on October 22nd,

24   2018, and stated that as of October 19th and 20th the -- the

25   documents had been provided.

1     So I'm -- you know, I'm kind of at a loss -- I'm not

2    really at a loss.  I've got a plan.  And I'm going to listen to

3    everything you-all have to say.  And it may change my plan.

4          But I can remind -- I can remind them and tell them,

5    and I can remind you and tell you, but what we're going to have

6    to do is get to a point where there are consequences for not

7    complying with Court orders.  And that's just where we have to

8    go with this.  And that's as to everyone.

9          So I'll remind them, but I don't know what good the

10   reminder is going to do.  But go ahead.

11         MR. DIX:  Thank you, Your Honor.

12         The second big thing that we would ask you to do

13   today is direct for depositions to occur.

14         Now, in this case we have a moratorium on depositions

15   until the discovery is complete, but we're asking for -- we've

16   provided 30(b)(6) notices to Mr. Wells.

17         We're asking for permission to take limited discovery

18   about what has happened in the discovery in this case from

19   three different parties, Foodonics, Jacques Klempf himself, and

20   also a corporate representative from the GrayRobinson firm,

21   because each of those parties have been involved.

22         And what's transpired up to this point, we simply

23   don't have enough information at this point to know how the

24   Court -- how we should ask the Court to address and remedy

25   these situations.  Is it -- is there things that can be

1  remediated or are there more severe sanctions that are

2  appropriate?

3          And so one of the big requests that we would ask is

4  that you provide us permission, and maybe even establish dates

5  here today, for the depositions of those three parties, so that

6  we can get to the bottom of what has been done, what remains to

7  be done, and then at that point we would have a better idea of

8  what kind of relief and sanctions may be appropriate.

9          So referring to our notice, Your Honor, the first

10  item that we identified was the failure to produce Jacques

11  Klempf's mobile phone data.  That was an intentional broadening

12  of what you previously ordered.

13          The reason for that is that -- you may recall at the

14  last status conference we mentioned that we had not yet

15  reviewed the text messages that Jacques Klempf had produced on

16  September 14th.  That was a week past due.  And on October 2nd,

17  we hadn't looked at those text messages.

18          After the October 2nd status conference, we did look

19  at them.  There were a total of 467 documents that were

20  produced on September 14th.

21          Only 90 of those documents were actually text

22  messages.  The rest were images and movie files and different

23  things that were attached to the 90 text messages that weren't

24  directly related.

25          But more importantly, Your Honor, all of the text

1 messages produced on September 14th were for date ranges

2 between March and April of 2018.  That's this year.

3      There were no text messages at all produced during

4 the relevant time period, which we've talked about the time

5 period many times.  It's September 1st, 2008, to January 19th,

6 2018.

7      Not a single message in that collection was related

8 to the case or within the date range of the issues in this

9 case.  And so we addressed that with Mr. Wells after we

10 realized what we had been provided.

11      The explanation that we got was even worse than we --

12 than we had hoped.  We found out that the text messages were

13 retrieved from an iCloud backup of Mr. Klempf's phone that

14 apparently was performed sometime earlier this year.  And until

15 about two weeks ago, we had no idea that there was an iCloud

16 backup of Mr. Klempf's phone.

17      You might recall we have an ESI order that we asked

18 for in this case, that you entered back in April -- in March,

19 which required GrayRobinson and Mr. Klempf and Foodonics to

20 designate the sources of information they were going to be

21 looking for when they searched for ESI.

22      What they told us were there were two iPhones of

23 Mr. Klempf.  There's no mention of any of those phones being

24 damaged or destroyed or nonfunctional.  They told us there were

25 two iPhones and that was going to be where they pulled the text

1    messages from.

2            Now we've learn they never went to those two phones.

3    They went to an iCloud backup.  And they never pulled the

4    information from the phones that we thought they were going to

5    be pulling from.

6            And now we've been told even further that there --

7    apparently one of these phones is alleged to be damaged.  And

8    so potentially no information can be recovered from those --

9    from at least one of those devices.

10           So as we stand here today, Your Honor, we're asking

11   for mobile phone data, rather than text messages.  Because in

12   some instances it may be necessary for a forensic examiner to

13   extract all of the data from Mr. Klempf's phone and try to

14   recreate or restore information that may have been damaged.

15           We simply don't know enough about the situation at

16   this point.  We think -- that's why we asked for appointment of

17   a forensic examiner.

18           We think that that would be the best way for all of

19   the parties to get to the bottom of this, is to have someone

20   neutral come in and take possession of those devices, and the

21   iCloud data, take it over, look at it, find out what's there,

22   what can be recovered, and provide a report to everyone, so

23   that we all know what is actually available, what can be

24   recovered and what can be retrieved.

25           So that's -- as it stands today, Your Honor, we don't

1   have any text messages during the relevant period.  And we

2   haven't heard from Mr. Wells or anyone else when we expect to

3   be produced any text messages during the relevant period or

4   whether that's even possible to be retrieved.

5          And so we've asked Mr. Wells to consent to the

6   appointment of a neutral forensic examiner to do this part of

7   the case, to take over this issue, and to resolve it.  We

8   haven't heard anything from Mr. Wells in response to that

9   request.

10         In the absence of that, Your Honor, we would ask that

11  the Court direct Mr. Klempf to produce any relevant text

12  messages that he does have and any other phone data responsive

13  to the Trust's discovery request by October 21st, 2018.

14         So that's the text message and phone data issue, Your

15  Honor.

16         The second issue is with respect to the DixieEgg.com

17  e-mail accounts.  This has been a winding tail from the first

18  status conference.  I think we've had five or six, Your Honor,

19  since June.  And I think this has been on -- the topic of

20  discussion at each one of those conferences.

21         At first we heard that the DixieEgg.com e-mail

22  account was only available for Jacques Klempf.  Then we heard

23  that it might be that Cal-Maine had possession of those e-mail

24  accounts.  And Your Honor directed Cal-Maine to go check and

25  see if Cal-Maine had those accounts.  And they came back and

1   said, "We don't have it.  We never did."

2   So the attention redirected back to Mr. Klempf and

3   Foodonics.  And they told us then that, well, the only account

4   that has been preserved is Mr. Klempf's, and that the other

5   employee accounts had been shut down several months after the

6   sale of the Cal-Maine.

