**TAB 81**

**From:** David A. Hancock, CEDS [mailto:David.Hancock@gray-robinson.com]
**Sent:** Friday, December 28, 2018 12:13 PM
**To:** James H. Post <jpost@smithhulsey.com>; Chris Dix <cdix@smithhulsey.com>
**Cc:** Grier Wells <Grier.Wells@gray-robinson.com>
**Subject:** Jean Klempf Trust - Production of Text Messages from iTunes Backups

Gentlemen,

As previously stated, a further review of the images of Mr. Klempf's 2 Apple laptops and 1 PC
revealed 5 iTunes backups.  Of the 5 backups, 1 was corrupt and 1 was of Mr. Klempf's
Stepdaughter Eden's cellphone.

The text messages on the remaining 3 iTunes backups were searched for, as requested, any
texts between Mr. Klempf and Dolph Baker.  All such texts are hereby being Produced.  In the
spirit of being overly accommodating, texts between Mr. Klempf and Cal-Maine personnel are
also being Produced.

No Responsive texts are being withheld for Privilege.

The Password for the .zip file is:  KLDisco2018!

**Files attached to this message**

| Filename | Size | Checksum (SHA1) |
|----------|------|-----------------|
| VOL005.zip | 120 MB | f6f400caf483ed18350b8ad9e38809cf1b5b6e6d |

Please click on the following link to download the attachments:
https://filetransfer.renewdata.com/message/UK4C0M5n3UGHEsP2zEb02f

This email or download link can be forwarded to anyone.

The attachments are available until: **Thursday, 10 January.**

Message ID: UK4C0M5n

**David A. Hancock, CEDS | Manager of Litigation Support and eDiscovery Services
G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145 | **D:** 813-273-5150
E-mail | Website | vCard

**Facebook** | **LinkedIn** | **Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

# TAB 82

| | |
|---|---|
| **From:** | Chris Dix |
| **Sent:** | Thursday, January 3, 2019 12:59 PM |
| **To:** | David A. Hancock, CEDS; Grier Wells |
| **Cc:** | James H. Post |
| **Subject:** | RE: Jean Klempf Trust - Supplemental GR Production |

Gentlemen,

The load file for the supplemental GR Production you sent last week did not contain any metadata fields other than Bates range information (Beg Bates, End Bates, Beg Attach, and End Attach). There is a disturbing pattern here -- your initial GR Production on October 20, 2018 also suffered from the same deficiency until we brought the matter to your attention.

Please produce by the end of the day tomorrow a new load file that contains all of the metadata associated with the supplemental GrayRobinson production, as required by the Order Governing ESI Issues in this case.

Thanks,

# Chris Dix

SMITH HULSEY & BUSEY

Please update your records with our new office address below effective October 22, 2018:
One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7730
cdix@smithhulsey.com | www.smithhulsey.com



YEARS
OF PRACTICE
EXCELLENCE

*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.*

---

**From:** David A. Hancock, CEDS [mailto:David.Hancock@gray-robinson.com]
**Sent:** Thursday, December 27, 2018 11:41 AM
**To:** James H. Post <jpost@smithhulsey.com>; Chris Dix <cdix@smithhulsey.com>
**Cc:** Grier Wells <Grier.Wells@gray-robinson.com>
**Subject:** Jean Klempf Trust - Supplemental GR Production

Gentlemen,

Attached is the link for the Supplemental GR Production. You will recall that the documents for this Supplemental Production were arrived at as a result of a Review by Contract Attorneys working with/for Special Counsel. Following

the review by Special Counsel, we performed a further review.  There are 7,098 documents being produced.  (My initial estimate to Grier of 3300-3400 was only slightly off.)

We are currently working on the Privilege Log associated with this Production.  We will send it to you once complete.

The Password is:  KLDisco2018!


**David A. Hancock, CEDS | Manager of Litigation Support and eDiscovery Services**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145 | **D:** 813-273-5150
E-mail | Website | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**TAB 83**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC., )
a Florida corporation,

        )

    Plaintiff,

        )

v.                   )        Case No. 3:17-cv-1054-J-32JRK

        )

DINA KLEMPF SROCHI, as Trustee )
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Georgia trust, )

        )

    Defendant.

        )
_____ )

DINA KLEMPF SROCHI, as Trustee )
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Florida trust, )
and DENNIS L. BLACKBURN, as
Assistant Trustee of the JEAN KLEMPF )
TRUST,

        )

    Counterclaim Plaintiffs,

        )

v.                   )

FOODONICS INTERNATIONAL, INC.,
a Florida corporation, and KEVIN )
JACQUES KLEMPF,

        )

    Counterclaim Defendants.

        )
_____ )

**AMENDED NOTICE OF CONTINUATION OF RULE 30(b)(6)
DEPOSITION OF FOODONICS INTERNATIONAL, INC.
<u>REGARDING THE PRODUCTION OF ESI AND DOCUMENTS</u>**
(amended as to date only)

Please take notice that counterclaim plaintiffs, Dina Klempf Srochi, as Trustee

of the Laura Jean Klempf Revocable Trust, and Dennis Blackburn, as Assistant Trustee

of the Jean Klempf Trust, will take the continued videotaped deposition of Foodonics International, Inc. ("Foodonics") on January 24, 2019, beginning at 9:30 a.m., at the offices of Hedquist & Associates, 345 East Forsyth Street, Jacksonville, Florida 32202, before an officer authorized by law to administer oaths and take depositions. This deposition will be videotaped by Advantage Video Productions, Inc., 9951 Atlantic Boulevard, Suite 101, Jacksonville, Florida 32225.

On November 9, 2018, the Trust filed a Motion to Shorten Time for the Production of Documents (Doc. 78) seeking production of information prior to the depositions of Jacques Klempf and Foodonics on November 28-29, 2019. The motion was opposed by Jacques Klempf as "unnecessary" because he represented through counsel that such ESI and documentation would be voluntarily produced before or at the depositions (Doc. 79). None of the requested ESI or documents, however, was produced prior to the depositions.

This deposition is being continued because Foodonics has not yet completed the production of the documents, ESI and other information described in Exhibit A as required by Court Order, the Federal Rules of Civil Procedure or as stipulated by counsel for Jacques Klempf and Foodonics during the depositions of those parties on November 28-29, 2018.

Pursuant to Rule 30(b)(6), Federal Rules of Civil Procedure, Foodonics is required to designate one or more officers, directors, managing agents, or other persons

who consent to do so, to testify on its behalf concerning the areas of inquiry set forth

in Exhibit A to the Amended Notice of Deposition served on November 14, 2018.

SMITH HULSEY & BUSEY

By: _/s/ James H. Post_
    James H. Post
    Michael E. Demont
    R. Christopher Dix

Florida Bar Number 175460
Florida Bar Number 364088
Florida Bar Number 036988
One Independent Drive, Suite 3300
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com
mdemont@smithhulsey.com
cdix@smithhulsey.com

Attorneys for Dina Klempf Srochi, as
    Trustee, and Dennis L. Blackburn,
    as Assistant Trustee, of the Laura Jean
    Klempf Revocable Trust

Certificate of Service

I certify that on January 3, 2019, a copy of this document has been furnished by

email to:

>S. Grier Wells, Esq.
>GrayRobinson, P.A.
>50 North Laura Street, Suite 1100
>Jacksonville, Florida 32202
>grier.wells@gray-robinson.com
>barbara.rude@gray-robinson.com

_____*/s/ James H. Post*_____
Attorney

c:      Hedquist & Associates
        (904) 354-4111
        hedquist@bellsouth.net

        Advantage Video
        (904) 724-9006
        scheduling@advantagevideo.com

1020033.3

**From:** James H. Post
**Sent:** Friday, November 30, 2018 5:15 PM
**To:** grier.wells@gray-robinson.com
**Cc:** david.hancock@gray-robinson.com; Chris Dix <cdix@smithhulsey.com>
**Subject:** RE: Foodonics v. Klempf Trust - Meet and Confer

Grier,

As we informed you yesterday, the 30(b)(6) deposition of the designated representative for Foodonics, David Hancock, has been continued so that your clients can complete the production of the following ESI and other information as required by Court Order, the Federal Rules of Civil Procedure or as stipulated to by you and your clients during the deposition:

    A.    The documents and ESI as described in the Trust's request for production served on you on November 9, 2018:

        1.    Documents or ESI sufficient to identify the make, model and carrier of each of Your mobile devices and the condition and location of each such device during the relevant time period.

        2.    Documents or ESI sufficient to identify the location of any backups of data for each of Your mobile devices (iCloud, iTunes, VerizonCloud/ATT Locker, laptop or desktop computer backups, etc.) during the relevant time period.

        3.    All documents or items of ESI (including receipts, invoices, messages or bills) relating or referring to any iPhone or other mobile device owned by You which was damaged, lost, replaced or otherwise disposed during the relevant time period.

        4.    The phone records or other documents or ESI sufficient to identify the dates and total number of all phone calls exchanged between You and Dolph Baker on each of Your mobile devices during the relevant time period.

        5.    The phone records or other documents or ESI sufficient to identify the dates and total number of all text messages exchanged between You and Dolph Baker on each of Your mobile devices during the relevant time period.

        These are the same ESI and documents you represented to the Court that would be voluntarily produced by your clients at or before his November 28, 2018 deposition. Of course, none of these records were produced before or at the deposition.

    B.    Invoices, billing records and statements describing any services rendered by KLDiscovery to the GrayRobinson firm or its clients in the referenced case, including services to identify, preserve, collect, process, search, review, analyze or produce ESI (and the dates on which those services were provided).

**EXHIBIT A**

C.  The results of the search and examination by a KLDiscovery forensic examiner (or other qualified expert) of the forensic images of Jacques Klempf's desktop computer and two laptop computers created by KLDiscovery in April or May of 2018 to determine whether any backups of Mr. Klempf's phone data were created or stored by iTunes.

D.  Documents or ESI from Microsoft which reflect the date(s) on which DixieEgg.com email accounts (including the email account of Richard Still) were terminated and, if different, the date(s) on which the data for each of those accounts was deleted or could no longer be retrieved.

E.  The data associated with Jacques Klempf's Apple ID account that Jacques Klempf requested and obtained from Apple after visiting the following website:  https://privacy.apple.com/.   The Apple data (1) should be collected by a KLDiscovery forensic examiner (or other qualified expert) and (2) need not include the following categories of ESI: (i) App Store, iTunes Store, iBooks Store and Apple Music activity, (ii) Marketing subscriptions, downloads and other activity, (iii) Game Center activity, (iv) iCloud Bookmarks and Reading List, (v) Maps data or (vi) iCloud Photos.

F.  The production of a revised privilege log on behalf of Foodonics and Jacques Klempf and the corresponding production of all unprivileged documents.

We are sending you a notice of continued deposition today.  As usual, we will reasonably attempt to accommodate the schedules of counsel, parties and the witness.  The completion of this deposition, however, is dependent upon the completion of the production from your clients – all of which needs to be completed as soon as practicable, but no later than January 11, 2019.

Please let me know if you have any questions regarding the foregoing.

Jim
James H. Post

SMITH  HULSEY  & BUSEY

One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



YEARS
OF PRACTICE
EXCELLENCE

*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

**TAB 84**

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC.,
a Florida corporation,

       Plaintiff,

v.

DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Georgia Trust,

       Defendant.

Case No.: 3:17-cv-1054-J-32JRK

_____/

DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Florida Trust,
and DENNIS L. BLACKBURN, as
Assistant Trustee of the JEAN KLEMPF
REVOCABLE TRUST, a Florida Trust,

       Counterclaim Plaintiffs,

v.

FOODONICS INTERNATIONAL, INC.,
a Florida corporation, and KEVIN
JACQUES KLEMPF,

       Counterclaim Defendants.

_____/

## RESPONSE TO COUNTERCLAIM PLAINTIFFS' REQUEST FOR PRODUCTION TO COUNTERCLAIM DEFENDANT KEVIN JACQUES KLEMPF

      Counterclaim Defendant Jacques Klempf, through his undersigned counsel and pursuant to Rule 34, responds to Counterclaim Plaintiffs' Request for Production served herein on November 9, 2018.

## Documents and ESI Requested

1.      Documents or ESI sufficient to identify the make, model and carrier of each of Your mobile devices and the condition and location of each such device during the relevant time period.

**RESPONSE:**

A receipt for the purchase of the current cell phone of Mr. Klempf as well as a July 2017, monthly statement for the previous damaged cell phone are provided with this response. Counterclaim Defendant is not in possession of other requested documents. Additional documents have been requested and will be provided if received.

2.      Documents or ESI sufficient to identify the location of any backups of data for each of Your mobile devices (iCloud, Itunes, VerizonCloud/ATT Locker, laptop or desktop computer backups, etc.) during the relevant time period.

**RESPONSE:**

Documents or ESI responsive to this request have previously been provided.

3.      All documents or items of ESI (including receipts, invoices, messages or bills) relating to referring to any iPhone or other mobile device owned by You which was damaged, lost, replaced or otherwise disposed during the relevant time period.

**RESPONSE:**

See Response to Number 1 above.

4.      The phone records or other documents or ESI sufficient to identify the dates and total number of all phone calls exchanged between You and Dolph Baker on each of Your mobile devices during the relevant time period.

**RESPONSE:**

Other than as stated in response to Request Number 1 above, Counterclaim Defendant is not in possession of the requested documents. Request for the documents has been made of AT&T but have not been provided.

5.   The phone records or other documents or ESI sufficient to identify the dates and total number of all text messages exchanged between You and Dolph Baker on each of Your mobile devices during the relevant time period.

**RESPONSE:**

Documents or ESI responsive to this request have previously been provided.

/s/ S. Grier Wells
S. GRIER WELLS, ESQ.
Florida Bar No.: 203238
Primary E-Mail Address:
grier.wells@gray-robinson.com
Secondary E-Mail Address: Barbara.rude@gray-robinson.com
GrayRobinson, P.A.
50 North Laura Street, Suite 1100
Jacksonville, Florida 32202
Phone: (904)-598-9929
JOHN M. BRENNAN
Florida Bar No.: 297951
Primary E-Mail Address:
jay.brennan@gray-robinson.com
Secondary E-Mail Address:
jessica.rolon@gray-robinson.com
MICHAEL R. SANTANA
Florida Bar No.: 42124
Primary E-Mail Address:
michael.santana@gray-robinson.com
Secondary E-Mail Address:
lisandra.acosta@gray-robinson.com
GrayRobinson, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida 32802
Phone: (407) 843-8880

Attorneys for Plaintiff/Counterclaim
Defendants, FOODONICS
INTERNATIONAL, INC., a Florida
Corporation and KEVIN JACQUES
KLEMPF, and Non-Parties HEATHER
JEAN KLEMPF, JULIANNE MARIE
KLEMPF LEE, ALEXANDRA
RENEE KLEMPF, DENNIS HUGHES,
REGGIE DALTON, JOHN REECE,
and RICHARD STILL.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was furnished by email delivery to JAMES H. POST, ESQ., MICHAEL E. DEMONT and R. CHRISTOPHER DIX (*jpost@smithhulsey.com*, *mdemont@smithhulsey.com*, *cdix@smithhulsey.com*), Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202 (*Attorneys for Defendant/Counterclaim Plaintiffs*), this 9th day of January, 2018.

/s/ S. Grier Wells, Esq.
Attorney

\732024\20 - # 1762180 v2

# DUPLICATE RECEIPT

**Date**       January 02, 2018  11:10 AM

Apple St. Johns
4835 River City Drive, Ste. 103
Jacksonville, FL  32246
stjohns@apple.com
904-997-8570
www.apple.com/retail/stjohnstowncenter

**Receipt ID**



\* R1115130170 \*

| Product Description | Return Date | Support Contact | Qty | Unit Price | Total |
|---|---|---|---|---|---|
| **IPHONE X SPACE GRAY 256GB AT&T-USA**<br>Part Number: MQAM2LL/A<br>Serial Number: FK1VWG67JCL8<br>IMEI: 353045093055638<br>ICCID: 89014104270618085871 | Return Date: Jan. 16, 2018 | For Support, Visit:<br>www.apple.com/support | 1 | $ 1,149.00 | $ 1,149.00 |
| AT&T Upgrade Information<br>Device changed for<br>904-885-1926 | | | | | |
| **AppleCare+ for iPhone XS/XS Max/X**<br>Part Number: S6369LL/A<br>Agreement Number: 970111118000148<br>Plan End Date: Jan. 01, 2020<br>Sales Associate ID: 973656163<br>Serial Number: FK1VWG67JCL8 | | For Support, Visit:<br>support.apple.com | 1 | $ 199.00 | $ 199.00 |

This plan is registered automatically.
Verify your coverage at
apple.com/support/applecare/ww/

Terms & Conditions:
You may cancel at any time (restrictions
apply). By purchasing, you agree to receive
the contract terms electronically by
visiting http://www.apple.com/legal/sales-
support/applecare/applecareplus/docs/
applecareplusnaen.html

---

(Device and Service) I have agreed to the terms as stated in the Wireless Customer Agreement, which
was made available for review prior to my acceptance and is available at http://att.com/iphoneterms

Use of iPhone constitutes acceptance of the iPhone terms and conditions and other third party terms
and conditions found in the iPhone box, or at http://www.apple.com/legal/sla/. This iPhone model is
configured to work only with the wireless services of AT&T Wireless.

You have chosen to purchase your iOS Device on credit according to the terms and payment schedule
set forth in the Installment Agreement Apple provided to you when the order was placed. Purchasing
on credit requires sales taxes to be paid at time of sale on full purchase price of the iOS Device.

If you are not fully satisfied with your iPhone purchase, you can return your undamaged iPhone within
14 days of purchase for a full refund with no restocking fee.

If you disagree with these terms and conditions you can return the iPhone in accordance with the
Apple Store's return policy http://www.apple.com/legal/sales_policies/retail.html

http://apple.com/legal/sales-support/sales-policies/retail.html
For information on how to recycle used electronic devices, please visit: https://www.apple.com/giveback

# DUPLICATE RECEIPT

**Date**          January 02, 2018  11:10 AM

Apple St. Johns
4835 River City Drive, Ste. 103
Jacksonville, FL  32246
stjohns@apple.com
904-997-8570
www.apple.com/retail/stjohnstowncenter

**Receipt ID**



\* R1115130170 \*

For Information on Apple's privacy policy see www.apple.com/privacy

|  |  |  |  | sub-total | $ 1,348.00 |
|  |  |  |  | tax @7.00% | $ 94.36 |
|  |  |  |  | **Total** | **$ 1,442.36** |

**Payment Method**

| Amount Paid Via Financing |  |  |  | $ 1,149.00 |
| Amount Paid Via  (Chip) | ···· 2000 | 10/2022 | 846601 | $ 293.36 |
| 111513017010 |  |  |  |  |

|  | **Total Tender** | **$ 1,442.36** |

 **AT&T**

KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

**Page:** 1 of 3
**Bill Cycle Date:** 07/18/17 - 08/17/17
**Account:** 523011439264

Visit us online at: **www.att.com**

# Wireless Statement

## Bill-At-A-Glance

| | |
|---|---|
| Previous Balance | $110.78 |
| Payment - 07/25 - Thank You! | $110.78CR |
| Adjustments | $0.00 |
| Balance | $0.00 |
| New Charges | $110.78 |
| **Total Amount Due** | **$110.78** |
| Amount Due in Full by | Sep 10, 2017 |

Here for you.

It's easy to get DIRECTV in your home. There's **no equipment** to buy, and you'll get 99% worry-free signal reliability.

**CALL:** **GO TO:** **VISIT:**

## Service Summary

| Service | | Page | Total |
|---|---|---|---|
|  **Wireless** | | | $110.78 |
| 904 316-8196 | $12.01 | 2 | |
| 904 885-1926 | $98.77 | 2 | |
| **Total New Charges** | | | **$110.78** |

**Manage Your Account:**
Online: att.com/myatt
Mobile App: att.com/myattapp
Support: 800 331-0500 or 611 from your mobile device
TTY: 866 241-6567

For important information about your bill, please see the **News You Can Use** section (Page 2).

## Wireless

**Group 4 - Usage Summary - Jul 18 thru Aug 17**
**Mobile Share Advantage 6GB** - Includes 6 gigabytes of data with plan. After all data allowances are used, data speeds are slowed to a max of 128 Kbps (2G speeds) for the rest of your bill cycle. Additional details for Consumer plans at att.com/mobileshareadvantage and for Business plans at att.com/attmobileshare.

| | Data Used (GB) | Messages | Minutes |
|---|---|---|---|
| 904 316-8196 | 0.00 | 0 | 0 |
| 904 885-1926 | 3.20 | 395 | 1,477 |
| **Total** | **3.20** | **395** | **1,477** |

**Mobile Share Advantage 6GB**

| | Gigabytes (GB) |
|---|---|
| Rollover available through Aug 17* | 3.21 |
| Included in Plan | 6.00 |
| Total Data Used | - 3.20 |
| **Rollover available on Aug 18** | **2.81** |

Usage is rounded up based on your plan. For more details on your Data Summary, visit myatt.com.
* Unused Rollover Data expires after 1 billing period or when you change your plan or account.

Wireless Services provided by AT&T Mobility, LLC.

Printed on Recyclable Paper

---

**DUE BY: Sep 10, 2017** $110.78

 **AT&T**

Account Number **523011439264**

Please include account number on your check.

KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

☐ CHECK FOR AUTO PAY
(SEE REVERSE)

Make checks payable to:
AT&T MOBILITY
PO Box 536216
Atlanta, GA 30353-6216

923005230114392640000000001107800000011078008

 **AT&T**

KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

Visit us online at: **www.att.com**

---

### 904 316-8196
**KEVIN KLEMPF**

**Monthly Charges - Aug 18 thru Sep 17**

| | | |
|---|---|---|
| 1. Access for iPad 4G LTE | | 10.00 |

**Other Charges and Credits**

Surcharges and Other Fees

| | | |
|---|---|---|
| 2. Administrative Fee | | 0.76 |
| 3. Regulatory Cost Recovery Charge | | 1.25 |
| Total Surcharges and Other Fees | | 2.01 |

**Total Other Charges & Credits** 2.01

**Total for 904 316-8196** 12.01

---

### 904 885-1926
**KEVIN J. KLEMPF**

**International Long Distance - Standard -** Includes international long distance from the U.S. to over 220 countries at standard, pay-per-use international rates. See rates at www.att.com/global.

**International Roaming - Expanded -** Includes international roaming outside the U.S. and international long distance from the U.S. at standard, pay-per-use international rates. See rates at www.att.com/global.

**Mobile Insurance Premium -** Includes Coverage for loss, theft, accidental damage, liquid damage, and out-of-warranty malfunction.

**Mobile Protection Pack - Support -** Includes ProTech support and Protect Plus app on eligible devices, when bundled with Mobile Insurance.

**Monthly Charges - Aug 18 thru Sep 17**

| | | |
|---|---|---|
| 1. Mobile Share Advantage 6GB | | 60.00 |
| 2. Access for iPhone 4G LTE w/ Visual Voicemail | | 40.00 |
| 3. Discount for Access | | 20.00CR |
| 4. International Long Distance - Standard | | 0.00 |
| 5. International Roaming - Expanded | | 0.00 |
| 6. Mobile Insurance Premium | | 8.99 |
| 7. Mobile Protection Pack - Support | | 3.00 |
| **Total Monthly Charges** | | **91.99** |

---

### Other Charges and Credits

Surcharges and Other Fees

| | | |
|---|---|---|
| 8. Administrative Fee | | 0.76 |
| 9. Federal Universal Service Charge | | 1.28 |
| 10. Regulatory Cost Recovery Charge | | 1.25 |
| Total Surcharges and Other Fees | | 3.29 |

**Government Fees and Taxes**

| | | |
|---|---|---|
| 11. 911 Service Fee | | 0.40 |
| 12. City Communications Tax | | 1.36 |
| 13. FL State Communications Tax | | 1.73 |
| Total Government Fees and Taxes | | 3.49 |

**Total Other Charges & Credits** 6.78

**Total for 904 885-1926** 98.77

**Total for Wireless accounts** 110.78

---

### News You Can Use

**TAKE YOUR WORLD WITH YOU**
Thanks for being an AT&T wireless customer. Now there are more ways to stay seamlessly connected to your world - whenever you want, wherever you go. Add a line today and choose from the hottest selection of smartphones, tablets and other devices so you can catch up with your favorite people, keep up with news, check the latest scores, watch TV anywhere and more. Call 888.618.7122 or go to att.com/GetMoreATT so we can help you find your perfect device.

**MOVING SOON?**
AT&T can help you move your existing services or order new home phone, high-speed Internet, and TV. Call 800.MOVE.ATT (800.668.3288) or go to www.att.com/move today.

**CALL US AND SAVE!**
If you're looking to save money, we've got you covered. Simply give us a call at 800.908.9635 and we'll help you find the right bundle of DIRECTV, wireless and other premium services that best fit your needs and budget. You can also go to att.com/SeeMySavings to learn more.

© 2012 AT&T Intellectual Property. All rights reserved.

AutoPay Enrollment
If I enroll in AutoPay, I authorize AT&T to pay my bill monthly by electronically deducting money from my bank account. I can cancel authorization by notifying AT&T at www.att.com or by calling the customer care number listed on my bill. Your enrollment could take 1-2 billing cycles for AutoPay to take effect. Continue to submit payment until page one of your invoice reflects either AutoPay will Debit Your Bank Account by or AutoPay will Debit Your Credit Card by.

Bank Account Holder Signature:
Date:

#0852301143926414#

#8WNJSZT

 AT&T

KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

Visit us online at: **www.att.com**

## Important Information

### LATE PAYMENT FEE
The late payment fee for consumer and Individual Responsibility User (IRU) bills not paid in full by the payment due date is $5.

### PAYMENT OPTIONS
Use the myAT&T App* on your smartphone, visit att.com/billpay to pay your AT&T bills electronically, or via our Interactive Voice Response system free of charge anytime day or night by calling 800 288-2020. Payments made with an AT&T representative will be assessed a $5 convenience fee. *Compatible device and account registration required. Messaging and data charges may apply for download and usage.

### ELECTRONIC CHECK CONVERSION
Paying by check authorizes AT&T to use the information from your check to make a one-time electronic fund transfer from your account. Funds may be withdrawn from your account as soon as your payment is received. If we cannot process the transaction electronically, you authorize AT&T to present an image copy of your check for payment. Your original check will be destroyed once processed. If your check is returned unpaid you agree to pay such fees as identified in the terms and conditions of your AT&T Service Agreement, up to $30. Returned checks may be presented electronically. If you want to save time and stamps, sign up for AutoPay at www.att.com/autopay using your checking account. It's easy, secure, and convenient!

### TAX ID
AT&T Mobility Tax ID # 84-1659970.

### SURCHARGES AND OTHER FEES
In addition to the monthly cost of the rate plan and any selected features, AT&T imposes the following other charges, on a per line basis: (1) federal and state universal service charges, (2) a Regulatory Cost Recovery Charge of up to $1.25 to help defray its cost incurred in complying with obligations and charges imposed by state and federal telecom regulations, (3) an Administrative Fee to help defray certain expenses AT&T incurs, such as interconnection and cell site rents and maintenance, and (4) other government assessments, including without limitation a gross receipts surcharge and a Property Tax Allotment surcharge of $0.20 - $0.45 applied per Corporate Responsibility User's assigned number. These fees are not taxes or government-required charges. See www.att.com/additionalcharges.

### AT&T NATL CENTER FOR CUSTOMERS WITH DISABILITIES
Questions on accessibility by persons with disabilities:
866 241-6568.

### WRITTEN CORRESPONDENCE
AT&T, PO Box 10330, Fort Wayne, IN 46851-0330
Do not send payments to this address.

### HOW DATA IS BILLED
Data is rounded up to the nearest KB for each line. Data for each line within a group is then added together and the total is rounded up to the nearest MB at the end of each billing cycle. For plans billed in GB, the total MB is then converted to GB. 1024KB = 1 Megabyte (MB), 1024MB = 1 Gigabyte (GB).



KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

Visit us online at: **www.att.com**

## 904 885-1926
KEVIN J. KLEMPF

### Call Detail

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Add'l Charges |
|---|---|---|---|---|---|---|---|
| **Tuesday, 07/18** | | | | | | | |
| 06:13a | JACKSO FL | 904-885-1841 | SDDV | | 1 | 0.00 | 0.00 |
| 08:20a | JACKSO FL | 904-885-1841 | SDDV | | 1 | 0.00 | 0.00 |
| 08:42a | JACKSO FL | 904-885-1841 | SDDV | | 2 | 0.00 | 0.00 |
| 08:44a | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 08:44a | JACKSO FL | 904-731-2791 | SDDV | | 4 | 0.00 | 0.00 |
| 08:56a | JACKSO FL | 904-238-7001 | SDDV | | 8 | 0.00 | 0.00 |
| 12:30p | INCOMI CL | 904-294-4145 | SDDV | | 4 | 0.00 | 0.00 |
| 03:25p | INCOMI CL | 904-238-7001 | SDDV | | 2 | 0.00 | 0.00 |
| 03:26p | JACKSO FL | 904-238-8011 | SDDV | | 1 | 0.00 | 0.00 |
| 03:28p | INCOMI CL | 904-387-2570 | SDDV | | 2 | 0.00 | 0.00 |
| 03:30p | INCOMI CL | 904-238-8011 | SDDV | | 4 | 0.00 | 0.00 |
| 03:35p | JACKSO FL | 904-238-6409 | SDDV | | 3 | 0.00 | 0.00 |
| 03:39p | JACKSO FL | 904-731-2791 | SDDV | | 2 | 0.00 | 0.00 |
| 03:41p | ATLANT GA | 404-316-2076 | SDDV | | 3 | 0.00 | 0.00 |
| 05:15p | INCOMI CL | 904-238-7001 | SDDV | | 6 | 0.00 | 0.00 |
| **Wednesday, 07/19** | | | | | | | |
| 01:12a | ATLANT GA | 404-316-2076 | SDDV | | 11 | 0.00 | 0.00 |
| 07:10a | JACKSO FL | 904-238-7001 | SDDV | | 8 | 0.00 | 0.00 |
| 08:31a | JACKSO FL | 904-238-8011 | SDDV | | 4 | 0.00 | 0.00 |
| 11:02a | JACKSO FL | 904-632-8484 | SDDV | | 1 | 0.00 | 0.00 |
| 11:04a | INCOMI CL | 904-632-8484 | SDDV | | 6 | 0.00 | 0.00 |
| 11:22a | JACKSO FL | 904-885-0512 | SDDV | | 5 | 0.00 | 0.00 |
| 11:55a | INCOMI CL | 904-280-5441 | SDDV | | 2 | 0.00 | 0.00 |
| 12:20p | INCOMI CL | 904-566-1469 | SDDV | | 3 | 0.00 | 0.00 |
| 12:31p | INCOMI CL | 904-983-9804 | SDDV | | 1 | 0.00 | 0.00 |
| 01:34p | JACKSO FL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 01:38p | JACKSO FL | 904-238-8011 | SDDV | | 3 | 0.00 | 0.00 |
| 01:41p | INCOMI CL | 904-395-2952 | SDDV | | 1 | 0.00 | 0.00 |
| 01:44p | JACKSO FL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 04:18p | ATLANT GA | 678-427-7663 | SDDV | | 3 | 0.00 | 0.00 |
| 04:22p | PACIFI CA | 650-359-4791 | SDDV | | 2 | 0.00 | 0.00 |
| 04:31p | INCOMI CL | 904-632-8484 | SDDV | | 8 | 0.00 | 0.00 |
| 05:59p | JACKSO FL | 904-238-6409 | SDDV | | 7 | 0.00 | 0.00 |
| **Thursday, 07/20** | | | | | | | |
| 08:33a | JACKSO FL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 08:33a | INCOMI CL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 09:42a | INCOMI CL | 904-238-7001 | SDDV | | 2 | 0.00 | 0.00 |
| 10:24a | JACKSO FL | 904-238-7001 | SDDV | | 7 | 0.00 | 0.00 |
| 10:32a | JACKSO FL | 904-619-2247 | SDDV | | 1 | 0.00 | 0.00 |
| 10:37a | JACKSO FL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |
| 10:42a | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 10:43a | INCOMI CL | 904-238-7001 | SDDV | | 2 | 0.00 | 0.00 |
| 10:45a | INCOMI CL | 904-404-6361 | SDDV | | 5 | 0.00 | 0.00 |
| 11:30a | INCOMI CL | 213-417-2344 | SDDV | | 4 | 0.00 | 0.00 |
| 11:34a | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 11:35a | JACKSO FL | 904-885-1841 | SDDV | | 1 | 0.00 | 0.00 |
| 11:42a | INCOMI CL | 904-238-7001 | SDDV | | 3 | 0.00 | 0.00 |
| 11:55a | INCOMI CL | 904-885-1841 | SDDV | | 6 | 0.00 | 0.00 |
| 12:01p | JACKSO FL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| **Thursday, 07/20** | | | | | | | |
| 12:21p | INCOMI CL | 646-885-0473 | SDDV | | 2 | 0.00 | 0.00 |
| 01:52p | TAMPA FL | 813-391-0830 | SDDV | | 20 | 0.00 | 0.00 |
| 02:27p | INCOMI CL | 904-885-2480 | SDDV | | 4 | 0.00 | 0.00 |
| 02:45p | INCOMI CL | 904-885-5887 | SDDV | | 1 | 0.00 | 0.00 |
| 02:59p | JACKSO FL | 904-387-2570 | SDDV | | 17 | 0.00 | 0.00 |
| 03:16p | JACKSO FL | 904-238-8011 | SDDV | | 3 | 0.00 | 0.00 |
| 03:19p | JACKSO FL | 904-238-8011 | SDDV | | 3 | 0.00 | 0.00 |
| 04:29p | MIAMI FL | 786-535-3211 | SDDV | | 21 | 0.00 | 0.00 |
| 05:44p | JACKSO FL | 904-885-0512 | SDDV | | 8 | 0.00 | 0.00 |
| **Friday, 07/21** | | | | | | | |
| 09:16a | JACKSO FL | 904-238-8011 | SDDV | | 9 | 0.00 | 0.00 |
| 09:24a | INCOMI CL | 904-238-7001 | SDDV | | 8 | 0.00 | 0.00 |
| 10:21a | INCOMI CL | 601-948-6813 | SDDV | | 8 | 0.00 | 0.00 |
| 10:32a | JACKSO FL | 904-868-5200 | SDDV | | 8 | 0.00 | 0.00 |
| 10:39a | JACKSO FL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |
| 12:44p | JACKSO FL | 904-238-8011 | SDDV | | 1 | 0.00 | 0.00 |
| 01:14p | INCOMI CL | 904-238-7001 | SDDV | | 8 | 0.00 | 0.00 |
| 01:21p | JACKSO FL | 904-388-2001 | SDDV | | 7 | 0.00 | 0.00 |
| 02:25p | ATLANT GA | 404-316-2076 | SDDV | | 8 | 0.00 | 0.00 |
| 02:32p | JACKSV FL | 904-246-0005 | SDDV | | 2 | 0.00 | 0.00 |
| 02:36p | JACKSO FL | 904-571-0211 | SDDV | | 2 | 0.00 | 0.00 |
| 02:39p | INCOMI CL | 904-571-0211 | SDDV | | 4 | 0.00 | 0.00 |
| 03:31p | JACKSO FL | 904-807-8219 | SDDV | | 1 | 0.00 | 0.00 |
| 03:32p | JACKSO FL | 904-807-8219 | SDDV | | 40 | 0.00 | 0.00 |
| **Saturday, 07/22** | | | | | | | |
| 01:14p | ATLANT GA | 404-316-2076 | SDDV | | 3 | 0.00 | 0.00 |
| **Sunday, 07/23** | | | | | | | |
| 09:20a | JACKSO FL | 904-238-7001 | SDDV | | 13 | 0.00 | 0.00 |
| 03:45p | INCOMI CL | 904-252-9612 | SDDV | | 2 | 0.00 | 0.00 |
| 05:18p | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 05:26p | INCOMI CL | 904-238-7001 | SDDV | | 7 | 0.00 | 0.00 |
| 06:28p | PONTVD FL | 904-280-5441 | SDDV | | 1 | 0.00 | 0.00 |
| 06:29p | PONTVD FL | 904-280-5441 | SDDV | | 2 | 0.00 | 0.00 |
| 06:30p | PONTVD FL | 904-280-5441 | SDDV | | 4 | 0.00 | 0.00 |
| **Monday, 07/24** | | | | | | | |
| 08:29a | JACKSO FL | 904-238-8011 | SDDV | | 2 | 0.00 | 0.00 |
| 10:20a | JACKSO FL | 904-294-4145 | SDDV | | 4 | 0.00 | 0.00 |
| 11:26a | INCOMI CL | 281-612-6884 | SDDV | | 1 | 0.00 | 0.00 |
| 12:19p | JACKSO FL | 904-294-4145 | SDDV | | 17 | 0.00 | 0.00 |
| 01:29p | INCOMI CL | 904-238-8011 | SDDV | | 2 | 0.00 | 0.00 |
| 02:06p | JACKSO FL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 02:07p | JACKSO FL | 904-619-2247 | SDDV | | 2 | 0.00 | 0.00 |
| 02:27p | INCOMI CL | 904-238-7001 | SDDV | | 3 | 0.00 | 0.00 |
| 03:10p | JACKSO FL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 03:14p | JACKSO FL | 904-632-0252 | SDDV | | 1 | 0.00 | 0.00 |
| 03:15p | INCOMI CL | 904-294-4145 | SDDV | | 6 | 0.00 | 0.00 |
| 03:21p | JACKSO FL | 904-632-0252 | SDDV | | 3 | 0.00 | 0.00 |
| 03:27p | INCOMI CL | 904-632-0252 | SDDV | | 2 | 0.00 | 0.00 |
| 03:31p | JACKSO FL | 904-238-8011 | SDDV | | 5 | 0.00 | 0.00 |
| **Tuesday, 07/25** | | | | | | | |
| 09:18a | JACKSO FL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |
| 03:45p | JACKSO FL | 904-632-8484 | SDDV | | 33 | 0.00 | 0.00 |
| 05:25p | INCOMI CL | 904-716-7370 | SDDV | | 3 | 0.00 | 0.00 |
| 05:40p | JACKSO FL | 904-238-7001 | SDDV | | 4 | 0.00 | 0.00 |


**AT&T**

KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

Visit us online at: **www.att.com**

## 904 885-1926
### KEVIN J. KLEMPF

### Call Detail - Continued

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Add'l Charges |
|------|------|------|------|------|------|------|------|
| **Wednesday, 07/26** | | | | | | | |
| 08:07a | JACKSO FL | 904-294-4145 | SDDV | | 4 | 0.00 | 0.00 |
| 08:11a | JACKSO FL | 904-613-3000 | SDDV | | 2 | 0.00 | 0.00 |
| 08:15a | INCOMI CL | 904-613-3000 | SDDV | | 18 | 0.00 | 0.00 |
| 11:20a | JACKSO FL | 904-398-6982 | SDDV | | 3 | 0.00 | 0.00 |
| 11:27a | PONTVD FL | 904-280-5441 | SDDV | | 1 | 0.00 | 0.00 |
| 01:31p | JACKSO FL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |
| 03:03p | JACKSO FL | 904-238-7001 | SDDV | | 3 | 0.00 | 0.00 |
| 03:06p | JACKSO FL | 904-238-7001 | SDDV | | 6 | 0.00 | 0.00 |
| 03:27p | JACKSO FL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 03:41p | INCOMI CL | 904-885-6405 | SDDV | | 1 | 0.00 | 0.00 |
| 05:40p | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 05:50p | JACKSO FL | 904-238-7001 | SDDV | | 3 | 0.00 | 0.00 |
| 05:53p | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| **Thursday, 07/27** | | | | | | | |
| 12:43p | INCOMI CL | 213-417-2344 | SDDV | | 1 | 0.00 | 0.00 |
| 12:47p | JACKSO FL | 904-294-4145 | SDDV | | 10 | 0.00 | 0.00 |
| 01:25p | BLACKS GA | 912-449-9392 | SDDV | | 2 | 0.00 | 0.00 |
| 01:33p | INCOMI CL | 912-449-9392 | SDDV | | 4 | 0.00 | 0.00 |
| 01:45p | JACKSO FL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 02:27p | INCOMI CL | 904-613-3000 | SDDV | | 2 | 0.00 | 0.00 |
| 04:50p | JACKSO FL | 904-294-4145 | SDDV | | 6 | 0.00 | 0.00 |
| 04:56p | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 05:10p | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 05:23p | INCOMI CL | 904-238-7001 | SDDV | | 6 | 0.00 | 0.00 |
| 05:29p | JACKSO FL | 904-234-0916 | SDDV | | 4 | 0.00 | 0.00 |
| 06:23p | STARKE FL | 904-290-6711 | SDDV | | 3 | 0.00 | 0.00 |
| 06:54p | INCOMI CL | 904-234-0916 | SDDV | | 4 | 0.00 | 0.00 |
| **Friday, 07/28** | | | | | | | |
| 08:20a | JACKSO FL | 904-238-8011 | SDDV | | 2 | 0.00 | 0.00 |
| 08:33a | INCOMI CL | 904-238-7001 | SDDV | | 4 | 0.00 | 0.00 |
| 08:54a | JACKSO FL | 904-238-7001 | SDDV | | 2 | 0.00 | 0.00 |
| 09:01a | INCOMI CL | 904-238-7001 | SDDV | | 10 | 0.00 | 0.00 |
| 09:11a | JACKSO FL | 904-238-8011 | SDDV | | 3 | 0.00 | 0.00 |
| 09:24a | JACKSO FL | 904-294-4145 | SDDV | | 8 | 0.00 | 0.00 |
| 12:51p | INCOMI CL | 435-222-3074 | SDDV | | 1 | 0.00 | 0.00 |
| 01:02p | JACKSO FL | 904-294-4145 | SDDV | | 4 | 0.00 | 0.00 |
| 02:32p | JACKSO FL | 904-238-6409 | SDDV | | 2 | 0.00 | 0.00 |
| 02:36p | JACKSO FL | 904-238-7001 | SDDV | | 6 | 0.00 | 0.00 |
| 02:49p | JACKSO FL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 03:30p | INCOMI CL | 904-772-5088 | SDDV | | 2 | 0.00 | 0.00 |
| **Saturday, 07/29** | | | | | | | |
| 10:19a | JACKSO FL | 904-238-8011 | SDDV | | 4 | 0.00 | 0.00 |
| 11:20a | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 11:21a | INCOMI CL | 904-238-7001 | SDDV | | 6 | 0.00 | 0.00 |
| 12:31p | PONTVD FL | 904-285-0923 | SDDV | | 1 | 0.00 | 0.00 |

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Add'l Charges |
|------|------|------|------|------|------|------|------|
| **Saturday, 07/29** | | | | | | | |
| 05:53p | JACKSO FL | 904-238-7001 | SDDV | | 6 | 0.00 | 0.00 |
| 06:57p | JACKSO FL | 904-238-7001 | SDDV | | 2 | 0.00 | 0.00 |
| 09:07p | INCOMI CL | 904-234-0916 | SDDV | | 11 | 0.00 | 0.00 |
| **Sunday, 07/30** | | | | | | | |
| 08:41a | JACKSO FL | 904-238-8011 | SDDV | | 1 | 0.00 | 0.00 |
| 08:45a | INCOMI CL | 904-238-8011 | SDDV | | 9 | 0.00 | 0.00 |
| 08:54a | JACKSO FL | 904-238-8011 | SDDV | | 1 | 0.00 | 0.00 |
| 09:49a | INCOMI CL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 09:49a | INCOMI CL | 904-238-7001 | SDDV | | 4 | 0.00 | 0.00 |
| 10:45a | JACKSO FL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 11:15a | JACKSO FL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 11:31a | JACKSO FL | 904-238-6409 | SDDV | | 15 | 0.00 | 0.00 |
| 05:21p | JACKSO FL | 904-404-6361 | SDDV | | 21 | 0.00 | 0.00 |
| **Monday, 07/31** | | | | | | | |
| 08:32a | JACKSO FL | 904-404-6381 | SDDV | | 22 | 0.00 | 0.00 |
| 10:58a | JACKSO FL | 904-294-4145 | SDDV | | 18 | 0.00 | 0.00 |
| 12:49p | INCOMI CL | 904-885-0512 | SDDV | | 2 | 0.00 | 0.00 |
| 03:16p | MCRAE GA | 229-315-0926 | SDDV | | 7 | 0.00 | 0.00 |
| 03:23p | JACKSO FL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |
| 04:52p | INCOMI CL | 646-517-8496 | SDDV | | 1 | 0.00 | 0.00 |
| **Tuesday, 08/01** | | | | | | | |
| 08:26a | JACKSO FL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 08:27a | JACKSO FL | 904-238-8011 | SDDV | | 7 | 0.00 | 0.00 |
| 10:41a | INCOMI CL | 904-280-5441 | SDDV | | 2 | 0.00 | 0.00 |
| 11:53a | INCOMI CL | 904-238-7001 | SDDV | | 3 | 0.00 | 0.00 |
| 04:21p | JACKSO FL | 904-294-4145 | SDDV | | 5 | 0.00 | 0.00 |
| 04:26p | JACKSO FL | 904-613-3000 | SDDV | | 13 | 0.00 | 0.00 |
| **Wednesday, 08/02** | | | | | | | |
| 08:14a | JACKSO FL | 904-238-8011 | SDDV | | 1 | 0.00 | 0.00 |
| 08:21a | INCOMI CL | 904-294-4145 | SDDV | | 6 | 0.00 | 0.00 |
| 08:27a | INCOMI CL | 904-238-8011 | SDDV | | 8 | 0.00 | 0.00 |
| 08:38a | JACKSO FL | 904-238-8011 | SDDV | | 2 | 0.00 | 0.00 |
| 10:51a | JACKSO FL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |
| 10:57a | JACKSO FL | 904-349-7534 | SDDV | | 8 | 0.00 | 0.00 |
| 11:13a | INCOMI CL | 916-798-9910 | SDDV | | 14 | 0.00 | 0.00 |
| 12:11p | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 12:15p | JACKSO FL | 904-296-3366 | SDDV | | 6 | 0.00 | 0.00 |
| 01:12p | INCOMI CL | 904-885-1838 | SDDV | | 1 | 0.00 | 0.00 |
| 02:16p | JACKSO FL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 02:22p | INCOMI CL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 02:37p | JACKSO FL | 904-655-4335 | SDDV | | 5 | 0.00 | 0.00 |
| 02:53p | NEW YO NY | 646-768-1392 | SDDV | | 4 | 0.00 | 0.00 |
| 04:25p | INCOMI CL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| **Thursday, 08/03** | | | | | | | |
| 09:03a | JACKSO FL | 904-238-8011 | SDDV | | 1 | 0.00 | 0.00 |
| 09:04a | INCOMI CL | 904-238-8011 | SDDV | | 4 | 0.00 | 0.00 |
| 09:08a | JACKSO FL | 904-238-6409 | SDDV | | 9 | 0.00 | 0.00 |
| 09:17a | JACKSO FL | 904-783-0950 | SDDV | | 1 | 0.00 | 0.00 |
| 10:29a | INCOMI CL | 904-238-7001 | SDDV | | 2 | 0.00 | 0.00 |
| 10:30a | JACKSO FL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |

© 2012 AT&T Intellectual Property. All rights reserved.



KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

Visit us online at: **www.att.com**

## 904 885-1926
### KEVIN J. KLEMPF

**Call Detail - Continued**

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Add'l Charges |
|---|---|---|---|---|---|---|---|
| **Thursday, 08/03** | | | | | | | |
| 10:35a | JACKSO FL | 904-924-6442 | SDDV | | 2 | 0.00 | 0.00 |
| 10:42a | INCOMI CL | 904-924-6442 | SDDV | | 3 | 0.00 | 0.00 |
| 10:51a | INCOMI CL | 813-948-0373 | SDDV | | 12 | 0.00 | 0.00 |
| 11:13a | INCOMI CL | 904-566-1469 | SDDV | | 10 | 0.00 | 0.00 |
| 01:17p | JACKSO FL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 02:59p | INCOMI CL | 904-238-8011 | SDDV | | 2 | 0.00 | 0.00 |
| 03:40p | INCOMI CL | 904-238-7001 | SDDV | | 3 | 0.00 | 0.00 |
| 04:46p | JACKSO FL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 04:52p | BLOCKED | 000-000-0000 | SDDV | | 1 | 0.00 | 0.00 |
| 05:00p | INCOMI CL | 904-238-7001 | SDDV | | 3 | 0.00 | 0.00 |
| **Friday, 08/04** | | | | | | | |
| 08:36a | JACKSO FL | 904-953-2021 | SDDV | | 5 | 0.00 | 0.00 |
| 08:44a | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 12:15p | JACKSO FL | 904-953-2021 | SDDV | | 1 | 0.00 | 0.00 |
| 12:19p | JACKSO FL | 904-294-4145 | SDDV | | 9 | 0.00 | 0.00 |
| 12:43p | INCOMI CL | 904-598-7616 | SDDV | | 18 | 0.00 | 0.00 |
| 01:17p | JACKSO FL | 904-994-9100 | SDDV | | 1 | 0.00 | 0.00 |
| 01:18p | INCOMI CL | 904-994-9100 | SDDV | | 5 | 0.00 | 0.00 |
| 01:55p | PONTVD FL | 904-273-3700 | SDDV | | 1 | 0.00 | 0.00 |
| 01:57p | PONTVD FL | 904-273-3702 | SDDV | | 2 | 0.00 | 0.00 |
| 03:11p | INCOMI CL | 904-924-6442 | SDDV | | 2 | 0.00 | 0.00 |
| 04:16p | INCOMI CL | 904-280-5466 | SDDV | | 2 | 0.00 | 0.00 |
| 07:53p | INCOMI CL | 904-864-0100 | SDDV | | 4 | 0.00 | 0.00 |
| **Sunday, 08/06** | | | | | | | |
| 11:02a | INCOMI CL | 904-238-8011 | SDDV | | 2 | 0.00 | 0.00 |
| **Monday, 08/07** | | | | | | | |
| 08:38a | JACKSO FL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 09:04a | JACKSO FL | 904-296-3366 | SDDV | | 9 | 0.00 | 0.00 |
| 09:12a | INCOMI CL | 302-381-8050 | SDDV | | 10 | 0.00 | 0.00 |
| 09:25a | JACKSO FL | 904-387-2570 | SDDV | | 3 | 0.00 | 0.00 |
| 10:57a | INCOMI CL | 904-273-3702 | SDDV | | 4 | 0.00 | 0.00 |
| 11:00a | JACKSO FL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |
| 11:03a | INCOMI CL | 904-273-3702 | SDDV | | 2 | 0.00 | 0.00 |
| 11:04a | JACKSO FL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |
| 11:20a | INCOMI CL | 800-432-1429 | SDDV | | 2 | 0.00 | 0.00 |
| 11:22a | JACKSO FL | 904-545-4153 | SDDV | | 1 | 0.00 | 0.00 |
| 11:44a | INCOMI CL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 12:00p | INCOMI CL | 904-545-4153 | SDDV | | 2 | 0.00 | 0.00 |
| 12:08p | INCOMI CL | 877-529-1693 | SDDV | | 1 | 0.00 | 0.00 |
| 12:20p | SWAINS GA | 478-331-9602 | SDDV | | 4 | 0.00 | 0.00 |
| 01:10p | JACKSO FL | 904-268-1220 | SDDV | | 2 | 0.00 | 0.00 |
| 01:41p | JACKSO FL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 02:21p | JACKSO FL | 904-238-6409 | SDDV | | 5 | 0.00 | 0.00 |
| 03:29p | INCOMI CL | 904-716-7370 | SDDV | | 6 | 0.00 | 0.00 |
| 04:02p | JACKSO FL | 904-238-8011 | SDDV | | 1 | 0.00 | 0.00 |
| 04:51p | INCOMI CL | 912-449-9392 | SDDV | | 2 | 0.00 | 0.00 |
| 05:45p | INCOMI CL | 904-238-7001 | SDDV | | 2 | 0.00 | 0.00 |
| **Tuesday, 08/08** | | | | | | | |
| 08:50a | INCOMI CL | 551-255-8133 | SDDV | | 1 | 0.00 | 0.00 |

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Add'l Charges |
|---|---|---|---|---|---|---|---|
| **Tuesday, 08/08** | | | | | | | |
| 10:25a | INCOMI CL | 601-405-3058 | SDDV | | 13 | 0.00 | 0.00 |
| 10:53a | INCOMI CL | 601-948-6813 | SDDV | | 22 | 0.00 | 0.00 |
| 11:17a | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 11:57a | BLACKS GA | 912-449-9392 | SDDV | | 4 | 0.00 | 0.00 |
| 12:03p | JACKSO FL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 12:16p | INCOMI CL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |
| 12:44p | INCOMI CL | 904-616-1934 | SDDV | | 2 | 0.00 | 0.00 |
| 01:44p | INCOMI CL | 904-219-6344 | SDDV | | 3 | 0.00 | 0.00 |
| 02:48p | JACKSO FL | 904-632-8484 | SDDV | | 1 | 0.00 | 0.00 |
| 02:55p | INCOMI CL | 904-632-8484 | SDDV | | 2 | 0.00 | 0.00 |
| 03:37p | JACKSO FL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 03:39p | JACKSO FL | 904-294-4145 | SDDV | | 4 | 0.00 | 0.00 |
| 04:50p | INCOMI CL | 904-238-7001 | SDDV | | 2 | 0.00 | 0.00 |
| 05:22p | Toll F CL | 800-430-1000 | SDDV | | 5 | 0.00 | 0.00 |
| **Wednesday, 08/09** | | | | | | | |
| 08:19a | JACKSO FL | 904-296-3366 | SDDV | | 2 | 0.00 | 0.00 |
| 10:30a | JACKSO FL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 10:30a | JACKSO FL | 904-387-2570 | SDDV | | 1 | 0.00 | 0.00 |
| 10:39a | INCOMI CL | 904-280-0987 | SDDV | | 2 | 0.00 | 0.00 |
| 11:02a | INCOMI CL | 904-387-2570 | SDDV | | 7 | 0.00 | 0.00 |
| 11:20a | INCOMI CL | 904-389-5533 | SDDV | | 1 | 0.00 | 0.00 |
| 11:21a | JACKSO FL | 904-294-4145 | SDDV | | 5 | 0.00 | 0.00 |
| 11:33a | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 11:36a | INCOMI CL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 01:11p | LOSANG CA | 213-417-2344 | SDDV | | 9 | 0.00 | 0.00 |
| 01:56p | INCOMI CL | 904-655-1069 | SDDV | | 14 | 0.00 | 0.00 |
| 02:30p | INCOMI CL | 813-391-0830 | SDDV | | 28 | 0.00 | 0.00 |
| 02:58p | JACKSO FL | 904-255-8707 | SDDV | | 1 | 0.00 | 0.00 |
| 03:00p | JACKSO FL | 904-255-8707 | SDDV | | 1 | 0.00 | 0.00 |
| 03:03p | JACKSO FL | 904-255-8707 | SDDV | | 6 | 0.00 | 0.00 |
| 03:10p | JACKSO FL | 904-630-1776 | SDDV | | 2 | 0.00 | 0.00 |
| 03:43p | JACKSO FL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |
| 04:36p | INCOMI CL | 904-238-8011 | SDDV | | 4 | 0.00 | 0.00 |
| 05:34p | INCOMI CL | 928-224-7454 | SDDV | | 2 | 0.00 | 0.00 |
| **Thursday, 08/10** | | | | | | | |
| 11:49a | INCOMI CL | 904-632-8484 | SDDV | | 7 | 0.00 | 0.00 |
| 12:29p | SCRM N CA | 916-798-9910 | SDDV | | 2 | 0.00 | 0.00 |
| 12:35p | JACKSO FL | 904-294-4145 | SDDV | | 5 | 0.00 | 0.00 |
| 12:41p | JACKSO FL | 904-868-5200 | SDDV | | 8 | 0.00 | 0.00 |
| 12:50p | JACKSO FL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 01:04p | INCOMI CL | 916-798-9910 | SDDV | | 4 | 0.00 | 0.00 |
| 01:54p | JACKSO FL | 904-238-7001 | SDDV | | 2 | 0.00 | 0.00 |
| 02:23p | JACKSO FL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 03:01p | JACKSO FL | 904-238-8011 | SDDV | | 11 | 0.00 | 0.00 |
| 03:11p | INCOMI CL | 904-571-0211 | SDDV | | 3 | 0.00 | 0.00 |
| 03:14p | JACKSO FL | 904-238-8011 | SDDV | | 4 | 0.00 | 0.00 |
| 04:26p | JACKSO FL | 904-545-4153 | SDDV | | 2 | 0.00 | 0.00 |
| 04:31p | JACKSO FL | 904-545-4153 | SDDV | | 1 | 0.00 | 0.00 |
| 04:59p | JACKSO FL | 904-238-7001 | SDDV | | 5 | 0.00 | 0.00 |
| 05:04p | JACKSO FL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 05:10p | INCOMI CL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |
| 05:19p | INCOMI CL | 904-924-6442 | SDDV | | 2 | 0.00 | 0.00 |
| **Friday, 08/11** | | | | | | | |
| 08:40a | JACKSO FL | 904-238-8011 | SDDV | | 7 | 0.00 | 0.00 |



KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

Visit us online at: **www.att.com**

## 904 885-1926
### KEVIN J. KLEMPF

### Call Detail - Continued

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Add'l Charges |
|------|------|------|------|------|------|------|------|
| **Friday, 08/11** | | | | | | | |
| 09:44a | INCOMI CL | 919-230-9595 | SDDV | | 1 | 0.00 | 0.00 |
| 10:49a | JACKSO FL | 904-545-4153 | SDDV | | 1 | 0.00 | 0.00 |
| 11:25a | JACKSO FL | 904-294-4145 | SDDV | | 6 | 0.00 | 0.00 |
| 11:38a | INCOMI CL | 904-238-7001 | SDDV | | 6 | 0.00 | 0.00 |
| 11:44a | INCOMI CL | 904-630-1786 | SDDV | | 7 | 0.00 | 0.00 |
| 11:52a | JACKSO FL | 904-238-7001 | SDDV | | 4 | 0.00 | 0.00 |
| 03:08p | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 03:09p | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 03:23p | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 03:36p | JACKSO FL | 904-238-7001 | SDDV | | 2 | 0.00 | 0.00 |
| 05:40p | JACKSO FL | 904-294-4145 | SDDV | | 4 | 0.00 | 0.00 |
| **Saturday, 08/12** | | | | | | | |
| 12:57p | INCOMI CL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| 01:00p | INCOMI CL | 904-294-4145 | SDDV | | 1 | 0.00 | 0.00 |
| 04:25p | SPRING MO | 417-838-3233 | SDDV | | 1 | 0.00 | 0.00 |
| 04:26p | INCOMI CL | 417-838-3233 | SDDV | | 7 | 0.00 | 0.00 |
| 04:34p | JACKSO FL | 904-238-8011 | SDDV | | 2 | 0.00 | 0.00 |
| **Sunday, 08/13** | | | | | | | |
| 10:05a | PONTVD FL | 904-280-5441 | SDDV | | 2 | 0.00 | 0.00 |
| 11:20a | JACKSO FL | 904-238-7001 | SDDV | | 2 | 0.00 | 0.00 |
| 11:22a | WAYCRO GA | 912-614-5384 | SDDV | | 5 | 0.00 | 0.00 |
| 11:27a | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 11:28a | JACKSO FL | 904-398-1949 | SDDV | | 7 | 0.00 | 0.00 |
| 11:41a | JACKSO FL | 904-238-8011 | SDDV | | 2 | 0.00 | 0.00 |
| 02:14p | PONTVD FL | 904-285-1111 | SDDV | | 3 | 0.00 | 0.00 |
| 02:46p | INCOMI CL | 904-238-8011 | SDDV | | 9 | 0.00 | 0.00 |
| **Monday, 08/14** | | | | | | | |
| 09:44a | JACKSO FL | 904-294-4145 | SDDV | | 4 | 0.00 | 0.00 |
| 09:48a | JACKSO FL | 904-885-0512 | SDDV | | 2 | 0.00 | 0.00 |
| 10:45a | JACKSO FL | 904-238-8011 | SDDV | | 13 | 0.00 | 0.00 |
| 11:17a | INCOMI CL | 904-885-0512 | SDDV | | 2 | 0.00 | 0.00 |
| 12:54p | JACKSO FL | 904-238-8011 | SDDV | | 1 | 0.00 | 0.00 |
| 01:00p | JACKSO FL | 904-238-8011 | SDDV | | 2 | 0.00 | 0.00 |
| 01:25p | INCOMI CL | 904-203-1568 | SDDV | | 1 | 0.00 | 0.00 |
| 05:15p | INCOMI CL | 904-238-7001 | SDDV | | 3 | 0.00 | 0.00 |
| **Tuesday, 08/15** | | | | | | | |
| 08:57a | JACKSO FL | 904-238-7001 | SDDV | | 1 | 0.00 | 0.00 |
| 09:04a | INCOMI CL | 904-238-7001 | SDDV | | 17 | 0.00 | 0.00 |
| 10:42a | JACKSO FL | 904-294-4145 | SDDV | | 3 | 0.00 | 0.00 |
| 10:56a | INCOMI CL | 302-381-8050 | SDDV | | 2 | 0.00 | 0.00 |
| 11:00a | INCOMI CL | 904-632-0262 | SDDV | | 1 | 0.00 | 0.00 |
| 11:25a | INCOMI CL | 904-280-5441 | SDDV | | 1 | 0.00 | 0.00 |
| 11:48a | INCOMI CL | 904-632-0248 | SDDV | | 2 | 0.00 | 0.00 |
| 11:57a | JACKSO FL | 904-699-3066 | SDDV | | 11 | 0.00 | 0.00 |
| 02:30p | INCOMI CL | 904-238-8011 | SDDV | | 2 | 0.00 | 0.00 |
| 03:00p | INCOMI CL | 904-238-7001 | SDDV | | 10 | 0.00 | 0.00 |
| 03:24p | JACKSO FL | 904-238-7001 | SDDV | | 2 | 0.00 | 0.00 |
| 04:32p | JACKSO FL | 904-632-0251 | SDDV | | 1 | 0.00 | 0.00 |

| Time | Place Called | Number Called | Rate Code | Feature Code | Min | Airtime Charges | LD/Add'l Charges |
|------|------|------|------|------|------|------|------|
| **Tuesday, 08/15** | | | | | | | |
| 06:29p | ATLANT GA | 404-316-2076 | SDDV | | 2 | 0.00 | 0.00 |
| 07:53p | INCOMI CL | 904-813-0243 | SDDV | | 5 | 0.00 | 0.00 |
| 07:58p | JACKSO FL | 904-633-8808 | SDDV | | 6 | 0.00 | 0.00 |
| **Wednesday, 08/16** | | | | | | | |
| 08:50a | JACKSO FL | 904-238-7001 | SDDV | | 7 | 0.00 | 0.00 |
| 09:20a | JACKSO FL | 904-294-4145 | SDDV | | 5 | 0.00 | 0.00 |
| 09:27a | JACKSO FL | 904-238-6409 | SDDV | | 5 | 0.00 | 0.00 |
| 09:31a | JACKSO FL | 904-238-6409 | SDDV | | 1 | 0.00 | 0.00 |
| 09:38a | JACKSO FL | 904-294-4145 | SDDV | | 4 | 0.00 | 0.00 |
| 11:47a | JACKSO FL | 904-632-0252 | SDDV | | 2 | 0.00 | 0.00 |
| 11:49a | INCOMI CL | 904-632-0262 | SDDV | | 2 | 0.00 | 0.00 |
| 01:25p | INCOMI CL | 904-632-0252 | SDDV | | 3 | 0.00 | 0.00 |
| 01:38p | INCOMI CL | 601-714-8768 | SDDV | | 1 | 0.00 | 0.00 |
| 02:13p | JACKSO FL | 904-294-4145 | SDDV | | 5 | 0.00 | 0.00 |
| 02:31p | WAYCRO GA | 912-614-2795 | SDDV | | 6 | 0.00 | 0.00 |
| 04:00p | INCOMI CL | 904-238-7001 | SDDV | | 8 | 0.00 | 0.00 |
| 08:27p | JACKSO FL | 904-294-4145 | SDDV | | 5 | 0.00 | 0.00 |
| **Thursday, 08/17** | | | | | | | |
| 06:17p | JACKSO FL | 904-294-4145 | SDDV | | 2 | 0.00 | 0.00 |
| Subtotal | | | | | 1,477 | 0.00 | 0.00 |

**Rate Code:**
SDDV = Shared Minutes

### Data Detail

| Time | To/From | Type/Unit | Rate Code | |
|------|------|------|------|------|
| **Text Messages** | | | | |
| **Tuesday, 07/18** | | | | |
| 03:49a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:49a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:49a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:50a | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:51a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:51a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:51a | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:51a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:51a | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:53a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:53a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:54a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:55a | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:56a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:57a | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:58a | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:59a | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:00a | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:01a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:02a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:05a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:08a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |



KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

Visit us online at: **www.att.com**

## 904 885-1926
### KEVIN J. KLEMPF

**Data Detail** - Continued

| Time | To/From | Type/Unit | Rate Code | |
|------|---------|-----------|-----------|---|
| Text Messages | | | | |
| Tuesday, 07/18 | | | | |
| 04:11a Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:13a Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:13a Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:14a Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:15a Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:16a Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:18a Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:18a Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:19a Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 08:23a Sent | 770-364-3312 | Text Message | UNLMSG | 0.00 |
| 10:46a Rcvd | 904-304-8150 | Text Message | UNLMSG | 0.00 |
| 02:17p Rcvd | 770-364-3312 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 05:29p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:30p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:31p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:32p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:32p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:32p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:32p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:34p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:34p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:35p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:36p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:39p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:41p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:41p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:41p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:42p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:42p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:43p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:45p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:45p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:46p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:50p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:50p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:50p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:51p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:53p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:53p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:55p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:57p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:59p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:59p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:59p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:01p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:01p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:03p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:03p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |

| Time | To/From | Type/Unit | Rate Code | |
|------|---------|-----------|-----------|---|
| Text Messages | | | | |
| Tuesday, 07/18 | | | | |
| 06:04p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:09p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:09p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:10p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:14p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:14p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:16p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:20p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:20p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:26p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:26p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 07:50p Sent | 770-364-3312 | Text Message | UNLMSG | 0.00 |
| 07:50p Sent | 770-364-3312 | Text Message | UNLMSG | 0.00 |
| 07:51p Sent | 770-364-3312 | Text Message | UNLMSG | 0.00 |
| 07:54p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 07:54p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 07:54p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 07:55p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 08:02p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 08:04p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 08:09p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 08:10p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 08:10p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 09:18p Rcvd | 770-364-3312 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 09:19p Rcvd | 904-502-3031 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 09:58p Rcvd | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 10:25p Rcvd | 770-364-3312 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 10:26p Rcvd | 770-364-3312 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| Wednesday, 07/19 | | | | |
| 01:06a Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 08:55a Rcvd | 54409 | Text Message | UNLMSG | 0.00 |
| 08:55a Rcvd | 54409 | Text Message | UNLMSG | 0.00 |
| 10:05a Rcvd | 904-699-3733 | Text Message | UNLMSG | 0.00 |
| 10:11a Sent | 904-699-3733 | Text Message | UNLMSG | 0.00 |
| 11:25a Rcvd | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 11:26a Rcvd | 904-239-6148 | Text Message | UNLMSG | 0.00 |
| 11:26a Rcvd | 904-239-6148 | Text Message | UNLMSG | 0.00 |
| 11:26a Rcvd | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 11:27a Rcvd | 904-239-6148 | Text Message | UNLMSG | 0.00 |
| 11:28a Rcvd | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 11:28a Rcvd | 904-885-0512 | Text Message | UNLMSG | 0.00 |
| 11:29a Rcvd | 904-239-6148 | Text Message | UNLMSG | 0.00 |
| 04:25p Sent | 678-427-7663 | Text Message | UNLMSG | 0.00 |
| 05:33p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:34p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:34p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:35p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:35p Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:36p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:36p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:38p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:41p Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |



KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

Visit us online at: **www.att.com**

## 904 885-1926
### KEVIN J. KLEMPF

**Data Detail - Continued**

| Time | | To/From | Type/Unit | Rate Code | |
|------|------|---------|-----------|-----------|------|
| Text Messages | | | | | |
| Wednesday, 07/19 | | | | | |
| 05:44p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:44p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:44p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:45p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:45p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:47p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:47p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:52p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:52p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:54p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:55p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:57p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:57p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:58p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:02p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:02p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:02p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:05p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:05p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:07p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 06:24p | Rcvd | 904-994-9294 | Text Message | UNLMSG | 0.00 |
| 06:24p | Sent | 904-994-9294 | Text Message | UNLMSG | 0.00 |
| 06:24p | Rcvd | 904-994-9294 | Text Message | UNLMSG | 0.00 |
| 06:41p | Sent | 904-994-9294 | Text Message | UNLMSG | 0.00 |
| Thursday, 07/20 | | | | | |
| 10:30a | Rcvd | 904-699-3733 | Text Message | UNLMSG | 0.00 |
| 10:32a | Sent | 904-699-3733 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| Friday, 07/21 | | | | | |
| 12:19a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 12:19a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 04:11a | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 08:26a | Sent | 650-359-4791 | Text Message | UNLMSG | 0.00 |
| 08:26a | Sent | 678-427-7663 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 08:26a | Rcvd | 678-427-7663 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 08:26a | Sent | 650-359-4791 | Text Message | UNLMSG | 0.00 |
| 08:26a | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 08:26a | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 02:17p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 02:21p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:40p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:40p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:45p | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 03:46p | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 03:51p | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 04:40p | Rcvd | 917-434-7581 | Text Message | UNLMSG | 0.00 |
| 04:40p | Sent | 917-434-7581 | Text Message | UNLMSG | 0.00 |
| 04:49p | Rcvd | 917-434-7581 | Text Message | UNLMSG | 0.00 |
| 04:49p | Rcvd | 917-434-7581 | Text Message | UNLMSG | 0.00 |

| Time | | To/From | Type/Unit | Rate Code | |
|------|------|---------|-----------|-----------|------|
| Text Messages | | | | | |
| Saturday, 07/22 | | | | | |
| 05:26p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:28p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:29p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:29p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:30p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:30p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:31p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 05:31p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 08:51p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| Tuesday, 07/25 | | | | | |
| 09:57a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 09:58a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 09:58a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 09:58a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 09:59a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 09:59a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 09:59a | Rcvd | rm8@urdoc.us | Text Message | UNLMSG | 0.00 |
| 09:59a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:00a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:00a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:01a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:06a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:09a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:10a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:10a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:10a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:10a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:10a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:14a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:17a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:18a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:18a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:18a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:18a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:21a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:21a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:22a | Rcvd | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| 10:23a | Sent | 904-233-3553 | Text Message | UNLMSG | 0.00 |
| Wednesday, 07/26 | | | | | |
| 09:29a | Sent | 904-334-0307 | Text Message | UNLMSG | 0.00 |
| 10:05a | Rcvd | 904-334-0307 | Text Message | UNLMSG | 0.00 |
| 11:49a | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 11:49a | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 11:49a | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 11:50a | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 11:52a | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 12:35p | Rcvd | 904-334-0307 | Text Message | UNLMSG | 0.00 |
| 12:39p | Sent | 904-334-0307 | Text Message | UNLMSG | 0.00 |
| 12:45p | Sent | 904-334-0307 | Text Message | UNLMSG | 0.00 |



KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

Visit us online at: **www.att.com**

## 904 885-1926
### KEVIN J. KLEMPF

**Data Detail** - Continued

| Time | | To/From | Type/Unit | Rate Code | |
|---|---|---|---|---|---|
| **Text Messages** | | | | | |
| **Wednesday, 07/26** | | | | | |
| 03:24p | Sent | 904-710-6394 | Text Message | UNLMSG | 0.00 |
| 03:29p | Rcvd | 904-710-6394 | Text Message | UNLMSG | 0.00 |
| 03:29p | Rcvd | 904-710-6394 | Text Message | UNLMSG | 0.00 |
| 03:30p | Sent | 904-710-6394 | Text Message | UNLMSG | 0.00 |
| 03:34p | Rcvd | 904-710-6394 | Text Message | UNLMSG | 0.00 |
| 03:41p | Sent | 904-710-6394 | Text Message | UNLMSG | 0.00 |
| **Thursday, 07/27** | | | | | |
| 05:08p | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 05:08p | Rcvd | 904-994-9100 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 05:09p | Sent | 904-994-9100 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 05:09p | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 05:09p | Sent | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 05:10p | Rcvd | 904-994-9100 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 05:23p | Rcvd | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 05:38p | Rcvd | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| **Monday, 07/31** | | | | | |
| 10:47a | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:34p | Rcvd | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| **Wednesday, 08/02** | | | | | |
| 08:32a | Rcvd | 904-613-3000 | Text Message | UNLMSG | 0.00 |
| **Thursday, 08/03** | | | | | |
| 08:10a | Sent | 904-953-2002 | Text Message | UNLMSG | 0.00 |
| 11:58a | Rcvd | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| 11:58a | Rcvd | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| 12:00p | Sent | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| 12:00p | Rcvd | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| 12:03p | Rcvd | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| 12:04p | Sent | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| 12:05p | Sent | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| 12:09p | Rcvd | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| 04:32p | Rcvd | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| 04:32p | Sent | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| 04:33p | Rcvd | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| **Friday, 08/04** | | | | | |
| 02:25p | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:28p | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:29p | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:29p | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:29p | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:29p | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:30p | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:31p | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:31p | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:31p | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| **Saturday, 08/05** | | | | | |
| 05:37p | Rcvd | 904-994-7801 | Text Message | UNLMSG | 0.00 |
| 05:38p | Rcvd | 904-994-7801 | Text Message | UNLMSG | 0.00 |
| 05:39p | Rcvd | 904-294-4145 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 05:42p | Sent | 904-294-4145 | MTM TEXT MESSAG | UNLMSG | 0.00 |

| Time | | To/From | Type/Unit | Rate Code | |
|---|---|---|---|---|---|
| **Text Messages** | | | | | |
| **Saturday, 08/05** | | | | | |
| 05:42p | Sent | 904-994-7801 | Text Message | UNLMSG | 0.00 |
| 06:03p | Rcvd | 904-994-7801 | Text Message | UNLMSG | 0.00 |
| **Monday, 08/07** | | | | | |
| 01:38p | Sent | 904-710-6394 | Text Message | UNLMSG | 0.00 |
| 01:39p | Rcvd | 904-710-6394 | Text Message | UNLMSG | 0.00 |
| 03:07p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:08p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:10p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:10p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:10p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:11p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:11p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:12p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:12p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:12p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:13p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:13p | Sent | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:14p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:14p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| 03:19p | Rcvd | 404-316-2076 | Text Message | UNLMSG | 0.00 |
| **Tuesday, 08/08** | | | | | |
| 05:47p | Sent | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 05:47p | Rcvd | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 06:24p | Rcvd | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 06:32p | Sent | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 06:37p | Sent | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 06:44p | Rcvd | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 06:45p | Sent | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 06:52p | Rcvd | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| **Wednesday, 08/09** | | | | | |
| 01:11p | Rcvd | 904-699-3733 | Text Message | UNLMSG | 0.00 |
| 01:11p | Rcvd | 904-699-3733 | Text Message | UNLMSG | 0.00 |
| 03:16p | Rcvd | rm8@urdoc.us | Text Message | UNLMSG | 0.00 |
| 03:56p | Rcvd | 54409 | Text Message | UNLMSG | 0.00 |
| 03:56p | Rcvd | 54409 | Text Message | UNLMSG | 0.00 |
| 04:06p | Sent | 54409 | Text Message | UNLMSG | 0.00 |
| **Thursday, 08/10** | | | | | |
| 12:29p | Sent | 904-699-3733 | Text Message | UNLMSG | 0.00 |
| 12:29p | Sent | 904-699-3733 | Text Message | UNLMSG | 0.00 |
| 12:30p | Rcvd | 904-699-3733 | Text Message | UNLMSG | 0.00 |
| 12:36p | Rcvd | 904-699-3733 | Text Message | UNLMSG | 0.00 |
| 12:42p | Rcvd | 54409 | Text Message | UNLMSG | 0.00 |
| 12:42p | Rcvd | 54409 | Text Message | UNLMSG | 0.00 |
| 12:49p | Sent | 54409 | Text Message | UNLMSG | 0.00 |
| 03:55p | Rcvd | 54409 | Text Message | UNLMSG | 0.00 |
| 03:58p | Sent | 54409 | Text Message | UNLMSG | 0.00 |
| 04:01p | Rcvd | 54409 | Text Message | UNLMSG | 0.00 |
| 04:37p | Rcvd | 904-514-5851 | Text Message | UNLMSG | 0.00 |
| 04:57p | Sent | 904-545-4153 | Text Message | UNLMSG | 0.00 |
| 04:57p | Sent | 904-524-7793 | Text Message | UNLMSG | 0.00 |
| 04:57p | Sent | 904-514-5851 | Text Message | UNLMSG | 0.00 |
| 04:57p | Sent | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 04:59p | Rcvd | 904-514-5851 | Text Message | UNLMSG | 0.00 |



KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

**Page:** A-8 of 10
**Bill Cycle Date:** 07/18/17 - 08/17/17
**Account:** 523011439264

Visit us online at: **www.att.com**

## 904 885-1926
### KEVIN J. KLEMPF

### Data Detail - Continued

| Time | | To/From | Type/Unit | Rate Code | |
|------|--|---------|-----------|-----------|--|
| **Text Messages** | | | | | |
| **Thursday, 08/10** | | | | | |
| 06:12p | Rcvd | 904-524-7793 | Text Message | UNLMSG | 0.00 |
| 06:15p | Rcvd | 904-545-4153 | Text Message | UNLMSG | 0.00 |
| 06:44p | Rcvd | 904-514-5851 | Text Message | UNLMSG | 0.00 |
| **Friday, 08/11** | | | | | |
| 10:39a | Sent | 904-294-4145 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 10:39a | Sent | 904-294-4145 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 01:26p | Rcvd | 229-315-0926 | Text Message | UNLMSG | 0.00 |
| **Saturday, 08/12** | | | | | |
| 08:51p | Sent | 904-655-4573 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| **Monday, 08/14** | | | | | |
| 11:29a | Sent | 904-885-0512 | Text Message | UNLMSG | 0.00 |
| **Tuesday, 08/15** | | | | | |
| 08:05p | Sent | 6338808 | Text Message | UNLMSG | 0.00 |
| 08:06p | Sent | 6338808 | Text Message | UNLMSG | 0.00 |
| **Wednesday, 08/16** | | | | | |
| 11:20a | Sent | 904-294-4145 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 01:37p | Rcvd | 904-994-9100 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 01:40p | Rcvd | 601-714-8768 | Text Message | UNLMSG | 0.00 |
| 01:53p | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:19p | Rcvd | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:37p | Rcvd | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:41p | Sent | 904-613-3000 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:43p | Sent | 904-613-3000 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:43p | Sent | bill8eathere. | Text Message | UNLMSG | 0.00 |
| 02:53p | Rcvd | 904-994-9100 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:54p | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:54p | Sent | 904-994-9100 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 02:54p | Sent | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 03:05p | Rcvd | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 03:08p | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 03:08p | Sent | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 03:08p | Sent | 904-994-9100 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 03:09p | Sent | 904-553-9778 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 03:09p | Sent | 904-994-9100 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 03:09p | Sent | 904-238-7001 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 03:58p | Sent | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 03:58p | Sent | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 04:19p | Sent | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 04:39p | Rcvd | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 04:39p | Rcvd | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 05:02p | Rcvd | 912-614-5384 | Text Message | UNLMSG | 0.00 |
| 08:28p | Sent | 904-994-9100 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 08:28p | Sent | aklempf@banja | Text Message | UNLMSG | 0.00 |
| 08:30p | Rcvd | 904-994-9100 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| 08:32p | Rcvd | 904-994-9100 | MTM TEXT MESSAG | UNLMSG | 0.00 |
| **Subtotal for Text Messages:  355** | | | | | 0.00 |

| Time | To/From | Type/Unit | Rate Code | |
|------|---------|-----------|-----------|--|
| **Data Plans** | | | | |
| **Monday, 07/17** | | | | |
| 09:01p | Data Transfer | 2,281KB | SDGN6 | 0.00 |
| **Tuesday, 07/18** | | | | |
| 02:01a | Data Transfer | 23,187KB | SDGN6 | 0.00 |
| 09:31a | Data Transfer | 23,714KB | SDGN6 | 0.00 |
| 10:48a | Data Transfer | 14,618KB | SDGN6 | 0.00 |
| 01:31p | Data Transfer | 20,214KB | SDGN6 | 0.00 |
| 02:28p | Data Transfer | 7,847KB | SDGN6 | 0.00 |
| **Wednesday, 07/19** | | | | |
| 02:08a | Data Transfer | 20,514KB | SDGN6 | 0.00 |
| 01:43p | Data Transfer | 17,385KB | SDGN6 | 0.00 |
| **Thursday, 07/20** | | | | |
| 02:47a | Data Transfer | 19,964KB | SDGN6 | 0.00 |
| 09:06a | Data Transfer | 55,163KB | SDGN6 | 0.00 |
| 07:34p | Data Transfer | 17,077KB | SDGN6 | 0.00 |
| **Friday, 07/21** | | | | |
| 02:34a | Data Transfer | 5,651KB | SDGN6 | 0.00 |
| 12:31p | Data Transfer | 504KB | SDGN6 | 0.00 |
| 12:37p | Data Transfer | 22,772KB | SDGN6 | 0.00 |
| 04:05p | Data Transfer | 15,555KB | SDGN6 | 0.00 |
| **Saturday, 07/22** | | | | |
| 02:21a | Data Transfer | 40,255KB | SDGN6 | 0.00 |
| 07:20a | Data Transfer | 19,539KB | SDGN6 | 0.00 |
| 07:20a | Data Transfer | 12,924KB | SDGN6 | 0.00 |
| 11:29a | Data Transfer | 25,992KB | SDGN6 | 0.00 |
| 03:38p | Data Transfer | 13,209KB | SDGN6 | 0.00 |
| **Sunday, 07/23** | | | | |
| 02:38a | Data Transfer | 19,551KB | SDGN6 | 0.00 |
| 10:54a | Data Transfer | 23,889KB | SDGN6 | 0.00 |
| 11:53a | Data Transfer | 25,751KB | SDGN6 | 0.00 |
| 01:53p | Data Transfer | 24,380KB | SDGN6 | 0.00 |
| 03:17p | Data Transfer | 39,049KB | SDGN6 | 0.00 |
| 03:21p | Data Transfer | 55,180KB | SDGN6 | 0.00 |
| 04:17p | Data Transfer | 19,553KB | SDGN6 | 0.00 |
| 04:38p | Data Transfer | 19,581KB | SDGN6 | 0.00 |
| 04:46p | Data Transfer | 20,593KB | SDGN6 | 0.00 |
| 06:16p | Data Transfer | 3,016KB | SDGN6 | 0.00 |
| **Monday, 07/24** | | | | |
| 02:58a | Data Transfer | 29,679KB | SDGN6 | 0.00 |
| 11:42a | Data Transfer | 19,827KB | SDGN6 | 0.00 |
| 01:07p | Data Transfer | 23,629KB | SDGN6 | 0.00 |
| 02:32p | Data Transfer | 24,976KB | SDGN6 | 0.00 |
| 03:07p | Data Transfer | 25,955KB | SDGN6 | 0.00 |
| 05:43p | Data Transfer | 7,294KB | SDGN6 | 0.00 |
| **Tuesday, 07/25** | | | | |
| 03:07a | Data Transfer | 19,661KB | SDGN6 | 0.00 |
| 11:32a | Data Transfer | 17,829KB | SDGN6 | 0.00 |
| **Wednesday, 07/26** | | | | |
| 03:42a | Data Transfer | 20,319KB | SDGN6 | 0.00 |
| 08:47a | Data Transfer | 8KB | SDGN6 | 0.00 |
| 08:52a | Data Transfer | 19,749KB | SDGN6 | 0.00 |
| 11:29a | Data Transfer | 38,909KB | SDGN6 | 0.00 |
| 12:30p | Data Transfer | 39,084KB | SDGN6 | 0.00 |



KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

Visit us online at: **www.att.com**

## 904 885-1926
KEVIN J. KLEMPF

**Data Detail** - Continued

| Time | To/From | Type/Unit | Rate Code | |
|------|---------|-----------|-----------|---|
| **Data Plans** | | | | |
| **Wednesday, 07/26** | | | | |
| 12:50p | Data Transfer | 39,122KB | SDGN6 | 0.00 |
| 12:56p | Data Transfer | 39,069KB | SDGN6 | 0.00 |
| 01:02p | Data Transfer | 19,546KB | SDGN6 | 0.00 |
| 01:26p | Data Transfer | 19,532KB | SDGN6 | 0.00 |
| 01:29p | Data Transfer | 39,068KB | SDGN6 | 0.00 |
| 01:38p | Data Transfer | 39,090KB | SDGN6 | 0.00 |
| 01:45p | Data Transfer | 20,126KB | SDGN6 | 0.00 |
| 03:29p | Data Transfer | 5,084KB | SDGN6 | 0.00 |
| **Thursday, 07/27** | | | | |
| 01:58a | Data Transfer | 29,131KB | SDGN6 | 0.00 |
| 03:17p | Data Transfer | 8,165KB | SDGN6 | 0.00 |
| **Friday, 07/28** | | | | |
| 02:39a | Data Transfer | 45KB | SDGN6 | 0.00 |
| 03:38a | Data Transfer | 15,741KB | SDGN6 | 0.00 |
| 08:15p | Data Transfer | 23,894KB | SDGN6 | 0.00 |
| 09:10p | Data Transfer | 1,244KB | SDGN6 | 0.00 |
| **Saturday, 07/29** | | | | |
| 02:22a | Data Transfer | 18,752KB | SDGN6 | 0.00 |
| **Sunday, 07/30** | | | | |
| 02:18a | Data Transfer | 21,108KB | SDGN6 | 0.00 |
| 09:03a | Data Transfer | 37,526KB | SDGN6 | 0.00 |
| 09:33a | Data Transfer | 19,664KB | SDGN6 | 0.00 |
| 10:47a | Data Transfer | 21,302KB | SDGN6 | 0.00 |
| 11:29a | Data Transfer | 8,450KB | SDGN6 | 0.00 |
| **Monday, 07/31** | | | | |
| 01:58a | Data Transfer | 19,943KB | SDGN6 | 0.00 |
| 11:16a | Data Transfer | 37,228KB | SDGN6 | 0.00 |
| 01:27p | Data Transfer | 33,035KB | SDGN6 | 0.00 |
| 04:39p | Data Transfer | 28,819KB | SDGN6 | 0.00 |
| 07:22p | Data Transfer | 24,172KB | SDGN6 | 0.00 |
| 09:00p | Data Transfer | 1,759KB | SDGN6 | 0.00 |
| **Tuesday, 08/01** | | | | |
| 02:00a | Data Transfer | 20,677KB | SDGN6 | 0.00 |
| 09:25a | Data Transfer | 31,265KB | SDGN6 | 0.00 |
| 10:48a | Data Transfer | 39,051KB | SDGN6 | 0.00 |
| 11:35a | Data Transfer | 25,567KB | SDGN6 | 0.00 |
| 01:26p | Data Transfer | 39,048KB | SDGN6 | 0.00 |
| 02:00p | Data Transfer | 25,860KB | SDGN6 | 0.00 |
| 03:44p | Data Transfer | 51,161KB | SDGN6 | 0.00 |
| 05:58p | Data Transfer | 4,344KB | SDGN6 | 0.00 |
| **Wednesday, 08/02** | | | | |
| 03:41a | Data Transfer | 20,010KB | SDGN6 | 0.00 |
| 12:23p | Data Transfer | 20,044KB | SDGN6 | 0.00 |
| 12:42p | Data Transfer | 21,758KB | SDGN6 | 0.00 |
| 04:05p | Data Transfer | 4,922KB | SDGN6 | 0.00 |
| **Thursday, 08/03** | | | | |
| 04:06a | Data Transfer | 27,814KB | SDGN6 | 0.00 |
| 09:57a | Data Transfer | 19,625KB | SDGN6 | 0.00 |
| 02:49p | Data Transfer | 20,681KB | SDGN6 | 0.00 |

| Time | To/From | Type/Unit | Rate Code | |
|------|---------|-----------|-----------|---|
| **Data Plans** | | | | |
| **Thursday, 08/03** | | | | |
| 04:41p | Data Transfer | 19,961KB | SDGN6 | 0.00 |
| 10:47p | Data Transfer | 1,481KB | SDGN6 | 0.00 |
| **Friday, 08/04** | | | | |
| 02:47a | Data Transfer | 6,408KB | SDGN6 | 0.00 |
| 08:11a | Data Transfer | 6,483KB | SDGN6 | 0.00 |
| 08:50a | Data Transfer | 20,492KB | SDGN6 | 0.00 |
| 12:31p | Data Transfer | 21,024KB | SDGN6 | 0.00 |
| 02:09p | Data Transfer | 5,238KB | SDGN6 | 0.00 |
| **Saturday, 08/05** | | | | |
| 03:02a | Data Transfer | 2,157KB | SDGN6 | 0.00 |
| 09:11a | Data Transfer | 34,879KB | SDGN6 | 0.00 |
| 02:25p | Data Transfer | 30,889KB | SDGN6 | 0.00 |
| 07:53p | Data Transfer | 3,398KB | SDGN6 | 0.00 |
| **Sunday, 08/06** | | | | |
| 04:25a | Data Transfer | 13,939KB | SDGN6 | 0.00 |
| **Monday, 08/07** | | | | |
| 02:08a | Data Transfer | 28,809KB | SDGN6 | 0.00 |
| 10:19a | Data Transfer | 20,816KB | SDGN6 | 0.00 |
| 10:56a | Data Transfer | 28,401KB | SDGN6 | 0.00 |
| 01:56p | Data Transfer | 20,480KB | SDGN6 | 0.00 |
| 03:47p | Data Transfer | 20,500KB | SDGN6 | 0.00 |
| 05:28p | Data Transfer | 13,577KB | SDGN6 | 0.00 |
| **Tuesday, 08/08** | | | | |
| 02:11a | Data Transfer | 5,562KB | SDGN6 | 0.00 |
| 07:58a | Data Transfer | 26,218KB | SDGN6 | 0.00 |
| 03:44p | Data Transfer | 4,001KB | SDGN6 | 0.00 |
| **Wednesday, 08/09** | | | | |
| 02:39a | Data Transfer | 37,516KB | SDGN6 | 0.00 |
| 11:54a | Data Transfer | 28,624KB | SDGN6 | 0.00 |
| 03:19p | Data Transfer | 19,703KB | SDGN6 | 0.00 |
| 09:12p | Data Transfer | 4,086KB | SDGN6 | 0.00 |
| **Thursday, 08/10** | | | | |
| 02:12a | Data Transfer | 23,602KB | SDGN6 | 0.00 |
| 12:43a | Data Transfer | 20,783KB | SDGN6 | 0.00 |
| 12:53p | Data Transfer | 19,544KB | SDGN6 | 0.00 |
| 01:53p | Data Transfer | 38,560KB | SDGN6 | 0.00 |
| 03:42p | Data Transfer | 39,076KB | SDGN6 | 0.00 |
| 03:53p | Data Transfer | 25,594KB | SDGN6 | 0.00 |
| 05:35p | Data Transfer | 20,543KB | SDGN6 | 0.00 |
| 06:52p | Data Transfer | 14,553KB | SDGN6 | 0.00 |
| **Friday, 08/11** | | | | |
| 02:29a | Data Transfer | 20,664KB | SDGN6 | 0.00 |
| 11:33a | Data Transfer | 19,949KB | SDGN6 | 0.00 |
| 03:24p | Data Transfer | 17,653KB | SDGN6 | 0.00 |
| **Saturday, 08/12** | | | | |
| 02:02a | Data Transfer | 28,521KB | SDGN6 | 0.00 |
| 05:02a | Data Transfer | 23,445KB | SDGN6 | 0.00 |
| 12:58p | Data Transfer | 19,834KB | SDGN6 | 0.00 |
| 07:22p | Data Transfer | 630KB | SDGN6 | 0.00 |
| 08:35p | Data Transfer | 1KB | SDGN6 | 0.00 |
| 08:50p | Data Transfer | 4,975KB | SDGN6 | 0.00 |
| **Sunday, 08/13** | | | | |
| 02:29a | Data Transfer | 9,386KB | SDGN6 | 0.00 |
| 11:53a | Data Transfer | 803KB | SDGN6 | 0.00 |



KEVIN J. KLEMPF
5139 EDGEWOOD CT
JACKSONVILLE, FL 32254-3601

Visit us online at: **www.att.com**

## 904 885-1926
KEVIN J. KLEMPF

### Data Detail - Continued

| Time | To/From | Type/Unit | Rate Code | |
|---|---|---|---|---|
| **Data Plans** | | | | |
| **Monday, 08/14** | | | | |
| 02:49a | Data Transfer | 15,383KB | SDGN6 | 0.00 |
| 07:10p | Data Transfer | 1KB | SDGN6 | 0.00 |
| 07:13p | Data Transfer | 211KB | SDGN6 | 0.00 |
| 07:43p | Data Transfer | 121KB | SDGN6 | 0.00 |
| 08:01p | Data Transfer | 4,408KB | SDGN6 | 0.00 |
| 08:10p | Data Transfer | 4,607KB | SDGN6 | 0.00 |
| **Tuesday, 08/15** | | | | |
| 02:12a | Data Transfer | 20,775KB | SDGN6 | 0.00 |
| 12:41p | Data Transfer | 20,738KB | SDGN6 | 0.00 |
| 04:01p | Data Transfer | 24,962KB | SDGN6 | 0.00 |
| 07:34p | Data Transfer | 7,928KB | SDGN6 | 0.00 |
| **Wednesday, 08/16** | | | | |
| 02:44a | Data Transfer | 22,229KB | SDGN6 | 0.00 |
| 09:58a | Data Transfer | 12,076KB | SDGN6 | 0.00 |
| 10:32a | Data Transfer | 4,986KB | SDGN6 | 0.00 |
| 11:03a | Data Transfer | 1KB | SDGN6 | 0.00 |
| 11:09a | Data Transfer | 14KB | SDGN6 | 0.00 |
| 11:12a | Data Transfer | 21,579KB | SDGN6 | 0.00 |
| 12:03p | Data Transfer | 4,588KB | SDGN6 | 0.00 |
| 12:18p | Data Transfer | 3,732KB | SDGN6 | 0.00 |
| 12:29p | Data Transfer | 58KB | SDGN6 | 0.00 |
| 01:13p | Data Transfer | 24,339KB | SDGN6 | 0.00 |
| 02:32p | Data Transfer | 9,268KB | SDGN6 | 0.00 |
| **Thursday, 08/17** | | | | |
| 02:26a | Data Transfer | 34,879KB | SDGN6 | 0.00 |
| 01:52p | Data Transfer | 19,588KB | SDGN6 | 0.00 |
| 01:58p | Data Transfer | 324,067KB | SDGN6 | 0.00 |
| 02:17p | Data Transfer | 66,767KB | SDGN6 | 0.00 |
| 02:22p | Data Transfer | 43KB | SDGN6 | 0.00 |
| 03:09p | Data Transfer | 19KB | SDGN6 | 0.00 |
| 03:13p | Data Transfer | 21,919KB | SDGN6 | 0.00 |
| 04:43p | Data Transfer | 14,687KB | SDGN6 | 0.00 |
| 07:10p | Data Transfer | 34,163KB | SDGN6 | 0.00 |
| 10:44p | Data Transfer | 343KB | SDGN6 | 0.00 |
| Subtotal for Data Plans: | | 3,349,506KB | | 0.00 |
| Subtotal for KB's: | | 3,349,506KB | | 0.00 |

| Time | To/From | Type/Unit | Rate Code | |
|---|---|---|---|---|
| **Picture/Video Messages** | | | | |
| **Tuesday, 07/18** | | | | |
| 02:07p Rcvd | 770-364-3312 | Pict Video MSG | UNLMSG | 0.00 |
| 02:34p Rcvd | 770-364-3312 | Pict Video MSG | UNLMSG | 0.00 |
| 07:56p Sent | 404-316-2076 | Pict Video MSG | UNLMSG | 0.00 |
| **Wednesday, 07/19** | | | | |
| 07:03a Sent | 904-239-6148 | Pict Video MSG | UNLMSG | 0.00 |
| 07:03a Sent | 904-885-0512 | Pict Video MSG | UNLMSG | 0.00 |
| 07:03a Sent | 904-238-7001 | Pict Video MSG | UNLMSG | 0.00 |
| 07:03a Sent | 904-699-3066 | Pict Video MSG | UNLMSG | 0.00 |

| Time | To/From | Type/Unit | Rate Code | |
|---|---|---|---|---|
| **Picture/Video Messages** | | | | |
| **Wednesday, 07/19** | | | | |
| 07:03a Sent | 570-878-3823 | Pict Video MSG | UNLMSG | 0.00 |
| **Friday, 07/21** | | | | |
| 01:44p Sent | 904-699-3066 | Pict Video MSG | UNLMSG | 0.00 |
| 01:44p Sent | 570-878-3823 | Pict Video MSG | UNLMSG | 0.00 |
| 01:44p Sent | 904-885-0512 | Pict Video MSG | UNLMSG | 0.00 |
| 01:44p Sent | 904-239-6148 | Pict Video MSG | UNLMSG | 0.00 |
| 01:44p Sent | 904-238-7001 | Pict Video MSG | UNLMSG | 0.00 |
| **Tuesday, 07/25** | | | | |
| 12:20p Sent | 904-233-3553 | Pict Video MSG | UNLMSG | 0.00 |
| **Wednesday, 07/26** | | | | |
| 03:05p Rcvd | 904-710-6394 | Pict Video MSG | UNLMSG | 0.00 |
| **Thursday, 07/27** | | | | |
| 05:07p Sent | 904-994-9100 | Pict Video MSG | UNLMSG | 0.00 |
| 05:07p Sent | 904-553-9778 | Pict Video MSG | UNLMSG | 0.00 |
| 05:07p Sent | 904-238-7001 | Pict Video MSG | UNLMSG | 0.00 |
| **Friday, 07/28** | | | | |
| 03:18p Sent | 904-238-8011 | Pict Video MSG | UNLMSG | 0.00 |
| 03:30p Sent | 904-238-8011 | Pict Video MSG | UNLMSG | 0.00 |
| **Saturday, 07/29** | | | | |
| 09:49a Sent | mmannick@fork | Pict Video MSG | UNLMSG | 0.00 |
| 09:49a Sent | 904-239-6148 | Pict Video MSG | UNLMSG | 0.00 |
| 09:49a Sent | 904-885-0512 | Pict Video MSG | UNLMSG | 0.00 |
| 07:47p Sent | 904-238-7001 | Pict Video MSG | UNLMSG | 0.00 |
| 07:57p Sent | 904-238-7001 | Pict Video MSG | UNLMSG | 0.00 |
| **Monday, 07/31** | | | | |
| 02:25p Rcvd | 904-553-9778 | Pict Video MSG | UNLMSG | 0.00 |
| **Friday, 08/04** | | | | |
| 02:26p Rcvd | 904-553-9778 | Pict Video MSG | UNLMSG | 0.00 |
| **Monday, 08/07** | | | | |
| 01:36p Rcvd | 904-710-6394 | Pict Video MSG | UNLMSG | 0.00 |
| **Wednesday, 08/09** | | | | |
| 02:53p Sent | 813-391-0830 | Pict Video MSG | UNLMSG | 0.00 |
| **Wednesday, 08/16** | | | | |
| 09:38a Sent | 904-238-6409 | Pict Video MSG | UNLMSG | 0.00 |
| 01:33p Sent | 904-553-9778 | Pict Video MSG | UNLMSG | 0.00 |
| 01:33p Sent | 904-994-9100 | Pict Video MSG | UNLMSG | 0.00 |
| 01:33p Sent | 904-238-7001 | Pict Video MSG | UNLMSG | 0.00 |
| 01:34p Sent | bill@eathere. | Pict Video MSG | UNLMSG | 0.00 |
| 01:34p Sent | 904-613-3000 | Pict Video MSG | UNLMSG | 0.00 |
| 02:10p Sent | 904-238-7001 | Pict Video MSG | UNLMSG | 0.00 |
| 02:10p Sent | 904-553-9778 | Pict Video MSG | UNLMSG | 0.00 |
| 02:10p Sent | 904-994-9100 | Pict Video MSG | UNLMSG | 0.00 |
| 06:08p Sent | 904-613-3000 | Pict Video MSG | UNLMSG | 0.00 |
| 06:08p Sent | bill@eathere. | Pict Video MSG | UNLMSG | 0.00 |
| Subtotal for Picture/Video Messages: | 40 | | | 0.00 |
| Total Data Detail: | | | | 0.00 |

Rate Code:
SDGN6 = Mobile Share Advantage 6GB
UNLMSG = Shared Messaging

**TAB 85**

**From:** James H. Post [mailto:jpost@smithhulsey.com]
**Sent:** Friday, January 11, 2019 5:23 PM
**To:** Grier Wells
**Subject:** Foodonics v. Klempf Trust - Meet and Confer

This message originated outside of GrayRobinson.

Grier,

As we discussed, Jacques Klempf's response to the Trust's Request for Production of Documents served on November 9, 2018, is deficient for the following reasons:

1.    Response to Request Nos. 1, 3 and 4

You responded to these requests by (i) producing only a receipt of purchase for Mr. Klempf's current cell phone and a July 2017 AT&T statement and (ii) a statement that "additional documents have been requested and will be provided if received."

Our request for these documents and ESI was made more than 60 days ago (11/9/2018). In addition, you represented to the Court on 11/13/2018 that Mr. Klempf would be providing this information prior to his deposition scheduled for November 29, 2018.

Please produce all of the remaining documents and ESI responsive to Requests 1, 3 and 4 by Friday, January 18, 2019.

2.    Response to Request No. 2

In response to Request No. 2:

> Documents or ESI sufficient to identify the location of any backups of data for each of Your mobile devices (iCloud, iTunes, VerizonCloud/ATT Locker, laptop or desktop computer backups, etc.) during the relevant time period.

you stated that:

> Documents or ESI responsive to this request have previously been provided.

This statement is false – we have not received any such information except an email from your office which only said that your firm recently located backups belonging to Jacques Klempf. An email from your firm does not constitute "Documents or ESI sufficient to identify the location [the] backups of data" for each of

Jacques Klempf's mobile devices. What are the Bates numbers of the documents or ESI you "previously produced" in response to this request?

Please produce all documents and ESI responsive to this request by Friday, January 18, 2019.

3.  Response to Request No. 5

In response to Request No. 5:

> The phone records or other documents or ESI sufficient to identify the dates and total number of all text messages exchanged between You and Dolph Baker on each of Your mobile devices during the relevant time period.

you stated that:

> Documents or ESI responsive to this request have previously been provided.

This statement is false – we have not received any such information except Jacques' July 2017 statement from AT&T. What are the Bates numbers of the documents or ESI you "previously produced" in response to this request?

Please produce all documents and ESI responsive to this request by Friday, January 18, 2019.

Conclusion

This letter constitutes another attempt to resolve your inadequate responses without Court involvement. Failure to produce the documents and ESI described above within the time requested will result in a motion to compel or sanctions, or both.

Jim

James H. Post

SMITH HULSEY & BUSEY

One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



YEARS
OF PRACTICE
EXCELLENCE

*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

**TAB 86**

**From:** Grier Wells [mailto:Grier.Wells@gray-robinson.com]
**Sent:** Thursday, January 17, 2019 4:50 PM
**To:** James H. Post <jpost@smithhulsey.com>
**Subject:** FW: Foodonics v. Klempf Trust - Meet and Confer

Jim:

With respect to your e-mail below, I note initially that we have not discussed the issues you raise. You left a voice message late last Friday which included a reference to your sending a follow up e-mail. Although I retrieved your voice message even later on Friday, I elected not to call you in light of your anticipated e-mail.

As to the substance of your e-mail, Mr. Klempf has made numerous and repeated requests of both AT&T and Apple for the requested records. He has been variously advised that the records would be provided or that he needed to contact another office of the vendor. His last effort was met with another representation that the records would be forthcoming but nothing has been provided to date. When any of the requested records are received, they will be forwarded to you.

As to No. 2, documents or ESI sufficient to identify the location of backups, technically there are no documents that we know of. However, we have produced text messages from Jacques' iCloud and we have produced text messages from his iTunes backups. He doesn't have ATT Locker. We initially produced data from the images of Jacques' Apple laptops and PC.

We also provided a Triage Report for the approximate 2400 iChats located on Jacques' device(s). Although Jacques advised that he did not use iChat for Foodonics, we nevertheless provided the Triage Report for the iChats but advised that we did not believe it contained anything responsive. We further advised that we would provide anything you requested from iChats if you determined something was responsive. I am not aware that anything has been requested by you or Chris. Nonetheless, of the approximate 2400, we have identified 43 iChats to a combination of Dick Still (5), John Reece (26), me (10), Terry Moore (1) and Dolph Baker (1). All are after the asset sale and the Baker one is December 2017. All of the 43, subject to attorney client privilege, will be provided.

**Grier Wells | Complex Commercial, Employment and Construction Litigation**
**The Florida Bar Board Certified in Civil Trial Law**
**G R A Y | R O B I N S O N**

50 North Laura Street, Suite 1100 | Jacksonville, Florida 32202
**T:** 904-598-9929 | **F:** 904-598-9109 | **D:** 904-632-8478
E-mail | Website | Bio | vCard

**Facebook | LinkedIn | Twitter**

**TAB 87**

```
 1            IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                    JACKSONVILLE DIVISION

 3                  CASE NO.:  3:17-cv-1054-J-32JRK

 4   FOODONICS INTERNATIONAL, INC.,
     a Florida corporation,
 5
             Plaintiff,
 6
         vs.
 7
     DINA KLEMPF SROCHI, as Trustee of the
 8   LAURA JEAN KLEMPF REVOCABLE TRUST, a
     Georgia trust,
 9
             Defendant.
10   _____

11   DINA KLEMPF SROCHI, as Trustee of the
     LAURA JEAN KLEMPF REVOCABLE TRUST, a
12   Florida trust, and DENNIS L. BLACKBURN,
     as Assistant Trustee of the JEAN KLEMPF
13   TRUST,

14           Counter Plaintiffs,

15       vs.

16   FOODONICS INTERNATIONAL, INC., a
     Florida corporation, and KEVIN
17   JACQUES KLEMPF,

18           Counterclaim Defendants.

19   _____

20        Video Deposition of DAVID HANCOCK, pursuant to

21   30(b)(6) notice, at 345 E. Forsyth Street, Jacksonville,

22   Florida, on January 24, 2019, at 9:30 a.m., before Terry

23   T. Hurley, Registered Professional Reporter, and Notary

24   Public in and for the State of Florida at Large.

25                          - - -
```

```
 1

 2                   A P P E A R A N C E S

 3

 4   S. GRIER WELLS, ESQUIRE
     Gray Robinson, P.A.
 5   50 N. Laura Street, Suite 1100
     Jacksonville, Florida  32202
 6
         Attorney for Plaintiff/Counter Defendant
 7

 8   JAMES H. POST, ESQUIRE
     R. CHRISTOPHER DIX, ESQUIRE
 9   Smith Hulsey & Busey
     One Independent Drive, Suite 3300
10   Jacksonville, Florida  32202

11       Attorneys for Defendant/Counterclaim Plaintiff

12

13   ALSO PRESENT:  Charlotte Main, Videographer

14                          - - -

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                     I N D E X

 2
     Witness:  DAVID HANCOCK
 3

 4                                          Page
 5
     DIRECT EXAMINATION
 6    By Mr. Dix--------------------005

 7
                   E X H I B I T S
 8
         No. 30------------------------06
 9       No. 31------------------------07
         No. 32------------------------07
10       No. 33------------------------11
         No. 34------------------------14
11       No. 35------------------------34
         No. 36------------------------36
12       No. 37------------------------45
         No. 38------------------------52
13       No. 39------------------------67
         No. 40------------------------69
14

15

16

17

18                          - - -

19

20

21

22

23

24

25
```

```
 1        THE VIDEOGRAPHER:  This is the video deposition

 2   of Steven Hancock, taken on behalf of the

 3   counterclaim plaintiff in the matter of Dina Klempf

 4   Srochi, et al, versus Foodonics International, Inc.,

 5   et al., Case Number 3:17-cv-1054-J32-JRK, being

 6   heard in the United States District, Middle District

 7   of Florida, Jacksonville Division.  The

 8   deposition is being held at Hedquist & Associates

 9   345 East Forsyth Street, Jacksonville, Florida

10   32202, on January 24, 2019, at 9:31a.m.  my name is

11   Charlotte Main with Advantage Video, the court

12   reporter is Terry Hurley with Hedquist & Associates.

13   Counsel, will you now please introduce yourselves,

14   and the witness will be sworn in.

15        MR. DIX:  Chris Dix and Jim Post from Smith

16   Hulsey & Busey.

17        MR. WELLS:  Grier Wells from Gray Robinson,

18   representing plaintiff Foodonics and

19   counter-defendants Foodonics and Jacque Klempf.

20        THE WITNESS:  I need to correct the record when

21   we start.  It's David Hancock, not Steven Hancock.

22                   DAVID HANCOCK,

23   having been produced and first duly sworn as a witness,

24   testified as follows:

25        MR. WELLS:  Mr. Post and Mr. Dix, on behalf of
```

1  both Mr. Klempf and Foodonics we would like to pose
2  an objection to the deposition proceeding as we
3  understand it may proceed.  This is a continuation
4  of the deposition of Foodonics pursuant to the
5  amended notice of continuation.  The items
6  referenced in the notice appear to relate more to
7  matters germane and related to Jacques Klempf
8  individually rather than to Foodonics, and so we
9  think that pursuant to the notice of deposition
10  is -- is not proper for a 30(b)(6) deposition of
11  Foodonics.
12       MR. DIX:  Thank you, Mr. Wells.  We addressed
13  the issues that you just raised in an e-mail to you
14  yesterday.
15       MR. WELLS:  6:24.  I saw it.
16       MR. DIX:  We stand by the response that we gave
17  at that time.  Let's proceed.
18                 DIRECT EXAMINATION
19  BY MR. DIX:
20       Q    Mr. Hancock, you were at the deposition on --
21  of Mr. Klempf on November 28th; is that right?
22       A    I was.
23       Q    And then you were deposed on November 29th; is
24  that right?
25       A    Correct.

1       Q    And that deposition on the 29th was continued
2  until today; is that correct?
3       A    Yes.
4       Q    And during the depositions of Mr. Klempf and
5  you there were a number of discovery items that were
6  addressed that had not yet been produced to the Trust;
7  is that right?
8       A    Yes.
9       Q    And also during the depositions there were a
10  number of items that were discussed that either
11  Mr. Klempf or you or Mr. Wells offered to produce
12  sometime after the depositions that took place; is that
13  right?
14       A    Yes.
15       Q    And the items that either hadn't been produced
16  or were offered to be produced were addressed in an
17  e-mail to Mr. Wells on November 30th.
18            Are you familiar with that e-mail?
19       A    I believe I've seen it.
20       MR. DIX:  Let's mark Exhibit 30.
21       (Exhibit No. 30 was marked for identification.)
22       Q    Mr. Hancock, the document we just marked as
23  Exhibit 30, you were copied on that e-mail; is that
24  right?
25       A    Yes.

1       Q    And do you recognize that e-mail?
2       A    Yes.
3       Q    And do you see the items listed under A, B, C,
4  D, E and F?
5       A    I do.
6       MR. DIX:  Let's mark another exhibit,
7  Exhibit 31.
8       (Exhibit No. 31 was marked for identification.)
9       Q    The document we just marked as Exhibit 31 is a
10  notice of continuation of Rule 30(b)(6) deposition that
11  was filed on November 30th.
12            Have you seen that document before?
13       A    I have.
14       Q    And attached to that notice was the
15  November 30th e-mail that we just marked as Exhibit 30.
16            Do you see that?
17       A    Yes, I do.
18       MR. DIX:  Mark one more exhibit.  This will be
19  32.
20       (Exhibit No. 32 was marked for identification.)
21       Q    The document we just marked as Exhibit 32 is an
22  amended notice of continuation of Rule 30(b)(6)
23  deposition that was filed on January 3rd.
24            Do you recognize that document?
25       A    Yes.

