IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC.,
a Florida corporation,

        Plaintiff,                Case No.: 3:17-cv-1054-J-32JRK

v.

DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Georgia Trust,

        Defendant.
_____/
DINA KLEMPF SROCHI, as Trustee
of the LAURA JEAN KLEMPF
REVOCABLE TRUST, a Florida Trust,
and DENNIS L. BLACKBURN, as
Assistant Trustee of the JEAN KLEMPF
REVOCABLE TRUST, a Florida Trust,

        Counterclaim Plaintiffs,

v.

FOODONICS INTERNATIONAL, INC.,
a Florida corporation, KEVIN JACQUES
KLEMPF, BAM COMMERCIAL HOLDINGS,
LLC, a Florida limited liability company, BAM
RESIDENTIAL HOLDINGS, LLC a
Florida limited liability company, and BAM
INVESTMENT GROUP, LLC, a Florida
Limited liability company,

        Counterclaim Defendants.
_____/

## **MOTION TO DISMISS**

Counterclaim Defendants, BAM Commercial Holdings, LLC ("BAM Commercial"),

BAM Residential Holdings, LLC ("BAM Residential"), and BAM Investment Group, LLC

1

("BAM Investment") (collectively, the "BAM Companies"), pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, hereby move to dismiss, with prejudice, Counterclaim Plaintiffs, Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust and Dennis L. Blackburn, as Assistant Trustee of the Laura Jean Klempf Revocable Trust's (collectively, the "Trust") Amended Counterclaim (Doc. 113).

As more fully detailed herein, the majority of the Trust's claims against the BAM Companies relate to an agreement that was executed *before* the BAM Companies existed and to which they were not parties. *The Trust's claims rely upon alleged representations that the BAM Companies did not make and could not have made.* The BAM Companies have never interacted with the Trust or Jean Klempf. The significant majority of the Trust's claims are asserted against the BAM Companies without even referencing the BAM Companies and appear to be solely based upon the Trust's inartful and improper definition of the "Foodonics Defendants" to include the BAM Companies. Moreover, Counts XIV ("Unlawful Transfer") and XV ("Declaratory Action as to Successor Status") are without merit inasmuch as the BAM Companies are owned by Foodonics International, Inc. and there have been no transfers of assets or the creation of any "successor" entities, and the Trust has not sufficiently alleged the elements of the claims asserted.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    The Relationship Between the Parties and the Settlement and Redemption Agreement.**

This lawsuit arises from an agreement between the two primary shareholders of Defendant, Foodonics International, Inc. ("Foodonics"). Between 2006 and 2015, more than ninety-nine percent (99%) of the total shares of Foodonics were held by Defendant, Jacques Klempf (approximately fifty-three percent (53%)) and his mother, Jean Klempf (more than forty-

five percent (45%)). Doc. 113, at ¶ 23.

In 2015, Foodonics, Jacques Klempf, and Jean Klempf discussed a potential purchase by Jacques Klempf of Jean Klempf's Foodonics shares. Id. at ¶ 28. On December 21, 2015, Foodonics, Jacques Klempf, and Jean Klempf, individually and as Trustee of a family trust, entered into a comprehensive negotiated Settlement and Redemption Agreement (the "Settlement Agreement"), a copy of which is attached to the Amended Counterclaim as Exhibit B; see also Doc. 113, at ¶ 29. The transactions contemplated by the Settlement Agreement were closed on or about December 31, 2015. Doc. 113, at ¶ 30.

The Background Recitals to the parties' Settlement Agreement explain in detail the basis for the negotiation and execution of the Settlement Agreement. Doc. 113, Ex. B, p. 1-3. Specifically, pursuant to a prior agreement, upon Jean's Klempf's death, her estate was required to sell all of her Foodonics stock to Jacques Klempf under an appraisal-based formula. Id. at p. 1. In order to resolve the purchase at an earlier date and to resolve all outstanding issues and disputes between the parties, the Settlement Agreement was prepared and signed, with assistance of competent legal counsel. Id. at p. 1-3.

Pursuant to the Settlement Agreement, Foodonics and Jacques Klempf paid the sum of $9,418,500 for the redemption of all Foodonics stock held by the Trust. Id. at p. 6. Jacques Klempf paid Jean Klempf the sum of $221,500 for her interest in real property located in Jacksonville, Florida pursuant to an appraisal. Other sums were paid to Jean Klempf as provided therein. Id. Upon completion of the transaction, Jean Klempf had no interest or rights in any assets of Foodonics of any kind. See e.g., id. at p. 1; 3-5. As part of the consideration for the Settlement Agreement, the parties also agreed to detailed and comprehensive mutual releases. Id. at p. 4-5.

