UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| FOODONICS INTERNATIONAL, INC., a Florida corporation,<br><br>　　Plaintiff,<br><br>v.<br><br>DINA KLEMPF SROCHI, as Trustee of the LAURA JEAN KLEMPF REVOCABLE TRUST, a Georgia trust,<br><br>　　Defendant.<br><br>DINA KLEMPF SROCHI, as Trustee of the LAURA JEAN KLEMPF REVOCABLE TRUST, a Florida trust, and DENNIS L. BLACKBURN, as Assistant Trustee of the JEAN KLEMPF TRUST,<br><br>　　Counterclaim Plaintiffs,<br><br>v.<br><br>FOODONICS INTERNATIONAL, INC., a Florida corporation, and KEVIN JACQUES KLEMPF,<br><br>　　Counterclaim Defendants. | Case No. 3:17-cv-1054-J-32JRK |

**TRUST'S MOTION TO COMPEL PRODUCTION OF
NON-PRIVILEGED DOCUMENTS RELATING TO
<u>SHELDRICK, MCGEHEE & KOHLER AND JESS WRIGHT</u>**

Counterclaim plaintiffs, Dina Klempf Srochi, as Trustee of the Laura Jean

Klempf Revocable Trust, and Dennis L. Blackburn, as Assistant Trustee of the Jean

Klempf Trust (the "Jean Klempf Trust" or the "Trust") move the Court to compel the production of non-privileged communications and documents withheld from production by Foodonics International, Inc. ("Foodonics"), Jacques Klempf (collectively, the "Foodonics Parties"), GrayRobinson, P.A. ("GrayRobinson") and Sheldrick, McGehee & Kohler, LLC ("SMK"). The non-privileged documents and communications are identified in Exhibit 1 attached (the "Withheld SMK Information").

## Background

**A.   SMK is a key fact witness in this case.**

1.   On December 21, 2015, Jean Klempf and her Trust entered into a Settlement and Redemption Agreement with the Foodonics Parties (the "Redemption Agreement"), by which the Foodonics stock owned by the Jean Klempf Trust was to be redeemed by Foodonics for the purchase price of $9,418,500, or approximately $3.16 per share (the "Redemption Sale").

2.   Jean Klempf expected the Foodonics Parties to provide her with full disclosure of all material facts regarding the Redemption Sale based, in part, on their fiduciary duties and their stated assurances and agreement that she would be provided the adequate and full consideration for her shares of company stock based on "an appraisal fairly conducted according to usual and customary valuation practices." (Redemption Agreement at p. 2).

3.   On December 16, 2015, Jean Klempf was provided by the Foodonics Parties with a valuation report prepared by SMK which stated that the total fair market

value of the Foodonics stock owned by the Jean Klempf Trust was $9,533,972 which, in turn, was based on SMK's 100% equity valuation of Foodonics of $35,315,000.

4. A closing on the Redemption Agreement was held on December 31, 2015 (the "Redemption Sale"). As a result, Jacques Klempf became the owner of 98.55% of all issued Foodonics stock.

5. On October 16, 2016, less than 11 months later, Jacques Klempf sold substantially all of Foodonics' egg producing assets to Cal-Maine Foods, Inc. ("Cal-Maine") for $71,643,000, or $10.97 per share (the "Cal-Maine Sale") – a price more than double SMK's valuation of Foodonics.

**B.      GrayRobinson's objections to the production of SMK documents**

6. On June 23, 2017, counsel for the Trust provided counsel for the Foodonics Parties with notice of the Trust's claims relating to the Redemption Sale and a proposed settlement of those claims.

7. On September 6, 2017, Foodonics commenced this action by filing a preemptive declaratory judgment action and related claims.

8. Each of the parties in this action identified Jess Wright ("Wright") and SMK as fact witnesses likely to have discoverable information as to each of the party's claims or defenses. Copies of the Rule 26 Disclosures for Foodonics, Jacques Klempf and the Trust are attached as Exhibits 2, 3 and 4, respectively.

9. On March 2, 2018, the Trust served subpoenas for documents in this case on SMK and Wright (the "SMK Subpoenas"), copies of which are attached as Exhibits 5 and 6.

