UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL, INC., )
a Florida corporation, )
      Plaintiff, )
v. )   Case No. 3:17-cv-1054-J-32JRK
DINA KLEMPF SROCHI, as Trustee )
of the LAURA JEAN KLEMPF )
REVOCABLE TRUST, a Florida trust, )
      Defendant. )

DINA KLEMPF SROCHI, as Trustee )
of the LAURA JEAN KLEMPF )
REVOCABLE TRUST, a Florida trust, )
      Counterclaim Plaintiff, )
v. )
FOODONICS INTERNATIONAL, INC., )
a Florida corporation, and KEVIN )
JACQUES KLEMPF, )
      Counterclaim Defendants. )

**COUNTERCLAIM DEFENDANTS' RESPONSE IN OPPOSITION
TO TRUST'S MOTION TO COMPEL PRODUCTION OF
NON-PRIVILEGED DOCUMENTS RELATED TO SHELDRICK,
<u>MCGEHEE & KOHLER AND JESS WRIGHT</u>**

Counterclaim Defendants, Foodonics International, Inc. ("Foodonics") and Jacques Klempf ("Klempf"), respond in opposition to Counterclaim Plaintiff, Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust's (the "Trust") Motion to Compel Production of Non-Privileged Documents Relating to Sheldrick, McGehee & Kohler and

1

Jess Wright (the "Motion", Dkt. 184). As detailed below, the Counterclaim Defendants agreed to produce all of the documents that are the subject of the Motion *before* the Motion was filed. Moreover, all of the documents that are in the possession of Counterclaim Defendants have already been produced. Therefore, the majority of the Motion is moot. Counterclaim Defendants further oppose the Trust's requests for an award of attorneys' fees because such an award as contrary to law and the material facts inasmuch as Counterclaim Defendants' position as to the withheld documents was substantially justified.

**Factual Background**

1. In 2015, Sheldrick, McGehee & Kohler ("SMK") was retained to verify a fair market valuation of the Trust's shares of Foodonics stock in order to assess potential gift tax liability for Internal Revenue Service purposes. Jess Wright, an SMK employee, was primarily responsible for this work on behalf of SMK. This work culminated in a December 16, 2015 valuation, a copy of which is attached hereto, in-part, as **Exhibit A**.[1] The Valuation states that Foodonics, Klempf, and Dixon Hughes Goodman, the accounting and valuation firm that represented the Trust, were "intended users."[2]

2. SMK's work on the valuation was completed on December 16, 2015. At this time (and during the 2015 work), litigation was not reasonably anticipated between the parties. Counterclaim Defendants do not claim that any privilege applies to SMK and Wright's work in 2015.

3. The sale of the Trust's shares to Klempf was completed on December 31,

---

[1] The Valuation is voluminous. Therefore, Counterclaim Defendants have attached the opening section of the document and will provide the Special Master with a full copy of the document at the hearing on December 23, 2019.
[2] The Trust was also represented by Dennis Blackburn.

2

2015.

4. The following year, in late 2016, Cal-Maine Foods, Inc. ("Cal-Maine"), purchased certain of Foodonics' assets. This sale is alleged to be the basis for the Trust's claims in this case.

5. On June 23, 2017, the Trust provided notice of the Trust's claims relating to the Cal-Maine sale. A copy of the June 23, 2017 claim is attached hereto as **Exhibit B**.[3] On its face, the June 23, 2017 Notice presented significant and adverse anticipated legal claims for damages against Counterclaim Defendants. The Notice referenced the alleged $23,000,000 damages figure that has been pled in this case and included a notice that Counterclaim Defendants should preserve evidence. Most significantly, the Notice attached a draft complaint reflecting the Trust's alleged claims. As of June 23, 2017, litigation between the parties was reasonably likely to occur.

6. A month after the receipt of the Trust's demand, counsel for Counterclaim Defendants began to consult with SMK and Wright relating to a potential analysis of certain aspects of the Trust's claims, including the basis for the purchase price that Cal-Maine paid to Foodonics. This assignment was not a continuation of SMK and Wright's 2015 work and was an independent task for which SMK and Wright were retained as a consultant. See July, 2017 e-mail from counsel for Counterclaim Defendants to SMK stating intent to discuss retention of SMK, attached hereto as **Exhibit C**.

