UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL,
INC., a Florida corporation,

    Plaintiff,

v.                                                                        Case No.: 3:17-cv-1054-J-32JRK

DINA KLEMPF SROCHI, as
Trustee of the Laura Jean Klempf
Revocable Trust, a Florida Trust,

    Defendant.
_____

DINA KLEMPF SROCHI, as Trustee of the
Laura Jean Klempf Revocable Trust, et al.,

    Counterclaim Plaintiffs,

v.

FOODONICS INTERNATIONAL, INC.,
a Florida corporation, et al.,

    Counterclaim Defendants.
_____

## SPECIAL MASTER ORDER ON MOTION TO COMPEL
## AS TO SMK AND WRIGHT

This cause is before the Special Master on the Counterclaim Plaintiffs' (the

"Trust's") Motion to Compel Production of Non-Privileged Documents Relating to

Sheldrick, McGehee & Kohler and Jess Wright (the "Motion to Compel). (Doc. 184)

The Counterclaim Defendants Foodonics International, Inc. and Jacques Klempf (the

ACTIVE 11444932.1

"Foodonics Parties") filed a memorandum, with exhibits, in opposition to the Motion to Compel. (Doc. 200)

On November 7, 2019, the Court, pursuant to Federal Rule of Civil Procedure 53, appointed the undersigned as Special Master for the purpose of overseeing discovery. (Doc. 179) The undersigned held a hearing on the matters addressed in this Order on December 23, 2019. (Doc. 206) Counsel for each of the parties appeared and argued their respective positions.

On February 16, 2018 Foodonics International, Inc. provided its initial disclosures under Rule 26(a)(1) and included "Jess Wright, ASA, CFA" stating that "Ms. [sic] Wright will have information related to: the value of stock held by Laura Jean Klempf Revocable Trust as acquired by Foodonics in December, 2015." (*See* Doc. 184-2, ¶ 1.f.) The Foodonics Parties incorporated those disclosures into their supplemental Rule 26(a) disclosures on March 29, 2018. (Doc. 184-3, ¶ 2) The Foodonics Parties have not further supplemented or amended these disclosures.

In its Rule 26(a)(1) initial disclosures, the Trust identified Mr. Wright and Sheldrick, McGehee & Kohler, LLC ("SMK") and stated that these witnesses had knowledge of "the 2015 Settlement and Redemption Transaction," the "Cal-Maine Sale," and "[t]he value of the Foodonics stock and Foodonics assets." (Doc. 184-4, pp. 3-6)

On February 27, 2018, counsel for the Trust issued separate subpoenas under Rule 45 to SMK and to Mr. Wright for the production of a broad range of documents

and information, including information relating to the parties' 2015 Settlement and Redemption Agreement, the sale of Foodonics assets to Cal-Maine Foods, Inc. ("Cal-Maine"), and the value of Foodonics' stock or assets from September 1, 2008 through the date of production. (Doc. 184-5, Ex. A, pp. 6-7; Doc. 184-6, Ex. A, pp. 6-7)

In April 2018, the Foodonics Parties objected to the subpoenas and stated that "[p]rior to the institution of this action, SMK was retained by Foodonics to appraise the stock owned by the Laura Jean Klempf Irrevocable Trust ("Trust"), a former shareholder of Foodonics, in connection with a gift tax implication of a redemption of such Trust stock by Foodonics. Wright undertook the appraisal on behalf of SMK. The redemption of the Trust stock by Foodonics occurred on December 31, 2015." (Doc. 184-7, ¶ I.C.) The objection further stated that "[a]s a result of the Threatened Lawsuit [by counsel for the Trust on or about June 23, 2017], counsel for Foodonics and Jacques engaged in a series of communications with SMK and Wright related to the allegations in the Threatened Lawsuit regarding the value of the Trust stock redeemed by Foodonics and the alleged damages sustained by the Trust." (*Id.*, ¶ II.C) The objection concluded, stating "Foodonics and Jacques consequently object to the production of documents between SMK, Wright and GrayRobinson from July 24, 2017 to the present as constituting work product." (*Id.*, ¶ II.D.)

Following these objections was a privilege log which specifically listed twenty six (26) separate emails beginning on July 24, 2017, Wright meeting notes typed on December 18, 2017, and a draft memo dated October 19, 2017. (Doc. 184-7, ¶¶ III.

