# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| FOODONICS INTERNATIONAL, INC., a Florida corporation, <br><br>  Plaintiff, <br><br> v. <br><br> DINA KLEMPF SROCHI, as Trustee of the LAURA JEAN KLEMPF REVOCABLE TRUST, a Florida trust, <br><br>  Defendant. | Case No. 3:17-cv-1054-J-32JRK |
| DINA KLEMPF SROCHI, as Trustee of the LAURA JEAN KLEMPF REVOCABLE TRUST, a Florida trust, <br><br>  Counterclaim Plaintiff, <br><br> v. <br><br> FOODONICS INTERNATIONAL, INC., a Florida corporation, and KEVIN JACQUES KLEMPF, <br><br>  Counterclaim Defendants. | |

**DECLARATION OF JAMES H. POST IN SUPPORT
OF THE TRUST'S RESPONSE TO FOODONICS'
<u>MOTION TO COMPEL PRIVILEGED DOCUMENTS</u>**

I, James H. Post, declare as follows:

**<u>The Jean Klempf Privilege Group</u>**

1. I have been a member of the Florida Bar since 1974 and a partner in the law firm of Smith Hulsey & Busey ("SHB") since 1979.

2. In January 2017, our firm began the representation of Dina Klempf Srochi, in her capacity as Trustee of the Laura Jean Klempf Revocable Trust Dated April 1, 1992, and Dennis L. Blackburn, in his capacity as Assistant Trustee of the Laura Jean Klempf Trust (collectively, the "Trust") to represent the Trust in the prosecution of the claims against Jacques Klempf and Foodonics International, Inc. ("Foodonics") which are now the subject of this action.

3. Since January 2017, I have been the attorney at SHB with principal responsibility for this case.

4. Prior to my firm's involvement, Jean Klempf and the Trust were represented by other attorneys, including Dennis Blackburn, Steven Brust and Joe Frein. Mr. Blackburn continues to be co-counsel for the Trust, including in connection with this action.

5. Attached is a chart identifying the persons Jean Klempf assembled and relied upon to participate in privileged communications regarding her and her Trust (the "Jean Klempf Privilege Group").

**The emails Dina Klempf Srochi sent to herself were part of a protocol requested by SHB intended to collect material information, work product and input from the client to formulate and provide legal advice**

6. Dina Klempf Srochi sent emails to herself to identify and share with counsel and other members of the Jean Klempf Privilege Group with what she perceived as material information and documents regarding the legal issues and disputes between (a) Jean Klempf and the Trust and (b) Jacques Klempf and Foodonics, including the legal issues which are now the subject of this case. The information and opinions contained in these emails were utilized by SHB to formulate and provide legal

2

advice to Jean Klempf and the Trust representatives, which included Dina Klempf Srochi, who participated in the Jean Klempf Privilege Group as (i) a supportive and trusted family member, (ii) an agent, (iii) a beneficiary of the Trust and (iv) successor Trustee and, after February 5, 2016, as Trustee.

7. SHB anticipated that all emails generated by Dina Klempf Srochi to herself pursuant to this protocol would be treated as privileged and confidential.

## The Trust's Privilege Log

8. On March 27, 2018, Foodonics International, Inc. and Jacques Klempf (collectively, the "Foodonics Parties") served a request for the production of documents to the Trust.

9. On April 19, 2018, pursuant to the Order Governing ESI Issues (Doc. 27), the discovery liaisons for the Trust (Chris Dix, Esq.) and the Foodonics Parties (Michael Santana, Esq.) agreed to an ESI process for (i) determining search terms and (ii) the subsequent review of all data for privilege and relevance prior to production to avoid document dumping (the "Agreed Discovery Process"). See Exhibit F to the Counterclaim Plaintiff's Response to Counterclaim Defendants' Motion to Compel (the "Motion to Compel").

10. On April 26, 2018, the Trust timely served its response and objections to the Foodonics Parties' request for production of documents. In its response, the Trust objected to each request seeking the production of privileged documents.

11. On August 22, 2018, the Court entered an Order which, among other things, required the Trust to produce all documents responsive to the agreed search terms by September 30, 2018.

12. On or about September 30, 2018, the Trust timely produced relevant, non-privileged documents responsive to the Foodonics Parties' request for production.

13. The Trust withheld privileged documents from its production on September 30, 2018, pursuant to the Agreed Discovery Process agreed to by the ediscovery liaisons for the parties on April 19, 2018.

14. The following chronology describes the efforts undertaken by the undersigned and SHB to prepare and produce the Trust's privilege log, as well as other material events that transpired during that same time frame:

   a. In August and September 2018, the Trust utilized a document review team from KLDiscovery to conduct a first-pass review of documents for relevance and to identify documents as "potentially privileged" when the documents involved characteristics typically found in privileged communications (e.g., documents containing the names of attorneys and law firms retained by Jean Klempf or the Trust).

   b. After KLDiscovery completed the first-pass review of the Trust's documents, SHB attorneys conducted a second-pass review of the documents to make further determinations regarding relevance and privilege, culminating in the Trust's timely production of documents to the Foodonics Parties on September 30, 2018.

   c. On October 2, 2018, the Court held its fourth Discovery Status Conference in this case. The topics discussed at that status conference included the lack of documents and privilege log produced by GrayRobinson and the obvious deficiencies in the initial privilege log produced by Foodonics.

   d. From October 12 – 24, 2018, an SHB legal assistant assigned to this case began using a software program called Priv Log Builder (offered by KLDiscovery) to start creating a privilege log for the Trust. The initial efforts to generate a privilege log resulted in a preliminary log containing 7,081 items. At this preliminary stage, the log had not been subjected to any review by any attorney at SHB.

   e. In October 2018, SHB moved its offices from 225 Water Street to 1 Independent Drive, resulting in considerable disruption to SHB's operations and personnel.

