# EXHIBIT C

LAW OFFICES
## BLACKBURN & COMPANY, L.C.
5150 BELFORT ROAD, SOUTH
BUILDING 600
JACKSONVILLE, FLORIDA 32256

DENNIS L. BLACKBURN
ROBERT L. JONES III

TELEPHONE: 904-296-7713
FACSIMILE: 904-296-7716
FACSIMILE: 904-493-0384
e-mail: dlb@blackburnco.org

October 10, 2008

S. Grier Wells, Esq.
Gray Robinson
50 North Laura Street
Suite 1100
Jacksonville, FL 32202

Dear Grier:

    As I mentioned in our call this afternoon, Jacques Klempf had called me a couple of weeks ago to discuss what he described as a proposal to buy out his mother's remaining shares in Foodonics International, Inc. (the "Company"), with a retroactive effective date back to January 1, 2008. The proposal was based on Jacques' concern that Mrs. Klempf would have to pay tax on her share of the Company's 2008 taxable income, while the Company would not be in a position to distribute cash to pay those taxes. He was also thinking that the purchase of his mother's remaining shares would provide a method for increasing her monthly cash income.

    Jacques called back a few days later to invite me to attend a meeting at the Company including Jacques, the Company's CPA's at Stevens and Powell and some other members of the Company's management team. I appreciated the opportunity to attend the meeting which took place on September 25 in Jacques' office at the Company.

    I was able to participate in the discussions regarding balancing the Company's tax situation with regard to year-end prepayments for feed while having sufficient cash to distribute to the shareholders to pay their taxes on the Company's taxable income and staying within the limits of the Company's bank line of credit. Overall, I think that it was a very productive meeting.

    During the meeting, it was clarified to Jacques that his mother's earlier request to increase her monthly payments from the Company was related to acceleration of the payments on the $1.9 million promissory note the Company owes to the Family Trust. She had not proposed the sale of her remaining shares in the Company that are owned by her living trust and the Marital Trust under the Edward Klempf Living Trust.

    During the meeting, we also discussed the requirement under the September 15, 2006, Shareholders Agreement, regarding the Company's obligation to make prorata shareholder distributions in January of each year an amount equal to 40% of the Company's taxable income for the preceding year. It appeared from our discussions that the Company should be able to prepay a sufficient amount of feed costs to manage



Δ π EXHIBIT 26
Deponent: J. Klempf
Date: 1/20/20  Rptr. TH
WWW.DEPOBOOK.COM

LAW OFFICES
BLACKBURN & COMPANY, L.C.

S. Grier Wells, Esq.
October 10, 2008
Page 2

the Company's 2008 taxable income while leaving sufficient funds on the line of credit to make the required tax distributions to the shareholders and still leave a reasonable reserve on the line of credit for the Company's operating cash requirements.

Earlier this week, Jacques sent me an email confirming these matters and indicating that it looks like the cash management plan that was discussed during the meeting should be workable.

His email also spoke to a proposal to buy out Mrs. Klempf's and the Marital Trust's remaining shares in the Company. He indicated that Mr. Stevens would be preparing a stock purchase plan for our consideration. However, before Mr. Steven's spends time working on such a proposal, I wanted to make you aware that Mrs. Klempf is not interested in selling any of her or the Marital Trust's shares at this time. She is concerned with several matters, including for example the Company's ability to afford any additional payments since the Company is not in a position to accommodate her request for an acceleration of the payments on the $1.9 million note.

I did not want to respond directly to Jacques without your permission and without making you aware of the context of these discussions.

I also wanted to follow up with you on our previous discussions related to the Company. As I mentioned, Mrs. Klempf was concerned to learn that the Company recently purchased a residential condominium unit and incurred a mortgage debt of almost $500,000 without board approval and without even being informed of the transaction. The purchase occurred shortly before the last board meeting. However, as you know from attending the meeting, the transaction was not even mentioned by Jacques during the meeting.

You confirmed in our prior discussions that the Company does not, as a matter of course, acquire residential real property. While you stated that the recently purchased condominium is in the same building as a condominium that the Company acquired from Jacques' father several years ago, it is my understanding that the Company does not routinely incur mortgage debt to acquire non-operating assets.

You and I could debate whether the purchase of the condominium and incurrence of the mortgage debt required board approval. However, I am surprised that the lender did not require Jacques or the Secretary of the Company to sign a certificate to the effect that the board had approved the mortgage debt. In any event, we would like to have a copy of the closing papers that were signed by the officers of the Company in connection with the purchase of the condominium and incurrence of the

LAW OFFICES
BLACKBURN & COMPANY, L.C.

S. Grier Wells, Esq.
October 10, 2008
Page 3

mortgage debt. We would also like to know the particulars regarding the condominium, such as whether it is being leased and if so, the terms and parties to the lease.

Even if the lender did not require evidence regarding board approval to close the loan, we are requesting that any future transactions of this nature be presented to the board for approval prior to entering into a binding agreement. Mrs. Klempf does not believe that this is an unreasonable request and does not believe that it will impede Jacques in his duties as President in the normal operation of the Company's business.

Another issue that I would like to follow up on is in regard to the loan receivable from Jacques in the amount of $826,276 (as of June 30). According to my notes from the July 22 board meeting, Jacques indicated that he intended to repay the loan by selling some of his stock back to the Company. We are requesting that any future loans to officers be approved in advance by the board. We are also requesting that the terms of any redemption of Jacques' stock to repay the loan be approved in advance by the board, including the approval of the value of the shares that are used in the repayment.

As you are aware, the June 2006 stock purchase agreement included a covenant that the Company would not pay Jacques total annual compensation of more than $250,000 (subject to the 5% per annum increase). We are requesting that officer loans are not used as a means of avoiding the $250,000 salary cap.

I am reiterating my request on behalf of Mrs. Klempf as a director of the Company to receive copies of detailed financial statements for the Company for the year ended December 31, 2007, and detailed 2008 interim financial statements through July 31, 2008. We are also requesting a copy of the Company's 2006 and 2007 Form 1120S income tax returns (including a copy of Jacques' Form W-2) and a copy of the documents related to the Company's $826,276 loan to Jacques.

Finally, we are again requesting that Jacques take the actions necessary to refinance the Buckhead Equities / Pancake House loan so that the property that Mrs. Klempf owns with the Company can be released from the mortgage. In a call with Jacques earlier this year, he said that he would take steps to refinance the Buckhead loan to obtain a release of the mortgage but to my knowledge, nothing has been finalized in this regard.

LAW OFFICES
BLACKBURN & COMPANY, L.C.

S. Grier Wells, Esq.
October 10, 2008
Page 4

    I look forward to your reply to these matters. Please feel free to call me if you have any questions or if you would like to discuss these matters.

                        Sincerely,

                        Dennis L. Blackburn

c:    Ms. Jean Klempf

**_VIA FACSIMILE and U.S. MAIL_**