UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| FOODONICS INTERNATIONAL, INC., a Florida corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 3:17-cv-1054-J-32JRK |
| | ) |
| DINA KLEMPF SROCHI, as Trustee of the LAURA JEAN KLEMPF REVOCABLE TRUST, a Florida trust, | )<br>)<br>)<br>) |
| Defendant. | ) |
| DINA KLEMPF SROCHI, as Trustee of the LAURA JEAN KLEMPF REVOCABLE TRUST, a Florida trust, | )<br>)<br>)<br>) |
| Counterclaim Plaintiff, | ) |
| v. | ) |
| FOODONICS INTERNATIONAL, INC., a Florida corporation, and KEVIN JACQUES KLEMPF, | )<br>)<br>) |
| Counterclaim Defendants. | )<br>) |

**COUNTERCLAIM DEFENDANTS' MOTION TO STRIKE**
**SUPPLEMENTAL DECLARATION OF DINA KLEMPF SROCHI**

Counterclaim Defendants, Foodonics International, Inc. ("Foodonics") and Kevin Jacques Klempf (collectively, the "Counterclaim Defendants"), respectfully move for entry of an Order striking the Supplemental Declaration of Dina Klempf Srochi in Support of the Trust's Response to Foodonics' Motion to Compel Privileged Documents ("Supplemental Declaration") filed by

1

Plaintiff, Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust (the "Trust"), as a sham affidavit. (Doc. 227-1). In support, Counterclaim Defendants state:

## INTRODUCTION

In its written response to a Motion to Compel filed by Counterclaim Defendants (Doc. 214), the Trust submitted a Declaration by Dina Klempf Srochi. (Doc. 226-1). The Declaration, in part, attempted to explain why the Trust had marked as attorney-client and work product privileged hundreds of email communications in which Ms. Srochi was both the author and recipient. (Doc. 226-1, ¶¶ 7-8). The Declaration explained that the emails "were part of a protocol requested by Smith Hulsey & Busey" ("SHB"). (Doc. 226-1, at pg. 3, Header). SHB was retained by the Trust in January 2017. (Doc. 226-2).

On February 18, 2020, less than one (1) week after Ms. Srochi filed her original Declaration, Ms. Srochi provided a Supplemental Declaration during the hearing on Counterclaim Defendants' Motion to Compel. (Doc. 227-1). Unlike the original Declaration, Ms. Srochi now states that the email "protocol," in which Ms. Srochi would email information and opinions to herself, was not instigated at SHB's request – instead, it is a general protocol which Ms. Srochi utilized for every accountant and attorney which Jean Klempf and her Trust have had since 2008. (Doc. 227-1). The Trust submitted this Supplemental Declaration "anticipating one of the arguments that might be made [at the February 18, 2020 Hearing]" in an effort to expand the scope of emails from Ms. Srochi to herself which might be considered privileged. See February 18, 2020 Hearing Transcript, at 31:8-9, attached hereto as **Exhibit A**.

Even assuming the argument relating to the "protocol" of emailing documents to herself created a privilege, which is disputed, under the original Declaration, Ms. Srochi's emails to herself prior to SHB's involvement (i.e. January 2017) would not be shielded from production.

The Supplemental Declaration seeks to undue this result. Well-settled case law in this circuit provides that a party may not attempt to create a fact issue by submitting testimony that inherently conflicts with prior testimony, without explanation. Thus, the Supplemental Declaration should be stricken and not considered for any purpose.

Additionally, and in the alternative, the Supplemental Declaration was prematurely and inappropriately filed because the Trust moved *ore tenus* during the February 18, 2020 Hearing that the Supplemental Declaration be entered into the Court record. Counterclaim Plaintiffs opposed the motion, and the Special Master took it under advisement. See Ex. A, at 71:9-16. Accordingly, the Supplemental Declaration should be stricken from the Court record until the Special Master makes his determination.

## RELEVANT FACTUAL BACKGROUND

On January 27, 2020, Counterclaim Defendants filed a Motion to Compel documents and communications identified as privileged on the Trust's December 23, 2019 privilege log. (Doc. 214). The log identifies as privileged nearly 2,000 documents or communications, more than double the number of documents the Trust has produced in this case. The log itself was produced nearly fifteen (15) months after the Trust first produced responsive documents and contains numerous deficiencies. As relevant to this Motion, one blatant deficiency addressed in Counterclaim Defendants' Motion to Compel was numerous entries on the Trust's privilege log which identify Ms. Srochi as both the author of the communication and its recipient, while inexplicably asserting the attorney-client and work product privileges. (Doc. 214, at pp. 10-11).

