# EXHIBIT A

## Page 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FOODONICS INTERNATIONAL,
INC., a Florida corporation,

    Plaintiff,

v.    Case No. 3:17-cv-1054-J-32JRK

DINA KLEMPF SROCHI, as
Trustee of the Laura Jean Klempf
Revocable Trust, a Florida Trust,

    Defendant.
_____

DINA KLEMPF SROCHI, as Trustee of the
Laura Jean Klempf Revocable Trust, et al.,

    Counterclaim Plaintiffs,

v.

FOODONICS INTERNATIONAL, INC.,
a Florida corporation, et al.,

    Counterclaim Defendants.
_____

PROCEEDINGS BEFORE SPECIAL MASTER MICHAEL TANNER
PURSUANT TO AMENDED NOTICE OF HEARING BY
SPECIAL MASTER

DATE TAKEN: February 18, 2020
TIME:    9:54 a.m. - 11:21 a.m.
PLACE:    Gunster Law Firm
    225 Water Street, Suite 1750
    Jacksonville, FL 32202

This cause came on to be heard at the time and place
aforesaid, when and where the following Proceedings
were reported by:
Stephanie Powers Cusimano
Registered Professional Reporter
Florida Professional Reporter
Powers Reporting, Inc.
301 West Bay Street, Suite 1418
Jacksonville, FL 32202

## Page 2

A P P E A R A N C E S

ANDREW J. STEIF, Esquire
DANIEL K. BEAN, Esquire
JACQUELINE A. VAN LANINGHAM, Esquire

    Abel Bean Law, P.A.
    50 North Laura Street
    Suite 2500
    Jacksonville, FL 32202
    asteif@abelbeanlaw.com
    dbean@abelbeanlaw.com
    jvanlaningham@abelbeanlaw.com

    Appearing on behalf of Plaintiff.

    and

    S. GRIER WELLS, Esquire

    Gray Robinson, P.A.
    50 North Laura Street
    Suite 1100
    Jacksonville, FL 32202
    grier.wells@gray-robinson.com

    Appearing on behalf of Plaintiff.

JAMES H. POST, Esquire
MICHAEL E. DEMONT, Esquire
CHRISTOPHER DIX, Esquire

    Smith Hulsey & Busey
    1 Independent Drive
    Suite 3300
    Jacksonville, FL 32202
    jpost@smithhulsey.com
    mdemont@smithhulsey.com
    cdix@smithhulsey.com

    Appearing on behalf of Defendants.

## Page 3

P R O C E E D I N G S

February 18, 2020    9:54 a.m.

    THE COURT:  Everyone ready?  Morning.

    MR. POST:  Good morning.

    THE COURT:  Good morning, everybody.  Good
to see all of you.

    We'll go ahead.  And since we have a
record here, this is the matter of Foodonics
International versus Dina Klempf Srochi,
et cetera, et al., Case Number
3:17-cv-1054-J-32JRK.  And we're here on a
motion to compel privileged log filed by the
plaintiff/counter-defendant – defendants –
and that's document number 214 – and the
response to that by the counterclaim-plaintiff,
and that's document number 226 and attachments
to that.

    Let's go ahead and have everyone identify
themselves.  Let's start with the Foodonics
parties first.

    MR. STEIF:  Sure.  Andrew Steif and Dan
Bean from Abel Bean on behalf of Foodonics and
Jacques Klempf.  Grier Wells, Gray Robinson on
behalf of the same.

    MR. BEAN:  And Jackie.

## Page 4

    MR. STEIF:  Oh.  And Jackie Van Laningham,
Abel Bean as well.

    THE COURT:  Good morning.

    Mr. Post.

    MR. POST:  Good morning.  James Post, law
firm of Smith, Hulsey & Busey on behalf of Dina
Klempf Srochi as trustee.  With me today is
Mike Demont and Chris Dix, my partners.

    THE COURT:  Good morning, everybody.
Thank you.

    I did want to ask you before we get into
the motion we're here about today, I noticed
that there's been another lawsuit filed in
State Court.  I saw that in the motion to
dissolve a lis pendens.

    Does anybody anticipate that that will
affect either the scope or the timing of
discovery in this case in any way?

    MR. POST:  No.

    MR. STEIF:  I doubt it.

    THE COURT:  Okay.  So those are just going
to go on parallel tracks and –

    MR. STEIF:  Well, we'll probably diverge
on our take on what should happen, but I don't
think it will affect discovery.  We filed in

1 the State Court a motion to dismiss pending the
2 Federal Court resolution.
3     MR. POST: I agree.
4     THE COURT: You folks agree with that?
5     MR. POST: Correct. We agree that that
6 doesn't. If it did, we don't think it will
7 delay discovery in this case.
8     MR. STEIF: Yeah.
9     THE COURT: So you're not going to ask to
10 do any discovery in this case that would be
11 used in that case?
12     MR. POST: Correct.
13     THE COURT: Okay. Very good. So let's go
14 ahead with the motion to compel. I've read the
15 papers. Thank you for those.
16     Mr. Steif.
17     MR. STEIF: Do you need extra copies of
18 anything, motion or response?
19     THE COURT: No, sir.
20     MR. STEIF: I tabbed a copy of the
21 response because I'm going to talk about a
22 couple of documents, so – I don't have too
23 many things to hand you today, but there will
24 be some cases and some other materials. And
25 how about a copy of the color –

1     THE COURT: I have it.
2     MR. STEIF: Okay. Just a brief sort of
3 background, although I know that it's sort of
4 clear from what we filed, but we're here about
5 a December 23rd, 2019, privilege log with 1,911
6 entries. That's more than twice the 900-or-so
7 documents the trust produced in this case in
8 the course of two years.
9     The privilege log was produced nearly 15
10 months after the trust produced its documents
11 in September 2018. That was their production.
12 There was 890-some odd.
13     They've only produced 27 documents since
14 then, in July of 2019. We never got any notice
15 regarding withheld documents. A log was not
16 mentioned. It wasn't provided in September
17 2018, or even in July 2019, when they produced
18 their additional documents.
19     The September documents of 2018 were given
20 to us by way of a simple transmittal email.
21 It's not too significant, but I just wanted to
22 sort of give you a copy of that email. That's
23 how we got it.
24     I'm going to hand you later a copy of what
25 their discovery responses looked like, but it

1 has just a boilerplate objection that said, we
2 will produce all non-privileged documents.
3     There wasn't a mention of a privilege log.
4 You know, and you'll see in the response
5 numerous times that meet-and-confer meetings
6 were had about our client's privilege log,
7 there were hearings and things like that. Not
8 once did the fact that they had this
9 significant privilege log come up.
10     The privilege log that we did get came to
11 us on December 23rd as part of a transmittal of
12 third-party document productions that they
13 received over time.
14     I only got one copy of this, but it's just
15 a – how the folder looked, how we got it.
16 That – we didn't receive it on the 23rd
17 because of a technical issue, and it didn't get
18 served on Abel Bean. But when we did get it in
19 January, that's what the folder looked like.
20 It's at the bottom. The rest the folders are
21 third-party documents.
22     There wasn't a heads-up, we've got a
23 privileged log to give you. There was no
24 service of court document email. They used a
25 vendor to serve it. It got picked up by Gray

1 Robinson's spam filter, and we only found out
2 about in January on a meet-and-confer about
3 something else.
4     And it was served on January 23 – or
5 December 23rd, which is significant to us,
6 because we were here for three hours that day
7 talking about a number of discovery issues,
8 including Gray Robinson and Foodonics'
9 privilege logs.
10     And there was a significant motion on that
11 and an order entered about sanctions. And the
12 document was served seven or eight hours after
13 that hearing. I won't speculate about why, but
14 it's easy to say this is a one-sided issue when
15 you produce it after the hearing and we can't
16 talk about it.
17     We think, even in the sort of briefest
18 reviews of the log, you can see why it's
19 significant, not just because it's double the
20 production of a very small production we had,
21 there's no descriptions. You can't determine
22 privilege from the face of any of this, which
23 we'll talk about, and some of the categories we
24 think are clearly not privileged.
25     Our primary argument today is obviously

1  the waiver.  If I could, I could argue that
2  first, and then perhaps – I don't know,
3  however you want to go back and forth, but the
4  waiver is our primary and first argument.
5        THE COURT:  Go ahead with that.  But let
6  me ask you, so the –
7        MR. STEIF:  Sure.
8        THE COURT:  – the date on which you first
9  became aware of the privilege log was what?
10      MR. STEIF:  January 10th.
11      THE COURT:  January 10th.
12      MR. STEIF:  We don't deny that there was
13  an email from the vendor on the 23rd.  It was
14  picked up by Gray's spam filter, and it wasn't
15  served on Abel Bean, although we were counsel
16  of record in the case.
17      THE COURT:  Okay.  So that – we are
18  having a transcript of this.  So that the
19  record is clear, the email that you handed me,
20  why don't we have that marked –
21      MR. STEIF:  Sure.
22      THE COURT:  – not now, but afterward, as
23  Foodonics' parties Exhibit 1 to this hearing.
24  And then the screenshot you showed me, let's
25  have that as Foodonics' parties Exhibit 2 to

1  this hearing.
2      (Foodonic's Exhibit 1 was marked for
3  identification.)
4      (Foodonic's Exhibit 2 was marked for
5  identification.)
6      THE COURT:  Okay.  Go ahead.
7      MR. STEIF:  So our waiver argument is our
8  first argument, and it sort of takes everything
9  as a whole.  We think it's – the case law is
10  clear that privilege must be claimed and
11  asserted in a timely manner, and the failure to
12  do that waives it.
13      We've cited a number of cases, but the two
14  main ones that I want to talk about are
15  Universal City v. Ride & Show Engineering.
16  That's in our brief, as well as the Burlington
17  Northern v. United States District Court for
18  Montana.  I've got tabbed copies of those.
19      THE COURT:  Okay.
20      MR. STEIF:  In Universal City, relying on
21  Burlington – Universal City is a Middle
22  District of Florida case – it sort of sets out
23  a multifactor test to determine if a privilege
24  log is timely.
25      Using a 30-day default as a – 30-day

1  period as a default guideline, the District
2  Court's determination is case by case, and
3  there's factors to take into account.  The
4  degree to which the objection or assertion
5  allows us to evaluate the privilege, whether
6  they are boilerplate objections, the
7  timeliness, of course, is probably the most
8  significant, the magnitude of the document
9  production, and other circumstances that are in
10  the case.
11      In Universal, the delay in producing the
12  privilege log was less than eight months.  Here
13  we're talking about 15.  There were 13,000
14  documents at issue.  Here there's 1911.  So a
15  tougher job there.  But like here, no extension
16  was requested and there wasn't sufficient
17  information on the log, and the Court
18  determined that the privilege was waived.
19      The same result in Burlington.  That was a
20  five-month delay.  There were boilerplate
21  objections in the written response, like here.
22  We'll look at that.
23      And the Court actually says in Burlington
24  that, "Absent mitigating circumstances, the
25  five-month delay alone would require a waiver."

1  And that's at the yellow tab where the Court
2  holds that.  The Court says that it was filed
3  five months later.
4      "In the absence of mitigating
5  considerations, this fact alone would immunize
6  the District Court's ruling from reversal, but
7  additional circumstances supported," and, of
8  course, they talk about the lack of
9  descriptions and that there'd be nothing
10  burdensome to have complied with the
11  obligations.
12      Here in our case – I'll wait till
13  you're –
14      THE COURT:  Go ahead.
15      MR. STEIF:  In our case, you know, where a
16  privilege log produced within 30 days is
17  presumptively timely, in our belief a delay of
18  15 months is clearly untimely.  We've got case
19  law where a third of that delay, or half, was a
20  waiver.
21      Second, the privilege log – or the
22  objections from the trust – these are their
23  responses to the request for production.  Each
24  one has something – I haven't seen categories
25  like this, but it says "specific objection" in

1  response to pretty much all of them, but all it
2  really says is, "Defendant objects to the
3  extent that it demands documents categorically
4  protected from disclosure by the
5  attorney/client privilege or work product
6  doctrine."
7          It doesn't say what's withheld. To us
8  that's boilerplate.
9          The main factors – the other main
10 factors, the magnitude of the document
11 production here. They've produced less than
12 1,000 documents. There just isn't an excuse
13 for 15 months of delay for 1,911 others.
14         And then the particular circumstances are
15 that the privilege log doesn't contain any
16 descriptions and the – sort of the facts
17 relating to the timeline of events, most of
18 which are described in Mr. Post's declaration
19 and in their motion.
20         In their response, they call a waiver
21 draconian, but there's no viable opposition.
22 They agree in their response that this could
23 have been done earlier, and that's probably all
24 we agree on, but then argue that there's no bad
25 faith or intentional conduct, which is both not

1  we look at documents of that amount in a day
2  when we prepare for a deposition or when we
3  learn this case. And for a firm that size,
4  it's just not an excuse. Perhaps that's a
5  week's worth of work, not six months.
6          And under any circumstances we think the
7  production after the 12/23 hearing was
8  intentional. Certainly we could have discussed
9  it had it come up before that. We're here to
10 discuss it now.
11         The trust has cited a number of cases in
12 the response saying, you know, there are
13 circumstances in which it shouldn't be waived.
14         There are a couple of cases I want to
15 cite, and I think these are worth looking –
16 these are the Tyne and the Anderson cases.
17         And I don't want to refer to them too
18 heavily other than to say that they're
19 significant because they don't analyze this
20 specific issue in the way that they're stated
21 to.
22         The Tyne case, the motion to compel was
23 actually granted and denied in part, and
24 there's no analysis of waiver as a result of
25 untimely production. It's based on a

1  true and isn't the standard anyway.
2          The list of procedural events in the
3  declaration and in the response supports our
4  argument that the work was entrusted to a staff
5  member is legally irrelevant as is a move of an
6  office. Most of the events occurred in – and
7  I'll – I'm going to be talking about this –
8  Mr. Post's declaration, which I think is
9  Exhibit B.
10         THE COURT:   It is.
11         MR. STEIF:   Anyway, but most of the events
12 that are referenced in there are in October and
13 November of 2018, when probably this would have
14 been appropriate as serve to us. The
15 references to the many discussions regarding
16 privilege logs and discovery meetings are
17 ironic in that it supports our argument because
18 this should have come up from their end.
19         The timeline skips ahead from 2018, many
20 months later, into 2019 without explanation.
21 And then, sort of hard to believe for us, it
22 says that, "Counsel reviewed the 1911 documents
23 in batches for six months, from June to
24 December."
25         Well, maybe we're just fast, but that –

1  different – on a different issue.
2          And then in the Anderson case, which is
3  helpful for other things, the main issue was
4  the sufficiency of the privilege log, not an
5  argument that the document should be produced
6  because it was untimely.
7          So there's no cases that they have cited
8  that are directly on point. And we can't find
9  a single case where a privilege log was
10 withheld this long. There is ample basis for a
11 waiver under these types of circumstances and
12 much better in a much shorter time for delay.
13         I think – on those bases, we think
14 clearly, as a factual matter, as a legal
15 matter, waiver is required. 15 months is far,
16 far too long. And given the significance of
17 the documents and the timing, all the facts,
18 the circumstances of this case clearly warrant
19 it, and we think waiver is warranted here.
20         THE COURT:   Okay. Do you want to go on to
21 the rest of your argument?
22         MR. STEIF:   I can.
23         THE COURT:   Yeah, why don't you go ahead
24 and do that. And by asking you to do that, I'm
25 not indicating one way or the other what I

1  intend to do on the waiver issue.

2      MR. STEIF:   Alternatively, you know, all

3  of the arguments we make on the categories sort

4  of rely on the first premise that the privilege

5  log doesn't contain descriptions of what we're

6  talking about.  There are -- we challenged

7  certain categories.  And as to all of the

8  categories, that's sort of the relevant -- the

9  relevant starting point.

10      We cited this A.H. Biscayne case for the

11  types of descriptions that are required for

12  privilege logs.  It's also described in our

13  motion.  There are seven requirements.

14      And I won't go through all of them, but

15  they're listed in here.  Some of them include

16  the date the document was prepared, the subject

17  matter, the purpose, the title of the -- and

18  description of the document.  Essentially it's

19  the factors that allow you to sufficiently

20  describe.

21      And then really significant, particularly

22  to the emails here where Ms. Srochi emailed

23  something to herself and that's all we know,

24  which is hundreds of these documents -- when

25  the documents or communications involved email

1  chains, you're supposed to list each email

2  individually.

3      And as we'll talk about with Ms. Srochi,

4  that's significant because we have no idea what

5  she sent to herself.  She could have sent an

6  email that was privileged, maybe not.  Maybe

7  it's about a dispute, maybe not.  Could be

8  about her grocery list.  We just really have no

9  idea.  And the trust privilege log doesn't

10  contain any description of the 2,000 emails.

11  There's no title, no subject matter, no

12  explanation for why it was sent.

13      The response on this is, we think, without

14  merit.  Rule 26 doesn't contain the factors,

15  but the silence on those factors is filled in

16  by the case law.  And a lack of the description

17  requirement runs afoul of Rule 26.  Even if

18  five of the seven factors are required, or four

19  or six -- it doesn't need to be all seven.

20  It's the totality of it.  The categorical

21  descriptions are just not sufficient.

22      They contend that there was some tacit

23  agreement as to the form of the privilege log,

24  and that's just not correct.  They didn't like

25  ours and they moved to compel what they chose

1  to move to compel.

2      There's nothing unduly burdensome here

3  about requiring descriptions.  They've had 15

4  months.  They've produced very few documents.

5  They seek $73 million in punitive damages in

6  their expert report.  It's not a voluminous

7  amount of material at all.

8      And as suggested in the Anderson we cite

9  in our brief, just because it would be

10  time-consuming or there are other pressing

11  deadlines is no excuse to fail to produce a

12  sufficient privilege log.

13      The first category that we challenge is

14  the emails that Ms. Srochi sent to herself.

15  Those are the ones that are generally

16  highlighted in blue on the privilege log.

17      THE COURT:   Uh-huh.

18      MR. STEIF:   Numerous entries identified

19  her as the sender and the recipient.  As a

20  matter of law, an attorney/client privilege

21  document needs to be a communication with an

22  attorney.  They've said something otherwise.

23  It's just false.

24      The Maplewood Partners case, 295 FRD 550,

25  says that, "Communications are not protected if

1  they do not include an attorney."

2      There's no cases that they cite where a

3  Court has held that attorney/client privilege

4  applies if the information isn't sent to an

5  attorney.  That contention doesn't make sense.

6      And the same applies to the accountant

7  client, it has to be between an accountant and

8  the client.  Here she's just emailing to

9  herself.  We think -- so that's the first

10  designation that really applies to what they

11  listed for each.

12      Work product is the second one, and that's

13  the more significant.  It's impossible for us

14  to know if it's work product or not.  There's

15  no description.  They have the burden of

16  proving that it's work product, and they just

17  haven't.

18      They say that there's a policy that Smith

19  Hulsey said, send these to yourself to help

20  organize them and then talk to them about this,

21  but it would be the follow-up things that could

22  be privileged, the call or the email to them

23  where they talked about it, which we don't know

24  when that happens and we don't know what she's

25  organizing or sending to herself.

It's -- an argument that this could be categorically applied is sort of silly to us. The subject of the email might be protected or it might not be. Is it advice for the trust? Is it advice for her personally as a beneficiary? Is it about a dispute? Is it not? Are the underlying emails even privileged? All these things we don't know. And then each email in the chain needs its own determination.

And a real significant point here is how close in time are her emails to herself to the underlying emails. So to us it sounds like something you would do to insulate a whole group of documents that aren't privileged -- as privileged, but we just have absolutely no idea.

Her declaration says that it was a Smith Hulsey policy. I don't know when she, if ever, became a Smith Hulsey client individually, but there are emails that date all the way back to 2015 in here.

I didn't think they had been retained that early, but we don't know. And we think it's highly unlikely that litigation was anticipated

all throughout this time, but, again, we have to know what the document's about.

The Regency of Palm Beach case -- this is a Southern District, 295 FRD 645 -- stands for the simple proposition that the work product privilege doesn't even attach automatically to any documents sent to an attorney.

Here we don't even know if she did. She might have discussed something later with somebody, but we don't know and we don't know what they relate to.

And I think -- we think that you can make a decision on this categorically, because we've been here for 15 months waiting for this and they bear the burden to satisfy a privilege, and it just doesn't.

