# EXHIBIT E

```
 1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
 2                  JACKSONVILLE DIVISION

 3   FOODONICS INTERNATIONAL,
     INC., a Florida corporation,
 4
           Plaintiff,
 5
     v.        Case No. 3:17-cv-1054-J-32JRK
 6
     DINA KLEMPF SROCHI, as
 7   Trustee of the Laura Jean Klempf
     Revocable Trust, a Florida Trust,
 8
           Defendant.
 9   _____
     DINA KLEMPF SROCHI, as Trustee of the
10   Laura Jean Klempf Revocable Trust, et al.,

11         Counterclaim Plaintiffs,

12   v.

13   FOODONICS INTERNATIONAL, INC.,
     a Florida corporation, et al.,
14
           Counterclaim Defendants.
15   _____
         PROCEEDINGS BEFORE SPECIAL MASTER MICHAEL TANNER
16          PURSUANT TO AMENDED NOTICE OF HEARING BY

17                    SPECIAL MASTER

18   DATE TAKEN: February 18, 2020
     TIME:       9:54 a.m. - 11:21 a.m.
19   PLACE:      Gunster Law Firm
                 225 Water Street, Suite 1750
20               Jacksonville, FL 32202

21   This cause came on to be heard at the time and place
      aforesaid, when and where the following Proceedings
22                   were reported by:
              Stephanie Powers Cusimano
23           Registered Professional Reporter
              Florida Professional Reporter
24                 Powers Reporting, Inc.
               301 West Bay Street, Suite 1418
25                 Jacksonville, FL 32202
```

---

Page 2

```
 1                   A P P E A R A N C E S

 2   ANDREW J. STEIF, Esquire
     DANIEL K. BEAN, Esquire
 3   JACQUELINE A. VAN LANINGHAM, Esquire

 4       Abel Bean Law, P.A.
         50 North Laura Street
 5       Suite 2500
         Jacksonville, FL 32202
 6       asteif@abelbeanlaw.com
         dbean@abelbeanlaw.com
 7       jvanlaningham@abelbeanlaw.com

 8         Appearing on behalf of Plaintiff.

 9         and

10   S. GRIER WELLS, Esquire

11       Gray Robinson, P.A.
         50 North Laura Street
12       Suite 1100
         Jacksonville, FL 32202
13       grier.wells@gray-robinson.com

14         Appearing on behalf of Plaintiff.

15

16   JAMES H. POST, Esquire
     MICHAEL E. DEMONT, Esquire
17   CHRISTOPHER DIX, Esquire

18       Smith Hulsey & Busey
         1 Independent Drive
19       Suite 3300
         Jacksonville, FL 32202
20       jpost@smithhulsey.com
         mdemont@smithhulsey.com
21       cdix@smithhulsey.com

22         Appearing on behalf of Defendants.

23

24

25
```

---

Page 3

```
 1              P R O C E E D I N G S

 2   February 18, 2020              9:54 a.m.

 3       THE COURT: Everyone ready? Morning.

 4       MR. POST: Good morning.

 5       THE COURT: Good morning, everybody. Good

 6   to see all of you.

 7       We'll go ahead. And since we have a

 8   record here, this is the matter of Foodonics

 9   International versus Dina Klempf Srochi,

10   et cetera, et al., Case Number

11   3:17-cv-1054-J-32JRK. And we're here on a

12   motion to compel privileged log filed by the

13   plaintiff/counter-defendant – defendants –

14   and that's document number 214 – and the

15   response to that by the counterclaim-plaintiff,

16   and that's document number 226 and attachments

17   to that.

18       Let's go ahead and have everyone identify

19   themselves. Let's start with the Foodonics

20   parties first.

21       MR. STEIF: Sure. Andrew Steif and Dan

22   Bean from Abel Bean on behalf of Foodonics and

23   Jacques Klempf. Grier Wells, Gray Robinson on

24   behalf of the same.

25       MR. BEAN: And Jackie.
```

---

Page 4

```
 1       MR. STEIF: Oh. And Jackie Van Laningham,

 2   Abel Bean as well.

 3       THE COURT: Good morning.

 4   Mr. Post.

 5       MR. POST: Good morning. James Post, law

 6   firm of Smith, Hulsey & Busey on behalf of Dina

 7   Klempf Srochi as trustee. With me today is

 8   Mike Demont and Chris Dix, my partners.

 9       THE COURT: Good morning, everybody.

10   Thank you.

11       I did want to ask you before we get into

12   the motion we're here about today, I noticed

13   that there's been another lawsuit filed in

14   State Court. I saw that in the motion to

15   dissolve a lis pendens.

16       Does anybody anticipate that that will

17   affect either the scope or the timing of

18   discovery in this case in any way?

19       MR. POST: No.

20       MR. STEIF: I doubt it.

21       THE COURT: Okay. So those are just going

22   to go on parallel tracks and –

23       MR. STEIF: Well, we'll probably diverge

24   on our take on what should happen, but I don't

25   think it will affect discovery. We filed in
```

