# EXHIBIT F

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
IN AND FOR ST. JOHNS COUNTY, FLORIDA

**DINA KLEMPF SROCHI**, as Trustee of the
**LAURA JEAN KLEMPF REVOCABLE
TRUST**, a Florida Trust,

    Plaintiff,                                    Case No.: CA20-0083

v.

**KEVIN JACQUES KLEMPF, FOODONICS
INTERNATIONAL, INC.**, a Florida corporation,
and **KEVIN JACQUES KLEMPF**, as Trustee of
the **KEVIN JACQUES KLEMPF LIVING
TRUST**, a Florida trust,

    Defendants.

_____/

## MOTION TO DISMISS OR STAY PROCEEDINGS

Defendants, Foodonics International, Inc. ("Foodonics") and Kevin Jacques Klempf, individually and as Trustee of the Kevin Jacques Klempf Living Trust ("Jacques" or "Jacques Klempf") (collectively, the "Defendants"), move to dismiss, or in the alternative, stay the instant proceedings. The claims and allegations raised in the Complaint filed by Plaintiff, Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust (the "Trust" or "Plaintiff"), are the subject of a pending federal action, styled <u>Foodonics International, Inc. v. Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust</u>, Case No. 3:17-cv-1054-J-32JRK, in the United States District Court, Middle District of Florida (the "Federal Action"), a fact which is acknowledged by the Trust throughout its Complaint.

1

This lawsuit involves substantially identical parties[1] as the Federal Action and raises the same "unlawful transfer" claim that is already at issue in the Federal Action. Furthermore, the Federal Action has previously addressed a lis pendens as to 815 Ponte Vedra Blvd., the primary property at issue in this lawsuit. Both the Complaint and the Lis Pendens filed in this action[2] lack factual and legal merit and should never have been filed in this forum, inasmuch as the issues presented have either already been addressed or are still pending in the Federal Action. Accordingly, Defendants respectfully request the entry of an order dismissing this action. In the alternative, Defendants respectfully request the entry of an order staying this duplicative state court action pending the disposition of the Federal Action.

## **FACTUAL BACKGROUND**

This case depends upon the same facts underlying the Federal Action, as evidenced by the Trust's frequent references to its Amended Counterclaim in the Federal Action and to various procedural events in that case. As detailed below, the Federal Action has been pending for more than two (2) years. The Federal Action has progressed through hundreds of docket entries and significant motion practice and discovery efforts that have encompassed the underlying predicates for this lawsuit. Pursuant to section 90.202(6), Florida Statutes, Defendants respectfully request that the Court take judicial notice of the records of the Federal Action. Relevant documents and pleadings from the Federal Action are attached as necessary as exhibits to this Motion.

---

[1] The Kevin Jacques Klempf Living Trust is not a party to the Federal Action. Jacques Klempf is only a party to the Federal Action in his individual capacity. Otherwise, all parties in this action are also involved in the Federal Action.

[2] Defendants filed an Amended Motion to Dissolve Lis Pendens in the Federal Action in conjunction with the filing of this Motion. A true and correct copy of the Amended Motion to Dissolve Lis Pendens is attached hereto as **Exhibit 1**.

# I. The Relationship Between the Parties and the Settlement and Redemption Agreement.

Both this lawsuit and the Federal Action arise from an agreement between the two primary shareholders of Defendant, Foodonics International, Inc. ("Foodonics"). Between 2006 and 2015, more than ninety-nine percent (99%) of the total shares of Foodonics were held by Defendant, Jacques Klempf (approximately fifty-three percent (53%)) and his mother, Jean Klempf (more than forty-five percent (45%)). See Doc 142, Trust's Amended Answer and Affirmative Defenses and Amended Counterclaim (the "Amended Counterclaim"), at ¶23, attached hereto as **Exhibit 2**.

