UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| FOODONICS INTERNATIONAL, INC., a Florida corporation, | ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 3:17-cv-1054-J-32JRK |
| | ) |
| DINA KLEMPF SROCHI, as Trustee of the LAURA JEAN KLEMPF REVOCABLE TRUST, a Florida trust, | ) ) ) ) |
| Defendant. | ) ) |
| DINA KLEMPF SROCHI, as Trustee of the LAURA JEAN KLEMPF REVOCABLE TRUST, a Florida trust, | ) ) ) |
| Counterclaim Plaintiff, | ) |
| v. | ) |
| FOODONICS INTERNATIONAL, INC., a Florida corporation, and KEVIN JACQUES KLEMPF, | ) ) ) |
| Counterclaim Defendants. | ) ) |

**COUNTERCLAIM DEFENDANTS' RESPONSE TO MOTION OF SMITH HULSEY & BUSEY TO WITHDRAW AS COUNSEL FOR THE JEAN KLEMPF TRUST**

Counterclaim Defendants, Foodonics International, Inc. and Kevin Jacques Klempf ("Counterclaim Defendants"), hereby respond to the Motion of Smith Hulsey & Busey ("SHB") to Withdraw as Counsel for the Laura Jean Klempf Revocable Trust (the "Motion"). As detailed below, SHB, on behalf of the Trust, has unnecessarily and intentionally multiplied and delayed the dispute between the parties in this Court and in the duplicative state court action. Now,

1

having filed a second lawsuit and having caused significant discovery delays and multiple continuances of the trial date, SHB seeks to abandon this action to the prejudice of Counterclaim Defendants.

## FACTUAL BACKGROUND

As more fully detailed in Counterclaim Defendants' Amended Motion to Dissolve (Doc. 225), SHB filed a duplicative lawsuit in state court and encumbered two (2) residential properties via the recording of lis pendens. Over the course of the subsequent five (5) months, the primary dispute in this case has been completely derailed. The Trust suspended all discovery efforts in this action and cancelled all pending depositions, including crucial depositions of third parties. Although some logistical issues and delays were caused by the Covid-19 pandemic, the parties attended a joint training regarding agreed remote deposition technology and Counterclaim Defendants were ready to proceed before the Trust cancelled all pending depositions.[1]

On May 11, 2020, this Court conducted a hearing on Counterclaim Defendants' Amended Motion to Dissolve. Near the conclusion of the hearing, the parties discussed the potential need for a new case management order. For many days, the parties discussed an extension of the existing discovery deadlines of no more than sixty (60) days. SHB sent a proposed deposition schedule proposing a July 31, 2020 discovery close date. However, the day before a subsequent conference with the Special Master, SHB served a new proposed case management order adding *four (4) additional months* to the extension, such that discovery would close at the end of November. Counterclaim Defendants stated that they believed this extension was unnecessary both via email response and in the conference with the Special Master.

---

[1] Counterclaim Defendants note that SHB represented to the Special Master at an in-person hearing that the filing of the state court lawsuit would not delay discovery in this action.

However, Counterclaim Defendants concluded that it would be counterproductive and unnecessarily contentious to formally oppose this request in light of the pandemic and eventually agreed. Counterclaim Defendants now question whether much or all of this delay was due to SHB's determination that it would soon be seeking to withdraw from this case.

After this Court's May 11, 2020 hearing on the Amended Motion to Dissolve, Counterclaim Defendants filed a Motion to Dissolve Lis Pendens in the state court action and sought to set it for hearing on June 2, a date that was previously set for a different motion. The Trust, via SHB, objected to this timing as insufficient and, after a telephone hearing, successfully delayed the hearing from June 2, 2020 to June 19, 2020.

On June 8, 2020, SHB sent the undersigned draft copies of Motions to Withdraw for both this case and the state court action. The draft motions were premised upon Mr. Post of SHB's preparations for retirement. SHB has never stated when this retirement will occur; how long in advance Mr. Post knew about these preparations for retirement; or why a firm that has fifteen (15) litigation partners, including two (2) that have been involved in this case from the outset cannot continue the representation. After the draft motions were served, the parties discussed a potential consent to the motions. However, Counterclaim Defendants were unwilling to risk the continuance of the crucial June 19, 2020 hearing on the lis pendens and the July 8, 2020 mediation in this action and SHB did not provide sufficient assurances regarding these dates.

