IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
IN AND FOR ST. JOHNS COUNTY, FLORIDA

**DINA KLEMPF SROCHI**, as Trustee of the
**LAURA JEAN KLEMPF REVOCABLE
TRUST**, a Florida Trust,

        Plaintiff,                      Case No.: CA20-0083

v.

**KEVIN JACQUES KLEMPF, FOODONICS
INTERNATIONAL, INC.**, a Florida corporation,
and **KEVIN JACQUES KLEMPF**, as Trustee of
the **KEVIN JACQUES KLEMPF LIVING
TRUST**, a Florida trust,

        Defendants.

_____ /

### DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION OF SMITH HULSEY & BUSEY TO WITHDRAW AS COUNSEL FOR PLAINTIFF AND TO CONTINUE THE JUNE 19 HEARING

Defendants, Foodonics International, Inc. ("Foodonics") and Kevin Jacques Klempf,

individually and as Trustee of the Kevin Jacques Klempf Living Trust ("Jacques") (collectively,

the "Defendants"), hereby file this Response in Opposition to Smith Hulsey & Busey's ("SHB")

Motion to Withdraw as Counsel for Plaintiff and to Continue the June 19 Hearing (the

"Motion").

The Laura Jean Klempf Revocable Trust (the "Trust") and its counsel SHB unnecessarily

multiplied the dispute between the parties in federal court by filing this action. Despite having

filed lis pendens that improperly encumber Jacques' residential properties, the Trust and SHB

have undertaken a concerted effort to prevent either of the two (2) Courts from addressing the

merits of the lis pendens. After months of delay due to their procedural objection to the federal

1

court resolving the issue, the Trust and SHB have now objected to, and sought to move the hearing on the lis pendens in this Court multiple times.

SHB has been counsel of record for the Trust since at least 2016. SHB, a large firm that has staffed this dispute with at least three (3) litigation partners, contends, at the last minute, that the Court should continue the June 19 hearing because one (1) of those attorneys is retiring – something that was likely anticipated for a lengthy period of time. While a party is free to choose its counsel, the Trust and SHB cannot use the withdrawal as a sword to prevent Defendants from seeking to discharge the lis pendens. The issue is now of an emergency nature because one of the properties is under contract, with a closing to be held July 8. There is no basis for the Court to grant SHB's Motion before the hearing given that the matter is urgent and because SHB has been prepared to argue the matter on two (2) prior occasions.

## Background

As detailed in Defendants' Motion to Discharge, this action is duplicative of claims already being actively litigated in a parallel federal proceeding styled <u>Foodonics International, Inc. v. Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust</u>, Case No. 3:17-cv-1054-J-32JRK, in the United States District Court, Middle District of Florida (the "Federal Action"). The Trust filed this action solely to abuse principles of comity in order to cloud title to two (2) of Mr. Klempf's residential properties.

After this lawsuit was filed, Foodonics and Jacques moved to discharge the lis pendens in a motion filed in the Federal Action. After months of delay and the filing of multiple briefs, the Court held a hearing on May 11. The Trust argued that the federal court should defer resolution of the lis pendens to this Court. The Trust successfully manipulated the mutual respect the federal and state courts have for each other to achieve an inequitable result. Specifically,

although Judge Corrigan stated that the issue could have, and likely should have been brought before the federal court, Judge Corrigan determined that the federal court would not interfere with this Court's ability or authority to consider the issues raised by Foodonics' and Mr. Klempf's Amended Motion to Dissolve Lis Pendens, pursuant to the principles of comity.

In response, Defendants filed their Motion to Dissolve in this Court on May 14, 2020. Defendants set the Motion to Dissolve for hearing on June 2, which was a preexisting hearing date set aside for a different motion. Despite having been prepared to argue the merits of the lis pendens on May 11 and the fact that the June 2 hearing was more than two (2) weeks away, the Trust objected to the June 2 hearing date. During a telephone hearing on the objection, the Trust contended that there was insufficient time to argue the Motion to Dissolve on June 2. The Court reset the hearing on the Motion to Dissolve for June 19, 2020.

Having spent months fighting to delay the resolution of the lis pendens, the Trust filed the Motion a mere one (1) week before the hearing in an attempt to continue to unfairly encumber the residential properties at issue.

The Motion is premised upon the anticipated retirement of Mr. Post, lead counsel for the Trust. The Motion further states that the Trust has determined to retain new counsel, but it has not done so yet. The Motion does not state when Mr. Post's retirement will occur or when this fact was first known. The Motion likewise does not state why SHB, which has staffed this dispute with three (3) litigation partners and which has approximately fifteen (15) such attorneys in Jacksonville, cannot continue the representation in this case or at a minimum, handle the hearing on June 19.

As more fully detailed in the Motion to Dissolve, the Lis Pendens at issue encumber two (2) residential properties, 815 Ponte Vedra Boulevard ("815 PV") and 530 Ponte Vedra

Boulevard ("530 PV"). Defendants incorporate the Factual Background section in the Motion to Dissolve as if fully stated herein. On June 5, 2020, Jacques and a purchaser entered into a Purchase and Sale Agreement for the purchase and sale of 530 PV. A true and correct copy of the Purchase and Sale Agreement is attached hereto as **Exhibit A**. The Purchase and Sale Agreement has been redacted to remove certain personal information. The closing on the transaction is set to occur on July 8, 2020. The closing is contingent upon the removal of the lis pendens currently encumbering 530 PV.

<u>**Argument**</u>

The Motion to Dissolve makes clear that the lis pendens are without merit. The June 19, 2020 hearing is Defendants' third attempt to bring this issue to a timely resolution. The Trust has fought these efforts at every turn.

Defendants do not contest the Trust's ability and right to select its own counsel. However, the Trust and SHB's request for an immediate withdrawal would be substantially prejudicial to Defendants. A withdrawal and continuance prior to the hearing would constitute a de facto termination of Jacques' Purchase and Sale Agreement and Jacques would incur millions of dollars in damages as a result. The Trust has not articulated any reason, either in the Motion or in communications between counsel: (1) why Mr. Post's retirement was not known or disclosed earlier; or (2) why Mr. Post and or his law partners cannot withdraw after the June 19 hearing. SHB has been required to prepare to argue these issues on two (2) occasions already. An argument that the Trust would be better served by having new counsel learn and argue the issue at some remote date is simply frivolous. Having encumbered Defendants' properties and undertaken an unnecessary procedural tactic by filing a new lawsuit in this Court, the Trust and SHB cannot now delay this issue further.

