IN THE CIRCUIT COURT FOR THE SEVENTH JUDICIAL CIRCUIT OF THE STATE OF FLORIDA, IN AND FOR ST. JOHNS COUNTY

CIVIL DIVISION

CASE NO.: CA20-0083

**DINA KLEMPF SROCHI**, as Trustee of the **LAURA JEAN KLEMPF REVOCABLE TRUST**, a Florida Trust,

       Plaintiff,

v.

**KEVIN JACQUES KLEMPF**, **FOODONICS INTERNATIONAL, INC.**, a Florida corporation, and **KEVIN JACQUES KLEMPF**, as Trustee of the **KEVIN JACQUES KLEMPF LIVING TRUST**, a Florida trust,

       Defendants.

_____/

## AMENDED COMPLAINT

     Plaintiff, Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust, a Florida trust (the "Jean Klempf Trust" or "Trust") files this Amended Complaint[1] and sues defendants Kevin Jacques Klempf, Foodonics International, Inc., a Florida corporation, and Kevin Jacques Klempf, as Trustee of the Kevin Jacques Klempf Living Trust, (collectively, the "Defendants") and in support says:

---

[1] Plaintiff files this Amended Complaint as a matter of course pursuant to Fla. R. Civ. P. 1.190, which states, "A party may amend a pleading once as a matter of course at any time before a responsive pleading…" To date, Defendants have not filed a responsive pleading.

53557696;1

**General Allegations**

1.      The Jean Klempf Trust brings this action against the Defendants relating to Kevin Jacques Klempf's fraudulent buy-out of his mother's trust's interests in what was a family-owned egg-producing business, Foodonics International, Inc., formed by Jean Klempf's late husband. Shortly after the fraudulent buy-out, Kevin Jacques Klempf and Foodonics International, Inc. sold substantially all of its egg-producing assets at a value tens of millions of dollars more than the valuation provided by Kevin Jacques Klempf and Foodonics International, Inc., which was represented as a valuation which would allow for adequate and full consideration of the buy-out of the Jean Klempf Trust's interests.  Defendants used the ultimate sales proceeds to purchase two beachfront mansions and attempt to shield them from the reach of Jean Klempf's Trust as the result of its claims.

2.      Dina Klempf Srochi ("Dina Klempf'), a resident of Georgia, is the Trustee of the Jean Klempf Trust.

3.      Foodonics International, Inc. ("Foodonics") is a Florida corporation with its principal place of business in Duval County, Florida.

4.      Kevin Jacques Klempf ("Jacques Klempf") is a resident of St. Johns County, Florida.  From 2002 to date, Jacques Klempf has been the President and Chairman of the Foodonics Board of Directors.

5.      Jacques Klempf, is the Trustee and a beneficiary of the Kevin Jacques Klempf Living Trust (the "Jacques Klempf Trust"), a Florida trust.

6.      The properties that are the subject matter of this action are located in St. Johns County, and the misconduct of the Defendants as alleged herein occurred, in part, in St. Johns County.

53557696;1

7. The amount in controversy in this action exceeds $30,000, exclusive of costs, interest and attorneys' fees.

### History of Fraudulent Transfers

8. This is an action against Foodonics, Jacques Klempf and the Jacques Klempf Trust to set aside fraudulent transfers, for injunctive relief, and for other relief under the Florida Uniform Fraudulent Transfer Act (Fla. Stat. § 726.101 et seq.).

9. In July 2008, Jacques Klempf purchased the property at 530 Ponte Vedra Boulevard, Ponte Vedra Beach, Florida (the "530 Ponte Vedra Property") using Foodonics proceeds and claimed it as his Florida homestead.

10. Jacques Klempf has alleged that he "borrowed" the Foodonics proceeds pursuant to a previously undisclosed and undocumented "loan," which he used to buy the 530 Ponte Vedra Property.

11. Subsequent to using the loan to purchase the 530 Ponte Vedra Property, Jacques Klempf committed a series of frauds.

12. On December 21, 2015, in reliance on, *inter alia*, Jacques Klempf's representations and in reliance on Jacques Klempf's duty as the President of Foodonics and as a son to provide his mother (Jean Klempf), as a minority shareholder through the Jean Klempf Trust, with full disclosure of all material facts regarding the proposed redemption transaction, Jean Klempf and the Trust entered into a Settlement and Redemption Agreement (the "Redemption Agreement"), a true and correct copy of which is attached as Exhibit B to the Amended Counterclaim (as that term is defined herein), and is incorporated by reference herein, by which all of the Foodonics stock owned by the Jean Klempf Trust would be redeemed by Foodonics for the purchase price of $9,418,500, or approximately $3.16 per share.

