IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
IN AND FOR ST. JOHNS COUNTY, FLORIDA

**DINA KLEMPF SROCHI**, as Trustee of the
**LAURA JEAN KLEMPF REVOCABLE
TRUST**, a Florida Trust,

      Plaintiff,

v.

Case No.: CA20-0083

**KEVIN JACQUES KLEMPF**, **FOODONICS
INTERNATIONAL, INC.**, a Florida corporation,
and **KEVIN JACQUES KLEMPF**, as Trustee of
the **KEVIN JACQUES KLEMPF LIVING
TRUST**, a Florida trust,

      Defendants.

_____/

## **DEFENDANTS' MOTION TO DISQUALIFY**

Defendants, Foodonics International, Inc. ("Foodonics") and Kevin Jacques Klempf, individually and as Trustee of the Kevin Jacques Klempf Living Trust ("Jacques") (collectively, the "Defendants"), pursuant to the Rules Regulating The Florida Bar, respectfully request the Court enter an Order disqualifying the Akerman LLP law firm ("Akerman") from representing Plaintiff Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust (the "Trust").

Briefly summarized and for the reasons discussed in more detail below, Akerman should be disqualified from representing the Trust because Akerman previously possessed an attorney-client relationship with Foodonics International, Inc. ("Foodonics") and Jacques, representing both in protracted negotiations which culminated in the execution of the Foodonics International,

1

Inc. Shareholder Agreement ("2006 Foodonics Agreement").[1] Akerman's over four (4) year representation of Foodonics and Jacques from 2002-06 included much more than just negotiating the 2006 Foodonics Agreement. See Affidavit of Kevin Jacques Klempf (attached as **Exhibit A**) at ¶ 4. It included general corporate matters, transaction matters, litigation and other private matters as well. Id. Akerman's previous representation is the same as, or substantially related to, the matter now in controversy in both this state court lawsuit as well as the earlier filed federal lawsuit. Specifically, the 2006 Foodonics Agreement is a primary point of attack in the Trust's Amended Counterclaim in the federal court proceeding, Foodonics International, Inc. v. Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust, Case No. 3:17-cv-1054-J-32-JRK, and has been a major focus of the Trust's during written discovery and in multiple depositions. The 2006 Foodonics Agreement and the negotiations surrounding it is a critical underpinning of Foodonics and Jacques' defense of the Trust's claims. As this state court proceeding relies upon the federal court proceeding, Akerman should be disqualified from serving as counsel for the Plaintiff in the state court proceeding because it necessarily would be disqualified from serving as counsel for the Plaintiff in the federal lawsuit.[2]

I. **Procedural & Factual Background**

On January 23, 2020, the Trust, represented at that time solely by the Smith Hulsey & Busey law firm ("Smith Hulsey"), filed the above captioned state court Complaint against Foodonics and Jacques Klempf, individually and as Trustee of the Kevin Jacques Klempf Living

---

[1] During the negotiations of the 2006 Shareholder Agreement, Akerman also represented Jacques in his capacity as Trustee for: (1) the Julianne M. Klempf Irrevocable Trust; (2) the Alexandria R. Klempf Irrevocable Trust; (3) the Heather J. Klempf Irrevocable Trust; and (4) the Family Trust under the Edward Klempf Revocable Trust Agreement.

[2] Notably Akerman, as of the date of this filing, has not filed a similar Notice of Appearance on behalf of the Trust in the aforementioned federal lawsuit.

Trust. The heart of this state court Complaint is the same "fraudulent transfer" cause of action that was previously pled by Smith Hulsey in Count XIV of the federal court Amended Counterclaim. As with Count XIV of the federal court Amended Counterclaim, the original state court Complaint seeks to set aside the alleged fraudulent transfer of two (2) properties and primarily seeks monetary damages to satisfy the claims asserted by the Trust.