7   At the last status conference, though, we learned

8   that, indeed, through, some miraculous or super efforts,

9   that -- that the accounts might be able to be restored.  But at

10  that time the only person that could see the data related to

11  those accounts was Jacques Klempf.

12  We had several e-mails and calls with Mr. Wells

13  subsequent to the October 2nd hearing.  And they confirmed that

14  they have successfully retrieved 130,000 e-mails from -- from

15  employees at the DixieEgg.com domain other than Jacques Klempf.

16  So that's positive.

17  We've got some data.  And they've managed to take the

18  130,000 e-mails, running the search terms and the data of the

19  junk filter that we talked about before -- they reduced it down

20  to 37,000 e-mails.

21  So 37,000 e-mails, potentially relevant.  We haven't

22  seen a single one, though.  They haven't produced them.  And

23  the most critical concern that we have related to this is that

24  there are two individuals for which we have no explanation, but

25  that -- there are two critical people that worked at Foodonics.

1      It's the former CFO, Richard Still, and the general

2  manager of Florida operations, John Reece.  For some

3  unexplained reason, neither of those two employees' accounts

4  can be restored.

5      So we -- we don't know whether that failure to

6  restore those two accounts is -- is explainable or something

7  more intentional.

8      But the fact of the matter is that we don't have any

9  e-mails -- they now have recovered 37,000 e-mails.  We haven't

10  received any of those.  We don't have any reason or explanation

11  why two of the key employees at Foodonics still cannot be

12  recovered.  So, again, this is a circumstance we think cries

13  out to have a forensic -- neutral forensic examiner appointed.

14      But in the absence of that, Your Honor, we'd ask that

15  you direct Foodonics and Jacques Klempf to produce those 37,000

16  e-mails by October 31, 2018 and, to the extent they have

17  answers, file a report with the Court describing why the two

18  individuals can't be recovered, and, furthermore, whether

19  there's additional personal e-mail accounts -- we know

20  Mr. Still had a personal e-mail account -- whether there's

21  personal e-mail accounts or other mobile devices for those two

22  individuals that might be sources that -- from which the ESI

23  can be recovered.

24      THE COURT:  You know, on some of those questions that

25  you want answers to, if the -- if the e-mails aren't produced

1　or if e-mails of -- of -- of Mr. Still and Mr. Reece aren't

2　produced, are those answers that -- that you suggested that

3　there be some sort of notice filed or some explanation filed

4　with the Court?

5　　　　Is that something that you would delve into in one or

6　more of these 30(b)(6) depositions?

7　　　　MR. DIX:  Yes.  In an ideal world, Your Honor, we'd

8　like to know what they think is the reason, so that we can ask

9　them about it.  We'd like to not learn about why they think

10　that that's the reason when we show up for the 30(b)(6)

11　deposition.

12　　　　THE COURT:  Well, I don't think I'm going to be

13　inclined to be the conduit for you to learn things so you can

14　go back and take depos.  You can take your depos.

15　　　　And then if you don't feel like you've learned what

16　you need to learn, you can ask the Court for additional relief

17　from there.

18　　　　It may be in the end that we just tee this up for an

19　evidentiary hearing.  Because I've been dealing with -- with

20　ESI issues and with spoliation and with sluggish discovery in a

21　number of other cases.

22　　　　And you know what the best thing to do is, put

23　everybody who's responsible right there on the witness stand

24　under oath so I can look them right in the eye and see what the

25　heck is going on here and who's telling the truth and who's

1    not.   That's the best way to resolve this.   And that may be

2    what we come to.

3              But go ahead.

4              MR. DIX:   Thank you, Your Honor.

5              So the third issue we identified was the -- the

6    deficient privilege log produced by Jacques Klempf from

7    Foodonics.   They did produce -- it wasn't on time, but they did

8    produce an amended privilege log.   And they revealed to us that

9    1300 items had been removed from their initial privilege log.

10             We think that speaks volumes about the extent to

11   which good faith went into the preparation of the first

12   privilege log.

13             We're thankful that they did remove 1300 documents

14   and they did produce those documents to us.   But the revised

15   log still contains a multitude of e-mails and communications

16   with parties that -- so when we look at the log, it doesn't

17   appear that there's any basis for asserting privilege, e-mails

18   sent to Ameris Bank and BB&T, e-mails sent to Jacques Klempf's

19   current and former business partners.

20             We've provided a list of the people that we don't

21   believe should be within the -- the privilege claim for

22   Mr. Klempf and Foodonics.   We provided lists to Mr. Wells, have

23   heard no response.

24             THE COURT:   When did you provide that list?

25             MR. DIX:   We provided the first list the day --

1   October 2nd, the day that we had the last hearing.  That was

2   for the former log.

3           Many of those same people that we identified on

4   October 2nd were still on the revised log that was produced to

5   us -- I believe it was on October 17th.

6           And the same issues go for the privilege log that was

7   produced by GrayRobinson.  That's later in the notice, Your

8   Honor.  But it's the same issue.  There are lots of different

9   communications with individuals.

10          There's no subject or -- or explanation provided for

11  why communications with non-attorneys, business people,

12  colleagues -- why any of those communications should be on a

13  privilege log.

14          We've asked them to be declassified and produced.

15  And we'd ask that you order that to be undertaken yet again, if

16  that will accomplish anything, Your Honor.

17          And so that -- that's where we are with the privilege

18  log produced by Jacques Klempf and Foodonics.  It needs to

19  be -- there needs to be a reduction of the privilege log to

20  only matters that are actually privileged.

21          The fourth issue we identified, Your Honor, is a

22  minor one.  But I think it speaks to the effort that the

23  other -- the opposing parties and counsel are applying in this

24  case.

25          We got an e-mail about a week ago from Mr. Hancock,

1    who's on the phone.  And it's an e-mail to his discovery vendor

2    where he's directing them to produce to us password-protected

3    documents without unlocking them.

4         And he says in the e-mail, and I quote, "This is

5    really just kicking the can down the street, because opposing

6    counsel is sure to ask us for passwords."

7         So the idea that GrayRobinson is just -- and their

8    clients are just kicking the can down the street, we think

9    that's been going on from day one here.

10        And so we would ask with respect to that issue that

11   GrayRobinson produce to us a list by October 31st that has all

12   the list -- a list of all the password-protected files that

13   have been produced to us, because we haven't come across them

14   yet, and the passwords that would go with those files, so that

15   we can view them after trying to access them.