1       Q    The only difference between Exhibit 32 and
2  Exhibit 31, other than the name, was the date of the
3  deposition was changed to today; is that right?
4       A    If you say so.  I haven't compared them, but,
5  yeah, I would believe that to be true.
6       Q    Attached as Exhibit A to Exhibit 32 that we
7  just marked is another copy of the November 30th e-mail
8  from Mr. Wells to Mr. Post; is that right?
9       A    Yes.
10       Q    Mr. Hancock, I'm going to proceed to ask you
11  about the items that are referenced in Exhibit A that
12  was attached to the amended notice of continued
13  deposition, and I heard Mr. Wells say that he feels that
14  perhaps Mr. Klempf would be better to answer some of
15  these questions or topics.  So what I would like to do
16  today is I'm going to ask you about these topics, and if
17  there's something that you feel falls within the
18  category that Mr. Wells described where you don't have
19  knowledge of that topic and Mr. Klempf is the only
20  person, or there is some other person other than you
21  that is the sole bearer of knowledge of those topics, if
22  you would just simply point that out to me as we go
23  through.
24       A    Okay.
25       MR. WELLS:  For the record, that was not part

```
1    of my objection this morning.  Certainly it was part
2    of the conversation I had with Mr. Post yesterday,
3    but for purposes of today the objection was that
4    this is a continuation of the deposition of
5    Foodonics and that the items referenced in Exhibit A
6    to the amended notice are really more related to
7    Mr. Klempf.
8       Q    Mr. Hancock, during Mr. Klempf's deposition on
9    November 28th he confirmed to us what we had seen in
10   writing already, that you had been designated as
11   Mr. Klempf's E-discovery liaison.  Is that right?
12      A    One of them, yes.
13      Q    And the other one is Mr. Santana?
14      A    Correct.
15      Q    What are your responsibilities as the
16   E-discovery liaison in this case?
17      A    Well, I assist in the collection, production,
18   hosting production review of the documents.
19      Q    So if there --
20      A    ESI.
21      Q    If there was ESI that Mr. Klempf was going to
22   collect, review, process, produce, any one of those
23   things, you would have been involved in that; isn't that
24   right?
25      A    Sometimes.  There are some areas that he
```

```
1    pursued on his own as the administrator or the owner of
2    an account or a device, so on those I wouldn't have
3    personal knowledge of the steps that were taken.
4       Q    Can you tell me which of the items or steps
5    that you're referring to where you weren't involved, but
6    Mr. Klempf was?
7            MR. WELLS:  Object to the form.
8       A    For example, the AT&T call records.  I was not
9    involved with that.  The request from Apple for his
10   Apple data, I was not involved in that.  Those are the
11   ones that come to mind.
12      Q    Mr. Hancock, when we talked back in November
13   both with you and Mr. Klempf you mentioned he had
14   provided the Apple data to you.
15      A    Uh-huh.
16      Q    Are you now saying that you weren't involved in
17   the process?
18      A    I wasn't involved in requesting it.  I did
19   review it.
20      Q    Okay.  I'm going to come back to that Apple
21   request and data later.
22      A    Okay.
23      Q    Let's start with the first category in Exhibit
24   A to the amended notice, and the first category A starts
25   off and says:  The documents and ESI described in the
```

```
1    Trust request for production served on you on
2    November 9, 2018.
3            Are you familiar with that request for
4    production that was served on November 9th?
5       A    I could use a refresher, if you've got it.
6            MR. DIX:  Let's mark Exhibit 33.  33, request
7    for production.
8            (Exhibit No. 33 was marked for identification.)
9       Q    Mr. Hancock, would you look at the document we
10   just marked as Exhibit 33 and tell me if you're familiar
11   with that document.
12      A    (Witness complied.)
13           MR. WELLS:  For the record, this is the request
14   for production directed to Mr. Klempf.
15           MR. DIX:  That's right.
16      A    I've seen it, and it seems -- Exhibit A to the
17   amended notice seems to track it, at least in part.
18      Q    Okay.  If you will refer back to Exhibit A to
19   the amended notice, Paragraph A(1).
20           Paragraph A(1) refers to documents or ESI
21   sufficient to identify the make, model, and carrier of
22   each of your mobile devices, and the condition and
23   location of each such device during the relevant time
24   period.
25           What documents or ESI, if any, were produced on
```

```
1    or after November 30, 2018, related to this request?
2       A    I don't recall exactly when it was produced,
3    but my understanding is the only document that exists
4    that would satisfy this category would be the receipt
5    that Mr. Klempf received in January of '18, I guess,
6    when he purchased his iPhone X at the Apple store in
7    Jacksonville.
8       Q    So is your testimony here today that there are
9    no other documents or ESI that refer to the make, model,
10   and carrier of each of Mr. Klempf's mobile devices that
11   he had during the relevant time period?
12      A    That's my understanding.  He doesn't have any
13   documents relating to his prior phones.  He certainly
14   testified about his prior phones, but I don't believe
15   documents exist.
16      Q    Or ESI?
17      A    Correct.
18      Q    So is it your testimony that Mr. Klempf and
19   Foodonics have produced all of the available documents
20   responsive to Paragraph A(1)?
21      A    Everything that I'm aware of, yes.
22      Q    What efforts were undertaken in order to reach
23   the determination that you just told me?
24      A    Communications with the client.  He's got the
25   one phone.  He submitted the receipt for the one phone.
```

```
1    He didn't have any documents pertaining -- or ESI
2    pertaining to his prior devices.
3         Q    Don't each of his AT&T bills refer to the type
4    of phone that he has, and the model and the make and the
5    carrier?
6         A    I guess it could.
7         Q    Have you seen any of the AT&T statements for
8    Mr. Klempf?
9         A    I know we produced one.  I don't know if it has
10   that information on it.
11        Q    Other than talking with Mr. Klempf, what other
12   steps were undertaken to respond or produce documents or
13   ESI related to Paragraph A(1)?
14        A    None by me.
15        Q    Were there any steps taken by anybody else
16   other than you or Mr. Klempf?
17        A    I don't know.  I'm here on behalf of Foodonics.
18   I don't know what Mr. Klempf personally did.
19        Q    Isn't Mr. Klempf the owner of Foodonics?
20        A    Yeah, I believe so.
21        Q    And isn't he the primary custodian of
22   Foodonics' data?
23        A    Yes.
24             MR. DIX:  Let's mark another document.  This
25        will be 34.
```

```
1             (Exhibit No. 34 was marked for identification.)
2         Q    The document we just marked as Exhibit 34 is a
3    response to counterclaim plaintiff's request for
4    production to counterclaim defendant Kevin Jacques
5    Klempf.
6             Are you familiar with this document?
7         A    Yes.
8         Q    What role, if any, did you have in the
9    preparation of this document?
10        A    Well, I didn't prepare it, but I certainly was
11   involved in providing the -- I guess the attachments and
12   communications with counsel on the verbiage.
13        Q    Other than you, who else was involved in
14   preparing the response?
15        A    I can't say.  I don't know.
16        Q    Was Mr. Santana involved in preparing this
17   response?
18        A    Again I can't say.  I don't know.
19        Q    As Mr. Klempf's ESI liaison you don't know who
20   was involved other than yourself in preparing a response
21   to a discovery request related to ESI; is that right?
22        A    That is what I testified to.
23        Q    If you will turn to Page 2 of the document
24   we've marked as Exhibit 34, the response to the request
25   for production, there is a response to Inquiry Number 1,
```

```
1    and it refers to the receipt that you mentioned earlier,
2    as well as a July 2017 monthly statement.
3             Are those the only two documents that you're
4    aware of that are responsive to this request?
5             MR. WELLS:  Object to the form.
6         A    I think those are the only ones that are
7    currently in our possession.  I believe other documents
8    have been requested, but not yet received.
9         Q    Would you turn, please, to the receipt from the
10   Apple store that was produced along with the response.
11        A    Okay.
12        Q    If you could, walk me through and explain, what
13   does this receipt show?
14             MR. WELLS:  Object to the form.
15        A    It appears to show the purchase of an iPhone X,
16   space gray, 256 gigabytes of storage space, from the
17   Apple St. Johns location in Jacksonville.
18        Q    When was the phone purchased?
19        A    It looks like January 2, 2018.
20        Q    Right next to the information about the phone
21   there is a return date, January 16, 2018.
22             Do you know what that means?
23        A    I do not.
24        Q    Is it possible that this phone was actually
25   returned to the Apple store on January 16, 2018?
```

```
1             MR. WELLS:  Object to the form.
2         A    Again I don't know what that means.  I mean,
3    the receipt is dated January 2, so I don't know what
4    that return date refers to.
5         Q    How much storage did the iPhone X have on it?
6         A    It looks like 256 gigabytes of available space.
7         Q    How much storage did Jacques Klempf's iPhone 7
8    have on it?
9         A    I could not tell you that.
10        Q    Do you have any documents or ESI available to
11   you that could allow you to answer that question?
12        A    Not that I'm aware of.  If I was aware of any
13   we would have produced it.
14        Q    Didn't Mr. Klempf testify that he gave his
15   iPhone 7 to a professional golfer?
16        A    He testified that when it broke he brought it
17   in, had it repaired, had it wiped, and then -- or
18   actually copied all the data onto this, or had the Apple
19   folks do it, confirmed it was all there, and then wiped
20   that device, and then he eventually did give it to an
21   aspiring golfer, yeah.
22        Q    Mr. Klempf still knows that person; right?
23        A    I believe so.
24        Q    So Mr. Klempf could have contacted him to find
25   out how much storage was on that phone; isn't that
```

```
 1   right?
 2            MR. WELLS:  Object to the form.
 3        A    I mean, he could have, but again you're asking
 4   me all these questions of what Mr. Klempf could have
 5   done, what he did, what he should have done, could have
 6   done, might have done.  I don't know the answers.  I
 7   mean, those questions are better asked of him, I
 8   believe.
 9        Q    Mr. Klempf testified that he transferred the
10   data from his iPhone 7 to the iPhone X; isn't that
11   right?
12        A    He had the Apple people do that, yes.
13        Q    And his testimony was that all of the data was
14   transferred; isn't that right?
15        A    Correct.
16        Q    How much data was stored on Jacques Klempf's
17   iPhone 7 before he replaced it?
18        A    I don't know that, and I don't believe he knows
19   that.
20            MR. WELLS:  For the record, I would note that
21       the current line of questioning is beyond -- it's
22       something that could have been asked at the earlier
23       deposition of Mr. Klempf, was not asked, and is
24       beyond the scope of this deposition.
25            MR. DIX:  For the record, we didn't have the
```

```
 1       information that we have been looking at talking
 2       about the replacement of the --
 3            MR. WELLS:  You had the information as to what
 4       happened to the 17.
 5        Q    How much data was transferred from the iPhone 7
 6   to the iPhone X?
 7            MR. WELLS:  Object to form.
 8        A    You just asked me that.  I don't know that.
 9        Q    Was all of the data that Mr. Klempf transferred
10   from the iPhone 7 to the iPhone X also saved in the
11   iCloud?
12            MR. WELLS:  Object to the form.
13        A    Again I don't know the answer to that.  It had
14   to do with his settings on his device, and he's the best
15   one to testify about what those settings were as far as
16   what was being copied up to the Cloud.
17        Q    Does KLDiscovery know how much information was
18   stored in Mr. Klempf's Cloud?
19        A    At what time?
20        Q    At the time that they collected data from his
21   phone?
22        A    Yeah, they know how much they collected from
23   the Cloud, certainly.
24        Q    And was the data that they collected from the
25   Cloud the same amount of data that was stored on
```

```
 1   Mr. Klempf's phone at the time that the collection was
 2   made?
 3            MR. WELLS:  Object to the form.
 4        A    I would have no way of knowing that.
 5        Q    Would KLDiscovery know that?
 6        A    No.
 7        Q    Why wouldn't KLDiscovery know how much
 8   information was stored on Mr. Klempf's phone when they
 9   collected data from it?
10        A    They would know what was in the Cloud.
11        Q    But they never examined, inspected, or
12   collected any data directly from his phone; is that
13   right?
14        A    From his iPhone 7, no.  It was destroyed.
15        Q    From his iPhone X.
16        A    No, they collected from the Cloud.  So that's
17   how they would know what was in the Cloud.
18        Q    But they wouldn't know, and neither do you, how
19   much data was stored on his actual phone at the time of
20   the collection; right?
21        A    Correct.
22        Q    Between the time that Mr. Klempf replaced his
23   phone and the time that KLDiscovery collected
24   information from the iCloud, Mr. Klempf could have
25   deleted text messages or other data from his iPhone X;
```

```
 1   isn't that right?
 2            MR. WELLS:  Object to the form.  Beyond the
 3       scope.  Argumentative.
 4        A    And that's a hypothetical.  I suppose anything
 5   is possible.
 6        Q    When KLDiscovery collects data from the iCloud
 7   it doesn't include deleted text messages or other
 8   deleted data; isn't that right?
 9            MR. WELLS:  Same objection.
10        A    Yeah.  I believe they just collect the data
11   that's in the Cloud.  They don't -- they don't collect
12   -- it's not a forensically -- it's not a forensic
13   analysis of the data or the device.
14        Q    The iCloud backup that KLDiscovery collected
15   wasn't a complete copy of everything on Mr. Klempf's
16   phone; right?
17            MR. WELLS:  Same objection.
18        A    It was a complete copy of everything in the
19   iCloud.
20        Q    Let's take a look at the AT&T statement that
21   was produced along with the response to the request for
22   production.
23            The date of this invoice or statement is July
24   18, 2017 through August 17, 2017.
25            How did Mr. Klempf come into possession of this
```

```
1   particular statement?
2       A    I'm not certain.
3       Q    Why is this statement the only one that's been
4   produced?
5       A    Because I think that that's the only one that
6   he got access to when he initially went looking for
7   them, but again that's a question better -- better posed
8   to him.
9       Q    Were you or anyone else from Gray Robinson or
10  KLDiscovery involved in Mr. Klempf's process of trying
11  to get statements or other information from AT&T?
12      A    No.
13      Q    The AT&T statement refers to an iPad 4G LTE.
14  Do you see that?  Page 2 of 3, towards the top there's
15  monthly charges.
16      A    Oh, I see that, yes.
17      Q    Access for iPad 4G LTE?
18      A    I see that.
19      Q    Mr. Klempf was paying $10, at least during this
20  period of time, for access -- internet access to his
21  iPad; isn't that right?
22      A    That's what it appears to be, yes.
23      Q    That iPad that's referenced on this statement,
24  that was not one of the devices that KLDiscovery
25  collected data from; is that right?
```

```
1       A    I don't know that.  Let me think about it.
2            Yes.  I mean -- I'm sorry.  That's correct.  It
3   is not one of the devices that was collected.
4       Q    Do you have any information about what data was
5   stored on the iPad that's referenced in this statement?
6       A    I don't have personal knowledge, but I believe
7   Mr. Klempf said that this was something that was given
8   to one of his children.
9       Q    What documents or ESI have been produced which
10  refers to Mr. Klempf's iPhone 7 that has been replaced?
11      A    I don't believe there is any.
12      Q    Let's take a look at the second category,
13  Category A(2) in Exhibit A of the amended notice.  I'm
14  going to read it:  Documents or ESI sufficient to
15  identify the location of any backups of data for each of
16  your mobile devices, iCloud, iTunes, Verizon Cloud, AT&T
17  Locker, laptop/desktop computer backups, et cetera,
18  during the relevant time period.
19           What documents or ESI if any were produced in
20  response to this request?
21      A    There were text messages produced from his
22  iCloud.  There were text messages produced from his
23  iTunes backups.  There -- he doesn't have or know
24  anything about AT&T Locker.  His two laptops and his
25  desktop devices were imaged.
```

```
1            So also from one of his laptops -- I'm not sure
2   which -- there was an iChats account that he told me he
3   never used for Foodonics Egg business, so we put that
4   aside and didn't do anything with it.
5            After my deposition, out of an abundance of
6   caution, we decided to provide the triage report for
7   those iChats to you, and we subsequently produced, I
8   think, five items that might be responsive.  We don't
9   believe they are, but we produced them.
10      Q    You produced those items yesterday?
11      A    Yes.
12      Q    All right.  I'm going to come back to that in a
13  little while.  I heard you describe to me the different
14  locations of different information that was then
15  searched and produced to the Trust.  What I haven't
16  heard you describe to me is what documents or ESI
17  identify the information that you're testifying about.
18           Aren't there documents and ESI that support the
19  testimony that you're giving today, or are you just
20  basing that on oral communication from Mr. Klempf or
21  someone else?
22           MR. WELLS:  Object to form.
23      A    So you're asking --
24           MR. WELLS:  Same objection as previously noted.
25      A    So you're asking if a document exists that
```

```
1   identifies that an iTunes backup was recovered from the
2   imaging?
3       Q    I'm referring to all of the information that
4   you just described.
5            Aren't there documents or ESI that describe the
6   backups, where they were, and what was in them during
7   the relevant time?
8            MR. WELLS:  Same objection.
9       A    I guess I'm a little stuck on "documents that
10  describe it".  I mean, we got the iCloud backup, we got
11  the iTunes backups, and we reviewed them for relevant
12  documents, and produced the ones that were responsive.
13           I don't know what it is that you're seeking
14  when you say ESI to identify the location of it.
15      Q    Aren't there documents from KLDiscovery or
16  other people which describe and list the backups and the
17  locations from which they were collected?
18      A    So are you referring to something akin to a
19  collections report, or something, from KLDiscovery?
20      Q    No.  I'm asking for information.  Possibly that
21  could be one of the examples of the documents.
22      A    I can't think of another one, and I suppose
23  that's in existence.  I guess I didn't ask for it
24  because I don't know what that tells you, but, I mean, I
25  certainly can go ask them for their collection reports
```

1  where they imaged these machines to see, you know, if it
2  lists these items, and what information it lists about
3  them. I just don't see how it's instructive at all.
4      Q    It's -- if there are documents or ESI that
5  describe the locations of the backups of the mobile
6  devices and other information they're referring to it
7  will confirm to us the completeness of the efforts that
8  were undertaken to this point.
9          At this point all we have is testimony from
10  either you or Mr. Klempf, and we're trying to verify
11  that with documents that establish the testimony that
12  you're giving to us.
13         Are there any documents or ESI that identify the
14  location of the backups that you've testified about?
15         MR. WELLS:  Object to the form. Same objection
16      as previous, in addition to I believe he's testified
17      that the only documents he's aware of that could be
18      responsive he's provided his answer to that.
19      A    So I suppose in the bowels, somewhere in the
20  notes, in the inner workings of KLDiscovery and their
21  folks that actually do the groundwork of the actual
22  collections there may be some notes or reports that I
23  can request. I haven't done so to date because I
24  thought you were more interested in the documents, not
25  -- I mean, you know that we got the iCloud chats from

1  the iCloud, you know that we produced the iTunes chats
2  from the iTunes backups, you know that they were imaged
3  from his two laptops and his PC. So again I guess I can
4  ask if KLDiscovery has any collection documents or
5  documentation that would even touch on this.
6      Q    Would you please take a look at the response
7  that Mr. Klempf filed to Request Number 2.
8      A    Is that 34?
9      Q    Exhibit 34. That's right. It's on Page 2.
10  The response states:  Documents or ESI responsive to
11  this request have previously been provided.
12         What documents or ESI responsive to the request
13  were previously provided?
14      A    The documents themselves from the backups.
15      Q    The documents themselves?
16      A    The text messages from both the iCloud and the
17  iChats -- or, I'm sorry -- the iTunes backups.
18      Q    Do those documents or ESI identify the location
19  from which they came?
20      A    No.
21      Q    So if they don't identify the location, how are
22  they responsive to Request 2?
23      A    Honestly, if I'm being candid, I just thought
24  that this was poorly worded, and I thought what you were
25  looking for, the actual documents from the backups. I

1  mean, that's what we're talking about here; right, the
2  actual communications that you're interested in, not the
3  process by which they were collected, or how many
4  gigabytes or megabytes they were?
5          I mean, I -- I didn't think that you -- I gave
6  you the actual text messages. I didn't give you
7  information about the collection of them. And,
8  moreover, if -- if I'm able to find documents or get
9  documents from KLDiscovery that talks about the
10  collection of them it won't speak to -- it's not -- you
11  had said you wanted the documents to verify the
12  completeness. Well, it will just say that this was
13  collected. It won't say what wasn't collected.
14         So I don't know what use it will be to you, but
15  I'm happy to ask them if those documents exist.
16      Q    So is the response that was provided to Request
17  Number 2, is that accurate? Have any documents or ESI
18  responsive to the request previously been provided?
19         MR. WELLS:  Object to the form. I believe it's
20      been asked and answered and he's given his response
21      as he understood the request.
22      A    I believe the chat -- the text messages have
23  been produced, and that came from the iCloud and the
24  iTunes backups. That's how we understood what you were
25  asking for.

1      Q    Now, understanding that what we were looking
2  for is information describing the location of those
3  backups, do you still --
4      A    You mean the location where they are now, or
5  the location where they were? Again this is poorly
6  worded. I don't know what you're asking for.
7      Q    The location of the backups data for each of
8  your mobile devices during the relevant time period.
9          So now understanding what we're looking for, do
10  you have any additional response to Request Number 2?
11      A    Nothing more than what I've already said.
12      Q    Okay. Let's talk about the third category in
13  Exhibit A to the amended notice, Category A(3). The
14  category is: All documents or items of ESI including
15  receipts, invoices, messages or bills relating or
16  referring to any iPhone or other mobile device owned by
17  you which was damaged, lost, replaced, or otherwise
18  disposed during the relevant time period.
19         Do you see that request?
20      A    I do.
21      Q    What documents or ESI were produced, if any, in
22  response to this request?
23      A    The invoice to Mr. Klempf's iPhone X.
24      Q    Are there any other documents other than the
25  invoice that are responsive to this request?

1    A    To the extent that the phone bill identifies
2  what the device was, then I suppose that could be
3  responsive as well.
4    Q    Aren't there communications with Mr. Klempf or
5  others describing Mr. Klempf's delivery of the iPhone 7
6  to the professional golfer that we referred to earlier?
7    A    I'm not aware of any.
8    Q    What steps did you undertake to look for
9  documents or ESI responsive to category A(3)?
10   A    Again, custodian interviews, communications
11 with the client, and communications with -- well, just
12 communications with the client.
13   Q    Did any of those communications take place
14 after November 30, 2018?
15   A    I think just confirming that what we eventually
16 produced. I don't know when it was produced, if it was
17 produced before the 30th or after the 30th, but those
18 two items that we discussed just confirming that that's
19 it, that's all that there is currently.
20        He has, it's my understanding, requested more
21 call records, but has not yet received them.
22   Q    Let's talk about Category A(4), because I think
23 that relates to what you just mentioned.
24   A    Right.
25   Q    Category A(4) is the phone records or other

1  documents or ESI sufficient to identify the dates and
2  total number of all phone calls exchanged between you
3  and Dolph Baker on each of your mobile devices during
4  the relevant time period.
5        What documents or ESI have been produced in
6  response to this request?
7    A    So that one phone invoice, phone bill from, I
8  think it was July through August of '17. Is that right?
9  I'm guessing on the dates. And then again he has
10 requested from AT&T on multiple times in multiple ways
11 additional call records.
12   Q    When and how did Mr. Klempf request the records
13 from AT&T?
14   A    Mr. Klempf would be the best one to answer
15 that.
16   Q    You just told me that he's requested multiple
17 times in multiple ways.
18   A    Right.
19   Q    Do you know any detail other than what you just
20 said?
21   A    You're asking for my personal knowledge?
22   Q    Yes.
23   A    Since I didn't make the request I don't have
24 personal knowledge of that.
25   Q    Does Foodonics have any knowledge of those

1  requests?
2    A    Only what was related to me by counsel and by
3  the client that he requested online, he requested on the
4  phone, he was told to go to an AT&T store in person, and
5  it's my understanding that he's been given conflicting
6  information from different people.
7        He's made the request for these phone records,
8  and he has yet to receive them. That's the totality of
9  my understanding.
10   Q    How do you know that Mr. Klempf made those
11 requests?
12   A    Because he said he did.
13   Q    Other than him telling you that, do you have
14 any other knowledge?
15   A    I was not with him.
16   Q    You haven't been involved in any of the
17 requests that were made to AT&T?
18   A    I was not with him or on the phone when he made
19 those requests.
20   Q    When did AT&T tell Mr. Klempf that they would
21 produce those records?
22   A    Again, he's been given conflicting responses,
23 so I think one time he was told, you know, ten days to
24 two weeks, another time he was told not available,
25 another time he was told that we will get them to you

1  when we can. I think it's all over the -- all over the
2  map.
3    Q    As of today what is the expectation regarding
4  AT&T's production of the phone records that Mr. Klempf
5  requested?
6        MR. WELLS: Let me interpose the same
7  objection. These are questions related to
8  Mr. Klempf personally and not appropriate for a
9  30(b)(6) deposition of Foodonics.
10   Q    When will the AT&T records be produced?
11   A    At AT&T's discretion apparently. He's hopeful
12 every day that he will receive them, but it's my
13 understanding that he hasn't to date.
14   Q    Let's talk about Category A(5) on Exhibit A to
15 the continued -- the amended notice.
16        A(5) states: The records and other documents
17 or ESI sufficient to identify the dates and total number
18 of all text messages exchanged between you and Dolph
19 Baker on each of your mobile devices during the relevant
20 time period.
21        What documents or ESI have been produced in
22 response to this request?
23   A    We produced responsive text messages from the
24 iCloud and also from the iTunes backups, and on the
25 iTunes backups we produced not only chats between

1    Mr. Klempf and Dolph Baker, but also Mr. Klempf and
2    anyone from Cal-Maine.
3        Q    Other than the iCloud messages and the iTunes
4    messages that we just referred to, are there any other
5    documents or ESI responsive to Category A(5)?
6        A    I guess the iChats could be considered a text
7    message, and we produced five from there that were
8    somewhat arguably responsive.
9        Q    I'm going to come back to that in a minute.
10            MR. WELLS:  Chris.
11            MR. DIX:  Yes.
12            MR. WELLS:  Let's go off the record just a
13   moment.
14            THE VIDEOGRAPHER:  We are off the record.  The
15   time is 10:16 a.m.
16            (Discussion off the record.)
17            THE VIDEOGRAPHER:  We're back on the record.
18   The time is 10:17 a.m.
19            MR. DIX:  Mr. Wells, you want to clarify
20   something?
21            MR. WELLS:  Yes.  The AT&T receipt that was
22   produced in response to Mr. Wells's response to
23   request for production does show text messages
24   during the July/August 2017 timeframe to a large
25   number of phone calls, some of those we believe are

Hedquist & Associates Reporters, Inc.

1    to individuals at Cal-Maine.  So there are a
2    reflection of text messages perhaps to Mr. Baker or
3    others at Cal-Maine.
4        Q    Mr. Hancock, if Mr. Klempf was able to obtain
5    the AT&T records for months other than the one month
6    that's already been produced, wouldn't those records
7    also show the existence of communications between
8    Mr. Klempf and Mr. Baker if they occurred?
9        A    Yeah.  Will show calls and text messages.  It
10   won't show content, but yes, it will show if they
11   occurred.
12       Q    Category B of Exhibit A, the amended notice,
13   refers to:  Invoices, billing records, and statements
14   describing any services rendered by KLDiscovery to the
15   Gray Robinson firm or its clients in the referenced
16   case.
17            What documents or ESI have been produced in
18   response to this request?
19       A    The KLDiscovery invoices.
20            (Exhibit No. 35 was marked for identification.)
21       Q    The document we just marked as Exhibit 35 is an
22   e-mail from Mr. Wells to Mr. Post and me, copying you,
23   and it says:  Please see the KLDiscovery invoices
24   reflected above.
25            Then attached to this e-mail were the invoices

Hedquist & Associates Reporters, Inc.

1    from KLDiscovery; is that right?
2        A    Some of them.
3        Q    Would you turn to the first invoice on the
4    second page of this exhibit.  It's an invoice dated
5    April 30, 2018.  The second item described in this
6    invoice is a web mail and iCloud collection performed by
7    KLDiscovery.
8            Can you describe for me what that web mail and
9    iCloud collection was?
10       A    It's a web mail and iCloud collection.
11       Q    What data did KLDiscovery collect pursuant to
12   that web mail and iCloud collection?
13       A    They collected the iCloud contents, and they
14   collected -- I believe Mr. Klempf has a third-party
15   e-mail address, an AOL address, and they collected his
16   e-mail from there.
17       Q    Turn to the next page.  There's some detailed
18   time entries from KLDiscovery.
19       A    Okay.
20       Q    Time entries show that the first time
21   KLDiscovery did work in this case was April 9, 2018.
22            Is that right?
23       A    I think it's the first time they billed.  I
24   don't know if it's the first time they did any work.
25       Q    If -- did KLDiscovery do work prior to April of

Hedquist & Associates Reporters, Inc.