3

In the Settlement Agreement, Foodonics and Jacques Klempf accurately represented that there were "no current offers pending nor ongoing discussions": (1) for the sale of all or substantially all of the assets of Foodonics; (2) for the sale of Jacques Klempf's Foodonics stock; or (3) for any merger, stock exchange or other "Realization Event" as of the Closing Date of December 31, 2015. Id. at p. 10 (Section 10(b)(3)). Moreover, the "Foodonics Parties" had not received any written offers to effect such a sale within twelve (12) months prior to the date of the parties' Settlement Agreement.

Despite having the ability to negotiate a sale recapture provision relating to any future sale of the business, the Settlement Agreement did not include one. Therefore, the Trust understood that the Settlement Agreement negated and barred any future rights to seek to recover sums relating to a future sale of Foodonics.

**B.      The Sale of Foodonics' Egg Producing Business.**

Given his ownership of nearly all of Foodonics' stock, Jacques Klempf possessed the legal and corporate authority to sell substantially all of the assets of Foodonics at any time following the closing of the Settlement Agreement, with no compensation owed to the Trust.

Subsequently, in approximately March or April 2016, due to changing industry and market conditions prevailing at that time, Jacques decided to explore a possible sale of substantially all of the assets of Foodonics. In or about November of 2016, Cal-Maine purchased substantially all of the assets of Foodonics for $71,643,000. Doc. 113, at ¶ 32. Cal-Maine had not made a written offer to purchase within the twelve (12) month period prior to the closing of the Settlement Agreement and at the time of the Settlement Agreement, there were no pending discussions with Cal-Maine.

After the sale, the Trust contended that had it remained a shareholder of Foodonics at the

time of the Cal-Maine transaction, it would have received $32,675,330 of the $71,643,000, or about $23,200,000 more than the Trust was paid for its stock through the Settlement Agreement. Id. at ¶ 33.

The Trust attempted to obtain an improper windfall by taking unfair advantage of events subsequent to the parties' Settlement Agreement for which it waived and released any claim, in direct contravention of the Settlement Agreement. The Trust made a demand for compensation that was negated by the Settlement Agreement and which, if allowed, would entirely rewrite an agreement that was negotiated by sophisticated parties over the course of two years.

## C.   The BAM Companies.

Foodonics (and its wholly owned companies, Foodonics Equities and Foodonics Equities II) and Jacques Klempf historically owned real properties that were unrelated to the egg business. All of these real properties were known to Jean Klempf and the Trust at the time the Settlement Agreement was signed. Jean Klempf did not receive, and was not entitled to any interest in any of the real properties as part of the Settlement Agreement. In fact, the Agreement specifically provided that Jean Klempf was not entitled to any other interest in Foodonics assets beyond the purchase of shares described in the Settlement Agreement. Doc. 113, Ex. B.

On July 7, 2016, BAM Investment was formed as a Florida limited liability company. BAM Commercial and BAM Residential were formed as Florida limited liability companies on September 9, 2016. From early 2017 through June 2018 (both before and after this action was filed, Jacques Klempf, Foodonics, Foodonics Equities, or Foodonics Equities II titled certain real property in the name of either BAM Residential or BAM Commercial).[1]

None of the real properties were transferred outside of Foodonics. Specifically,

---

[1] The Trust contends that the BAM Companies were formed earlier in 2016 on a date that occurred after the Settlement Agreement. For purposes of this Motion, the distinction is largely irrelevant.

Foodonics is the one hundred percent (100%) owner of BAM Investment which is, in-turn, the one hundred percent (100%) owner of both BAM Residential and BAM Commercial. The BAM Companies and their holdings are assets of Foodonics. None of the real properties have changed ownership outside of Foodonics.

The BAM Companies were formed in order to hold Foodonics' residential and commercial real properties. Foodonics is no longer in the egg producing business and the Properties constitute Foodonics' assets. As a result of the titling of the Properties in the name of the BAM Companies, Foodonics' overall assets have increased rather than decreased.

The BAM Companies are not the successors of Foodonics and no "de facto merger" has occurred. Foodonics remains a viable legal entity. It owns and holds the BAM Companies and their assets. The BAM entities are wholly owned assets of Foodonics, not "successors." Foodonics and the BAM Companies believe that the Trust is not entitled to recover any damages in this case and that the claims asserted are without merit. However, Counterclaim Defendants understand and do not contest that should the Trust obtain a judgment in this action against Foodonics, the BAM Companies' assets would be subject to such judgment from a collection standpoint.

**D.    The Trust's Claims.**

Foodonics filed this action on September 6, 2017. Doc. 1. In the two successive years, the parties have produced hundreds of thousands of documents and engaged in significant discovery efforts. This case is currently set for trial in early 2020. As detailed below, despite knowledge that the BAM Companies were not proper defendants and that the Trust's anticipated claims were without merit, the Trust filed the Amended Counterclaim against the BAM Companies at the latest possible date for the addition of new parties. These actions were particularly improper

given that the majority of the events that are alleged to support the claims against the BAM Companies did not actually involve the BAM Companies and also occurred years ago and in most cases well before this lawsuit was originally filed in 2017.