10. On April 23, 2018, Foodonics served objections to the SMK Subpoenas (the "Foodonics' Objections to SMK Information"), a copy of which is attached as Exhibit 7. The Foodonics' Objections to SMK Information asserted work product privilege as to a "draft report" dated October 19, 2017 (the "SMK Draft Report") and other Withheld SMK Information (Exhibits 1 and 7).

11. On August 30, 2018, the Foodonics Parties produced 44,763 electronically stored documents to the Trust in a document dump which documents, according to counsel for the Foodonics Parties, were produced without review in order to avoid legal fees (the "August 30 Production").

12. On September 7, 2018, after a cursory review of the August 30 Production, the Trust notified Foodonics that some of the documents in the August 30 Production may have been inadvertently produced, including the SMK Draft Report (identified as FOODONICS_ESI-10102151 - FOODONICS_ESI-10102154).

13. On September 18, 2018, Foodonics demanded the return of the SMK Draft Report as an inadvertently produced document.

14. On September 27, 2018, in accordance with the Discovery Agreement and 502(d) Order entered in this case (Doc. Nos. 16-3 and 19), the Trust filed a notice with the Court which challenged the applicability of the privilege asserted by the Foodonics Parties with respect to the SMK Draft Report (Doc. No. 59) (the "Trust's Notice"), a copy of which is attached as Exhibit 8.

15. On October 5, 2018, the Foodonics Parties filed a response in opposition to the Trust's Notice which objected to the production of the SMK Draft Report based

4

on the work product doctrine and, for the first time, an alleged "non-testifying expert privilege" (the "Claw-Back Request"; Doc. No. 64).  The Claw-Back Request is attached as Exhibit 9.

16. On November 8, 2018, the Court entered an order authorizing the Trust, after further discovery, to file a motion to compel the production of the SMK Draft Report on or before October 15, 2019  (Doc. No. 77).

17. On October 2, 2019, this Court entered an order which provided that any case deadline that will expire in advance of the November 5, 2019 hearing will be reset at or following the hearing (Doc. 173).

## C. The Deposition of SMK and Wright

18. On October 22, 2019, the Trust took the deposition of Wright, individually and as the designated corporate representative of SMK (the "SMK/Wright Depo.").

19. At the deposition, Wright testified that SMK had **not** been engaged by GrayRobinson as either a consulting expert or testifying expert in this case:

> Q. Have you been hired as either a consulting expert or a testifying expert by Gray Robinson in this case?
>
> A. No.
>
> Q. Have you been a testifying expert for Gray Robinson in any case?
>
> A. I have not.
>
>> SMK/Wright Depo. at 247 (Exhibit 10).

5

20. Wright also testified that on November 16, 2016, GrayRobinson contacted SMK for the purpose of helping to reconcile (i) SMK's valuation of Foodonics ($35 million) for the redemption transaction with (ii) the price paid by Cal-Maine for the Foodonics assets ($72 million) (SMK/Wright Depo. at 244-246; Exhibit 22 to the SMK/Wright Depo.[1] (Exhibits 9 and 10)).  This deposition testimony was directly contrary to GrayRobinson's representations to the Court that it engaged SMK to conduct a reconciliation following receipt of a "threatened complaint [on] 7/25/17" (Exhibits 7 and 9).  Therefore, according to Wright and as admitted by GrayRobinson at the deposition, GrayRobinson had actually contacted Wright more than **seven months before receipt of the "threatened complaint"** to conduct the requested reconciliation due to possible IRS gift tax issues:

> "MR. POST:  And so the record is clear, this communication [the November 16, 2016 email from GrayRobinson to Jess Wright – Exhibit 10] is in fact the beginning of the communications by which [SMK] . . . ended up preparing the draft report, which has not been delivered to us [and] which is the subject of the claw back motion, correct?
>
> MR. WELLS:  That's correct."
>
> SMK/Wright Depo. at 246 (Exhibit 10).

---

[1] Exhibit 22 to the SMK/Wright Depo. (attached as Exhibit 11) is a November 16, 2016 email from James Nolan to Wright confirming that Wright's involvement at that time was "to get you briefed on the transaction so that you'll be able to help us reconcile the sales price and the appraisal price." (SMK/Wright Depo. at 244; Exhibit 22 to deposition).

Notably, this email itself had been improperly withheld as privileged by GrayRobinson in this case for more than a year and two months and was produced only after the Trust filed its Motion to Compel GrayRobinson to Produce Non-Privileged Documents on May 22, 2019 (Doc. 101).