7. SMK generated a draft report relating to its analysis in October, 2017, a copy of which is attached hereto as **Exhibit D**.

---

[3] The Notice is labeled as a confidential settlement communication between the parties. Counterclaim Defendants have therefore redacted the document attached hereto and will provide the Special Master with an unredacted copy at the hearing on December 23, 2019.

8. During the pendency of this lawsuit, Counterclaim Defendants did not object to the production of SMK documents relating to SMK's work in 2015. Although the Counterclaim Defendants' Rule 26 Disclosures referenced SMK and Wright as entities / individuals with relevant knowledge, this knowledge was intended to relate solely to SMK's work in 2015.

9. On March 2, 2018, the Trust served subpoenas for documents on SMK and Wright. See Motion, Ex. 5 and 6. Counterclaim Defendants' objected to the production of documents and correspondence exchanged between counsel for Counterclaim Defendants and SMK/Wright in 2017 and 2018. See Motion, Ex. 1, 7, 9. Counterclaim Defendants served a Privilege Log identifying the documents that were privileged. See Motion, Ex. 7.

10. The Trust took the deposition of Wright, individually and as corporate representative of SMK, on October 22, 2019. The Trust claims that Wright testified that SMK/Wright have not been retained as a consulting expert in this case.

11. Prior to the filing of the Motion, counsel for the parties conferred as to the SMK documents on numerous occasions. While continuing to believe that its arguments were correct under the law, in the interest of a resolution of this issue without court intervention, Counterclaim Defendants agreed to produce the SMK documents in their possession. Despite being notified of the anticipated production on numerous occasions before the Motion was filed, the Trust has proceeded with the Motion, seemingly in an attempt to secure an award of attorneys' fees.

12. As of the filing of this Response, Counterclaim Defendants have produced all of the individually delineated emails on the Privilege Log (attached to the Motion at Doc. 184-7). The Privilege Log also references certain notes prepared by Jess Wright.

Although the Counterclaim Defendants do not have possession of these documents, they understand that such notes exist and do not object to the production of these notes.

13. In light of the fact that the documents themselves have already been produced, the sole remaining issue is whether Counterclaim Defendant's position as to the SMK documents was substantially justified. As detailed below, Counterclaim Defendants' arguments are supported by applicable law and the material facts of this case. Therefore an award of fees would be improper.

## MEMORANDUM OF LAW

A. **Counterclaim Defendants' Position that SMK/Wright was Retained in 2017 as a Consulting Expert was Substantially Justified.**

1. **SMK/Wright was Specifically Retained As a Consultant.**

Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure prevents a party from discovering "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D).

In the Motion, the Trust asserts, without support, that "[t]he consulting expert discovery exclusion . . . does not apply to an expert who has factual information regarding the transactions or occurrences that are part of the subject matter of the lawsuit." Doc. 184, at 8. The Trust further asserts that because Foodonics "knew" SMK/Wright would be a fact witness at trial, he cannot also be a consulting expert. Doc. 184, at 8. The Trust's contentions are erroneous and contrary to applicable law.

Courts have frequently held that a non-testifying expert consultant can be both a litigation expert protected under Rule 26(b)(4) as to some matters and a fact witness as to others. See Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc., No. 08-

5

61868-CIV, 2009 WL 10667830, at *4 (S.D. Fla. June 9, 2009); Bartram, LLC v. Landmark Am. Ins. Co., No. 110-CV-00028-SPM-GRJ, 2011 WL 284448, at *3 (N.D. Fla. Jan. 24, 2011).  In other words, the fact that a litigation expert may also be a fact witness does not preclude the application of Rule 26(b)(4)(D).  Rather, "[t]he expert may be considered a normal fact witness before the expert has been retained then may become a non-testifying expert witness after the expert is retained. Under these circumstances the witnesses are only entitled to work product protection for the period of time after they were formally retained as a non-testifying expert witness."  Bartram, LLC, 2011 WL 284448, at *3.