A., B.3., 4.) The log also generally identified other notes and research by Mr. Wright and communications between him and counsel for the Foodonics Parties. (*Id*., ¶ III.B.1., 2.) All of these materials were objected to "on the basis of the asserted work-product privilege." (*Id.*)

In August 2018, the Foodonics Parties produced various documents to the Trust in response to the subpoenas, including three documents which they later claimed were privileged as work product. (Doc. 59, p. 2; Doc. 184-8) In accordance with the parties' prior agreement, counsel for the Trust therefore deleted those three documents from their document repository (*id.*), subject to the Trust's challenge to the applicability of the work product privilege to one of the documents (the October 19, 2017 draft memo). (*Id.*, p. 3)

On October 5, 2018, in response to the Trust's challenge to the privileged status of the draft memo, the Foodonics Parties asserted that Mr. Wright had been "retained in anticipation of litigation, and is not intended to be called as an expert witness at trial on the matters contained in the Draft Memo," and that Mr. Wright's testimony, if any, "would be limited to facts and opinions occurring prior to December 31, 2015." (Doc. 64, ¶ III.16; Doc. 184-9) The Foodonics Parties seemed to assert that not only the draft memo, but also the other documents described on the Foodonics privilege log were protected from discovery by both the work product privilege under Rule 26(b)(3)(A) and the non-testifying expert privilege under Rule 26(b)(4)(D). (*Id.*, ¶¶ 23-25)

Through the Motion to Compel (Doc. 184), the Trust now seeks the information listed on Exhibit 1 to the Motion (the "Requested Material"; Doc. 184-1). Exhibit 1 duplicates paragraphs A, B.1., 2., 3. and 4. of the Foodonics Parties' privilege log (although in different order) and lists certain specifically identified documents (such as the October 19, 2017 draft memo, various emails, and the meeting notes typed on December 18, 2017). (*See* Doc. 184-1, Ex. 1, ¶¶ A, B, C3) The other Requested Material listed on Exhibit 1 is described generically. (Doc. 184-1, Introduction ("[t]he Withheld Information includes, but is not limited to, the following"), ¶¶ C.1., C.2., D).

Except for the Introduction phrase (Doc. 184-1), the Requested Material listed on Exhibit 1 is discoverable because, as described, it appears to be relevant to the Trust's claims in this case and appears to be proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1). To prevent the discovery of such material on privilege grounds, the Foodonics Parties have the burden of proving the existence of their asserted privileges. *See U.S. Fidelity & Guar. Co. v. Liberty Surplus Ins. Co.*, 630 F.Supp. 2d 1332, 1336 (M.D. Fla. 2007).

Rule 26(b)(3)(A) provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . . ." *See* Fed. R. Civ. P. 26(b)(3)(A). Similarly, Rule 26(b)(4)(D) provides that a party may not obtain discovery of "facts known or opinions held by an expert who has been retained

or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D)  Each of these provisions has an exception whereby a party may obtain privileged information upon a showing of special need and other circumstances.  *See* Fed. R. Civ. P. 26(b)(3)(A)(ii); 26(b)(4)(D)(ii).

The Motion to Compel asserts that the Requested Material is not protected from discovery by either Rule 26(b)(3)(A) or Rule 26(b)(4)(D), or, that if either provision does apply, the Trust has satisfied the respective exceptions to these protections, entitling it to the discovery.  (Doc. 184)  The Trust also seeks an award of its attorney's fees incurred in bringing the Motion to Compel, pursuant to either Rule 37(a)(5)(A) or 28 U.S.C. § 1927. *Id.*, p. 14.

The Foodonics Parties assert that before the Motion to Compel was filed, they had either produced, or agreed to produce, the emails listed in paragraph B of Exhibit 1 to the Motion to Compel.  (Doc. 200, ¶¶ 11-12)  They also attached a copy of the draft memo (listed in paragraph A to Exhibit 1) to their response (Doc. 200-4) and they withdrew their objection to production of the SMK and Wright notes and research described on Exhibit 1. (Doc. 200, ¶12)  They therefore assert that the Motion to Compel was unnecessary.  (Doc. 200, ¶ 11)  They also assert that notwithstanding these agreements, they were "substantially justified" in claiming that the material is privileged and therefore they should not be liable for the Trust's fees. *Id.*, pp. 9-10.

At the December 23 hearing, counsel for the Foodonics Parties acknowledged that they are waiving the work product privilege with respect to the documents sought in the Motion to Compel and which they have agreed they or SMK will produce.

Clearly, the Trust's counsel's June 23, 2017 letter put the Foodonics Parties on notice of possible litigation over the issues in dispute in this case. (*See* Docs. 99-1, Tab 1; 200-2) They assert that after receiving the letter, they "retained SMK/Wright for a different analysis [than was done in 2015] to assist them in evaluating the claims." (Doc. 200, p. 7) To support this assertion, they attached to their response a July 24, 2017 email (listed on Exhibit 1 at paragraph B.1.) where Foodonics' counsel stated to Steven Rosenbloom of SMK, "I suspect we'll be hiring you to synthesize what you did versus an asset sale that Foodonics subsequently entered into." (Doc. 200-3) The Foodonics Parties' have not provided any documents memorializing or formalizing the engagement or its terms. Mr. Wright testified in October 2019 that he had not been retained as either a testifying expert or a consulting expert in this case. (Doc. 184-10, p. 247)