4

f.  On October 25, 2018, the Court held its fifth Discovery Status Conference. The topics discussed at that status conference included ongoing deficiencies in the discovery responses and privilege logs produced by GrayRobinson and Foodonics.

g.  November 2, 2018, the SHB attorneys and staff working on this case met to discuss several pending discovery matters, including the preliminary log generated by the Priv Log Builder tool.

h.  On November 5, 2018, the Court held its sixth and final Discovery Status Conference. The topics discussed at that status conference included ongoing deficiencies in the privilege logs produced by GrayRobinson and Foodonics.

i.  November 6, 2018, the SHB attorneys and staff working on this case met again to discuss several pending discovery matters, including the preparation of the Trust's privilege log. At that time, the SHB legal assistant was directed to undertake the review of the 7,081 privileged documents to determine responsiveness.

j.  On November 28 and 29, 2018, the Trust deposed Jacques Klempf and David Hancock regarding the sluggish discovery and other discovery deficiencies of Foodonics, Jacques Klempf and GrayRobinson in connection with this case.

k.  On January 28, 2019, the Trust took the continued deposition of David Hancock regarding additional sluggish discovery and other discovery deficiencies of Foodonics, Jacques Klempf and GrayRobinson in connection with this case.

l.  In March 2019, the SHB legal assistant responsible for using KLDiscovery's Priv Log Builder to create the Trust's privilege log left the employ of SHB without completing her review of the 7,081 documents on the preliminary privilege log.

m.  On April 11, 2019, the Court entered an order directing the parties in this case to file all motions for sanctions by May 20, 2019. Between April 11 and May 20, 2019, SHB's resources were focused (i) on preparing the Trust's Motion for Sanctions and the Trust's Motions to Compel Foodonics and GrayRobinson to produce documents from their respective privilege logs and (ii) other time-intensive and substantial matters in this case, such as the time-sensitive review in batches of the 300,000+ documents dumped by the Foodonics Parties over the course of discovery in this case, contrary to the Agreed Discovery Process.

n. On May 20, 2019, the Trust filed its motions for sanctions and to compel production of documents from privilege logs of Foodonics and GrayRobinson.

o. On May 21, 2019, an SHB associate took over for the SHB legal assistant and began working with KLDiscovery on revising the privilege log and adding the "privilege type" as a category shown on the log. With assistance from KLDiscovery, SHB identified and removed a large volume of non-privileged documents that had been inadvertently marked as privileged. Eliminating non-privileged documents reduced the number of privileged documents from 7,081 down to 3,362.

Although this process of eliminating non-responsive documents and irrelevant documents from the privilege log was expressly agreed by the parties' ediscovery liaisons, the Trust was the only party that followed the Agreed Discovery Process -- Foodonics and GrayRobinson chose to serve privilege logs which contained thousands of documents irrelevant to this case leading to the substantial burden and delays described in greater detail in the Trust's motion for sanctions due to sluggish discovery.

p. On May 22, 2019, after additional review for responsiveness, the draft privilege log was reduced from 3,362 to 2,107 items.

q. On June 17, 2019, after additional review for responsiveness, the draft privilege log was reduced from 2,107 items to 1,911 items.

r. Between June 17, 2019 and December 7, 2019, the undersigned counsel reviewed the 1,911 items in batches over time as a second level review. During that same time, the undersigned was also focused on other time-intensive and substantial matters in this case, including (i) the preparation and filing of the Trust's Amended Answer and Amended Counterclaim, (ii) the pursuit of additional documents from Cal-Maine Foods and Dolph Baker, BB&T, and other third parties, (iii) the continued review of the 300,000+ documents produced by the Foodonics Parties in this case, (iv) the Court's appointment of a Special Master in this case, (v) the deposition of Jess Wright and issues surrounding his communications with GrayRobinson and others and (vi) preparation and filing of a memorandum regarding the Court's jurisdiction in this case.

s. On December 7, 2019, the SHB associate working on the privilege log met with me to discuss final revisions to the privilege log.

t. On December 19, 2019, the SHB associate working on the privilege log had a medical procedure and was out of the office for several days.

6

u.  On December 23, 2019, Special Master Tanner conducted a hearing regarding the Trust's motions to compel and for sanctions.

v.  After the hearing on December 23, 2019, the Trust produced its privilege log to GrayRobinson along with third party productions that GrayRobinson had previously requested.

15.  At no time prior to the Trust's production of the privilege log on December 23, 2019 did counsel for Foodonics or Jacques Klempf ever make a request for the Trust to produce a privilege log.

16.  The undersigned counsel acknowledges that (i) he was required to comply with Rule 26 and should have produced a privilege log without prompting from opposing counsel and (ii) with the benefit of hindsight, could have taken different actions in order to produce a privilege log earlier in this case. As set forth above, however, the delay in producing the Trust's privilege log in this case resulted from a combination of the particular circumstances of this litigation, which included the intensity of work over an extended period of time related to the Trust's efforts to (i) obtain minimally sufficient document productions from Foodonics, Jacques Klempf and third parties during 2018 and 2019 and (ii) the review and organization of the 300,000+ document dump by the Foodonics Parties.

17.  SHB's client in this case had no participation in the preparation or production of the Trust's privilege log on December 23, 2019.

Dated: February 12, 2020

_____
James H. Post

1060187

7

# THE JEAN KLEMPF PRIVILEGE GROUP