On February 12, 2020, the Trust filed a Response to Counterclaim Defendants' Motion to Compel ("Response;" Doc. 226). The Trust also submitted the Declaration of Dina Klempf Srochi

in Support of the Trust's Response to Foodonics' Motion to Compel Privileged Documents. ("Declaration;" Doc. 226-1).[1] The Declaration consists of eight (8) paragraphs, and its main purpose appears to be to support two (2) arguments set out by the Trust in its Response: (1) the attorney-client, work product, and/or accountant-client privileges extend to a group of individuals referred to as "the Jean Klempf Privilege Group" based upon the agency theory exception to waiver of privilege (Doc. 226, at pp. 2-8); and (2) the emails which Ms. Srochi sent to herself are attorney-client privileged and/or work product protected because the emails "were part of a protocol counsel requested that was intended to collect potential information, work product and client input to formulate and provide legal advice." (Doc. 226, at pg. 9).

On February 18, 2020, the Special Master held a hearing regarding Counterclaim Defendants' Motion to Compel. At the hearing, counsel for the Trust presented the Supplemental Declaration of Dina Klempf Srochi in Support of the Trust's Response to Foodonics' Motion to Compel Privileged Documents ("Supplemental Declaration") "anticipating one of the arguments that might be made [at the February 18, 2020 Hearing.]" (Doc. 227-1); see also Ex. A, at 31:8-9.

The Supplemental Declaration provides a completely contradictory explanation for the emails which Ms. Srochi sent to herself and the reason for that practice. In the original Declaration, Ms. Srochi asserted that she sent emails to herself as "part of a protocol requested by Smith Hulsey & Busey." (Doc. 226-1, at pg. 3, Header); see also (Doc. 226-2, at pg. 2, Header). Ms. Srochi claimed that "[t]he information and opinions contained in these emails were collected by me to

---

[1] The Supplemental Declaration states that Ms. Srochi is supplementing the Declaration filed by her and cites to Doc. No. 226-2. (Doc. 227-1, ¶ 1). The citation is believed to be a scrivener's error, as Doc. 226-2 is the Declaration of James H. Post, counsel for the Trust. (Doc. 226-2).

4

formulate and obtain legal advice **from SHB** [Smith Hulsey & Busey] as an agent for Jean Klempf and the Trust." (Doc. 226-1, ¶ 7) (emphasis added).

SHB was not retained as counsel for the Trust until January 2017 (Doc. 226-2, ¶ 2). A significant number of emails listed on the privilege log predate SHB's involvement. Thus, the Trust "anticipated" that counsel for Counterclaim Defendants would challenge the privilege as it relates to Ms. Srochi's emails prior to SHB's engagement as counsel for the Trust, as any email prior to SHB's involvement would not have been generated by Ms. Srochi at SHB's request.

In apparent recognition that the Trust's argument on its face, even if dispositive as to privilege, which is disputed, failed to protect a significant number of Ms. Srochi's emails, Ms. Srochi changed her testimony on the day of the February 18, 2020 Hearing. According to the Supplemental Declaration, Ms. Srochi did not send emails to herself at the request of SHB, i.e., at the request of her attorneys and in relation to this litigation. Ms. Srochi now states that she has utilized the "protocol" since 2008. (Doc. 227-1, ¶ 2). The Trust appears to contend that every email Ms. Srochi ever sent to herself from 2008 to the present was sent "for the purpose of obtaining legal advice and accounting services from the attorneys and accountants for Jean Klempf and her Trust in coordination with each member of the Jean Klempf Privilege Group, including Dennis Blackburn, Dan Edelman, Steve Brust and Joseph A. Frein." (Doc. 227-1, ¶ 2).

Counsel for the Trust moved *ore tenus* for the Special Master to enter the Supplemental Declaration into the court record. Counsel for Counterclaim Defendants objected and requested that it be stricken from the record. The Special Master advised that he would take the matter under consideration. Without waiting for the Special Master's determination, the Trust filed the Supplemental Declaration into the record. (Doc. 227). For the reasons enumerated herein,

Counterclaim Defendants maintain their objections to the Supplemental Declaration and request that it be stricken from the record and not considered for any purpose.