The second major category are communications between Ms. Srochi and the trust counsel or the accountants before she was trustee. That's February 5th, 2016. Those are in yellow. There's probably 500 of these, but there are hundreds.

She talked to either Mr. Blackburn or Mr. Edelman, the accountant, prior to her appointment. The case law, which is

predominantly set forth in the Turney case, which is a First DCA case, 824 So.2d 172, stand for the proposition that, "An attorney" represented -- "retained to represent a trust represents the trustee, not the beneficiaries."

And it's not changed by who pays the lawyer's fees. The trustee is the client. I don't think that's disputed here. The same principle applies to the accountant/client privilege, because it's between the accountant and the client.

For his part, and I brought the rough transcript, if we need it, Mr. Edelman testified that he represented the beneficiaries as well, but he didn't have an engagement letter and couldn't testify who paid him.

What they -- what the trust contends supplies the basis for the privilege is that there's an agency between the trust and Ms. Srochi and Mark Klempf, who is Mr. -- who is their brother, and that they're agents of the trust, but they haven't established that.

The basis for that is a durable power of attorney that's attached to the response brief. And I'd like to cite you to that one because

there's a specific provision I want to talk about. It's attached as, I guess, Exhibit 1 to Exhibit A, which is Ms. Srochi's declaration.

I want to point out that the durable power of attorney is between Ms. Klempf individually and Ms. Srochi, who has power of attorney. Mr. Klempf is sort of third in line on this thing.

THE COURT: Which paragraph are we looking at?

MR. STEIF: Okay. So I'm going to -- there's a number of powers that are enumerated for individually, but at page 7, there is a limitation.

And it says, "Limitations, notwithstanding the powers contained, my agent may not, E, exercise powers and authority granted to me as trustee."

Court-appointed fiduciary, that's dispositive because there's nothing contrary to that. The power of attorney did not give Dina Srochi or Klempf the authority to act on behalf of the trust, and there's nothing else.

The power of attorney, I'd also note, was signed in April 2015, and there are dozens of

1 emails that are on this privilege log from
2 before that. So it's not even alleged that she
3 had even a power of attorney at that time. And
4 the trust has provided nothing to demonstrate
5 that Mark Klempf was ever an agent of the
6 trust. He was third in line on this.
7 And having looked at the documents, he
8 never did anything. He never acted on behalf
9 of anybody. He just got copied on things,
10 which, of course, we haven't seen in the
11 privilege log.
12 Again, we cited the Turney case, which
13 they don't rebut. The trustee alone is the
14 client.
15 And then just as an alternative argument,
16 even assuming that there was an agency, which
17 there isn't, you can't assume that just because
18 she sent it or received it that that's
19 privileged. It has to be for a trust purpose.
20 It has to be for an agency purpose.
21 And, of course, we have no idea what was
22 happening, what was being said, or what work
23 was being done. You know, what if she's just
24 being copied on an email saying something's
25 going to happen at some time? But we probably

1 MR. STEIF: No, not in our view, and the
2 case law doesn't support it. And, of course,
3 she had competent counsel and an accountant to
4 act for her, to the extent she needed it. And
5 the authority that they claim is negated by a
6 document. It's negated by the power of
7 attorney document. So contrary to that.
8 And then even that, you'd still have to
9 show – even if you sort of bought their
10 argument that the emails were for the type of
11 purpose that they say they were, which we have
12 no way of telling, we made a separate argument
13 about Mark Klempf's emails, which we sort of
14 already addressed now.
15 THE COURT: Right.
16 MR. STEIF: There was a couple of other
17 ones, people who weren't identified. Those are
18 mostly resolved, although we still challenge
19 emails where Ms. Srochi's husband was copied,
20 because I don't know how that would extend a
21 privilege or relate to this.
22 And there are two firms whose involvement
23 we – is not described, but I think we can
24 resolve that separately, assuming that the
25 answer makes sense.

1 don't – we don't need to get to that, because
2 there's no agency here.
3 THE COURT: But what do you say about
4 their argument that she needed – that Jean
5 needed the assistance of her daughter and her
6 son more generally, not just related to the
7 durable power of attorney, but because she was
8 aged and infirm and didn't – what about that?
9 MR. STEIF: Yeah, Mr. Edelman testified
10 that he spoke to Jean numerous times. She
11 didn't send emails, but that didn't mean that
12 she was incapable. There's numerous emails
13 saying Jean approved this or Jean approved
14 that. There's no evidence beyond a sort of
15 self-serving declaration now that she couldn't
16 speak to the subjects that –
17 THE COURT: Yeah, but, I guess, as a
18 matter of law, is that sufficient? If an aged
19 person, let's say, does need – or any person
20 needs the assistance of someone or wants the
21 assistance of someone in a close familial
22 relationship to seek legal advice or accounting
23 advice, does that bring that person within an
24 agency relationship or within the scope of the
25 privilege?

1 There was an objection about the common
2 interest privilege being listed. In the
3 response, they sort of said, well, we didn't
4 really mean common interest in the way that the
5 law says it's meant.
6 So I'm not sure that that's disputed,
7 because the common interest privilege is not a
8 separate privilege, it just allows you to
9 maintain things like attorney/client work
10 product, and it also requires separate counsel.
11 And so there – I believe that may be
12 non-disputed, but I'd like to reserve the right
13 to come back to that if they do contest that.
14 THE COURT: Okay. I did have one question
15 for you. In the response, they said that some
16 of the documents that were – that they took
17 off of one of their –
18 MR. STEIF: Uh-huh.
19 THE COURT: – interim privilege logs were
20 communications with private wealth
21 management –
22 MR. STEIF: Yeah. There wasn't an interim
23 privilege log. They're saying they're going to
24 do it now, but we're not contesting that.
25 THE COURT: Interim privilege log, they

1  didn't say that. That was my term.
2      MR. STEIF:   Okay. You're right.
3      THE COURT:   But one of the arguments they
4  make is that those documents were not
5  responsive to any of the requests by Foodnics,
6  the Foodnics parties. What is your response
7  on that?
8      MR. STEIF:   I'm not 100 percent sure, but
9  we're not contesting their removal of those –
10     THE COURT:   You're not?
11     MR. STEIF:   – subject to us coming back
12  to that at a future time.
13     THE COURT:   Okay. Okay. Very good.
14  Thank you.
15     Mr. Post, Mr. Demont, Mr. Dix, which one
16  of you is –
17     MR. POST:   It's me. I'm the lucky one.
18     THE COURT:   You're up. Okay.
19     MR. POST:   Well, Your Honor, I think I'm
20  going to address the arguments in reverse
21  order, if that's all right.
22     THE COURT:   Sure.
23     MR. POST:   As we set forth in our motion,
24  the communications between the parties are in
25  the diagram, in our response as did Jean Klepmf

1  prove are true, these are people that Jean
2  Klempf relied upon in her elderly years to
3  help her understand and act upon legal advice
4  and strategy that she needed to implement in
5  dealing with, unfortunately, a running problem,
6  legal disputes with her son that, as he put it,
7  that lasted – went over a 15-year
8  period, until she finally managed to get her to
9  redeem her stock, we allege, under false
10  pretenses.
11     So she had around her helping her her
12  son – her son and daughter that were still the
13  beneficiaries of the trust, Mark and Dina, and
14  she had different attorneys. At the beginning
15  she had Dennis Blackburn from – all the way
16  from 2008, and later on they hired – brought
17  on Steve Brust, and later on they brought on
18  Joel Frian, and later on they brought on our
19  firm. And they brought on Dan Edelman later in
20  2015 as a CPA and as an adviser to help
21  negotiate what ultimately became the redemption
22  agreement.
23     Jean Klempf was elderly. She didn't do
24  email. She relied on her daughter and her son
25  to help her navigate through all that. It's a

1  clear application of the agency privilege. And
2  it is an exception to the general rule that
3  disclosure to a third party waives the
4  privilege.
5      The only evidence you have in front of you
6  today is the declaration of Dina Klempf and
7  myself. And I have a supplement of Dina's
8  declaration here, anticipating one of the
9  arguments that might be made today, if I can
10  submit at this time.
11     THE COURT:   Okay.
12     MR. POST:   And in this supplement, Dina
13  states that the protocol she described in her
14  declaration, which she utilized with Smith
15  Hulsey, was actually something that she
16  utilized with all professionals in 2008.
17     And let me just say, there was no
18  addressing the law in our response about how –
19  let me get – cite the right pages. Page 9,
20  that information gathered by a client to – in
21  memorandums to – or notes to themselves to
22  provide later to an attorney were protected by
23  attorney/client privilege.
24     It was Dina – these emails in question
25  were not delivered to anybody but to Dina

1  herself. And she selected them because she
2  thought her professionals might want to –
3  needed them or use them in connection with
4  providing the legal and accounting services
5  that were being provided over this long period
6  of time. It was her way of staying organized.
7      And the – none of these emails – all of
8  the emails just reflect her own thought
9  process, her own work product that she was
10  identifying to be shared with attorneys and
11  accountants. And in some instances – well, in
12  most instances, they were either shared either
13  directly or at least over the phone, and having
14  seen her notes.
15     So, you know, in hindsight maybe we
16  shouldn't even put them on a privilege log.
17  But, technically, they – when the search terms
18  hit her email account, those things popped up,
19  so we put them on the privilege log, but I'm
20  not even sure we needed to since they weren't
21  even communications with third parties. They
22  ultimate – except as her declaration
23  indicates, they were communications, the
24  substance of which, and sometimes the actual
25  documents, were forwarded to her counsel and

1 advisers.

2 And if you can imagine that she, in 2017,

3 sent an email to Smith Hulsey saying, here is

4 an email that Jaques Klempf sent me back in

5 2012, and I think you ought to look at, that is

6 the kind of thing that she was doing. And the

7 document that might have been attached in that

8 hypothetical would be something that they would

9 know about because it's in their client's

10 possession or it's something that – that

11 that – at least that would have been subject

12 to being privileged – to being produced had it

13 been asked for from the trust.

14 THE COURT: Let me understand what you're

15 saying here. This is significant because I did

16 notice that a number of those emails in there

17 between Ms. Srochi and herself predate the date

18 when your firm –

19 MR. POST: Right.

20 THE COURT: – was engaged –

21 MR. POST: Right.

22 THE COURT: – and, yet, she said in her

23 declaration that, "Pursuant to a protocol

24 between myself and Smith Hulsey & Busey,"

25 which, I mean, that indicates that the protocol

1 was new when your firm was engaged, and this

2 suggests that it wasn't.

3 MR. POST: It was inherited.

4 THE COURT: Inherited.

5 MR. POST: Inherited. This was her –

6 THE COURT: So what was the protocol?

7 Did – protocol means a lot of different

8 things. So what is it? What was the protocol?

9 MR. POST: We – like a lot of clients in

10 these kind of family-type cases, she's got a

11 lot to say about a lot of stuff. And rather

12 than have her come in our office and – for

13 days or time, we allowed her to basically

14 collect information that she thought was

15 significant and send it to us, and we vetted it

16 for the purposes of determining whether or not

17 it was important enough for us to implement

18 somehow in our services or our strategy or –

19 and, I guess, do – it might determine – it

20 might determine strategy we don't take because

21 of what she's giving us.

22 So that – and that's the process she

23 started with Dennis Blackburn back in 2008.

24 And, as I said, we inherited it. And it went

25 on through – it's going on today.

1 THE COURT: I'm assuming from what you

2 said that when she became your firm's client,

3 you said something to her to the effect of, if

4 you have emails or if you have thoughts or

5 ideas or things that you want us to know about,

6 you can email them to yourself and then later

7 share them with us. That's what I took this to

8 mean. And a number of those emails on the log

9 are that sort of communication. Am I right

10 about that?

11 MR. POST: That's correct. And I would

12 modify that slightly by saying that we saw, we

13 knew that that was something she had been doing

14 before, when we first got involved. And she

15 said that – and she said that she – is that

16 okay? Can I do it this way? and we said, yeah,

17 that's a good idea. And that's how we handled

18 it.

19 THE COURT: And so did Dennis Blackburn

20 instruct her to – or advise her to do that,

21 beginning back in 2008, or some other lawyer,

22 Steve Brust?

23 MR. POST: One of the – well, they both

24 used the process, the protocol. Which one of

25 them helped her come up with it, I'm not sure.

1 THE COURT: Well – and I'm really

2 thinking out loud here with you. Would there

3 be a difference between a situation where a

4 lawyer said to her, if you have thoughts or

5 ideas, as your firm did, share those with

6 yourself and then later give them to us? Would

7 that be different if no lawyer told her to do

8 that, but she just did that herself and later

9 then gave them to her lawyer without being told

10 to use that procedure? Would that make a

11 difference?

12 MR. POST: We believe it would not make a

13 legal difference in her – in fact, it's work

14 product.

15 And I would cite to this case on page 9,

16 where –

17 THE COURT: Page 9 of your response?

18 MR. POST: Right. There's three cases

19 that are cited where an attorney – or a

20 client's collecting information – clients are

21 collecting information to give the attorney.

22 And I forgot which one of these cases it is.

23 It's either the Lemonik case or the

24 Rolland case where the client in question,

25 before he even hired an attorney, wrote down a

```
1    memoranda and notes and diagrams of what he
2    thought was going to be legal issues that he
3    wanted to ultimately preserve in his mind and
4    ultimately did share with the attorney.  And
5    the Court in that case said that was
6    privileged.
7           THE COURT:    And that was this Halifax
8    Hospital case?
9           MR. POST:    Yes, it was -- well, it's
10   either the -- that case or the Merlin case.
11   Yeah, the -- so I think that -- I think it's
12   the third or fourth case on that page.  I think
13   that -- I think that -- so I think the answer
14   to your question would be yes.
15          THE COURT:    So -- but sitting here today,
16   do you know whether -- do you know for a fact
17   that a lawyer, be it Mr. Blackburn or Mr. Brust
18   or another lawyer, advised her to use that
19   procedure at some point in 2008?
20          MR. POST:    I know for a fact that it was
21   utilized by Mr. Brust and Mr. Blackburn.  I
22   don't know which one might have helped her come
23   up with it, but we inherited it.  And it's --
24   and, as I said, I -- like some of the other
25   documents that I've removed from the privilege
```

```
1    log, I would -- if I didn't have a problem with
2    it, I would remove these from the privilege log
3    as well, because I don't think they're
4    communications.
5           THE COURT:    Uh-huh.
6           MR. POST:    And they are her mental
7    impression of what's important in dealing with
8    these legal issues she's having with Jacques
9    Klempf over the years.
10          THE COURT:    And a related question is
11   this, I meant to ask you, and so at what point
12   in time did you contend there was an
13   anticipation of litigation sufficient to invoke
14   that prong of the work product privilege?
15          MR. POST:    Well, in our -- in my motion
16   you saw there was a letter from Dennis
17   Blackburn in 2008.
18          THE COURT:    Right.
19          MR. POST:    There was another letter from
20   Steve Brust at a later date.  That was the
21   beginning of -- well, not the beginning.  It
22   was the -- it was -- actually, that -- it
23   actually began in 2006.
24          But in 2008 Jean Klempf had hired Dennis
25   Blackburn to deal with the issues she was
```

```
1    having with Jaques Kiempf at -- with respect
2    to, I think, the failure to make distributions
3    at the company, squeezing her for cash.
4           And then you see in that letter attached
5    to the motion, Jaques Kiempf is offering to buy
6    the stocks so she can have more cash, and
7    Dennis Blackburn is saying, no, she's not going
8    to buy your stock.  And, oh, by the way, you
9    need to give us information about these loans
10   you're taking out from the company.
11          So that's -- that was part of this saga
12   between Jaques Kiempf and Jean Kiempf, the
13   tension that was going on that was actually
14   cited in the settlement redemption agreement as
15   disputes between shareholders.  It's in the
16   recitals.  And, unfortunately, those disputes
17   continued even after redemption.
18          THE COURT:    Okay.  I interrupted you.
19          MR. POST:    No, no, that's fine.  I kind of
20   segued into that.  We were still -- I was
21   talking about the privilege group and why they
22   were put together and how they operated.
23          And I would point out that that's the only
24   evidence you have in this case.  Everything
25   he -- Andrew's arguing is conjecture.  It's
```

```
1    speculation.  Attorney argument is not
2    evidence.
3           In that regard, I would provide to the
4    Court a -- this case, which talks about the
5    burden of proof in matters such as this.  And
6    the burden -- once it's shown that we've
7    demonstrated it, that there has been a -- the
8    documents are privileged, the burden shifts to
9    the plaintiff to prove facts otherwise.  And
10   our declarations and our response show that
11   there was an agency exception to all these
12   communications that was in existence during
13   this period of time.
14          And as Dina Klempf mentioned in her
15   declaration, Mrs. Klempf didn't even do email,
16   and was periodically infirm over the -- over
17   these last few years until she died in 2017.
18          And we cited the cases that -- where
19   agencies -- the agents -- agency can exist not
20   only by way of formal representation, much like
21   Dan Edelman's representation of Jean Klempf and
22   the trust, but also through the children of a
23   party who are close to them and helping them
24   navigate through these kind of things, these
25   kind of legal issues.
```

1     And the power of attorney was nothing more
2 than evidence of the fact that Jean Klempf
3 considered Dina and Mark to be people that she
4 was relying on as her agents. It wasn't –
5 we're not saying the power of attorney is
6 dispositive of that issue, it's simply evidence
7 that Dina – that Jean Klempf was relying on
8 Mark and Dina for that purpose.
9     So – and the – and it was the – it is
10 the fact that Dan Edelman also represented not
11 only Jean, but also Mark and Dina in connection
12 with the Redemption Settlement Agreement.
13     And if you look at the Redemption
14 Settlement Agreement that's attached to the
15 Complaint and the Counterclaim, it identifies
16 Dina and Mark and Jean and Jean's trust all as
17 sellers in that agreement.
18     I think I'll – unless you have more
19 questions about the emails that Dina – to
20 herself, I'll talk about the sufficient
21 information part of this.
22     THE COURT: Well, before we get to that, I
23 did have a couple of questions on the agency
24 issue.
25     So when I look at the privilege, and you

1 used the term – your firm used the term
2 "common interest." If I understood your
3 response, that really meant the agency
4 relationship. That's what you were really
5 saying there, not the common interest –
6     MR. POST: Yes. We were –
7     THE COURT: – privilege that's typically
8 understood with multiple defendants and
9 multiple parties.
10     MR. POST: Yes, we were not being precise.
11 And the – but they're related concepts.
12 There's these – there's three concepts that
13 all – are exceptions to the disclosure to a
14 third party. One's joint representation,
15 another is the common interest, and the last
16 one – first, I guess, is agency. And so that,
17 yes, we were talking about agency.
18     THE COURT: Okay.
19     MR. POST: With respect to the
20 description, I would like to hand up to the
21 Court the first and last page of the privilege
22 log from Gray Robinson, which shows 12,817
23 items listed on this privilege log, and the
24 first and last page of the Foodonics' privilege
25 log.