## Page 5

```
 1    the State Court a motion to dismiss pending the
 2    Federal Court resolution.
 3         MR. POST:  I agree.
 4         THE COURT:  You folks agree with that?
 5         MR. POST:  Correct.  We agree that that
 6    doesn't.  If it did, we don't think it will
 7    delay discovery in this case.
 8         MR. STEIF:  Yeah.
 9         THE COURT:  So you're not going to ask to
10    do any discovery in this case that would be
11    used in that case?
12         MR. POST:  Correct.
13         THE COURT:  Okay.  Very good.  So let's go
14    ahead with the motion to compel.  I've read the
15    papers.  Thank you for those.
16         Mr. Steif.
17         MR. STEIF:  Do you need extra copies of
18    anything, motion or response?
19         THE COURT:  No, sir.
20         MR. STEIF:  I tabbed a copy of the
21    response because I'm going to talk about a
22    couple of documents, so – I don't have too
23    many things to hand you today, but there will
24    be some cases and some other materials.  And
25    how about a copy of the color –
```

## Page 6

```
 1         THE COURT:  I have it.
 2         MR. STEIF:  Okay.  Just a brief sort of
 3    background, although I know that it's sort of
 4    clear from what we filed, but we're here about
 5    a December 23rd, 2019, privilege log with 1,911
 6    entries.  That's more than twice the 900-or-so
 7    documents the trust produced in this case in
 8    the course of two years.
 9         The privilege log was produced nearly 15
10    months after the trust produced its documents
11    in September 2018.  That was their production.
12    There was 890-some odd.
13         They've only produced 27 documents since
14    then, in July of 2019.  We never got any notice
15    regarding withheld documents.  A log was not
16    mentioned.  It wasn't provided in September
17    2018, or even in July 2019, when they produced
18    their additional documents.
19         The September documents of 2018 were given
20    to us by way of a simple transmittal email.
21    It's not too significant, but I just wanted to
22    sort of give you a copy of that email.  That's
23    how we got it.
24         I'm going to hand you later a copy of what
25    their discovery responses looked like, but it
```

## Page 7

```
 1    has just a boilerplate objection that said, we
 2    will produce all non-privileged documents.
 3         There wasn't a mention of a privilege log.
 4    You know, and you'll see in the response
 5    numerous times that meet-and-confer meetings
 6    were had about our client's privilege log,
 7    there were hearings and things like that.  Not
 8    once did the fact that they had this
 9    significant privilege log come up.
10         The privilege log that we did get came to
11    us on December 23rd as part of a transmittal of
12    third-party document productions that they
13    received over time.
14         I only got one copy of this, but it's just
15    a – how the folder looked, how we got it.
16    That – we didn't receive it on the 23rd
17    because of a technical issue, and it didn't get
18    served on Abel Bean.  But when we did get it in
19    January, that's what the folder looked like.
20    It's at the bottom.  The rest the folders are
21    third-party documents.
22         There wasn't a heads-up, we've got a
23    privileged log to give you.  There was no
24    service of court document email.  They used a
25    vendor to serve it.  It got picked up by Gray
```

## Page 8

```
 1    Robinson's spam filter, and we only found out
 2    about in January on a meet-and-confer about
 3    something else.
 4         And it was served on January 23 – or
 5    December 23rd, which is significant to us,
 6    because we were here for three hours that day
 7    talking about a number of discovery issues,
 8    including Gray Robinson and Foodonics'
 9    privilege logs.
10         And there was a significant motion on that
11    and an order entered about sanctions.  And the
12    document was served seven or eight hours after
13    that hearing.  I won't speculate about why, but
14    it's easy to say this is a one-sided issue when
15    you produce it after the hearing and we can't
16    talk about it.
17         We think, even in the sort of briefest
18    reviews of the log, you can see why it's
19    significant, not just because it's double the
20    production of a very small production we had,
21    there's no descriptions.  You can't determine
22    privilege from the face of any of this, which
23    we'll talk about, and some of the categories we
24    think are clearly not privileged.
25         Our primary argument today is obviously
```