In 2015, Foodonics, Jacques Klempf, and Jean Klempf discussed a potential purchase by Jacques Klempf of Jean Klempf's Foodonics shares. Id. at ¶28. On December 21, 2015, Foodonics, Jacques Klempf, and Jean Klempf, individually and as Trustee of a family trust (the Plaintiff in this case), entered into a comprehensive negotiated Settlement and Redemption Agreement (the "Settlement Agreement"), a copy of which is attached hereto as **Exhibit 3**; see also Ex. 2, Amended Counterclaim, at ¶29. The transactions contemplated by the Settlement Agreement were closed on or about December 31, 2015. Ex. 2, Amended Counterclaim, at ¶30.

Pursuant to the Settlement Agreement, Foodonics and Jacques Klempf paid a sum of approximately $10,000,000 for the redemption of all Foodonics stock held by the Trust. Ex. 3, Settlement Agreement at p. 6. Upon completion of the transaction, Jean Klempf had no interest or rights in any assets of Foodonics of any kind. See e.g., id. at p. 1; 3-5. As part of the consideration for the Settlement Agreement, the parties also agreed to detailed and comprehensive mutual releases. Id. at p. 4-5.

In the Settlement Agreement, Foodonics and Jacques Klempf accurately represented that there were "no current offers pending nor ongoing discussions": (1) for the sale of all or

3

substantially all of the assets of Foodonics; (2) for the sale of Jacques Klempf's Foodonics stock; or (3) for any merger, stock exchange or other "Realization Event" as of the Closing Date of December 31, 2015. Id. at p. 10 (Section 10(b)(3)). Moreover, the Defendants had not received any written offers to effect such a sale within twelve (12) months prior to the date of the parties' Settlement Agreement.

**II. The Sale of Foodonics' Egg Producing Business.**

Given his ownership of nearly all of Foodonics' stock, Jacques Klempf possessed the legal and corporate authority to sell substantially all of the assets of Foodonics at any time following the closing of the Settlement Agreement, with no compensation owed to the Trust.

Subsequently, in April 2016, Jacques Klempf decided to explore a possible sale of substantially all of the assets of Foodonics. In or about November of 2016, Cal-Maine purchased substantially all of the assets of Foodonics. Ex. 2, Amended Counterclaim, at ¶32.

After the sale, the Trust contended that had it remained a shareholder of Foodonics at the time of the Cal-Maine transaction, it would have received about $23,200,000 more than the Trust was paid for its stock through the Settlement Agreement. Id. at ¶33.

**III. The Trust's Amended Counterclaim and Prior Lis Pendens in the Federal Action.**

Foodonics filed a Complaint initiating the Federal Action on September 6, 2017. See Doc. 1 ("Foodonics Complaint"), attached hereto as **Exhibit 4**. On July 1, 2019, without leave of Court, the Trust filed an Amended Counterclaim and seventeen (17) Lis Pendens in the Federal Action. On July 2, 2019, the Federal Court struck the Lis Pendens and Amended Counterclaim because they were filed without leave of the Court. After the Federal Court granted the Trust's subsequent Motion for Leave, the Trust re-filed its Amended Counterclaim. See generally Ex. 2. The Trust re-filed the Lis Pendens on August 16, 2019. See Docs. 147-163

("Re-Filed Lis Pendens"), attached hereto as **Composite Exhibit 5**.

The Trust attempted to add three additional Counterclaim Defendants to its Amended Counterclaim: BAM Commercial Holdings, LLC ("BAM Commercial"), BAM Residential Holdings, LLC ("BAM Residential"), and BAM Investment Group, LLC ("BAM Investment") (collectively, the "BAM Companies"). None of the BAM Companies were in existence when the Settlement Agreement was executed. Doc. 167, BAM Motion to Dissolve Lis Pendens, at p. 4-5, attached hereto as **Exhibit 6**. The BAM Companies were formed to hold Foodonics' residential and commercial real properties. Id. at p. 5. Sixteen (16) of the seventeen (17) real properties for which the Trust filed Lis Pendens related to properties held by the BAM Companies. The only exception was the 815 Ponte Vedra Blvd., St. Johns County ("815 PV") property, which is Jacques Klempf's primary residence and homestead. Id. at p. 5; see also Comp. Ex. 5. As all parties have long known, the property at 530 Ponte Vedra Blvd. ("530 PV") was Mr. Klempf's prior personal residence.