SHB filed the Motion in this Court on June 9, 2020. SHB filed an essentially identical Motion to Withdraw, attached hereto as **Exhibit A**, in the state court action on May 11, 2020. Despite having just agreed to the June 19 hearing date, SHB's state court motion also sought to continue the June 19 hearing due to SHB's request to withdraw. Counterclaim Defendants immediately filed an opposition, attached hereto as **Exhibit B**, and the state court denied the

request to continue the hearing (**Exhibit C**). Unerringly, in its state court Motion to Withdraw, SHB contended that a reason to continue the June 19 hearing was that *substitute counsel may wish to "remove" the state court case to federal court*. To seek a delay of a crucial hearing by suggesting a course of action that SHB fought against for months in this court was offensive to Counterclaim Defendants.

During these events, Mr. Klempf entered into a contract with a third-party purchaser for the purchase and sale of 530 Ponte Vedra Boulevard, one of the two properties that are subject to the lis pendens. The closing of the transaction is set for July 8. A true and correct copy of the redacted contract is included within Exhibit B to this Response. The closing is contingent upon the resolution and removal of the lis pendens.

On June 15, 2020, four (4) days before the scheduled hearing in state court, Akerman LLP filed a Notice of Appearance on the Trust's behalf in the state court action. Akerman significantly changed the scope of that case with substantive last-minute filings that requested a continuance of the hearing and which were tailored to require a continuance. Specifically, Akerman filed an Amended Complaint thirty-six (36) hours before the hearing and a substantive brief with new arguments tailored to the new claims, the day before the hearing. A true and correct copy of the Amended Complaint is attached hereto as **Exhibit D**.

Inexplicably, the Trust retained a law firm that has a disqualifying conflict. Akerman represented Foodonics and Mr. Klempf for several years in the same or a substantially similar matter. Akerman negotiated and prepared the transaction documents between Foodonics' shareholders in 2006, when Mr. Klempf purchased his siblings' shares. Most significantly, this work involved the preparation and evaluation of the 2006 Shareholders Agreement which contains a formula for Mr. Klempf's purchase of his mother's shares. This agreement is perhaps

the most significant document relating to Counterclaim Defendants' defense in this case. The Shareholders Agreement is referenced at length in the Trust's Amended Counterclaim.[2] The application of that document and formula in this case has been the subject of the depositions of the Trust and two (2) full day depositions of the Trust's accountant and transactional attorney. The document is also the subject of one of Counterclaim Defendants' expert reports and anticipated testimony.

On June 18, 2020, Counterclaim Defendants filed a Motion to Disqualify Akerman in the state court action, a true and correct copy of which is attached hereto as **Exhibit E**.

On June 19, 2020, Judge Smith attempted to conduct the state court hearing via Zoom. Approximately two (2) minutes into the hearing, the courthouse lost its internet connection and

---

[2] In its Amended Counterclaim, the Trust alleges that Jacques "began in or before 2006 to embark on a systematic plan to acquire all of Foodonics stock from his siblings and his mother at less than fair market value for his personal benefit." See Amended Counterclaim at ¶ 19. The Amended Counterclaim further states:

> 20. Through a series of maneuvers culminating in 2006, Jacques Klempf took advantage of his position at the Company to squeeze out his sister and brother, Dina Klempf Srochi and Marc Klempf, as minority shareholders of the Company. Among other tactics used by Jacques Klempf, he purposely withheld distributions to shareholders (other than each year's allocable tax liability) and thereby precluded his siblings from realizing any return on their stock ownership. In the meantime, Jacques Klempf used Company assets to acquire real and personal property for his personal benefit and extravagant lifestyle, including oceanfront homes and restaurants.
>
> 21. As a result, in 2006 Jacques Klempf used his leverage to impose an agreement on Marc Klempf and Dina Klempf Srochi by which they sold their shares of Foodonics stock at a substantial discount to Jacques Klempf (the "2006 Shareholders Agreement).
>
> 22. In addition, Jacques Klempf strategically used the 2006 Shareholders Agreement to obtain from his mother, Jean Klempf, (i) a restriction not to sell her shares of Foodonics stock during her lifetime and (ii) an agreement by which, on her death, her estate was obligated to sell the shares of her Foodonics stock back to the Company or to Jacques Klempf, as a surviving shareholder, at a price computed by a formula, with the purchase price to be paid over an eight-year period. This "formula" provided for a 65% discount to the value of the Jacques Klempf shares. This extraordinarily favorable discounted redemption price was designed to inure to the personal benefit of Jacques Klempf.
>
> 23. As a result of the 2006 Shareholders Agreement, Jacques Klempf completed the maneuvers necessary to make himself the majority owner of Foodonics' stock (53.6%) leaving the Jean Klempf Trust as a minority shareholder (45.6%) . . . .