The Trust's contention in Paragraph Four (4) of the Motion that substitute counsel might wish to "remove" this case to federal court is frankly offensive, given that the Trust and SHB have wasted months of time contesting the federal court's ability to address the lis pendens while encumbering the properties at issue. The Trust's reference to the July 8, 2020 mediation in the Federal Action is also telling. The Trust clearly wishes to preserve the lis pendens until the mediation date so that the lis pendens can provide the Trust with additional settlement leverage. There is no basis for the Court to delay resolution of an urgent issue to accommodate the Trust's improper motives.

In sum, the Motion is the Trust's last ditch effort to further delay the Court's resolution of the lis pendens. Withdrawal of SHB prior to the June 19 hearing would be prejudicial and improper. Lis pendens are disfavored under Florida law. The lis pendens issue here is also urgent and must be resolved at this time to avoid the loss of a sale. For all of the foregoing reasons, Defendants request that the Court deny the Motion subject to being re-filed or re-addressed after the June 19, 2020 hearing.

Respectfully Submitted,

**ABEL BEAN LAW P.A.**

By: /s/ Andrew J. Steif
Daniel K. Bean, Esq.
Florida Bar No. 15539
Andrew J. Steif, Esq.
Florida Bar No. 0042475
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202
Telephone: (904) 516-5486
*dbean@abelbeanlaw.com*
*asteif@abelbeanlaw.com*
***Attorneys for Defendants,***
***Foodonics International, Inc. and Kevin Jacques***
***Klempf, individually and as Trustee of the Kevin***
***Jacques Klempf Living Trust***

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 12, 2020, the foregoing was filed with the Clerk of

Court by using the electronic filing system, which will serve via e-mail this filing to the attorneys

of record named below.

James H. Post, Esq.
Florida Bar No. 175460
**Smith Hulsey & Busey**
One Independent Drive, Suite 3300
Jacksonville, Florida 32202
Telephone: (904) 359-7700
Facsimile:  (904) 359-7708
*jpost@smithhulsey.com*
*khettinger@smithhulsey.com*

***Attorneys for Plaintiff,***
***Dina Klempf Srochi, as Trustee of the***
***Laura Jean Klempf Revocable Trust***

       /s/ Andrew J Steif_____

# EXHIBIT A

dotloop signature verification: dtlp.us/nGlc-30Sg-rlE9Z
DocuSign Envelope ID: EDEFED3A-ED92-4909-90E7-94AF4DDD17CC




**PURCHASE AND SALE AGREEMENT**
**COPYRIGHTED BY AND SUGGESTED FOR USE BY THE MEMBERS OF**
**THE NORTHEAST FLORIDA ASSOCIATION OF REALTORS®, INC.**

REALTOR®                                                                        REALTOR®

1    Peter [redacted] and Catherine [redacted]

2    _____ ("BUYER/PURCHASER") (names as reflected on government-
3    issued photo ID and **marital status** if individuals) and  Kevin Jacques Klempf

4    _____("SELLER") (names
5    as reflected on deed or government-issued photo ID and **marital status** if individuals), which terms may be
6    singular or plural and include the successors, personal representatives and assigns of BUYER and SELLER,
7    hereby agree that SELLER will sell and BUYER will buy the following described property with all improvements
8    ("the Property"), upon the following terms and conditions and as completed or marked. In any conflict of terms or
9    conditions, that which is added will supersede that which is printed or marked.

10   **PROPERTY DESCRIPTION:**

11   (a) Street address, city, zip code:  530 Ponte Vedra Blvd., Ponte Vedra Beach, FL 32082

12   (b) The Property is located in  St. Johns  County, Florida. Property Tax ID No:  0564000000

13   (c) Legal description of the Real Property (if lengthy, see attached legal description):  8-91 PONTE VEDRA

14   SUB LOT 7 BLK 21 & VAC W'LY 34FT OF PV BLVD LYING E IN OR2126/1889(SJC RES#2004-4)

15   OR4028/1061

16   The Property will be conveyed by statutory general warranty deed, trustee's, personal representative's or
17   guardian's deed as appropriate to the status of SELLER (unless otherwise required herein), subject to current
18   taxes, existing zoning, recorded restrictive covenants governing the Property, and easements of record which do
19   not adversely affect marketable title. SELLER hereby represents that SELLER has the legal authority and
20   capacity to convey the Property, and that no other person or entity has an ownership interest in the Property.
21   **Under Florida law, financing of the BUYER's principal residence requires BUYER and BUYER's spouse**
22   **to sign the mortgage(s). Under Florida law, the sale of a principal residence requires SELLER's spouse**
23   **to sign the deed even if the spouse's name is not on SELLER's present deed.**

24   1.   PURCHASE PRICE to be paid by BUYER is payable as follows:

25        (A)  Binder deposit is paid herewith, or is due within  3  days after          $_____████████
26             date of acceptance of this Agreement, which will remain a binder until
27             closing unless sooner disbursed according to the provisions of this
28             Agreement

29        (B)  Additional binder deposit due on or before  See Addendum "A"  or        $_____████████
30             _____days after date of acceptance of this Agreement

31        (C)  Proceeds of a note and mortgage to be executed by BUYER to any          $_____
32             lender other than SELLER (base loan amount excluding FHA MIP,
33             funding fees or financed closing costs)

34        (D)  Seller financing by note and mortgage executed by BUYER to SELLER       $_____
35             **(requires use of Seller Financing Addendum)**

36        (E)  Balance due at closing (not including BUYER's closing costs, prepaid     $_____████████
37             items or prorations) by wire transfer or, if allowed by settlement agent,
38             by cashier's or official check drawn on a United States banking institution

39        **(F) PURCHASE PRICE**                                                        $_____████████

40        **Binder deposit(s) to be held by:**
41        Name:  Bartlett & Faulkner, PA

42        Address:  822 A1A N., Suite 102, Ponte Vedra Beach, FL 32082

43        Phone:  904-285-9993

44        E-mail  Caustin@pontevedralaw.com

45        **Note: In the event of a dispute between BUYER and SELLER regarding entitlement to the binder**
46        **deposit(s) held by an attorney or title insurance agency, Broker's resolution remedies referenced**
47        **in paragraph 12(A) hereof are not available.**

dotloop signature verification: dtlp.us/nGtg-8OSg-HE9Z
DocuSign Envelope ID: EDEFED3A-ED92-4909-90E7-94AF4DDD17CC

48 2. **FINANCING INFORMATION:** BUYER intends to finance this transaction as follows:
49 ☑ cash
50 ☐ loan without financing contingency
51 ☐ loan as marked below with financing contingency
52 Loan Approval (**mark only one box**):
53 ☐ **is** conditioned upon the closing of the sale of other real property owned by BUYER; or
54 ☐ **is not** conditioned upon the closing of the sale of other real property owned by BUYER.
55 If neither box is marked then Loan Approval is not conditioned upon the closing of the sale of other
56 real property owned by BUYER.