53557696;1

13.     To induce his mother and the Trust to agree to a redemption of his the Trust's stock in Foodonics, Jacques Klempf and Foodonics represented to Jean Klempf and her representatives in the Redemption Agreement that (i) there are no current offers pending nor ongoing discussions: (A) for the sale of all or substantially all of the assets of Foodonics; (B) for the sale by Jacques Klempf of his stock in Foodonics; or (C) to effect a merger, stock exchange, or other transaction which would have the effect of either Jacques Klempf no longer holding a majority of the outstanding shares of stock of Foodonics or Foodonics no longer owning substantially all of the assets that it currently owns (collectively referred to as a "Realization Event"); and (ii) they have not received any written offers to effect a Realization Event from December 21, 2014 to December 21, 2015.

14.     Jacques Klempf made prior consistent representations to Jean Klempf regarding his intentions regarding Foodonics, such as the following:

> **I have not had any offers to purchase the company, nor are there any offers presently in play, nor am I seeking to sell the company at this time.**
>
> **I actually enjoy the day to day and farm life that this business allows me and hopeful I have a good amount of years left to create value so that I can take care of my family in the future.**

Email from Jacques Klempf dated December 31, 2014.

15.     A closing was held on the Redemption Agreement on December 31, 2015, as a result of which all of the Foodonics stock owned by the Jean Klempf Trust was redeemed by Foodonics (the "Redemption Sale"). As a result, Jacques Klempf became the owner of 98.55% of all issued Foodonics stock.

4

16.     On April 19, 2016, less than four months after the redemption, Jacques Klempf and Foodonics entered into, as a formality, a perfunctory non-disclosure agreement with Cal-Maine concerning the acquisition of Foodonics' egg-producing assets.

17.     Less than six months later, on October 16, 2016, Cal-Maine purchased substantially all of Foodonics' egg producing assets for $71,643,000, or $10.97 per share (the "Cal-Maine Sale").

18.     By reason of the foregoing, Jacques Klempf and Foodonics accomplished the objective of his scheme – Foodonics purchased the stock of the Jean Klempf Trust at the price of $3.16 per share and then sold its principal assets less than a year later for an equivalent price of $10.97 per share. Had Jacques Klempf and Foodonics paid the Jean Klempf Trust the same price per share as Jacques Klempf received from the sale of Foodonics' assets to Cal-Maine, Jacques Klempf's mother's Trust would have received at least $32,675,330 – or at least $23,200,000 more than the Trust received from the sale of her shares to her son.

19.     After committing fraud on his mother, Jacques Klempf, according to his recent deposition testimony in the Federal Court Action (as defined below), "repaid" the undocumented loan from Foodonics with the monies he collected from the Cal-Maine Sale shortly after he completed the fraudulent redemption of the Trust's stock, all of which was concealed from Jean Klempf and her representatives.

20.     To do so, Foodonics transferred or distributed to Jacques Klempf some or all of his proportionate share of the ill-gotten gains.

21.     According to his recent deposition testimony in the Federal Court Action (as defined below), Jacques Klempf then transferred the ill-gotten gains back to Foodonics to pay off the undocumented loan that was used to purchase the 530 Ponte Vedra Property, to dispose of his

53557696;1

proceeds with the actual intent to hinder, delay or defraud his creditors, including the Jean Klempf Trust.

22.     By doing so, Jacques Klempf effectively transferred a substantial portion of his ill-gotten gains into the equity of the 530 Ponte Vedra Property:

> **Q      How were these loans repaid to the company by you?**
> **…**
> **A      How are they repaid? Well, they were certainly paid in 2016. And so -- and also I had -- I had a deduction coming out of my checks every week for years.**
> **Q      But the balance of them, whatever you were, which you can't remember, was paid off in 2016?**
> **A      Correct.**
> **Q      And where did that money come from?**
> **A      The sale.**
> **Q      The Cal-Maine sale?**
> **A      Correct.**
> **…**
> **Q      And the company made a distribution in 2016 to you?**
> **A      Correct.**
> **Q      And you used that money to pay off your loans?**
> **A      Yes. I believe that's how the accountant took care of it.**

Jacques Klempf Deposition dated January 10, 2020 at 68-70.