The large majority of the factual allegations in the first state court Complaint were procedural events from the federal lawsuit, including full paragraph citations to references in the Amended Counterclaim. In fact, Judge Corrigan, during a recent hearing in the federal court case, questioned why the Trust would file an "unnecessary and duplicative" action in state court, when the federal court is more than capable of addressing the matters addressed in this lawsuit and is very familiar with the complex procedural and factual history of the issues between the parties. See Comp. Ex. A, May 11, 2020 Hearing Transcript Excerpts, at 37:21 – 38:3 attached to Defendants' Motion to Dissolve Lis Pendens.[3]

Specifically, in its Amended Counterclaim, the Trust alleges that Jacques "began in or before 2006 to embark on a systematic plan to acquire all of Foodonics stock from his siblings and his mother at less than fair market value for his personal benefit." See Amended Counterclaim at ¶ 19.

The Amended Counterclaim continues to attack the 2006 Shareholder Agreement that Akerman negotiated[4] on behalf of Foodonics and Jacques as follows:

> 20. Through a series of maneuvers culminating in 2006, Jacques Klempf took advantage of his position at the Company to squeeze out his sister and

---

[3] Defendants' Motion to Dissolve Lis Pendens, and its detailed factual history, is expressly incorporated herein.

[4] Make no mistake, all the parties to the 2006 Shareholder Agreement were competently represented by counsel.

brother, Dina Klempf Srochi and Marc Klempf, as minority shareholders of the Company. Among other tactics used by Jacques Klempf, he purposely withheld distributions to shareholders (other than each year's allocable tax liability) and thereby precluded his siblings from realizing any return on their stock ownership. In the meantime, Jacques Klempf used Company assets to acquire real and personal property for his personal benefit and extravagant lifestyle, including oceanfront homes and restaurants.

21. As a result, in 2006 Jacques Klempf used his leverage to impose an agreement on Marc Klempf and Dina Klempf Srochi by which they sold their shares of Foodonics stock at a substantial discount to Jacques Klempf (the "2006 Shareholders Agreement).

22. In addition, Jacques Klempf strategically used the 2006 Shareholders Agreement to obtain from his mother, Jean Klempf, (i) a restriction not to sell her shares of Foodonics stock during her lifetime and (ii) an agreement by which, on her death, her estate was obligated to sell the shares of her Foodonics stock back to the Company or to Jacques Klempf, as a surviving shareholder, at a price computed by a formula, with the purchase price to be paid over an eight-year period. This "formula" provided for a 65% discount to the value of the Jacques Klempf shares. This extraordinarily favorable discounted redemption price was designed to inure to the personal benefit of Jacques Klempf.

23. As a result of the 2006 Shareholders Agreement, Jacques Klempf completed the maneuvers necessary to make himself the majority owner of Foodonics' stock (53.6%) leaving the Jean Klempf Trust as a minority shareholder (45.6%) . . . .[5]

See Id. at ¶¶ 20-23.

On May 14, 2020, Defendants' filed their Motion to Dissolve Lis Pendens in state court after Judge Corrigan deferred to this Court the issue of dissolving the lis pendens recorded by the Plaintiffs.

---

[5] It should go without stating that Defendants deny the allegations contained in ¶¶ 19-23 of the Amended Counterclaim. The 2006 Shareholder Agreement contained, among other items, a negotiated "Determined Price of Shares" which provided a formula to determine the price per share. See Exhibit B to the 2006 Shareholder Agreement. Moreover, Section 5.2 of the 2006 Shareholder Agreement provided that in the event of payment for a decedent's offered shares, a down payment equal to ten percent (10%) of the purchase price was to be paid at the time of purchase and the remaining balance was to be paid in eight (8) annual installments, together with interest. The 2015 Redemption and Settlement Agreement resulted in Jacques paying both more than the agreed upon formula and much sooner than required.

On June 9, 2020, Plaintiff's counsel, Smith Hulsey, filed in federal court its Motion to Withdraw as Counsel for Plaintiff. That Motion in federal court remains pending.

Two (2) days later, on June 11, 2020, Plaintiff's counsel, Smith Hulsey, filed in this Court its Motion to Withdraw as Counsel for Plaintiff and to Continue the June 19 Hearing. Four (4) days later, on June 15, 2020, this Court signed an Order denying Plaintiff's Motion to Continue the June 19, 2020 Hearing and stated that Smith Hulsey's Motion to Withdraw as Counsel remained pending.

On June 15, 2020, Akerman filed its Notice of Appearance and Designation of E-Mail Addresses in this Court.