16        The remaining issues in our -- in our notice, Your

17   Honor, relate to GrayRobinson.  The first is a date range

18   issue.  None of the documents produced by the GrayRobinson firm

19   or identified in their privilege log go any further back than

20   May of 2015.

21        Obviously the dates that we've been talking about in

22   this case go back to 2008.  And so we've asked and received no

23   explanation for why there are no documents or ESI produced by

24   GrayRobinson prior to May of 2015.

25        But that's a significant concern to us, that -- we

1  don't know whether they simply failed to produce that

2  inadvertently or whether there is, indeed, no data available

3  during that time period.

4      That would be something that we would ask about

5  during a deposition, as well, unless we hear from them in the

6  meantime.

7      The second issue with the GrayRobinson log, I

8  mentioned earlier, is the date range -- I'm sorry, is the

9  inclusion of parties that don't appear to be privileged in the

10 privilege log.

11     So we would ask for the same relief on the

12 GrayRobinson log that we asked for with respect to the

13 Foodonics log; that is, go back, do it again, declassify the

14 third parties that are not privileged, produce those

15 non-privileged documents, and then for the people you leave on

16 the log, explain to us why those parties are -- remain on the

17 privilege log.  We don't understand why those parties are --

18 are within the privilege.

19     So that's the last with respect to GrayRobinson, Your

20 Honor.

21     And item No. 3 in our notice asks that we -- that we

22 have permission to take 30(b)(6) depositions of corporate

23 representatives for Foodonics and for the GrayRobinson firm,

24 and also for Mr. Klempf individually.

25     We need to take their depositions, find out what they

1     did, when they did it, why they did it, and what's left to be

2     done, and what could be done.

3           And once we know that, then we'll know how -- what

4     kind of remedies and relief we should be asking this Court to

5     direct.

6           And so we did ask, Your Honor, that you appoint a

7     neutral forensic examiner.  We understand that -- that

8     Mr. Wells consented to that, that that can be done

9     consensually.

10           In the absence of that, we understand your position

11     that we would need to file a motion.  And we would want to do

12     that after we've had an opportunity to take their depositions.

13           THE COURT:  All right.  Let me just ask you this

14     on -- on a different topic.

15           MR. DIX:  Sure.

16           THE COURT:  The last time we were here there was a

17     discussion about this one document that was clawed back.  And

18     on October 5th the response was filed to what you had

19     previously filed.  And the Court was provided with a document

20     for review.

21           After having reviewed the response, are you satisfied

22     with the response, or do you take issue with what was set out

23     in the response?

24           MR. DIX:  We do take issue.

25           THE COURT:  All right.  I'll set a deadline for you

 1   filing a response to that, then.

 2            MR. DIX:  Thank you.

 3            THE COURT:  All right.  Thank you.

 4            Mr. Wells?

 5            MR. WELLS:  Good morning, Your Honor.  May it please

 6   the Court?

 7            THE COURT:  Yes.

 8            MR. WELLS:  Let me address, first of all, the -- the

 9   initial issue that came up with respect to the filing of the ex

10   parte notice by Mr. Post.

11            The draft of that notice was sent by e-mail to me at

12   4:48 yesterday afternoon.  I advised Mr. Post on Tuesday that I

13   was having to leave Tuesday at noon and would be out of town

14   for a couple of days and had limited access, so that if they

15   had some issues they wanted to include and a notice of

16   compliance is required by the Court, it would be helpful to --

17   to try to get with me, but certainly I would have limited

18   availability.

19            I was actually driving yesterday at 4:48.  I did not

20   get back to Jacksonville until almost 7 o'clock, after it had

21   been filed.  So we did not have an opportunity to respond to

22   what he sent out at 4:48 yesterday.

23            Let me also address -- and I -- the Court's

24   observations about the -- what I would characterize as brief

25   delays in filing the documents, the notices of compliance, as

1    required by the Court.

2           On the first one I had called Mr. Post and advised

3    him that there would be a day-or-so delay for the filing of the

4    first document the Court referred to.  Mr. Post had no

5    objection.  We filed it as we said we would, as long -- with

6    the notice of compliance.

7           As to the second one that the Court required to be

8    filed on October 17th, frankly, I have to fall on my sword.  I

9    mis-calendared that.  And I thought it was to be filed on the

10   19th.  That's totally my fault.  I apologize to the Court.

11          But we also called and e-mailed counsel for the Trust

12   and advised them where we -- attempted to advise them where we

13   were.

14          I think -- I'm not certain, but I think they were

15   moving their offices and their communications were down for a

16   couple of days.

17          We got kickbacks from e-mail where we were trying to

18   communicate with them.  And on the phone we would leave phone

19   messages and got no return phone calls.

20          So a lot of the requests that Mr. Dix indicated that

21   had been made of counsel, me, were only made in the last --

22   within the last 48 hours.

23          And so the responses that -- that we would have

24   expected were very, very difficult to make since I was

25   traveling.

1          Just specifically for records purposes, the issue

2    with the privilege log, with the suggestion that there are a

3    lot of people on there that should not be, we just got that, I

4    think, yesterday.  And as I indicated, I was out of town and

5    just did not have the opportunity or the means to respond

6    appropriately.

7          I will address the individuals on the privilege log

8    specifically, but I would like to point out, if I may, to the

9    Court -- I apologize.

10          I know the Court is aware of what the issues are in

11   this case.  Our client -- after we started to manage the tax

12   refund, we get the threat of the lawsuit for securities and for

13   fiduciary duty based on the stock redemption in 2015 and the

14   subsequent sale of assets to Cal-Maine in 2016.

15          We had attempted -- it is our position, Your Honor,

16   and always has been our position, since prior to the

17   commencement of litigation, and throughout litigation, that the

18   allegations in the counterclaim have no factual support, that

19   they are violative of Rule 11, that our discovery efforts -- we

20   tried to determine what factual basis there was for the

21   counterclaim the Court has put on hold until the current ESI

22   discovery they were struggling with has been completed.

23          Against that backdrop, let me point some things out

24   to the Court.  Foodonics has produced three separate

25   productions to opposing counsel.

1        The first on August 30th contained 44,763 documents.

2   It's been described as a data dump.  But that hardly is

3   accurate.  It was the result of searching and filtering over

4   685,000 documents.  And after application of the search terms,

5   44,000 were produced.