1    2018 for which they didn't bill?
2        A    I don't know that to be a fact, but I know it's
3    customary for us to have initial calls about pending new
4    matters that are not billable.  It's just to talk about
5    maybe what's expected, what's going to happen, what's
6    going to be needed, to talk about, you know, best ways
7    to approach it, and such, and those initial
8    consultations are typically not billed.
9        Q    The first time that KLDiscovery performed work
10   for which they were paid was in April of 2018; isn't
11   that right?
12       A    It looks that way, yes.
13       Q    And there are no invoices from KLDiscovery
14   prior to April 2018; isn't that right?
15       A    I believe that's correct.
16            MR. DIX:  Let's mark another.  Exhibit 36.
17            (Exhibit No. 36 was marked for identification.)
18       Q    The document we just marked as Exhibit 36 is an
19   e-mail from Mr. Wells to Mr. Post yesterday; is that
20   right?
21       A    Yes.
22       Q    Did you see a copy of this e-mail?
23       A    Yes.
24       Q    Were you involved in preparation of the
25   documents that were attached to this e-mail?

Hedquist & Associates Reporters, Inc.

```
 1      A    Yes.
 2      Q    How were you involved?
 3      A    I was the one that gathered the invoices from
 4   KLDiscovery, and I was the one that reviewed the iChats
 5   for responsiveness and provided the responsive ones.
 6      Q    When did you request the additional invoices
 7   from KLDiscovery?
 8      A    I haven't.
 9      Q    When did you collect them to be produced?
10      A    Yesterday or the day before.
11      Q    Why did you produce them yesterday?
12      A    Why not?
13      Q    Because you had them already.
14      A    I have lots of things.
15      Q    What are the date ranges of the KLDiscovery
16   invoices that were produced yesterday?
17      A    Looks like April through December of '18.
18      Q    Would you turn to the December invoice.  It's
19   the second page.  It has the detail about the work
20   performed.  The second line item is for December 7,
21   2018.
22           Do you see that?
23      A    I do.
24      Q    It says review Cellebrite reporting for four
25   iTunes backups and iChats.
```

```
 1           What is a Cellebrite reporting?
 2      A    I believe that's the reporting that is gathered
 3   from the -- from the iTunes backups that were acquired
 4   when they imaged Mr. Klempf's machines.
 5      Q    Wouldn't the Cellebrite reporting be responsive
 6   to the request that we referred to earlier in this
 7   deposition?
 8           MR. WELLS:  Objection to form.
 9      A    The Cellebrite reporting was the triage report
10   that we did send to you.
11      Q    The triage report that you sent to us relates
12   to the iTunes backups?
13      A    It relates to iChats.
14      Q    Is there any Cellebrite reporting related to
15   the iTunes backups?
16      A    You know, I don't -- I don't know if it was
17   Cellebrite reporting that I received or just the raw
18   data from the backups, but they may have put it into a
19   format of reporting, and that's what I reviewed for the
20   iTunes backups.
21           So I reviewed those for responsive documents,
22   and the responsive chats or text messages were produced.
23      Q    Would you produce the Cellebrite reporting for
24   the four iTunes backups to us?
25      A    It's not all responsive.
```

```
 1      Q    How do you know it's not responsive?
 2      A    I reviewed them.
 3      Q    You've reviewed the Cellebrite reporting
 4   related to the four iTunes backups?
 5      A    I've reviewed the data relating to the three
 6   iTunes backups.  It says four because one was
 7   discounted.  It was Mr. Klempf's stepdaughter's account.
 8      Q    So there's a document produced by Cellebrite
 9   and held by KLDiscovery that refers to the iTunes
10   backups that Mr. Klempf had on his computer; isn't that
11   right?
12      A    It's reporting of the data in those backups.
13      Q    Prior to December 2018 had you or anyone at
14   KLDiscovery searched for iTunes backups and the
15   information that was collected from Mr. Klempf?
16      A    It was collected, and, I mean, I'll be candid,
17   I didn't know that an iTunes backup was an option for a
18   data source.  So it was after my first deposition on
19   this that we went back and asked specifically for iTunes
20   backups.
21      Q    When you went back and looked for them you
22   found iTunes backups; is that right?
23      A    There were five.
24      Q    In the iTunes backups there were text messages
25   within the relevant time period; isn't that right?
```

```
 1      A    There were some, yes.
 2      Q    Would you turn to the November KLDiscovery
 3   invoice.  It's right after the December one.  I think
 4   they're in reverse chronological order.
 5           If you turn to the second page where there is a
 6   detailed description of the time there's an entry, fifth
 7   one down.  The last sentence says:  Bulk tag dots as
 8   priv deleted so client could reconcile.
 9           What does that time entry refer to?
10      A    That was an error that was made by the special
11   counsel, the company that we hired to review documents.
12   One of their reviewers somehow wiped out the deleted tag
13   -- or I'm sorry -- the privileged tag some way.  So that
14   was an effort to reverse that process.
15      Q    So when they bulk tag documents as priv
16   deleted, what did that mean?
17      A    I think they were trying to recover the
18   documents that had previously been tagged as privileged,
19   but for some reason the tag had been wiped out, so they
20   were trying to correct the error that had been made by
21   one of the reviewers at special counsel.
22      Q    Which documents were being reviewed by special
23   counsel that were involved in this issue?
24      A    The documents that were part of -- or part of
25   the documents were the Gray Robinson second production.
```

1    There were approximately 20,000 documents.
2        Q    So two rows down from the entry we just looked
3    at it says "reconcile priv deleted items".  What does
4    that mean?
5        A    I think that's just a QC to go back and see if
6    they caught them all.
7        Q    So was involved in correcting the error that
8    special counsel made?
9        A    KLDiscovery.
10       Q    Were you or anyone at Gray Robinson involved in
11   that process?
12       A    No.
13       Q    Did you or anyone from Gray Robinson verify the
14   work that KLDiscovery did to correct the special counsel
15   problem?
16       A    No.
17       Q    Were any documents produced subsequent to the
18   resolution of the error that we have been talking about?
19       A    Yes.
20       Q    Which documents were those?
21       A    Gray Robinson's second production, which was
22   approximately -- it's over 7000 documents.
23       Q    That production included the documents that had
24   been erroneously tagged, as well as other documents;
25   isn't that right?

1        A    Well, it wouldn't have included the ones that
2    were tagged privileged.
3        Q    After the error was corrected; right?
4        A    Well, right.
5        Q    When did you learn that there was an error in
6    the work that special counsel did?
7        A    Probably the same day it happened.  I happened
8    to be out of town on vacation with my family.  That's
9    when it always happens, right?  Yeah, I learned that
10   there had been a snafu and that it was being rectified.
11       Q    Was that on November 19th?
12       A    Yeah.  I was gone the week of Thanksgiving, so
13   it might have been -- I'm not really sure about their
14   dates on their billing, but I was out of town the week
15   of Thanksgiving.
16       Q    Let's talk about Category C in Exhibit A to the
17   amended notice.  It's on the next page at the top.
18       A    Okay.
19       Q    Category C says:  The results of the search and
20   examination by KLDiscovery forensic examiner, or other
21   qualified expert, of the forensic images of Jacques
22   Klempf's desktop computer and two laptop computers
23   created by KLDiscovery in April and May 2018 to
24   determine whether any backups of Mr. Klempf's phone data
25   were created or stored by iTunes.

1            Let me start with asking:  Did anyone -- did
2    you or anyone from Gray Robinson ask anyone from
3    KLDiscovery to perform the work addressed in Paragraph
4    C?
5        A    Well, they certainly imaged his -- his
6    machines, so his two laptops and his desktop, those were
7    imaged, you know, going from memory, I think it was in
8    April or May.  So -- so a forensic image was done of
9    those devices.  So they -- whatever was there existed
10   on -- with KLDiscovery.
11           This is going to fall again into the same
12   category as we discussed earlier.  I thought you were
13   more interested in the actual text messages as opposed
14   to the process by which they were collected or the
15   collection report, or whatever.
16           Again I'm happy to ask KLDiscovery if such
17   documents exist.  I have not asked to this date for a
18   collection report relating to the iTunes backups.
19       Q    So after the depositions on November 28 and 29
20   did you have any discussions with KLDiscovery regarding
21   a search for iTunes backups or the data that they
22   collected?
23       A    Yes, I asked if there were any iTunes backups
24   that were part of the imaging.
25       Q    When did you do that?

1        A    I don't recall.  Shortly after.  Maybe the same
2    day.  Could have been the next day.
3        Q    Who did you ask?
4        A    Donna Mesina, I believe, at KLDiscovery.
5        Q    And did Donna perform the work that you
6    requested?
7        A    I don't know if she personally did, but she
8    said we'll take a look and let you know.
9        Q    And did KLDiscovery perform the work requested?
10       A    Did they look and see if there were iTunes --
11   iTundes backups?  Yes.
12       Q    And what did they find?
13       A    They found five iTunes backups.
14       Q    How do you know that they found five iTunes
15   backups?
16       A    Because they told me.
17       Q    Did they tell you in an e-mail?
18       A    They might have.  I know a lot of our
19   communications were verbal, but they might have.
20       Q    How did KLDiscovery determine that there were
21   five iTunes backups?
22       A    They looked at the image of what was collected
23   from the devices.
24       Q    So KLDiscovery reviewed either documents or ESI
25   to make that determination; isn't that right?

1     A    Yes.
2          MR. DIX:  Let's mark an exhibit this is 37.
3          (Exhibit No. 37 was marked for identification.)
4     Q    The document we've just marked as Exhibit 37 is
5  an e-mail from Grier Wells to me and Mr. Post copying
6  you and Mr. Nolan.
7          Do you see that?
8     A    I do.
9     Q    Do you recall that e-mail?
10    A    I've seen it.
11    Q    Were you involved in the preparation of the
12 information described in Mr. Wells' e-mail?
13    A    Yes.
14    Q    So in Paragraph 2 of Mr. Wells' response do you
15 see that down at the bottom it says:  We have identified
16 five iTunes backups?
17    A    Yes.
18    Q    And then it describes the dates which range
19 from 2017 back to 2015; is that right?
20    A    Yes.
21    Q    All those dates are within the date range
22 that's relevant to this litigation; isn't that right?
23         MR. WELLS:  Object to the form.
24    A    That's a loaded question.  I don't believe it's
25 relevant, the date range, but, yes, the stated date

1  range, yes, it falls within that.
2     Q    And the e-mail, Paragraph 2 there says:  I have
3  requested reporting from those backups.
4          Is the I you in that case?
5     A    Yes.
6     Q    Not Mr. Wells requesting backups?
7     A    Right.
8     Q    And did you obtain reporting regarding those
9  backups?
10    A    I received the data for the four that weren't
11 corrupt.
12    Q    Did you get any reporting relating --
13    A    Again I don't recall if it was in a reporting
14 format or if it was just raw data.  I think it was in a
15 reporting format because I seem to recall tabs of
16 different kinds of information.
17    Q    And has that information been produced to us?
18    A    The relevant responsive text messages from
19 those iTunes backups have been produced.
20    Q    The reporting with the tabs that you referred
21 to earlier, you haven't given that to us, have you?
22    A    I have not.  The reporting includes a lot of
23 things that are not responsive or relevant.
24    Q    So there's five iTunes backups that were
25 identified?

1     A    Correct.
2     Q    And one of them relates to one of Mr. Klempf's
3  family members?
4     A    Yeah.  I believe her name is Eden.  It's his
5  step daughter.
6     Q    Which of the five backups referenced here
7  relates to that family member?
8     A    Off the -- I don't know off the top of my head.
9  I'm sorry.
10    Q    How would you determine which of those backups
11 relates to that family member?
12    A    I have to go back and look at it.  I can
13 provide that information.
14    Q    What information would you look at to make that
15 determination?
16    A    I would look at that -- if it's a report I
17 would look at that report for that backup identified as
18 hers, and I can tell you the date and time of that one.
19    Q    So will you produce that information to us?
20    A    I can provide that information.
21    Q    And when can you provide that to us?
22    A    Tomorrow.
23    Q    I believe subsequent to the e-mail on
24 December 7th either you or Mr. Wells informed us that
25 one of the backups was corrupted.

1     A    Correct.
2     Q    Can you explain to me what that means?
3     A    Not able to be accessed.
4     Q    And how do you know that it's not able to be
5  accessed?
6     A    That's what KLDiscovery reported to me.
7     Q    And which of the five backups here that are
8  referred to are not able to be accessed?
9     A    Again I'd have to -- that one I'd actually have
10 to ask them for that, because obviously it wasn't sent
11 to me since it was corrupt, but I can provide that
12 information as well tomorrow.
13    Q    Okay.  Please do.
14         Paragraph 4 of the e-mail that we're looking at
15 here it says:  Jacques has requested phone records and
16 was advised that they can be available from 2010 in
17 approximately 30 days.
18         That was in December, December 7, 2018.
19    A    Yeah.  I think that's the information he was
20 given at that time, and then when he pursued it he was
21 given different information.  When he pursued it again
22 and went to the actual AT&T store he was given different
23 information.  Again he's been given conflicting
24 information.
25    Q    And to date no additional phone records that

1  Jacques has requested have been produced; is that right?
2      A    Not that I'm aware of.
3      Q    If you'll turn to the next page, Paragraph D,
4  referring to information about DixieEgg.com e-mail
5  accounts the statement says:  We don't know if this is
6  available, but are inquiring of Microsoft.
7           What does that mean?
8      A    Well, I'm not really sure what the request was,
9  so I need to see that.
10     Q    If you turn to the next page, Paragraph E says:
11 Documents or ESI from Microsoft which reflect the dates
12 on which the DixieEgg.com e-mail accounts, including the
13 e-mail account of Richard Still were terminated, and if
14 different, the dates on which each the data breach of
15 those accounts was deleted or could no longer be
16 retrieved.
17          The response was you were inquiring of
18 Microsoft.
19          What did that entail?
20     A    I believe since Jacques was the owner and the
21 administrator of whatever exists of that account he
22 communicated with Microsoft, and it's my understanding
23 he was told that that information was not available.
24     Q    Did Mr. Klempf communicate with Microsoft by
25 e-mail?

1      A    Both by phone and by e-mail, I believe.
2      Q    And did Mr. Klempf receive responses from
3  Microsoft by e-mail?
4      A    Sometimes yes.  I don't know on this particular
5  subject or not, because he had asked them a lot of
6  questions about this account.
7      Q    Have any of communications between Mr. Klempf
8  and Microsoft been produced to the Trust?
9      A    I don't think so, because that falls outside of
10 the relevant date range.
11     Q    Is the date range the issue that the
12 communications with Microsoft have not been produced?
13     A    I mean, I don't know.  I mean, it falls outside
14 the relevant date range.  The date range ends on 1/18 --
15 no, 1/19/18.
16     Q    Let me go back to the depositions back in
17 November.  We talked with Mr. Klempf and you about
18 information related to the DixieEgg.com e-mail accounts.
19     A    Okay.
20     Q    And we were told at that time that information
21 would be produced to us about the account, and verifying
22 what we were told that Mr. Still and other accounts had
23 been deleted.
24          We asked for information about when certain
25 accounts were deleted or no longer available.  We were

1  told that if that information existed that Mr. Klempf
2  had access to it.
3           To this date none of that information has been
4  produced to us.  Isn't that right?
5           MR. WELLS:  Object to the form.  I think you're
6  asking this witness to recall specific testimony
7  from two months ago.  If you have a copy of the
8  transcript from that deposition, those depositions,
9  we will be glad to compare it.
10          The salient fact is Mr. Klempf has gone to
11 Microsoft any number of times and has not received
12 anything from them that would be responsive to that
13 request.
14     Q    Other than information that's confirming that
15 those accounts of Mr. Still are not available; right?
16          Hasn't Microsoft -- Mr. Hancock, hasn't
17 Microsoft confirmed to Mr. Klempf that Dick Still's
18 e-mail account is no longer available?
19     A    That's my understanding, yes, but I don't know
20 if they did that verbally or via e-mail.
21     Q    Isn't it possible to determine that through
22 Mr. Klempf's access to his admin features on the Outlook
23 e-mail account?
24     A    I think it's possible to determine if you ask
25 Mr. Klempf.

1           MR. DIX:  Mark another Document.  38.
2           (Exhibit No. 38 was marked for identification.)
3      Q    The document we just marked as Exhibit 38 is an
4  e-mail from Mr. Wells to me and Mr. Post copying you and
5  Mr. Nolan on December 6th; is that right?
6      A    Yes.
7      Q    Do you recall this e-mail?
8      A    Yes.
9      Q    Attached to this e-mail is a triage report; is
10 that right?
11     A    Yes.
12     Q    And the triage report is the series of pages
13 that comes after the e-mail in this exhibit; is that
14 right?
15     A    Yes.
16     Q    What is this triage report?
17     A    I believe it's a -- it's reporting as it
18 relates to a number of iChats that were imaged when
19 those machines -- when Mr. Klempf's machines were
20 imaged.
21     Q    In an e-mail from Mr. Wells the third sentence
22 says:  In addition to finding several iTunes backups, as
23 delineated in a different e-mail, we were reminded that
24 that there are approximately 2300 iChat files.
25          What reminded you about the iChat files?

1     A    When I inquired about the iTunes it was

2  mentioned to me by KLDiscovery.

3     Q    So you knew about the iChat files before the

4  depositions in November; is that right?

5     A    I did.

6     Q    And until December of 2018 no one looked at the

7  iChat files; is that right?

8     A    That's correct, because I had been advised by

9  Mr. Klempf that he did not use iChat for any Foodonics

10  Egg business.

11     Q    What did Mr. Klempf use iChat for?

12     A    The vast majority of them are communications

13  with friends and family, and then he has other ventures,

14  restaurants and such.

15     Q    Some of the iChat files are communications with

16  Dick Still, Mr. Reece, Mr. Monsky, and Dolph Baker; is

17  that right?

18     A    There are some, yes.

19     Q    And are any of those communications related to

20  the litigation?

21     A    I reviewed them all.  I didn't find any that

22  were related to the litigation, but I found a few that I

23  suppose stretching the definition of responsive, so we

24  produced those.

25     Q    Did you review and produce any of the iChat

1  communications with Mr. Klempf's family members?

2     A    I reviewed all of the 2300-whatever iChat.

3     Q    Okay.

4     A    Well I -- let me rephrase that.  I reviewed the

5  triage report, and then based on that ferreted out ones

6  that could arguably be considered responsive.

7     Q    How did you ferret out the potentially

8  responsive ones?

9     A    The parties to whom -- that were involved, and

10  then I looked at the content.

11     Q    How did you look at the content?

12     A    I believe once I identified for the vendor the

13  ones that we were interested in they had to ingest all

14  of the -- a process, if you will, all of the iChats, and

15  then they -- they had to ingest it, and then they

16  processed the ones I said I wanted to look at.

17     Q    How did you identify the ones you wanted to

18  look at?

19     A    As I testified, based on who the parties were.

20     Q    Did you identify any e-mail, or any chats with

21  any of Mr. Klempf's family members as ones that you

22  wanted to look at?

23     A    No.

24     Q    Why not?

25     A    Because they're family members.  Because

1  they're -- the ones that I did see related to his --

2  were purely personal or related to his restaurants.

3     Q    How do you know what the messages related to?

4     A    There were times that there were indications

5  of such, and besides that, if -- you know, at one time or

6  another most of his family members, or some of his

7  family members, were clients, so this would be -- we

8  would -- if it were responsive, which I highly doubt

9  that it is, it would have been withheld for privilege.

10     Q    So sitting here today neither you nor anyone

11  else has looked at the iChat messages between Mr. Klempf

12  and his family members; isn't that right?

13     MR. WELLS:  Object to form.

14     A    I believe I looked at some of them.  If there

15  was an indication there that it could have been

16  something business related I asked for it to be

17  processed, and then I reviewed them.

18     Q    I thought you told me earlier that you didn't

19  look at any of the messages with any of Mr. Klempf --

20     A    There could have been some.  There's not --

21  there's not many, if there -- if there were any.  I

22  think that there were a few that indicated they could

23  have been business related, so I asked KLDiscovery to

24  process those, and then I would look at those, which

25  included the content.

1     Q    What's an example of something that might have

2  made you want to take a closer look at communications

3  with Mr. Klempf's family members?

4     A    Yeah, I don't know.  I would have to look

5  through this entire triage report to find an example for

6  you, but -- yeah, I -- you know, I don't -- I don't see

7  any that come to mind, but, I mean, this is a long

8  report.

9     Q    So if you look at the triage report there's a

10  column labeled File Name.  Do you see that?

11     A    Okay.

12     Q    And the file name has some information about

13  the chat; isn't that right?

14     A    Yes.

15     Q    But the actual contents of the chat

16  communication is not included anywhere in the triage

17  report; isn't that right?

18     A    The content is not.  Correct.

19     Q    In order to see the communication itself you

20  would have to ask KLDiscovery to put those into your

21  review tool so that you could review them; isn't that

22  right?

23     A    Correct, to look at the content.

24     Q    There's another column on this triage report

25  labeled Responsive, and for each one of these documents

1  the column says true; isn't that right?

2     A    Okay.

3     Q    So why didn't all of the messages get produced

4  or at least reviewed by you?

5     A    That column has nothing to do whatsoever with

6  this litigation. That's the way the reporting is

7  issued. It could be responsive to -- their query might

8  have been return all iChats, and because it is an iChat

9  it is responsive to that query. Has nothing

10  whatsoever -- that's not a notation that I made, nor is

11  it anything that is related to any litigation.

12     Q    So a determination regarding responsiveness was

13  made by you after selectively putting some messages into

14  a review tool?

15     A    Correct.

16     Q    How many of these iChat messages did you ask

17  KLDiscovery to put into the review tool?

18     A    I don't recall. I think we wound up

19  producing -- I don't know. Maybe you would be better to

20  say how many we produced. I think we produced something

21  like 44 of them, or something. I don't remember.

22  Certainly they processed into the review tool more than

23  we produced, because I was able to determine that most

24  of them were not responsive.

25     By the way, an example of a communication with

Hedquist & Associates Reporters, Inc.

1  a family member that I thought would be worth taking a

2  look at is when it refers to the family member and then

3  says et al, meaning there's other folks involved. So

4  sometimes I would -- you know, I would look for those

5  and say, well, let me take a look at those.

6     Q    Were there any communications that were

7  withheld from production due to it being privileged?

8     A    There were some, yes, and we're going to be

9  preparing a separate privilege log for those.

10     Q    And by -- being privileged, does that mean

11  they're relevant to the litigation, but communications

12  that have a confidential or privileged nature to them?

13     A    I think they are about the litigation and they

14  are privileged communications.

15     Q    And you're going to be producing a separate

16  privilege log?

17     A    Privilege log. It won't be voluminous.

18     But those communications, the privileged

19  communications, are on this triage report; isn't that

20  right?

21     A    Yes.

22     Q    What is an iChat file?

23     A    You got me. I don't know. It was news to me

24  when it was identified. I believe it's a separate way

25  of chatting through Apple. I think it's an Apple app.

Hedquist & Associates Reporters, Inc.

1     It could be something tantamount to an instant

2  messaging kind of application, but I'm not sure. I

3  don't use it, I've never used it, and I've never seen it

4  in any one of my other case.

5     Q    What is an iChat file?

6     A    What do you mean?

7     Q    The e-mail from Mr. Wells refers to

8  approximately 2300 iChat files, which are described in

9  some way on this triage report.

10     A    Right.

11     Q    Is it -- are there 2300 individual separate

12  files?

13     A    That's my understanding, yeah.

14     Q    How do those files interact or work with the

15  iChat messaging tool?

16     A    I don't understand your question. It's a

17  listing of iChats here, and I think each iChat is a

18  separate communication.

19     Q    What is the file extension for each one of

20  these iChat files?

21     A    They're text files. Dot txt.

22     Q    Is that the format that those files were stored

23  in on Mr. Klempf's computer?

24     A    I assume so. I mean, it -- if that's the

25  native format it's not going to convert them, yes.

Hedquist & Associates Reporters, Inc.

1  These were not converted, I guess is what I'm saying.

2     Q    So the text extension for each file is its

3  native format?

4     A    That's my understanding.

5     Q    On what device or computer did Mr. Klempf use

6  iChat?

7     A    First of all, he didn't think that he had, so I

8  think a lot of these were -- there's a question about

9  one of his devices, whether it was always his, or it was

10  -- it was one of his children and then he took, he took

11  over ownership of it, or whatever. That's why he told

12  me that he didn't use this, but I guess he was refreshed

13  that he did in some ways use this.

14     So clearly it was not on his -- well, it wasn't

15  on his PC. It was on one of his Apple devices. So it

16  would have been one of his Apple laptops that was

17  imaged.

18     Q    Do you know which of the Apple laptops

19  Mr. Klempf had the iChat software on?

20     A    I do not.

21     Q    Was it possible that he had iChat on more than

22  one device?

23     A    It's possible, but I would have been told about

24  that if there were two separate instances of this.

25     Q    Have you ever asked KLDiscovery to provide you

Hedquist & Associates Reporters, Inc.

1 with all of the iChat files for all of the data that was
2 collected from Mr. Klempf?
3     A    Yes.  This is it.
4     Q    Who collected the iChat files?
5     A    The person that imaged the machines.  They
6 didn't collect anything, you know, piecemeal.  They --
7 they imaged the entire machines.
8     Q    After the machines were imaged did KLDiscovery
9 produce any report that described these iChat files?
10     A    No.
11     Q    When was the first time that you became aware
12 of the iChat files?
13     A    I mean, several months ago, but when it was
14 brought -- when I asked Mr. Klempf about the iChat he
15 didn't -- he didn't know anything about what that was.
16 When we told him generally what it was he said, I don't
17 -- I don't use that, I don't remember using that, and if
18 I did I didn't use it for Foodonics Egg business.
19     Q    Who does Mr. Klempf speak with on iChat?
20     A    Again the vast majority of these communications
21 are with friends and family.
22     Q    Some of them are people that used to work for
23 Foodonics; isn't that right?
24     A    Right.  Who are now friends.
25     Q    What are the date ranges of the iChat

1 communications?
2     A    I think it goes back to, I believe, May of '17,
3 and it goes through maybe May of '18, maybe April of
4 '18.
5     Q    Is it possible that there are additional iChat
6 files that predate May of 2017?
7     A    If they existed on those devices they were
8 imaged and collected.  So nothing -- there's nothing
9 more than what was imaged.
10     Q    Are iChat files backed up to Mr. Klempf's
11 iCloud?
12     A    I would assume not, because we would have seen
13 them there.  Or maybe that is where they saw them.  I
14 can't be sure where they located these.  I know that
15 they imaged the two laptops and the desktop, and as part
16 of that imaging they found these iChats.
17     MR. DIX:  So what was my question again?
18     (Question read back.)
19     Q    Let me ask that again.
20     Do you know whether Mr. Klempf's iChat files
21 are backed up anywhere on his iCloud?
22     A    I don't know that.  I know that we collected
23 everything from his iCloud.
24     Q    When you say you collected everything from his
25 iCloud, was an entire collection of everything in his

1 iCloud collected, or was an iCloud backup from
2 Mr. Klempf's iCloud retrieved?
3     MR. WELLS:  Object to form.
4     A    KLDiscovery did an iCloud backup.  I don't know
5 how that's different from what you're trying to say,
6 but --
7     Q    Didn't Mr. Klempf do an iCloud -- a backup of
8 his phone to the iCloud?
9     A    Yes.
10     Q    And didn't KLDiscovery retrieve that iCloud
11 backup in order to search for information in this case?
12     A    Yes.
13     Q    Did KLDiscovery search for any other files in
14 Mr. Klempf's iCloud other than the particular iCloud
15 backup that Mr. Klempf created?
16     A    It's my understanding they collected everything
17 that was in his iCloud account.
18     Q    How do you know that?
19     A    That's my understanding of what was done.
20     Q    Do you have a report or any document that shows
21 that Mr. Klempf's entire iCloud was collected by
22 KLDiscovery?
23     A    Again, not feeling that that's in any way
24 germane to this I don't know that I asked for that.
25 Again, I can ask for that.