The crux of the Amended Counterclaim, as with the original Counterclaim, is an action seeking $23,000,000 in monetary damages that the Trust believes it should have received in the Cal-Maine sale. See Doc. 113, at ¶¶ 73; 85; Count III (prayer for relief); 111, 120; 128; 134; Count VIII (prayer for relief); 150; 154; 161. Two other causes of action seek monetary damages relating to an IRS audit (Counts XII and XIII). The Trust contends that Foodonics and Jacques Klempf either made misrepresentations at the time the Settlement Agreement was executed or that they should have disclosed material information at that time and failed to do so. This same claim is pled in numerous forms – breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, and securities claims. *None of these allegations or claims relate to anything that the BAM Companies did or did not do.*

In the main body of the Amended Counterclaim, the sole allegation asserted that relates to the BAM Companies (other than references to their status as limited liability companies) states:

> The BAM entities are Foodonics' successor entities because they have substantially similar ownership, share the same principal address, operate as family businesses, and identify Jacques Klempf as the manager. As successor entities, the BAM Entities are liable, jointly and severally, for any judgment entered against Foodonics in this litigation under the 'mere continuation of business' and 'de facto merger' legal doctrines (Jacques Klempf, Foodonics and the BAM Entities are collectively referred to as the 'Foodonics Defendants.'

Doc. 113, at ¶ 8.

The Amended Counterclaim makes no further reference to the BAM Companies before Count XIV of the Amended Counterclaim. The BAM Companies are not referenced in these

claims for a simple reason – the BAM Companies did not exist at the time the Settlement Agreement was executed, and they were not a party to that agreement. Moreover, the BAM Companies did not interact (and have never interacted) with Laura Klempf, the Trust, or Cal-Maine. The Trust admits that the BAM companies were formed in 2016 and that Jacques Klempf was not listed as a manager of any of the BAM Companies until after the Cal-Maine sale. Counts I – IV and VI – XIII appear to be asserted against the BAM Companies solely because the Trust has defined the "Foodonics Defendants" to include the BAM Companies. The current claims relate solely to a concern about the future ability of the Trust to collect on a judgment.

**E.     Counts XIV and XV of the Amended Counterclaim.**

In Count XIV of the Amended Counterclaim, the Trust asserts a cause of action against the "Foodonics Defendants" (Jacques Klempf, Foodonics, and the BAM Companies) pursuant to the Florida Uniform Fraudulent Transfers Act (Fla. Stat. 726.01 *et. seq.*). The Trust alleges that in anticipation of this lawsuit, the Foodonics Defendants:

a.     Formed the BAM Companies in 2016;

b.     Added Jacques Klempf as Manager of the BAM Companies eight (8) days after the Cal-Maine sale;

c.     Transferred properties from Jacques Klempf, Foodonics, Foodonics Equities, or Foodonics Equities II, to BAM Commercial or BAM Residential on various dates between February 2017 to June 4, 2018 via warranty deed or quit claim deed;

d.     Through these alleged transfers, disposed of Foodonics' assets while still retaining control over them; and

e.     Transferred the properties for less than their value.

Doc. 113, at ¶¶ 191-192.

The Trust seeks an order: setting aside the transfers; compelling Foodonics, Jacques Klempf, and the BAM Companies to turn over the real properties "and its proceeds" to the Trust;

award a money judgment for all real properties or proceeds that cannot be transferred; and awarding temporary and injunctive relief preventing the encumbrance or further transfer of the real properties. Id. at 193. The Trust filed Lis Pendens as to each of these real properties which is the subject of a separate Motion to Dissolve filed contemporaneously herewith.

Count XV seeks a declaratory judgment as to "successor liability of the BAM entities." Doc. 113, at ¶¶ 198-206. The Trust seeks a declaration that the BAM companies are jointly and severally liable for all debts of Foodonics, including all judgments arising in this action. Without any factual allegations, the entire claim is based upon nearly the exact same allegation asserted in multiple locations in the Amended Counterclaim that states:

> As compared to Foodonics, the successor entities each have substantially similar membership, share the same principal address, operate as family businesses, and list Jacques Klempf as the manager. As such, Foodonics cannot avoid liability and should be responsible, jointly and severally, for any judgment entered against Foodonics in connection with its conduct in the Redemption Sale merely by wearing a different hat. As successor entities, each of the BAM Entities should be responsible, jointly and severally, for any judgment entered against Foodonics with its conduct in the Redemption Sale.

Doc. 113, at ¶ 202.

## SUMMARY OF THE ARGUMENT

As detailed below, Counts I through IV and VI through XIII are facially meritless as they relate to the BAM Companies. None of these claims mention the BAM Companies. The claims are asserted against the BAM Companies solely by virtue of the Trust's inartful definition of the "Foodonics Defendants" to include the BAM Companies. Therefore, it is unclear whether the Trust even intended to assert these claims against the BAM Companies. In any event, as detailed below, these claims should be dismissed, with prejudice, because the BAM Companies did not exist at the time the relevant representations were allegedly made and were not a party to the Settlement Agreement; they did not interact with the Trust or Laura Jean Klempf; and they did

not sell assets to Cal-Maine and never interacted with that entity.