6

**Memorandum of Law**

"The party asserting the privilege has the burden of proving the existence of the privilege." *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 630 F. Supp. 2d 1332, 1336 (M.D. Fla. 2007) (citing cases). In this case, the Withheld SMK Information should be produced to the Trust because:

1. the Withheld SMK Information is not protected by Rule 26(b)(4)(D)'s consulting expert exclusion nor Rule 26(b)(3)(A)'s work product doctrine; and

2. even if the Withheld SMK Information falls under either protection, exceptional circumstances (for the consulting expert exclusion) and substantial need (for work product) justify disclosure to the Trust.

A. **Consulting expert exclusion does not apply.**

Rule 26(b)(1) authorizes discovery of any matter relevant and proportional to the needs of the case. Rule 26(b)(4)(D) restricts—with an important exception below—a party from, "discover[ing] facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."

Rule 26(b)(4)(D) does not add a "privilege" atop the work product doctrine, but rather "prevent[s] the unfairness of counsel benefiting from an adversary's retention and financing of an expert." *See Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 189

(M.D. Tenn. 2014) (citing cases). This rule prohibits one party from forcing its opponent to do work for the party at the opponent's expense.

The consulting expert discovery exclusion, however, does not apply to an expert who has factual information regarding the transactions or occurrences that are part of the subject matter of the lawsuit. As the advisory committee noted when adopting Rule 26(b)(4): Subdivision (b)(4) "does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness." Fed. R. Civ. P. 26 advisory committee's note (1970).

In this case, the consulting expert discovery exclusion does not apply because:

1. Wright was not "retained or specifically employed . . . in anticipation of litigation or to prepare for trial." Instead, Wright's deposition testimony was that he had never been retained in this case by GrayRobinson as either a consulting expert or a testifying expert. (SMK/Wright Depo. at 247; Exhibit 10). For this reason alone, the Withheld SMK Information is not protected by Rule 26(b)(4)(D)'s consulting expert opinion.

2. In addition, Rule 26(b)(4)(D) does not apply because it has been known by all parties from the beginning of this dispute that Wright would be called as a fact witness at trial as reflected in the Rule 26(a) disclosures filed by the parties. See Exhibits 2, 3 and 4.

Specifically, Wright was and is an "actor or viewer" in this case with personal knowledge of key facts, including (i) whether Jean Klempf was provided full value for her shares of stock at the Redemption Sale and (ii) whether material information relating to the true value of Foodonics' assets was disclosed by the Foodonics Parties to Jean Klempf at the Redemption Sale. In addition, the Trust is entitled to discover the facts relating to Wright's understanding or explanation, if any, as to how his $35 million valuation of Foodonics for the redemption transaction was less than 50% of the sale price of Foodonics' assets to Cal-Maine only 11 months later. The Trust is also entitled to obtain the undisclosed information and documents from Wright prior to trial to determine whether Wright has any bias or prejudice towards one of the parties in this case. In short, Wright is an ordinary fact witness whose knowledge and information cannot be allowed to be provided to only one side of this dispute (the Foodonics Parties), but not with the other (the Trust).

Accordingly, the consultant expert exclusion of Rule 26(b)(4)(D) does not apply to Wright in this case.

B. **Work product doctrine does not apply.**

In *Hickman v. Taylor*, 329 U.S. 495, 511 (1947), the Supreme Court created the common law underpinnings that would become the work product doctrine. Twenty-three years later, the Supreme Court codified the doctrine in Rule 26(b)(3), which excepts from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."

Wright did not prepare the Withheld SMK Information "in anticipation of litigation or for trial," as evidenced by his deposition testimony that he was engaged to conduct a "reconciliation" for possible tax issues more than 7 months before the Trust "threatened" litigation (SMK/Wright Dep. At 244-245; Exhibit 10).  Therefore, the work product doctrine does not apply.

Moreover, even if the Foodonics Parties *did* intend to retain SMK as a consulting expert, they did so fully aware of SMK's role as a material fact witness. *Before* anticipating litigation, the Foodonics Parties used SMK to reconcile the redemption valuation with the sale price.  Wright's knowledge of that information in 2016, even if exchanged between Wright and counsel for the Foodonics Parties, cannot be shielded from disclosure because the potential for litigation did not arise until seven months later.