Here, the Trust consistently conflates the work which SMK/Wright did in 2015 with its subsequent retention as a consulting expert in 2017.  As previously discussed, SMK's correspondence and documents from 2015 were not withheld because they relate to a separate project – the valuation of the Trust's shares in 2015 for gift tax purposes. Counterclaim Defendants did not, and do not object to the production of this material or assert that the 2015 material is privileged.  Furthermore, because SMK/Wright had performed the 2015 analysis, Foodonics was required to disclose SMK/Wright in its Rule 26 disclosures.  Merely identifying SMK/Wright on its initial disclosures is not the same as identifying SMK/Wright as a fact witness for trial.  And again, the fact that a litigation consultant may also be a fact witness for some matters does not negate the privilege in its entirety, as the Trust asserts.[4]

---

[4] The majority of the Trust's contentions, including its entire argument regarding the "consulting expert exclusion" is not supported by any applicable case law. The case law that is cited in the Motion is not analogous to the issues presented here. See e.g. Evercare Co. v. 3M Co., No. 1:08-mc-42 (N.D. Ohio July 10, 2008), aff'd, 2008 WL 4137903, at *1 (N.D. Ohio Aug. 29, 2008) (unlike in this case, the expert in Evercare performed the same work before and after they were hired as a consultant); Tampa Bay Water v. HDR Eng'g, Inc., No. 8:08-cv-2446-T-27TBM, 2010 WL3394729 (M.D. Fla. Aug. 26, 2010) (where a consulting expert

After June 23, 2017, when the Trust sent a letter threatening litigation, Counterclaim Defendants retained SMK/Wright for a different analysis to assist them in evaluating the claims. Foodonics specifically retained SMK/Wright in anticipation of litigation. The communications between Gray Robinson and SMK/Wright after June 23, 2017 are privileged because at that point, SMK/Wright were no longer merely fact witnesses. Rather, SMK/Wright became a consulting expert.

The Trust argues that SMK/Wright were never specifically retained in anticipation of litigation or to prepare for trial, on the basis of Wright's deposition testimony. Doc. 184, at 5, 8. While Wright may not have been aware from a legal standpoint that he was retained as a consulting expert, the circumstances leading to SMK/Wright's employment in 2017 establish that SMK/Wright was being specifically retained in this role. "The general rule for determining whether something was '[retained] in anticipation of litigation' is whether it would have been obtained 'because of the prospect of litigation, and not in the regular course of business.'" Powers v. United States, No. 1:17-CV-071 (LAG), 2019 WL 5801876, at *3 (M.D. Ga. Jan. 29, 2019) (citations omitted). Counterclaim Defendants' retention of SMK/Wright to perform work in July 2017 was done in direct response to the Trust's June 23, 2017 letter threatening litigation.[5] The

---

later became a testifying expert, the shield from production was lost, in a factual scenario that bears no relation to the facts of this case).

[5] The Trust also contends that a November 16, 2016 email demonstrates that Counterclaim Defendants did not hire SMK/Wright to perform the 2017 work in anticipation of litigation. See Doc. 184, at 6; Doc. 184-11. While there was a single email exchange in November 2016 (attached hereto as **Exhibit E**), no further action was taken to retain SMK/Wright at that time. Counsel for Counterclaim Defendants did not reach out to SMK/Wright on this matter again until after the June 23, 2017 letter threatening litigation, as made clear from Exhibit C hereto. As discussed above, it is clear from the June/July 2017 emails that litigation was anticipated. SMK/Wright was not actually specifically retained until after June 23, 2017, and when Counterclaim Defendants hired SMK/Wright, they did so in anticipation of litigation.

timing clearly demonstrates that Counterclaim Defendants anticipated litigation and hired SMK/Wright because they believed that they might utilize SMK/Wright as a consulting expert in future litigation. Accordingly, SMK/Wright were specifically retained as a consulting expert.[6]

### 2.     SMK was Retained in Anticipation of Litigation.

"In anticipation of litigation" has not been specifically defined by the Eleventh Circuit. Doctors' Admin. Sols., LLC v. Allscripts, LLC, No. 8:09-CV-989-T-30AEP, 2011 WL 13176224, at *3 (M.D. Fla. Jan. 25, 2011); Sec. & Exch. Comm'n v. Solow, No. 09-61868-CIV, 2011 WL 13277546, at *5 (S.D. Fla. Mar. 14, 2011). However, the Courts generally agree that "litigation need not necessarily be imminent ... as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." Allscripts, LLC, 2011 WL 13176224, at *3 (quoting United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981)). The inquiry is based upon consideration of the facts and circumstances of the particular case. See id.; see also Title Capital Mgmt., LLC v. Progress Residential, LLC, No. 16-21882-CV, 2017 WL 5953428, at *4 (S.D. Fla. Sept. 29, 2017) (in Rule 37 duty to preserve context, stating that "[r]easonable anticipation of litigation means just that: whether a reasonable person would anticipate, based upon the totality of circumstances surrounding the dispute, that litigation might arise as a result of the dispute between the parties.").