Rule 26(b)(4)(D) does not elaborate on what it means for an expert to be "retained or specially employed," but the case authorities cited by the Foodonics Parties refer to the expert being "formally retained" or recite other indicia of formality in the engagement in order for the protection of the rule to begin. *See Bartram LLC v. Landmark Am. Ins. Co.*, 2011 WL 284448 at *3 (N.D. Fla. Jan. 24, 2011); *see also Genesco V. VISA U.S.A., Inc.*, 302 F.R.D. 168, 193 (M.D. Tenn., 2014) (party

asserting privilege produced expert retainer agreement). On the record here, the Foodonics Parties have not met their burden to show that Mr. Wright or SMK were formally retained as consulting experts. Consequently, they were not substantially justified in relying on the privilege of Rule 26(b)(4)(D).

On the consulting expert issue, the Trust relies on the decision in *Evercare Co. v. 3M Co.*, No. 1:08-nc-42 (N.D. Ohio July 10, 2008). That decision is inapplicable here because the undersigned has found that there has been no consulting expert status shown for SMK or Mr. Wright and the Foodonics Parties have not claimed those witnesses as testifying experts. The *Evercare* case also involves the distinguishing situation where the party claiming the consulting expert privilege (Evercare) intended to use a post-engagement report prepared by the expert to present its case. *Id.* at p. 11. Such has not been shown here.

The undersigned finds, though, that the Foodonics Parties reasonably claimed the separate work product privilege of Rule 26(b)(3)(A) to the Requested Material (until they later withdrew their privilege claim and agreed to produce the material). The privilege rule governing discovery from experts (26(b)(4)(D)) is "distinct from" the rule governing the discovery of work product (Rule 26(b)(3)(A)). *Travelers Cas. and Surety Co. of Am. v. Grace & Naeem Uddin, Inc.*, 2009 WL 10667830 at *3 (S.D. Fla. June 9, 2009)

The Trust's June 23, 2017 letter raised the possibility of litigation with the Foodonics Parties and the specifically-described portions of the Requested Material

(Doc. 184-1, ¶¶ A, B, C.3.) post-dated that letter and were prepared either by or for the Foodonics Parties' counsel and related to that possibility. The remaining portions of the Requested Material (Doc. 184-1, ¶¶ C.1., 2., D) are reasonably understood to relate directly to the emails and communications with counsel described in paragraphs A and B, all of which post-dated the June 23, 2017 letter. The undersigned has reviewed portions of Requested Material (¶¶ A, B) and those show they were not prepared in the ordinary course of business, but rather "the prospect of litigation was the primary purpose behind [the preparation]." *See Amerisure Ins. Co. v. Auchter Co. et al.*, 2017 WL 3712917 at *4 (M.D. Fla. July 7, 2017). Moreover, some of the documents can reasonably be understood to convey the mental impressions, conclusions, opinions or legal theories of Foodonics' counsel and are protected for that additional reason. *See* Fed. R. Civ. P. 26(b)(3)(B).

Finally, sanctions under 28 U.S.C. §1927 requires a showing that a lawyer has engaged in "unreasonable and vexatious conduct" that "multiplies the proceedings." *See Eldredge v. EDCare Management, Inc.*, 766 Fed. Appx. 901, 907 (11th Cir. 2019) (an attorney multiplies court proceedings unreasonably and vexatiously, thereby justifying sanctions, only when the attorney's conduct is "so egregious that it is tantamount to bad faith." *Id.* Bad faith is an objective standard that is satisfied when "an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Id.* (citations omitted) The Trust has not demonstrated these elements specifically in regard to the

Motion to Compel.

After consideration of the argument of counsel and the written submissions, it is ORDERED:

1. The Motion to Compel is **GRANTED** to the extent that the Foodonics Parties are ordered to comply with their agreement and produce any of the documents described in paragraphs A, B, C and D of Exhibit 1 to the motion (Doc. 184-1) which are in their possession, custody or control, and they have not yet produced. They are ordered to produce such material to the Trust on or before January 10, 2020.

2. Pursuant to the Trust's subpoenas, SMK and Mr. Wright shall produce to the Trust the documents in their possession, custody or control that are responsive to Exhibit 1 (Doc. 184-1), and they shall do so on or before January 10, 2020.

3. The work product privilege is waived by the Foodonics Parties with respect to the documents produced pursuant to this Order.

4. The Trust's request for an award of attorney's fees in the Motion to Compel is **DENIED** without prejudice to the Trust renewing the request in the event any of the documents which have been withheld by SMK or Mr. Wright and are produced pursuant to this Order predate June 23, 2017.

DONE AND ORDERED at Jacksonville, Florida, this 24th day of December, 2019.

/s/*Michael G. Tanner*
Michael G. Tanner, Special Master