## LEGAL STANDARD

Although typically applied when a party submits contradictory affidavits in the context of summary judgment motions or motions for judgment on the pleadings, a court may "disregard the new declarations as sham affidavits if the declarants contradicted, without explanation, their prior testimony that established there were no genuine issues of material fact." Lorentz v. Sunshine Health Prod., Inc., No. 09-61529-CIV, 2010 WL 3733986, at *11 (S.D. Fla. Aug. 27, 2010), report and recommendation adopted, No. 09-61529-CIV, 2010 WL 3733985 (S.D. Fla. Sept. 23, 2010); see also Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir. 2010); Lawver v. Hillcrest Hospice, Inc., 300 Fed. Appx. 768, 771 (11th Cir.2008); Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656 (11th Cir. 1984).

An affidavit or declaration may be disregarded as a sham when there is an inherent inconsistency between the new declaration and the prior testimony. Latimer, 601 F.3d at 1237 (11th Cir. 2010); see also Van T. Junkins, 736 F.2d at 657 ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

## ARGUMENT

A. **Ms. Srochi's declarations are completely contradictory on critical fact issues.**

Ms. Srochi's original Declaration attested to two (2) issues of fact which were pertinent to

the Trust's Response: (1) the existence of an agency relationship between herself, Jean Klempf, The Trust, Marc Klempf, and a list of attorneys and accountants retained by the Trust at various times since 2008; and (2) the defense of the attorney-client and work product designations as they relate to email communications between Ms. Srochi and herself.

Ms. Srochi's emails to herself listed on the log span a significant amount of time – from 2014 through 2019. (Doc. 214, Ex. A). This litigation began on September 6, 2017 and became reasonably likely to occur on or about June 23, 2017. (Doc. 1; see also Doc. 1, ¶ 31).[2] Counterclaim Defendants accordingly challenged both the attorney-client and work product designations. (Doc. 214, at pp. 10-11).

Counterclaim Defendants challenged the work product designation on the grounds that no description of the communications had been provided in order to determine whether the designation would be appropriate. (Doc. 214, at pp. 10-11).

In response, the Trust asserted that the email communications sent by Ms. Srochi to herself "were part of a protocol **requested by Smith Hulsey & Busey**." (Doc. 226-1, at pg. 3, Header) (emphasis added); see also (Doc. 226-2, at pg. 2, Header). Ms. Srochi's original Declaration clearly states that this "protocol" of sending emails to herself was implemented "to formulate and

---

[2] The Trust apparently believes that anticipation of litigation began in 2008, when the Trust hired Dennis Blackburn as counsel for the Trust. See Ex. A, at 38:24 – 39:17. Ongoing disputes among family members does not rise to the level of **reasonable** anticipation of litigation. See, e.g., Madura v. BAC Home Loans Servicing, LP, No. 8:11-CV-2511-T-33TBM, 2016 WL 3408393, at *2 (M.D. Fla. June 21, 2016), aff'd sub nom. Madura v. BAC Home Loans Servicing, L.P., 721 F. App'x 838 (11th Cir. 2017) (noting that never-ending threats of litigation cannot be considered in reasonable anticipation of litigation). The Trust has presented absolutely no evidence to establish that litigation was reasonably anticipated by the parties in 2008 or at any time prior to June 2017. At best, the Trust has merely established that the relationship between Jacques, Ms. Srochi, and other family members is contentious, which falls far short of demonstrating reasonable anticipation of litigation.

obtain legal advice **from SHB** [Smith Hulsey & Busey] as an agent for Jean Klempf and the Trust."
(Doc. 226-1, ¶ 7) (emphasis added).

SHB, however, was retained as counsel for the Trust in January 2017. (Doc. 226-2, ¶ 2). Ms. Srochi's explanation regarding her email "protocol" alone exposed several years of email communications between Ms. Srochi and herself to production because, even assuming the Trust's theory was correct, no work product protection could have attached to emails sent prior to SHB's engagement as counsel.

In direct response to this obvious flaw and anticipating Counterclaim Defendants' argument regarding the same, Ex. A, at 31:8-9, the Trust produced a Supplemental Declaration for Ms. Srochi. Critically, Ms. Srochi's protocol was no longer implemented at SHB's request. Instead, the Supplemental Declaration expands the time period in which Ms. Srochi utilized this protocol by nearly a decade: from 2017 to present to 2008 to present. (Doc. 227-1, ¶ 2). The Supplemental Declaration also expands the protocol's use from just the collection and retention of "information and opinions … to formulate and obtain legal advice from SHB" (Doc. 226-1, ¶ 7) to the collection of information for every attorney or accountant Jean Klempf or the Trust ever had from 2008 to the present. (Doc. 227-1, ¶ 2).