1     THE COURT: So I'll tell you what I'm
2 going to do, since we have a record here, I'm
3 going to take the first handout you gave me and
4 we'll make that the Trust Exhibit 1. And the
5 second privilege log sheet you gave me, that
6 will be the Trust Exhibit 2.
7     (Trust's Exhibit 1 was marked for
8 identification.)
9     (Trust's Exhibit 2 was marked for
10 identification.)
11     MR. POST: Should we make Dina's
12 Supplemental Declaration 3?
13     THE COURT: Yeah. You're not going to
14 file that, are you, or are you?
15     MR. POST: I can, but –
16     THE COURT: We can make it Trust Exhibit
17 3, then, so we know what we're talking about
18 here.
19     MR. STEIF: I think we've got an objection
20 to the timeliness of that document.
21     THE COURT: Yeah, I want to get to that,
22 and what we do about the fact that it's given
23 here today for the first time. So – but we'll
24 mark that. So the record is clear, the
25 supplemental declaration will be Trust Exhibit

1 Number 3.
2     (Trust's Exhibit 3 was marked for
3 identification.)
4     MR. POST: So the Trust Exhibit Number 2,
5 the Foodonics/Jack Klempf's privilege log show
6 on the first and last page 5,631 items listed
7 as privileged. These are the – and you can
8 see what their descriptions look like in their
9 privilege logs. And I point that out – well,
10 I'm not so sure with whatever case.
11     THE COURT: Thank you.
12     MR. POST: I'm handing you a case, which,
13 I imagine, the – I guess states the obvious.
14 And that is, the Court can understand that if
15 someone's privilege logs are not
16 sufficiently – are not sufficiently different
17 than another one, the same deficiency could be
18 found in the other parties'.
19     So the first point is the format of our
20 privilege log was the same as the privilege
21 format by the Foodonics parties and Gray
22 Robinson.
23     And we had, of course, many concerns about
24 the privilege logs. And at no time did we
25 challenge the categories of the information,

1    the description, and we were only going against
2    basically the -- challenging the disclosure to
3    third parties.
4       And as the Foodonics -- in their very
5    motion to compel, I put on page 9, footnote 4,
6    the Foodonics' parties say that their privilege
7    log entries clearly listed a third party as
8    recipients to make it possible for the trust to
9    access privilege, collect their own without the
10    need for a description of the document.
11       Well, in what Judge Corrigan called one of
12    the most contentious cases that he has, here we
13    are -- after he's set in stone a discovery
14    cutoff date, we get a motion to compel asking
15    for the draconian relief of waiver under
16    circumstances in which they're -- we haven't
17    filed any court orders. We haven't kept
18    anybody in the dark. We were busy in this
19    case. We've been very busy. And our resources
20    were devoted with our full gas foot on the
21    pedal to get this case done.
22       We picked our battles. We didn't -- we
23    could have fought over the description of these
24    categories, I guess, and then -- or we could
25    have -- and then we could have argued about,

1    with reference to categorical privileges, which
2    the rules allow. And -- but we didn't pick
3    that battle, and we got to the point where we
4    did in this case. And at no time did they ask
5    me for a privilege log or say, hey, where is
6    your privilege log?
7       And I recognize that that's not
8    dispositive of anything, but it is something
9    the Court should consider, given the fact that
10    none of the cases cited for waiver talk about a
11    hard and fast rule.
12       And the Universal case that -- Universal
13    City says it needs to be a case-by-case
14    determination. It needs to be a holistic,
15    reasonable analysis.
16       THE COURT: Well, I think their point is
17    maybe a little different. It's that within
18    the -- in the spirit of candor and full
19    disclosure and working together to try to have
20    the case move forward and issues that you know
21    are likely to come up resolved, I think they're
22    saying, why didn't you bring it up, at least
23    let them know there was a privilege log coming,
24    and bring it up to Judge Corrigan at the status
25    conference or bring it up to me on December

1    23rd.
2       MR. POST: There was -- well, there was a
3    privilege log coming, and it was disclosed,
4    because it was part of the agreed discovery
5    protocol we had with Gray Robinson. We agreed
6    that there -- and it's cited in our
7    declaration.
8       We agreed that there would be search --
9    how we would do this, there would be search
10    terms, there would be a production, and then
11    there would be a privilege log, which would be
12    gleaned -- from which would be gleaned
13    irrelevant material so we don't dump on each
14    other.
15       THE COURT: Well, actually, you know, I
16    looked at the Exhibit E to your response, and
17    it says both Mr. Santana's email to Mr. Dix and
18    then his email back said, we should each review
19    our respective data for privilege and relevancy
20    prior to production to avoid document dumping.
21    So, I mean, when I read those, it looks like
22    the agreement was that there would be
23    disclosure of privilege logs, or at least the
24    fact that there would be forthcoming a
25    privilege log at the time or prior to

1    production. I mean, that's what it looks like
2    was agreed to to me.
3       MR. POST: Well, I take that -- you're
4    right, Your Honor, that's what it does say.
5    But that was probably not well-phrased and
6    that -- from a timing standpoint. But from a
7    substantiative standpoint, the privilege log
8    should have been reviewed to avoid document
9    dumping.
10       We did it in this case. They didn't. The
11    documents on their privilege log is a dump.
12    And rather than pick the battle of having
13    them -- I mean, we were picking our battles to
14    try to get this case to issue.
15       And so although, yeah, I agree with you
16    that this -- the timing-wise, that is not a --
17    underlie -- undermines what I'm telling the
18    Court, that was the concept. And, candidly, in
19    our view, it was a minor part of this case for
20    us because -- and it got lost in the shuffle a
21    little bit, as is evidenced from our
22    declaration.
23       But there wasn't any sandbagging here.
24    There wasn't -- I didn't think it would be an
25    issue, given the fact that we didn't make the

1 issue for them, but now we are. And now
2 instead of turning down the heat on the
3 contentiousness, they're turning it up, asking
4 for a full waiver of all of our documents, the
5 draconian relief.
6 And I would cite, you know, the Universal
7 City case was a limited holding. The
8 limited – it only held that a right to claw
9 back one document was waived. It didn't say
10 that 17,000 – or 1700 documents were –
11 privileges were waived.
12 And we rely on the cases we cited in our
13 memorandum for Courts to say that that –
14 there's no per se rule of wavier, and the
15 attorney/client privilege is too important to
16 treat that cavalierly, in the sense that that
17 relief would require us to get – go seek
18 emergency relief on appeal and all that stuff.
19 And then we're trying to get to the finish line
20 on discovery here, not create more work, more
21 litigation.
22 THE COURT: I did have another couple of
23 questions –
24 MR. POST: Yes.
25 THE COURT: – but I didn't want to

1 interrupt you, Mr. Post.
2 MR. POST: Go ahead.
3 THE COURT: I want you to go ahead with
4 whatever you want to say.
5 MR. POST: Your questions help. Go ahead.
6 THE COURT: So I'm – I read your
7 declaration carefully. And so the process by
8 which you reviewed documents for relevance and
9 then for privilege, explain to me how that
10 worked. And maybe Mr. Dix is the better one to
11 ask that.
12 MR. POST: You could see that in my eyes,
13 couldn't you?
14 THE COURT: Yeah, I could. I saw your
15 eyes darting back to the table over there.
16 But, sure, Mr. Dix, how did that work?
17 Did you start with a – well, you tell us. How
18 did it work?
19 MR. DIX: So we explained this a little
20 bit in our response –
21 THE COURT: Right, you did.
22 MR. DIX: – that because of the volume of
23 the documents, we hired a document review team,
24 as did the other side, to do an initial first
25 pass for review for relevance and for

1 privilege. And in that process, they casted,
2 admittedly, a wide net on what might be
3 privileged based on basically law firm names.
4 So after the first pass privilege – or
5 first-pass review was performed where relevance
6 and privilege were done at the same time, then
7 our firm prepared – or conducted the second
8 pass review for relevance.
9 At that time we didn't focus on privilege
10 documents. We focused more on making sure we
11 got the relevant documents produced and
12 produced them according to the Court's
13 deadline.
14 And so it was after the relevant documents
15 were produced that we then turned and started
16 to focus on the privilege.
17 THE COURT: But could there be a – okay.
18 In that process, you had the relevant documents
19 identified and then you identified privilege –
20 or attempted to identify privileged documents
21 from within that group –
22 MR. DIX: That's right.
23 THE COURT: – relevant documents?
24 MR. DIX: If they were marked as
25 responsive, then the second question for first

1 pass and second pass was, is this – is this
2 privileged?
3 THE COURT: Okay. So then some – if I
4 read your response carefully, some of the
5 documents that you identified on the privilege
6 log back at the time when it had something,
7 like, 7300 entries, some of those were those
8 financial wealth adviser documents, involved
9 SunTrust and some others, which have been
10 identified as privileged, but you later took
11 them off the log because of relevance.
12 So my question was, how did they end up on
13 a privilege log if they were not relevant or
14 responsive?
15 MR. POST: I can answer – I mean, I
16 reviewed those documents for that purpose. And
17 I did the second-pass review for the production
18 of the privilege log, and I missed it. I –
19 and now – and I also –
20 THE COURT: So you're – let me just
21 understand. Your position is they were not
22 responsive to their discovery requests and were
23 not – and should never have been either
24 flagged as relevant or privilege? Is that what
25 you're saying?

1    MR. POST:   Well, that's correct.  That's
2    correct.
3        MR. DIX:   Clarify one thing?
4        THE COURT:   Yeah.
5        MR. DIX:   When it was at 7,000 or so, the
6    initial list, that initial list, which was
7    created by generally flagging for privilege any
8    email with Smith, Hulsey & Busey, there was
9    this substantial reduction when it went from
10   7,000 down to a much lower number when the
11   documents that were to Smith Hulsey and some
12   other party, which weren't privileged,
13   obviously, those were removed.
14       And in some cases – we had performed the
15   collection – there were documents that had
16   already been produced either from the other
17   side or some other place that Smith, Hulsey &
18   Busey –
19       THE COURT:   Right.  Okay.  Those were –
20       MR. DIX:   – removed in order to avoid the
21   document dump.  We removed a bunch of documents
22   on that that didn't need to be in there.
23       THE COURT:   Got you.  So that I'm clear, I
24   think what you said in your response, but – so
25   the privilege log ultimate- – or originally

1    had something like 7300 documents on it, and
2    then it went down to something like 3300, and
3    then down to the 1900 that – and
4    approximately, right?
5        MR. DIX:   That's right.
6        THE COURT:   And so – but as that lis was
7    culled down, none of those documents that were
8    taken off the privilege log were produced to
9    the other side?
10       MR. DIX:   I don't think that's it.  What I
11   just tried to explain –
12       THE COURT:   Yeah.
13       MR. DIX:   – some of the documents that we
14   had on there were documents that were already
15   produced.  They had – they were either copies
16   or they were documents that were actually
17   produced.
18       THE COURT:   Okay.  Well, that's why I
19   asked the question.  I was a little confused
20   about that.  Are we able to know that, or is
21   that by document what was originally on a
22   privilege log and later produced?
23       MR. DIX:   Are we able to identify the ones
24   that were taken off when we went from 7,000
25   down to 3,000?

1    THE COURT:   Yeah, if you had to go back
2    and identify those.
3        MR. DIX:   Yeah, there's several thousand
4    documents.  There's a list.  We know what was
5    on the 7,000 list and then we know what was
6    produced.
7        THE COURT:   Okay.  I was just curious
8    about your process.  Thank you.
9        MR. POST:   So the – had there been an
10   issue raised by us or them about the
11   descriptions, we could have done the
12   categorical privilege log that's allowed by the
13   rules.  And that would be – and I'm not sure I
14   want to make this an exhibit, but it would look
15   something categorically – we would submit,
16   would look something like this.
17       THE COURT:   Uh-huh.
18       MR. POST:   But, as I said, in all the
19   discussions we had with Gray Robinson about
20   their privilege log, that was not challenged by
21   us and not volunteered by them.
22       THE COURT:   A couple other quick
23   questions, but, again, I don't want to
24   interrupt you –
25       MR. POST:   Go ahead.

1    THE COURT:   – or stop you.
2        So on the subject of the parties in the
3    log that you've identified here in your
4    response at pages 13 and 14, was this the first
5    time in this response that those persons were
6    identified the way you've identified them here
7    to the other side?
8        MR. POST:   Yes.  Yes.
9        THE COURT:   Okay.  And I didn't match them
10   up completely, but it looked like there were
11   some people in their color-coded privilege log
12   where they identified people that they didn't
13   know who they were.  There are some folks that
14   are identified here in your response and others
15   not.
16       I assume you'd be able to go back and look
17   at all of the people that have been identified
18   in their motion as them not knowing who they
19   are, and I don't know who they are either.
20       MR. POST:   I endeavored to include
21   everyone here.  My understanding, this is a
22   comprehensive list of people in pink.
23       THE COURT:   Well, there's – I don't think
24   so.  If you look at their exhibit to their
25   color-coded log that they provided to us, I saw

1    a couple of folks identified on there. There's
2    Tonya Carros, for example, who I didn't see
3    identified.
4          MR. POST:   She's on page 14, paragraph 5.
5          THE COURT:   Okay. All right.
6          MR. POST:   My effort was –
7          THE COURT:   Okay.
8          MR. POST:   My intent was to identify –
9          THE COURT:   If I missed them, then that's
10   my mistake. I – so you think you've
11   identified all of the folks that are on there?
12         MR. POST:   Right. With the exception of
13   one, the – one of these persons, the document
14   in question was actually produced, but that –
15   that's the only exception.
16         THE COURT:   Okay. Okay.
17         MR. STEIF:   I want to –
18         THE COURT:   Yeah.
19         MR. STEIF:   May I respond?
20         THE COURT:   Yeah, I'm going to give you an
21   opportunity to do that, but, again, I don't
22   want to cut Mr. Post off.
23         MR. POST:   So I don't think any of the
24   cases they cited, other than the Montana case,
25   was a holding where someone – they actually

1    ruled that an entire privilege production
2    should be waived.
3          And I would respectfully suggest under the
4    totality of the circumstances of this case that
5    that would be going in the wrong direction in
6    this case for a lot of – especially for us,
7    but for the entire case as well, because it
8    would simply add more gasoline on the fire.
9          And, you know, the fact of the matter is
10   is that what's on our privilege log – or
11   what's on these – what is privilege isn't –
12   was never our – was never a focal point. They
13   never brought it up. They never argued about
14   it. Because the fact of the matter is that
15   we're the persons who are suing to try to
16   determine in a fraudulent admission case what
17   was withheld. We – they've only sued us for a
18   tax refund.
19         So we would respectfully request the Court
20   deny the relief altogether within the Court's
21   discretion. And if there is – there would be,
22   under the circumstances of this case, no need
23   to grant any relief as requested.
24         THE COURT:   Do you think it's necessary
25   for me to look at any of these documents?

1    Because I guess what I'm wondering about is
2    their argument that some of the documents that
3    are listed here, or emails, maybe many of them,
4    and – is the whole email thread identified, or
5    there is just the header of the thread
6    identified? Do I need to look at that to rule
7    on this motion?
8          MR. POST:   I would respectfully say that
9    you would not need to look at any of the Dina
10   emails to herself to rule on this motion.
11         THE COURT:   Uh-huh.
12         MR. POST:   The – if you accept as a legal
13   matter that there is an agency here that
14   existed, that I don't – I don't know what
15   documents they would ask you to look at to fall
16   outside the ones that are obviously within the
17   agency privilege.
18         We certainly are able to give you access
19   to our entire privilege log electronically,
20   should you want to look at any of it.
21         THE COURT:   I'm not inviting myself to do
22   that, but I just – I want – I'm going to ask
23   them the same thing, and I'm trying to think
24   that through, whether I need to do that –
25         MR. POST:   Yes, sir.

1          THE COURT:   – or can just rely on what
2    you've given me. So thank you.
3          Mr. Steif.
4          MR. STEIF:   Sure. I'll try to be as brief
5    as possible, but there was a lot.
6          I think just generally – and I don't want
7    to be harsh, but it's easy to talk about let's
8    not put gas on the fire where you resolve
9    multiple sanctions motions, including one for
10   sluggish discovery, before you tell us this
11   privilege log exists.
12         We aren't trying to delay anything. We've
13   agreed that any new documents produced, whether
14   it's all or some, won't delay the existing
15   depositions. That's not what we're trying to
16   do.
17         On the – I'll take it in the order they
18   argued it. On the agency issue, there's not
19   one document here that's shows that Ms. Srochi
20   was an agent. There's a power of attorney
21   which negates that argument. Anything that
22   might show how interactions were are withheld
23   on that privilege log.
24         And I'd like to recommend to the Court
25   that – to review the agency cases they cite,

1 because none of them are on point. There is
2 the Gerheiser court, where there was a
3 gentleman who was incarcerated, a son. There
4 is another case about somebody being
5 unconscious and in a coma.
6 In October 2015, I just was looking at it,
7 there are emails in which Mr. Edelman goes to
8 Ms. Klempf and she's approving aspects of the
9 redemption transaction. You just can't say,
10 well, she was – had some medical issues.
11 That's just not supported at all. None of the
12 cases support the arguments that they make.
13 And the supplemental declaration, which we
14 oppose, but it calls into question the veracity
15 of the first one because they conflict with
16 each other. But really, at the end of the day,
17 it doesn't – it doesn't matter because what we
18 have here is a very tortured reading of what
19 work product is.
20 We cited Regency for the fact that there
21 are multiple kinds, but we cited for the fact
22 that anything you sent to an attorney doesn't
23 automatically become work product, but it also
24 says it has the two kinds. There's fact work
25 product, which is less protected, which seems

1 to be what they're saying. That has to be in
2 anticipation of litigation, and it depends on
3 what it says. Opinion work product only
4 applies to attorneys.
5 So what exactly do we have here? We have
6 no idea.
7 We have to have a listing of each
8 individual email in the chain. We don't have
9 that. We don't know whether they're
10 privileged.
11 If to the extent that they were later
12 provided to an attorney for purposes of legal
13 advice – we have no idea if that happened.
14 Maybe those are privileged. But are those
15 listed on the privilege log or were they phone
16 calls?
17 What did she put in the emails? Were they
18 notes? Was it just I forward to myself, in
19 which case, of course, it can't be privileged.
20 How did her professionals use it?
21 The agency argument doesn't affect any of
22 this anyway. If she – even assuming she was
23 the agent, this would be what the inquiry was.
24 And they needed to list each individual
25 chain – the email in the chain, and they just

1 didn't at all.
2 And in terms of anticipation of
3 litigation, that was in mid 2017 when they sent
4 a letter.
5 Talking about, you know, Jacques' single
6 email where he had a long legal battle doesn't
7 mean –
8 THE COURT: Well, let me stop you there.
9 Didn't Mr. Brust's letter indicate there was
10 litigation coming? And that was in 2013,
11 wasn't it?
12 MR. STEIF: There may have been a short
13 period of time where that was true, but 2013
14 was not on this privilege log.
15 THE COURT: But there are emails after
16 2013.
17 MR. STEIF: Emails after, but they were
18 discussing the redemption transaction. That
19 dispute was not ongoing at that time. They're
20 talking about a transaction.
21 But attention doesn't mean litigation.
22 And you've got to look at the context. The
23 cases that they cite –
24 THE COURT: Well, if I can just stop you
25 for a second. I mean, Mr. Brust now, in

1 this – in his letter – and this is October 9,
2 2013, which is Exhibit D to the response –
3 discusses "continuing failure of Jacques Klempf
4 to honor certain terms of the parties'
5 shareholder's agreement and its wholesale
6 failure to perform the statutory duties as the
7 controlling officer and board member of the
8 company."
9 I mean, isn't that what we have? Those
10 claims, among others, are in this case, are
11 they not?
12 MR. STEIF: Not that one. Not as far as I
13 understand. There is – the redemption
14 agreement has a release of all of those claims.
15 My understanding is that's not in this case.
16 MR. POST: Today.
17 MR. STEIF: They cite the Regency case.
18 In any event, whether there's litigation
19 anticipated or not, the individual nature of
20 the communication matters. They cite this
21 Lemonik case. That's what Lemonik is. It's a
22 single paragraph that holds nothing.
23 And that's true of really most of the
24 cases they cite. They cite Bakild-Kunz from
25 the Middle District, which was a case about

1  attorney/client privilege, not work product.
2  They cite the Merlin case, the Boca Raton.
3        That was handwritten notes prepared by a
4  client sent to an attorney, which was an
5  attorney/client document and prepared after
6  litigation had already been filed. That just
7  doesn't have anything to do with what we're
8  talking about.
9        I want to talk about the description
10  issue, and it seems to relate to multiple
11  arguments at once, but I want to talk about
12  briefly the descriptions.
13        You know, there's an argument that sort of
14  two wrongs make a right or they did it too, but
15  the issue that results in waiver is 15 months.
16  We did ours immediately. That's only one
17  factor in the waiver. They withheld it. They
18  never mentioned it. They came to different
19  meetings. They knew it existed. They didn't
20  give it to us until we were – after we were
21  here in front of the Court.
22        Our production is much more voluminous,
23  hundreds of thousands of documents, and many
24  more on the privilege log. And they're wrong
25  that they could do it categorically. That's

1  just flat out wrong. You can only do it as a
2  matter of law if the production is voluminous.
3  Where your entire document production in a case
4  worth $73 million is 1,000 documents and your
5  privilege log has 1900, that's just
6  inappropriate.
7        THE COURT:   So putting the waiver issue
8  aside for a moment, if I agreed with you on the
9  agency issue –
10        MR. STEIF:   Uh-huh.
11        THE COURT:   – wouldn't I then need to
12  look at each one of these documents? I mean,
13  isn't that where – isn't that where I end up?
14        MR. STEIF:   If – we think that the
15  category that's the Ms. Srochi emails prior to
16  her time as trustee could be determined as a
17  group. But if you deny the waiver, you'd
18  likely need to look at them. I think it's
19  probably true.
20        THE COURT:   Okay.
21        MR. STEIF:   On the waiver arguments, I
22  just want to briefly say we have cited the
23  Universal City case, the Burlington case, and
24  other cases. Waiver was appropriate under much
25  less serious facts and much less time of delay.