The crux of the Amended Counterclaim, as with the original Counterclaim, is an action seeking $23,000,000 in monetary damages that the Trust believes it should have received in the Cal-Maine sale. See Ex. 2, Amended Counterclaim, at ¶¶73; 85; Count III (prayer for relief); 111, 120; 128; 134; Count VIII (prayer for relief); 150; 154; 161.

However, in Count XIV of the Amended Counterclaim, the Trust asserted a cause of action against Foodonics, Jacques Klempf, and the BAM Companies under the Florida Uniform Fraudulent Transfers Act (Fla Stat. 726.101 *et. seq.*). The Trust alleged that in anticipation of this lawsuit, Foodonics and/or Jacques Klempf formed the BAM Companies and then transferred the Properties from Jacques Klempf, Foodonics, Foodonics Equities, or Foodonics Equities II, to BAM Commercial or BAM Residential. See id., at ¶¶191-92. As to 815 PV, the Trust alleged:

5

> 197. This pattern of fraudulent activity by Jacques Klempf and Foodonics is still in process. Specifically, on October 5, 2015, Jacques Klempf utilized $4,250,000 of Foodonics' cash to purchase a mansion on Ponte Vedra Beach owned by Luther Coggin (the "Luther Coggin Mansion"). Although Foodonics still has legal title to this property (see Exhibit U attached), Jacques Klempf presently intends to further aggrandize the property and transfer title of it to himself, for little or no consideration, and declare it as Florida homestead property. The Luther Coggin Mansion is Foodonics' sole remaining substantial asset and its transfer by Foodonics to Jacques Klempf would constitute yet another fraudulent transfer which should be temporarily and permanently enjoined.

The Trust alleged that these alleged transfers constituted a pattern of transfers to dispose of Foodonics' assets and requested that all such efforts be enjoined.

After the Amended Counterclaim was filed, both sides negotiated a resolution of the claims against the BAM Companies. On October 8, 2019, the parties filed a Joint Motion and Stipulation for an Order Regarding the Interim Resolution of Issues Regarding the BAM Entities. See Doc. 174 ("Joint Motion"), attached hereto as **Exhibit 7**. The Federal Court entered an Order granting the Joint Motion on October 10, 2019. See Doc. 175, attached hereto as **Exhibit 8**. As a result, the BAM Entities were dropped as parties. The Trust was directed to cause the Lis Pendens to the various properties to be cancelled through appropriate filings.

On October 25, 2019, the Trust recorded a number of Releases of Lis Pendens in the public records of Duval County and St. Johns County, Florida, true and correct copies of which are attached hereto as **Exhibit 9**. One of the Releases discharged the Lis Pendens that had been filed on 815 PV.

Count XIV of the Amended Counterclaim, asserting unlawful transfers under the Florida Uniform Fraudulent Transfers Act, remains pending against Foodonics and Mr. Klempf following the dismissal of the BAM Companies. Therefore, it is clear that the scope of the Federal Action includes alleged unlawful transfers by Defendants and 815 PV specifically.

6

The 815 PV property was the subject of the Trust's discovery efforts after the entry of the October 10, 2019 Order. At the January 20, 2020 deposition of Mr. Klempf, the Trust sought discovery relating to 815 PV at length. See Excerpt of January 20, 2020 Deposition of Jacques Klempf ("Klempf Deposition Excerpt"), attached hereto as **Exhibit 10**, at 6:25 – 15:13. It is undisputed that 815 PV is owned by Mr. Klempf's Trust and is Mr. Klempf's homestead property. Id., at 7:12-22; 14:20-22. As detailed in the Declaration of Jacques Klempf, filed in connection with the original Motion to Dissolve Lis Pendens, 815 PV was transferred from Foodonics to Mr. Klempf to repay certain debts that the company owed to Mr. Klempf. See August 30, 2019 Declaration of Jacques Klempf, attached hereto as **Exhibit 11**, at ¶15.