See Id. at ¶¶ 20-23.

the substantive hearing could not be conducted. When the Judge eventually called-in by telephone, the parties discussed next steps and scheduling. SHB refused to argue any aspect of the issues despite being the counsel of record which filed the action and despite the pendency of the Motion to Disqualify. Akerman argued that the Motion to Disqualify would require a lengthy hearing. Therefore, the Trust's goal was achieved – more delay in the resolution of the lis pendens such that the hearing on the lis pendens is not likely to occur until after the anticipated closing date on the 530 Ponte Vedra Boulevard property. Yet a third attorney/firm attended the hearing on the Trust's behalf. This attorney, who practices in Georgia, has filed pro hac vice papers.

On June 23, 2020, Akerman served interrogatories and requests for production that purport to seek information regarding the conflict issue. The discovery requests make clear that the Trust and Akerman will attempt to delay resolution of the conflict issue (and the lis pendens issue, which they argue cannot be resolved until after the conflict) until discovery is complete. Given the Trust's ability to select from numerous competent attorneys and law firms, the Trust's selection of Akerman as primary counsel is suspect and may have been tailored to derail the resolution of the lis pendens, which has been the Trust's primary goal. The Trust could avoid the issue simply by allowing SHB, the attorneys that filed the state court lawsuit and lis pendens, or the new Georgia counsel, to argue the pending motions. Instead, relying on the state court's indulgence in allowing the Trust to select the counsel to argue the motions, the Trust has chosen to insist that Akerman handle all aspects of the dispute for the primary purpose of causing delay.

Notably, Akerman has not appeared in this Court on behalf of the Trust, seemingly due to the very same conflict issue implicated in the state court matter. All of these events have done nothing more than delay and complicate these proceedings and none provide any guidance as to

how the dispute in this Court can get back on track. The only certainty is that the events have substantially prejudiced Counterclaim Defendants.

Having delayed the resolution of the lis pendens for months in its briefing to this Court, the Trust and SHB have repeated the same conduct in the state court. It is clear that they have no interest in the proper resolution of any aspect of this case.

At this time, nearly all of the remaining discovery in this case are depositions that the Trust requested and had scheduled at one time before they were cancelled. There are no scheduled depositions at this time. Counterclaim Defendants believe the July 8, 2020 mediation date is critical. Mr. Post has represented that that date will not change. However, inasmuch as SHB is seeking to withdraw and the Trust cannot proceed without counsel under governing law, Counterclaim Defendants believe SHB must remain in the case through mediation to avoid significant prejudice. Having massively multiplied this case in two different forums, SHB should not simply be allowed to leave its mess for others to clean up.

## **ARGUMENT**

Counterclaim Defendants do not contest the Trust's ability and right to select its own counsel. However, the Trust and SHB's request for an immediate withdrawal would be substantially prejudicial to Counterclaim Defendants. Contrary to SHB's representations, a withdrawal now would certainly require a continuance of the mediation date. The mediation has been anticipated for many months and has already once been moved from May to July. Counterclaim Defendants respectfully submit that SHB should not be allowed to withdraw before the mediation.

Moreover, the Trust has not articulated any reason, either in the Motion or in communications between counsel: (1) why Mr. Post's preparations for retirement was not known

7

or disclosed earlier; or (2) why Mr. Post and or his law partners cannot withdraw after the mediation. Given the (1) massively expensive multiplication of this lawsuit in two (2) proceedings; (2) the cancelling and delay of all discovery efforts; (3) the seemingly needless delays in the Trust's proposed case management order that added four (4) months to the discovery period; (4) the incessant procedural objections to the resolution of the lis pendens issues; (5) and other prejudicial tactics, SHB should be required to explain its actions at the hearing before being allowed to withdraw.

As a result of these actions, Counterclaim Defendants have had to incur, and will incur, many tens of thousands of dollars in additional attorneys' fees. The intentional procedural delays coupled with SHB's request to withdraw are likely to cause the loss of the sale of Mr. Klempf's home, which will result in millions of dollars in damages. SHB's actions will delay the resolution of this case by at least six (6) months and put the long anticipated mediation date in jeopardy. Counterclaim Defendants respectfully submit that sanctions may be appropriate given the prejudice that has been caused.

Moreover, Counterclaim Defendants believe that in light of recent events, it is appropriate to revisit the issue of whether this Court should address and rule on the lis pendens. Counterclaim Defendants intend to address this issue at the hearing.

Respectfully Submitted,

**ABEL BEAN LAW P.A.**

/s/ Daniel K. Bean
Daniel K. Bean, Esq.
Florida Bar No.:0015539
Primary: *dbean@abelbeanlaw.com*
Andrew J. Steif, Esq.
Florida Bar No.: 0042475

Primary: *asteif@abelbeanlaw.com*
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202
Telephone: (904) 516-5423

*Attorneys for Foodonics International, Inc.
and Kevin Jacques Klempf*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2020, a true and correct copy of the foregoing was served by email on all counsel of record.

                                                */s/* Andrew J. Steif
                                                Andrew J. Steif, Esq.