57 (A) ☐ **FHA:** "It is expressly agreed that notwithstanding any other provisions of this contract, the
58 PURCHASER shall not be obligated to complete the purchase of the Property described herein or to
59 incur any penalty by forfeiture of earnest money deposits or otherwise unless the PURCHASER has
60 been given in accordance with HUD/FHA or VA requirements a written statement by the Federal
61 Housing Commissioner, Department of Veteran Affairs, or a Direct Endorsement Lender setting forth
62 the appraised value of the Property of not less than $ _____. The PURCHASER shall
63 have the privilege and option of proceeding with consummation of this contract without regard to the
64 amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum
65 mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the
66 value or the condition of the Property. The PURCHASER should satisfy himself/herself that the price
67 and condition of the Property are acceptable."
68 **If Purchase Price changes, the dollar amount referenced in line 62 should be changed to**
69 **reflect the new Purchase Price.**

70 (B) ☐ **VA:** It is expressly agreed that, notwithstanding any other provisions of this Agreement, the
71 BUYER shall not incur penalty by forfeiture of earnest money or otherwise be obligated to complete
72 the purchase of the Property described herein if this Agreement purchase price or cost exceeds the
73 reasonable value of the Property established by the Department of Veterans Affairs. The BUYER
74 shall, however, have the privilege and option of proceeding with the consummation of this Agreement
75 without regard to the amount of reasonable value established by the Department of Veterans Affairs.

76 (C) ☐ **CONVENTIONAL OR USDA FINANCING:** If BUYER's financing is conventional or USDA, it is
77 expressly agreed that, notwithstanding any other provision of this Agreement, BUYER shall not incur
78 penalty by forfeiture of deposit(s) or otherwise be obligated to complete the purchase of the Property
79 described herein if the Purchase Price exceeds the appraised value of the Property as established by
80 BUYER's lender's appraiser. BUYER shall, however, have the option of proceeding with the
81 consummation of this Agreement without regard to the amount of said appraised value. This
82 contingency shall expire upon the expiration of the Loan Approval Period.

83 (D) ☐ **OTHER FINANCING:** ☐ **SELLER FINANCING** ☐ **MORTGAGE ASSUMPTION.** If marked, see
84 applicable Addendum attached hereto and made a part hereof.

85 **APPLICATION:** Within _N/A_ days (5 days if left blank) after date of acceptance of this Agreement,
86 BUYER will complete the application process for mortgage loan(s). BUYER will timely furnish any and
87 all credit, employment, financial, and other information required by lender sufficient to generate a
88 Loan Estimate, pay all fees required by BUYER's lender and make a continuing and diligent effort to
89 obtain loan approval. Otherwise, **BUYER is in default.** BUYER hereby authorizes BUYER's lender to
90 disclose information regarding the status, progress and conditions of loan application and loan
91 approval to SELLER, SELLER's attorney, Broker(s) to this transaction, and the closing
92 attorney/settlement agent. BUYER and SELLER hereby further authorize BUYER's lender and the
93 closing attorney/settlement agent to provide a copy of the combined settlement statement and the
94 BUYER and SELLER Closing Disclosures to Broker(s) to this transaction when provided to BUYER
95 and SELLER, both before and at closing (consummation).

96 **LOAN APPROVAL PERIOD:** If the mortgage loan is not approved within _N/A_ days (30 days if left
97 blank) after date of acceptance of this Agreement, without contingencies other than lender-required
98 repairs/replacements/treatments, marketable title and survey, hereinafter called the **Loan Approval**
99 **Period, BUYER may terminate this Agreement by written notice to the Seller within the Loan**
100 **Approval Period, or be deemed to have waived the financing contingency period.** If BUYER
101 does not terminate this Agreement prior to the end of the Loan Approval Period, neither BUYER nor
102 SELLER shall have a right to terminate this Agreement under this paragraph, the binder deposit shall
103 not be refundable because of BUYER's failure to obtain financing, and this Agreement shall continue
104 through the date of closing.

dotloop signature verification: dtlp.us/nG6c-3O5g-rE9Z
DocuSign Envelope ID: EDEFED3A-ED92-4909-90E7-94AF4DDD17CC

105 **3. MAINTENANCE, INSPECTION AND REPAIR:** SELLER will maintain the Property in its present condition until
106 closing, except for normal wear and tear and any agreed upon repairs/replacements/treatments. If BUYER
107 elects not to have inspections and investigations performed, or fails to make a timely request for
108 repairs/replacements/treatments as set forth in this paragraph 3, BUYER accepts the Property in its **"AS IS"**
109 condition as of the date of acceptance of this Agreement. BUYER will be responsible for repair of all damages
110 to the Property resulting from inspections and investigations, and BUYER will return the Property to its pre-
111 inspection condition. These obligations shall survive termination of this Agreement.

112 (A) **Access and Utilities:** SELLER will make the Property available for inspections and investigations
113 during the time provided for inspections and investigations in this paragraph, and agrees to have all
114 utilities (including, but not limited to, electricity, fuel/gas and water) active from the date of acceptance
115 of this Agreement through the date of closing and, if not, the time for inspections and investigations will
116 be extended by the time access was denied.

117 Within _____ days (10 days if left blank) after the date of acceptance of this Agreement ("Inspection
118 Period"), BUYER may, **but is not required to**, have the Property inspected and investigated by
119 appropriately licensed inspectors and/or persons/entities holding a Florida license to build, repair or
120 maintain the items inspected. BUYER and BUYER's Broker have the right to be present during all
121 inspections and investigations. The inspections and investigations include, but are not limited to:

See Addendum "A"

122 (1) testing and inspecting structural matters, all major appliances, heating, cooling, mechanical,
123 electrical and plumbing systems, well and septic (including drain field systems), saltwater and
124 freshwater ground permeation and intrusion, the roof, foundation, pool and pool equipment,
125 defective drywall, defective flooring, mold, asbestos, lead-based paint, drainage, radon gas and
126 environmental and sinkhole conditions;

127 (2) inspecting for active infestation and/or damage from termites and other wood-destroying
128 organisms; and

129 (3) determining if the Property is in a Community Development District (CDD) and, if so, the costs
130 associated with the CDD, verifying the cost and availability of insurance, that
131 condominium/homeowner's association insurance is satisfactory to BUYER and BUYER's lender,
132 verifying square footage measurements, and reviewing applicable zoning and historic
133 classifications, and covenants, restrictions, and easements, rules, and other governing documents
134 affecting the Property.