23.     Jacques Klempf is presently attempting to sell the 530 Ponte Vedra Property with the intent to hinder, delay or defraud his creditors. The 530 Ponte Vedra Property is currently under contract to be sold.  The 530 Ponte Vedra Property is an asset that could be used to satisfy, in part, the claims being asserted against Jacques Klempf or Foodonics in the Federal Court Action (as defined below). The further transfer of the 530 Ponte Vedra Property would constitute

6

yet another fraudulent transfer by Jacques Klempf which should be temporarily and permanently enjoined.[2]

24.     In 2016, Foodonics owned residential property having a value in excess of $5,100,000 located at 815 Ponte Vedra Boulevard, Ponte Vedra Beach, Florida (the "815 Ponte Vedra Property").  Upon information and belief, Jacques Klempf, by and through Foodonics, made substantial improvements in the 815 Ponte Vedra Property, at a cost in excess of $5 million to $10 million, potentially taking advantage of tax deductions and depreciation by having Foodonics incur the expense of said improvements.

25.     On June 23, 2017, the Jean Klempf Trust notified Foodonics and Jacques Klempf of the Trust's potential claims against them for damages in excess of $23,000,000 arising from their tortious and other misconduct in connection with Redemption Sale, though Foodonics and Jacques Klempf clearly had knowledge of their fraud much earlier by virtue of their participation in said fraud.

26.     On September 6, 2017, Foodonics launched a preemptive strike in response to the Jean Klempf Trust's claims by filing a complaint in the United States District Court for the Middle District of Florida against the Trust seeking, among other relief, a declaratory judgment regarding the alleged misconduct of Foodonics and Jacques Klempf (the "Federal Court Action").

27.     On July 1, 2019, the Jean Klempf Trust filed an amended counterclaim in the Federal Court Action (the "Amended Counterclaim"). A true and correct copy of the Amended Counterclaim, with all exhibits referenced therein, is attached hereto and incorporated by reference herein (inclusive of all exhibits) as **Exhibit A**.

---

[2] The Jean Klempf Trust has offered to allow the sale of the 530 Ponte Vedra Property to be completed, with the proceeds placed in escrow pending resolution of the Federal Court Action (as defined below), but to date, Defendants have refused.

53557696;1

28. In the Amended Counterclaim, the Jean Klempf Trust asserted causes of action for, *inter alia*, fraudulent transfers against Jacques Klempf, Foodonics, and affiliated companies owned and controlled by Jacques Klempf known as the BAM Entities. The Jean Klempf Trust also filed notices of lis pendens as to the fraudulently transferred properties subject to the Amended Counterclaim.

29. The Amended Counterclaim specifically alleged that Jacques Klempf and Foodonics were conspiring to commit another fraudulent transfer regarding the 815 Ponte Vedra Property:

> This pattern of fraudulent activity by Jacques Klempf and Foodonics is still in process. Specifically, on October 5, 2015, Jacques Klempf utilized $4,250,000 of Foodonics' cash to purchase a mansion on Ponte Vedra Beach owned by Luther Coggin (the [815 Ponte Vedra Property]). Although Foodonics still has legal title to this property. . . , Jacques Klempf presently intends to further aggrandize the property and transfer title of it to himself, for little or no consideration, and declare it as Florida homestead property. The [815 Ponte Vedra Property] is Foodonics' sole remaining substantial asset and its transfer by Foodonics to Jacques Klempf would constitute yet another fraudulent transfer which should be temporarily and permanently enjoined.

Amended Counterclaim at para. 197.

30. Because the Jean Klempf Trust filed its Amended Counterclaim in the Federal Court Action before leave of court had been granted, the Federal Court entered an order (i) striking the Amended Counterclaim and the related lis pendens without prejudice and (ii) authorizing the Trust to file a motion to amend the counterclaim by July 12, 2019.

31. Taking advantage of the Trust's procedural error in filing its Amended Complaint without prior leave of court, on July 10, 2019, Jacques Klempf furtively and fraudulently caused the transfer of the 815 Ponte Vedra Property from Foodonics to the Jacques Klempf Trust by Special Warranty Deed. A copy of the deed dated July 10, 2019 is attached hereto and incorporated by reference herein as **Exhibit B**. Jacques Klempf now purportedly claims the 815

53557696;1

Ponte Vedra Property as his homestead property and asserts that this Foodonics asset is now beyond the reach of its creditors.