On June 17, 2020, Akerman, having the benefit of Defendants' previously filed Motions to Dismiss and Dissolve Lis Pendens, filed Plaintiff's Amended Complaint in this Court. The Amended Complaint is a late-filed effort to re-state the exact same claims in a misleading way so as to avoid the dissolution of the lis pendens. But in so doing, the Trust has made even more clear that this action and the federal action are inextricably intertwined. In fact, essentially all of the allegations in the new Complaint rely upon a fundamental (and flawed) assumption that the Trust has somehow established its claims and allegations in the federal action, a case in which the 2006 Foodonics Agreement is perhaps the most significant defense issue.

This Motion now follows.

## II. Legal Analysis

Pursuant to Rule 4-1.9, Rules Regulating The Florida Bar, Conflict of Interest; Former Client, "[a] lawyer who has formerly represented a client in a matter must not afterwards:

> (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent . . . .

See R. Regulating Fla. Bar 4-1.9. Furthermore, found within the Comment section of Rule 4-1.9, is the following explanation: "Matters are 'substantially related' for purposes of this rule if they involve the same transaction or legal dispute, **or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client**.

It is clear that an attorney-client relationship existed between Akerman and current Defendants Foodonics & Jacques. As a result of that attorney-client relationship, Akerman was privy to all the sensitive confidential information that led to the negotiation and ultimate execution of the 2006 Shareholders Agreement. See **Exhibit A** at ¶¶ 3-4. Moreover, Foodonics' and Jacques' role in the 2006 Shareholder Agreement is under substantial attack by the Trust in both this state court lawsuit as well as the federal court litigation. Id. It defies logic that Akerman should now be permitted to represent the Trust and attack the legal advice Akerman provided to Foodonics and Jacques regarding the 2006 Shareholder Agreement.

Attorneys, and their law firms, owe confidentiality obligations to former clients. In order to ensure the fair administration of justice, any information acquired by an attorney in the course of representing a client may not subsequently be used by the attorney, or the firm, to the disadvantage of the former client without that former's client's consent. See R. Regulating Fla. Bar 4-1.9. A conflict of interest that applies to an attorney associated with a law firm is to be imputed to other partners and associates working in that firm.

Rule 4-1.10(c), Rules Regulating The Florida Bar, Imputation of Conflicts of Interest; General Rule, states in part as follows:

> **(c) Representing Interests Adverse to Clients of Formerly Associated Lawyer.**
>
> When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially

adverse to those of a client represented by the formerly associated lawyer **unless**:

> (1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>
> (2) Any lawyer remaining in the firm has information protected by rules 4-1.6[6] and 4-1.9(b) and (c) that is material to the matter.

See R. Regulating Fla. Bar 4-1.10(c) (emphasis added).

Sub-section (1) is satisfied for the reasons previously discussed. Akerman represented Defendants Foodonics and Jacques in the drafting and negotiation of the 2006 Shareholder Agreement. See **Exhibit A** at ¶3-4. The 2006 Shareholder Agreement is expressly described in the pending federal court Amended Counterclaim as an agreement that Jacques, with his Akerman attorneys, allegedly "used his leverage to impose upon" his siblings to force them to sell their shares in Foodonics at a substantial discount. This state court action depends upon the federal court action.

Next, Akerman also has information regarding Foodonics, Jacques, and the 2006 Shareholder Agreement, among other items, which is protected by Rules 4-1.6 and 4-1.9(b) & (c), and is material to this matter. Again the Comment section is instructive for circumstances when a law firm attempts to undertake representation adverse to a former client. With respect to confidentiality, "[a] lawyer may have general access to files of all clients of a law firm . . . it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients." See Comment to Rule Regulating The Florida Bar 4-1.10. The Comment continues that: [a]pplication of subdivisions (b) and (c) depends on a situation's particular facts. In any inquiry, the burden of proof should rest upon the firm whose disqualification is sought."

---

[6] Rule 4-1.6, Rules Regulating The Florida Bar, Confidentiality of Information.