6        The cost of doing that was -- the cost of doing a

7   total review of that was 7,000.  So rather than incur that

8   cost, we simply gave them all the documents we had that were

9   subject to the search terms.

10        Our second production on October 1st were a category

11   of documents that we needed to look at further because they

12   appeared to be personal.  There were a number of those.  We

13   went through them and produced an additional 228 documents

14   after that additional search.

15        Our third production was completed on October 17th,

16   and consisted of documents removed from the original privilege

17   log, the 1300 documents that Mr. Dix has alluded to.  And,

18   candidly, the initial privilege log, Your Honor, was between 5-

19   and 6,000 entries, documents.

20        We looked at it and we saw that there were 1300 that

21   were not privileged.  And we have produced those documents.

22   There may be others.  And we -- we are happy to continue going

23   back and looking through it again.

24        I can tell you, in opposition to their suggestion

25   that we may be hiding things, a lot of the individuals that

1   they have outlined as not being subject to the privilege, we

2   believe are, in fact, privileged.

3          They are business partners of Mr. Klempf

4   communicating -- that our firm is representing, that -- with

5   Mr. Klempf and those partners communicating with us.  These are

6   entities such as BAM Jax, Aventi, Forking Amazing Restaurants,

7   Burlock and Barrel.

8          A lot of the entries that they questioned the

9   privilege were, in fact, entities that were being represented

10  by this law firm.

11         Mr. Klempf's brother, Marc Klempf -- we have

12  represented him on certain matters at Mr. Klempf's request.

13  His daughters are all involved in the BAM Jax and matters that

14  are related to the various business entities that he's involved

15  in.

16         So, yes, there may be some that need to be removed

17  further -- need to be reviewed further, and we're happy to do

18  that, but the effort -- the errors that may have been committed

19  are errors of commission, not omission -- excuse me, omission,

20  rather that commission.

21         There has been no effort whatsoever to hide any

22  documents, to withhold any documents that are at all relevant

23  or non-privileged.  And we have no problem in continuing our

24  efforts to do that.

25         Let me address the DixieEgg.com.  I hate to be

1   repetitive.  The Court's aware that that's an account that was

2   closed, had to be reopened.

3        After a great deal of effort, we were finally able to

4   access the accounts of both of the former employees of Dixie

5   Egg.  We culled it down to 37,000 for about 10 or 15 employees.

6        It did -- it did not include two privileged

7   employees.  We don't know why.  But rather than not producing

8   the documents, as Mr. Dix asserts, I advised Mr. Post that we

9   had the 37,000 documents, that it included people who had no

10  involvement whatsoever in management or operational decisions,

11  and suggested that we look at that and produce selected

12  individuals' accounts.  We've not had a response to that.

13       So we're happy to turn over an additional 37,000

14  documents if they want to conduct a review of that.  We were

15  actually trying to reduce the work that all parties are

16  involved in by suggesting that they consider a limited

17  production.

18       Certainly a limited production with management people

19  would be far more -- potentially going to yield relevant

20  evidence than folks who had no involvement whatsoever.

21       The text -- with respect to the two employees,

22  Mr. Still and Mr. Reece, clearly they were key employees.  But

23  through the production that's already occurred through

24  Mr. Klempf, through Foodonics, they would have gotten the

25  e-mails from those two people.

1          What they may not have is e-mails that those two

2  people may have sent outside.  But any internal e-mails that

3  those folks would have sent, Mr. Still, Mr. Reece, would be

4  within other documents we've already produced.

5          And I think the Court made a note of that at the

6  outside.  We suggested earlier, and we still maintain, that

7  whatever e-mails Mr. Still and Mr. Reece would have sent would

8  have been produced in the documents of Foodonics.

9          Text messages, very early on in the case we were

10  under the impression that Mr. -- Mr. Klempf had two cell

11  phones.  We knew that one had been damaged and that he had

12  gotten another cell phone.

13          We have learned in this process that the damaged

14  phone was actually shattered.  We were under the impression

15  that it had been -- that whatever data could be retrieved from

16  that phone had been transferred to the new phone, but

17  apparently it hasn't.

18          So these are text messages that probably are not

19  available.  And Mr. Klempf no longer has the shattered phone.

20  But we certainly made the phone he does have available to them.

21  It's a phone he purchased in March.  So there wouldn't be

22  anything on there that could not be transferred previously.

23          THE COURT:  What about the iCloud?

24          MR. WELLS:  Pardon me?

25          THE COURT:  What about the iCloud?

1    MR. WELLS:  Your Honor, that's a technical issue that

2 I'll have -- have to let Mr. Hancock address.  We do have an

3 issue with turning over the current cell phone or -- if there's

4 another search that can be done by our vendor, the same vendor

5 that opposing counsel is using, rather than having to turn over

6 a cell phone that is part of his daily critical business

7 life -- we would object to turning it over to a forensic

8 examiner.

9    Mr. Hancock, can you address the iCloud issue that

10 Mr. Dix raised?

11    MR. HANCOCK:  Yes.  Your Honor, as a firm, in many of

12 our cases involving ESI and cell phones, collect from iPhones

13 by collecting from the iCloud backup.  It's considered a

14 forensically sound method of collecting that data.

15    So it's not necessary to collect the data from the

16 device itself.  Where I think Mr. Dix is saying he wants the

17 device looked at is to look and see if there's some data that

18 was deleted or something like that.

19    But, I mean, as far as the iCloud collection, that is

20 a forensically sound method that is -- is used throughout the

21 industry.  And it's -- it's not been drawn into question other

22 than the -- you know, as a way to collect that data.

23    THE COURT:  Well, what if you don't sign on to the

24 iCloud?  What happens to the data?

25    MR. HANCOCK:  Well, I mean, certainly if your setting

1   is that you choose to not have your data backed up to the

2   iCloud, when you go to the iCloud it will be empty.

3          But clearly Mr. Klempf has the settings that -- to

4   back things up.  And that's where we grabbed all of that data.

5   There would have been nothing there, is what I'm saying, if --

6   if it wasn't backing up to the iCloud.