1     Q    Isn't it possible that KLDiscovery collected
2 Mr. Klempf's iCloud backup, but that there was other
3 data in his Cloud that KLDiscovery didn't collect?
4     MR. WELLS:  Object to form.
5     A    I mean, anything is possible.  That's a
6 hypothetical.  But when I ask them to do a collection I
7 want them to be complete, and they tell me that they are
8 being complete.  Like, I don't say, please do a half-ass
9 job.  I say, please collect everything that's there.
10     So it's my understanding that they collected
11 everything.  I can get a collection report from the
12 iCloud collection, if one exists.  But I -- I'm -- I'll
13 ask KLD for that.
14     Q    What I would like for you to confirm is that
15 KLDiscovery collected and searched Mr. Klempf's entire
16 iCloud, and not just a backup that was placed in his
17 iCloud.
18     A    They didn't search.  They collected.
19     Q    Right.  What I would like for you to confirm is
20 that KLDiscovery collected everything from Mr. Klempf's
21 iCloud, and not just one iCloud backup file.
22     A    Okay.  A report's is not going to confirm that.
23 So if you're looking for a document, you can't prove a
24 negative, or whatever, in a document.
25     Q    An e-mail or a representation from KLDiscovery

1 regarding the scope of their collection is what I'm
2 looking for.
3     A    I will attempt to get that, yes.
4          MR. WELLS:  Chris.
5          MR. DIX:  Yes.
6          MR. WELLS:  Is it possible to take a break?
7          MR. DIX:  Yes.  Let's go off the record.
8          THE VIDEOGRAPHER:  We are off the record.  The
9     time is 11:08 a.m.
10          (Short break.)
11          THE VIDEOGRAPHER:  We are back on the record.
12     The time is 11:21 a.m.
13     Q    Okay.  Mr. Hancock, a couple follow-up
14 questions on the iChat messages.
15     A    Okay.
16     Q    Did you ever run any search terms on any of the
17 iChat messages?
18     A    No.
19     Q    And how many iChat messages were produced to
20 the Trust?
21     A    I don't recall the number.
22     Q    When were those messages produced?
23     A    I don't recall.  Was it December 27th?
24 Honestly, I don't recall.
25     Q    It's my understanding that we received an

1 e-mail yesterday that we previously marked as an exhibit
2 that had a small handful of those iChat messages.
3     A    Oh.
4     Q    And those are the only ones I've ever seen.
5     A    Okay.  So --
6     Q    Does that --
7     A    -- that's when they were produced.
8     Q    -- sound right to you?
9     A    Yes.
10     Q    So we have only gotten a couple of iChat
11 messages, and we only received them yesterday.
12     A    Okay.
13     Q    How much storage space does Mr. Klempf have in
14 his iCloud?
15     A    I don't know the answer to that.
16     Q    Are you aware that the default storage amount
17 is 5 gigabytes?
18     A    I'm not aware of that.
19     Q    Along with the information that you're going to
20 request from KLDiscovery, would you also be willing to
21 produce a statement or description of how much storage
22 space Mr. Klempf has in his iCloud?
23     A    Well, would that come from KLDiscovery?
24     Q    If it of comes from KLD that would be fine.  If
25 Mr. Klempf has a statement from Apple where he's paying

1 for iCloud storage it should reflect that amount.
2     A    Okay.  I can ask.
3     Q    We can talk about the Apple data in a minute.
4 That would also presumably be in the Apple data.
5     A    All right.
6          MR. DIX:  Let's mark another exhibit.  This
7     will be Exhibit 39.
8          (Exhibit No. 39 was marked for identification.)
9     Q    Exhibit 39 is an e-mail from you to Mr. Post
10 and me, copying Mr. Wells, on December 28, 2018.
11          Do you remember that e-mail?
12     A    I don't.  Let me refresh myself.  Okay.
13     Q    Attached -- or included in this e-mail was a
14 link to download text messages; is that right?
15     A    Yes, from the three iTunes backups.
16     Q    How many text messages were produced?
17     A    I don't recall as I sit here today.
18     Q    Who was involved in determining which of the
19 text messages from the iTunes backups were produced?
20     A    I was.
21     Q    And what steps did you take to determine which
22 text messages from the iTunes backups would be produced?
23     A    I reviewed them.
24     Q    Did you review every text message from
25 Mr. Klempf's iTunes backups?

1     A    From the three.
2     Q    Every single one?
3     A    Yes.
4     Q    How many text messages did you review?
5     A    All of them.  I don't know.  You're asking me a
6 number I don't know.
7     Q    Was it hundreds or thousands?
8     A    It was probably more than a thousand.
9     Q    How did you determine which of the text
10 messages that you reviewed were to be produced?
11     A    Whether they were responsive and not privileged
12 and fell within the date range.
13     Q    How did you determine whether a text message
14 was responsive or not?
15     A    I know generally the allegations in the case.
16     Q    Did you look at the request for production?
17     A    Well, I've looked at that many times, yes.
18     Q    Did you run any search terms on text messages
19 that were obtained from the iTunes backups?
20     A    I did not.
21     Q    So is it possible that there are text messages
22 that are responsive to one of our search terms but which
23 were not produced?
24          MR. WELLS:  Object to form.
25     A    I don't believe so.  I mean, I looked at each

```
1    and every one of them myself personally.
2              MR. DIX:  Let's mark another exhibit.
3              (Exhibit No. 40 was marked for identification.)
4         A    Actually let me state a little bit more on my
5    answer.  As we have discussed previously, some of the
6    search terms in this case are so broad that they're
7    returning documents that indeed are not relevant to this
8    litigation.
9              So if you're asking me did one of the documents
10   have the word sale or asset in it, it's certainly
11   possible, but my actual eyes-on personal review of these
12   documents determined that it was not relevant to this
13   matter.
14        Q    If a document had the word -- if the text
15   message you reviewed had the word or phrase dream team
16   in it would you consider that to be responsive?
17        A    Absolutely.
18             MR. WELLS:  I'm sorry.  What word?
19             MR. DIX:  Dream team.
20             MR. WELLS:  Okay.
21        Q    If the text message had any information about
22   the value of Foodonics or any of its assets would you
23   consider that to be responsive?
24        A    Yes.
25        Q    All right.  The document we have just marked as
```

```
1    Exhibit 40, this is a collection of the text messages
2    that were produced pursuant to the e-mail that was
3    marked as Exhibit 39.
4         A    Okay.
5         Q    The documents are in Bates label order, and I'm
6    just going to walk through and ask you some questions
7    about some of these documents.
8         A    Sure.
9         Q    The first page is a message dated April 20,
10   2015.
11             Do you see that?
12        A    Yes.
13        Q    And it's from the phone number 904-885-1926.
14             Is that Mr. Klempf's mobile phone number?
15        A    Yes, I believe so.
16        Q    The name that's listed in brackets next to that
17   phone number is Kevin Klemfy.
18             Do you know why it says Klemfy?
19        A    I do not.
20        Q    Where does the Klemfy come from?
21        A    Is that another way of asking me if I know?  I
22   don't know.
23        Q    Have you ever seen Mr. Klempf referred to as
24   Klemfy outside of these messages?
25        A    I've never referred to him that way.  This is
```

```
1    the first I've seen, but really what's more germane is
2    his phone number.  That's just a colloquialism.  You
3    could -- you could put dad there.
4              MR. WELLS:  That's his sister's affectionate
5         name for him.
6              MR. DIX:  Does the affectionate name for him
7         have the letter P in the last name?
8              MR. WELLS:  This is the first time I've seen
9         this, Chris.  I have no idea.
10        Q    So the last name Klemfy, even if it's a
11   nickname, it's spelled K-l-e-m-f-y.
12             Do you see that?
13        A    I do.
14        Q    So if you ran a search for Klempf, K-l-e-m-p-f,
15   you would not have a hit.  This document would not be
16   responsive to a search for the term Klempf, K-l-e-m-p-f;
17   is that right?
18        A    That term by itself?
19        Q    Right.
20        A    Correct.
21        Q    Are you aware of any search term that this
22   message would be responsive to?
23        A    Yes, Dolph Baker.
24        Q    And is the phone number in the to field, is
25   that Mr. Baker's cell phone number?
```

```
1         A    I believe so.
2         Q    Down below it says metadata information, and it
3    has the device owner and the ICCID.
4              What is the ICCID?
5         A    I have no idea.
6         Q    Where does the metadata come from for this
7    document?
8         A    Metadata typically is information about the
9    file, it's about the document.  So I'm assuming that
10   that's what was available for this item, this text.
11        Q    What format was this message stored in its
12   native format when it was collected?
13        A    I don't recall.  It's a text message, so maybe
14   like the iChats, it's a dot txt file.
15        Q    How did this document come to be in existence
16   in an image format?
17        A    It was processed and imaged by KLD.
18        Q    What instructions did you give KLDiscovery
19   regarding the processing of these messages?
20        A    I identified the ones that we wanted to
21   produce, and I asked them to image them.  They did so
22   and put it in our database, and we then produced it
23   according to our ESI protocol.
24        Q    Did you direct KLDiscovery to include all the
25   metadata fields that were available from this message?
```

```
1    A    That's part of their instructions, yes.
2    Q    If you will turn to the next page, the Bates
3  number at the bottom ends in 2792.  This appears to be a
4  message on March 6, 2015.
5         Do you see that?
6    A    I do.
7    Q    The message is to Mr. Baker.
8         Do you see that?
9    A    Yes.
10   Q    But instead of his cell phone it's his e-mail
11 address.
12        Do you see that?
13   A    I do.
14   Q    Why would it list his e-mail address rather
15 than his cell phone number?
16   A    I cannot tell you.  I mean, this could be an
17 attachment.  I don't know.
18   Q    Who sent this message?
19   A    Well, it came from Mr. Klempf's device.
20   Q    We don't know who sent it?
21   A    I would assume it's him.  I don't think he
22 loans out his phone to anybody.
23   Q    There is no "from" identified on this message;
24 is that right?
25   A    I see that.
```

```
1    Q    And what was the contents of this message?
2    A    I don't know.  This is how it processed.
3    Q    So there is no message included on this
4  document?
5    A    Nothing was redacted, if that's what you're
6  asking.
7    Q    Is it possible that the "from" or the message
8  information got eliminated or changed when it was
9  converted into this format?
10        MR. WELLS:  Object to the form.
11   A    I suppose it's possible.
12   Q    Doesn't it seem strange that there is a text
13 message sent to Mr. Baker with no from?
14   A    Well, again I don't know if this is actually a
15 text message, or maybe he sent him a photo and there was
16 no content, there was no message.  That I don't know.
17 This is how it processed.  This is what I received when
18 I asked them to process this and produce it.
19   Q    Have you ever directed KLDiscovery to process
20 similar types of messages into this similar type of
21 format?
22   A    Yes.
23   Q    Have you ever seen a message that didn't have a
24 from?
25   A    Absolutely.  You know, phone data.  There's,
```

```
1  you know, different kind of data sources, and it's been
2  my experience that collecting from some devices is
3  really problematic, and the output that you get is
4  lacking.
5    Q    If you turn to the next page, the Bates number
6  ends in 2793.
7    A    Yes.
8    Q    This one also has no from and no message; is
9  that right?
10   A    Correct.
11   Q    Do you have any explanation for why that would
12 be?
13   A    No.
14   Q    If you turn to the next page the Bates number
15 is ending in 2794.  The message is to an individual
16 named Darrell Sargent.
17        Who is Darrell Sargent?
18   A    I could be wrong.  I've looked at a lot of
19 documents in this case, but something tells me that he's
20 actually a car dealer.  I don't know how this got in --
21 why this got in the production.
22   Q    That's what I was going to ask you.
23   A    This might have been inadvertently produced.
24   Q    There's no message contents in this document;
25 right?
```

```
1    A    Correct.
2    Q    There's no from?
3    A    Right.
4    Q    And there's nothing other than the name that
5  might suggest why this document exists; isn't that
6  right?
7    A    I don't know what that means, but I think that
8  this guy is a car dealer that Mr. Klempf had ongoing
9  communications with.
10   Q    And you think this one appears to be
11 inadvertently produced?
12   A    Certainly it's not, yeah, responsive to any of
13 your requests, if indeed that's who that is.
14   Q    If you turn to the page, the Bates number
15 ending in 2801, the sender of this message is someone
16 named Johnny Weems.
17        Who is Johnny Weems?
18   A    I don't know.
19   Q    Why was this document produced?
20   A    Because Dolph is mentioned in it.  Again
21 nothing to do with the litigation, but given your
22 request.
23   Q    How do you know that this message has nothing
24 to do with the litigation?
25   A    They were out at a social event and he's
```

1  saying:  Thanks.  You guys were hilarious.

2          How does this have any bearing on this

3  litigation?

4      Q   I'm asking you the question.

5          MR. WELLS:  Object to the form.

6      A   If there's something relevant in this, it's a

7  mystery to me.

8      Q   So why was this document produced?

9      A   It mentions Dolph.

10     Q   Okay.  Turn to the next page, please, the

11  document -- the Bates number ending in 2802.  This is a

12  message from Mr. Baker on the 28th of January, 2015 to

13  Mr. Klempf; is that right?

14     A   Yes.

15     Q   And the last sentence of the message says:

16  Appreciate your friendship.  Dolph.

17         Is it your understanding that Mr. Baker and

18  Mr. Klempf were friends?

19     A   I think they're colleagues and friends, yes.

20  They've been in the same industry for a long time.

21     Q   Would you turn to the document with the Bates

22  number ending in 2809.

23     A   Okay.

24     Q   This one has no from field; is that right?

25     A   Correct.

1      Q   It's sent to Mr. Klempf and someone named

2  Sherman Miller; is that right?

3     A   Yes.

4     Q   Who is Sherman Miller?

5     A   He worked for Cal-Maine.

6     Q   What did he do at Cal-Maine?

7     A   I think he had something to do with their

8  financial department.

9     Q   This message has no actual message; is that

10  right?

11     A   Correct.

12     Q   So why was this document produced?

13     A   Because Sherman Miller works for Cal-Maine.

14     Q   So was it your practice to produce any message

15  between Mr. Klempf and anyone at Cal-Maine?

16     A   Yes.

17     Q   Will you turn to the page with the Bates number

18  ending in 2812.

19     A   Okay.

20     Q   This message is to a phone number without a

21  name.

22         Do you know whose phone number that is?

23     A   I don't off the top of my head, but the 601

24  extension is what we had determined to be probably a

25  Cal-Maine employee.

1      Q   And there's no message on this document; right?

2     A   Correct.

3     Q   So why was this document produced?

4     A   Because it was to a Cal-Maine person, probably.

5     Q   If you turn to the document with the Bates

6  number ending is 2815.

7     A   Okay.

8     Q   This document is sent to Jeff Harden, Sherman

9  Miller, and Dolph Baker.

10        Do you know who Jeff Harden is?

11     A   I don't.  I mean, I've seen his name certainly.

12  I don't know his role.

13     Q   There's no message in this document; is that

14  right?

15     A   Correct.

16     Q   And you don't know why there is no message?

17     A   I do not.  It wasn't redacted, if that's what

18  you're asking.

19     Q   Would you turn to the document, the Bates

20  number ending in 2817.

21     A   Okay.

22     Q   This one, down at the bottom there's three

23  asterisks followed by the word deleted in all caps, then

24  three more asterisks.

25        What does the deleted reference here?

1     A   I don't know.

2     Q   Have you ever seen that before?

3     A   I never noticed that, and I certainly didn't

4  ask for anything to be deleted, and I never deleted

5  anything myself.

6     Q   So there's a number of messages in this

7  exhibit, all of which have the same deleted reference in

8  it.

9     A   Okay.

10     Q   I believe this is the first of them.

11     A   Right.

12     Q   There are a number of them throughout.

13        Would you be willing to communicate with

14  KLDiscovery and inquire about why there is a deleted

15  reference in these messages?

16     A   Absolutely.

17     Q   And when you learn that information will you

18  share it with us?

19     A   Absolutely.

20     Q   Okay.

21     A   Can I ask that after the deposition you provide

22  us with a list of everything that I'm supposed to be

23  doing, because I'm not taking notes here.

24     Q   I'm not writing them down either, but we will

25  put something together.

1    A    Okay.  Thanks.
2    Q    The date ranges for the documents that are
3    marked as Exhibit 40, the date range of these documents
4    or these messages is 2015 and 2016; is that right?
5    A    If you say so.
6    Q    These documents are within the date range
7    that's relevant to this case; correct?
8    A    Yes.
9    Q    And these documents were only identified and
10   produced subsequent to the depositions on November 28th
11   and 29th; is that right?
12   A    Yes, because I was unaware of the iTunes
13   matters.
14   Q    And the documents that are marked as
15   Exhibit 40, these are the only messages that you
16   determined were responsive and produced of the
17   collection that you reviewed; is that right?
18   A    Yes.
19   Q    Let's go -- turn back to Exhibit A from the
20   amended notice and go to Paragraph D.
21        Do you see Paragraph D?
22   A    Yes.
23   Q    Documents or ESI from Microsoft which reflect
24   the dates on which Dixie Egg e-mail accounts, including
25   the e-mail account of Richard Still, were terminated,

1    and if different, the date on which the data for each of
2    those accounts was deleted or could no longer be
3    retrieved.
4         At Mr. Klempf's deposition on November 28th he
5    testified that he had numerous e-mails with Microsoft's
6    help desk trying to get into the portal and become the
7    administrator for that account.
8    A    Okay.
9    Q    Aren't those documents Mr. Klempf referred to,
10   his e-mails with Microsoft, responsive to Paragraph D
11   here?
12   A    Some may be.
13   Q    Have you ever seen the e-mails that Mr. Klempf
14   exchanged with Microsoft?
15   A    I think I've seen one or two.  I certainly
16   haven't seen a lot of them.  So if there's more, they're
17   in his possession and they weren't shared with me.
18   Q    And no communications with Microsoft have been
19   produced to the Trust; is that right?
20   A    I believe that's correct.
21   Q    What's the status of the e-mail account of
22   Richard Still?
23   A    Terminated and unable to be retrieved.
24   Q    Your firm represents Mr. Still in connection
25   with this litigation; correct?

1    A    I can't answer that.
2    Q    You don't have personal knowledge of your firm
3    representing Mr. Still in this case?
4    A    I do not.
5    Q    Do you have knowledge -- have you or anyone
6    from your firm contacted Mr. Still to see if he has
7    copies of his DixieEgg.com e-mails?
8    A    I can only speak to myself, and I have not.
9    Q    On behalf of Foodonics as the 30(b)(6)
10   representative do you have any knowledge of anyone
11   contacting Mr. Still to see if he has copies of the
12   DixieEgg.com e-mails?
13   A    I do not.
14   Q    Are you aware that Mr. Still used his personal
15   e-mail account to communicate with individuals that are
16   involved in this litigation?
17   A    I have no personal knowledge of that.
18   Q    Okay.  Let's talk about Paragraph E of Exhibit
19   A attached to the amended notice.
20        Paragraph E refers to the data associated with
21   Jacques Klempf's Apple I.D. account.  Mr. Klempf
22   requested and obtained from Apply, after visiting the
23   following website, PrivacyToApple.com.
24        During his deposition on November 28th he
25   testified that he had requested that information and

1    that he had received it and then turned it over to you.
2    And during the deposition Mr. Klempf and Mr. Wells said
3    that that Apple account information would be produced to
4    us.
5         So has that information from Apple been
6    produced to us?
7    A    First I want to correct you.  It wasn't turned
8    over to me.  He provided me with his credentials so I
9    could access it.  So nothing was actually ever sent to
10   me.  But nothing was turned over from this data because
11   nothing was responsive.
12   Q    When did you determine that nothing in that
13   Apple data was responsive?
14   A    Well, so by the time that I tried to gain
15   access to it the link apparently was time sensitive so
16   it had expired.  So Mr. Klempf had to request that data
17   again.  It took a while for them to actually deliver it
18   again, because it was a pretty substantial amount of
19   data.
20        I don't recall the date that it was made
21   available to me, but when it was I -- I think it was
22   maybe -- and please don't hold me to this.  I think it
23   was right after the first of the year, so January 3rd or
24   4th, or something.  And so I -- when the data was resent
25   he provided me with his credentials, I accessed it and I

1  looked at all the data.  I believe there were 16
2  folders, and I looked through all of them, except for
3  what turns out to be the vast majority of that data,
4  which were photos.
5      I think there was about 62 gigabytes of data
6  delivered in total, and 61-plus gigabytes of that data
7  were photographs.  I did not review the photographs
8  because it was my understanding that this case is not
9  about photographs.
10     Q   That's right.  The request, Paragraph E, we
11 actually said that we don't want photos from iCloud
12 photos.
13     A   Right.
14     Q   Or several other things that are unlikely to be
15 related to this case.
16     A   But out of an abundance of caution I looked at
17 each and every one of the other 15 folders to look at
18 the contents.
19     Q   And anywhere in that Apple data was there any
20 description of the history of Mr. Klempf's Apple account
21 and the devices he has had over the years?
22     A   There's certainly some account information in
23 there.  I don't know how far back it went, or what it
24 detailed.  I knew it didn't go to the -- to the
25 allegations in this case, but perhaps there might be

1  something that I could revisit that to look, again not
2  understanding that -- how that's going to be germane to
3  the matter as it relates, similar to the KLD collection
4  reports.
5      So, you know, I'd be willing to go back and
6  look at that to see if that historical account
7  information is there.
8      Q   Mr. Wells stated on the record when Mr. Klempf
9  was testifying -- he was speaking with Mr. Post about
10 the Apple data and he said, quote, we will provide the
11 records that were sent to Mr. Klempf from Apple, but I'm
12 suggesting to you that the records you will get do not
13 contain anything, and our response to your motion was
14 that we would make a reasonable effort to obtain the
15 records.
16     So Mr. Wells represented that the Apple data
17 was going to be produced to us.  Mr. Klempf also offered
18 to produce that data, and what I'd ask again is that the
19 Apple data be produced.  And in making that request I
20 want to be clear that we don't want the photos that you
21 referred to.
22     So will you be -- are you willing to produce
23 the Apple data, other than the photos, to us within the
24 next week?
25     A   We will produce the data.  I mean, 61-plus of

1  62 gigabytes is photos.  So if there's account
2  information, which it seems like what you're asking for,
3  I will look again for that.  If it's there we will -- we
4  will produce it.  We're not -- we're not interested in
5  withholding anything.
6      Q   We would like the entire Apple account download
7  except for the photos and the other items that we
8  mentioned in Paragraph E.  We don't need the app store,
9  we don't need to know what apps Mr. Klempf downloaded.
10 We don't need marketing subscriptions.  We don't need to
11 know his game center activity or his iCloud bookmarks
12 and reading list.  But the other data that comes from
13 Apple appears to us to be relevant to, in some way, the
14 devices that Mr. Klempf had, when he had them, when they
15 were replaced, and when he used them.
16     A   If there's account or device information we
17 will give that, but what you've just described that
18 you're not interested in is 61-plus gigs of 62 gigs.
19     Q   That's fine.  We don't want that information,
20 but we do want everything else.
21     A   Okay.
22     Q   All right.  Category F in Exhibit A of the
23 amended notice says:  The production of a revised
24 privilege log on behalf of Foodonics and Jacques Klempf
25 and the corresponding production of all non-privileged

1  documents.
2      During your deposition on November 29th you
3  stated that there were additional documents that would
4  be produced from the privilege logs that had not already
5  been produced in the case.
6      So have you, or has Foodonics or Mr. Klempf
7  produced any additional documents or ESI from the
8  privilege logs?
9      A   Not to this date, but I received communications
10 recently that give me the documents from -- that we'll
11 be removing our privilege assertion and producing them.
12 I hope to do that tomorrow.
13     Q   How many documents do you expect to be
14 produced?
15     A   I don't know on the Gray Robinson privilege
16 log, but I think on the Foodonics log I think it's 21
17 documents, plus families, or thereabouts approximately.
18     Q   Have any revised privilege logs been produced
19 since November 29th?
20     A   We'll revise them when we remove those
21 documents from the privilege log.  So again tomorrow I'm
22 hoping to do that, complete that tomorrow.
23     Q   And when you say complete that, when can we
24 expect to receive a revised privileged log and
25 production?

1     A     I'm hoping by close of business tomorrow I will
2  be able to do that.
3     Q     What steps were undertaken to remove items from
4  a privilege log and determine that they should be
5  produced?
6     A     A further review of items that appeared to be
7  somewhat questionable.
8     Q     What makes an item, as you describe, somewhat
9  questionable?
10    A     Well, if it involves other clients, if it
11 involves, you know, different people.  So if there are
12 items that you guys pointed out were questionable, so we
13 look at those items to see if they -- if we should, you
14 know, withdraw the privilege assertion.
15    Q     Who undertook the review of the privilege logs
16 and privileged documents?
17    A     Counsel.
18    Q     Someone at Gray Robinson, or special counsel?
19    A     Gray Robinson.
20    Q     And did someone at Gray Robinson review all of
21 the documents that were on the previous privilege logs?
22    A     I also reviewed them, by the way, so -- and --
23 and provided comments or notes, but it was counsel that
24 made the final determination.
25    Q     Which attorneys were involved in that review?

1     A     I believe it was Mr. Wells and Mr. Nolan.
2     Q     Did they -- how did they review those
3  documents?  Did they use Relativity or did they review
4  them on paper?
5     A     We're not using Relativity.  We use Nebula.
6     Q     Did they use Nebula?
7     A     I believe so.
8     Q     Have Mr. Wells and Mr. Nolan had training on
9  how to use Nebula?
10    A     Yes.  They're both experts.
11          MR. WELLS:  How do you spell that?
12          MR. DIX:  Let's take a quick break.
13          THE VIDEOGRAPHER:  We're off the record.  The
14 time is 12:03 p.m.
15          (Off the record.)
16          THE VIDEOGRAPHER:  We're back on the record.
17 The time is 12:12 p.m.
18          MR. DIX:  We have no more questions of
19 Mr. Hancock, but during the course of today's
20 deposition we have identified another number of
21 items still yet to be produced, and so we hope to
22 receive those items perhaps tomorrow, no later than
23 next week, and so until we have received those items
24 and reviewed them we're going to keep the deposition
25 open subject to the items that have not yet been

1  produced.
2          MR. WELLS:  Some of the items that have been
3  referenced today are new items that have been
4  requested that Mr. Hancock has indicated he will
5  endeavor to get from KL, or potentially other
6  sources.  There are a couple categories of documents
7  that have not been fully produced, and they will be
8  produced, but we will reserve the right to object to
9  any continuation of this deposition or that of
10 Mr. Klempf, if so attempted.
11          THE VIDEOGRAPHER:  This concludes today's
12 testimony given by David Hancock.  The time is
13 12:13 p.m.
14          (Witness excused.)
15          (The deposition concluded at 12:13 p.m.)
16                      - - -
17
18
19
20
21
22
23
24
25

1               CERTIFICATE OF OATH
2
3  STATE OF FLORIDA)
                   )
4  COUNTY OF DUVAL )
5
6          I, the undersigned authority, certify that
7  DAVID HANCOCK personally appeared before me and was duly
8  sworn.
9
10         WITNESS my hand and official seal this 15th day
11 of February 2019.
12
13
14         _____
15                Terry T. Hurley, RPR
16
17
18
19
20
21
22
23
24
25

## REPORTER'S DEPOSITION CERTIFICATE

STATE OF FLORIDA)
                 )
COUNTY OF DUVAL )

     I, Terry T. Hurley, Registered Professional Reporter, certify that I was authorized to and did stenographically report the deposition of DAVID HANCOCK; that a review of the transcript was requested; and that the transcript is a true and complete record of my stenographic notes.

     I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

     DATED this 15th day of February 2019.


_____
Terry T. Hurley, RPR

## ERRATA SHEET

**DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE**

In re:  Foodonics v Srochi, etc., et al
    Date of deposition:  January 24, 2019

PAGE NO.   LINE NO.        CHANGE           REASON
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Under penalties of perjury, I declare that I have read my deposition and that it is true and correct, subject to any changes in form or substance entered here.

_____              _____
DATE                 DAVID HANCOCK
(th)

# TAB 88

**From:** David A. Hancock, CEDS [mailto:David.Hancock@gray-robinson.com]
**Sent:** Friday, January 25, 2019 2:00 PM
**To:** James H. Post <jpost@smithhulsey.com>; Chris Dix <cdix@smithhulsey.com>
**Cc:** Grier Wells <Grier.Wells@gray-robinson.com>
**Subject:** Jean Klempf Trust - Revised Priv Logs and Productions of Docs Removed from Same

Gentlemen,

As discussed during the deposition yesterday, attached are the revised initial Privilege Logs (VOL001 for both GR and Foodonics/Klempf).