As to Count XIV, the Trust's unlawful transfer claim, the Trust does not allege that BAM Investment received or owns any of the properties at issue. BAM Investment should be dismissed from this action, with prejudice, on that basis alone. Moreover, the claim should be dismissed, in its entirety, with prejudice, because the Trust cannot allege that a "transfer" occurred. The BAM Companies are owned in full by Foodonics. Although a restructuring has occurred in name, Foodonics and Klempf have not transferred these real properties at all. They are assets of BAM Commercial and BAM Residential, which, in-turn, are assets of Foodonics.

Count XV, the Trust's Declaratory Judgment claim, should likewise be dismissed, with prejudice. The BAM Companies are not the "successor" to Foodonics and there has been no merger. The BAM Companies are owned by, and are assets of Foodonics. Foodonics is a viable legal entity. The BAM Companies' assets are the assets of Foodonics. The Trust does not even sufficiently allege that there is a present controversy or dispute that may support this claim. Accordingly, Count XV is without merit.

## MEMORANDUM OF LAW

### 1.     Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted" including if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1952-54 (U.S. 2009). Under Twombly, "a plaintiff s obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief beyond a speculative level."

Twombly, 127 S. Ct. at 1964-65. Where a plaintiff has not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 1974. "Pleadings must be something more than an ingenious academic exercise in the conceivable." Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc); Harrison v. Benchmark Elec. Huntsville. Inc., 593 F.3d 1206, 1214 (11th Cir. 2010) (a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level.")."

## 2.  Counts I – IV and VI – XIII Are Baseless and Should be Dismissed, with Prejudice.

### i.  Count I - Breach of Fiduciary Duty of Disclosure.

Count I is premised upon Jacques Klempf and Foodonics' alleged failure to disclosure material information at the time the Settlement Agreement was being negotiated. Doc. 113, at ¶¶ 60-73. Specifically, the Trust alleges that Jacques Klempf owed Jean Klempf a fiduciary duty to disclose such information before she voluntarily sold her shares on December 31, 2015. Id. at ¶ 69. The BAM Companies are not referenced individually in Count I and are sued solely because the Trust defined the "Foodonics Defendants" (the parties being sued) to include the BAM Companies.

Under Florida law, the elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damages proximately caused by that breach. Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002). Sutherlin v. Wells Fargo Bank N.A., 767 F. App'x 812, 819 (11th Cir. 2019). "A cause of action for a breach of fiduciary duty based on a failure to disclose requires the same elements as a cause of action for misrepresentation, namely, that the withheld information was material, that the defendant intentionally withheld the information from the plaintiff, that plaintiff justifiably relied on the defendant, and that plaintiff suffered damages." Banco de La Republica de Colombia v.

<u>Bank of New York Mellon</u>, No. 10 CIV. 536 AKH, 2013 WL 3871419, at *11 (S.D.N.Y. July 26, 2013).

As discussed herein, as of the date of the Settlement Agreement, the BAM Companies had not been formed and did not yet exist. They were not parties to the Settlement Agreement. The BAM Companies did not owe Jean Klempf a fiduciary duty of any kind, nor does the Trust allege that such a duty was owed. The BAM Companies did not interact with Jean Klempf and could not have done so before they legally existed. The Trust has not cited, and cannot cite, any authority that allows the Trust to name the BAM Companies as party defendants to this claim (as with Counts I-IV and VI to XIII) simply because the Trust contends that the BAM Companies' assets are subject to collection efforts after a potential judgment. As with essentially all of the other claims asserted in the Amended Counterclaim, Count I is without merit and should be dismissed as to the BAM Companies, with prejudice.

**ii.    Count II - Breach of Fiduciary Duty of Loyalty.**

In Count II, the Trust contends that Jacques Klempf and Foodonics owed a fiduciary duty to Jean Klempf and breached this duty by withholding material information from Ms. Klempf at the time the Settlement Agreement was executed. Doc. 113, at ¶¶ 76-85. The Trust does not allege that the BAM Companies owed a duty or withheld information. The BAM Companies are not cited or discussed in this Count other than by reference as part of the broadly defined "Foodonics Defendants."

Section 607.0830, Florida Statutes, governs the duties that *directors owe to shareholders*, which includes a duty of loyalty. Simply stated, Count II relates to the duties that Jacques Klempf purportedly owed to Jean Klempf, who was a shareholder of Foodonics at the time. As previously stated, the BAM Companies had not been formed and did not interact with Jean

Klempf. The BAM Companies were not directors of Foodonics. Therefore, Count II should be dismissed, with prejudice.