> [T]he work product doctrine does not protect discovery of the underlying facts of a particular dispute, even if a deponent's response to a particular factual question is based upon information provided by counsel.
>
> *Barrett Indus. Trucks, Inc. v. Old Republic Ins. Co.*, 129 F.R.D. 515, 518 (N.D. Ill. 1990) (citing *In re ContiCommodity Servs., Inc., Securities Litig.*, 123 F.R.D. 574, 577 (N.D. Ill. 1988)).

The Foodonics Parties' argument in this case is similar to the failed argument asserted by the plaintiff in *Evercare Co. v. 3M Co.*, No. 1:08-mc-42 (N.D. Ohio July 10, 2008), *aff'd*, 2008 WL 4137903, at *1 (N.D. Ohio Aug. 29, 2008) (attached as

Exhibit 12). In this false advertising case, the plaintiff based its advertising on testing from Chemsultants, and then—after anticipating litigation—plaintiffs retained Chemsultants as a litigation consultant. *Id.* at *2–3. Once subpoenaed, Chemsultants claimed privilege and work product over the materials it generated. The Court held, however, that Evercare had waived any entitlement to work product privilege because it knew that the purported consultant would likely be a fact witness in the case:

> It should have been clear to Evercare, prior to its decision to hire Chemsultants as a consultant, that Chemsultants would likely be a fact witness in this case. Thus, the choice to employ Chemsultants as a non-testifying trial consultant, if indeed that was Evercare's intent, is highly suspect.
>
> *Id.* at *14.
>
> The Court notes that Evercare has created the situation in which it now finds itself. **Evercare knew that Chemsultants was a fact witness in this case and could have gone to an independent consulting expert if it legitimately wanted assistance in preparing its case.** Thus, this situation was foreseeable and Evercare could have, but failed to take steps to avoid it. **Whatever hardship results from the instant circumstance is more fairly born by Evercare, who created it, than by 3M.**
>
> *Id.* at *16.
>
> Evercare's dissemination of otherwise privileged information to Chemsultants and subsequent selective disclosure to 3M, under the circumstances of this case, waives any entitlement to resist the motion by claiming work product privilege.
>
> *Id.* at * 15.

11

In this case, as in *Evercare*, because the Foodonics Parties knew that Wright would be a key fact witness, any purported privilege as a litigation consultant should be resolved in favor of discovery. *See also, Tampa Bay Water v. HDR Eng'g, Inc.*, No. 8:08-cv-2446-T-27TBM, 2010 WL 3394729, at *2 (M.D. Fla. Aug. 26, 2010) (citing *B.C.F. Oil Ref., Inc. v. Consol. Edison Co. of New York, Inc.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997)) (holding that, in evaluating work product for a hybrid consulting and testifying expert, "[a]ny ambiguity about whether the witness is serving in his capacity as testifying expert or litigation consultant must be resolved in favor of discovery").

The Foodonics Parties cannot shield SMK's knowledge and opinions developed as a fact witness to the underlying transaction by claiming—apparently without telling SMK—that they retained SMK as a litigation consultant. Rule 26(b)(3) does not apply.

**C. The Trust faces exceptional circumstances and has a substantial need meriting disclosure of alleged consulting expert materials and work product.**

**1. It is impossible, or at least impracticable, for the Trust to obtain the Withheld SMK Information without disclosure by SMK.**

Even if the Withheld SMK Information met the basic requirements for consulting protection by Rule 26(b)(4)(D), that rule removes from its protection materials for which "it is impracticable for the party to obtain facts or opinions on the same subject by other means." *See* Fed. R. Civ. P. 26(b)(4)(D)(ii).

As noted above, one of the important factual questions in this case is how SMK could have reached a $35 million valuation in connection with the redemption transaction considering the $72 million price paid by Cal-Maine just 11 months later. SMK has exchanged information with GrayRobinson, including the SMK Draft Report

12

which presumably explains how SMK's 2015 valuation could possibly be consistent with the price paid by Cal-Maine – this information is only available from SMK and/or GrayRobinson. The Trust cannot obtain this information from anyone other than Wright and GrayRobinson. In addition, the Trust needs this information to evaluate Wright's potential bias or prejudice as a fact witness in this case.

Accordingly, because it is impossible, or at least impracticable, for the Trust to obtain the Withheld SMK Information by any other means other than Wright as a purported consulting expert, the Court should compel the disclosure of the Withheld SMK Information to the Trust.