Here it is clear that as of July, 2017, it was reasonable to believe that litigation

---

[6] Nor does the fact that Counterclaim Defendants may not utilize SMK/Wright as a consulting expert eviscerate the protections of Rule 26(b)(4). See Genesco, Inc. v. Visa U.S.A., Inc., 302 F.R.D. 168, 189 (M.D. Tenn. 2014) (sustaining objection to production by consulting expert even though objecting party did not actually rely on the expert or the expert's report to support its claims in the action).

might result from the dispute between the parties. The Notice referenced $23,000,000 in damages and attached a fully drafted complaint. Based upon the Counterclaim Defendants' belief that they had done nothing wrong, it was reasonable to believe that the dispute would result in a lawsuit. SMK/Wright were retained in direct response to this demand.

### 3. Counterclaim Defendants' Position Was Substantially Justified.

As stated herein, Counterclaim Defendants have agreed to produce or have produced all of the documents at issue in the Motion. Given that the Counterclaim Defendants communicated this agreement to the Trust prior to the filing of this Motion, it is clear that the Trust's primary motivation is to seek an award of attorneys' fees. Inasmuch as Counterclaim Defendants were substantially justified in asserting that the SMK documents are privileged, no relief should be granted. Determining whether a party was substantially justified in asserting an objection to discovery is determined by an objective standard. Procaps S.A. v. Patheon Inc., No. 12-24356-CIV, 2013 WL 6238647, at *5 (S.D. Fla. Dec. 3, 2013). Substantial justification is present when " 'reasonable people could differ as to the appropriateness of the contested action.' " Id. (quoting Devaney v. Cont'l Am. Ins. Co., 989 F.2d 1154, 1163 (11th Cir. 1993).

The inquiry into determining whether a party's actions were substantially justified depends upon the circumstances of the particular case. See, e.g., Amerisure Ins. Co. v. Auchter Co., No. 3:16-CV-407-J-39JRK, 2017 WL 3712917, at *5 (M.D. Fla. July 7, 2017) (declining to award attorney's fees on motion to compel involving matters related to work product doctrine and documents considered by expert consultant); Murphy v. Kmart Corp., 259 F.R.D. 421, 432 (D.S.D. 2009) (declining to award attorney's fees in light of split of

authority and lack of circuit precedent on applicability of work product doctrine to third-party witness affidavits).

Here, as detailed above, Counterclaim Defendants were correct in asserting that SMK/Wright was a litigation consultant and properly objected to the production of documents sent or created after the Trust threatened litigation. Counterclaim Defendants' determination that the consultant privilege and/or work product doctrine applied to SMK/Wright's 2017 work was supported by applicable law. Even if not indisputably correct, it was objectively reasonable to determine that SMK/Wright would qualify as a litigation consultant in light of existing case law in this circuit. Accordingly, the Trust's request for attorney's fees is due to be denied.

## CONCLUSION

For all of the foregoing reasons, Counterclaim Defendants respectfully request that this Court enter an Order denying the Motion.

Respectfully submitted,

ABEL BEAN LAW, P.A.

By: /s/ Daniel K. Bean
Daniel K. Bean, Esq.
Florida Bar No. 15539
Andrew J. Steif, Esq.
Florida Bar No. 0042475
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202
Telephone: (904) 516-5486
dbean@abelbeanlaw.com
asteif@abelbeanlaw.com

GRAY ROBINSON, P.A.

S. Grier Wells, Esq.
Florida Bar No.: 203238
50 North Laura Street, Suite 1100

> Jacksonville, Florida 32202
> Telephone: (904)-598-9929
> grier.wells@gray-robinson.com
> barbara.rude@gray-robinson.com
>
> ***Attorneys for Counterclaim Defendants***

## Certificate of Service

I certify that on this 6th day of December, 2019, I electronically filed the foregoing with the Clerk of Court through the Court's CM/ECF electronic notification system, which will send a Notice of Electronic Filing to all CM/ECF participants in this case.

    /s/ *Daniel K. Bean*    
Attorney