Missing from the Supplemental Declaration is any indication as to who instructed Ms. Srochi to initiate this protocol or whether she started doing it of her own accord. The Trust's Response, consistent with the original Declaration, states that "Dina Klempf Srochi sent emails to herself, as instructed by counsel[.]" (Doc. 226, at pg. 10). The Supplemental Declaration merely states that the email protocol has been utilized by Ms. Srochi since 2008. (Doc. 227-1, ¶ 2). The Special Master asked counsel for the Trust at the February 18, 2020 Hearing who, if anyone,

instructed Ms. Srochi to implement this email protocol. Ex. A, at 35:19-22; 37:15-19. The Trust's counsel had no answer. Ex. A, at 35:23-25; 37:20-23. Whether Ms. Srochi was instructed by counsel to collect information by emailing it to herself is a crucial issue as it relates to determining whether work product protection could possibly attach to these communications. See Regency of Palm Beach, Inc. v. QBE Ins. Corp., 259 F.R.D. 645, 650 (S.D. Fla. 2009) (noting that "the work product privilege does not attach automatically to any document sent to an attorney"); United States v. Consol. City of Jacksonville, No. 3:12-CV-451-J-32MCR, 2015 WL 7076695, at *5 (M.D. Fla. Nov. 13, 2015) (finding that a document created by an individual prior to litigation, and subsequently used to assist in litigation, was not work product protected because the individual created the document of her own accord).

Ms. Srochi's original Declaration was clear: Ms. Srochi began the protocol of sending emails to herself at the request of SHB. (Doc. 226-1, ¶ 7). The logical result of this explanation was that emails prior to SHB's retention as counsel, i.e., prior to January 2017, were not attorney-client or work product protected. When the Trust realized that this left potentially hundreds of email communications without any justifiable privilege designation, Ms. Srochi's testimony conveniently changed. The only explanation for this change in testimony is an attempt to create a fact issue as to when privilege might have attached to Ms. Srochi's emails in order to shield more information than what might otherwise be protected.[3] Just as in a summary judgment context, a

---

[3] Counterclaim Defendants do not waive their challenge to the attorney-client or work product designations for emails Ms. Srochi sent to herself from January 2017 to present that are listed on the privilege log because no description of those communications has been provided in order for Counterclaim Defendants to assess privilege. For the same reason, Counterclaim Defendants reserve their challenge to the attorney-client or work product designations to each individual email in email chains, which the Trust does not appear to have listed on the log and for which Counterclaim Defendants cannot properly assess privilege.

9

party cannot create a fact issue where none previously existed simply by providing a contradictory declaration, without explanation. Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984). Accordingly, the Supplemental Declaration should be stricken from the record and disregarded for all purposes.

### B. The Supplemental Declaration was prematurely filed.

At the February 18, 2020 Hearing, the Trust moved *ore tenus* for the Supplemental Declaration to be moved into the court record, which Counterclaim Defendants opposed. The Special Master advised that he would take the matter under consideration and address it in his order. Ex. A, at 71:9-16. Instead of waiting for the Special Master's determination, the Trust filed the Supplemental Declaration into the record on its own accord on the day of the Hearing. This action was premature and improper given that the matter is before the Special Master and his recommendation has not been issued yet. Accordingly, Counterclaim Defendants request that at a minimum the Supplemental Declaration be stricken from the record pending the Special Master's determination.

### LOCAL RULE 3.01(g) CERTIFICATION

On February 18, 2020, during a discovery hearing held before the Special Master, James Post, counsel for the Trust, moved *ore tenus* for the Special Master to accept the Supplemental Declaration as part of the court record. Andrew Steif, counsel for Counterclaim Defendants, opposed the *ore tenus* motion and requested that the Supplemental Declaration be stricken and not considered for any purpose. The Trust opposed the relief requested by Mr. Steif at the hearing.

### CONCLUSION

For all of the foregoing reasons, Counterclaim Defendants respectfully request that the Court strike the Supplemental Declaration from the record and disregard it for all purposes.

Respectfully Submitted,

**ABEL BEAN LAW P.A.**

/s/ Daniel K. Bean
Daniel K. Bean, Esq.
Florida Bar No.:0015539
Primary: *dbean@abelbeanlaw.com*
Andrew J. Steif, Esq.
Florida Bar No.: 0042475
Primary: *asteif@abelbeanlaw.com*
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202
Telephone: (904) 516-5423

*Attorneys for Foodonics International, Inc. and Kevin Jacques Klempf*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 27, 2020, the foregoing was filed with the Clerk of Court by using the electronic filing system, which will serve via e-mail this filing to all counsel of record.

/s/ Daniel K. Bean
Attorney