1        There was no discovery protocol where we
2  agreed that this was viable. There is no case
3  that supports their argument where a privilege
4  log was withheld this long.
5        And at the end of the day, the description
6  of the reason why this occurred in the
7  declaration isn't excusable, and they should
8  have mentioned it and they didn't, and 15
9  months went by. And there are other factors
10  far beyond the lack of description that make
11  this the type of case where waiver would be
12  appropriate.
13        THE COURT:   Okay. Briefly, Mr. Post.
14        MR. POST:   Your Honor, waiver would be
15  inappropriate draconian of the totality of the
16  circumstances of this case. The agency
17  exception exists here. It's unrefuted.
18        And I would respectfully submit that if
19  you agree as a matter of law that the agency
20  exception exists here, then I don't – and that
21  the Srochi emails were basically work – her
22  own work product, provided with her advisers,
23  or the information contained therein, there is
24  no documents to review in this case. And I
25  didn't hear him say that there are any.

1        So I would respectfully – and to make us
2  go back and do a detailed privilege log would
3  be a waste of time and resources. We would
4  come back and kick the tires again on it.
5        And as I said before, they weren't – I –
6  I had a duty to submit the privilege log, but
7  it wasn't made an issue in this case. I didn't
8  violate any court orders. I didn't even ignore
9  an email. They never mentioned that. And it
10  just wasn't something that we were – was
11  higher up on the priority list on a very, very
12  intense case.
13        THE COURT:   Okay.
14        MR. STEIF:   Can I make – it's not a
15  surrebuttal, but on this – we'd like to move
16  to strike this supplemental declaration in
17  whatever way would be appropriate to raise
18  that.
19        It's conflicting with the other one. And
20  we think it's – you know, there's a protocol
21  where a summary judgment affidavit conflicts
22  deposition testimony, it's sort of a similar
23  situation to us, but it's too immediate,
24  one-after-the-other declarations.
25        THE COURT:   Okay. Well, the first

declaration is in the record. It's been filed
as an exhibit to document 226, and this one is
not in the record right now. It's just a
demonstrative to this hearing. So at such
time – I think your motion would be
appropriate if and when they move to make it a
formal part of the record.

All right. Thank you very much. I am not
going to ask you right now to let me have
access to your privilege log. I'm not going to
review it.

But when I get into – I'm going to read
these cases a little more closely now, and I
might ask you to let me look at it just to get
a sense – you know, not to review every single
document on it, but just to get an idea of what
these – by category what some of these
categories look like.

And I'll let you know that as soon as I
can. But I'm not going to ask you to do that
right now. If I were to ask you to do that,
how would you provide that to me? You'd give
me access to your platform or give me a drive
or –

MR. DIX: It would really depend on the

volume. If you're talking about a couple of
those documents from each category, that would
just – you'd probably prefer –

THE COURT: Well, I think what I would
prefer, if I decide I need to do that, is have
access to all 1900 of them so I can go, you
know –

MR. DIX: We'd create a separate log-in
for that database of documents that you –

THE COURT: Okay.

MR. DIX: – would be the only one that
has access to. It wouldn't –

THE COURT: Okay.

MR. DIX: The vendor would set that up.

THE COURT: I'll let you know by email to
everyone in due course if I think I need to do
that. So thank you very much.

MR. POST: Your Honor, one question, a
point of clarification on the supplemental
declaration. We did ask that it would be
introduced as evidence – an exhibit to this
hearing.

THE COURT: But I think – okay. But I
think you've got to file it with the Court, do
you not, for it to actually be in the court

record? You're asking me to go ahead and order
that?

MR. POST: Not – well, no, we would make
an –

THE COURT: Ore tenus, yeah.

MR. POST: – ore tenus motion, if that
helps, but we would want it to be considered to
be in the record of this hearing.

THE COURT: So I'll take that as an ore
tenus motion to make it part of the formal
record of the case.

MR. POST: Yes.

THE COURT: Okay. And you oppose that?

MR. STEIF: Yes.

THE COURT: All right. And I'll address
that issue in my order.

All right. Thank you very much.

When is your conference with Judge Schle
singer?

MR. STEIF: May 21st.

THE COURT: May 21st, okay. I will get
you something before then. Thank you.

(Proceedings concluded at 11:21 a.m.)

- - -

REPORTER'S CERTIFICATE

STATE OF FLORIDA )
COUNTY OF DUVAL )

I, Stephanie Powers Cusimano, Registered
Professional Reporter and Notary Public in and for
the State of Florida at Large, hereby certify that
I was authorized to and did stenographically report
the proceedings and that the foregoing transcript,
pages 1 through 71, is a true record of my
stenographic notes.

I further certify that I am not a relative,
employee, attorney, or counsel of any of the parties,
nor am I a relative or employee of any of the parties'
attorney or counsel connected with the action, nor am
I financially interested in the action.

DATED this 25th day of February 2020.

/s/ Stephanie Powers Cusimano
Stephanie Powers Cusimano
FPR, RPR, Court Reporter

## $

$73 [2] 19/5 66/4

## /

/s [1] 72/21

## 1

1,000 [2] 13/12 66/4
1,911 [2] 6/5 13/13
100 [1] 29/8
10th [2] 9/10 9/11
1100 [1] 2/12
11:21 [2] 1/18 71/23
12,817 [1] 42/22
12/23 [1] 15/7
13 [1] 56/4
13,000 [1] 11/13
14 [2] 56/4 57/4
1418 [1] 1/24
15 [9] 6/9 11/13 12/18 13/13 16/15 19/3
22/14 65/15 67/8
15-year [1] 30/7
17,000 [1] 49/10
1700 [1] 49/10
172 [1] 23/2
1750 [1] 1/19
18 [2] 1/18 3/2
1900 [3] 54/3 66/5 70/6
1911 [2] 11/14 14/22

## 2

2,000 [1] 18/10
2006 [1] 38/23
2008 [7] 30/16 31/16 34/23 35/21 37/19
38/17 38/24
2012 [1] 33/5
2013 [4] 63/10 63/13 63/16 64/2
2015 [4] 21/22 24/25 30/20 61/6
2016 [1] 22/20
2017 [3] 33/2 40/17 63/3
2018 [5] 6/11 6/17 6/19 14/13 14/19
2019 [4] 6/5 6/14 6/17 14/20
2020 [3] 1/18 3/2 72/19
214 [1] 3/14
21st [2] 71/20 71/21
225 [1] 1/19
226 [2] 3/16 69/2
23 [2] 8/4 15/7
23rd [6] 6/5 7/11 7/16 8/5 9/13 47/1
2500 [1] 2/5
25th [1] 72/19
26 [2] 18/14 18/17
27 [1] 6/13
295 [2] 19/24 22/4

## 3

3,000 [1] 54/25
30 [1] 12/16
30-day [2] 10/25 10/25
301 [1] 1/24
32202 [5] 1/20 1/25 2/5 2/12 2/19
32JRK [2] 1/5 3/11
3300 [2] 2/19 54/2
3:17-cv-1054-J-32JRK [2] 1/5 3/11

## 5

5,631 [1] 44/6
50 [2] 2/4 2/11
500 [1] 22/21
550 [1] 19/24
5th [1] 22/20

## 6

645 [1] 22/4

## 7

7,000 [4] 53/5 53/10 54/24 55/5
71 [1] 72/10
7300 [2] 52/7 54/1

## 8

824 [1] 23/2
890-some [1] 6/12

## 9

900-or-so [1] 6/6
9:54 [2] 1/18 3/2

## A

A.H [1] 17/10
a.m [4] 1/18 1/18 3/2 71/23
Abel [5] 2/4 3/22 4/2 7/18 9/15
abelbeanlaw.com [3] 2/6 2/6 2/7
able [4] 54/20 54/23 56/16 59/18
about [61] 4/12 5/21 5/25 6/4 7/6 8/2 8/2
8/7 8/11 8/13 8/16 8/23 10/14 11/13
12/8 14/7 17/6 18/3 18/7 18/8 19/13
20/20 20/23 21/6 22/2 24/2 26/3 26/8
27/13 28/1 31/18 33/9 34/11 35/5 35/10
39/9 39/21 40/4 41/19 41/20 42/17
43/17 43/22 44/23 45/25 46/10 54/20
55/8 55/10 55/19 58/13 59/1 60/7 61/4
63/5 63/20 64/25 65/8 65/9 65/11 70/1
absence [1] 12/4
Absent [1] 11/24
absolutely [1] 21/16
accept [1] 59/12
access [6] 45/9 59/18 69/10 69/23 70/6
70/12
according [1] 51/12
account [2] 11/3 32/18
accountant [6] 20/6 20/7 22/24 23/9
23/10 27/3
accountant/client [1] 23/9
accountants [2] 22/19 32/11
accounting [2] 26/22 32/4
act [3] 24/22 27/4 30/3
acted [1] 25/8
action [2] 72/16 72/17
actual [1] 32/24
actually [11] 11/23 15/23 31/15 38/22
38/23 39/13 47/15 54/16 57/14 57/25
70/25
add [1] 58/8
additional [2] 6/18 12/7
address [2] 29/20 71/15
addressed [1] 27/14
addressing [1] 31/18
admission [1] 58/16
admittedly [1] 51/2
advice [6] 21/4 21/5 26/22 26/23 30/3
62/13
advise [1] 35/20
advised [1] 37/18
adviser [2] 20/22 52/8
advisers [2] 33/1 67/22
affect [3] 4/17 4/25 62/21
affidavit [1] 68/21
aforesaid [1] 1/21
afoul [1] 18/17
after [13] 6/10 8/12 8/15 15/7 39/17
45/13 51/4 51/14 63/15 63/17 65/5
65/20 68/24
afterward [1] 9/22
again [5] 22/1 25/12 55/23 57/21 68/4

against [1] 45/1
aged [2] 26/8 26/18
agencies [1] 40/19
agency [20] 23/19 25/16 25/20 26/2
26/24 31/1 40/11 40/19 41/23 42/3
42/16 42/17 59/13 59/17 60/18 60/25
62/21 66/9 67/16 67/19
agent [4] 24/16 25/5 60/20 62/23
agents [3] 23/21 40/19 41/4
agree [7] 5/3 5/4 5/5 13/22 13/24 48/15
67/19
agreed [7] 47/4 47/5 47/8 48/2 60/13
66/8 67/2
agreement [9] 18/23 30/22 39/14 41/12
41/14 41/17 47/22 64/5 64/14
ahead [13] 3/7 3/18 5/14 9/5 10/6 12/14
14/19 16/23 50/2 50/3 50/5 55/25 71/1
al [3] 1/10 1/13 3/10
all [37] 3/6 7/2 13/1 13/1 13/23 16/17
17/2 17/7 17/14 17/23 18/19 19/7 21/8
21/21 22/1 29/21 30/15 30/25 31/16
32/7 40/11 41/16 42/13 49/4 49/18
55/18 56/17 57/5 57/11 60/14 61/11
63/1 64/14 69/8 70/6 71/15 71/17
allege [1] 30/9
alleged [1] 25/2
allow [2] 17/19 46/2
allowed [2] 34/13 55/12
allows [2] 11/5 28/8
alone [3] 11/25 12/5 25/13
already [4] 27/14 53/16 54/14 65/6
also [8] 17/12 24/24 28/10 40/22 41/10
41/11 52/19 61/23
alternative [1] 25/15
Alternatively [1] 17/2
although [4] 6/3 9/15 27/18 48/15
altogether [1] 58/20
am [5] 35/9 69/8 72/13 72/15 72/16
AMENDED [1] 1/16
among [1] 64/10
amount [2] 15/1 19/7
ample [1] 16/10
analysis [2] 15/24 46/15
analyze [1] 15/19
Anderson [3] 15/16 16/2 19/8
ANDREW [2] 2/2 3/21
Andrew's [1] 39/25
another [7] 4/13 37/18 38/19 42/15 44/17
49/22 61/4
answer [3] 27/25 37/13 52/15
anticipate [1] 4/16
anticipated [2] 21/25 64/19
anticipating [1] 31/8
anticipation [3] 38/13 62/2 63/2
any [25] 4/18 5/10 6/14 8/22 13/15 15/6
18/10 22/7 26/19 29/5 45/17 48/23 53/7
57/23 58/23 58/25 59/9 59/20 60/13
62/21 64/18 67/25 68/8 72/14 72/15
anybody [4] 4/16 25/9 31/25 45/18
anything [7] 5/18 25/8 46/8 60/12 60/21
61/22 65/7
anyway [3] 14/1 14/11 62/22
appeal [1] 49/18
Appearing [2] 2/8 2/14 2/22
application [1] 31/1
applied [1] 21/2
applies [5] 20/4 20/6 20/10 23/9 62/4
appointed [1] 24/19
appointment [1] 22/25
appropriate [5] 14/14 66/24 67/12 68/17
69/6
approved [2] 26/13 26/13
approving [1] 61/8

## A

approximately [1]  54/4
April [1]  24/25
are [80]
aren't [2]  21/15 60/12
argue [2]  9/1 13/24
argued [3]  45/25 58/13 60/18
arguing [1]  39/25
argument [19]  8/25 9/4 10/7 10/8 14/4
  14/17 15/6 16/21 21/1 25/15 26/4 27/10
  27/12 40/1 59/2 60/21 62/21 65/13 67/3
arguments [7]  17/3 29/3 29/20 31/9 61/12
  65/11 66/21
around [1]  30/11
as [74]
aside [1]  66/8
ask [13]  4/11 5/9 9/6 38/11 46/4 50/11
  59/15 59/22 69/9 69/14 69/20 69/21
  70/20
asked [2]  33/13 54/19
asking [4]  16/24 45/14 49/3 71/1
aspects [1]  61/8
asserted [1]  10/11
assertion [1]  11/4
assistance [3]  26/5 26/20 26/21
assume [2]  25/17 56/16
assuming [4]  25/16 27/24 35/1 62/22
astelf [1]  2/6
attach [1]  22/6
attached [5]  23/24 24/2 33/7 39/4 41/14
attachments [1]  3/16
attempted [1]  51/20
attention [1]  63/21
attorney [35]  13/5 19/20 19/22 20/1 20/3
  20/5 22/7 23/3 23/24 24/5 24/6 24/21
  24/24 25/3 26/7 27/7 28/9 31/22 31/23
  36/19 36/21 36/25 37/4 40/1 41/1 41/5
  49/15 60/20 61/22 62/12 65/1 65/4 65/5
  72/14 72/16
attorney/client [8]  13/5 19/20 20/3 28/9
  31/23 49/15 65/1 65/5
attorneys [3]  30/14 32/10 62/4
authority [3]  24/17 24/22 27/5
authorized [1]  72/8
automatically [2]  22/6 61/23
avoid [3]  47/20 48/8 53/20
aware [1]  9/9

## B

back [15]  9/3 21/21 28/13 29/11 33/4
  34/23 35/21 47/18 49/9 50/15 52/6 55/1
  56/16 68/2 68/4
background [1]  6/3
bad [1]  13/24
Baldid [1]  64/24
Baldid-Kunz [1]  64/24
based [2]  15/25 51/3
bases [1]  16/13
basically [4]  34/13 45/2 51/3 67/21
basis [3]  16/10 23/18 23/23
batches [1]  14/23
battle [3]  46/3 48/12 63/6
battles [2]  45/22 48/13
Bay [1]  1/24
be [69]  1/21 5/10 5/24 10/10 12/9 14/7
  15/13 16/5 18/7 18/19 19/9 19/21 20/7
  20/21 20/22 21/1 21/3 21/4 25/19 25/20
  28/11 31/9 32/10 33/8 36/3 36/7 37/2
  37/14 37/17 41/3 43/6 43/25 44/17
  46/13 46/14 47/8 47/9 47/10 47/11
  47/11 47/12 47/22 47/24 48/24 51/2
  51/17 53/22 55/13 56/16 58/2 58/5

58/21 60/4 60/7 62/1 62/1 62/19 62/23
  66/16 67/11 67/14 68/3 68/17 69/5
  70/11 70/20 70/25 71/7 71/8
Beach [1]  22/3
BEAN [7]  2/2 2/4 3/22 3/22 4/2 7/18 9/15
bear [1]  22/15
became [4]  9/9 21/20 30/21 35/2
because [33]  5/21 7/17 8/6 8/19 14/17
  15/19 16/6 18/4 19/9 22/13 23/10 23/25
  24/20 25/17 26/1 26/7 27/20 28/7 32/1
  33/9 33/15 34/20 38/3 47/4 48/20 50/22
  52/11 58/7 58/14 59/1 61/1 61/15 61/17
become [1]  61/23
been [20]  4/13 13/23 14/14 21/23 22/14
  33/7 33/11 33/13 35/13 40/7 45/19 48/8
  52/9 52/23 53/16 55/9 56/17 63/12 65/6
  69/1
before [11]  1/15 4/11 15/9 22/19 25/2
  35/14 36/25 41/22 60/10 68/5 71/22
began [1]  38/23
beginning [4]  30/14 35/21 38/21 38/21
behalf [8]  2/8 2/14 2/22 3/22 3/24 4/6
  24/22 25/8
being [10]  25/22 25/23 25/24 28/2 32/5
  33/12 33/12 36/9 42/10 61/4
belief [1]  12/17
believe [3]  14/21 28/11 36/12
beneficiaries [3]  23/5 23/14 30/13
beneficiary [1]  21/6
better [2]  16/12 50/10
between [11]  20/7 22/18 23/10 23/19
  24/5 29/24 33/17 33/24 36/3 39/12
  39/15
beyond [2]  26/14 67/10
Biscayne [1]  17/10
bit [2]  48/21 50/20
Blackburn [9]  22/23 30/15 34/23 35/19
  37/17 37/21 38/17 38/25 39/7
blue [1]  19/16
board [1]  64/7
Boca [1]  65/2
bollerplate [4]  7/1 11/6 11/20 13/8
both [3]  13/25 35/23 47/17
bottom [1]  7/20
bought [1]  27/9
brief [5]  6/2 10/16 19/9 23/24 60/4
briefest [1]  8/17
briefly [3]  65/12 66/22 67/13
bring [4]  26/23 46/22 46/24 46/25
brother [1]  23/21
brought [6]  23/12 30/16 30/17 30/18
  30/19 58/13
Brust [6]  30/17 35/22 37/17 37/21 38/20
  63/25
Brust's [1]  8/17
bunch [1]  53/21
burden [6]  20/15 22/15 40/5 40/6 40/8
burdensome [2]  12/10 19/2
Burlington [5]  10/16 10/21 11/19 11/23
  66/23
Busey [5]  2/18 4/6 33/24 53/8 53/18
busy [2]  45/18 45/19
buy [2]  39/5 39/8