**IV. This Lawsuit.**

On January 23, 2020, just three (3) days after Mr. Klempf's deposition in the Federal Action, the Trust filed the instant complaint against Foodonics and Jacques Klempf, individually and as Trustee of the Kevin Jacques Klempf Living Trust. The heart of this Complaint is the same "fraudulent transfer" cause of action that has already been pled in Count XIV of the Amended Counterclaim and which is being litigated in the Federal Action. As with Count XIV, this Complaint seeks to set aside the alleged fraudulent transfer of 815 PV. The large majority of the factual allegations in the Complaint are procedural events from the Federal Action, including full paragraph citations to the references to 815 PV in the Amended Counterclaim.

The Complaint in this action includes 530 PV, Mr. Klempf's longtime personal residence prior to 815 PV. As to 530 PV, which Mr. Klempf owns individually, the Trust alleges that the property has recently been vacated and placed for sale on the open market. Complaint, at ¶19; see also Ex. 10, Klempf Deposition Excerpt, at 14:23 – 15:3. The Trust inexplicably calls this an effort to defraud Mr. Klempf's "creditors" even though the Trust has not secured any judgment

against Mr. Klempf and 530 PV has never been an asset of Foodonics. The Trust states:

> This pattern of fraudulent activity by Jacques Klempf is still in process. Jacques Klempf is presently attempting to dispose of his prior residence—the 530 Ponte Vedra Property—and its proceeds with the intent to hinder, delay or defraud his creditors. The 530 Ponte Vedra Property is also an asset that could be used to satisfy, in part, the claims being asserted against Jacques Klempf or Foodonics in the Federal Court Action. The further transfer of the 530 Ponte Vedra Property would constitute yet another fraudulent transfer by Jacques Klempf which should be temporarily and permanently enjoined.

Complaint, at ¶24. Although the Complaint references numerous alleged "badges of fraud" as to 815 PV, there are no such factual allegations of any kind as to 530 PV.

As discussed herein, Jacques Klempf purchased 530 PV with his ex-wife, Shelley C. Klempf, with his own funds in 2008. See July 30, 2008 General Warranty Deed, attached hereto as **Exhibit 12**. In November 2014, 530 PV was titled in Jacques Klempf's name individually. See November 14, 2014 Warranty Deed, attached hereto as **Exhibit 13**. It has never been an asset of Foodonics. It has not been "transferred" at all. Not only are the claims relating to 530 PV meritless, the propriety of an alleged sale of that property and the Trust's encumbrance of it is within the scope of the Federal Action, the lawsuit that actually supplies the alleged basis for the Trust's ability to secure a judgment.

Count II of this lawsuit includes a briefly alleged claim for civil conspiracy, contending that the Defendants conspired to undertake the alleged fraudulent transfers identified in Count I.

## **LEGAL STANDARD**

A trial court possesses broad discretion when determining whether to stay an action pending before it. OPKO Health, Inc. v. Lipsius, 279 So. 3d 787, 791 (Fla. 3rd DCA 2019); Oviedo v. Ventura Music Grp., 797 So. 2d 634, 635 (Fla. 3rd DCA 2001). However, "[i]t is well established that when a previously filed federal action is pending between the same parties or

privies on the same issues, a subsequently filed state court action ordinarily should be stayed until the determination of the federal action." City of Miami Beach v. Miami Beach Fraternal Order of Police, 619 So. 2d 447, 447 (Fla. 3rd DCA 1993); see also Fla. Crushed Stone Co. v. Travelers Indem. Co., 632 So. 2d 217, 220 (Fla. 5th DCA 1994) ("[I]t is nonetheless an abuse of discretion to refuse to stay a subsequently filed state court action in favor of a previously filed federal action which involves the same parties and the same or substantially similar issues. This rule is based on principles of comity.") (internal citations omitted).