135 If BUYER determines, in BUYER's **sole and absolute discretion**, that the Property is not acceptable
136 to BUYER for any reason, BUYER may prior to the expiration of the Inspection Period:

137 • terminate this Agreement by delivering written notice of termination to SELLER together with a copy
138 of all written reports, if any, of inspections and investigations if such reports are requested by
139 SELLER; or

140 • submit BUYER's written request to SELLER for repairs/replacements/treatments, together with a
141 copy of all written reports, if any, of inspections and investigations. **BUYER and SELLER shall have
142 7 days from SELLER's receipt of such request within which to enter into a written agreement
143 for repairs/replacements/treatments. If BUYER and SELLER have not entered into such
144 written agreement within the 7 days, then BUYER may terminate this Agreement by giving
145 written notice of termination to SELLER within 3 days after the 7 days, or be deemed to have
146 accepted the Property without repairs/replacements/treatments except as may otherwise be
147 provided in this Agreement. BUYER'S request for repairs/replacements/treatments or written
148 agreement between BUYER and SELLER as to same shall not eliminate BUYER's right to
149 terminate this Agreement at any time within the Inspection Period.**

150 If this Agreement is terminated as provided in this paragraph, BUYER and SELLER shall be released
151 from all further obligations under this Agreement except as otherwise provided in this paragraph 3.
152 Prior to the binder deposit(s) being delivered to BUYER, BUYER shall provide SELLER with paid
153 receipts for all investigations and inspections, if any.

154 BUYER shall be responsible for prompt payment for all of BUYER's inspections and investigations.
155 BUYER agrees to indemnify and hold SELLER harmless from all losses, damages, claims, suits, and
156 costs which may arise out of any contract, agreement, or injury to any person or property as a result of
157 any activities of BUYER and BUYER's agents and representatives relating to inspections and
158 investigations except for any losses, damages, claims, suits, or costs arising out of pre-existing
159 conditions of the Property or out of SELLER's negligence, willful acts or omissions.

160   SELLER shall have any agreed upon repairs/replacements/treatments completed by appropriately
161   licensed persons within 10 days after entering into a written agreement for such with BUYER **and**
162   **receipt by SELLER of written notice of BUYER's loan approval, if applicable.** SELLER shall notify
163   BUYER in writing upon completion of all agreed upon repairs/replacements/treatments and provide
164   BUYER with copies of all receipts for same at that time. BUYER may, within 3 days after receipt of
165   SELLER's written notice and delivery of such receipts, reinspect the Property solely to verify that
166   SELLER has completed the agreed upon repairs/replacements/treatments. No other
167   repair/replacement/treatment issues may be raised as a result of this reinspection.

168   <u>Walk-Through</u>: Prior to closing, BUYER may walk through the Property solely to verify that SELLER
169   has maintained the Property in the condition required in this Agreement.

170   (B) **BUYER's Responsibility:** Repairs, replacements and treatments to the Property after date of closing
171   or BUYER's possession, whichever occurs first, will be BUYER's responsibility unless otherwise
172   agreed in writing.

173 **4.   TITLE EVIDENCE / MUNICIPAL LIEN SEARCH:**

174   (A) TITLE EVIDENCE: At least _____ days before the date of closing (10 days if left blank), the party
175   paying for the owner's title insurance shall cause the title agent to issue a title insurance commitment
176   for an owner's policy in the amount of the Purchase Price and a title insurance commitment for a
177   mortgage policy in the amount of BUYER's loan(s) if BUYER is financing the purchase. Any expense
178   of curing title defects such as, but not limited to, legal fees, discharge of liens and recording fees will
179   be paid by SELLER.

180   (B) MUNICIPAL LIEN SEARCH: If a municipal lien search is required in this Agreement, at least
181   _____ days before the date of closing (10 days if left blank), the party paying for this search shall
182   pay for the cost of this search upon request by closing attorney/settlement agent.

183 **5.   SURVEY MAP:** At least <u>15</u> days before date of closing (10 days if left blank), the party paying for the
184   survey map shall cause to be delivered to the closing attorney/settlement agent **(mark only one box):**

185   ☑ a new staked survey map of the Property dated within (3) months of date of closing showing all
186   improvements, certified to BUYER, SELLER, lender, and the title insurer in compliance with Florida law;
187   **or**
188   ☐ a copy of a previously made survey map of the Property showing all existing improvements and
189   sufficient to allow removal of the standard survey map exceptions from the title insurance commitment
190   **or, if insufficient, then a new staked survey map is required at Sellers's expense unless**
191   **otherwise marked in paragraph 7a; or**
192   ☐ No survey map is required.

193   **If a surveyor's flood elevation certificate is required, BUYER shall pay for it.**

194 **6.   TITLE EXAMINATION AND DATE OF CLOSING (CONSUMMATION):**

195   (A) If title evidence and survey map, as specified below, show SELLER is vested with marketable title,
196   including legal access, the transaction will be closed and the deed and other closing papers delivered
197   on or before **(mark only one box):**

198   ☐ _____days (15 days if left blank) after the **Loan Approval Period; or**
199   ☑ __See Addendum "A"_____ (specific date); or
200   ☐ _____days after date of acceptance of this Agreement,

201   **unless extended by other conditions of this Agreement.**

202   Marketable title means title which a Florida title insurer will insure as marketable at its regular rates
203   and subject only to matters to be cured at closing and the usual exceptions such as survey map,
204   current taxes, zoning ordinances, and covenants, restrictions and easements of record which do not
205   adversely affect marketable title. From the date of acceptance of this Agreement through closing,
206   SELLER will not take or allow any action to be taken that alters or changes the status of title to the
207   Property.

dotloop signature verification: ctlp.us/nG1g-30Sg-HE9Z

DocuSign Envelope ID: EDEFED3A-ED92-4909-90E7-94AF4DDD17CC

208     **(B) Extension of Date of Closing and Other Dates:** If closing cannot occur by the date of closing due
209     to Consumer Financial Protection Bureau (CFPB) delivery requirements, the date of closing shall be
210     extended for the period necessary to satisfy CFPB delivery requirements, not to exceed 10 days. If
211     extreme weather, act of God, government shutdown, act of terrorism or war ("force majeure")
212     prevents any obligation under this Agreement from being reasonably performed or causes the
213     unavailability of insurance, all time periods, including the date of closing, will be extended for the
214     period of time that any of the above prevents performance of any obligation under this Agreement,
215     but in no event more than 5 days after restoration of services essential to the closing process and
216     availability of applicable insurance. If force majeure prevents performance of any obligation under this
217     Agreement for more than 30 days beyond the date of closing, BUYER or SELLER may terminate this
218     Agreement by delivering notice to the other party.