32.   The transfer of the 815 Ponte Vedra Property was made with the actual intent to hinder, delay or defraud the Jean Klempf Trust.

33.   Following the July 10, 2019 fraudulent transfer, Jacques Klempf vacated his prior homestead residence—the 530 Ponte Vedra Property—and physically moved into the 815 Ponte Vedra Property. In continuation of his actions to hinder, delay or defraud his creditors, however, Jacques Klempf has taken actions to sell the 530 Ponte Vedra Property and dispose of its proceeds with the actual intent to further hinder, delay or defraud his creditors, including the Jean Klempf Trust.

34.   On July 12, 2019, without knowledge of Foodonics' fraudulent transfer to Jacques Klempf of the 815 Ponte Vedra Property, the Jean Klempf Trust filed its motion seeking leave to file its Amended Counterclaim, which was granted on August 12, 2019. On that same date, the Trust re-filed its Amended Counterclaim and re-recorded its notices of lis pendens on the 815 Ponte Vedra Property.

35.   All conditions precedent to the bringing of this action have occurred, been satisfied, or been waived.

**Count One: Fraudulent Transfers**

36.   Plaintiff adopts and incorporates the allegations contained in paragraphs 1 through 35 above as if fully set forth herein.

37.   This is an action against Foodonics, Jacques Klempf, and the Jacques Klempf Trust to set aside fraudulent transfers, for injunctive relief, and for other relief under the Florida Uniform Fraudulent Transfer Act (Fla. Stat. § 726.101 et seq.).

53557696;1

38.     As set forth above, and as evidenced by the allegations in the Amended Counterclaim, which are incorporated by reference, the Trust is a creditor of Foodonics and Jacques Klempf pursuant to Section 726.102(5), Florida Statutes.[3 and 4]

39.     Foodonics and Jacques Klempf committed multiple fraudulent transfers of funds that could have been applied to payment to the Trust if it obtained a judgment on its claims against them.

40.     Foodonics and Jacques Klempf made these transfers with the intent to commit fraud against the Trust.

41.     Section 726.105(2), Florida Statutes, identifies a non-exclusive list of badges of fraud the Court may look to as evidence of a defendant's actual fraudulent intent. Upon information and belief, multiple badges of fraud are present in the 815 Ponte Vedra Property transactions, including but not limited to:

(i)     before the transfer of the 815 Ponte Vedra Property was made, Foodonics and Jacques Klempf were in litigation with the Jean Klempf Trust;

(ii)    before the transfer was made, Foodonics and Jacques Klempf knew of the Jean Klempf Trust's intent to enjoin, temporarily permanently, the transfer of the 815 Ponte Vedra Property as set forth in the Trust's Amended Counterclaim;

(iii)   Foodonics made the transfer to an insider and received no or insufficient consideration in exchange for the transfer;

---

[3] The Amended Counterclaim filed on August 12, 2019, was substantially identical to the counterclaim filed on July 1, 2019, except it included one additional affirmative defense.

[4] On October 10, 2019, the Federal Court entered an order approving a stipulation among the parties by which the BAM Entities consented to joint and several liability as to the judgment, if any, obtained by the Jean Klempf Trust against Foodonics in the Federal Court Action. As a result of this stipulation, the BAM Entities were dropped as parties, without prejudice, from the Amended Counterclaim.

53557696;1

(iv)    the transfer was made to an entity over which Jacques Klempf retained control—the Jacques Klempf Trust;

(v)    Jacques Klempf continued to retain the benefits, possession, and control of the 815 Ponte Vedra Property after the transfer;

(vi)    the transfer resulted in the disposition of substantially all of Foodonics' assets;

(vii)    before the transfer was made, the 815 Ponte Vedra Property was not subject to the claim of any Florida homestead protection, but Jacques Klempf is now attempting to place the property beyond the reach of his creditors by declaring the property – with its millions of dollars' worth of improvements – as his homestead; and

(viii)    this transfer is part of a pattern of transfers by which Foodonics and Jacques Klempf are attempting to put substantially all of their assets out of the reach of their creditors.