The Florida Supreme Court decision in State Farm Mut. Auto. Ins. Co. v. K.A.W., 575 So.2d 630 (Fla. 1991) is also instructive. The Florida Supreme Court, in reversing the trial court, ordered the disqualification of the law firm where a former lawyer of the plaintiff's firm was subsequently retained by an added defendant after the second amended complaint was filed. See K.A.W., 575 at 631. The Florida Supreme Court recited Rule 4-1.9 and noted the requirement of maintaining client confidences is twofold. First it advances the interests of the client by encouraging the free-flow of information and development of trust between lawyer and client. Id. at 632. Secondly, the Florida Supreme Court noted that our "legal system cannot function fairly or effectively if an attorney has an informational advantage in the form of confidences gained during a former representation of his client's current opponent." Id.

The Florida Supreme Court continued its analysis by addressing the appropriate standard to apply in order to determine whether the law firm should be disqualified. The Florida Supreme Court stated that a party "seeking to disqualify opposing counsel was required to show that (1) an attorney-client relationship existed, **thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship,** and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client." Id. at 633 (emphasis added).

Again, the attorney-client relationship between Akerman and Foodonics and Jacques clearly existed. Secondly, the matter – the 2006 Shareholder Agreement – is the same matter now for Akerman as it was previously.

## III. Conclusion

For the reasons stated above, Defendants Foodonics and Kevin Jacques Klempf, individually and as Trustee of the Kevin Jacques Klempf Living Trust respectfully request the

8

Court enter an Order disqualifying the Akerman LLP law firm from representing the Plaintiff Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable Trust.

Respectfully Submitted,

**ABEL BEAN LAW P.A.**

By: /s/ Daniel K. Bean
Daniel K. Bean, Esq.
Florida Bar No. 15539
Andrew J. Steif, Esq.
Florida Bar No. 0042475
50 North Laura Street, Suite 2500
Jacksonville, Florida 32202
Telephone: (904) 516-5486
*dbean@abelbeanlaw.com*
*asteif@abelbeanlaw.com*
***Attorneys for Defendants,***
***Foodonics International, Inc. and Kevin Jacques Klempf, individually and as Trustee of the Kevin Jacques Klempf Living Trust***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 18, 2020, the foregoing was filed with the Clerk of Court by using the electronic filing system, which will serve via e-mail this filing to the attorneys of record named below.

| | |
|---|---|
| James H. Post, Esq.<br>Florida Bar No. 175460<br>**Smith Hulsey & Busey**<br>One Independent Drive, Suite 3300<br>Jacksonville, Florida 32202<br>Telephone: (904) 359-7700<br>Facsimile:  (904) 359-7708<br>*jpost@smithhulsey.com*<br>*khettinger@smithhulsey.com* | Christian P. George<br>Florida Bar No.: 41055<br>Aleksas A. Barauskas<br>Florida Bar No.: 68175<br>William C. Handle<br>Florida Bar No.: 1002425<br>**Akerman LLP**<br>50 N. Laura Street, Suite 3100<br>Jacksonville, Florida 32202<br>Telephone: 904.798.3700<br>Facsimile: 904.798.3730<br>*Christian.george@akerman.com*<br>*Aleksas.barauskas@akerman.com*<br>*William.handle@akerman.com*<br>*Susan.scott@akerman.com* |

*Attorneys for Plaintiff,*
*Dina Klempf Srochi, as Trustee of the*
*Laura Jean Klempf Revocable Trust*

# EXHIBIT A

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
IN AND FOR ST. JOHNS COUNTY, FLORIDA

**DINA KLEMPF SROCHI**, as Trustee of the
**LAURA JEAN KLEMPF REVOCABLE
TRUST**, a Florida Trust,

    Plaintiff,

v.                                          Case No.: CA20-0083

**KEVIN JACQUES KLEMPF**, **FOODONICS
INTERNATIONAL, INC.**, a Florida corporation,
and **KEVIN JACQUES KLEMPF**, as Trustee of
the **KEVIN JACQUES KLEMPF LIVING
TRUST**, a Florida trust,

    Defendants.
_____/

## **AFFIDAVIT OF KEVIN JACQUES KLEMPF**

STATE OF FLORIDA

COUNTY OF DUVAL

    Before me, the undersigned notary, on this day, personally appeared Kevin Jacques Klempf, who, being first duly sworn, deposes and says:

    1. My name is Kevin Jacques Klempf. I am over eighteen (18) years of age and otherwise competent to testify and make this Affidavit based on my personal knowledge.