7          THE COURT:  But it would be on the phone, right?

8          MR. HANCOCK:  Correct.

9          THE COURT:  And what about the phone that was broken?

10   Was that backed up to the iCloud?

11          MR. HANCOCK:  That I don't know, Your Honor.

12          THE COURT:  All right.  Go ahead, Mr. Wells.

13          MR. WELLS:  Let me address Mr. Dix's comments, Your

14   Honor, about the production by GrayRobinson.  The production

15   from May of 2015 through the -- the date is not at all

16   inconsistent with what -- the position that we've maintained in

17   the case.

18          GrayRobinson received a subpoena for production of

19   the documents that are at issue here.  And GrayRobinson

20   objected to the subpoena, general objections and specific

21   objections.

22          But with respect to most of the items, we objected

23   without an agreement to produce documents.  There were certain

24   categories of documents we agreed to produce involving the

25   actual stock redemption in 2015, the account and maintenance

1    sales, communications with Cal-Maine, and valuations.

2            I believe those documents within that -- and keep in

3    mind that the stock redemption occurred in December of 2015.

4    The negotiations for that began probably in September.  They

5    had documents from May of 2015 through the 2018 date range.

6            Be that as it may, we've been -- we have produced

7    documents that probably fall outside the objections that we

8    served on opposing counsel.

9            There may be additional documents prior to 2015.

10   Despite our objections pursuant to the subpoena that was issued

11   on GrayRobinson, we can go back and try to produce additional

12   documents prior to that.

13           The Court may recall that we have always objected to

14   the date range 2008 for transactions that occurred in 2015 and

15   2016.

16           The same thing -- same comments on the privilege log.

17   There are a lot of individuals who are listed on the privilege

18   log who are, in fact, privileged because they are either

19   employees or officers in related entities.

20           I will make -- with respect to some of those -- for

21   example, Your Honor -- and I have no problem producing them,

22   but there's several current employees with Cal-Maine who were

23   employees of Foodonics who have continued to communicate with

24   Mr. Klempf about matters related to Foodonics.

25           Some of those individuals that they have

1   questioned -- we did a certain privilege as to those

2   individuals.

3          I can assure the Court there's nothing in any of this

4   communication that is particularly relevant to this litigation.

5   But they do maintain the privilege that we believe they're

6   entitled to.

7          THE COURT:  Anything else?

8          MR. WELLS:  We do have an objection, Your Honor, to

9   the notice 30(b)(6).  We actually got the notices before we

10  were advised of an intent or desire to take them.  They've not

11  been scheduled.  I think notice has just been sent.

12         We are on the brink -- we've produced everything that

13  we have access to, Your Honor.  We don't have access to text

14  messages prior to March.  We currently don't have access, but

15  we are searching for additional e-mails in the DixieEgg.com

16  account for Mr. Still and Mr. Reece.  But we have produced what

17  we have, what we have access to.

18         And so we think that the 30(b)(6) depositions that

19  are being requested are not at all necessary.

20         THE COURT:  All right.  Thank you.

21         Mr. Post, Mr. Dix, is there anything else you want to

22  say?

23         MR. POST:  May I remain here, Your Honor?

24         THE COURT:  Yes.  Of course.  Yes.

25         MR. POST:  Your Honor, the position taken by

1    Mr. Wells here today that the (unintelligible) of the subpoena

2    is -- is only a limited production by date because of their

3    objections is contrary to my understanding that the Gray- --

4    that the GrayRobinson firm agreed to produce their documents

5    notwithstanding their general objections.

6           And -- and I -- I'm very surprised that -- we're

7    hearing for the first time today that they've taken some

8    position about a date limitation in their response to our

9    subpoena.  And, obviously, had we known that that was going to

10   be their position, we would have brought it up a long time

11   before today.

12          MR. WELLS:  I have a copy that's contained in our

13   response, if the Court would like to see it.  But we objected.

14   There were certain things that we agreed to produce

15   notwithstanding our objections.

16          And those were the -- the various communications with

17   Cal-Maine, the various communications surrounding the stock

18   redemption and the asset sale, and business valuation.

19          There may be some business valuations that I -- I

20   would have to look and see -- that have not been produced, but

21   they -- anything related -- that we would have related to

22   business valuations at the time of these transactions have been

23   produced.

24          MR. POST:  Your Honor, I -- I can represent to the

25   Court -- I have e-mails from Mr. Wells that says that they are

1    going to produce the documents pursuant to the subpoena without

2    relying on the general objections that he's referring to.  And,

3    obviously, again, had we known that was their position, we

4    would have brought it up a long time ago.

5            THE COURT:  Well, I'm -- the way I hear what

6    Mr. Wells is saying is that -- as I understand it -- although

7    there were these objections, that he has produced many

8    documents that -- that otherwise he was objecting to as part of

9    the production.

10           But I don't know if that means -- does that mean that

11   there are some that you're withholding because of those

12   objections and others you're giving up even though you --

13   you've made the objection?

14           MR. WELLS:  There are -- there are probably documents

15   prior to May of 2015.  I'm sure there are documents prior to

16   May of 2015 that we can pull and review.

17           And, again, we're not trying to hide anything.

18   We're -- we're more than willing to produce what we've got.

19   But to suggest that there's some issue or some problem or

20   intentional withholding of documents prior to that we think

21   flies in the face of the objections that we asserted.

22           There may be documents within that date range.  I

23   think Mr. -- Mr. Hancock learned after communication from

24   Mr. Dix that there may be documents within May 2015 that were

25   not pulled by KM.  We'll pull them.  We'll produce them.

1      THE COURT:  Well, just with regard to this date range

2  situation, I thought -- and, again, I only thought we had

3  had -- I don't know, three -- two or three or four of these.

4  If we've had six or seven of these status conferences, I may

5  not be remembering this actually.

6      But I thought -- I don't know -- three or four months

7  ago we discussed this date range issue and you -- you,

8  Mr. Wells, voiced your objection to the broad range, you

9  addressed your position that you don't think there's evidence

10  supporting the whole theory that -- that we're dealing with

11  here in terms of the Counter Plaintiffs.

12      And I think preliminarily I ruled that -- that the

13  date range -- that I was recognizing that documents back to

14  2008, I believe, were relevant.

15      So -- so in terms of that, if you're withholding --

16  if you're withholding documents because you -- because

17  they're -- that you don't think that's an appropriate date

18  range, then -- then that's contrary to what I've previously

19  ruled.