The .zip files below are the documents that were removed from the Privilege Logs.

| Filename | Size | Checksum (SHA1) |
|---|---|---|
| GR_VOL003 - FINAL.zip | 3.13 MB | 3f52f217574892cbb9c0b88a954c351a5d181c1c |
| Klempf_VOL006 - FINAL.zip | 6.73 MB | 6eb76d9fd0f7ec035a2833d6dcfb0cbf05e3a76b |

Please click on the following link to download the attachments:
https://filetransfer.renewdata.com/message/m1IxgcAZzj33sePc0lsBiF

This email or download link can be forwarded to anyone.

The attachments are available until: **Sunday, 24 February.**

Message ID: m1IxgcAZ

**David A. Hancock, CEDS | Manager of Litigation Support and eDiscovery Services**
G R A Y | R O B I N S O N

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145 | **D:** 813-273-5150

E-mail | Website | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**TAB 89**

Gentlemen,

Below is a list of the items discussed during your deposition yesterday that you agreed -- on behalf of Foodonics and Jacques Klempf -- to produce by today (but have not yet been produced):

1.  Explanation of why the text messages retrieved from Mr. Klempf's iTunes backup contain the language "***DELETED***"

2.  The data associated with Jacques Klempf's Apple ID account—which you said Jacques Klempf obtained from the Apple website: https://privacy.apple.com/, -- excluding the following categories of Apple data: (i) App Store, iTunes Store, iBooks Store and Apple Music activity, (ii) Marketing subscriptions, downloads and other activity, (iii) Game Center activity, (iv) iCloud Bookmarks and Reading List, (v) Maps data or (vi) iCloud Photos.

3.  The Cellebrite Reporting and related KLDiscovery communications regarding the 5 iTunes backups identified in December 2018 (as referenced in the December 2018 KLDiscovery invoice).

4.  Confirmation regarding the amount of storage in Jacques Klempf's iCloud (the default free amount from Apple is only 5 GB) and dates and amounts of any changes in that storage amount that occurred during the relevant time period in this case.

5.  Confirmation of whether or not KLDiscovery collected (and later searched) the entire contents of Jacques Klempf's iCloud (rather than just collecting and searching a backup of Mr. Klempf's iPhone that was stored in his iCloud).

6.  All communications between Mr. Klempf and Microsoft regarding the DixieEgg.com account.

7.  All AT&T phone records during the relevant time period in this case and the communications with AT&T regarding those phone records.

8.  In regard to the 2,300 iChat files found on Jacques Klempf's computer, (i) the number of iChat files you selected and asked KLDiscovery to put into the Nebula review tool for you to review, (ii) the number of iChat files you identified as not responsive and, therefore, did not produce and (iii) the number of iChat files you identified as responsive and did not produce due to a privilege claim.

We will not agree to any further delays in the completion of production of documents and ESI in this case.

Thank you,
Jim

James H. Post

**SMITH HULSEY & BUSEY**

One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



YEARS
OF PRACTICE
EXCELLENCE

*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

**From:** David A. Hancock, CEDS [mailto:David.Hancock@gray-robinson.com]
**Sent:** Friday, January 25, 2019 2:00 PM
**To:** James H. Post <jpost@smithhulsey.com>; Chris Dix <cdix@smithhulsey.com>
**Cc:** Grier Wells <Grier.Wells@gray-robinson.com>
**Subject:** Jean Klempf Trust - Passwords for Priv Log Productions

The Password for both zips is KLDisco2019!

There are four (4) attachments in the Foodonics Production that are encrypted. We will attempt to un-encrypt them using all known passwords. If we are successful, we will send the un-encrypted documents to you.

I forgot to mention yesterday that I will be out of the office in NYC all next week attending Workshops and a Conference (Legal Week and LegalTech). As such, my availability to get you the information you asked for will be severely affected. I would thus ask for an additional week to get you the information. That said, I will try to get it to you earlier...I just can't promise it given everything else I have going on next week.

Dave

**David A. Hancock, CEDS | Manager of Litigation Support and eDiscovery Services**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145 | **D:** 813-273-5150
E-mail | Website | vCard

**Facebook | LinkedIn | Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**TAB 90**

| From: | Grier Wells <Grier.Wells@gray-robinson.com> |
|---|---|
| Sent: | Thursday, February 7, 2019 4:45 PM |
| To: | James H. Post |
| Cc: | Chris Dix; David A. Hancock, CEDS |
| Subject: | FW: Jean Klempf Trust - Passwords for Priv Log Productions |
| Attachments: | Apple ID account and device information.zip; AppleCare.zip; iCloud Contacts.zip; iCloud Notes.zip; Apple Online and Retail Stores.zip; iCloud Calendars and Reminders.zip; Other data.zip; 990000004-900[2019-02-06 11-59-04] (004).pdf; 990000004-900[2019-02-06 11-59-04] (003).pdf; 990000004-900[2019-02-06 11-59-04] (002).pdf; 990000004-900[2019-02-06 11-59-04] (001).pdf; 990000004-900[2019-02-06 11-59-04].pdf; 990000004-900[2019-02-06 16-01-42].pdf; AT&T.pdf |

Please see the e-mail below and the documents attached.

A supplemental privilege log is being served as to the iChats. As noted below, a separate zip file is being sent because of its volume.


**Grier Wells | Complex Commercial, Employment and Construction Litigation**
**The Florida Bar Board Certified in Civil Trial Law**
**G R A Y | R O B I N S O N**

50 North Laura Street, Suite 1100 | Jacksonville, Florida 32202
**T:** 904-598-9929 | **F:** 904-598-9109 | **D:** 904-632-8478
E-mail | Website | Bio | vCard

**Facebook** | **LinkedIn** | **Twitter**

**From:** David A. Hancock, CEDS
**Sent:** Wednesday, February 06, 2019 4:20 PM
**To:** Grier Wells
**Subject:** RE: Jean Klempf Trust - Passwords for Priv Log Productions


1. According to information provided by KLDiscovery, when an item is deleted on a user's phone, the item is marked as deleted and moved to an unused portion of the database. As that space is needed, parts of the item begin to be overwritten until the item is completely overwritten. These will all show up with the text *** DELETED ***.

2. Attached are seven (7) .zip files which Mr. Klempf received from Apple related to his account. An additional file (iCloud Drive.zip) will be sent separately as it is too large to attach to an email.

3. I don't believe that we agreed to Produce the Cellebrite Reporting in its entirety regarding the iTunes backups. Rather, I believe we agreed to Produce Cellebrite Reporting that pertained to the account information and the backups and collection of the backups themselves. Producing the entire Cellebrite Reports, because of their minute detail, would be tantamount to producing the entire iTunes backups. The vast majority of the data in the iTunes backups ARE NOT RESPONSIVE. As such, PDF (004) is the Cellebrite Reporting for the iTunes backup named "747" , PDF (003) is the Cellebrite Reporting for the iTunes backup named "be5", and PDF (002) is the Cellebrite Reporting for the iTunes backup named "588".

The other 2 PDFs that are similarly named (001 and one without a number scheme but similarly named) are the correspondence with KLDiscovery about the iTunes backups.

4. According to information provided by KLDiscovery, they collected the entire iCloud account, which included the most recent backup of the iCloud account. They did not perform any searching during the collection or after it was collected.

5. See response to No. 4 above.

6. Attached is communication between Mr. Klempf and Apple (most recently dated 11/8/18 but going back to October, 2018). Other communication was verbal.

7. Attached is correspondence Mr. Klempf received from AT&T regarding his request for call records. He is still waiting for them to make good on their representations.

8. i) 105
ii) 94
iii) 6...Privilege Log to follow.

**From:** James H. Post [mailto:jpost@smithhulsey.com]
**Sent:** Friday, January 25, 2019 4:32 PM
**To:** Grier Wells; David A. Hancock, CEDS
**Cc:** Chris Dix
**Subject:** RE: Jean Klempf Trust - Passwords for Priv Log Productions

**This message originated outside of GrayRobinson.**

Gentlemen,

Below is a list of the items discussed during your deposition yesterday that you agreed -- on behalf of Foodonics and Jacques Klempf -- to produce by today (but have not yet been produced):

1. Explanation of why the text messages retrieved from Mr. Klempf's iTunes backup contain the language "***DELETED***"

2. The data associated with Jacques Klempf's Apple ID account—which you said Jacques Klempf obtained from the Apple website: https://privacy.apple.com/, -- excluding the following categories of Apple data: (i) App Store, iTunes Store, iBooks Store and Apple Music activity, (ii) Marketing subscriptions, downloads and other activity, (iii) Game Center activity, (iv) iCloud Bookmarks and Reading List, (v) Maps data or (vi) iCloud Photos.

3. The Cellebrite Reporting and related KLDiscovery communications regarding the 5 iTunes backups identified in December 2018 (as referenced in the December 2018 KLDiscovery invoice).

4. Confirmation regarding the amount of storage in Jacques Klempf's iCloud (the default free amount from Apple is only 5 GB) and dates and amounts of any changes in that storage amount that occurred during the relevant time period in this case.

5. Confirmation of whether or not KLDiscovery collected (and later searched) the entire contents of Jacques Klempf's iCloud (rather than just collecting and searching a backup of Mr. Klempf's iPhone that was stored in his iCloud).

6. All communications between Mr. Klempf and Microsoft regarding the DixieEgg.com account.

7. All AT&T phone records during the relevant time period in this case and the communications with AT&T regarding those phone records.

8. In regard to the 2,300 iChat files found on Jacques Klempf's computer, (i) the number of iChat files you selected and asked KLDiscovery to put into the Nebula review tool for you to review, (ii) the number of iChat files you identified as not responsive and, therefore, did not produce and (iii) the number of iChat files you identified as responsive and did not produce due to a privilege claim.

We will not agree to any further delays in the completion of production of documents and ESI in this case.

Thank you,
Jim

James H. Post

**SMITH HULSEY & BUSEY**

One Independent Drive | Suite 3300 | Jacksonville, Florida 32202
904-359-7700 | Direct 904-359-7783
jpost@smithhulsey.com | www.smithhulsey.com



*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system. Thank you for your cooperation.*

---

**From:** David A. Hancock, CEDS [mailto:David.Hancock@gray-robinson.com]
**Sent:** Friday, January 25, 2019 2:00 PM
**To:** James H. Post <jpost@smithhulsey.com>; Chris Dix <cdix@smithhulsey.com>
**Cc:** Grier Wells <Grier.Wells@gray-robinson.com>
**Subject:** Jean Klempf Trust - Passwords for Priv Log Productions

The Password for both zips is KLDisco2019!

There are four (4) attachments in the Foodonics Production that are encrypted. We will attempt to un-encrypt them using all known passwords. If we are successful, we will send the un-encrypted documents to you.

I forgot to mention yesterday that I will be out of the office in NYC all next week attending Workshops and a Conference (Legal Week and LegalTech). As such, my availability to get you the information you asked for will be severely affected. I would thus ask for an additional week to get you the information. That said, I will try to get it to you earlier…I just can't promise it given everything else I have going on next week.

Dave

**David A. Hancock, CEDS | Manager of Litigation Support and eDiscovery Services**
**G R A Y | R O B I N S O N**

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145 | **D:** 813-273-5150
E-mail | Website | vCard

**Facebook** | **LinkedIn** | **Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

**TAB 91**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC., )
a Florida corporation,
                                )
          Plaintiff,
                                )
v.                                          Case No. 3:17-cv-1054-J-32JRK
                                )
DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF          )
REVOCABLE TRUST, a Georgia trust,
                                )
          Defendant.
                                )
_____)

DINA KLEMPF SROCHI, as Trustee    )
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Florida trust, )
and DENNIS L. BLACKBURN, as
Assistant Trustee of the JEAN KLEMPF )
TRUST,
                                )
          Counterclaim Plaintiffs,
                                )
v.
                                )
FOODONICS INTERNATIONAL, INC.,
a Florida corporation, and KEVIN  )
JACQUES KLEMPF,
                                )
          Counterclaim Defendants.
                                )
_____)

## NOTICE OF CONTINUATION OF DEPOSITION OF
## JACQUES KLEMPF INDIVIDUALLY AND AS THE 30(b)(6)
## REPRESENTATIVE OF FOODONICS INTERNATIONAL, INC.,
## <u>REGARDING THE PRODUCTION OF ESI AND DOCUMENTS</u>

Please take notice that counterclaim plaintiffs, Dina Klempf Srochi, as Trustee

of the Laura Jean Klempf Revocable Trust, and Dennis Blackburn, as Assistant Trustee

of the Jean Klempf Trust, will take the continued videotaped deposition of Jacques Klempf, individually and as the 30(b)(6) representative of Foodonics International, Inc. ("Foodonics"), on April 24, 2019, beginning at 9:30 a.m., at the offices of Hedquist & Associates, 345 East Forsyth Street, Jacksonville, Florida 32202, before an officer authorized by law to administer oaths and take depositions. This deposition will be videotaped by Advantage Video Productions, Inc., 9951 Atlantic Boulevard, Suite 101, Jacksonville, Florida 32225.

On November 9, 2018, the Trust filed a Motion to Shorten Time for the Production of Documents (Doc. 78) seeking production of information prior to the depositions of Jacques Klempf and Foodonics on November 28-29, 2019. The motion was opposed by Jacques Klempf as "unnecessary" because he represented through counsel that such ESI and documentation would be voluntarily produced before or at the depositions (Doc. 79). None of the requested ESI or documents, however, was produced prior to the November 28-29 depositions.

On January 24, 2019, the Trust took the continued deposition of the Rule 30(b)(6) Deposition of Foodonics International, Inc. ("Foodonics") and was told by the designated representative, David Hancock, only Jacques Klempf would have answers to many of the questions asked by the Trust.

In addition, Foodonics and Jacques Klempf only recently produced a large volume of the documents and ESI -- including AT&T phone records, Apple account data and information about iTunes backups of Jacques Klempf's mobile phone -- which they failed to produce prior to both the November 28-29, 2018 and the January 24, 2019 depositions.

2

This deposition is being continued because Jacques Klempf and Foodonics have not yet completed the production of the documents, ESI and other information as required by Court Order, the Federal Rules of Civil Procedure or as stipulated by counsel for Jacques Klempf and Foodonics during the depositions of those parties on November 28-29, 2018.

SMITH HULSEY & BUSEY

By:   */s/ James H. Post*
     James H. Post
     Michael E. Demont
     R. Christopher Dix

Florida Bar Number 175460
Florida Bar Number 364088
Florida Bar Number 036988
One Independent Drive, Suite 3300
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com
mdemont@smithhulsey.com
cdix@smithhulsey.com

Attorneys for Dina Klempf Srochi, as
   Trustee, and Dennis L. Blackburn,
   as Assistant Trustee, of the Laura Jean
   Klempf Revocable Trust

Certificate of Service

I certify that on March 26, 2019, a copy of this document has been furnished by

email to:

> S. Grier Wells, Esq.
> GrayRobinson, P.A.
> 50 North Laura Street, Suite 1100
> Jacksonville, Florida 32202
> grier.wells@gray-robinson.com
> barbara.rude@gray-robinson.com

_/s/ James H. Post_
Attorney

c:    Hedquist & Associates
      (904) 354-4111
      hedquist@bellsouth.net

      Advantage Video
      (904) 724-9006
      scheduling@advantagevideo.com

1030256

**TAB 92**

| | |
|---|---|
| **From:** | David A. Hancock, CEDS <David.Hancock@gray-robinson.com> |
| **Sent:** | Friday, April 5, 2019 10:51 AM |
| **To:** | Chris Dix |
| **Cc:** | James H. Post; Grier Wells |
| **Subject:** | Jean Klempf Trust - Revised GR Priv Log and Supplemental GR Production |
| **Attachments:** | GRPriv_VOL002 Log.csv |

This correspondence pertains to the GR Privilege Log and Supplemental GR Production both related to the Contract/Managed Review by Special Counsel. I thought these had been sent weeks ago but I realized today that they were not.

Below is the link to GR's Supplemental Production (GR_VOL004). This Supplemental Production consists of documents that were initially marked Privileged but which were re-reviewed determined to not be.

The password for this will be sent in a separate email.

Attached to this email is GRPriv_VOL002. It is GR's Privilege Log as it relates to the approx. 20,000 documents that were reviewed by Special Counsel. You will recall that 7,098 documents were Produced by GR on December 27, 2018 also related to the same review.

**Files attached to this message**

| Filename | Size | Checksum (SHA1) |
|---|---|---|
| GR_VOL004 - FINAL.zip | 14 MB | d8f7f8bd727701e1b20807b24afaf10c80e7da72 |

Please click on the following link to download the attachments:
https://filetransfer.renewdata.com/message/OeVpKbn5qJkSHC7hgpBDcj

This email or download link can be forwarded to anyone.

The attachments are available until: **Wednesday, 17 April.**

Message ID: OeVpKbn5

LiquidFiles Appliance: https://filetransfer.renewdata.com

**David A. Hancock, CEDS | Manager of Litigation Support and eDiscovery Services**

# G R A Y | R O B I N S O N

401 East Jackson Street, Suite 2700 | Tampa, Florida 33602
**T:** 813-273-5000 | **F:** 813-273-5145 | **D:** 813-273-5150
E-mail | Website | vCard

**Facebook** | **LinkedIn** | **Twitter**

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

# TAB 93

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FOODONICS INTERNATIONAL, INC.,
a Florida corporation,

                    Plaintiff,

vs.                                                    Case No.  3:17-cv-1054-J-32JRK

DINA KLEMPF SROCHI,
as Trustee of the Laura Jean Klempf
Revocable Trust, a Florida Trust,

                    Defendant.

_____

DINA KLEMPF SROCHI,
as Trustee of the Laura Jean Klempf
Revocable Trust, a Florida Trust, et al.,

                    Counterclaim Plaintiffs,

vs.

FOODONICS INTERNATIONAL, INC.,
a Florida corporation, et al.,

                    Counterclaim Defendants.
_____/

## O R D E R

Upon review of the file, including the Notice of Continuation of Deposition of Jacques

Klempf Individually and as the 30(b)(6) Representative of Foodonics International, Inc.,

Regarding the Production of ESI and Documents (Doc. No. 90), filed March 26, 2019, it is

**ORDERED:**

Any necessary motions to compel, motions regarding privilege log deficiencies, motions for sanctions, and/or motions seeking the appointment of a special master or forensic expert contemplated by paragraph 4 of the Order entered October 29, 2018 (Doc. No. 70) are due **no later than May 20, 2019**. Response(s) to any motion(s) are due **fourteen (14) days** after the filing of the motion(s). In light of the multiple continuations of the depositions preceding these deadlines, the Court is not inclined to extend the deadlines absent compelling circumstances.

**DONE AND ORDERED** at Jacksonville, Florida on April 11, 2019.

**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:
Counsel of Record

-2-

**TAB 94**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC.,   )
a Florida corporation,
                                 )
        Plaintiff,
                                 )
v.                                        Case No. 3:17-cv-1054-J-32JRK
                                 )
DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF         )
REVOCABLE TRUST, a Georgia trust,
                                 )
        Defendant.
                                 )
_____)

DINA KLEMPF SROCHI, as Trustee   )
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Florida trust, )
and DENNIS L. BLACKBURN, as
Assistant Trustee of the JEAN KLEMPF )
TRUST,
                                 )
        Counterclaim Plaintiffs,
                                 )
v.
                                 )
FOODONICS INTERNATIONAL, INC.,
a Florida corporation, and KEVIN )
JACQUES KLEMPF,
                                 )
        Counterclaim Defendants.
_____)

**NOTICE OF CANCELLATION OF CONTINUATION OF DEPOSITION
OF JACQUES KLEMPF INDIVIDUALLY AND AS THE 30(b)(6)
REPRESENTATIVE OF FOODONICS INTERNATIONAL, INC.,
REGARDING THE PRODUCTION OF ESI AND DOCUMENTS**

Counterclaim plaintiffs, Dina Klempf Srochi, as Trustee of the Laura Jean

Klempf Revocable Trust, and Dennis Blackburn, as Assistant Trustee of the Jean

Klempf Trust (the "Trust"), give notice that the deposition of Jacques Klempf, individually and as the 30(b)(6) representative of Foodonics International, Inc., scheduled for April 23, 2019 at 9:30 a.m., has been cancelled, without prejudice to the Trust's right to seek related relief by filing one or more motions pursuant to the Court's April 11, 2019 Order (Doc. No. 91).

SMITH HULSEY & BUSEY

By: _/s/ R. Christopher Dix_
James H. Post
Michael E. Demont
R. Christopher Dix

Florida Bar Number 175460
Florida Bar Number 364088
Florida Bar Number 036988
One Independent Drive, Suite 3300
Jacksonville, Florida  32202
(904) 359-7700
(904) 359-7708 (facsimile)
jpost@smithhulsey.com
mdemont@smithhulsey.com
cdix@smithhulsey.com

Attorneys for Dina Klempf Srochi, as
   Trustee, and Dennis L. Blackburn,
   as Assistant Trustee, of the Laura Jean
   Klempf Revocable Trust

2

<u>Certificate of Service</u>

I certify that on April 16, 2019, a copy of this document has been furnished by

email to:

> S. Grier Wells, Esq.
> GrayRobinson, P.A.
> 50 North Laura Street, Suite 1100
> Jacksonville, Florida 32202
> grier.wells@gray-robinson.com
> barbara.rude@gray-robinson.com

_/s/ R. Christopher Dix_
Attorney

c:   Hedquist & Associates
     (904) 354-4111
     hedquist@bellsouth.net

     Advantage Video
     (904) 724-9006
     scheduling@advantagevideo.com

1032936

**TAB 95**

| Document ID | Produced Ranges | Family Date | Author | From/Author | From | To | Cc | Bcc | Privileged |
|---|---|---|---|---|---|---|---|---|---|
| DOC-0001226524 | GRPriv0001609 | 7/5/2012 19:11 | | ç‰‡æ¡â¥æ…™æ® <ä¼¯äœ½âˆ‚âˆ…âˆjfäˈä•‡ä¼˜ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ•ˈä¥ fä¥âˈ…âˈäŒˈãµŽâ¥‡äˈ> | ç‰‡æ¡â¥æ…™æ® <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ•ˈä¥ fä¥âˈ…âˈäŒˈãµŽâ¥‡äˈ> | æ¬§æ-ªæ¥ç§æ…€æ±ˈæ Œ®æµˈ <æ©«æ•«æ§äˈæ½ˈäˈ¬ æ½£>; æ•ˈç‰²âˈâˈäˈ æ½ˈæ•² <æ•ˈç‰²âˈ¶æ½ç‰‰ˈä¥ç %§ç¥ç¡ˈ-æ‰ˈæ¹©æ½³âˈæ | ç‰‡æ•©â²æ•—æ±¬ <ç‰‡æ•©â¹²æ•—æ±¬ã³ç %§ç¥ç¡ˈ-æ‰ˈæ¹©æ¹³âˈæ½ˈ æ½£>; æ…ˈç¥²äˈ æ¹â¥äæ…æ±æ…¦ æ¥² <æ…ç¥²âˈ Šæ•ˈåŒˈæ…£æ | | Privileged |
| DOC-0001228389 | GRPriv0001504 | 5/10/2012 17:30 | | ç‰‡æ¡â¥æ…™æ® <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ•ˈä¥ fä¥âˈ…âˈäŒˈãµŽâ¥‡äˈ> | ç‰‡æ¡â¥æ…™æ® <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ•ˈä¥ fä¥âˈ…âˈäŒˈãµŽâ¥‡äˈ> | æ…ç¥²äˈ æ¹â¥äæ…æ±æ …¦æ¥² £æ™¬ç‰‰â©ˈ©%§ç¥ç¡ˈ-æ‰ˈæ¹©æ½³âˈæ | | | Privileged |
| DOC-0001232985 | GRPriv0001173 | 4/11/2010 0:23 | | æ¥–æ±¬æ…©â-âˈ ç¥ˈæ• ¬ <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ•ˈä¥ fä¥âˈ…âˈäŒˈãµŽâ‰—âˈä•Œˈ> | æ¥–æ±¬æ…©â-âˈ ç¥ˈæ• ¬ <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ•ˈä¥ fä¥âˈ…âˈäŒˈãµŽâ‰—âˈä•Œˈ> | æ•ˈæ•ˈâˈ³âˈ çjâ€‰âˈ‰â€ <æ•ˈæ•ˈâˈ²æ…Œâˈ²ç‰‰§ç ¥¡ç¯-æ‰ˈæ¹©æ¹³âˈæ ½£>; | | | Privileged |
| DOC-0001233168 | GRPriv0001732 | 9/27/2012 15:09 | | ç‰‡æ¡â¥æ…™æ® <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ•ˈä¥ fä¥âˈ…âˈäŒˈãµŽâ¥‡äˈ> | ç‰‡æ¡â¥æ…™æ® <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ•ˈä¥ fä¥âˈ…âˈäŒˈãµŽâ¥‡äˈ> | æ¬§æ-ªæ¥ç§æ…€æ±ˈæ Œ®æµˈ <æ©«æ•«æ§äˈæ½ˈäˈ¬ æ½£>; | æ•ˈç¥²âˈâˈäˈ æ½ˈæ•² <æ•ˈç¥²âˈ¶æ½ç‰‰ˈä¥ç§ ç¥ç¡ˈ-æ‰ˈæ¹©æ¹³âˈæ½ˈæ £>; æ…ˈç¥²äˈ æ¹â¥äæ…æ±æ…¦ æ¥² | | Privileged |
| DOC-0001233455 | GRPriv0001050 | 3/12/2009 15:30 | | ç‰‡æ•©â©â²æ•—æ±¬ <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ•ˈä¥ fä¥âˈ…âˈäŒˈãµŽâ¥‡â±…âŒˈ> | ç‰‡æ•©â©â²æ•—æ±¬ <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ•ˈä¥ fä¥âˈ…âˈäŒˈãµŽâ¥‡â±…âŒˈ> | æ½Šäˈ‚ æ¹â¥åŒˈ æ¥â¥æ‰ˈ <æ½Šæ¹âˈ¹æµ‡ç¯©ˈâ©âˈ‰ç‰‰ §ç¥ç¡ˈ-æ‰ˈæ¹©æ¹³âˈæ½ˈ æ£>; | | | Privileged |
| DOC-0001237604 | GRPriv0001051 | 3/12/2009 17:10 | | ç‰‡æ•©â©â²æ•—æ±¬ <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ¥‡â±…âŒˈ> | ç‰‡æ•©â©â²æ•—æ±¬ <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ¥‡â±…âŒˈ> | æ½Šäˈ‚ æ¹â¥åŒˈ æ¥â¥æ‰ˈ <æ½Šæ¹âˈ¹æµ‡ç¯©ˈâ©âˈ‰ç‰‰ §ç¥ç¡ˈ-æ‰ˈæ¹©æ¹³âˈæ½ˈ æ£>; | | | Privileged |
| DOC-0001237579 | GRPriv0001503 | 5/10/2012 17:29 | | ç‰‡æ¡â¥æ…™æ® <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ•ˈä¥ fä¥âˈ…âˈäŒˈãµŽâ¥‡äˈ> | ç‰‡æ¡â¥æ…™æ® <ä¼¯äœ½âˈ‚âˈ…âˈjfäˈä•‡ä¼˜ ãµ•ä¥†âˈâˈä¥ä¥Žâˈ"ä…ˈä¥ "ä•–âœ â½ˈå•äŒˈãµŽâ•ˈä¥ fä¥âˈ…âˈäŒˈãµŽâ¥‡äˈ> | æ•ˈç¥²âˈâˈäˈ æ½ˈæ•² <æ•ˈç¥²âˈ¶æ½ç‰‰ˈä¥ç §ç¥ç¡ˈ-æ‰ˈæ¹©æ¹³âˈæ¹ˈ ¹æ½£>; æ¬§æ-ªæ¥ç§æ…€æ±ˈæ Œ®æµˈ <æ©«æ•«æ§äˈæ½ˈäˈ¬ æ½£>; | ç‰‡æ•©â©â²æ•—æ±¬ <ç‰‡æ•©â¹²æ•—æ±¬ã³ç %§ç¥ç¡ˈ-æ‰ˈæ¹©æ¹³âˈæ½ˈ æ½£>; | | Privileged |