### iii.     Count III – Florida Securities Investor Protection Act.

In Count III, the Trust contends that Jacques Klempf and Foodonics violated Florida's Securities Investor Protection Statute ("FSIPA") by making false statements or engaging in deception as part of the process of making an offer to purchase Jean Klempf's stock in Foodonics. Doc. 113, at ¶¶ 88-101.

Florida's statutory requirements under Section 517.301, Florida Statutes are identical to Rule 10b–5, except as to the scienter requirement. Gochnauer v. A.G. Edwards & Sons, Inc., 810 F.2d 1042, 1046 (11th Cir. 1987). *The statute requires that a plaintiff be in privity with the seller before liability pursuant to FSIPA will be imposed*. E.F. Hutton & Co. v. Rousseff, 537 So. 2d 978, 981 (Fla. 1989); In re Checkers Sec. Litig., 858 F. Supp. 1168, 1180–81 (M.D. Fla. 1994). "To maintain an action under the FSIPA, 'buyer/seller' privity is required." Beltram v. Shackleford, Farrior, Stallings & Evans, 725 F. Supp. 499, 500 (M.D. Fla. 1989); In re Checkers, 858 F. Supp. at 1180–81 (granting motion to dismiss).

It is clear that because the BAM Companies did not exist at the time Jean Klempf sold her shares and because the BAM Companies never purchased any shares, there is no privity and this claim should be dismissed, with prejudice.

Moreover, Section 517.301 prohibits certain conduct in connection with the offer, sale, or purchase of any investment. For the same reasons identified herein, the BAM Companies clearly did not, and could not, have engaged in any fraud or other scheme with respect to the sale of shares that the BAM Companies were not involved with and which occurred before they were formed. Therefore, Count III should be dismissed with prejudice. The BAM Companies further

request an award of their reasonable attorneys' fees incurred in defending this claim pursuant to Section 517.211(6), Florida Statutes.

### iv.    Count IV – Violation of Section 10 and Rule 10(b)(5).

In Count IV, the Trust similarly alleges that in connection with the purchase of Jean Klempf's shares, Foodonics and Jacques Klempf violated the Federal Securities Act by employing a scheme to defraud and making untrue statements of material fact. Doc. 113, at ¶¶ 104-113.

To state a claim for a violation of § 10(b), a plaintiff must allege: (1) the existence of a material misrepresentation (or omission); (2) made with scienter; (3) in connection with the purchase or sale of any security; (4) on which the plaintiff relied; (5) which was causally connected to; (6) the plaintiff's economic loss. Dura Pharm. Inc. v. Broudo, 544 U.S. 336, 341–42 (2005); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1281 (11th Cir. 1999). Because Rule 10b–5 sounds in fraud, the plaintiff must plead the elements of its violation with particularity. Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008). When a § 10(b) claim is brought by a private litigant, it is subject to the PSLRA, under which a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2); Thompson v. RelationServe Media, Inc., 610 F.3d 628, 633–34 (11th Cir. 2010).

Count IV is devoid of a single reference to the BAM Companies other than the Trust's statement that it is asserted against the Foodonics Defendants. Not only has the Trust failed to satisfy any of the heightened pleading requirements, this claim fails under the facts alleged. The BAM Companies never interacted with Jean Klempf and did not exist during the relevant timeframe. Clearly, the BAM Companies are not subject to liability under this or any other claim

relating to Jean Klempf's alleged damages.

     **v.     Fraud by Omission.**[2]

     In Count VI, the Trust contends that Jacques Klempf and Foodonics concealed and failed to disclose material facts necessary for Jean Klempf and the Trust to make an informed decision regarding the sale of her shares. Doc. 113, at ¶¶ 113-128.

     "Fraud by omission is common law fraud by means of a failure to disclose a material fact—rather than by means of an affirmative misrepresentation—in the face of a duty to disclose that fact to the plaintiff. [I]n Florida, the elements of a cause of action for fraudulent concealment or fraud by omission are:

1. The defendant concealed or failed to disclose a material fact;
2. The defendant knew or should have known that the material fact should be disclosed or not concealed;
3. The defendant acted in bad faith;
4. The defendant knew that by concealing or failing to disclose the material fact, the plaintiff would be induced to act;
5. The plaintiff suffered damages as a result of the concealment or failure to disclose; and
6. The defendant had a duty to speak."

In re Palm Beach Fin. Partners, L.P., 517 B.R. 310, 334–36 (Bankr. S.D. Fla. 2013) (citing R.J. Reynolds Tobacco Co. v. Martin, 53 So. 3d 1060, 1068–69 (Fla. 1st DCA 2010); Friedman v. Am. Guardian Warranty Servs., Inc., 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003); Gutter v. Wunker, 631 So. 2d 1117, 1118 (Fla. 4th DCA 1994)). "The common thread running through each scenario which gives rise to a duty to speak is that both the plaintiff and the defendant must have been parties to a transaction or must have had some kind of preexisting fiduciary relationship." In re Palm Beach, 517 B.R. at 334–36.