### 2. The Trust has a substantial need for the Withheld SMK Information which justifies disclosure in this case.

Even if the Withheld SMK Information met the basic requirements for work production protection, the Trust is also entitled to obtain the Withheld SMK Information pursuant to Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii) because (1) the requested materials are "otherwise discoverable," (2) the Trust "has a substantial need for the materials to prepare its case," and (3) the Trust "cannot, without undue hardship, obtain their substantial equivalent by other means."

The Withheld SMK Information has already been collected by GrayRobinson and SMK and, therefore, is "otherwise discoverable" because the burden of production will not outweigh the benefit, applying Rule 26(b)(1)'s proportionality factors.

In addition, for the same reasons as set forth above, the Trust has substantial need of the Withheld SMK Information and no other means of obtaining that

13

information because no one other than the Foodonics Parties, GrayRobinson and SMK has possession of that unique information.

Accordingly, the Court should find that the Withheld SMK Information is not protected by Rule 26(b)(4)(D) or Rule 26(b)(3) or, in the alternative, that the Trust has established exceptional circumstances and substantial need to overcome those protections.

### D. The Court should award fees for the Foodonics Parties' withholding of the Withheld SMK Information.

If the Court grants this motion, the Trust is entitled to attorneys' fees and costs "unless the party was substantially justified in resisting discovery." Fed. R. Civ. P. 37(a)(5)(A); *see also Maddow v. Procter & Gamble Co.*, 107 F.3d 846, 853 (11th Cir. 1997). The Supreme Court has stated that a party's discovery-related conduct should be considered "substantially justified" under Rule 37 only if it is a response to a "genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)).

In this case, based on Wright's undisputed deposition testimony, the Foodonics Parties and GrayRobinson's refusal to allow this discovery was not substantially justified and the Court should award fees to the Trust pursuant to Rule 37(a)(5)(A) and/or sanctions for vexatious litigation pursuant to 25 U.S.C. § 1927.

## Conclusion

WHEREFORE, the Trust respectfully requests that the Court enter an order:

(i)    compelling the Foodonics Parties, GrayRobinson and SMK to produce the Withheld SMK Information to the Trust (as identified in Exhibit 1 to this Motion to Compel) on or before November 20, 2019; and

(ii)    reserving jurisdiction as to the award legal fees or other sanctions, if any, against the Foodonics Parties, GrayRobinson or its attorneys for the discovery-related misconduct described above and determining those issues at the same time it considers the request for sanctions at issue in the Trust's presently pending motion for sanctions against the Foodonics Parties and GrayRobinson for related discovery misconduct. (Doc. 98).

## Local Rule 3.01(g) Certification as to the Foodonics Parties and GrayRobinson

Pursuant to Local Rule 3.01(g), counsel for the Trust certifies that he has conferred in good faith with counsel for the Foodonics Parties and Gray Robinson, who state that they oppose the relief requested in this motion.

**Local Rule 3.01(g) Certification as to SMK**

Pursuant to Local Rule 3.01(g), counsel for the Trust certifies that he has conferred in good faith with counsel for SMK who states that his client (i) does not oppose the relief requested in this motion with respect to the production of documents and (ii) takes no position as to the remaining relief requested because it does not relate to his client.

                        SMITH HULSEY & BUSEY

                        By:     /s/ *James H. Post*
                               James H. Post
                               Michael E. Demont
                               R. Christopher Dix

                        Florida Bar Number 0175460
                        One Independent Drive, Suite 3300
                        Jacksonville, Florida  32202
                        (904) 359-7700
                        (904) 359-7708 (facsimile)
                        jpost@smithhulsey.com
                        mdemont@smithhulsey.com
                        cdix@smithhulsey.com

                        Attorneys for Counterclaim Plaintiffs,
                          Dina Klempf Srochi, as Trustee of the
                          Laura Jean Klempf Revocable Trust and
                          Dennis L. Blackburn, as Assistant
                          Trustee of the Jean Klempf Trust

Certificate of Service

I certify that on this 13th day of November, 2019, I electronically filed the foregoing with the Clerk of Court through the Court's CM/ECF electronic notification system, which will send a Notice of Electronic Filing to all CM/ECF participants in this case. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: none.



/s/ *James H. Post*
Attorney

1049309.4