## C

call [2]  13/20 20/22
called [1]  45/11
calls [2]  61/14 62/16
came [1]  1/21 7/10 65/18
can [21]  8/18 16/22 22/12 27/23 31/9
  33/2 35/5 35/16 39/6 40/19 43/15 43/16
  44/7 44/14 52/15 60/1 63/24 66/1 68/14
  69/20 70/6

can't [6]  8/15 8/21 16/8 25/17 61/9 62/19
candidly [1]  48/18
candor [1]  46/18
carefully [2]  50/7 52/4
Carros [1]  57/2
case [77]
case-by-case [1]  46/13
cases [22]  5/24 10/13 15/11 15/14 15/16
  16/7 20/2 34/10 36/18 36/22 40/18
  45/12 46/10 49/12 53/14 57/24 60/25
  61/12 63/23 64/24 66/24 69/13
cash [2]  39/3 39/6
casted [1]  51/1
categorical [3]  18/20 46/1 55/12
categorically [5]  13/3 21/2 22/13 55/15
  65/25
categories [8]  8/23 12/24 17/3 17/7 17/8
  44/25 45/24 69/18
category [5]  19/13 22/17 66/15 69/17
  70/2
cause [1]  1/21
cavalierly [1]  49/16
cdix [1]  2/21
certain [2]  17/7 64/4
certainly [2]  15/8 59/18
CERTIFICATE [1]  72/1
certify [2]  72/7 72/13
cetera [3]  3/10
chain [4]  21/9 62/8 62/25 62/25
chains [1]  18/1
challenge [2]  19/13 27/18 44/25
challenged [2]  17/6 55/20
challenging [1]  45/2
changed [1]  23/6
children [1]  40/22
chose [1]  18/25
Chris [1]  4/8
CHRISTOPHER [1]  2/17
circumstances [12]  11/9 11/24 12/7 13/14
  15/6 15/13 16/11 16/18 45/16 58/4
  58/22 67/16
cite [14]  15/15 19/8 20/2 23/25 31/19
  36/15 49/6 60/25 63/23 64/17 64/20
  64/24 64/24 65/2
cited [15]  10/13 15/11 16/7 17/10 25/12
  36/19 39/14 40/18 46/10 47/6 49/12
  57/24 61/20 61/21 66/22
City [6]  10/15 10/20 10/21 46/13 49/7
  66/23
claim [1]  27/5
claimed [1]  10/10
claims [2]  64/10 64/14
clarification [1]  70/19
Clarify [1]  53/3
claw [1]  49/8
clear [6]  6/4 9/19 10/10 31/1 43/24 53/23
clearly [5]  8/24 12/18 16/14 16/18 45/7
client [19]  13/5 19/20 20/3 20/7 20/8
  21/20 23/7 23/9 23/11 25/14 28/9 31/20
  31/23 35/2 36/24 49/15 65/1 65/4 65/5
client's [3]  7/6 33/9 36/20
clients [2]  34/9 36/20
close [3]  21/12 26/21 40/23
closely [1]  69/13
coded [2]  56/11 56/25
collect [2]  34/14 45/9
collecting [2]  36/20 36/21
collection [1]  53/15
color [3]  5/25 56/11 56/25
color-coded [2]  56/11 56/25
coma [1]  61/5
come [9]  7/9 14/18 15/9 28/13 34/12
  35/25 37/22 46/21 68/4

## C

coming [4]  29/11 46/23 47/3 63/10
common [6]  28/1 28/4 28/7 42/2 42/5 42/15
communication [3]  19/21 35/9 64/20
communications [9]  17/25 19/25 22/18 28/20 29/24 32/21 32/23 38/4 40/12
company [3]  39/3 39/10 64/8
compel [7]  3/12 5/14 15/22 18/25 19/1 45/5 45/14
competent [1]  27/3
Complaint [1]  41/15
completely [1]  56/10
complied [1]  12/10
comprehensive [1]  56/22
concept [1]  48/18
concepts [2]  42/11 42/12
concerns [1]  44/23
concluded [1]  71/23
conduct [1]  13/25
conducted [1]  51/7
confer [2]  7/5 8/2
conference [2]  46/25 71/18
conflict [1]  61/15
conflicting [1]  68/19
conflicts [1]  68/21
confused [1]  54/19
conjecture [1]  39/25
connected [1]  72/16
connection [2]  32/3 41/11
consider [1]  46/9
considerations [1]  12/5
considered [2]  41/3 71/7
consuming [1]  19/10
contain [4]  13/15 17/5 18/10 18/14
contained [2]  24/16 67/23
contend [2]  18/22 38/12
contends [1]  23/17
contention [1]  20/5
contentious [1]  45/12
contentiousness [1]  49/3
contest [1]  28/13
contesting [2]  28/24 29/9
context [1]  63/22
continued [1]  39/17
continuing [1]  64/3
contrary [2]  24/20 27/7
controlling [1]  64/7
copied [3]  25/9 25/24 27/19
copies [3]  5/17 10/18 54/15
copy [5]  5/20 5/25 6/22 6/24 7/14
corporation [2]  1/3 1/13
correct [6]  5/5 5/12 18/24 35/11 53/1 53/2
Corrigan [2]  45/11 46/24
could [18]  9/1 9/1 13/22 15/8 18/5 18/7 20/21 21/1 44/17 45/23 45/24 45/25 50/12 50/14 51/17 55/11 65/25 66/16
couldn't [3]  23/16 26/15 50/13
counsel [8]  9/15 14/22 22/19 27/3 28/10 32/25 72/14 72/16
counter [1]  3/13
counterclaim [4]  1/11 1/14 3/15 41/15
counterclaim-plaintiff [1]  3/15
COUNTY [1]  72/3
couple [8]  5/22 15/14 27/16 41/23 49/22 55/22 57/1 70/1
course [9]  6/8 11/7 12/8 25/10 25/21 27/2 44/23 62/19 70/16
court [27]  1/1 4/14 5/1 5/2 7/24 10/17 11/17 11/23 12/1 12/2 20/3 24/19 37/5 40/4 42/21 44/14 45/17 46/9 48/18

58/19 60/24 61/2 65/21 68/8 70/24 70/25 72/22
Court's [4]  11/2 12/6 51/12 58/20
Court-appointed [1]  24/19
Courts [1]  49/13
CPA [1]  30/20
create [2]  49/20 70/8
created [1]  37/1
culled [1]  54/7
curious [1]  55/7
Cusimano [4]  1/22 72/5 72/21 72/21
cut [1]  57/22
cutoff [1]  45/14
cv [2]  1/5 3/11

## D

damages [1]  19/5
Dan [4]  3/21 30/19 40/21 41/10
DANIEL [1]  2/2
dark [1]  45/18
darting [1]  50/15
data [1]  47/19
database [1]  70/9
date [7]  1/18 9/8 17/16 21/21 33/17 38/20 45/14
DATED [1]  72/19
daughter [3]  26/5 30/12 30/24
day [7]  8/6 10/25 10/25 15/1 61/16 67/5 72/19
days [2]  12/16 34/13
dbean [1]  2/6
DCA [1]  23/2
deadline [1]  51/13
deadlines [1]  19/11
deal [1]  38/25
dealing [2]  30/5 38/7
December [5]  6/5 7/11 8/5 14/24 46/25
decide [1]  70/5
decision [1]  22/13
declaration [22]  13/18 14/3 14/8 21/18 24/3 26/15 31/6 31/8 31/14 32/22 33/23 40/15 43/12 43/25 47/7 48/22 50/7 61/13 67/7 68/16 69/1 70/20
declarations [2]  40/10 68/24
default [2]  10/25 11/1
defendant [3]  1/8 3/13 13/2
defendants [4]  1/14 2/22 3/13 42/8
deficiency [1]  44/17
degree [1]  11/4
delay [11]  5/7 11/11 11/20 11/25 12/17 12/19 13/13 16/12 60/12 60/14 66/25
delivered [1]  31/25
demands [1]  13/3
demonstrate [1]  25/4
demonstrated [1]  40/7
demonstrative [1]  69/4
DEMONT [3]  2/16 4/8 29/15
denied [1]  15/23
Dennis [6]  30/15 34/23 35/19 38/16 38/24 39/7
deny [3]  9/12 58/20 66/17
depend [1]  69/25
depends [1]  62/2
deposition [2]  15/2 68/22
depositions [1]  60/15
describe [1]  17/20
described [4]  13/18 17/12 27/23 31/13
description [11]  17/18 18/10 18/16 20/15 42/20 45/1 45/10 45/23 65/9 67/5 67/10
descriptions [10]  8/21 12/9 13/16 17/5 17/11 18/21 19/3 44/8 55/11 65/12
designation [1]  20/10
detailed [1]  68/2

determination [3]  11/2 21/10 46/14
determine [5]  8/21 10/23 34/19 34/20 58/16
determined [2]  11/18 66/16
determining [1]  34/16
devoted [1]  45/20
diagram [1]  29/25
diagrams [1]  37/1
did [36]  4/11 5/6 7/8 7/10 7/18 22/8 24/21 25/8 28/14 29/25 33/15 34/7 35/19 36/5 36/8 37/4 38/12 41/23 44/24 46/4 46/4 48/10 49/22 50/16 50/17 50/18 50/21 50/24 52/12 52/17 62/17 62/20 65/14 65/16 70/20 72/8
didn't [33]  7/16 7/17 18/24 21/23 23/15 26/8 26/11 26/11 28/3 29/1 30/23 38/1 40/15 45/22 46/2 46/2 48/10 48/24 48/25 49/9 49/25 51/9 53/22 56/9 56/12 57/2 63/1 63/9 65/19 67/8 67/25 68/7 68/8
died [1]  40/17
difference [3]  36/3 36/11 36/13
different [8]  16/1 16/1 30/14 34/7 36/7 44/16 46/17 65/18
DINA [18]  1/6 1/9 3/9 4/6 24/21 30/13 31/6 31/12 31/24 31/25 40/14 41/3 41/7 41/8 41/11 41/16 41/19 59/9
Dina's [2]  31/7 43/11
direction [1]  58/5
directly [2]  16/8 32/13
disclosed [1]  47/3
disclosure [6]  13/4 31/3 42/13 45/2 46/19 47/23
discovery [13]  4/18 4/25 5/7 5/10 6/25 8/7 14/16 45/13 47/4 49/20 52/22 60/10 67/1
discretion [1]  58/21
discuss [1]  15/10
discussed [2]  15/8 22/9
discusses [1]  64/3
discussing [1]  63/18
discussions [2]  14/15 55/19
dismiss [1]  5/1
dispositive [3]  24/20 41/6 46/8
dispute [3]  18/7 21/6 63/19
disputed [3]  23/8 28/6 28/12
disputes [3]  30/6 39/15 39/16
dissolve [1]  4/15
distributions [1]  39/2
DISTRICT [8]  1/1 1/1 10/17 10/22 11/1 12/6 22/4 64/25
diverge [1]  4/23
DIVISION [1]  1/2
DIX [6]  2/17 4/8 29/15 47/17 50/10 50/16
do [40]  5/10 5/17 10/12 16/20 16/24 16/24 17/1 20/1 21/14 26/3 28/13 28/24 30/23 34/19 35/16 35/20 36/7 37/16 37/16 40/15 43/2 43/22 47/9 50/24 57/21 58/24 59/6 59/21 59/24 60/16 62/5 65/7 65/25 66/1 68/2 69/20 69/21 70/5 70/16 70/24
doctrine [1]  13/6
document [28]  3/14 3/16 7/12 7/24 8/12 11/8 13/10 16/5 17/16 17/18 19/21 27/6 27/7 33/7 43/20 45/10 47/20 48/8 49/9 50/23 53/21 54/21 57/13 60/19 65/5 66/3 69/2 69/16
document's [1]  22/2
documents [59]  5/22 6/7 6/10 6/13 6/15 6/18 6/19 7/2 7/21 11/14 13/3 13/12 14/22 15/1 16/17 17/24 17/25 19/4 21/15 22/7 25/7 28/16 29/4 32/25 37/25 40/8 48/11 49/4 49/10 50/8 50/23 51/10

## D

documents... [27]  51/11 51/14 51/18
51/20 51/23 52/5 52/8 52/16 53/11
53/15 53/21 54/1 54/7 54/13 54/14
54/16 55/4 58/25 59/2 59/15 60/13
65/23 66/4 66/12 67/24 70/2 70/9
does [4]  4/16 26/19 26/23 48/4
doesn't [18]  5/6 13/7 13/15 17/5 18/9
18/14 18/19 20/5 22/6 22/16 27/2 61/17
61/17 61/22 62/21 63/6 63/21 65/7
doing [2]  33/6 35/13
don't [38]  4/24 5/6 5/22 9/2 9/12 9/20
15/17 15/19 16/23 20/23 20/24 21/8
21/19 21/24 22/8 22/10 22/10 23/8
25/13 26/1 26/1 27/20 34/20 37/22 38/3
47/13 54/10 55/23 56/19 56/23 57/21
57/23 59/14 59/14 60/6 62/8 62/9 67/20
done [5]  13/23 25/23 45/21 51/6 55/11
double [1]  8/19
doubt [1]  4/20
down [7]  36/25 49/2 53/10 54/2 54/3
54/7 54/25
dozens [1]  24/25
draconian [4]  13/21 45/15 49/5 67/15
drive [2]  2/18 69/23
due [1]  70/16
dump [3]  47/13 48/11 53/21
dumping [2]  47/20 48/9
durable [3]  23/23 24/4 26/7
during [1]  40/12
duties [1]  64/6
duty [1]  68/6
DUVAL [1]  72/3

## E

each [11]  12/23 18/1 20/11 21/9 47/13
47/18 61/16 62/7 62/24 66/12 70/2
earlier [1]  13/23
early [1]  21/24
easy [2]  8/14 60/7
Edelman [6]  22/24 23/13 26/9 30/19
41/10 61/7
Edelman's [1]  40/21
effect [1]  35/3
effort [1]  57/6
eight [2]  8/12 11/12
either [10]  4/17 22/23 32/12 32/12 36/23
37/10 52/23 53/16 54/15 56/19
elderly [2]  30/2 30/23
electronically [1]  59/19
else [2]  8/3 24/23
email [27]  6/20 6/22 7/24 9/13 9/19
17/25 18/1 18/6 20/22 21/3 21/9 25/24
30/24 32/18 33/3 33/4 35/6 40/15 47/17
47/18 53/8 59/4 62/8 62/25 63/6 68/9
70/15
emailed [1]  17/22
emailing [1]  20/8
emails [28]  17/22 18/10 19/14 21/7 21/12
21/13 21/21 25/1 26/11 26/12 27/10
27/13 27/19 31/24 32/7 32/8 33/16 35/4
35/8 41/19 59/3 59/10 61/7 62/17 63/15
63/7 66/15 67/21
emergency [1]  49/18
employee [2]  72/14 72/15
end [5]  14/18 52/12 61/16 66/13 67/5
endeavored [1]  56/20
engaged [2]  33/20 34/1
engagement [1]  23/15
Engineering [1]  10/15
enough [1]  34/17
entered [1]  8/11
entire [4]  58/1 58/7 59/19 66/3
entries [4]  6/6 19/18 45/7 52/7
entrusted [1]  14/4
enumerated [1]  24/12
especially [1]  58/6
Esquire [7]  2/2 2/2 2/3 2/10 2/16 2/16
2/17
Essentially [1]  17/18
established [1]  23/22
et [4]  1/10 1/13 3/10 3/10
evaluate [1]  11/5
even [19]  6/17 8/17 18/17 21/7 22/6 22/8
25/2 25/3 25/16 27/8 27/9 32/16 32/20
32/21 36/25 39/17 40/15 62/22 68/8
event [1]  64/18
events [4]  13/17 14/2 14/6 14/11
ever [2]  21/19 25/5
every [1]  69/15
everybody [2]  3/5 4/9
everyone [4]  3/3 3/18 56/21 70/16
everything [2]  10/8 39/24
evidence [7]  26/14 31/5 39/24 40/2 41/2
41/6 70/21
evidenced [1]  48/21
exactly [1]  62/5
example [1]  32/2
except [1]  32/22
exception [6]  31/2 40/11 57/12 57/15
67/17 67/20
exceptions [1]  42/13
excusable [1]  67/7
excuse [3]  13/12 15/4 19/11
exercise [1]  24/17
exhibit [21]  9/23 9/25 10/2 10/4 14/9
24/2 24/3 43/4 43/6 43/7 43/9 43/16
43/25 44/2 44/4 47/16 55/14 56/24 64/2
69/2 70/21
exist [1]  40/19
existed [2]  59/14 65/19
existence [1]  40/12
existing [1]  60/14
exists [3]  60/11 67/17 67/20
expert [1]  19/6
explain [2]  50/9 54/11
explained [1]  50/19
explanation [2]  14/20 18/12
extend [1]  27/20
extension [1]  11/15
extent [3]  13/3 27/4 62/11
extra [1]  5/17
eyes [2]  50/12 50/15

## F

face [1]  8/22
fact [16]  7/8 12/5 36/13 37/16 37/20 41/2
41/10 43/22 46/9 47/24 48/25 58/9
58/14 61/20 61/21 61/24
factor [1]  65/17
factors [8]  11/3 13/9 13/10 17/19 18/14
18/15 18/18 67/9
facts [4]  13/16 16/17 40/9 66/25
factual [1]  16/14
failure [4]  10/11 39/2 64/3 64/6
faith [1]  13/25
fall [1]  59/15
false [2]  19/23 30/9
familial [1]  26/21
family [1]  34/10
family-type [1]  34/10
far [4]  16/15 16/16 64/12 67/10
fast [2]  14/25 46/11
February [4]  1/18 3/2 22/20 72/19

## G

gas [2]  45/20 60/8

Federal [1]  5/2
fees [1]  23/7
few [2]  19/4 40/17
fiduciary [1]  24/19
file [2]  43/14 70/24
filed [8]  3/12 4/13 4/25 6/4 12/2 45/17
65/6 69/1
filled [1]  18/15
filter [2]  8/19 14
finally [1]  30/8
financial [1]  52/8
financially [1]  72/17
find [1]  16/8
fine [1]  39/19
finish [1]  49/19
fire [2]  58/8 60/8
firm [10]  1/19 4/6 15/3 30/19 33/18 34/1
36/5 42/1 51/3 51/7
firm's [1]  35/2
firms [1]  27/22
first [24]  35/19 20/9 2 9/4 9/8 10/8 17/4
19/13 20/9 23/2 35/14 42/16 42/21
42/24 43/3 43/23 44/6 44/19 50/24 51/4
51/5 51/25 56/4 61/15 68/25
first-pass [1]  51/5
five [4]  11/20 11/25 12/3 18/18
five-month [1]  11/20 11/25
FL [5]  1/20 1/25 2/5 2/12 2/19
flagged [1]  52/24
flagging [1]  53/7
flat [1]  66/1
FLORIDA [8]  1/1 1/3 1/7 1/13 1/23 10/22
72/2 72/7
focal [1]  58/12
focus [2]  51/9 51/16
focused [1]  51/10
folder [2]  7/15 7/19
folders [1]  7/20
folks [4]  5/4 56/13 57/1 57/11
follow [1]  20/21
follow-up [1]  20/21
following [1]  1/21
Foodonic's [2]  10/2 10/4
FOODONICS [10]  1/3 1/13 3/8 3/19 3/22
29/5 29/6 44/5 44/21 45/4
Foodonics' [5]  8/8 9/23 9/25 42/24 45/6
Foodonics/Jack [1]  44/5
foot [1]  45/20
footnote [1]  45/5
foregoing [1]  72/9
forgot [1]  36/22
form [1]  18/23
formal [3]  40/20 69/7 71/10
format [2]  44/19 44/21
forth [3]  9/3 23/1 29/23
forthcoming [1]  47/24
forward [2]  46/20 62/18
forwarded [1]  32/25
fought [1]  45/23
found [2]  8/1 44/18
four [1]  18/18
fourth [1]  37/12
FPR [1]  72/22
fraudulent [1]  58/16
FRD [2]  19/24 22/4
Frian [1]  30/18
front [2]  31/5 65/21
full [3]  45/20 46/18 49/4
further [1]  72/13
future [1]  29/12

**G**

gasoline [1] 58/8
gathered [1] 31/20
gave [3] 36/9 43/3 43/5
general [1] 31/2
generally [4] 19/15 26/6 53/7 60/6
gentleman [1] 61/3
Gerheiser [1] 61/2
get [18] 4/11 7/10 7/17 7/18 26/1 30/8
31/19 41/22 43/21 45/14 45/21 48/14
49/17 49/19 69/12 69/14 69/16 71/21
give [11] 6/22 7/23 24/21 36/6 36/21
39/7 57/20 59/18 65/20 69/22 69/23
given [6] 6/19 16/16 43/22 46/9 48/25
60/2
giving [1] 34/21
gleaned [2] 47/12 47/12
go [21] 3/7 3/18 4/22 5/13 9/3 9/5 10/6
12/14 16/20 16/23 17/14 49/17 50/2
50/3 50/5 55/1 55/25 56/16 68/2 70/6
71/1
goes [1] 61/7
going [24] 4/21 5/9 5/21 6/24 14/7 24/11
25/25 28/23 29/20 34/25 37/2 39/7
39/13 43/2 43/3 43/13 45/1 57/20 58/5
59/22 69/9 69/10 69/12 69/20
good [9] 3/4 3/5 3/5 4/3 4/5 4/9 5/13
29/13 35/17
got [18] 6/14 6/23 7/14 7/15 7/22 7/25
10/18 12/18 25/9 34/10 35/14 43/19
46/3 48/20 51/11 53/23 63/22 70/24
grant [1] 58/23
granted [2] 15/23 24/17
gray [9] 2/11 2/13 3/23 7/25 8/8 42/22
44/21 47/5 55/19
Gray's [1] 9/14
gray-robinson.com [1] 2/13
GRIER [2] 2/10 3/23
grier.wells [1] 2/13
grocery [1] 18/8
group [4] 21/15 39/21 51/21 66/17
guess [7] 24/2 26/17 34/19 42/16 44/13
45/24 59/1
guideline [1] 11/1
Gunster [1] 1/19