The causes of action do not have to be identical. "[A] trial court departs from the essential requirements of law by failing to grant [a stay of proceedings], when the first-filed lawsuit involves substantially similar parties and substantially similar claims." Pilevsky v. Morgans Hotel Grp. Mgmt., LLC, 961 So. 2d 1032, 1035 (Fla. 3rd DCA 2007). Rather, "it is sufficient that the two actions involve a single set of facts and that resolution of the one case will resolve many of the issues involved in the subsequently filed case." Fla. Crushed Stone Co., 632 So. 2d at 220; State v. Harbour Island, Inc., 601 So. 2d 1334, 1335 (Fla. 2nd DCA 1992); see also OPKO Health, Inc., 279 So. 3d at 791 (finding trial court abused its discretion in refusing to stay proceedings when the state court actions stemmed "from the same nucleus of facts" as the federal action and when the state-court filers "even acknowledge[d] the actions [had] overlapping issues and that it would preserve judicial resources to coordinate discovery"). If the federal action is likely to materially affect the viability of the state court claims, lead to inconsistent outcomes, or result in the possibility of duplication of efforts and costs, a stay of proceedings is warranted. OPKO Health, Inc., 279 So. 3d at 791 (collecting cases).

## ARGUMENT

I. **The Trust's Complaint should be stayed pending resolution of the Federal Action**.

    A. **The 815 PV property**

With respect to 815 PV, **the Trust's allegations of fraudulent transfer against Foodonics and Jacques Klempf remain pending in Count XIV of the Amended Counterclaim**. The Trust and counsel for Foodonics and Mr. Klempf engaged in substantial briefing regarding the Trust's claims of fraudulent transfer and utilization of the lis pendens mechanism in the Federal Action. In response to this briefing, the parties in the Federal Action entered into a joint stipulation, whereby the Trust discharged its lis pendens as to the properties held by the BAM Companies and dismissed the BAM Companies from the Federal Action. The stipulation specifically carved out 815 PV, as this property was not titled in the name of any of the BAM Companies. See Ex. 7; Ex. 8. On October 25, 2019, the Trust discharged **all** lis pendens, including the lis pendens encumbering 815 PV. Ex. 9. However, the discharge of the lis pendens did not affect the Trust's allegations of fraudulent transfer of 815 PV as asserted in the Amended Counterclaim. Nor did the dismissal of the BAM Companies affect the viability of Count XIV as to Foodonics and Jacques Klempf.

The Trust cannot now bring a separate state action, asserting essentially identical allegations as those raised in the Federal Action, to assert the same claim (fraudulent transfer) on the same property (815 PV) and to re-file the same facially deficient lis pendens. See Ex. 1. These issues are already pending in the Federal Action. Moreover, the claims in the Federal Action provide the support for the Trust's alleged ability to secure a judgment against Foodonics and Mr. Klempf, which is alleged to be the basis for the Trust's ability to encumber Mr. Klempf's property. In the interests of comity, the Federal Court should decide the issue of

fraudulent transfer with respect to 815 PV. Otherwise, there is a substantial risk that the parties will be forced to incur duplicative costs and expenses to re-litigate the same issue. Furthermore, litigating substantially identical claims involving substantially identical parties is a waste of judicial time and resources and could lead to inconsistent results. There is no concern that the fraudulent transfer claim will not be heard in a timely manner. The Federal Action is scheduled for trial in January 2021. In fact, the Federal Action will be concluded long before the instant proceeding could be resolved. Therefore, Defendants respectfully request that this action be dismissed, or alternatively, stayed pending resolution of the Federal Action.

### B. The 530 PV Property

The Amended Counterclaim does not assert a claim of fraudulent transfer with respect to 530 PV. However, the Trust's allegations regarding the 530 PV property are clearly inextricably linked to 815 PV, which is being addressed in the Federal Action.