219     If title evidence or survey map reveals any defects which render title unmarketable, or if the Property
220     is not in compliance with governmental regulations/permitting, or condominium or homeowners'
221     association rules/regulations, BUYER or closing attorney/settlement agent will have 5 days from
222     receipt of title commitment, survey map or written evidence of any association, permitting or
223     regulatory issue to notify SELLER in writing of such defects. SELLER agrees to use reasonable
224     diligence to cure such defects at SELLER's expense, even if not yet a monetary obligation, and will
225     have 30 days to do so, in which event this transaction will be closed within 10 days after delivery to
226     BUYER of evidence that such defects have been cured but not sooner than the date of closing.
227     SELLER agrees to pay for and discharge all due and delinquent taxes, liens and other monetary
228     encumbrances unless otherwise agreed in writing. If SELLER is unable to convey marketable title, or
229     to cure association, permitting / regulatory compliance issues, BUYER will have the right to either
230     terminate this Agreement or to accept the Property as SELLER is able to convey, and to close this
231     transaction upon the terms stated herein, which election must be exercised within 10 days after
232     BUYER's receipt of SELLER's written notice of SELLER's inability to cure.

233  **7.**   **BUYER WILL PAY:**

234     (A) CLOSING COSTS:

235     ☑ Recording fees         ☐ One-year home warranty_____
236     ☐ Intangible tax         ☐ VA funding fee
237     ☐ Note stamps         ☐ Mortgage insurance premium
238     ☐ Simultaneous mortgagee title insurance policy   ☐ Mortgage discount not to exceed_____
239     ☐ Title insurance endorsements     ☐ Survey Map
240     ☐ Lender's flood certification fees     ☐ Closing attorney/settlement fee
241     ☐ Mortgage origination charges     ☑ BUYER's courier/wire fees
242     ☐ Appraisal fee         ☐ Title search
243     ☐ Credit report (s)         ☐ Municipal lien search
244     ☑ Inspection and reinspection fee     ☐ Broker transaction fee $_____
245     ☐ Tax service fee         ☐ Mortgage transfer and assumption charges
246     ☑ Wood-destroying organism (WDO) report
247     ☐ Other _____

248     (B) All other charges required by lender(s) in connection with the BUYER's loan(s), unless prohibited by
249     law or regulation, **together with lender related settlement/title service fees charged to process,**
250     **close and post close BUYER's loan(s).**

251     (C) Condominium and homeowners' association application/transfer fees, the cost of completion of a
252     lender's condominium questionnaire fees, and capital contributions, if required.

253     (D) PREPAIDS: Prepaid hazard, flood and wind insurance, taxes, interest and mortgage insurance
254     premiums if required by the lender.

255  **8.**   **SELLER WILL PAY:**

256     (A) CLOSING COSTS:
257     ☑ Deed stamps         ☐ One-year home warranty not to exceed $_____
258     ☑ Owner's title insurance policy     ☐ Mortgage discount not to exceed_____
259     ☑ Title search         ☐ Appraisal fee
260     ☑ Closing attorney/settlement fee     ☑ Municipal lien search
261     ☑ Survey Map
262     ☑ Satisfaction of mortgage and recording fee
263     ☑ SELLER's courier/wire fees
264     ☑ Other  One year home warranty including pool _____
265     _____

dotloop signature verification: dtlp.us/nGlg-8DSg-HE9Z
DocuSign Envelope ID: EDEFED3A-ED92-4909-90E7-94AF4DDD17CC

322     (C) Binder deposits retained by SELLER as liquidated damages will be distributed pursuant to the terms
323        of the listing agreement.

324 **11. NON-DEFAULT PAYMENT OF EXPENSES:**

325     (A) If BUYER fails to perform, but is not in default, all loan and sale processing and closing costs
326        incurred, whether the same were to be paid by BUYER or SELLER, will be the responsibility of
327        BUYER with costs deducted from the binder deposits, and the remainder of the binder deposits shall
328        be returned to BUYER. This will include but not be limited to the transaction not closing because
329        BUYER does not obtain the required financing as provided in this Agreement or BUYER invokes
330        BUYER's right to terminate under any contingency in this Agreement; however, if Buyer elects to
331        terminate this Agreement pursuant to paragraphs 2(A), 2(B), 2(C) or 3, each party will be responsible
332        for all loan and sale processing costs specified to be paid by that party, except that all inspections,
333        including WDO Report, shall be paid by BUYER.

334     (B) If SELLER fails to perform, but is not in default, all loan and sale processing and closing costs
335        incurred, whether the same were to be paid by BUYER or SELLER, will be the responsibility of
336        SELLER, and BUYER will be entitled to the return of the binder deposits. This will include the
337        transaction not closing because SELLER elects not to pay for the amount in excess of the amounts in
338        paragraph 15 with respect to casualty, loss or damage, or because SELLER cannot deliver
339        marketable title, or is unable to cure association, permitting / regulatory compliance issues, but shall
340        not include failure to appraise or termination pursuant to paragraph 2.

341 **12. BINDER DISPUTE, WAIVER OF JURY TRIAL AND ATTORNEY FEES:**

342     (A) In the event of a dispute between BUYER and SELLER as to entitlement to the binder deposits, the
343        holder of the binder deposits may file an interpleader action in accordance with applicable law to
344        determine entitlement to the binder deposits, and the interpleader's attorney's fees and costs shall be
345        deducted and paid from the binder deposits and assessed against the non-prevailing party, or the
346        broker holding the binder deposits may request the issuance of an Escrow Disbursement Order from
347        the Florida Division of Real Estate. In either event, BUYER and SELLER agree to be bound thereby,
348        and shall indemnify and hold harmless the holder of the binder deposits from all costs, attorney's fees
349        and damages upon disbursement in accordance therewith.