42.    Upon information and belief, multiple badges of fraud are present in the 530 Ponte Vedra Property transactions, including but not limited to:

(i)    Foodonics made the transfer of ill-gotten funds to an insider, Jacques Klempf;

(ii)    Jacques Klempf utilized the transfer of ill-gotten funds to pay off the 530 Ponte Vedra Property that he previously had declared a homestead, retaining possession or control of the property transferred after the transfer;

53557696;1

(iii)    the transfer was made by an entity over which Jacques Klempf retained control—Foodonics;

(iv)    Jacques Klempf transferred the funds into his homestead to conceal his ill-gotten gains;

(v)    Jacques Klempf continued to retain the benefits, possession, and control of the 530 Ponte Vedra Property after the transfer;

(vi)    Jacques Klempf is currently trying to sell the 530 Ponte Vedra Property; and

(vii)    this transfer is part of a pattern of transfers by which Foodonics and Jacques Klempf are attempting to put substantially all of their assets out of the reach of their creditors.

43.    By reason of the foregoing, (i) the transfer of the 815 Ponte Vedra Property and (ii) the transfer of the funds to the equity in the 530 Ponte Vedra Property were in violation of Section 726.105(1)(a), Florida Statutes.

44.    Alternatively, the transfer of the 815 Ponte Vedra Property was made in violation of Sections 726.105(1)(b) and 726.106(1) and (2), Florida Statutes, because, upon information and belief:

(a)    the subject property was transferred for less than its reasonably equivalent value at a time when Foodonics was insolvent or became insolvent as a result of the transfer, and Foodonics knew, or should have known, that (i) it had debts beyond its ability to pay as they became due, or (ii) its assets were unreasonably small in relation to the business in which it was engaged;

12

(b)     the subject property was transferred for less than its reasonably equivalent value at a time when Foodonics was insolvent or became insolvent as a result of the transfer; and

(c)     the subject property was transferred to an insider for an antecedent debt at a time when Foodonics was insolvent, which Jacques Klempf and the Jacques Klempf Trust knew or had reasonable cause to know.

45.     This pattern of fraudulent activity by Jacques Klempf is still in process. As noted above, Jacques Klempf is presently attempting to dispose of his prior residence—the 530 Ponte Vedra Property—and its proceeds with the intent to hinder, delay or defraud his creditors. The 530 Ponte Vedra Property is also an asset that could be used to satisfy, in part, the claims being asserted against Jacques Klempf or Foodonics in the Federal Court Action. The further transfer of the 530 Ponte Vedra Property would constitute yet another fraudulent transfer by Jacques Klempf which should be temporarily and permanently enjoined.

46.     Section 726.108(1), Florida Statutes, authorizes this Court to grant a broad spectrum of legal or equitable relief as the "circumstances may require":

(1)     In an action for relief against a transfer or obligation under ss. 726.101-726.112, a creditor, subject to the limitations in s. 726.109 may obtain:

(a)     Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(b)     An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law;

(c)     Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

1.     An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

2.     Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

13

3.      Any other relief the circumstances may require.

Fla. Stat. § 726.108(1).

WHEREFORE, the Jean Klempf Trust demands judgment against Foodonics, Jacques Klempf, and the Jacques Klempf Trust, jointly and severally, which:

(i)      declares that the transfer of the 815 Ponte Vedra Property was actually and constructively fraudulent;

(ii)     declares that the transfer of the funds relating to the 530 Ponte Vedra Property was actually and constructively fraudulent;

(iii)    sets aside the transfer of the 815 Ponte Vedra Property as a voidable transfer;

(iv)     sets aside the transfer of funds relating to the 530 Ponte Vedra Property as a voidable transfer;

(v)      grants a constructive trust or equitable lien against the 815 Ponte Vedra Property and the 530 Ponte Vedra Property and any proceeds from their sale;

(vi)     enjoins the Defendants from further transferring or encumbering the 815 Ponte Vedra Property or the 530 Ponte Vedra Property pending further Order of this Court;

(vii)    grants an attachment or a levy of execution on the 815 Ponte Vedra Property and the 530 Ponte Vedra Property to satisfy the claim of the Jean Klempf Trust, in whole or in part;

(viii)   grants a money judgment, jointly and severally, against Foodonics, Jacques Klempf, and the Jacques Klempf Trust if, for any reason, they fail

14

to turn over each of the subject properties or the proceeds therefrom in

satisfaction of the claims of the Jean Klempf Trust; and

(ix)    such other and further relief as is just and proper.