    2. I am the President of Defendant, Foodonics International, Inc. ("Foodonics"), a Florida corporation. I am also the Trustee of the Kevin Jacques Klempf Living Trust ("Klempf Trust"). As such, I am fully authorized by Foodonics and the Klempf Trust to make the statements contained herein.

    3. On or about September 15, 2006, Foodonics entered into a Shareholders Agreement with Plaintiff Dina Klempf Srochi, as Trustee of the Laura Jean Klempf Revocable

1

Trust dated April 1, 1992, among others. The Shareholders Agreement resolved issues in dispute regarding the transferability of Foodonics shares and was the culmination of many months of protracted negotiations during which Foodonics and myself were represented by the law firm of Akerman LLP.

4. In the course and scope of Akerman LLP's representation of Foodonics and myself -- this representation lasting in excess of four (4) years -- the law firm was privy to material and confidential information that went well-beyond the Shareholder Agreement and included general corporate matters, transaction issues, litigation strategy, and private concerns.

5. The Shareholders Agreement that Akerman LLP assisted Foodonics and myself in negotiating and drafting is now squarely at issue in both <u>Foodonics International, Inc. v. Dina Klempf Srochi</u>, No. 3:17-cv-1054-J-32-JRK (M.D. Fla.) and <u>Dina Klempf Srochi v. Foodonics International, Inc., *et al.*</u>, No. CA20-0083 (Fla. 7th Cir. Ct.).

6. Plaintiff Dina Klempf Srochi, by and through her attorneys at Akerman LLP, is currently attacking the Shareholder Agreement as an instrument allegedly borne out of calculated maneuvers, improper leverage, and manipulation in an attempt to "squeeze out" my siblings, who were then minority shareholders of Foodonics.

7. The Shareholder Agreement constitutes work that the law firm of Akerman LLP itself previously performed in connection with its representation of Foodonics and myself and necessarily required communications with me as well as attorneys and consultants for my mother and siblings.

8. The issues involved in the current federal and state court litigation are substantially related to those implicated in the Shareholder Agreement and other matters because they concern the same transactions or legal disputes Akerman LLP previously assisted Foodonics

and myself in resolving over the course of several years.

9. The interests of Plaintiff Dina Klempf Srochi, now represented by Akerman LLP, are materially adverse to the interests of Foodonics and myself because she is a party opponent in both federal and state litigation involving, at least in part, the Shareholder Agreement that Akerman LLP prepared while representing Foodonics and myself.

10. I consider Akerman LLP's representation of Plaintiff Dina Klempf Srochi an act of disloyalty, as I considered the law firm of Akerman LLP to be one (1) entity and assumed the confidences that I shared with any attorneys at the law firm would be equally protected by all other attorneys at the law firm. As a former client of Akerman LLP, this has caused me to feel extremely anxious.

11. No representative of Akerman LLP has reasonably assured me that the principles of loyalty and confidence in connection with the law firm's prior representation of Foodonics and myself would not be compromised.

12. Upon information and belief, the law firm of Akerman LLP retained and is still in possession of information related to its prior representation of Foodonics and myself, which is necessarily protected by the attorney-client privilege. This belief is heightened by the fact that two (2) of the attorneys with Akerman LLP who have entered an appearance in the state court litigation are partners at the law firm; in fact, one of them is the current Office Managing Partner, which in my mind creates a conclusive presumption that he has access to all confidences concerning all clients of the firm, both past and present.

13. I have not waived any conflict of interest by Akerman LLP on behalf of Foodonics or myself.

_____
KEVIN JACQUES KLEMPF

The foregoing instrument was SWORN TO and SUBSCRIBED before me before me this 15 day of June 2020 by Kevin Jacques Klempf, who is: (check one) [ ] personally known to me OR [X] has produced Florida Driver License as identification.
K451-510-57-143-0

_____
Notary Public, State of Florida

(SEAL)

TRACY L. HERMAN
MY COMMISSION # GG 021597
EXPIRES: September 28, 2020
Bonded Thru Budget Notary Services

Tracy L Herman
Printed/Typed Name

GG 021597
Commission Number

9-28-2020
Commission Expires

4