20      MR. WELLS:  May I respond?

21      THE COURT:  Yes.

22      MR. WELLS:  And I apologize, Your Honor.  That's not

23  what I'm asserting.  I'm -- the subpoena requested -- and I'll

24  be glad to provide a copy to the Court.

25      THE COURT:  Well, go ahead and just tell me.  I'm a

1    better learner when I hear it than read it.

2           MR. WELLS:  All document -- this is request for

3    production No. 3.

4           "All documents for ESI referring or relating to the

5    settlement and redemption agreement."

6           That's what occurred in December of 2015.

7           We had (unintelligible) general objections.  We will

8    produce those documents subject to the attorney/client

9    privilege.

10          Those are documents that have a finite time limit.

11   The stock redemption and sale occurred in December.  We agreed

12   to produce those documents.  You can go on through the

13   subpoena.  There are specific documents, all documents in ESI

14   relating to the sale of Foodonics assets or Foodonics stock.

15   We agreed to produce those and we produced them.

16          It's those kinds of -- it's not a date range.  It's a

17   subject matter issue that we've agreed to produce and that have

18   been produced.

19          THE COURT:  Well, you see it as subject matter and

20   the Counter Plaintiffs see it as a date range, because that's

21   what they've raised in this -- in this notice.

22          MR. WELLS:  Well, I think we have a disagreement.

23   Our position is that we've produced the documents that we

24   agreed to produce in the -- GrayRobinson produced the documents

25   we agreed to produce in the subpoena.

1          THE COURT:  All right.  Mr. Post, you want to say

2    anything else about that?

3          MR. POST:  Your Honor, obviously this is the kind of

4    thing that counsel should meet and confer on without having to

5    bring it up for the first time in front of a judge.

6               I intend to meet and confer with Mr. Wells after this

7    hearing to try to work this out.  And if it can't be, then I

8    would -- I would -- well, I'd ask the Court to -- to direct the

9    law firm to respond with the other documents and the other date

10   range to the extent it's responsive to the subpoena.

11              And if I miss -- if I did something in the subpoena

12   that was too narrow, I'll just serve a second subpoena.

13         THE COURT:  Well, I -- just in listening, the --

14   there was some language in the subpoena relating to the sale.

15   All right?  And, now, that could be interpreted narrowly or it

16   could be interpreted broadly.

17         MR. POST:  Correct.

18         THE COURT:  And so it seems to me maybe those are the

19   kinds of things -- if you-all tried to work that out, you could

20   make some progress on it.

21         MR. POST:  Yes, sir.

22         MR. WELLS:  The specific request for production No. 5

23   in the subpoena, Your Honor, is documents and ESI relating to

24   the sale of Foodonics assets or Foodonics stock.  And we

25   believe we produced those documents.

1         MR. POST:  Your Honor, if there was a discussion

2    about a sale of assets in 2009 or 2010, that would be

3    responsive to the subpoena.

4         MR. WELLS:  If there were one, it may be responsive.

5    We don't believe there are any.

6         THE COURT:  All right.  Well, then -- I mean, that

7    would -- that would -- you -- and have you -- have you stated

8    that in writing?

9         MR. WELLS:  We have maintained throughout this

10   litigation, Your Honor, both with the Court, and with counsel

11   prior to litigation, that there were no discussions about a

12   sale of Foodonics assets prior to the spring of 2016.

13        THE COURT:  All right.  Well, I understand what

14   you're maintaining.  So that -- maintaining something and

15   searching and representing something are -- can be two

16   different things, right?

17        Because -- look, I don't -- I don't want to get into

18   a long discussion about some of this stuff.  But, you know, I

19   see a pattern in these cases.

20        And the pattern in the cases -- this is -- this is

21   what I see -- and I'm -- I'm getting more and more of these, as

22   I've told you.  And -- and I suppose it's just the way things

23   are now, because of ESI and because of other matters.

24        But the pattern I see is the party that's being

25   requested to produce the ESI and the party that -- that is

1    being accused of not producing it -- it starts like this.

2            They say -- the party says, "There is no evidence to

3    support what the other side is saying happened.  There's no

4    evidence to support it.  It didn't happen that way."

5            Like you're saying here, in terms of going back in

6    2008 and what's been -- all the way through, and what's been

7    alleged about -- about the -- the so-called fraud that went on,

8    for a lack of a better way of saying it -- right?  And that's

9    what your position is.

10           I'm not saying that's wrong.  I'm just saying the

11   pattern I see is that the party that's accused of the

12   wrongdoing in a situation like this -- they say there's no

13   evidence to support the claim.

14           They don't produce evidence.  They say they can't

15   produce evidence, or they've spoliated evidence.  And then when

16   it gets down to summary judgment, they -- they -- they point to

17   the other side and they say there is no evidence.

18           And the problem is in a number of those cases there

19   should have been evidence or there -- or there -- there was

20   evidence not produced and was eventually produced.

21           And a lot of times -- and I'll just say it like it

22   is -- it's not the fault of the lawyer.  It's not the fault of

23   the lawyer that it wasn't necessarily produced.

24           I have seen where -- where there is, you know,

25   some -- in terms of sluggish discovery, lawyers have -- have --

 1  have been involved in that for various reasons, but -- but I'm

 2  talking about -- that it's -- it's -- so you get to these --

 3  these things where there's -- there's circumstantial evidence

 4  that something went on that looks like it, it smells like it,

 5  it may have.

 6          And so allowing discovery of it and then producing

 7  the discovery by the party being asked for it is necessary to

 8  get to the bottom of it, is how I view it.

 9          Now, you know, maybe that's wrong.  Maybe it's --

10  maybe it's not.  But here you're saying there is no evidence to

11  support the claims.

12          I think based on what they've alleged, that a

13  reasonable person could infer -- could infer -- I'm not saying

14  it would be nece- -- I'm not saying it's mandatory.

15          I'm just saying, a reasonable inference from what's

16  been inferred is that there were some shenanigans going on

17  here.  And so I think that the Counter Plaintiffs here have a

18  right to that discovery and to get it.  And so that's -- that's

19  really what it's about, trying to get that discovery.

20          MR. WELLS:  May I respond, Your Honor?

21          THE COURT:  Yeah.  Of course.

22          MR. WELLS:  I understand and completely agree with

23  the Court's analysis of the cases from an overall perspective.

24          Foodonics has produced 47,000 documents, including

25  documents, e-mails, some text messages.  Cal-Maine has produced

1    about 1,000 documents.  Several other parties have produced

2    documents.