     As with each of the preceding counts, this claim is without merit. The BAM Companies did not interact with or contract with Jean Klempf and they did not exist at the time the alleged

---

[2] Count V is asserted solely against Jacques Klempf and it has therefore not been addressed herein.

omission of Foodonics and Jacques Klempf occurred. The Amended Counterclaim does not allege that the BAM Companies were involved with any fraud at the time the Trust's shares were sold. Therefore, Count VI should be dismissed, with prejudice.

  vi.  **Count VII – Negligent Misrepresentation.**

Count VII is based upon an essentially identical premise as the other claims – that Foodonics and Jacques Klempf concealed or failed to disclosure material information in connection with the purchase of Jean Klempf's shares. Doc. 113, at ¶¶ 131-34. To state a claim for negligent misrepresentation, the plaintiff must demonstrate that the defendant made a statement of fact which was untrue. See Souran v. Travelers Ins. Co., 982 F.2d 1497, 1503 (11th Cir.1993); Jaffe v. Bank of Am., N.A., 667 F. Supp. 2d 1299, 1320 (S.D. Fla. 2009), aff'd, 395 F. App'x 583 (11th Cir. 2010).

Inasmuch as BAM never made any statement to Jean Klempf of any kind, this claim should be dismissed, with prejudice.

  vii.  **Counts VIII, X, XI, and XII – Alleged Breaches of the Settlement Agreement.**

In Counts VIII, X, XI, and XII, the Trust asserts causes of action against the Foodonics Defendants for various alleged breaches of the Settlement Agreement. It is axiomatic that the Trust cannot assert breach of contract claims against entities that were not parties to the Settlement Agreement. Walton Const. Co., LLC v. Corus Bank, No. 4:10-CV-137-SPM-WCS, 2011 WL 2938366, at *6 (N.D. Fla. July 21, 2011) ("Since the Starwood Defendants are not a party to the Contract, they cannot breach the Contract. Therefore, Plaintiff's Complaint also fails to survive Defendants' Motion to Dismiss against the Starwood Defendants.").

The BAM Companies did not exist at the time the Settlement Agreement was executed and are not parties to that agreement. The BAM Companies had no obligations under the

Settlement Agreement and could not have breached it. Even if the BAM Companies had any obligations under the Settlement Agreement, which they did not, the Trust does not even allege that the BAM Companies did anything to breach the Settlement Agreement. Therefore, Counts VIII, X, XI, and XII should be dismissed, with prejudice, as to the BAM Companies.

### viii.  Count IX – Fraudulent Misrepresentation.

In Count IX of the Amended Counterclaim, the Trust alleges that in 2015, Jacques Klempf and Foodonics represented to Jean Klempf that they would not seek to sell the company for "a good amount of years." Doc. 113, at ¶¶ 145-50. The Trust contends that this statement was fraudulent. Count IX is devoid of any allegations that the BAM Companies participated in this alleged statement. Rather, the BAM Companies did not exist in 2015 and never interacted with Jean Klempf or the Trust. Therefore, this cause of action should be dismissed, with prejudice.

### ix.  Count XIII - Promissory Estoppel.

In Count XIII, the Trust contends that the Foodonics Defendants had an obligation under the Settlement Agreement to indemnify the Trust for IRS tax liability from a 2012 Audit of Foodonics. The Trust then purports to recount recent discussions regarding this alleged contractual obligation. The Trust asserts a cause of action for promissory estoppel. Doc. 113, at ¶¶ 176-88.

The basic elements of promissory estoppel are set forth in Restatement (Second) of Contracts § 90, which states:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

W.R. Grace & Co. v. Geodata Servs., Inc., 547 So. 2d 919, 924 (Fla. 1989).

The BAM Companies supposed involvement with the 2012 Tax Audit discussions is not alleged in the Amended Counterclaim. Moreover, the BAM Companies were not parties to the Settlement Agreement and did not make any representations in that document. The BAM Companies have never spoken to Jean Klempf or the Trust regarding any audit funds, nor does the Trust allege that this occurred. Therefore, Count XIII should be dismissed, with prejudice, as to the BAM Companies.

**3.     Count XIV (Fraudulent Transfer) Should be Dismissed, With Prejudice.**

As discussed infra, Count XIV is the first claim in which the Trust makes specific allegations regarding the BAM Companies. The Trust contends that the titling of seventeen properties in the name of BAM Residential and BAM Commercial constitute fraudulent transfers.