**H**

had [30] 7/6 7/8 8/20 15/9 19/3 21/23
25/3 27/3 30/11 30/14 30/15 33/12
35/13 38/24 44/23 47/5 51/18 52/6
53/14 53/15 54/1 54/14 54/15 55/1 55/9
55/19 61/10 63/6 65/6 68/6
half [1] 12/19
Halifax [1] 37/7
hand [3] 5/23 6/24 42/20
handed [1] 9/19
handing [1] 44/12
handled [1] 35/17
handout [1] 43/3
handwritten [1] 65/3
happen [2] 4/24 25/25
happened [1] 62/13
happening [1] 25/22
happens [1] 20/24
hard [2] 14/21 46/11
harsh [1] 60/7
has [15] 7/1 12/24 15/11 20/3 20/7 24/6
25/4 25/19 25/20 40/7 45/12 62/1 64/14
66/5 70/12
have [63] 3/7 3/18 5/22 6/1 9/20 9/25
12/10 13/23 14/13 14/18 15/8 16/7 18/4
18/5 18/8 20/15 21/16 22/1 22/9 23/15

25/21 27/8 27/11 28/14 31/5 31/7 33/7
33/11 34/12 35/4 35/4 36/4 37/22 38/1
39/6 39/24 41/18 41/23 43/2 45/23
45/25 45/25 46/19 48/8 49/22 52/9
52/23 55/11 56/17 61/18 62/5 62/5 62/7
62/7 62/8 62/13 63/12 64/9 65/7 66/22
67/8 69/9 70/5
haven't [6] 12/24 20/17 23/22 25/10
45/16 45/17
having [6] 9/18 25/7 32/13 38/8 39/1
48/12
he [15] 23/14 23/15 25/6 25/7 25/8 25/9
26/10 30/6 30/8 36/25 37/1 37/2 39/25
45/12 63/6
he's [1] 45/13
header [1] 59/5
heads [1] 7/22
heads-up [1] 7/22
hear [1] 67/25
heard [1] 1/21
hearing [9] 1/16 8/13 8/15 9/23 10/1 15/7
69/4 70/22 71/8
hearings [1] 7/7
heat [1] 49/2
heavily [1] 15/18
held [2] 20/3 49/8
help [5] 20/19 30/3 30/20 30/25 50/5
helped [2] 35/25 37/22
helpful [1] 16/3
helping [2] 30/11 40/23
helps [1] 71/7
her [52] 18/8 19/19 21/5 21/12 21/18
22/24 26/5 26/5 27/4 30/2 30/3 30/6
30/8 30/9 30/11 30/11 30/11 30/12
30/24 30/24 30/25 31/13 32/2 32/6 32/8
32/9 32/14 32/18 32/22 32/25 33/22
34/5 34/12 34/13 35/3 35/20 35/20
35/25 36/4 36/7 36/9 36/13 37/18 37/22
38/6 39/3 40/14 41/4 62/20 66/16 67/21
67/22
here [47] 3/8 3/11 4/12 6/4 8/6 11/12
11/14 11/15 11/15 11/21 12/12 13/11 15/9
16/19 17/15 17/22 18/21 19/2 20/8
21/11 21/22 22/8 22/14 23/8 26/2 31/8
33/3 33/15 36/2 37/15 43/2 43/18 43/23
45/12 48/23 49/20 56/3 56/6 56/14
56/21 59/3 59/13 60/19 61/18 62/5
65/21 67/17 67/20
hereby [1] 72/7
herself [11] 17/23 18/5 19/14 20/9 20/25
21/12 32/1 33/17 36/8 41/20 59/10
hey [1] 46/5
higher [1] 68/11
highlighted [1] 19/16
highly [1] 21/25
him [2] 23/16 67/25
hindsight [1] 32/15
hired [4] 30/16 36/25 38/24 50/23
his [4] 23/12 37/3 47/18 64/1
hit [1] 32/18
holding [2] 49/7 57/25
holds [2] 12/2 64/22
holistic [1] 46/14
honor [5] 29/19 48/4 64/4 67/14 70/18
Hospital [1] 37/8
hours [2] 8/6 8/12
how [17] 5/25 6/23 7/15 7/15 21/11
27/20 31/18 35/17 39/22 47/9 50/9
50/16 50/17 52/12 60/22 62/20 69/22
however [1] 9/3
huh [6] 19/17 28/18 38/5 55/17 59/11
66/10
Hulsey [11] 2/18 4/6 20/19 21/19 21/20

31/15 33/3 33/24 53/8 53/11 53/17
hundreds [3] 17/24 22/22 65/23
husband [1] 27/19
hypothetical [1] 33/8

**I**

I'd [4] 23/25 24/24 28/12 60/24
I'll [11] 12/12 14/7 41/18 41/20 43/1 60/4
60/17 69/19 70/15 71/9 71/15
I'm [29] 5/21 6/24 14/7 16/24 24/11 28/6
29/8 29/17 29/19 32/19 35/1 35/25 36/1
43/1 43/2 44/10 44/12 48/17 50/6 53/23
55/13 57/20 59/1 59/21 59/22 59/23
69/10 69/12 69/20
I've [3] 5/14 10/18 37/25
idea [8] 18/4 18/9 21/17 25/21 35/17
62/6 62/13 69/16
ideas [2] 35/5 36/5
identification [5] 10/3 10/5 43/8 43/10
44/3
identified [17] 19/18 27/17 51/19 51/19
52/5 52/10 56/3 56/6 56/6 56/12 56/14
56/17 57/1 57/3 57/11 59/4 59/6
identifies [1] 41/15
identify [5] 3/18 51/20 54/23 55/2 57/8
identifying [1] 32/10
ignore [1] 68/8
imagine [2] 33/2 44/13
immediate [1] 68/23
immediately [1] 65/16
immunize [1] 12/5
implement [2] 30/4 34/17
important [3] 34/17 38/7 49/15
impossible [1] 20/13
impression [1] 38/7
inappropriate [2] 66/6 67/15
INC [3] 1/3 1/13 1/24
incapable [1] 26/12
incarcerated [1] 61/3
include [3] 17/15 20/1 56/20
including [2] 8/8 60/9
independent [1] 2/18
indicate [1] 63/9
indicates [2] 32/23 33/25
indicating [1] 16/25
individual [3] 62/8 62/24 64/19
individually [4] 18/2 21/20 24/5 24/13
infirm [2] 26/8 40/16
information [10] 11/17 20/4 31/20 34/14
36/20 36/21 39/9 41/21 44/25 67/23
inherited [5] 34/3 34/4 34/5 34/24 37/23
initial [3] 50/24 53/6 53/6
inquiry [1] 62/23
instances [2] 32/11 32/12
instead [1] 49/2
instruct [1] 35/20
insulate [1] 21/14
intend [1] 17/1
intense [1] 68/12
intent [1] 57/8
intentional [2] 13/25 15/8
interactions [1] 60/22
interest [6] 28/2 28/4 28/7 42/2 42/5
42/15
interested [1] 72/17
interim [3] 28/19 28/22 28/25
INTERNATIONAL [3] 1/3 1/13 3/9
interrupt [2] 50/1 55/24
interrupted [1] 39/18
introduced [1] 70/21
inviting [1] 59/21
invoke [1] 38/13
involved [3] 17/25 35/14 52/8

## I

involvement [1] 27/22
ironic [1] 14/17
irrelevant [2] 14/5 47/13
is [122]
isn't [9] 13/12 14/1 20/4 25/17 58/11
64/9 66/13 66/13 67/7
issue [20] 7/17 8/14 11/14 15/20 16/1
16/3 17/1 41/6 41/24 48/14 48/25 49/1
55/10 60/18 65/10 65/15 66/7 66/9 68/7
71/16
issues [7] 8/7 37/2 38/8 38/25 40/25
46/20 61/10
it [168]
it's [57] 6/3 6/21 7/14 7/20 8/14 8/18
8/19 10/9 15/4 15/25 17/12 17/18 18/7
18/20 19/6 19/23 20/13 20/14 20/16
21/1 21/24 23/6 23/10 24/2 25/2 27/6
28/5 29/17 30/25 33/9 33/10 34/25
36/13 36/23 37/9 37/11 37/23 39/15
39/25 40/6 41/6 43/22 46/17 47/6 58/24
60/7 60/14 64/21 66/18 67/17 68/14
68/19 68/20 68/22 68/23 69/1 69/3
items [2] 42/23 44/6
its [3] 6/10 21/9 64/5

## J

Jack [1] 44/5
Jackie [2] 3/25 4/1
JACKSONVILLE [6] 1/2 1/20 1/25 2/5 2/12
2/19
JACQUELINE [1] 2/3
Jacques [3] 3/23 38/8 64/3
Jacques' [1] 63/5
JAMES [2] 2/16 4/5
January [5] 7/19 8/2 8/4 9/10 9/11
Jaques [4] 33/4 39/1 39/5 39/12
Jean [16] 1/7 1/10 26/4 26/10 26/13
26/13 29/25 30/1 30/23 38/24 39/12
40/21 41/2 41/7 41/11 41/16
Jean's [1] 41/16
job [1] 11/15
Joel [1] 30/18
joint [1] 42/14
jpost [1] 2/20
Judge [3] 45/11 46/24 71/18
judgment [1] 68/21
July [2] 6/14 6/17
June [1] 14/23
just [49] 4/21 6/2 6/21 7/1 7/14 8/19
13/12 14/25 15/4 18/8 18/21 18/24 19/9
19/23 20/8 20/16 21/16 22/16 25/9
25/15 25/17 25/23 26/6 28/8 31/17 32/8
36/8 52/20 54/11 55/7 59/5 59/22 60/1
60/6 61/6 61/9 61/11 62/18 62/25 63/24
65/6 66/1 66/5 66/22 68/10 69/3 69/14
69/16 70/3
jvanlaningham [1] 2/7

## K

kept [1] 45/17
kick [1] 68/4
kind [5] 33/6 34/10 39/19 40/24 40/25
kinds [2] 61/21 61/24
KLEMPF [29] 1/6 1/7 1/9 1/10 3/9 3/23
4/7 23/20 24/5 24/7 24/22 25/5 30/2
30/23 31/6 33/4 38/9 38/24 39/1 39/5
39/12 39/12 40/14 40/15 40/21 41/2
41/7 61/8 64/3
Klempf's [2] 27/13 44/5
Klepmf [1] 29/25
knew [2] 35/13 65/19

know [46] 6/3 7/4 9/2 12/15 15/12 17/2
17/23 20/14 20/23 20/24 21/8 21/19
21/24 22/2 22/8 22/10 22/10 25/23
27/20 32/15 33/9 35/5 37/16 37/16
37/20 37/22 43/17 46/20 46/23 47/15
49/6 54/20 55/4 55/5 56/13 56/19 58/9
59/14 62/9 63/5 65/13 68/20 69/15
69/19 70/7 70/15
knowing [1] 56/18
Kunz [1] 64/24

## L

lack [3] 12/8 18/16 67/10
LANINGHAM [2] 2/3 4/1
Large [1] 72/7
last [5] 40/17 42/15 42/21 42/24 44/6
lasted [1] 30/7
later [16] 6/24 12/3 14/20 22/9 30/16
37/30 18/30 19/19 31/22 35/6 36/6 36/8
38/20 52/10 54/22 62/11
Laura [4] 1/7 1/10 2/4 2/11
law [15] 1/19 2/4 4/5 10/9 12/19 18/16
19/20 22/25 26/18 27/2 28/5 31/18 51/3
66/2 67/19
lawsuit [1] 4/13
lawyer [6] 35/21 36/4 36/7 36/9 37/17
37/18
lawyer's [1] 23/7
learn [1] 15/3
least [4] 32/13 33/11 46/22 47/23
legal [12] 16/14 26/22 30/3 30/6 32/4
36/13 37/2 38/8 40/25 59/12 62/12 63/6
legally [1] 14/5
Lemonik [3] 36/23 64/21 64/21
less [5] 11/12 13/11 61/25 66/25 66/25
let [11] 9/5 31/17 31/19 33/14 46/23
52/20 63/8 69/9 69/14 69/19 70/15
let's [6] 3/18 3/19 5/13 9/24 26/19 60/7
letter [7] 23/16 38/16 38/19 39/4 63/4
63/9 64/1
like [26] 6/25 7/7 7/19 11/15 11/21 12/25
18/24 21/13 23/25 28/9 28/12 34/9
37/24 40/20 42/20 44/8 47/21 48/1 52/7
54/1 54/2 55/16 56/10 60/24 68/15
69/18
likely [2] 46/21 66/18
limitation [1] 24/14
Limitations [1] 24/15
limited [2] 49/7 49/8
line [3] 24/7 25/6 49/19
lis [2] 4/15 54/6
list [10] 14/2 18/1 18/8 53/6 53/6 55/4
55/5 56/22 62/24 68/11
listed [8] 17/15 20/11 28/2 42/23 44/6
45/7 59/3 62/15
listing [1] 62/7
litigation [9] 21/25 38/13 49/21 62/2 63/3
63/10 63/21 64/18 65/6
little [5] 46/17 48/21 50/19 54/19 69/13
loans [1] 39/9
log [73]
log-in [1] 70/8
logs [8] 8/9 14/16 17/12 28/19 44/9
44/15 44/24 47/23
long [5] 16/10 16/16 32/5 63/6 67/4
look [20] 11/22 15/1 33/5 41/13 41/25
44/8 55/14 55/16 56/16 56/24 58/25
59/6 59/9 59/15 59/20 63/22 66/12
66/18 69/14 69/18
looked [6] 6/25 7/15 7/19 25/7 47/16
56/10
looking [3] 15/15 24/9 61/6
looks [2] 47/21 48/1

lost [1] 48/20
lot [6] 34/7 34/9 34/11 34/11 58/6 60/5
loud [1] 36/2
lower [1] 53/10
lucky [1] 29/17

## M

made [3] 27/12 31/9 68/7
magnitude [2] 11/8 13/10
main [4] 10/14 13/9 13/9 16/3
maintain [1] 28/9
major [1] 22/17
make [21] 17/3 20/5 22/12 29/4 36/10
36/12 39/2 43/4 43/11 43/16 45/8 48/25
55/14 61/12 65/14 67/10 68/1 68/14
69/6 71/3 71/10
makes [1] 27/25
making [1] 51/10
managed [1] 30/8
management [1] 28/21
manner [1] 10/11
many [6] 5/23 14/15 14/19 44/23 59/3
65/23
Maplewood [1] 19/24
mark [9] 23/20 25/5 27/13 30/13 41/3
41/8 41/11 41/16 43/24
marked [7] 9/20 10/2 10/4 43/7 43/9 44/2
51/24
MASTER [2] 1/15 1/17
match [1] 56/9
material [2] 19/7 47/13
materials [1] 5/24
matter [13] 3/8 16/14 16/15 17/17 18/11
19/20 26/18 58/9 58/14 59/13 61/17
66/2 67/19
matters [2] 40/5 64/20
may [6] 24/16 28/11 57/19 63/12 71/20
71/21
maybe [9] 14/25 18/6 18/6 18/7 32/15
46/17 50/10 59/3 62/14
mdemont [1] 2/20
me [26] 4/7 9/6 9/19 9/24 24/17 29/17
31/17 31/19 33/4 33/14 43/3 43/5 46/5
46/25 48/2 50/9 52/20 58/25 60/2 63/8
69/9 69/14 69/22 69/23 69/23 71/1
mean [13] 26/11 28/4 33/25 35/8 47/21
48/1 48/13 52/15 63/7 63/21 63/25 64/9
66/12
means [1] 34/7
meant [3] 28/5 38/11 42/3
medical [1] 61/10
meet [2] 7/5 8/2
meet-and-confer [2] 7/5 8/2
meetings [3] 7/5 14/16 65/19
member [2] 14/5 64/7
memoranda [1] 37/1
memorandum [1] 49/13
memorandums [1] 31/21
mental [1] 38/6
mention [1] 7/3
mentioned [5] 6/16 40/14 65/18 67/8 68/9
merit [1] 18/14
Merlin [2] 37/10 65/2
MICHAEL [2] 1/15 2/16
mid [1] 63/3
MIDDLE [3] 1/1 10/21 64/25
might [12] 21/3 21/4 22/9 31/9 32/2 33/7
34/19 34/20 37/22 51/2 60/22 69/14
Mike [1] 4/8
million [2] 19/5 66/4
mind [1] 37/3
minor [1] 48/19
missed [2] 52/18 57/9

## M

mistake [1] 57/10
mitigating [2] 11/24 12/4
modify [1] 35/12
moment [1] 66/8
Montana [2] 10/18 57/24
month [2] 11/20 11/25
months [13] 6/10 11/12 12/3 12/18 13/13
14/20 14/23 15/5 16/15 19/4 22/14
65/15 67/9
more [13] 6/6 20/13 26/6 39/6 41/1 41/18
49/20 49/20 51/10 58/8 65/22 65/24
69/13
morning [6] 3/3 3/4 3/5 4/3 4/5 4/9
most [7] 11/7 13/17 14/6 14/11 32/12
45/12 64/23
mostly [1] 27/18
motion [21] 3/12 4/12 4/14 5/1 5/14 5/18
8/10 13/19 15/22 17/13 29/23 38/15
39/5 45/5 45/14 56/18 59/7 59/10 69/5
71/6 71/10
motions [1] 60/9
move [5] 14/5 19/1 46/20 68/15 69/6
moved [1] 18/25
Mr [6] 4/4 23/13 23/20 29/15 50/1 60/3
Mr. [22] 5/16 13/18 14/8 22/23 22/24
24/7 26/9 29/15 29/15 37/17 37/17
37/21 37/21 47/17 47/17 50/10 50/16
57/22 61/7 63/9 63/25 67/13
Mr. Blackburn [3] 22/23 37/17 37/21
Mr. Brust [3] 37/17 37/21 63/25
Mr. Brust's [1] 63/9
Mr. Demont [1] 29/15
Mr. Dix [3] 47/17 50/10 50/16
Mr. Edelman [3] 22/24 26/9 61/7
Mr. Klempf [1] 24/7
Mr. Post [3] 29/15 57/22 67/13
Mr. Post's [2] 13/18 14/8
Mr. Santana's [1] 47/17
Mr. Stelf [1] 5/16
Mrs [1] 40/15
Ms [2] 33/17 61/8
Ms. [11] 17/22 18/3 19/14 22/18 23/20
24/3 24/5 24/6 27/19 60/19 66/15
Ms. Klempf [1] 24/5
Ms. Srochi [8] 17/22 18/3 19/14 22/18
23/20 24/6 60/19 66/15
Ms. Srochi's [2] 24/3 27/19
much [11] 13/1 16/12 16/12 40/20 53/10
65/22 66/24 66/25 69/8 70/17 71/17
multifactor [1] 10/23
multiple [5] 42/8 42/9 60/9 61/21 65/10
must [1] 10/10
my [13] 4/8 24/16 29/1 38/15 50/12
52/12 56/21 57/6 57/8 57/10 64/15
71/16 72/10
myself [4] 31/7 33/24 59/21 62/18