There is absolutely no merit to the Trust's claim against the 530 PV Property. In the first place, in order to have a remotely viable fraudulent transfer claim, there must be a transfer. The 530 PV property has been titled in Jacques Klempf's name, singly or jointly, since 2008. See Ex. 12; Ex. 13. It has never been an asset of Foodonics. Thus, there could not possibly be a fraudulent transfer from Foodonics to Mr. Klempf with respect to this property.

Second, 530 PV is for sale on the open market. *Selling one's home on the open market is not a fraudulent transfer.* The Trust fails to allege that any fraudulent transfer factors under the Florida Uniform Fraudulent Transfer Act are present with respect to the potential sale of 530 PV. Rather, the Trust asserts a fraudulent transfer claim against 530 PV because it wishes to protect a potential asset for the purposes of collection of a hypothetical judgment that the Trust has not

obtained. The Trust's claims concerning 530 PV fall far short of asserting a claim for fraudulent transfer and are frivolous.

Regardless of the factually and legally baseless nature of the claim itself, however, the Trust's allegations arise out of the same facts that were alleged by the Trust in its Amended Counterclaim in the Federal Action. The Trust alleges that Jacques Klempf's attempt to sell 530 PV is a continuation of fraudulent activity or fraudulent transfers that presumably began with the alleged fraudulent transfer of 815 PV. See Complaint, at ¶¶24, 32. Simply put, the Trust alleges that Foodonics fraudulently transferred 850 PV to Jacques Klempf and the Kevin Jacques Klempf Revocable Trust. Id., at ¶¶21-22. Jacques Klempf is now selling 530 PV so that he can move into 850 PV. Id., at ¶19. *Further, the Trust alleges that the sale would be made in order hinder the Trust's ability to collect on a judgment it believes it will secure in the Federal Action.* Thus, the Trust is extending its claim of fraudulent transfer to encompass 530 PV.

The state court litigation and the previously filed federal case do not have to be identical in order for a stay to be appropriate. Rather, "it is sufficient that the two actions involve a single set of facts and that resolution of the one case will resolve many of the issues involved in the subsequently filed case." Fla. Crushed Stone Co., 632 So. 2d 217, 220 (Fla. 5th DCA 1994). In this case, the Trust's allegations concerning 530 PV arise out of the same nucleus of operative facts that were alleged by the Trust in its Amended Counterclaim in the Federal Action. Accordingly, a stay of this litigation is appropriate pending the resolution of the Federal Action.

## CONCLUSION

It is obvious on the face of the Trust's Complaint that the claims asserted are already being addressed in a previously filed and currently pending federal litigation. The facts underlying the Trust's allegations in this case and the Federal Action are identical and would

require the parties to re-litigate multiple substantive issues over which the Federal Court is already familiar and to duplicate discovery. Furthermore, allowing the state court action to proceed might lead to inconsistent results. Accordingly, Defendants respectfully request the entry of an order either: (1) dismissing this action; or (2) staying this action pending the disposition of the Federal Action.

Respectfully Submitted,

**ABEL BEAN LAW P.A.**

By: /s/ Daniel K. Bean
Daniel K. Bean, Esq.
Florida Bar No. 15539
Andrew J. Steif, Esq.
Florida Bar No. 0042475
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202
Telephone: (904) 516-5486
*dbean@abelbeanlaw.com*
*asteif@abelbeanlaw.com*

*Attorneys for Defendants,*
*Foodonics International, Inc. and Kevin Jacques Klempf, individual and in his capacity as Trustee of the Kevin Jacques Klempf Living Trust*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 12, 2020, the foregoing was filed with the Clerk of Court by using the electronic filing system, which will serve via e-mail this filing to the attorneys of record named below.

James H. Post
Florida Bar No. 175460
**Smith Hulsey & Busey**
One Independent Drive, Suite 3300
Jacksonville, Florida 32202
Telephone: (904) 359-7700
Facsimile:  (904) 359-7708
*jpost@smithhulsey.com*
*khettinger@smithhulsey.com*

***Attorneys for Plaintiff,***
***Dina Klempf Srochi, as Trustee of the***
***Laura Jean Klempf Revocable Trust***