350     (B) All controversies and claims between BUYER, SELLER or Broker(s), directly or indirectly, arising out
351        of or relating to this Agreement or this transaction will be determined by non-jury trial. BUYER,
352        SELLER and Broker(s), jointly and severally, knowingly, voluntarily and intentionally waive any and all
353        rights to a trial by jury in any litigation, action or proceeding involving BUYER, SELLER or Broker(s),
354        whether arising directly or indirectly from this Agreement or this transaction or relating thereto. Each
355        party will be liable for their own costs and attorney's fees except for interpleader's attorney's fees and
356        costs, which shall be payable as set forth in paragraph 12(A).

357 **13. PROPERTY DISCLOSURE:** SELLER represents that SELLER has no knowledge of facts materially
358     affecting the value of the Property other than those which BUYER can readily observe **except**:
359     See seller's disclosure
360     

361     SELLER further represents that the Property is not now and will not be prior to the date of closing subject to
362     a municipal or county code enforcement proceeding and that no citation has been issued **except**:
363     See seller's disclosure

364     If the Property is or becomes subject to such a proceeding prior to the date of closing, SELLER shall
365     comply with Florida Statutes 125.69 and 162.06; notwithstanding anything contained within said Statutes,
366     SELLER shall be responsible for compliance with applicable code and all orders issued in such proceeding
367     unless otherwise agreed herein. SELLER has received no written or verbal notice from any governmental
368     entity as to uncorrected building, environmental or safety code violations, and SELLER has no knowledge
369     of any repairs or improvements made to the Property not then in compliance with governmental
370     regulations/permitting **except**: See seller's disclosure

371     (A) **Energy Efficiency:** In accordance with Florida Statute 553.996, notice is hereby given that the
372        BUYER of real property with a building for occupancy located thereon may have the building's
373        energy-efficiency rating determined. BUYER acknowledges receipt of the Florida energy efficiency
374        rating information brochure prepared by the State of Florida at the time of or prior to BUYER signing
375        this Agreement.

376     (B) **Radon Gas Disclosure:** Radon gas is a naturally occurring radioactive gas that, when it has
377        accumulated in a building in sufficient quantities, may present health risks to persons who are exposed

dotloop signature verification: dtlp.us/rvGiz-805g-HE9Z
DocuSign Envelope ID: EDEFED3A-ED92-4909-90E7-94AF4DDD17CC

| 378 | to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in |
| 379 | Florida. Additional information regarding radon testing may be obtained from your county health unit. |

380 (C) **Flood Zone:** BUYER is advised to verify with the lender and appropriate government agencies
381 whether flood insurance is required and what restrictions apply to improving the Property and
382 rebuilding in the event of casualty.

383 (D) **Community Development District: If the Property is in a CDD, a Community Development**
384 **District Disclosure must be signed by BUYER and SELLER and made a part hereof.**

385 (E) **Mold Disclosure:** Mold is naturally occurring. The presence of mold in a home or building may cause
386 health problems and damage to the Property.

387 (F) **Airport Notice Zones**: If the Property is in Noise Zones A, B and/or an Airport Notice Zone, BUYER
388 and SELLER agree to comply with the City of Jacksonville Ordinance Code Section 656.1010.

389 (G) **Historic Districts:** BUYER is advised to verify with appropriate government agencies whether the
390 Property is in an historic district; if so, the Property is subject to additional guidelines and restrictions.
391 **See Historic District Disclosure for further information.**

392 (H) **Other:** BUYER should exercise due diligence with respect to information regarding neighborhood
393 crimes, sexual offenders/predators and any other matters BUYER deems relevant to the purchase of
394 the Property.

395 **Broker's Notice:** BUYER and SELLER acknowledge and agree that neither the Listing Broker nor
396 Selling Broker warrants the condition, size or square footage of the Property, and neither is liable to
397 BUYER or SELLER in any manner whatsoever for any losses, damages, claims, suits, and costs
398 regarding same. BUYER and SELLER hereby release and hold harmless said Brokers and their
399 licensees from any losses, damages, claims, suits, and costs arising out of or occurring with respect to
400 the condition, size or square footage of the Property. Brokers shall not be liable for the performance by
401 any provider of services or products recommended by Brokers. Such recommendations are made as a
402 courtesy. BUYER and SELLER may select their own providers of services or products.

403 14. **POSSESSION:**

404 (A) ☑ BUYER will be given possession at closing; or
405
406 ☐ BUYER will be given possession within _____ days after closing at no rental cost to SELLER except
407 as otherwise set forth in paragraph 17 hereof.

408 If neither box is marked in this paragraph 14A, then BUYER will be given possession at closing.

409 **If possession is to be delivered before or after closing, the BUYER and SELLER shall execute a**
410 **separate possession agreement prepared by legal counsel at possessor's expense at least 5 days**
411 **before date of closing.**

412 **SELLER shall sweep the Property clean and remove all personal property not included in the sale by**
413 **time of BUYER's possession.**

414 (B) ☑ SELLER represents that there are no parties in possession other than SELLER, or that any parties
415 in possession other than SELLER shall vacate the Property as of the date and time of closing; or

416 ☐ BUYER understands that the Property is available for rent or rented and the tenant may continue
417 in possession following closing unless otherwise agreed in writing between the landlord and
418 tenant. Within 5 days after date of acceptance of this Agreement, SELLER shall provide BUYER
419 with a copy of all current leases and rent rolls for the Property and deliver to BUYER originals of
420 same at closing. At closing, all tenant deposits will be transferred from SELLER to BUYER, and
421 any leases shall be deemed to have been assigned by SELLER to BUYER. This Agreement shall
422 be deemed an assignment of any leases upon closing, and the obligations thereunder assumed by
423 BUYER.
424
425 If neither box is marked in this paragraph 14B, then BUYER will be given possession as of the date
426 and time of closing.

dotloop signature verification: dtlp.us/yGte-80Se-HE9Z
DocuSign Envelope ID: EDEFED3A-ED92-4909-90E7-94AF4DDD17CC

427 **15. CASUALTY LOSS OR DAMAGE:** If the Property is damaged by any casualty prior to closing, SELLER shall
428 immediately notify BUYER in writing. If the cost of repair or restoration does not exceed 3% of the Purchase
429 Price, cost of repair or restoration will be an obligation of SELLER and closing will proceed pursuant to the
430 terms of this Agreement. If the cost of repair or restoration exceeds 3% of the Purchase Price, BUYER may
431 terminate this Agreement by giving written notice to SELLER within 10 days after BUYER's receipt of
432 written notice from SELLER of the casualty. If BUYER has not so terminated, SELLER shall have 30 days
433 from the end of said 10 day period to complete the repairs in accordance with the conditions required by
434 paragraph 3 and all applicable laws. Closing shall occur within 20 days thereafter but not sooner than the
435 date of closing as set forth in paragraph 6.