**Count Two: Fraudulent Asset Conversion**
(*815 Ponte Vedra Property*)

47.    Plaintiff adopts and incorporates the allegations contained in paragraphs 1 through 8, 12 through 18, and 24 through 35 above as if fully set forth herein.

48.    This is an action against Foodonics, Jacques Klempf, and the Jacques Klempf Trust for fraudulent asset conversion under the Florida Uniform Fraudulent Transfer Act (Fla. Stat. § 222.30 et seq.).

49.    Knowing that he recently defrauded his mother and the Trust, Jacques Klempf was aware his mother and the Trust had a claim to the funds he had obtained through his fraud.

50.    Jacques Klempf took action to hide these funds by converting the non-exempt ill-gotten gains into an exempt homestead.

51.    Jacques Klempf utilized the ill-gotten gains from the fraud on his mother's Trust and caused Foodonics to purchase a mansion on Ponte Vedra Beach.

52.    Jacques Klempf then utilized millions more of the ill-gotten gains to build, upgrade, repair and/or add-on to the 815 Ponte Vedra Property.

53.    In the time period between an improperly filed Amended Counterclaim and lis pendens in the Federal Court Case being dismissed without prejudice to refile, and the refiling of the Amended Counterclaim and lis pendens, Jacques Klempf moved into the 815 Ponte Vedra Property and transferred title to himself.

54.    Jacques Klempf then declared the 815 Ponte Vedra Property his homestead, effectively converting millions of dollars non-exempt ill-gotten gains into exempt assets.

15

55.     Jacques Klempf made these conversions with the intent to hinder, delay, or defraud his mother and the Trust.

56.     Jacques Klempf was aware the Federal Court Action was ongoing, but he took the opportunity to convert more of his ill-gotten gains into exempt assets, to hinder, delay, or defraud his mother and the Trust.

WHEREFORE, the Jean Klempf Trust demands judgment against Foodonics, Jacques Klempf, and the Jacques Klempf Trust, jointly and severally, which:

     (i)     grants an injunction against Jacques Klempf for further conversion related to the 815 Ponte Vedra Property;

     (ii)    grants a constructive trust or equitable lien against the 815 Ponte Vedra Property;

     (iii)   grants a money judgment, jointly and severally, against Foodonics, Jacques Klempf, and the Jacques Klempf Trust if, for any reason, they fail to turn over each of the subject properties or the proceeds therefrom in satisfaction of the claims of the Jean Klempf Trust; and

     (iv)    such other and further relief as is just and proper.

### Count Three: Fraudulent Asset Conversion
*(530 Ponte Vedra Property)*

57.     Plaintiff adopts and incorporates the allegations contained in paragraphs 1 through 23, 33, and 35 above as if fully set forth herein.

58.     This is an action against Foodonics, Jacques Klempf, and the Jacques Klempf Trust for fraudulent asset conversion under the Florida Uniform Fraudulent Transfer Act (Fla. Stat. § 222.30 et seq.).

53557696;1

59.     Knowing that he recently defrauded his mother and the Trust, Jacques Klempf was aware his mother and the Trust had a claim to the funds he had obtained through his fraud.

60.     Jacques Klempf took action to hide these funds by converting the non-exempt ill-gotten gains into an exempt homestead.

61.     According to his recent deposition testimony in the Federal Court Action, Jacques Klempf "repaid" the undocumented loan from Foodonics with the monies he collected from the Cal-Maine Sale shortly after he completed the fraudulent redemption of the Jean Klempf Trust's stock, which he concealed from his mother and her representatives.

62.     To do so, Foodonics transferred or distributed to Jacques Klempf some or all of his proportionate share of the ill-gotten gains.

63.     According to his recent deposition testimony in the Federal Court Action, Jacques Klempf then transferred the ill-gotten gains back to Foodonics to pay off the undocumented loan that was used to purchase the 530 Ponte Vedra Property.

64.     By doing so, Jacques Klempf effectively transferred a substantial portion of his ill-gotten gains into the equity of the 530 Ponte Vedra Property.