3           I'm not aware of any document that will suggest that

4    there was a sale contemplated prior to the stock redemption,

5    that there were any communications with Cal-Maine or any other

6    entity about an actual sale.

7           We acknowledge there were discussions by Mr. Klempf

8    with his family members that something's going to have to occur

9    in the future.

10          In one of the prior hearings Mr. Post mentioned a

11   document relating to a dream team, which was something

12   Mr. Post -- Mr. Klempf was putting together with other egg

13   producers to, in fact, compete with Cal-Maine.

14          That dream team never materialized.  And it was fully

15   discussed with his family members.  That will all come out.

16          We are not -- we are not aware -- I'm not going to

17   say there are no documents.  We haven't looked at every -- I

18   haven't looked at every single document.

19          But we are not aware of any documents that would

20   suggest that Cal-Maine and Foodonics had any discussions prior

21   to the spring of 2016 about a sale of accounts -- a sale of the

22   assets.

23          All that being said, the Court is absolutely correct,

24   the allegations may create an inference that would give rise to

25   the discovery.  We think we've produced what we've got.  We're

1   happy to -- to continue to produce if things come up that we're

2   not aware of.

3               THE COURT:  All right.  Thank you.

4               Mr. Post?

5               MR. POST:  Obviously, Mr. Wells is not going to be a

6   witness -- well, he will be a witness at the trial.  But he

7   doesn't know what -- what evidence is out there, because they

8   haven't looked.  They haven't done their job.

9               And the -- the text messages alone scream that this

10  is a -- there's some -- either serious misconduct or -- or

11  serious omission going on that -- that need -- that we need to

12  get to the bottom of.

13              And he wants to paint our case as -- very narrowly.

14  But it's more than just the -- what conversations were -- with

15  Cal-Maine existed pre- -- pre-redemption.

16              At the redemption sale it was represented by

17  Mr. Klempf and -- that the company was only worth $35 million

18  when he failed to disclose to a minority shareholder that he,

19  in fact, thought it was worth $70 million, as the dream team

20  analysis reflected a year earlier.

21              So this case is more -- is -- it is a breach of

22  fiduciary duty fraud case and -- for which we need to get the

23  discovery.

24              And the fact they gave us 47,000 documents, we're not

25  counting by numbers.  They could -- they can say, "Here's a

1   warehouse full of documents, have a nice day."

2          But if they don't give us the right ones, the ones

3   that are responsive, then that makes our case more difficult.

4   The Court knows all this.

5          And we respectfully request that we be allowed to

6   take the depositions that we've asked and to bring this part of

7   the case to a conclusion as quick as possible, the discovery

8   part.

9          THE COURT:  All right.  Well, let me take -- I'm

10  going to take a brief recess.  And I want to walk through what

11  it is you've asked and what you've responded here and see where

12  we go from here.

13         Because I -- I'm about at the point that -- that --

14  you know, these -- these ESI status conferences that we're

15  having here were supposed to -- to resolve issues.

16         And I feel like -- I feel like -- that -- that we're

17  having difficulty resolving issues because it's -- they keep

18  expanding.

19         It's like the -- the creek is rising and it continues

20  to rise.  And the whole idea here was to try to keep the creek

21  from flooding.

22         And I just don't think that we're -- we're making the

23  kind of progress that I had hoped in having these.  And so I'm

24  thinking that -- that it's time to -- to go about it the

25  old-fashioned way, of filing motions and having hearings on

1    motions and, if necessary, take evidence.

2           And then if there's something going on with the

3    discovery that -- that shouldn't be going on, then we get to

4    the bottom of it, so...

5           But, anyway, I'm going to take about a ten-minute

6    recess.

7           COURT SECURITY OFFICER:  All rise.

8      (Recess from 11:47 a.m. until 12:02 p.m.; all parties

9    present.)

10          THE COURT:  (No audio)...issue, you shall file a

11    response, the Defendants/Counter Plaintiffs, no later than

12    November 5th, 2018.

13          Then I am -- I'm going to direct that the parties

14    meet and confer prior to November 5th, 2018, on the

15    following:  all issues related to GrayRobinson, privilege log

16    issues, date range of production issues and -- and the in

17    general compliance with the subpoena that you-all were

18    discussing and that we were all discussing earlier.

19          And the same as to -- as to the telephone data from

20    Jacques Klempf's phone and the iCloud issues and those types of

21    things.  You shall meet and confer about those issues, again no

22    later than November 5th, 2018.

23          And then as to the privilege log regarding Foodonics

24    and Mr. Klempf, again, you should meet and confer on those

25    issues no later than November 5th, 2018.

1    I'm going to order that the passwords that are --

2  that are discussed in the notice and a list of

3  password-protected documents be provided no later than October

4  31st, 2018.

5    That's subparagraph (d) of Roman I(1), the production

6  of documents that are password protected and the necessary

7  passwords to -- to get to those.

8    And then as to the -- as to the request for the

9  depositions, I'm going to grant that request to the extent that

10  the depositions of Foodonics and Jacques Klempf can be taken

11  for the limited purposes listed.  I'm going to deny the request

12  as to GrayRobinson.

13    I think at this point that -- that a meet and confer

14  and an attempt to resolve those issues is appropriate prior to

15  granting any request for a deposition as to GrayRobinson.

16    And then the -- you-all will set those depositions.

17  And once you do, there should be a notice filed with the Court

18  stating the date or dates of the depositions.

19    Once I receive that notice, then I'm going to set a

20  deadline for filing motions.  And that will be motions to

21  compel, motions related to privilege logs, any motions for

22  sanctions, and any motion for a special master.

23    But I don't want to set that until after I know when

24  the depositions are set, because I want to give you time to

25  take the depositions, get the transcripts, and then file any

1   motion that you think is appropriate.

2          And at this point I'm going to suspend holding these

3   status conferences, because I just -- I just think that -- that

4   for a whole host of reasons, many of which we've discussed

5   already today, it -- we've got to get down now to -- to dealing

6   with -- with specific issues.

7          And -- and one -- one of the examples today -- I

8   mean, for instance, the -- you know, there are issues here,

9   but, you know, some of the issues have only become evident a

10  couple of days or 48 hours ago, and then they're provided to

11  Mr. Wells, and Mr. Wells hasn't had time to respond, and we're

12  here discussing issues that he hasn't had time to deal with.