Section 726.105, Florida Statutes, governs fraudulent transfer claims. That section states that "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

1.  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

2.  Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

(1) In determining actual intent under paragraph (1)(a), consideration may be given, among other factors, to whether:

(a) The transfer or obligation was to an insider.
(b) The debtor retained possession or control of the property transferred after the transfer.
(c) The transfer or obligation was disclosed or concealed.
(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(e) The transfer was of substantially all the debtor's assets.
(f) The debtor absconded.
(g) The debtor removed or concealed assets.
(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Fla. Stat. § 726.105. "While a single badge of fraud may amount only to a suspicious circumstance, a combination of badges will justify a finding of fraud." In re Aqua Clear Tech., 361 B.R. 567, 580 (Bankr. S.D. Fla. 2007) (citing United States v. Fernon, 640 F.2d 609, 613 (5th Cir.1981)). The presence of several badges of fraud gives rise to a rebuttable inference of fraud. Id. (citing Advest, Inc. v. Rader, 743 F. Supp. 851, 854 (S.D. Fla. 1990)).

"The elements required to prove a fraudulent transfer include: (1) a creditor that was defrauded; (2) a debtor who intended to defraud; and (3) a conveyance of the property which could have been applicable to the payment of the debt due." Huntsman Packaging Corp. v. Kerry Packaging Corp., 992 F. Supp. 1439, 1446 (M.D. Fla. 1998); In re Bendetti, 131 F. App'x 224, 227 (11th Cir. 2005).

As an initial matter, despite suing BAM Investment, the Amended Counterclaim is devoid of a single allegation that BAM Investment has ever taken any action that damaged the Trust. The Trust does not allege that any of the properties identified in Count XIV were transferred to BAM Investment. Count XIV should therefore be dismissed, with prejudice, as to

BAM Investment.

Count XIV is also without legal or factual merit. As the Trust alleges, the BAM Companies were formed as Florida limited liability companies in 2016. From early 2017 through June 2018 (both before and after this action was filed, Jacques Klempf, Foodonics, Foodonics Equities, or Foodonics Equities II titled the properties identified in the Amended Counterclaim in the name of either BAM Residential or BAM Commercial.

These properties were not transferred outside of Foodonics. Specifically, Foodonics is the one hundred percent (100%) owner of BAM Investment which is, in-turn, the one hundred percent (100%) owner of both BAM Residential and BAM Commercial. The BAM Companies and their holdings are assets of Foodonics. None of the Properties have changed ownership outside of Foodonics.

The BAM Companies were formed in order to hold Foodonics' residential and commercial real properties. Foodonics and the BAM Companies believe that the Trust is not entitled to recover any damages in this case and that the claims asserted are without merit. However, Counterclaim Defendants understand and do not contest that should the Trust obtain a judgment in this action against Foodonics, the BAM Companies' assets would be subject to such judgment from a collection standpoint. However, as more fully detailed in the BAM Companies' Motion to Discharge Lis Pendens, the Trust is not entitled to encumber or seek the proceeds from the properties at issue in any way before a judgment is entered.

As to 815 Ponte Vedra Blvd., this property was purchased by Foodonics well before the Agreement was executed and the Trust has no interest or rights in that property. The 815 Ponte Vedra Blvd. property was titled in the name of Jacques Klempf's Living Trust in repayment of a debt that Foodonics owed to Jacques Klempf before the Trust even asserted its claims.

The Trust is well aware that Foodonics owns the BAM Companies. It is clear that the Trust cannot satisfy a single element or factor in the unlawful transfer statute. The BAM Companies should never have been named as parties in the Amended Counterclaim. The BAM Companies respectfully request that this Court dismiss Count XIV, with prejudice.

xi.     **Count XV – Declaratory Action as to Successor Statute Under 28 U.S.C. § 2201.**

In Count XV of the Amended Counterclaim, the Trust seeks a declaration that the BAM Companies are successor entities to Foodonics and that the BAM Companies are liable for any judgment entered against Foodonics. The Trust alleges:

> As compared to Foodonics, the successor entities each have substantially similar membership, share the same principal address, operate as family businesses, and list Jacques Klempf as the manager. As such, Foodonics cannot avoid liability and should be responsible, jointly and severally, for any judgment entered against Foodonics in connection with its conduct in the Redemption Sale merely by wearing a different hat. As successor entities, each of the BAM Entities should be responsible, jointly and severally, for any judgment entered against Foodonics with its conduct in the Redemption Sale.

Doc. 113, at ¶ 202.

"Generally, Florida law does not impose the liabilities of a predecessor corporation on a successor corporation unless: (1) the successor expressly or impliedly assumes obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor." Centimark Corp. v. A to Z Coatings & Sons, Inc., No. 6:05-CV-136-ORL-DAB, 2007 WL 4557247, at *5 (M.D. Fla. Dec. 21, 2007), aff'd, 288 F. App'x 610 (11th Cir. 2008); Bernard v. Kee Mfg. Co., Inc., 409 So. 2d 1047, 1049 (Fla. 1982).

A continuation of business resulting in liability of the successor corporation for its predecessor's debts occurs when the successor corporation is merely a continuation or

reincarnation of the predecessor corporation under a different name. <u>Amjad Munim, M.D., P.A. v. Azar</u>, 648 So. 2d 145, 153–54 (Fla. 4th DCA 1994) (citing <u>Bud Antle, Inc. v. E. Foods, Inc.</u>, 758 F.2d 1451, 1458 (11th Cir. 1985)).