## N

names [1] 51/3
nature [1] 64/19
navigate [2] 30/25 40/24
nearly [1] 4/9
necessary [1] 58/24
need [16] 5/17 18/19 23/13 26/1 26/19
39/9 45/10 53/22 58/22 59/6 59/9 59/24
66/11 66/18 70/5 70/16
needed [7] 26/4 26/5 27/4 30/4 32/3
32/20 62/24
needs [5] 19/21 21/9 26/20 46/13 46/14
negated [2] 27/5 27/6
negates [1] 60/21

negotiate [1] 30/21
net [1] 51/2
never [10] 6/14 25/8 25/8 52/23 58/12
58/12 58/13 58/13 65/18 68/9
new [2] 34/1 60/13
no [39] 1/5 4/19 5/19 7/23 8/21 11/15
13/21 13/24 15/24 16/7 18/4 18/8 18/11
18/11 18/11 18/11 20/2 20/15 21/16
25/21 26/2 26/14 27/1 27/12 31/17 36/7
39/7 39/19 39/19 44/24 46/4 49/14
58/22 62/6 62/13 67/1 67/2 67/24 71/3
non [2] 7/2 28/12
non-disputed [1] 28/12
non-privileged [1] 7/2
none [5] 32/7 46/10 54/7 61/1 61/11
North [2] 2/4 2/11
Northern [1] 10/17
not [89]
Notary [1] 72/6
note [1] 24/24
notes [6] 31/21 32/14 37/1 62/18 65/3
72/11
nothing [7] 12/9 19/2 24/20 24/23 25/4
41/1 64/22
notice [1] 1/16 6/14 33/16
noticed [1] 4/12
notwithstanding [1] 24/15
November [1] 14/13
now [13] 9/22 15/10 26/15 27/14 28/24
49/1 49/1 52/19 63/25 69/3 69/9 69/13
69/21
number [12] 3/10 3/14 3/16 8/7 10/13
15/11 24/12 33/16 35/8 44/1 44/4 53/10
numerous [4] 7/5 19/18 26/10 26/12

## O

objection [5] 7/1 11/4 12/25 28/1 43/19
objections [3] 11/6 11/21 12/22
objects [1] 13/2
obligations [1] 12/11
obvious [1] 44/13
obviously [3] 8/25 53/13 59/16
occurred [2] 14/6 67/6
October [3] 14/12 61/6 64/1
odd [1] 6/12
off [5] 28/17 52/11 54/8 54/24 57/22
offering [1] 39/5
office [2] 14/6 34/12
officer [1] 64/7
oh [2] 4/1 39/8
okay [36] 4/21 5/13 6/2 9/17 10/6 10/19
16/20 24/11 28/14 29/2 29/13 29/13
29/18 31/11 35/16 39/18 42/18 51/17
52/3 53/19 54/18 55/7 56/9 57/5 57/7
57/16 57/16 66/20 67/13 68/13 68/25
70/10 70/13 70/23 71/13 71/21
once [3] 7/8 40/6 65/11
one [35] 7/14 8/14 12/24 16/25 20/12
23/25 28/14 28/17 29/3 29/15 29/17
31/8 35/23 35/24 36/22 37/22 42/16
44/17 45/11 49/9 50/10 53/3 57/13
57/13 60/9 60/19 61/15 64/12 65/16
66/12 68/19 68/24 69/2 70/11 70/18
One's [1] 42/14
one-after-the-other [1] 68/24
one-sided [1] 14/6
ones [5] 10/14 19/15 27/17 54/23 59/16
ongoing [1] 13/9
only [15] 6/13 7/14 8/1 31/5 39/23 40/20
41/11 45/1 49/8 57/15 58/17 62/3 65/16
66/1 70/11
operated [1] 39/22
Opinion [1] 62/3

opportunity [1] 57/21
oppose [2] 61/14 71/13
opposition [1] 13/21
order [6] 8/11 29/21 53/20 60/17 71/1
71/16
orders [2] 45/17 68/8
ore [3] 71/5 71/6 71/9
organize [1] 20/20
organized [1] 32/6
organizing [1] 20/25
originally [2] 53/25 54/21
other [25] 5/24 11/9 13/9 15/18 16/3
16/25 19/10 27/16 35/21 37/24 44/18
47/14 50/24 53/12 53/16 53/17 54/9
55/22 56/7 57/24 61/16 66/24 67/9
68/19 68/24
others [4] 13/13 52/9 56/14 64/10
otherwise [2] 19/22 40/9
ought [1] 33/5
our [42] 4/24 7/6 8/25 9/4 10/7 10/7
10/16 12/12 12/15 12/17 14/3 14/17
17/12 19/9 27/1 29/23 29/25 30/18
31/18 34/12 34/18 34/18 38/15 40/10
40/10 44/19 45/19 45/20 45/22 47/6
47/19 48/13 48/19 48/21 49/4 49/12
50/20 51/7 58/10 58/12 59/19 65/22
ours [2] 18/25 65/16
out [8] 8/1 10/22 24/4 36/2 39/10 39/23
44/9 66/1
outside [1] 59/16
over [9] 7/13 30/7 32/5 32/13 38/9 40/16
40/16 45/23 50/15
own [5] 21/9 32/8 32/9 45/9 67/22

## P

P.A [2] 2/4 2/11
page [10] 24/13 31/19 36/15 36/17 37/12
42/21 42/24 44/6 45/5 57/4
pages [3] 31/19 56/4 72/10
paid [1] 23/16
Palm [1] 22/3
papers [1] 5/15
paragraph [3] 24/9 57/4 64/22
parallel [1] 4/22
part [9] 7/11 15/23 23/12 39/11 41/21
47/4 48/19 69/7 71/10
particular [1] 13/14
particularly [1] 17/21
parties [12] 3/20 9/23 9/25 29/6 29/24
32/21 42/9 44/21 45/3 45/6 56/2 72/14
parties' [1] 44/18 64/4 72/15
partners [2] 4/8 19/24
party [7] 7/12 7/21 31/3 40/23 42/14 45/7
53/12
pass [7] 50/25 51/4 51/5 51/8 52/1 52/1
52/17
pays [1] 23/6
pedal [1] 45/21
pendens [1] 4/15
pending [1] 5/1
people [7] 27/17 30/1 41/3 56/11 56/12
56/17 56/22
per [1] 49/14
percent [1] 29/8
perform [1] 64/6
performed [2] 51/5 53/14
perhaps [1] 9/2 15/4
period [5] 11/1 30/8 32/5 40/13 63/13
periodically [1] 40/16
person [3] 26/19 26/19 26/23
personally [1] 21/5
persons [3] 56/5 57/13 58/15
phone [2] 32/13 62/15

# P

phrased [1] 48/5
pick [2] 46/2 48/12
picked [3] 7/25 9/14 45/22
picking [1] 48/13
pink [1] 56/22
place [3] 1/19 1/21 53/17
plaintiff [6] 1/4 2/8 2/14 3/13 3/15 40/9
plaintiff/counter-defendant [1] 3/13
Plaintiffs [1] 1/11
platform [1] 69/23
point [14] 16/8 17/9 21/11 24/4 37/19
38/11 39/23 44/9 44/19 46/3 46/16
58/12 61/1 70/19
policy [2] 20/18 21/19
popped [1] 32/18
position [1] 52/21
possession [1] 33/10
possible [2] 45/8 60/5
POST [7] 2/16 4/4 4/5 29/15 50/1 57/22
67/13
Post's [2] 13/18 14/8
power [11] 23/23 24/4 24/6 24/21 24/24
25/3 26/7 27/6 41/1 41/5 60/20
powers [8] 1/22 1/24 24/12 24/16 24/17
72/5 72/21 72/21
precise [1] 42/10
predate [1] 33/17
predominantly [1] 23/1
prefer [2] 70/3 70/5
premise [1] 17/4
prepare [1] 15/2
prepared [4] 17/16 51/7 65/3 65/5
preserve [1] 37/3
pressing [1] 19/10
presumptively [1] 12/17
pretenses [1] 30/10
pretty [1] 13/1
primary [2] 8/25 9/4
principle [1] 23/9
prior [4] 22/24 47/20 47/25 66/15
priority [1] 68/11
private [1] 28/20
privilege [111]
privileged [22] 3/12 7/2 7/23 8/24 18/6
20/22 21/8 21/15 21/16 25/19 33/12
37/6 40/8 44/7 51/3 51/20 52/2 52/10
53/12 62/10 62/14 62/19
privileges [2] 46/1 49/11
probably [9] 4/23 11/7 13/23 14/13 22/21
25/25 48/5 66/19 70/3
problem [2] 30/5 38/1
procedural [1] 14/2
procedure [2] 36/10 37/19
proceedings [4] 1/15 1/21 71/23 72/9
process [7] 32/9 34/22 35/24 50/7 51/1
51/18 55/8
produce [3] 7/2 8/15 19/11
produced [21] 6/7 6/9 6/10 6/13 6/17
12/16 13/11 16/5 19/4 33/12 51/11
51/12 51/15 53/16 54/8 54/15 54/17
54/22 55/6 57/14 60/13
producing [1] 11/11
product [15] 13/5 20/12 20/14 20/16 22/5
28/10 32/9 36/14 38/14 61/19 61/23
61/25 62/3 65/1 67/22
production [16] 6/11 8/20 8/20 11/9 12/23
13/11 15/7 15/25 47/10 47/20 48/1
52/17 58/1 65/22 66/2 66/3
productions [1] 7/12
Professional [3] 1/23 1/23 72/6
professionals [3] 31/16 32/2 62/20

prong [1] 38/14
proof [1] 40/5
proposition [2] 22/5 23/3
protected [5] 13/4 19/25 21/3 31/22 61/25
protocol [10] 31/13 33/23 33/25 34/6 34/7
34/8 35/24 47/5 67/1 68/20
prove [2] 30/1 40/9
provide [3] 31/22 40/3 69/22
provided [6] 6/16 25/4 32/5 56/25 62/12
67/22
providing [1] 32/4
proving [1] 20/16
provision [1] 24/1
Public [1] 72/6
punitive [1] 19/5
purpose [6] 17/17 25/19 25/20 27/11 41/8
52/16
purposes [2] 34/16 62/12
PURSUANT [2] 1/16 33/23
put [7] 30/6 32/16 32/19 39/22 45/5 60/8
62/17
putting [1] 66/7

# Q

question [11] 28/14 31/24 36/24 37/14
38/10 51/25 52/12 54/19 57/14 61/14
70/18
questions [5] 41/19 41/23 49/23 50/5
55/23
quick [1] 55/22

# R

raise [1] 68/17
raised [1] 55/10
rather [2] 34/11 48/12
Raton [1] 65/2
read [5] 5/14 47/21 50/6 52/4 69/12
reading [1] 61/18
ready [1] 3/3
real [1] 21/11
really [11] 13/2 17/21 18/8 20/10 28/4
36/1 42/3 42/4 61/16 64/23 69/25
reason [1] 67/6
reasonable [1] 46/15
rebut [1] 25/13
receive [1] 7/16
received [2] 7/13 25/18
recipient [1] 39/9
recipients [1] 45/8
recitals [1] 39/16
recognize [1] 46/7
recommend [1] 60/24
record [12] 3/8 9/16 9/19 43/2 43/24 69/1
69/3 69/7 71/1 71/8 71/11 72/10
redeem [1] 30/9
redemption [8] 30/21 39/14 39/17 41/12
41/13 61/9 63/18 64/13
reduction [1] 53/9
refer [1] 15/17
reference [1] 46/1
referenced [1] 14/12
references [1] 14/15
reflect [1] 32/8
refund [1] 58/18
regard [1] 40/3
regarding [6] 6/15 14/15
Regency [3] 22/3 61/20 64/17
Registered [2] 1/23 72/5
relate [3] 22/11 27/21 65/10
related [3] 26/6 38/10 42/11
relating [1] 13/17
relationship [3] 26/22 26/24 42/4
relative [1] 72/13 72/15

release [1] 64/14
relevance [5] 50/8 50/25 51/5 51/8 52/11
relevancy [1] 47/19
relevant [8] 17/8 17/9 51/11 51/14 51/18
51/23 52/13 52/24
relied [2] 30/2 30/24
relief [6] 45/15 49/5 49/17 49/18 58/20
58/23
rely [3] 17/4 49/12 60/1
relying [3] 10/20 41/4 41/7
removal [1] 29/9
remove [1] 38/2
removed [4] 37/25 53/13 53/20 53/21
report [2] 19/6 72/8
reported [1] 1/22
Reporter [4] 1/23 1/23 72/6 72/22
REPORTER'S [1] 72/1
Reporting [1] 1/24
represent [2] 23/4
representation [3] 40/20 40/21 42/14
represented [3] 23/4 23/14 41/10
represents [1] 23/5
request [2] 12/23 58/19
requested [2] 11/16 58/23
requests [2] 29/5 52/22
require [2] 11/25 49/17
required [3] 16/15 17/11 18/13
requirement [1] 18/17
requirements [1] 17/13
requires [1] 28/10
requiring [1] 19/3
reserve [1] 28/12
resolution [1] 5/2
resolve [2] 27/24 60/8
resolved [2] 27/18 46/21
resources [2] 45/19 68/3
respect [2] 39/1 42/19
respectfully [5] 58/3 58/19 59/8 67/18
68/1
respective [1] 47/19
respond [1] 57/19
response [28] 3/15 5/18 5/21 7/4 11/21
13/1 13/20 13/22 14/3 15/12 18/13
23/24 28/3 28/15 29/6 29/25 31/18
36/17 40/10 42/3 47/16 50/20 52/4
53/24 56/4 56/5 56/14 64/2
responses [2] 6/25 12/23
responsive [4] 29/5 51/25 52/14 52/22
rest [2] 7/20 16/21
result [2] 11/19 15/24
results [1] 65/15
retained [2] 21/23 23/4
reversal [1] 12/6
reverse [1] 29/20
review [10] 47/18 50/23 50/25 51/5 51/8
52/17 60/25 67/24 69/11 69/15
reviewed [4] 14/22 48/8 50/8 52/16
reviews [1] 8/18
Revocable [2] 1/7 1/10
Ride [1] 10/15
right [26] 27/15 28/12 29/2 29/21 31/19
33/19 33/21 35/9 36/18 38/18 48/4 49/8
50/21 51/22 53/19 54/4 54/5 57/5 57/12
65/14 69/3 69/8 69/9 69/21 71/15 71/17
Robinson [7] 2/11 3/23 8/8 42/22 44/22
47/5 55/19
Robinson's [1] 8/1
robinson.com [1] 2/13
Rolland [1] 36/24
rough [1] 23/12
RPR [1] 72/22
rule [7] 18/14 18/17 31/2 46/11 49/14
59/6 59/10

**R**

ruled [1] 58/1
rules [2] 46/2 55/13
ruling [1] 12/6
running [1] 30/5
runs [1] 18/17

**S**

saga [1] 39/11
said [20] 7/1 19/22 20/19 25/22 28/3
 28/15 33/22 34/24 35/2 35/3 35/15
 35/15 35/16 36/4 37/5 37/24 47/18
 53/24 55/18 68/5
same [8] 3/24 11/19 20/6 23/8 44/17
 44/20 51/6 59/23
sanctions [2] 8/11 60/9
sandbagging [1] 48/23
Santana's [1] 47/17
satisfy [1] 22/15
saw [5] 4/14 35/12 38/16 50/14 56/25
say [20] 8/14 13/7 15/18 20/18 26/3
 26/19 27/11 29/1 31/17 34/11 45/6 46/5
 48/4 49/9 49/13 50/4 59/8 61/9 66/22
 67/25
saying [13] 15/12 25/24 26/13 28/23 33/3
 33/15 35/12 39/7 41/5 42/5 46/22 52/25
 62/1
says [13] 11/23 12/2 12/25 13/2 14/22
 19/25 21/18 24/15 28/5 46/13 47/17
 61/24 62/3
Schle [1] 71/18
scope [2] 4/17 26/24
screenshot [1] 9/24
se [1] 49/14
search [3] 32/17 47/8 47/9
second [9] 12/21 20/12 22/17 43/5 51/7
 51/25 52/1 52/17 63/25
second-pass [1] 52/17
see [7] 3/6 7/4 8/18 39/4 44/8 50/12
 57/2
seek [3] 19/5 26/22 49/17
seems [2] 61/25 65/10
seen [3] 12/24 25/10 32/14
segued [1] 39/20
selected [1] 32/1
self [1] 26/15
self-serving [1] 26/15
sellers [1] 41/17
send [3] 20/19 26/11 34/15
sender [1] 19/19
sending [1] 20/25
sense [4] 20/5 27/25 49/16 69/15
sent [12] 18/5 18/5 18/12 19/14 20/4
 22/7 25/18 33/3 33/4 61/22 63/3 65/4
separate [4] 27/12 28/8 28/10 70/8
separately [1] 27/24
September [3] 6/11 6/16 6/19
serious [1] 66/25
serve [2] 7/25 14/14
served [4] 7/18 8/4 8/12 9/15
service [1] 7/24
services [2] 32/4 34/18
serving [1] 26/15
set [4] 23/1 29/23 45/13 70/14
sets [1] 10/22
settlement [3] 39/14 41/12 41/14
seven [4] 8/12 17/13 18/18 18/19
several [1] 55/3
share [3] 35/7 36/5 37/4
shared [2] 32/10 32/12
shareholder's [1] 64/5
shareholders [1] 39/15

she [47] 18/5 18/5 21/19 22/8 22/8 22/19
 22/23 25/2 25/18 26/4 26/7 26/10 26/12
 26/15 27/3 27/4 30/4 30/11 30/14 30/15
 30/23 30/24 31/13 31/14 31/15 32/1
 32/1 32/9 33/2 33/6 33/22 34/14 34/22
 35/2 35/13 35/14 35/15 35/15 35/16 36/8
 38/25 39/6 40/17 41/3 61/10 62/17
 62/22 62/22
she's [9] 20/8 20/24 25/23 34/10 34/21
 38/8 39/7 57/4 61/8
sheet [1] 43/5
shifts [1] 40/8
short [1] 63/12
shorter [1] 16/12
should [4] 4/24 14/18 16/5 43/11 46/9
 47/18 48/8 52/23 58/2 59/20 67/7
shouldn't [2] 15/13 32/16
show [5] 10/15 27/9 40/10 44/5 60/22
showed [1] 9/24
shown [1] 40/6
shows [2] 42/22 60/19
shuffle [1] 48/20
side [4] 50/24 53/17 54/9 56/7
sided [1] 8/14
signed [1] 24/25
significance [1] 16/16
significant [13] 6/21 7/9 8/5 8/10 8/19
 11/8 15/19 17/21 18/4 20/13 21/11
 33/15 34/15
silence [1] 18/15
silly [1] 21/2
similar [1] 68/22
simple [1] 6/20 22/5
simply [2] 41/6 58/8
since [4] 3/7 6/13 32/20 43/2
singer [1] 71/19
single [4] 16/9 63/5 64/22 69/15
sir [2] 5/19 59/25
sitting [1] 37/15
situation [2] 36/3 68/23
six [3] 14/23 15/5 18/19
size [1] 15/3
skips [1] 14/19
slightly [1] 35/12
sluggish [1] 60/10
small [1] 8/20
Smith [11] 2/18 4/6 20/18 21/18 21/20
 31/14 33/3 33/24 53/8 53/11 53/17
smithhulsey.com [3] 2/20 2/20 2/21
so [70] 4/21 5/9 5/13 5/22 6/6 9/6 9/17
 9/18 10/7 11/14 16/7 20/9 21/13 24/11
 25/2 27/7 28/6 28/11 30/11 32/15 32/19
 34/6 34/8 34/22 35/19 37/1 37/13
 37/15 38/11 39/6 39/11 41/9 41/25
 42/16 43/1 43/17 43/23 43/24 44/4
 44/10 44/19 47/13 47/21 48/15 50/6
 50/7 50/19 51/4 51/14 52/3 52/12 52/20
 53/5 53/23 53/24 54/6 55/9 56/2 56/24
 57/10 57/23 58/19 60/2 62/5 66/7 68/1
 69/4 70/6 70/17 71/9
So.2d [1] 23/2
some [26] 5/24 5/24 6/12 8/23 17/15
 18/22 25/25 28/15 32/11 35/21 37/19
 37/24 52/3 52/4 52/7 52/9 53/11 53/14
 53/17 54/13 56/11 56/13 59/2 60/14
 61/10 69/17
somebody [2] 22/10 61/4
somehow [1] 34/18
someone [3] 26/20 26/21 57/25
someone's [1] 44/15
something [19] 8/3 12/24 17/23 19/22
 21/14 22/9 31/15 33/8 33/10 35/3 35/13
 46/8 52/6 54/1 54/2 55/15 55/16 68/10
 71/22
something's [1] 25/24
sometimes [1] 32/24
son [6] 26/6 30/6 30/12 30/12 30/24 61/3
soon [1] 69/19
sort [19] 6/2 6/3 6/22 8/17 10/8 10/22
 13/16 14/21 17/3 17/8 21/2 24/7 26/14
 27/9 27/13 28/3 35/9 65/13 68/22
sounds [1] 21/13
Southern [1] 22/4
spam [2] 8/1 9/14
speak [1] 26/16
SPECIAL [2] 1/15 1/17
specific [3] 12/25 15/20 24/1
speculate [1] 8/13
speculation [1] 40/1
spirit [1] 46/18
spoke [1] 26/10
squeezing [1] 39/3
SROCHI [15] 1/6 1/9 3/9 4/7 17/22 18/3
 19/14 22/18 23/20 24/6 24/22 33/17
 60/19 66/15 67/21
Srochi's [2] 24/3 27/19
staff [1] 14/4
stand [1] 23/2
standard [1] 14/1
standpoint [2] 48/6 48/7
stands [1] 22/4
start [2] 3/19 50/17
started [3] 30/7 34/23 51/15
starting [1] 17/9
State [4] 4/14 5/1 72/2 72/7
stated [1] 15/20
states [4] 1/1 10/17 31/13 44/13
status [1] 46/24
statutory [1] 64/6
staying [1] 51/1
STEIF [4] 2/2 3/21 5/16 60/3
stenographic [1] 72/11
stenographically [1] 72/8
Stephanie [4] 1/22 72/5 72/21 72/21
Steve [3] 30/17 35/22 38/20
still [4] 27/8 27/18 30/12 39/20
stock [2] 30/9 39/8
stocks [1] 39/6
stone [1] 45/13
stop [3] 56/1 63/8 63/24
strategy [3] 30/4 34/18 34/20
Street [4] 1/19 1/24 2/4 2/11
strike [1] 68/16
stuff [2] 34/11 49/18
subject [6] 17/16 18/11 21/3 29/11 33/11
 56/2
subjects [1] 26/16
submit [4] 31/10 55/15 67/18 68/6
substance [1] 32/24
substantial [1] 53/9
substantiative [1] 48/7
such [2] 40/5 69/4
sued [1] 58/17
sufficiency [1] 16/4
sufficient [6] 11/16 18/21 19/12 26/18
 38/13 41/20
sufficiently [1] 17/19 44/16 44/16
suggest [1] 58/3
suggested [1] 19/8
suggests [1] 34/2
suing [1] 58/18
Suite [5] 1/19 1/24 2/5 2/12 2/19
summary [1] 68/21
SunTrust [1] 52/9
supplement [2] 31/7 31/12
supplemental [5] 43/12 43/25 61/13 68/16