436 If BUYER has not terminated as above, and the cost of repair or restoration exceeds said 3% and SELLER
437 declines to pay the excess, then SELLER must notify BUYER in writing of same within 15 days after the
438 casualty. In this event, BUYER may either purchase the Property as is, together with any insurance
439 proceeds payable by virtue of such casualty (to be assigned by SELLER to BUYER upon closing) plus an
440 amount equal to SELLER's deductible, or BUYER may terminate this Agreement. BUYER shall have 5 days
441 after receipt of SELLER's written notice of refusal to pay the excess costs to terminate this Agreement, or
442 be deemed to have elected to proceed with this transaction.

443 **16. PERSONAL PROPERTY:** The following items, if owned by SELLER and existing on the Property on the
444 date of the initial offer, are included in the Purchase Price: range/oven, cooktop, dishwasher, disposal,
445 ceiling fans, trash compactor, audio/visual system wiring, smart outlets, thermostats, keyless entry devices,
446 solar panels, light fixtures and bulbs, smoke detector(s), bathroom mirrors, drapery hardware, all window
447 treatments, garage door opener and controls, security gate and other access devices, mailbox and mailbox
448 key, fence, plants and shrubbery as now installed on the Property, and those additional items checked
449 below (to which no value has been assigned):

450 ☑ Refrigerator(s)  ☑ Microwave Oven  ☐ Pool fence/barrier  ☑ Mounted/installed speakers
451 ☑ Washer  ☐ Window/wall a/c  ☐ Pool Sweep  ☑ Water softener/treatment system
452 ☑ Dryer  ☐ Built-in Generator  ☐ Above Ground Pool  ☐ Storm shutters and panels
453 ☑ Gas logs  ☑ Wine cooler  ☐ Storage Shed  ☐ Spa or hot tub with heater
454 ☑ Security Camera(s)
455 ☐ Other smart home devices (must specify):_____
456 _____
457 ☑ Other (specify): <u>All TV's and components, sound systems, theater systems and seating, summer</u>
458 <u>kitchen & green egg, all draperies, all appliances, central vacuum equipment, all pool equipment</u>

459 Items specifically excluded from this Agreement: _____
460 _____
461 _____

462 **17. ADDENDA/RIDERS/DISCLOSURES:**
463 If marked the following are attached hereto and made a part of this Agreement and this Agreement will not be
464 deemed accepted unless and until all marked Addenda, Riders and Disclosures have been signed/initialed, as
465 appropriate, by both BUYER and SELLER, and delivered to BUYER and SELLER or their respective Broker:

466 ☐ Condominium Rider
467 ☐ Homeowners' Association/Community Disclosure Addendum
468 ☐ Community Development District Disclosure Addendum
469 ☐ Lead-Based Paint Disclosure For Residential Sales Addendum (required for pre-1978 homes)
470 ☐ Continued Marketing Addendum
471 ☐ Coastal Construction Control Line Disclosure Addendum
472 ☐ Short Sale Addendum
473 ☐ For Your Protection: Get a Home Inspection (for FHA Financing)
474 ☐ Counter Offer Addendum (To accept a counter offer, BUYER and SELLER must sign both this Agreement
475 and the Counter Offer Addendum.)
476 ☐ Energy-Related Improvement Assessment Addendum (affects only properties that have PACE financing)
477 ☑ Other (Specify here) <u>Seller's Disclosure, Addendum "A"</u>

478 **ADDITIONAL TERMS AND CONDITIONS:** <u>See Addendum "A"</u>
479 _____
480 _____
481 _____
482 _____

dotloop signature verification: <sub>dtlp.us/nGkq-905g-HE9Z</sub>

483 _____

484 _____

485 18. **COMPLETE AGREEMENT AND MISCELLANEOUS PROVISIONS:** BUYER and SELLER acknowledge
486 receipt of a copy of this Agreement. Except for brokerage agreements, BUYER, SELLER and Broker agree
487 that the terms of this Agreement constitute the entire agreement between them and that they have not
488 received or relied on any representations by Brokers or any material regarding the Property including, but
489 not limited to, listing information, that are not expressed in this Agreement. No prior or present agreements
490 or representations will bind BUYER, SELLER or Brokers unless incorporated into this Agreement.
491 Modifications of and notices pursuant to this Agreement will not be binding unless in writing, signed, initialed
492 as appropriate and delivered by the party to be bound. This Agreement and any modifications to this
493 Agreement may be signed in counterparts and may be executed and/or transmitted by electronic media.
494 Headings are for reference only and shall not be deemed to control interpretations. If any provision of this
495 Agreement is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective.
496 Neither this Agreement nor any memorandum hereof will be recorded in any public records. For emphasis,
497 some provisions have been bolded and/or capitalized, but every provision in this Agreement is significant
498 and should be reviewed and understood. No provision should be ignored or disregarded because it is not in
499 bold or otherwise emphasized in some manner.

500 In the performance of the terms and conditions of this Agreement each party will deal fairly and in good faith
501 with the other. Written notice to or from the Broker for a party shall be deemed notice to or from that party
502 and may be transmitted by electronic media. All assignable repair and treatment contracts and warranties
503 are deemed assigned by SELLER to BUYER at closing unless otherwise stated herein. SELLER agrees to
504 sign all documents necessary to accomplish same, at BUYER's expense, if any.

505 19. **TIME IS OF THE ESSENCE IN THIS AGREEMENT.** As used in this Agreement, "days" means calendar
506 days. Any dates herein, other than the time of acceptance, which end on a Saturday, Sunday or federal
507 holiday shall extend to the next date which is not a Saturday, Sunday or federal holiday. All references to a
508 date other than the date of acceptance shall end at 9:00 p.m. Eastern Time.

509 20. **BUYER'S AND SELLER'S NOTICES:** BUYER and SELLER represent that they have not entered into any
510 other agreements with real estate brokers other than those named below with regard to the Property.
511 BUYER and SELLER give the Brokers authorization to advise surrounding neighbors who will be the new
512 owner of the Property. "Broker", as used in this Agreement, is deemed to include all of Broker's licensees
513 licensed to sell real property in the State of Florida.

514 21. **ESCROW DISCLOSURE:** BUYER and SELLER agree that Broker may place escrow funds in an interest-
515 bearing account pursuant to the rules and regulations of the Florida Real Estate Commission and retain any
516 interest earned as the cost associated with maintenance of said escrow account.