65.     Jacques Klempf made these conversions with the intent to hinder, delay, or defraud his mother and the Trust.

WHEREFORE, the Jean Klempf Trust demands judgment against Foodonics, Jacques Klempf and the Jacques Klempf Trust, jointly and severally, which:

> (i)     grants an injunction against Jacques Klempf for further conversion related to the 530 Ponte Vedra Property;
>
> (ii)    grants a constructive trust or equitable lien against the 530 Ponte Vedra Property and any proceeds from the sale of the 530 Ponte Vedra Property;

17

(iii)     grants a money judgment, jointly and severally, against Foodonics, Jacques Klempf, and the Jacques Klempf Trust if, for any reason, they fail to turn over each of the subject properties or the proceeds therefrom in satisfaction of the claims of the Jean Klempf Trust; and

(iv)     such other and further relief as is just and proper.

### Count Four: Civil Conspiracy

66.     Plaintiff adopts and incorporates the allegations contained in paragraphs 1 through 35 above as if fully set forth herein.

67.     This is an action against Jacques Klempf, Foodonics, and the Jacques Klempf Trust for civil conspiracy and for damages that exceed $30,000 exclusive of costs, interest, and attorneys' fees.

68.     After the parties became involved in litigating the Federal Court Action, Jacques Klempf acted in concert with Foodonics and the Jacques Klempf Trust—entities over which Jacques Klempf exercised control—to effect the fraudulent transfer of the 815 Ponte Vedra Property from Foodonics to the Jacques Klempf Trust.

69.     On July 10, 2019, as part of this conspiracy, Jacques Klempf caused Foodonics to execute and deliver a special warranty deed transferring the 815 Ponte Vedra Property to the Jacques Klempf Trust.

70.     On the date of transfer, the 815 Ponte Vedra Property had a value in excess of $5,100,000, plus the $5 million to $10 million in improvements made.

71.     As a result of the conspiracy and the Defendants' overt acts in furtherance of the conspiracy, the Jean Klempf Trust has suffered damages well in excess of $10,000,000.

72.     In furtherance of this conspiracy, Jacques Klempf is presently attempting to dispose of his prior residence—the 530 Ponte Vedra Property—and its proceeds with the intent

53557696;1

to hinder, delay or defraud his creditors. The transfer of the 530 Ponte Vedra Property would constitute yet another fraudulent transfer by the Defendants and result in additional damages.[5]

WHEREFORE, the Jean Klempf Trust demands judgment (i) against each of the Defendants, jointly and severally, in excess of $10,000,000, together with interest and costs, and (ii) for such other relief the Court deems to be just and proper.

Dated: June 17, 2020          AKERMAN LLP

By: */s/ Christian P. George*
    Christian P. George
    Florida Bar No.: 41055
    Primary Email: christian.george@akerman.com
    Secondary Email: susan.scott@akerman.com
    Secondary Email: jennifer.meehan@akerman.com
    Aleksas A. Barauskas
    Florida Bar No.: 68175
    Secondary Email: susan.scott@akerman.com
    Secondary Email: jessie.higginbotham@akerman.com
    William C. Handle
    Florida Bar No. 1002425
    Primary Email: william.handle@akerman.com
    Secondary Email: matthew.drawdy@akerman.com
    Secondary Email: jessie.higginbotham@akerman.com
    50 North Laura Street, Suite 3100
    Jacksonville, Florida  32202
    Telephone:  (904) 798-3700
    Facsimile:  (904) 798-3730

*Attorneys for Plaintiff, Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust, a Florida Trust*

---

[5] As set forth above, the Jean Klempf is willing to allow the sale of the 530 Ponte Vedra Property to be completed, with the sales proceeds held in escrow pending completion of the Federal Action.

53557696;1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by

Florida e-Portal and by electronic mail this 17th day of June, 2020, to:

James H. Post, Esq.
Smith Hulsey & Busey
One Independent Drive, Suite 3300
Jacksonville, Florida 32202
jpost@smithhulsey.corn
khettinger@smithhulsey.com
*Attorneys for Plaintiff*

Daniel K. Bean, Esq.
Andrew J. Steif, Esq.
ABEL BEAN LAW P.A.
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202
dbean@abelbeanlaw.com
asteif@abelbeanlaw.com
*Attorneys for Defendants, Foodonics*
*International, Inc. and Kevin Jacques*
*Klempf, individually and as Trustee of the*
*Kevin Jacques Klempf Living Trust*

*/s/ Christian P. George*
Attorney

53557696;1