13         So I -- I think right now, especially the way things

14  are, we're going to be best suited to go forward in this -- in

15  this situation.

16         And with respect to these various meet and confers --

17  or the meet and confer -- discussing these issues, I'm assuming

18  if you don't work those things out they'll be the subject of

19  motions that are filed when I set the motion deadline.

20         So, Mr. Post, Mr. Dix, anything else?

21         MR. POST:  Can we set an outside date for the taking

22  of these depositions?  We'll try to work with Mr. Wells'

23  schedule.  But we'd agree, for example, that they will take

24  no -- take place no later than the end of November?

25         THE COURT:  Well, I thought -- I saw -- I think --

```
 1    didn't you propose a date of around November 7th, or something
 2    like that?
 3              MR. POST:  Yes, Your Honor.
 4              THE COURT:  Well, I'm thinking that -- that they
 5    should be taken no later than the end of December.  I was
 6    thinking it would be before that.
 7              MR. POST:  You mean November?
 8              THE COURT:  Yes.  What did I say?
 9              MR. POST:  You said December.
10              THE COURT:  Oh.  Well, I'm a month ahead.
11              Well, I'll include in the order, that there be --
12    I'll go look at the calendar, but some sort of -- of outside
13    date, that they should take place no later than a certain date.
14              MR. POST:  Thank you, sir.
15              THE COURT:  All right.  Mr. Dix, anything else?
16              MR. DIX:  No, Your Honor.
17              THE COURT:  Mr. Wells?
18              MR. WELLS:  No, Your Honor.
19              THE COURT:  All right.  Then we're in recess.
20              COURT SECURITY OFFICER:  All rise.
21         (The digitally recorded proceedings concluded at
22    12:07 p.m.)
23                             - - -
24
25
```

## **CERTIFICATE**

UNITED STATES DISTRICT COURT      )
                                 )
MIDDLE DISTRICT OF FLORIDA        )


   I hereby certify that the foregoing transcript is a true and correct computer-aided transcription from the official electronic sound recording of the proceedings in the above-entitled matter.


   DATED this 20th day of November, 2018.



    s/Shannon M. Bishop
    Shannon M. Bishop, RDR, CRR, CRC

# TAB 59

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FOODONICS INTERNATIONAL, INC.,
a Florida corporation,

                Plaintiff,

vs.                                  Case No.  3:17-cv-1054-J-32JRK

DINA KLEMPF SROCHI,
as Trustee of the Laura Jean Klempf
Revocable Trust, a Florida Trust,

                Defendant.
_____

DINA KLEMPF SROCHI,
as Trustee of the Laura Jean Klempf
Revocable Trust, a Florida Trust, <u>et al.</u>,

                Counterclaim Plaintiffs,

vs.

FOODONICS INTERNATIONAL, INC.,
a Florida corporation, <u>et al.</u>,

                Counterclaim Defendants.
_____/

## <u>O R D E R</u>

    This cause came before the Court on October 25, 2018 for a discovery status hearing, the record of which is incorporated herein.  After due consideration, it is

    **ORDERED:**

    1.    No later than **November 5, 2018**, the Trustees shall file a reply in opposition to Plaintiff/Counter-Defendants' Response to Trust's Notice of Challenge to Foodonics' Privilege Claim to Clawback Document (Doc. No. 64).

Case 3:17-cv-01054-TJC-JRK   Document 70   Filed 10/29/18   Page 2 of 3 PageID 753

2.      Counsel for the parties shall meet and confer in good faith **prior to November 5, 2018** regarding the following: A) All issues related to the GrayRobinson documents (including privilege log issues, date ranges, and general compliance with the subpoena); B) Kevin Jacques Klempf's phone data (including iCloud issues); and C) Privilege log issues related to Foodonics and Jacques Klempf.

3.      No later than **October 31, 2018**, Foodonics must provide the Trustees with a list of password protected documents from the recent production, as well as the corresponding passwords.

4.      The Trustees' request for authorization to take depositions of Foodonics, GrayRobinson, and Jacques Klempf regarding their compliance with the discovery requests and Court orders entered in the case, see Notice (Doc. No. 68) at 3, is **GRANTED in part and DENIED in part**. The request is **GRANTED** with respect to Foodonics and Jacques Klempf. The request is **DENIED** with respect to GrayRobinson. The depositions shall be taken no later than **November 30, 2018**. When they are set, the Trustees shall file a notice indicating the date(s). Once notification of the date(s) of the depositions is received, the Court will set a deadline for various motions, including motions to compel, motions regarding privilege log deficiencies, motions for sanctions, and motions seeking appointment of a special master or forensic expert.

5.      The **Clerk** is directed to remove the "ex parte" designation from the Notice re: October 25, 2018 Discovery Status Hearing (Doc. No. 68), filed October 24, 2018.

**DONE AND ORDERED** at Jacksonville, Florida on October 29, 2018.

James R. Klindt
**JAMES R. KLINDT**
United States Magistrate Judge

-2-

kaw
Copies to:
Counsel of Record

**TAB 60**

| | |
|---|---|
| **From:** | Grier Wells <Grier.Wells@gray-robinson.com> |
| **Sent:** | Wednesday, October 31, 2018 1:18 PM |
| **To:** | James H. Post; Chris Dix |
| **Cc:** | David A. Hancock, CEDS |
| **Subject:** | FW: Jean Klempf Trust - Password Protected Documents |

As to the Password Protected files that were produced, we DO NOT know what the passwords are. We have asked our client and, because so much time has passed, he doesn't know what the passwords are. There were other password protected documents in the Foodonics documents from Stevens Powell. We used the password (which was able to be determined by the documents) to open them and produce them without the password.

We Produced other documents in their password protected nature because we thought that, if they were important enough to you, you could engage some password cracking software to try to access them.

Though you quoted Mr. Hancock telling the vendor that Producing them without a password was "kicking the can down the street", what he meant was that, because we don't know the passwords to open them, it would still be an issue down the road.

**Grier Wells | Complex Commercial, Employment and Construction Litigation**
**The Florida Bar Board Certified in Civil Trial Law**
**G R A Y | R O B I N S O N**

50 North Laura Street, Suite 1100 | Jacksonville, Florida 32202
T: 904-598-9929 | F: 904-598-9109 | D: 904-632-8478
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.