"A de facto merger occurs where one corporation is absorbed by another without formal compliance with the statutory requirements for a merger," and may be present where there is "a continuity of the selling corporation evidenced by such things as the same management, personnel, assets, location and stockholders." <u>Lab. Corp. of Am. v. Prof'l Recovery Network</u>, 813 So. 2d 266, 270 (Fla. 5th DCA 2002); <u>Orlando Light Bulb Serv., Inc. v. Laser Lighting and Elec. Supply, Inc.</u>, 523 So. 2d 740, 743, n. 1 (Fla. 5th DCA 1988). "The bottom-line question is whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other." <u>Id.</u> (citation omitted); <u>In re Metro Sewer Servs., Inc.</u>, 374 B.R. 316, 323 (Bankr. M.D. Fla. 2007)

"To find a de facto merger there must be continuity of the selling corporation evidenced by the same management, personnel, assets and physical location; a continuity of the stockholders, accomplished by paying for the acquired corporation with shares of stock; a dissolution of the selling corporation; and assumption of the liabilities." <u>Amjad</u>, 648 So. 2d at 153–54.

"The concept of continuation of business arises where the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name." <u>Id.</u>; <u>Bud Antle</u>, 758 F.2d 1451 at 1458. The "purchasing corporation is merely a 'new hat' for the seller, with the same or similar entity or ownership." <u>Id.</u> The key element of a continuation is a common identity of the officers, directors and stockholders in the selling and purchasing corporation. <u>Id.</u>

Here, there has been no "de facto merger," nor are the BAM Companies the successors of Foodonics. The BAM Companies were formed as wholly owned assets of Foodonics in order to hold residential and commercial properties (the basis for the names BAM Commercial and BAM Residential). After the Cal-Maine sale, real property constituted the assets of Foodonics and due to transfers from Jacques Klempf individually, Foodonics' assets have increased, not decreased.

There has been no de facto merger. That inquiry does not apply where a parent company simply owns other companies and no entity has been dissolved or "merged." There has not been a dissolution, purchase or sale of shares, or other indicia of merger at all, nor does the Trust allege that this has occurred. The continuation or successor doctrine likewise has no application here. The Trust failed to allege that Foodonics' operations have not continued or that it does not wholly own the BAM Companies. Where the alleged predecessor company is an ongoing business that owns the alleged "successor" and all entities continue to operate in this arrangement, the doctrine is facially inapplicable.

Finally, the Trust's allegation that there is a "present controversy" on this matter is false. The Trust fails to allege the BAM Companies or Foodonics' position on the issue of the BAM Companies' responsibility for any judgment entered against Foodonics. Simply alleging that "the Trust and the Foodonics Defendants have an adverse and antagonistic interest in the subject matter" is misleading. The BAM Companies are not the successors to Foodonics and there has been no merger or unlawful transfer. However, *as assets of Foodonics*, the BAM Companies are subject to a judgment that may or may not be entered against Foodonics. The Trust does not allege that it has ever inquired as to the Foodonics Defendants' position on this issue.

For all of the foregoing reasons, Count XV should be dismissed, with prejudice.

## Conclusion

For the foregoing reasons, Counterclaim Defendants, the BAM Companies respectfully request that this Court enter an Order dismissing this action as to the BAM Companies, with prejudice.

Dated this 5th day of September, 2019

Respectfully submitted,

By: /s/ Daniel K. Bean
Daniel K. Bean, Esq.
Florida Bar No. 15539
Andrew J. Steif, Esq.
Florida Bar No. 0042475
ABEL BEAN LAW P.A.
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202
Telephone: (904) 516-5486
*dbean@abelbeanlaw.com*
*asteif@abelbeanlaw.com*
***Attorneys for Counterclaim Defendants,
the BAM Companies***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was served electronically filed with the Clerk of the Court through the Court's CM/ECF electronic notification system and furnished by email delivery to JAMES H. POST, ESQ., MICHAEL E. DEMONT, ESQ.. and R. CHRISTOPHER DIX, ESQ. *(jpost@smithhulsey.com, mdemont@smithhulsey.com, cdix@smithhulsey.com)*, Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202 *(Attorneys for Defendant/Counterclaim Plaintiffs)* and S. GRIER WELLS, ESQ., JOHN M. BRENNAN, ESQ., and MICHAEL R. SANTANA, ESQ. *(grier.wells@gray-robinson.com, jay.brennan@gray-*

*robinson.com, Michael.santana@gray-robinson.com*), 50 North Laura Street, Suite 1100, Jacksonville, Florida 32202 (*Attorneys for Plaintiff/Counterclaim Defendant Foodonics and Counterclaim Defendant Jacques Klempf*) this 5th day of September, 2019.

/s/ Daniel K. Bean
Attorney