**S**

supplemental... [1] 70/19
supplies [1] 23/18
support [2] 27/2 61/12
supported [2] 12/7 61/11
supports [3] 14/3 14/17 67/3
supposed [1] 11/5
sure [13] 3/21 9/7 9/21 28/6 29/8 29/22
32/20 35/25 44/10 50/16 51/10 55/13
60/4
surrebuttal [1] 68/15

**T**

tab [1] 12/1
tabbed [2] 5/20 10/18
table [1] 50/15
tacit [1] 18/22
take [7] 4/24 11/3 34/20 43/3 48/3 60/17
71/9
taken [3] 1/18 54/8 54/24
takes [1] 10/8
taking [1] 39/10
talk [13] 5/21 8/16 8/23 10/14 12/8 18/3
20/24 24/1 41/20 46/10 60/7 65/9 65/11
talked [2] 20/23 22/23
talking [11] 8/7 11/13 14/7 17/6 39/21
42/17 43/17 63/5 63/20 65/8 70/1
talks [1] 40/4
TANNER [1] 1/15
tax [1] 58/18
team [1] 50/23
technical [1] 7/17
technically [1] 32/17
tell [3] 43/1 50/17 60/10
telling [2] 27/12 48/17
tension [1] 39/13
tenus [3] 71/5 71/6 71/10
term [3] 29/1 42/1 42/1
terms [4] 32/17 47/10 63/2 64/4
test [1] 10/23
testified [2] 23/14 26/9
testify [1] 23/16
testimony [1] 68/22
than [9] 6/6 11/12 13/11 15/18 34/12
41/2 44/17 48/12 57/24
thank [10] 4/10 5/15 29/14 44/11 55/8
60/2 69/8 70/17 71/17 71/22
that [385]
that's [57] 3/14 3/16 6/6 6/22 7/19 10/16
12/1 13/8 13/23 15/4 17/8 17/23 18/4
18/24 20/9 20/12 22/20 23/8 23/24
24/19 25/18 28/6 29/21 34/22 35/7
35/11 35/17 35/17 39/11 39/19 39/23
41/14 42/4 42/7 46/7 46/17 48/1 48/4
51/22 53/1 53/1 54/5 54/10 54/18 55/12
57/9 57/15 60/15 60/19 61/11 64/15
64/21 64/23 65/16 65/25 66/5 66/15
their [30] 6/11 6/18 6/25 12/22 13/19
13/20 13/22 14/18 19/6 23/21 26/4 27/9
28/17 29/9 33/9 44/8 44/8 45/4 45/6
45/9 46/16 48/11 51/22 52/55/20 56/11
56/18 56/24 56/24 59/2 67/3
them [35] 13/1 15/17 17/14 17/15 20/20
20/20 22/22 32/1 32/3 32/3 32/16 32/19
35/6 35/7 35/25 36/6 36/9 40/23 40/23
46/23 48/13 49/1 51/12 52/11 55/10
55/21 56/6 56/9 56/18 57/9 59/3 59/23
61/1 66/18 70/6
themselves [2] 3/19 31/21
then [35] 6/14 9/2 9/24 13/14 13/24
14/21 16/2 17/21 20/20 21/9 25/15 27/8
35/6 36/6 36/9 39/4 43/17 45/24 45/25

47/10 47/18 49/19 50/9 51/6 51/15
51/19 51/25 52/3 54/2 54/3 55/5 57/9
66/11 67/20 71/22
there [84]
there'd [1] 12/9
there's [36] 4/13 8/21 11/3 11/14 13/21
13/24 15/24 16/7 18/11 19/2 20/2 20/14
20/18 22/21 23/19 24/1 24/12 24/20
24/23 26/2 26/12 26/14 36/18 42/12
42/12 49/14 55/3 55/4 56/23 57/1 60/18
60/20 61/24 64/18 65/13 68/20
therein [1] 67/23
these [30] 12/22 15/15 15/16 16/11 17/24
20/19 21/8 22/21 30/1 31/24 32/7 34/10
36/22 38/2 38/8 39/9 40/11 40/17 40/24
40/24 42/12 44/7 45/23 57/13 58/11
58/25 66/12 69/13 69/17 69/17
they [102]
they're [15] 15/18 15/20 17/15 23/21
28/23 28/23 38/3 42/11 45/16 46/21
49/3 62/1 62/19 65/24
they've [6] 6/13 13/11 19/3 19/4 19/22
58/17
thing [4] 24/8 33/6 53/3 59/23
things [11] 5/23 7/7 16/3 20/21 21/8 25/9
28/9 32/18 34/8 35/5 40/24
think [49] 4/25 5/6 8/17 8/24 10/9 14/8
15/6 15/15 16/13 16/19 16/19 18/13
20/9 21/23 21/24 22/12 22/12 23/8
27/23 29/19 33/5 37/11 37/11 37/12
37/13 37/13 38/3 39/2 41/18 43/19
46/16 46/21 48/24 53/24 54/10 56/23
57/10 57/23 58/24 59/20 6/66/14
66/18 68/20 69/5 70/4 70/16 70/23
70/24
thinking [1] 36/2
third [11] 7/12 7/21 12/19 24/7 26/6 31/3
32/21 37/12 42/14 45/3 45/7
third-party [2] 7/12 7/21
this [99]
those [29] 4/21 5/15 10/18 16/13 18/15
19/15 22/20 27/17 29/4 29/9 32/18
33/16 35/8 36/5 39/16 47/21 52/7 52/7
52/16 53/13 53/19 54/7 55/2 56/5 62/14
62/14 64/9 64/14 70/2
thought [4] 32/2 32/8 34/14 37/2
thoughts [2] 35/4 36/4
thousand [1] 55/3
thousands [1] 65/23
thread [2] 59/4 59/5
three [3] 8/6 36/18 42/12
through [7] 17/14 30/25 34/25 40/22
40/24 59/24 72/10
throughout [1] 22/1
till [1] 12/12
time [29] 1/18 1/21 7/13 16/12 19/10
21/12 22/1 25/3 25/25 29/12 31/10 32/6
34/13 38/12 40/13 43/23 44/24 46/4
47/25 51/6 51/9 52/6 56/5 63/13 63/19
66/16 66/25 68/3 69/5
time-consuming [1] 19/10
timeline [2] 13/17 14/19
timeliness [1] 11/7 43/20
timely [3] 10/11 10/24 12/17
times [2] 7/5 26/10
timing [4] 4/17 16/17 48/6 48/16
timing-wise [1] 48/16
tires [1] 68/4
title [2] 17/17 18/11
today [10] 4/7 4/12 5/23 8/25 31/6 31/9
34/25 37/15 43/23 64/16
together [2] 39/22 46/19
told [2] 36/7 36/9

Tonya [1] 57/2
too [7] 5/22 6/21 15/17 16/16 49/15
65/14 68/23
took [3] 28/16 35/7 52/10
tortured [1] 61/18
totality [3] 18/20 58/4 67/15
tougher [1] 11/15
tracks [1] 4/22
transaction [3] 61/9 63/18 63/20
transcript [3] 9/18 23/13 72/9
transmittal [2] 6/20 7/11
treat [1] 49/16
tried [1] 54/11
true [6] 14/1 30/1 63/13 64/23 66/19
72/10
trust [28] 1/7 1/7 1/10 6/7 6/10 12/22
15/11 18/9 21/4 22/18 23/4 23/17 23/19
23/22 24/23 24/23 25/4 25/6 25/9 30/13
33/13 40/22 41/16 43/4 43/6 43/16
43/25 44/4 45/8
Trust's [3] 43/7 43/9 44/2
trustee [9] 1/7 1/9 4/7 22/20 23/5 23/7
24/18 25/13 66/16
try [6] 46/19 48/14 58/15 60/4
trying [4] 49/19 59/23 60/12 60/15
turned [1] 51/15
Turney [2] 23/1 25/12
turning [2] 49/2 49/3
twice [1] 6/6
two [5] 6/8 10/13 27/22 61/24 65/14
Tyne [2] 15/16 15/22
type [3] 27/10 34/10 67/11
types [2] 16/11 17/11
typically [1] 42/7

**U**

Uh [6] 19/17 28/18 38/5 55/17 59/11
66/10
Uh-huh [6] 19/17 28/18 38/5 55/17 59/11
66/10
ultimate [2] 32/22 53/25
ultimately [3] 30/21 37/3 37/4
unconscious [1] 61/5
under [7] 15/6 16/11 30/9 45/15 58/3
58/22 66/24
underlie [1] 48/17
underlying [2] 21/7 21/13
undermines [1] 48/17
understand [5] 30/3 33/14 44/14 52/21
64/13
understanding [2] 56/21 64/15
understood [2] 42/2 42/8
unduly [1] 19/2
unfortunately [2] 30/5 39/16
UNITED [2] 1/1 10/17
Universal [8] 10/15 10/20 10/21 11/11
46/12 46/12 49/6 66/23
unless [1] 41/18
unlikely [1] 21/25
unrefuted [1] 67/17
until [3] 30/8 40/17 65/20
untimely [3] 12/18 15/25 16/6
up [23] 7/9 7/22 7/25 9/14 14/18 15/9
20/21 29/18 32/18 35/25 37/23 42/20
46/21 46/22 46/24 46/25 49/3 52/12
56/10 58/13 66/13 68/11 70/14
upon [2] 30/2 30/3
us [30] 6/20 7/11 8/5 11/5 13/7 14/14
14/21 20/13 21/2 21/13 29/11 34/15
34/17 34/21 35/5 35/7 36/6 39/9 48/20
49/17 50/17 55/10 55/21 56/25 58/6
58/17 60/10 65/20 68/1 68/23
use [4] 32/3 36/10 37/18 62/20

**U**

used [5]  5/11 7/24 35/24 42/1 42/1
Using [1]  10/25
utilized [3]  31/14 31/16 37/21

**V**

VAN [2]  2/3 4/1
vendor [3]  7/25 9/13 70/14
veracity [1]  61/14
versus [1]  3/9
very [12]  5/13 8/20 19/4 29/13 45/4
 45/19 61/18 68/11 68/11 69/8 70/17
 71/17
vetted [1]  34/15
viable [2]  13/21 67/2
view [2]  27/1 48/19
violate [1]  68/8
volume [2]  50/22 70/1
voluminous [3]  19/6 65/22 66/2
volunteered [1]  55/21

**W**

wait [1]  12/12
waiting [1]  22/14
waived [5]  11/18 15/13 49/9 49/11 58/2
waiver [22]  9/1 9/4 10/7 11/25 12/20
 13/20 15/24 16/11 16/15 16/19 17/1
 45/15 46/10 49/4 65/15 65/17 66/7
 66/17 66/21 66/24 67/11 67/14
waives [2]  10/12 31/3
want [25]  4/11 9/3 10/14 15/14 15/17
 16/20 24/1 24/4 32/2 35/5 43/21 49/25
 50/3 50/4 55/14 55/23 57/17 57/22
 59/20 59/22 60/6 65/9 65/11 66/22 71/7
wanted [2]  6/21 37/3
wants [1]  26/20
warrant [1]  16/18
warranted [1]  16/19
was [147]
wasn't [13]  6/16 7/3 7/22 9/14 11/16
 28/22 34/2 41/4 48/23 48/24 63/11 68/7
 68/10
waste [1]  68/3
Water [1]  1/19
wavier [1]  49/14
way [14]  4/18 6/20 15/20 16/25 21/21
 27/12 28/4 30/15 32/6 35/16 39/8 40/20
 56/6 68/17
we [168]
we'd [2]  68/15 70/8
we'll [7]  3/7 4/23 8/23 11/22 18/3 43/4
 43/23
we're [15]  3/11 4/12 6/4 11/13 14/25
 15/9 17/5 28/24 29/9 41/5 43/17 49/19
 58/15 60/15 65/7
we've [8]  7/22 10/13 12/18 22/13 40/6
 43/19 45/19 60/12
wealth [2]  28/20 52/8
week's [1]  15/5
well [33]  4/2 4/23 10/16 14/25 23/15
 28/3 29/19 32/11 35/23 36/1 37/9 38/3
 38/15 38/21 41/22 44/9 45/11 46/16
 47/2 47/15 48/3 48/5 50/17 53/1 54/18
 56/23 58/7 61/10 63/8 63/24 68/25 70/4
 71/3
well-phrased [1]  48/5
WELLS [2]  2/10 3/23
went [6]  30/7 34/24 53/9 54/2 54/24 67/9
were [64]  1/22 6/19 7/6 7/7 8/6 9/15
 11/13 11/20 27/10 27/11 28/16 28/19
 29/4 30/12 31/22 31/25 32/5 32/12
 32/23 32/25 39/20 39/22 42/4 42/6

42/10 42/17 45/1 45/18 45/20 48/13
49/10 49/11 51/6 51/15 51/24 52/7
52/13 52/21 52/22 53/11 53/13 53/15
53/19 54/7 54/8 54/14 54/14 54/15
54/16 54/16 54/24 56/5 56/10 56/13
60/22 62/11 62/15 62/17 63/17 65/20
65/20 67/21 68/10 69/21
weren't [4]  27/17 32/20 53/12 68/5
West [1]  1/24
what [68]  4/24 6/4 6/24 7/19 9/9 16/25
 17/5 18/4 18/25 20/10 20/24 22/2 22/11
 23/17 23/17 25/21 25/22 25/22 25/23
 26/3 26/8 29/6 30/21 33/14 34/6 34/8
 34/8 34/21 35/1 35/7 37/1 38/11 42/4
 43/1 43/17 43/22 44/8 45/11 48/1 48/4
 48/17 51/2 52/24 53/24 54/10 54/21
 55/4 55/5 58/11 58/16 59/1 59/14 60/1
 60/15 61/17 61/18 61/24 62/1 62/3 62/5
 62/17 62/23 64/9 64/21 65/7 69/16
 69/17 70/4
what's [4]  13/7 38/7 58/10 58/11
whatever [3]  44/10 50/4 68/17
when [26]  1/21 6/17 7/18 8/14 14/13
 15/2 15/2 17/24 20/24 21/19 32/17
 33/18 34/1 35/2 35/14 41/25 47/21 52/6
 53/5 53/9 53/10 54/24 63/3 69/6 69/12
 71/18
where [30]  1/21 12/1 12/15 12/19 16/9
 17/22 20/2 20/23 27/19 36/3 36/16
 36/19 36/24 40/18 46/3 46/5 51/5 56/12
 57/25 60/8 61/2 63/6 63/13 66/3 66/13
 66/13 67/1 67/3 67/11 68/21
whether [7]  11/5 34/16 37/16 59/24 60/13
 62/9 64/18
which [47]  8/5 8/22 9/8 11/4 13/18 13/25
 14/8 15/13 16/2 17/24 20/23 22/25 23/2
 24/3 24/9 25/10 25/12 25/16 27/11
 27/13 29/15 31/14 32/24 33/25 35/24
 36/22 37/22 40/4 42/22 44/12 45/16
 46/1 47/11 47/12 50/8 52/9 53/6 53/12
 60/21 61/7 61/13 61/25 61/25 62/19
 64/2 64/25 65/4
who [13]  23/6 23/16 23/20 23/20 24/6
 27/17 40/23 56/13 56/18 56/19 57/2
 58/15 61/3
whole [3]  10/9 21/14 59/4
wholesale [1]  64/5
whose [1]  27/22
why [9]  8/13 8/18 9/20 16/23 18/12
 39/21 46/22 54/18 67/6
wide [1]  51/2
will [8]  4/16 4/25 5/6 5/23 7/2 43/6 43/25
 71/21
wise [1]  48/16
withheld [7]  6/15 13/7 16/10 58/17 60/22
 65/17 67/4
within [7]  12/16 26/23 26/24 46/17 51/21
 58/20 59/16
without [4]  14/20 18/13 36/9 45/9
won't [3]  8/13 17/14 60/14
wondering [1]  59/1
work [22]  13/5 14/4 15/5 20/12 20/14
 20/16 22/5 25/22 28/9 32/9 36/13 38/14
 49/20 50/16 50/18 61/19 61/23 61/24
 62/3 65/1 67/21 67/22
worked [1]  50/10
working [1]  46/19
worth [3]  15/5 15/15 66/4
would [65]  5/10 11/25 12/5 14/13 19/9
 20/21 21/14 27/20 33/8 33/8 33/11
 35/11 36/2 36/6 36/10 36/12 36/15
 37/14 38/1 38/2 39/23 40/3 42/20 47/8
 47/9 47/9 47/10 47/11 47/11 47/12

47/22 47/24 48/24 49/6 49/17 55/13
55/14 55/15 55/16 58/3 58/5 58/8 58/19
58/21 59/8 59/9 59/15 62/23 67/11
67/14 67/18 68/1 68/2 68/3 68/17 69/5
69/22 69/25 70/2 70/4 70/11 70/14
70/20 71/3 71/7
wouldn't [2]  66/11 70/12
written [1]  11/21
wrong [3]  58/5 65/24 66/1
wrongs [1]  65/14
wrote [1]  36/25

**Y**

yeah [18]  5/8 16/23 26/9 26/17 28/22
 35/16 37/11 43/13 43/21 48/15 50/14
 53/4 54/12 55/1 55/3 57/18 57/20 71/5
year [1]  30/7
years [4]  6/8 30/2 38/9 40/17
yellow [2]  12/1 22/21
yes [11]  37/9 37/14 42/6 42/10 42/17
 49/24 56/8 56/8 59/25 71/12 71/14
yet [1]  33/22
you [136]
you'd [5]  27/8 56/16 66/17 69/22 70/3
you'll [1]  7/4
you're [14]  5/9 12/13 18/1 29/2 29/10
 29/18 33/14 39/10 43/13 48/3 52/20
 52/25 70/1 71/1
you've [6]  56/3 56/6 57/10 60/2 63/22
 70/24
your [32]  16/21 29/6 29/19 33/18 34/1
 35/2 36/5 36/17 37/14 39/8 42/1 42/2
 46/6 47/16 48/4 50/5 50/6 50/14 52/4
 52/21 53/24 55/8 56/3 56/14 66/3 66/4
 67/14 69/5 69/10 69/23 70/18 71/18
yourself [3]  20/19 35/6 36/6