517 22. **SOCIAL SECURITY OR TAX I.D. NUMBER:** BUYER and SELLER agree to provide their respective Social
518 Security or Tax I.D. numbers to closing attorney/settlement agent upon request.

519 23. **1031 EXCHANGE:** BUYER or SELLER may elect to effect a tax-deferred exchange under Internal
520 Revenue Service Code Section 1031(which shall not delay the closing), in which event BUYER and
521 SELLER agree to sign documents required to effect the exchange, provided the non-exchanging party shall
522 not incur any costs, fees or liability as a result of or in connection with the exchange.

523 24. **PAYOFF AUTHORIZATION:** SELLER hereby authorizes the closing attorney/settlement agent to obtain
524 mortgage payoff letters (including from foreclosure attorneys) and homeowner's and condominium
525 association estoppel letters on behalf of SELLER.

526 25. **FIRPTA TAX WITHHOLDING:** If any SELLER is a "foreign person" as defined by the Foreign Investment in
527 Real Property Tax Act, the BUYER and SELLER shall comply with the Act, which may require SELLER to
528 provide additional funds at closing. **SELLER agrees to disclose to the closing attorney/settlement**
529 **agent at least 10 days before closing if any SELLER is not a U.S. citizen or resident alien.**

530 26. **TIME OF ACCEPTANCE:** IF THIS OFFER IS NOT SIGNED BY BUYER AND SELLER AND DELIVERED
531 TO BUYER AND SELLER OR THEIR RESPECTIVE BROKERS (INCLUDING ELECTRONIC MEDIA) ON
532 OR BEFORE _7_ :01 ☐ A.M. ☑ P.M. 06/05/2020 (DATE), THIS OFFER WILL BE DEEMED WITHDRAWN.
533 THE TIME FOR ACCEPTANCE OF ANY COUNTEROFFER SHALL BE _____HOURS (24
534 HOURS IF LEFT BLANK) FROM THE TIME THE COUNTEROFFER IS DELIVERED.

535 27. **DATE OF ACCEPTANCE:** The date of acceptance of this Agreement shall be the date on which this
536 Agreement, including all marked Addenda, Riders and Disclosures, is last executed by BUYER and
537 SELLER and a fully executed copy has been delivered to BUYER and SELLER or their respective Brokers.

**WIRE FRAUD ALERT.** Every day criminals are trying to steal your money by hacking email accounts of real estate agents, title companies, settlement attorneys, lenders and others, resulting in fraudulent wire instructions being used to divert funds to the account of the criminal. These emails are convincing and sophisticated, and they look like the email came from your real estate agent, title company, settlement attorney or lender. BUYER and SELLER are advised not to wire any funds without personally speaking with the intended recipient of the wire at a verified phone number that you obtained independently to confirm the routing number and the account number. BUYER and SELLER should not send personal information such as social security numbers, bank account numbers and credit card numbers except through secured email or personal delivery to the intended recipient. BUYER and SELLER agree to indemnify and hold harmless all brokers from all losses, liabilities, charges and costs they may incur due to any and all wire transfers or wire instructions relating to the transfer or issuance of funds.

After you receive a Federal Reference Number from your sending financial institution, you may want to verify as soon as possible with the intended recipient of the wire that they received your money. If you cannot verify that the wire was received by the intended recipient, immediately contact your financial institution that sent the wire.

If this Agreement is not understood, BUYER and SELLER should seek competent legal advice.

| | | | |
|---|---|---|---|
| 538 | ████████ 6/5/2020 | _____ | |
| 539 | BUYER DATE | SELLER | DATE |
| 540 | Marital Status: married | Marital Status: _____ | |
| 541 | ████████ 6/5/2020 | _____ | |
| 542 | BUYER DATE | SELLER | DATE |
| 543 | Marital Status: married | Marital Status: _____ | |
| 544 | _____ | _____ | |
| 545 | BUYER DATE | SELLER | DATE |
| 546 | Marital Status: _____ | Marital Status: _____ | |
| 547 | _____ | _____ | |
| 548 | BUYER DATE | SELLER | DATE |
| 549 | Marital Status: _____ | Marital Status: _____ | |

550 ☐ Mark if any SELLER is not a U.S. Citizen or resident alien.
551 Broker, by signature below, acknowledges receipt of $_____ ☐ cash ☐ check as the binder deposit specified
552 in paragraph 1(A) of this Agreement. It will be deposited and held in escrow pending disbursement according to
553 the terms hereof, together with any additional binder deposit(s) escrowed by the terms of this Agreement.
554
555 Company_____ By:_____ Title_____

### END OF PURCHASE AND SALE AGREEMENT

556 **Broker joins in this Agreement to evidence Broker's consent to be bound by the provisions of**
557 **paragraphs 12 and 18 above. This Agreement shall not be used to modify any multiple listing service or**
558 **other offer of compensation made by Listing Broker or SELLER to Selling Broker.**

| | |
|---|---|
| 559 Coldwell Banker Vanguard Realty | Staged to Sell Realty |
| 560 Firm Name of Selling Broker | Firm Name of Listing Broker |
| 561 BK19454 | BK3338066 |
| 562 Broker's State License ID (BK Real Estate Number) | Broker's State License ID (BK Real Estate Number) |
| 563 904-285-5000 | 904-478-1713 |
| 564 Phone for Selling Broker | Phone for Listing Broker |
| 565 240 Ponte Vedra Park Dr., Ste 201 | 7660 Philips Hwy Suite 2 |
| 566 Selling Broker Office Address | Listing Broker Office Address |
| 567 Ponte Vedra Beach, FL 32082 | Jacksonville, FL 32256 |
| 568 Selling Broker City, State, Zip Code | Listing Broker City, State, Zip Code |
| 569 By: *Kim Martin-Fisher* | By: *Kevin Grant* |
| 570 Authorized Licensee Signature | |
| 571 Kim Martin-Fisher/Jennifer Martin Faulkner | Kevin Grant |
| 572 Printed Name of Licensee | Printed Name of Licensee |
| 573 kimmartinfisher@gmail.com | kevin@stagedtoselljax.com |
| 574 Email Address | Email Address |
| 575 904-699-9993/904-524-6000 | 904-342-0248 |
| 576 Phone for Selling Licensee | Phone for Listing Licensee |
| 577 SL651300/SL3203592 | BK3338066 |
| 578 Licensee's State License ID | Licensee's State License ID |
| 579 (BK or SL Real Estate Number) | (BK or SL Real Estate Number) |

dotloop verified
06/05/20 10:21 AM EDT
G1IH-VBYS-Y1QP-AMCD

6F191CD9B0E847E...